**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**IN RE: AFTERMARKET FILTERS
ANTITRUST LITIGATION**

**This Document Relates to:
All Direct Purchaser Actions**

**Master Docket
No. 1:08-cv-04883
MDL No. 1957**

**MEMORANDUM OF LAW IN SUPPORT OF
DIRECT PURCHASER PLAINTIFFS' MOTION TO
APPOINT INTERIM  CLASS COUNSEL PURSUANT
TO FEDERAL RULE OF CIVIL PROCEDURE 23(g)**

## I.  Introduction

Pursuant to Rule 23(g)(3) of the Federal Rules of Civil Procedure, all Direct Purchaser Plaintiffs move for the appointment of the law firms of Freed Kanner London & Millen LLC ("FKLM"), Labaton Sucharow LLP ("Labaton"), Susman Godfrey LLP ("SG") and, Fine, Kaplan and Black, R.P.C. ("Fine Kaplan") as Interim Class Counsel for the Direct Purchaser Plaintiffs in this consolidated multidistrict litigation ("MDL").  It is important to note that Direct Purchaser Plaintiffs' motion is supported by all of the Direct Purchaser Plaintiffs who filed in this District and elsewhere in the United States; there are no competing applications for appointment of Interim Class Counsel.   All Direct Purchaser Plaintiffs and their experienced antitrust counsel support this proposed organization and believe it to be in the best interests of the proposed class to have these four Proposed Interim Class Counsel lead the prosecution of this action.   Proposed

Interim Class Counsel have done substantial work to identify the claims of the proposed class. Their factual and legal research has been extensive and efficient.

As the *Manual for Complex Litigation* notes, private ordering, with Court review and approval, is the most common method for selecting class counsel. *See Manual for Complex Litigation, Fourth Edition (2006)* (the "*Manual*") § 21.272 at 279 ("[t]he lawyers agree who should be lead class counsel and the court approves the selection after a review to ensure that the counsel selected is adequate to represent the class interests"). As recommended by the *Manual*, Proposed Interim Class Counsel have effectively organized all of the pending, direct purchaser class actions and have received the support of all Direct Purchaser Plaintiffs and their respective counsel.

Each of the Proposed Interim Class Counsel has extensive experience litigating large and complex antitrust class actions. These firms have led the prosecution of some of the most successful antitrust cases in history. These firms also have many years of extensive experience in working cooperatively together to achieve favorable results for their clients. Proposed Interim Class Counsel will expend all necessary efforts and resources to vigorously pursue this litigation. Further, because their offices are located throughout the country, Proposed Interim Class Counsel are well positioned to represent the proposed nationwide class.

Plaintiffs respectfully submit that Proposed Interim Class Counsel have done the work to identify and investigate the claims alleged and Proposed Interim Class Counsel have the knowledge, experience and resources to represent the proposed class, and will fairly and adequately represent the interests of the proposed class. *See* Fed. R. Civ. P. 23(g)(1) and (4).

## II. Background

This MDL litigation arises out of an alleged conspiracy by Defendants to fix, raise, maintain, and/or stabilize the price of replacement oil, air, fuel and transmission filters (collectively "filters") in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Filters are used to remove contaminants from combustion engines and related systems. Oil filters remove contaminants from the motor oil used to lubricate an engine's pistons; fuel filters primarily screen dirt and rust particles from an engine's fuel lines; air filters prevent particulate matter from entering an engine's cylinders; and transmission filters ensure the proper functioning of an engine's transmission system.

The first complaint in this action was filed in the District of Connecticut by Labaton, one of the Proposed Interim Class Counsel. The first and second complaints filed in this District were filed by SG and FKLM, who are also among the Proposed Interim Class Counsel. Fine Kaplan filed an action in the Southern District of Illinois, but supported the Northern District as the appropriate alternative to the Southern District. In total, there are at least 53 actions that were filed throughout the United States and which now have been centralized in this Court.

On August 18, 2008, the Judicial Panel of Multidistrict Litigation entered an order pursuant to 28 U.S.C. § 1407, transferring all related actions to this Court for coordinated or consolidated pretrial proceedings. Shortly after the transfer, in an effort to coordinate the efforts of the various plaintiffs and their counsel who filed actions across the country, FKLM invited all Direct Purchaser Plaintiffs' counsel to meet in Chicago on August 28, 2008. Many experienced and qualified counsel attended in person and others participated by telephone. At the meeting, counsel discussed, among other topics, the best leadership

structure for Plaintiffs to prosecute the case.  Unanimous support emerged for FKLM, Labaton, Susman and Fine Kaplan to lead the prosecution on behalf of all Direct Purchaser Plaintiffs.

### III.  Argument

**A.    The Court Should Appoint Interim Class Counsel Before Class Certification**

#### 1.    The Standards Under Rule 23(g)

Under Rule 23(g)(3), a court has discretion whether to appoint class counsel before class certification.[1]  But in cases where "multiple overlapping and duplicative class actions have been transferred to a single district," interim class counsel designation is "probably essential for efficient case management."  *In re Air Cargo Shipping Services Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006).  A court considering the appointment of class counsel must consider the following criteria:  "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  *See* Rule 23(g)(1)(A).  The focus in appointing lead counsel should be on the best interest of the parties and the court.  In determining an appropriate leadership, the *Manual* urges the court to ensure that designated counsel fairly represent the various interests in the litigation.  *Manual* § 21.27 at 278.  *See* Rule 23(g)(4).[2]

---

[1] A court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action."  Fed. R. Civ. P. 23(g)(3).

[2] While neither Rule 23(g) nor the Advisory Committee Notes explicitly set forth the standards to be applied in choosing *interim* class counsel, courts have held that the same factors

### 2. The *Manual* Encourages Private Ordering Among Counsel.

The most common means of selecting class counsel is "private ordering." *Manual* § 21.272 at 279. "The lawyers agree who should be lead class counsel and the court approves the selection after a review to ensure that the counsel selected is adequate to represent the class interests." *Id.* Efforts of plaintiffs' counsel to coordinate their activities among themselves are to be encouraged. *Manual* § 10.22 at 24. As discussed in Section III C below, Proposed Interim Class Counsel are supported by every Direct Purchaser Plaintiff, and by each of their counsel in this litigation.

### B. Four Interim Co-Lead Class Counsel Is Appropriate In This Case.

Given the complexity of this case and the sheer number of Defendants and their counsel, it is appropriate for the Court to appoint four firms as interim class counsel. In similarly complex antitrust cases, four co-lead counsel have been approved by the courts. *See, e.g., In re Brand Name Prescription Drugs Antitrust Litig.*, (N.D. Ill. 1994); *In re Sulfuric Acid Antitrust Litigation*, (N.D. Ill. 2007); *In re Air Cargo Antitrust Litig.*, 240 F.R.D. 56, 58-59 (E.D.N.Y. 2006); *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 408 (S.D. Ohio 2007); *In re Polyester Staple Antitrust Litig.*, Civil Action No. 3:03-cv-01516-RLV, MDL No. 1516 (W.D.N.C. June 16, 2003); *In re Carbon Black Antitrust Litig.*, Civil Action No. 1:03-cv-10191-DPW, MDL No. 1543 (D. Mass. Nov. 10, 2003).

---

that apply in choosing class counsel upon class certification apply in choosing interim class counsel. *See id.* ("Although neither the federal rules nor the advisory committee notes expressly so state, it appears to be generally accepted that the considerations set out in Rule 23(g)(1)(C), which governs appointment of class counsel once a class is certified, apply equally to the designation of interim class counsel before certification."); *Parkinson v. Hyundai Motor Am.*, No. CV06-345AHS (MLGX) *et al.*, 2006 WL 2289801, at *2 (C.D. Cal. Aug. 7, 2006) ("Rule 23(g) provides criteria to consider when appointing class counsel, without distinguishing interim counsel. Presumably, the same factors apply, however.").

C.    **FKLM, Labaton, SG And Fine Kaplan Have The Support Of All Plaintiffs' Counsel And Are Eminently Qualified To Be Interim Class Counsel**

The four firms comprising Proposed Interim Counsel have extensive antitrust class action experience, have litigated some of the most complex and successful antitrust cases in the last two decades, and are among the most well-respected antitrust litigators in this country.

Their litigation experience amply demonstrates that Proposed Interim Class Co-Lead Counsel have extensive knowledge of the applicable law, the resources for effective representation of the class, proven ability to reach superior results in such litigation, and a commitment to work cooperatively with all counsel for direct purchaser plaintiffs.

For these reasons, as noted in Section II above, discussions among Plaintiffs' counsel resulted in the agreement of all of the many experienced firms in this case to support FKLM, Labaton, SG and Fine Kaplan as Proposed Interim Class Counsel. This is particularly significant, because many firms supporting this appointment have served in leadership positions in major antitrust litigation. Their support reflects the experienced judgment of these firms that it is in the best interests of the proposed class that Proposed Interim Class Counsel lead the prosecution of this case.

1.    **Freed Kanner London & Millen LLC**

Freed Kanner London & Millen LLC ("FKLM") engages in a contingent fee class action practice throughout the United States. The firm's practice involves all aspects of complex antitrust, consumer fraud, securities, whistleblower, unlawful business practices and insurance fraud cases. The firm was founded on January 1, 2007, but its attorneys are among the pioneers and leaders in the class action field. Not surprisingly, therefore,

FKLM has been recognized as a "*sparkling new firm*" and "*a notable and important Illinois team*" by *Chambers and Parners,* a leading independent reviewer of law firms.[3]

Previously, as members of Much Shelist Freed Denenberg Ament & Rubenstein, P.C. ("Much Shelist Freed"), the founding partners of FKLM successfully prosecuted class action cases for more than 30 years. Moreover, FKLM attorneys have served in leadership positions (as lead counsel, co-lead counsel, members of steering and executive committees, and co-chairs of discovery) in some of the largest class action cases in the United States. *See* http://www.fklmlaw.com/page.php?display=antitrust.inc. Currently FKLM attorneys serve as co-lead counsel in numerous direct purchaser antitrust class action cases, which are currently in varying stages of litigation, including: *Schagringas Co. v. BP Products North America, Inc.* (N.D. Ill.); *In re Hydrogen Peroxide Antitrust Litigation* (E.D. Pa.)*; In re Cotton Yarn Antitrust Litigation* (M.D.N.C.)*; In re Parcel Tanker Antitrust Litigation* (D. Conn.)*; In re Methyl Methacrylate Antitrust Ligation* (E.D. Pa.)*;* and *In re Flat Glass Antitrust Litigation (II)* (W.D. Pa.)*.* Further, FKLM attorneys serve on the Executive Committee in other direct purchaser antitrust class action cases, including: *In re Rail Freight Antitrust Litigation* (D.D.C) and *In re SRAM Antitrust Litigation* (N.D. Cal.).

Other large class action cases in which FKLM attorneys had been involved in a leadership position include *In re Brand Name Prescription Drugs Antitrust Litigation; In re High Fructose Corn Syrup Litigation*)*; In re Dynamic Random Access Memory Antitrust Litigation; In re In re Linerboard Antitrust Litigation; In re High Pressure Laminates Antitrust Litigation; In re Folding Cartons Antitrust Litigation; In re Plywood*

---

[3] *See* http://www.chambersandpartners.com/USA/resultseditorial.aspx?fid=140851&cid=296&pid=363&solbar=1&grouptype=1#140851.

*Antitrust Litigation; In re Standard Screws Antitrust Litigation; In re Glass Containers Antitrust Litigation; In re Aluminum Siding Antitrust Litigation; Rusty Jones Warranty Litigation* ; *In re Chlor-alkali and Caustic Soda Antitrust Litigation*.

Among the FKLM attorneys who are committed to this litigation are Michael Freed, Steven Kanner, William London and Douglas Millen.  Their qualifications and credentials are discussed in Exhibit A.

### 2.    Labaton Sucharow LLP

Labaton Sucharow LLP is a leading antitrust class action firm with an established track record in the prosecution of complex antitrust class actions.  The firm comprises over 60 attorneys, including some of the most experienced attorneys in the country, and it has repeatedly served as lead counsel in major antitrust cases.  Labaton's Antitrust Practice Group has vigorously litigated and settled numerous class actions.  *See, e.g.*, *In re Natural Gas Commodity Litig.*, C.A. No. 1:03-cv-06186 (VM) (S.D.N.Y.) (Labaton as Co-Lead Counsel obtained a total of $101 million in settlements in 2007 on behalf of a class of NYMEX natural gas futures traders injured by defendant energy companies' alleged manipulation of published price indices, the second-largest class action commodities manipulation recovery on record); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004) ($44.5 million settlement); *In re Stock Exchange Options Trading Antitrust Litig.*, 99 CIV. 0962, MDL No. 1283, Master Docket No. M-21-79 (RCC) (S.D.N.Y.) ($47 million); *In re Lorazepam & Clorazepate Antitrust Litig.*, 2003 U.S. Dist. LEXIS 12344 (D.D.C. June 16, 2003) ($135.4million settlement); *In re Buspirone Antitrust Litig.*, MDL No. 1412(S.D.N.Y.) ($90 million settlement); and *In re Air Cargo Services Antitrust Litig.*, MDL No. 1775 (E.D.N.Y.) ($85 partial million settlement preliminarily approved).

In addition, Labaton recently was selected by *The National Law Journal* for the second year in a row as one of the country's leading plaintiffs' class action firms. Labaton has been recognized for the quality of its legal work on many occasions, including by Judge Koeltl in *In Re Buspirone Antitrust Litigation*: "Let me say that the lawyers in this case have done a stupendous job. They really have." MDL No. 1413; C.A. No. 1:01-md-01413 (JGK) (S.D.N.Y.) (approving $90 million settlement with Bristol-Myers Squibb).  Among the Labaton attorneys who are committed to this litigation are Lawrence A. Sucharow, Bernard Persky, Hollis L. Salzman and Gregory Asciolla.  Their qualifications and credentials are discussed in Exhibit B.

### 3.     Susman Godfrey LLP

Beginning with the landmark *Corrugated Container* price-fixing case in 1980, SG has been in the forefront of antitrust and complex class litigation. The firm has recovered hundreds of millions of dollars for plaintiffs, and specializes in taking high-stakes cases to trial and verdict.  More recently, in 2005, a federal jury in Los Angeles, California reached a $140 million trial verdict in favor of SG client Masimo Corporation, against Tyco Healthcare Group LP and its affiliate, Mallinckrodt, Inc.  Steve Susman and Marc Seltzer were the plaintiffs' lead trial lawyers.  While the trial court vacated the damages award and certain liability findings post-trial (rulings currently on appeal), on re-trial before the court, a judgment in Masimo's favor for $43.5 million, plus attorneys' fees and costs, was entered.

SG specializes in trying highly complex litigation, and our partners have litigated some of the most significant antitrust cases in recent times, both in terms of the legal issues at stake and the recoveries obtained for consumers and businesses.  SG's proven track record of success at trial has enabled SG to obtain highly advantageous settlements

for our clients in antitrust cases.  Among these cases is the landmark *In re Vitamins Antitrust Litigation*.  In that massive litigation, SG, together with our co-counsel, negotiated a $1.1 billion settlement for the class of direct purchasers.  As Chief Judge Hogan of the United States District Court for the District of Columbia wrote:

> *The Settlement is unprecedented for many reasons*:  the percentage rate on which the Agreement is predicated is *in the highest tier of settlements for price-fixing class actions; the total dollar value to the class is the largest settlement of a price-fixing class action* . . . .

*In re Vitamins Antitrust Litig.,* 2000 WL 1737867, at *2 (D.D.C. Mar. 31, 2000) (emphasis added).

SG has devoted more than 25 years to helping businesses and individuals achieve optimal outcomes in some of the biggest and most-publicized commercial lawsuits in the nation.  SG is currently one of the nation's leading litigation boutique law firms with locations in Houston, Dallas, Los Angeles, Seattle, and New York.  Each of the firm's 85 trial attorneys devotes all of his or her time and talent to achieving excellent outcomes within the complex commercial litigation environment.  High profile victories achieved by the firm include:

- *In re Corrugated Container Antitrust Litigation* (S.D. Tex.) – Represented, with co-counsel, the plaintiffs in over 50 consolidated class action cases brought under the federal antitrust laws.  Resulted in a $500 million in settlements before and after trial.

- *Novell v. Microsoft* (D. Utah) – Represented Novell in negotiating a $536 million settlement of antitrust claims against Microsoft.

- *In re Gas Royalty Litig.* (Okla. state court) – In November 2004, Susman Godfrey obtained a settlement of $60 million for a class of gas production royalty interest owners against a major oil company.  The oil company agreed to a settlement after Susman Godfrey successfully obtained class certification.

- *In re Equinox Int'l Corp.* (D. Nev.) – Together with government lawyers,

settled a securities class action for $40 million and equitable relief. Worked closely with the Federal Trade Commission and attorneys general from Hawaii, Maryland, Michigan, Nevada, North Carolina, Tennessee, and Virginia to achieve this result.

- *White, et al. v. NCAA* (C.D. Cal.) – Antitrust class action against the NCAA. Led by Marc Seltzer, Susman Godfrey and co-counsel negotiated a settlement that, if approved, will result in $218 million over five years to a fund for student athletes and other monetary and equitable relief.

Among the Susman Godfrey attorneys who are committed to this litigation are Marc M. Seltzer, Stephen E. Morrissey and Vineet Bhatia. Their qualifications and credentials are discussed in Exhibit C.

### 4.    Fine, Kaplan and Black, R.P.C.

Fine, Kaplan and Black, R.P.C. is a Philadelphia-based firm that concentrates its practice in antitrust litigation. Over its thirty-year history, the firm has produced outstanding results; among its achievements is what was, at the time, the largest settlement ever obtained in an antitrust price-fixing class action, *In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 465 (S.D.N.Y. 1998), where Fine Kaplan served as co-lead counsel. In approving the $1.027 billion settlement in that case, the court remarked, "it is difficult to conceive of better representation." *Id*. at 474.

The firm's primary focus is antitrust price-fixing cases like this one. Over its many years as a leader in the field, the firm has earned a national reputation for creating excellent work product and prosecuting complex antitrust cases against some of the most sophisticated, well-funded defendants in the world. For example, Roberta Liebenberg and Donald Perelman, along with other Fine Kaplan attorneys, recently uncovered a nationwide price-fixing and market-allocation conspiracy by manufacturers of certain chemicals *before* the Department of Justice launched its own investigation into the

matter. Fine Kaplan and its Co-Lead Counsel have secured a $55.3 million settlement with one defendant, Bayer Corporation, and the court recently certified the litigation class, despite vigorous opposition by the non-settling defendants. *See In re Urethane Antitrust Litig. (Polyether Polyols)*, MDL No. 1616 (D. Kan. July 29, 2008).

Over the years, members of Fine Kaplan have served in leadership roles in a number of other antitrust and consumer class actions, including: *In re Providian Financial Corp. Credit Card Terms Litigation*, MDL No. 1301 (E.D. Pa.) (Co-Lead Counsel) ($105 million settlement); *In re Linerboard Antitrust Litigation*, MDL No. 1261 (E.D. Pa.) (Executive Committee) ($202.5 million settlement); *In re Vitamins Antitrust Litigation*, MDL No. 1285 (D.D.C.) (Expert Committee) (approximately $325 million settlement); *In re MSG Antitrust Litigation*, MDL No. 1328 (D. Minn.) (Co-Chair, Expert Committee) ($123 million settlement); *In re Automotive Paint Antitrust Litigation*, MDL No. 1426 (E.D. Pa.) (Executive Committee) ($105.75 million settlement); *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.* (Carbon Fibers), No. CV-99-07796 (C.D. Cal.) (Expert Committee) ($68 million settlement); *In re Polypropylene Carpet Antitrust Litigation*, MDL No. 1075 (N.D. Ga.) (Co-Chair, Expert Committee) (approximately $50 million settlement); and *In re Commercial Explosives Antitrust Litigation*, MDL 1093 (D. Utah) (Co-Chair, Discovery Committee) ($71 million settlement).

In light of their substantial antitrust expertise, members of Fine Kaplan have also been retained by major corporations and senior executives in the defense of a number of high-profile, difficult cases. For instance, Roberta Liebenberg recently defended a former high-ranking shipping executive who was charged by the Department of Justice

with violating the Sherman Act. This litigation raised the novel and important issue of whether the Department of Justice properly revoked a grant of amnesty after a company and its executives had provided extensive cooperation based on the promise of amnesty. After a four-week bench trial, the court granted the defendants' motion to dismiss the indictment. *See United States v. Stolt-Nielsen*, 524 F. Supp. 2d 586 (E.D. Pa. 2007).

Among the Fine Kaplan attorneys who are committed to this litigation are Roberta D. Liebenberg and Donald L. Perelman. Their qualifications and credentials are discussed in Exhibit D.

### D.     Proposed Interim Class Counsel Have Done Significant Work In Identifying And Investigating Potential Claims In This Litigation

Proposed Interim Class Counsel have done significant work identifying and investigating Plaintiffs' claims to advance the litigation. *See* Rule 23(g)(1)(A)(i). They were among the first to investigate the filters industry and bring suit against Defendants. They have meticulously investigated the merits and advanced the case by: (1) obtaining substantial economic data on the filters industry; and (2) interviewing potential fact witnesses concerning evidence of the alleged conspiracy. They have also advanced the cases procedurally. Immediately after their cases were filed, these firms coordinated with all other direct purchaser plaintiffs' counsel to discuss organization and future management of the case. These efforts have been successful and the proposed leadership structure has been agreed on by all Plaintiffs and their counsel.

**E.    Proposed Interim Class Counsel Have Substantial Experience In Leading The Prosecution Of Antitrust Class Actions**

As set forth above and in their firm resumes (attached as Exhibits A-D), Proposed Interim Class Counsel have substantial experience in class action antitrust litigation and have successfully litigated numerous cases with price-fixing claims similar to those asserted here.  *See* Rule 23(g)(1)(A)(ii).

**F.    Proposed Interim Class Counsel Have The Requisite Knowledge And Expertise To Prosecute This Price-Fixing Action**

Under Rule 23(g)(1)(A)(iii), the Court must consider proposed class counsel's knowledge of applicable law.  Notably, Proposed Interim Class Counsel are among the most accomplished class action antitrust firms in the country and collectively possess an abundance of knowledge regarding antitrust class actions, both substantively and procedurally.

**G.    Proposed Interim Class Counsel Will Commit The Resources Necessary To Prosecute This Action**

The prosecution of this action will undoubtedly require substantial resources. Proposed Interim Class Counsel have the necessary resources and are absolutely committed to prosecuting this action in the best interests of the proposed class.  Further, Proposed Interim Class Counsel are committed to a cooperative approach among all counsel, and will work with all Plaintiffs' counsel to ensure the vigorous prosecution of this case and the effective representation of the Plaintiff Class.  In doing so, Proposed Interim Class Counsel will strive to avoid waste and duplication in favor of efficiency. Proposed Interim Class Counsel have offices located across the country, which will enhance their ability to work cooperatively with the various Plaintiffs and firms filing in

14

this case.  The fact that Proposed Interim Class Counsel have the support of all Plaintiffs and their counsel attests to this fact.

### IV.    Conclusion

The court should appoint Proposed Interim Class Counsel as interim co-lead counsel because their proposal is fair, comprehensive, representative, and provides pertinent experience and background beneficial specifically to this case.  In addition, this proposal is supported by all Plaintiffs and their experienced antitrust counsel.

Dated:  September 3, 2008                          Respectfully submitted,


                                                  By:  *Michael J. Freed*

                                                  Michael J. Freed (ARDC No. 0869120)
                                                  Steven A. Kanner (ARDC No. 3125292)
                                                  William H. London (ARDC No. 6196353)
                                                  Douglas A. Millen (ARDC No. 6226978)
                                                  **Freed Kanner London & Millen LLC**
                                                  2201 Waukegan Road, Suite 130
                                                  Bannockburn, IL  60015
                                                  Tel.:  (224) 632-4504
                                                  Fax:  (224) 632-4519

                                                  Lawrence A. Sucharow
                                                  Bernard Persky
                                                  Hollis L. Salzman
                                                  Gregory Asciolla
                                                  **Labaton Sucharow LLP**
                                                  140 Broadway
                                                  New York, NY  10005
                                                  Tel.:  (212) 907-0700
                                                  Fax:  (212) 818-0477

Marc M. Seltzer
Stephen E. Morrissey
**Susman Godfey LLP**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA  90067-6029
Tel.:  (310) 789-3100
Fax:  (310) 789-3005

Vineet Bhatia
**Susman Godfrey LLP**
1000 Louisiana, Suite 5100
Houston, TX  77002-5096
Tel.:  (713) 653-7855
Fax:  (713) 654-3344

Roberta D. Liebenberg
Donald L. Perelman
**Fine, Kaplan and Black, R.P.C.**
1835 Market Street, 28th Floor
Philadelphia, PA  19103
Tel.:  (215) 567-6565
Fax:  (215) 568-5872

**Proposed Interim Class Counsel**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

---

**IN RE: AFTERMARKET FILTERS
ANTITRUST LITIGATION**

---

**This Document Relates to:
All Direct Purchaser Actions**

**Master Docket
No. 1:08-cv-04883
MDL No. 1957**

---

**APPENDIX OF EXHIBITS TO MEMORANDUM OF LAW IN SUPPORT OF
DIRECT PURCHASER PLAINTIFFS' MOTION TO APPOINT INTERIM CLASS
COUNSEL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(g)**


Exhibit A    Freed Kanner London & Millen LLC Firm Resume

Exhibit B    Labaton Sucharow LLP Antitrust Practice Group Resume

Exhibit C    Susman Godfrey L.L.P. Firm Resume

Exhibit D    Fine, Kaplan and Black, R.P.C. Firm Resume



FREED  KANNER  LONDON & MILLEN LLC

**2201 WAUKEGAN ROAD**
**SUITE 130**
**BANNOCKBURN, IL  60015**
**TELEPHONE (224) 632-4500**
**FACSIMILE (224) 632-4521**

**www.fklmlaw.com**



Freed Kanner London & Millen LLC ("FKLM") engages in a contingent fee class action practice throughout the United States.  The firm's practice involves all aspects of complex antitrust, consumer fraud, securities, whistleblower, unlawful business practices and insurance fraud cases. The firm was founded on January 1, 2007, but its attorneys are among the pioneers and leaders in the class action field.

Previously, as members of Much Shelist Freed Denenberg Ament & Rubenstein, P.C. ("Much Shelist Freed"), the founding partners of FKLM successfully prosecuted class action cases for more than 30 years.  Moreover, FKLM attorneys have served in leadership positions (as lead counsel, co-lead counsel, members of steering and executive committees, and co-chairs of discovery) in some of the largest class action cases in the United States, including the following:

> ***In re Brand Name Prescription Drugs Antitrust Litigation***, MDL 997 (N.D. Ill.)

FKLM attorneys were co-lead counsel in this antitrust price-fixing class action. Settlements totaling approximately $715 million were recovered on behalf of the plaintiff class.

> ***In re The Prudential Ins. Co. of America Sales Practice Litigation***, MDL 1061 (D.N.J.)

FKLM attorneys were co-lead counsel in this insurance fraud class action.  The case resulted in a settlement of over $410 million for the class.

> ***In re High Fructose Corn Syrup Antitrust Litigation***, MDL 1087 (N.D. Ill.)

FKLM attorneys were co-lead counsel in this antitrust price-fixing class action against major manufacturers of high fructose corn syrup.  The case was settled for $531 million for the class.  At the close of the hearing where counsel fees were approved, Judge Michael M. Mihm stated:

> I've said many times during this litigation that you and the attorneys who
> represent the defendants here are as good as it gets.  Very professional.
> At least in my presence or in my contacts with you, you've always been
> civil.  You've always been cutting to the chase and not wasting my time or
> each other's time or adding to the cost of the litigation.



➤ *In re Linerboard Antitrust Litigation*, **MDL 1261 (E.D. Pa.)**

FKLM attorneys served as co-lead counsel in this antitrust price-fixing case, which resulted in total settlements of over $200 million for the plaintiff class.

➤ *In re Vitamins Antitrust Litigation*, **MDL 1285 (D.D.C.)**

FKLM attorneys served as co-chairs of discovery in this antitrust price-fixing action, which resulted in over $1.3 billion in settlements.

➤ *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, **MDL 1486 (N.D. Cal.)**

FKLM attorneys served as co-chairs of discovery in this nationwide antitrust price-fixing action which resulted in settlements of over $300 million for class members.

➤ *In re Rubber Chemicals Antitrust Litigation*, **MDL 1648 (N.D. Cal.)**

FKLM attorneys served on the Executive Committee in this nationwide antitrust price-fixing action, which resulted in settlements of over $300 million for class members.

➤ *In re Waste Management, Inc. Securities Litigation*, **Master File 97-CV-7709 (N.D. Ill.)**

FKLM attorneys were actively involved in litigating the case and served as liaison counsel. A settlement for the plaintiff class of $220 million was obtained.

➤ *In re Infant Formula Antitrust Litigation*, **MDL 878 (N.D. Fla.)**

FKLM attorneys were appointed co-lead counsel in this antitrust price-fixing class action against the major manufacturers of infant formula.  The case settled for over $125 million.

➤ *In re Chubb Drought Insurance Litigation*, **MDL 782 (S.D. Ohio)**

FKLM attorneys were co-lead counsel in this class action filed on behalf of farmers who purchased drought insurance that Chubb refused to honor.  The settlement exceeded $110 million



and was achieved in less than 9 months.  This sum, together with $8 million recovered at trial against Chubb's general agent, resulted in complete recovery for the affected farmers.

> ➤ ***In re Ocean Shipping Antitrust Litigation*, MDL 395 (S.D.N.Y.)**

FKLM attorneys were co-lead counsel in this antitrust price-fixing class action, which resulted in a $79 million recovery for thousands of U.S. and European shippers.  Distributions were made to claimants in the United States and throughout a number of European countries.

> ➤ ***In re Isostatic Graphite Antitrust Litigation*, Master File 00-CV-1857 (E.D. Pa.)**

FKLM attorneys were appointed co-lead counsel in this antitrust price-fixing class action. The case resulted in combined settlements of over $11 million for the class.

> ➤ ***Blinder Robinson Securities Litigation* (E.D. Pa.)**

FKLM attorneys were members of the steering committee in this securities fraud action in which an injunction was obtained preventing a transfer of assets; judgment of $71 million was later entered.

> ➤ ***In re Carbon Dioxide Antitrust Litigation*, MDL 940 (M.D. Fla.)**

FKLM attorneys were co-lead counsel in this antitrust price-fixing class action in which the plaintiff class recovered $53 million and achieved significant therapeutic relief for the class.

> ➤ ***In re Drill Bits Antitrust Litigation*, CA No. H-91-627 (S.D. Tex.)**

FKLM attorneys were members of the Steering Committee in this antitrust price-fixing class action and were instrumental in achieving a settlement for the class in excess of $52 million.



➢ *In re Industrial Gas Antitrust Litigation*, **CA No. 80 C. 3479 (N.D. Ill.)**

FKLM attorneys were members of the executive committee in this antitrust price-fixing class action, which ultimately recovered more than $50 million dollars for the class. The settlement included assignable purchase certificates which the court found increased the competitive value of the settlement.

➢ *In re Morrison Knudson Securities Litigation*, **CA No. 94-CV-3345 (D. Idaho)**

FKLM attorneys were co-lead counsel in this securities class action where the plaintiff class received $43 million and approximately 3 million shares of Morrison Knudson common stock in settlement of their claims.

➢ *In re M-L Lee Acquisition Fund Securities Litigation* **(D. Del.)**

FKLM attorneys served as co-lead counsel in this securities class action case against a syndicate of partnerships and its general partners involving Merrill Lynch and its affiliates and a leveraged buy-out specialty firm overseen by Thomas H. Lee. The case resulted in a settlement on behalf of the limited partners of $33 million.

➢ *In re Public Service Company of New Mexico* **(S.D. Cal.)**

FKLM attorneys were lead counsel in this derivative action and obtained $33 million dollars in a joint settlement together with class plaintiffs in a related securities fraud class action. Judge Harry R. McCue, District Court Judge for the Southern District of California stated:

> The petitioners in this case are members of respected law firms which specialize in class action litigation. These attorneys brought considerable legal talents together, and were able to achieve the successful completion of this litigation. They are entitled to fair and reasonable compensation.



> ***Piggly Wiggly Antitrust Litigation* (E.D. Tex.)**

FKLM attorneys were co-lead counsel in this statewide Texas antitrust price-fixing action which resulted in total settlements of approximately $32 million for class members.

> ***In re Records and Tapes Antitrust Litigation* (N.D. Ill.)**

FKLM attorneys were members of the executive committee in this antitrust price-fixing class action. The class recovered $26 million dollars in settlement in cash and assignable purchase certificates.

> ***Kaufman v. Motorola, Inc.* (N.D. Ill.)**

FKLM attorneys were actively involved in litigating the case and served as liaison counsel. A settlement of $25 million was obtained for the plaintiff class.

> ***In re Unisys Securities Litigation*, CA No. 99-5333 (E.D. Pa.)**

FKLM attorneys were members of the executive committee in this derivative action. Plaintiffs recovered $20 million for corporation.

> ***Koch Gathering Systems, Inc. Oil Spill Litigation* (Dist. Ct. of Nueces County, Tex.)**

FKLM attorneys were co-lead counsel in this case concerning a marine oil spill in which a class consisting of commercial fisherman and shrimpers recovered over $10 million.

*   *   *



### *CURRENT CASES*

FKLM attorneys are presently involved in the following cases, which are in varying stages of litigation:

> ➤ *In re Aftermarket Filters Antitrust Litigation***, MDL 1957 (N.D. Ill.)**

The firm is actively involved and seeking co-lead counsel status in this nationwide antitrust litigation and is seeking appointment as co-lead counsel.

> ➤ *In re BP Products North America, Inc., Antitrust Litigation (No. II)***, MDL 1946 (N.D. Ill.)**

FKLM was appointed as interim co-lead counsel on behalf of direct purchaser plaintiffs in this nationwide class action involving monopolization claims under Section 2 of the Sherman Act.

> ➤ *In re Flat Glass Antitrust Litigation* **(No. II), MDL 1942 (W.D. Pa.)**

FKLM was recently appointed as interim co-lead counsel on behalf of direct purchaser plaintiffs in this nationwide price-fixing case.

> ➤ *In re Southeastern Milk Antitrust Litigation***, MDL 1899 (E.D. Tenn.)**

FKLM attorneys are actively involved in this pending antitrust class action and played a central role in successfully opposing various motions to dismiss.

> ➤ *In re Static Randon Access Memory (SRAM) Antitrust Litigation***, MDL 1819 (N.D. Cal.)**

FKLM is a member of the steering committee representing direct purchaser plaintiffs in this pending nationwide price-fixing case.

> ➤ *In re Air Cargo Shipping Services Antitrust Litigation***, MDL 1775 (E.D.N.Y.)**

FKLM attorneys are serving as co-chairs of discovery in this pending nationwide class action involving claims under Section 1 of the Sherman Act.\



➤ *In re Methyl Methacrylate (MMA) Antitrust Litigation*, **MDL 1768 (E.D. Pa.)**

FKLM attorneys were appointed interim co-lead counsel in this nationwide antitrust price-fixing action against producers of methyl methacrylate and polymethyl methacrylate.

➤ *In re Intel Corp. Microprocessor Antitrust Litigation*, **MDL 1717 (D. Del.)**

FKLM attorneys are serving as co-chairs of discovery in this pending nationwide antitrust action.  Among other things, the firm has played a key role in overseeing document production and coordinating, managing and defending over 50 depositions of named plaintiffs.

➤ *In re Hydrogen Peroxide Antirust Litigation*, **MDL 1682 (E.D. Pa.)**

FKLM attorneys are co-lead counsel in this nationwide antitrust price-fixing action against hydrogen peroxide producers.  Partial settlements of over $87 million have been obtained for the class.

➤ *In re Cotton Yarn Antitrust Litigation*, **MDL 1622 (M.D.N.C.)**

FKLM attorneys are co-lead lead counsel in this antitrust price-fixing action.  A partial settlement of $7.75 million has been obtained for the class.

➤ *In re Urethane Chemicals Antitrust Litigation*, **MDL 1616 (D. Kan.)**

FKLM attorneys are co-lead counsel in this antitrust price-fixing action.  The case has thus far resulted in settlements of $33 million for the class.

➤ *In re Parcel Tanker Shipping Antitrust Litigation*, **MDL 1568 (D. Conn.)**

FKLM attorneys are co-lead counsel in nationwide antitrust price-fixing action, which is currently pending as a consolidated arbitration.



➤ ***In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, MDL 1542 (D. Conn.)**

FKLM attorneys serve as co-chairs of discovery in this pending nationwide antitrust price-fixing action, which has resulted in partial settlements of over $87 million for class members.

\*   \*   \*

Other large class action cases in which FKLM attorneys had been involved in a leadership position include *In re Folding Cartons Antitrust Litigation*, *In re Plywood Antitrust Litigation*, *In re Standard Screws Antitrust Litigation*, *In re Glass Containers Antitrust Litigation*, *In re Aluminum Siding Antitrust Litigation*, *Rusty Jones Warranty Litigation*, *NPA Securities Litigation*, *In re Chlor-alkali and Caustic Soda Antitrust Litigation*, and *In re Potash Antitrust Litigation*.



### *ATTORNEY PROFILES*

#### Michael J. Freed

Mr. Freed has been in private practice for over 40 years and has litigated class action cases for over 30 years.  He has served as co-lead counsel in many prominent antitrust cases, including *In re Brand Name Prescription Drugs Antitrust Litigation*, *In re High Fructose Corn Syrup Antitrust Litigation* and *In re Linerboard Antitrust Litigation*.  To date, cases in which Mr. Freed has served as co-lead counsel have recovered over $2 billion for the plaintiff classes.  Mr. Freed has been named an Illinois Super Lawyer by *Chicago Magazine*, an Illinois Leading Lawyer by the Leading Lawyer's Network, and one of the top plaintiffs' antitrust lawyers in Illinois by *Chamber's International*.  In addition, he was honored in March 2007 by the Chicago Appleseed Fund for Justice for his exceptional *pro bono* efforts.  Mr. Freed was formerly a trial and appellate attorney with the United States Department of Justice, Antitrust Division (Honors Program).  He is a graduate of the University of Pennsylvania (B.S., 1959) and University of Chicago Law School (J.D., 1962).

#### Steven A. Kanner

Mr. Kanner has over 25 years experience in complex antitrust matters and previously led the class action practice at Much Shelist Freed.  His experience includes investigation, discovery, trial and appeal of antitrust, securities and other complex cases.  Mr Kanner has been designated an Illinois Super Lawyer by *Chicago Magazine* and is a frequent lecturer both domestically and internationally on antitrust and trade regulation.  With respect to antitrust matters, Mr. Kanner has been involved in a leadership capacity in many of the cases described above.  Cases in which Mr. Kanner is currently serving as co-lead counsel or interim co-lead counsel include *In re Flat Glass*

FREED KANNER LONDON & MILLEN LLC

*Antitrust Litigation (No. II)*, MDL No. 1942 (W.D. Pa.); *In re Methyl Methacrylate (MMA) Antitrust Litigation,* MDL No. 1768 (E.D. Pa.); *In re Hydrogen Peroxide Antitrust Litigation*, MDL 1682 (E.D. Pa.); and *In re Cotton Yarn Antitrust Litigation*, MDL 1622 (M.D.N.C.). A 1979 graduate of DePaul University Law School, Mr. Kanner is admitted to the Bars of Illinois, the Northern District of Illinois (member of the trial bar), and United States Court of Appeals (Second, Third, Fourth, Fifth, Seventh and Tenth Circuits). He is also a member of the Chicago Bar Association (Committees on Litigation and Antitrust Law), the Illinois State Association (Sections on Antitrust Law and Litigation), the American Bar Association (Sections on Antitrust Law and Litigation), the Illinois Trial Lawyers Association, and the Decalogue Society where he previously served on the Editorial Board of the Society's Law Journal. Prior to entering private practice, Mr. Kanner was employed by the Federal Trade Commission as a consumer affairs specialist.

**William H. London**

Mr. London has been litigating class action cases for over 15 years. He recently served as trial counsel for the plaintiff class in *In re High Pressure Laminates Antitrust Litig.*, a case that was tried before a jury in the Southern District of New York. He is actively involved in several cases in which FKLM is co-lead counsel, including *In re Flat Glass Antitrust Litigation (No. II)*, MDL No. 1942 (W.D. Pa.); *In re Methyl Methacrylate (MMA) Antitrust Litigation,* MDL No. 1768 (E.D. Pa.); *In re Hydrogen Peroxide Antitrust Litigation*, MDL 1682 (E.D. Pa.); and *In re Cotton Yarn Antitrust Litigation*, MDL 1622 (M.D.N.C.). Mr. London graduated *Magna Cum Laude* from Syracuse University in 1984 and received his law degree in 1987 graduate from IIT Chicago-Kent College of Law. In 1987, he was admitted to the Illinois Bar and the Federal Bar; and in 1988, he was admitted to practice before the United States Court of Appeals for the Seventh Circuit. Mr. London



is a member of the American Bar Association and Chicago Bar Association and is a past-Chairman

of the Chicago Bar Association Class Litigation Committee.  He was formerly an Assistant Attorney

General for the State of Illinois, during which time he argued cases in the United States Court of

Appeals for the Seventh Circuit and the Illinois Supreme Court.  Since 1990, Mr. London has

concentrated on complex and commercial litigation, with an emphasis on class action litigation

involving antitrust, securities and consumer fraud claims. Mr. London practiced with Much Shelist

Freed from March 1993 through December 31, 2006.

**Douglas A. Millen**

Mr. Millen has represented plaintiffs in a variety of class action cases for over 12 years.  He

has extensive experience litigating complex commercial matters, with an emphasis on cases

involving antitrust, consumer protection, securities and contract law claims.  Mr. Millen also has

substantial experience in electronic discovery matters and the leveraging of technology to achieve

effective and efficient client advocacy.  He formerly chaired the Technology Committee at Much

Shelist Freed and has handled many complicated electronic discovery issues.  Mr. Millen has

played a prominent role in many of the largest antitrust cases in recent history – including *In re

Dynamic Random Access Memory (DRAM) Antitrust Litig.*, MDL 1486 (N.D. Cal.), *In re Vitamins

Antitrust Litigation,* MDL 1285 (D.D.C.), and *In re Rubber Chemicals Antitrust Litigation*, MDL 1648

(N.D. Cal.) – and his efforts have assisted in the recovery of billions of dollars for class members.

Among other cases, Mr. Millen is presently involved in *In re Static Random Access Memory

(SRAM) Antitrust Litigation*, MDL 1819 (N.D. Cal.), *In re Methyl Methacrylate (MMA) Antitrust

Litigation*, MDL 1768 (E.D. Pa.), *In re Hydrogen Peroxide Antitrust Litigation*, MDL 1682 (E.D. Pa.),

and *In re Air Cargo Shipping Services Antitrust Litigation*, MDL 1775 (E.D.N.Y.).  Mr. Millen is a

- 11 -



graduate of the University of Michigan (B.G.S., 1991) and University of Illinois College of Law (J.D.

*magna cum laude*, 1994).  In 1994, he was admitted to the New York and Connecticut State Bars;

and in 1995 he was admitted to the Illinois State Bar.  He is also admitted to practice in the

Northern District of Illinois.  Mr. Millen is a member of the American Bar Association, Antitrust

Section and the Chicago Bar Association. Prior to starting FKLM, Mr. Millen was a partner at Much

Shelist Freed, where he practiced with the class action group from November 1995 through

December 31, 2006.

**Michael E. Moskovitz**

Michael E. Moskovitz is a partner at Freed Kanner London & Millen LLC and has been

involved in trial and appellate litigation for more than 10 years.  Since 2000, he has concentrated

on complex commercial litigation, with a primary emphasis on class action litigation involving

antitrust, securities fraud, and consumer fraud claims.  Mr. Moskovitz previously played a key role

in the class action practice of Much Shelist Freed.  He is significantly involved in several pending

antitrust class actions, including *In re Hydrogen Peroxide Antitrust Litigation* (E.D. Pa.), *In re Static

Random Access Memory (SRAM) Antitrust Litigation* (N.D. Cal.), and *In re Flat Glass Antitrust

Litigation (No. II)* (W.D. Pa.).  Mr. Moskovitz is a graduate of Indiana University (B.A., 1993) and

New York University School of Law (J.D., 1996).

**Robert J. Wozniak**

Robert J. Wozniak is an associate attorney at Freed Kanner London & Millen LLC. Since

2001, Mr. Wozniak has been involved in complex commercial litigation, with a primary emphasis on

antitrust and consumer class action cases.  Prior to engaging in private law practice, Mr. Wozniak

worked as a trial attorney for the United States Department of Justice, Antitrust Division (Honors

- 12 -



Program). Mr. Wozniak was then employed by Cohen Milstein Hausfeld & Toll, a Washington, D.C. class action firm, before joining Freed Kanner London & Millen in 2004 (at what was then the class action practice of Much Shelist Freed Denenberg Ament & Rubenstein, P.C.).  The complex antitrust class actions in which Mr. Wozniak has had significant involvement include: *In re Intel Corp. Microprocessor Antitrust Litig.* (D. Del.), *In re Static Random Access Memory (SRAM) Antitrust Litig.* (N.D. Cal.), *In re Southeastern Milk Antitrust Litig.* (E.D. Tenn.), *In re Methyl Methacrylate (MMA) Antitrust Litigation* (E.D. Pa.), *In re Hydrogen Peroxide Antitrust Litigation* (E.D. Pa.), *In re Dynamic Random Access Memory (DRAM) Litigation* (N.D. Cal.), *In re Buspirone Antitrust Litigation* (S.D.N.Y.), and *In re Terazosin Hydrochloride Antitrust Litigation* (S.D. Fla.). Mr. Wozniak is a graduate of the University of Michigan (B.A., 1988), University of Minnesota (M.A., 1994), and Wayne State University Law School (J.D., 2000, *cum laude*, Order of the Coif). He is a member of the State Bar of Illinois, State Bar of Michigan and Bar of the District of Columbia.

**Labaton Sucharow**

RESUME OF

LABATON SUCHAROW LLP

ANTITRUST PRACTICE GROUP

# THE FIRM AND ITS ACHIEVEMENTS

## Table of Contents

Antitrust Practice Group ........................................................................................... 1

Major Recoveries In Antitrust Actions..................................................................... 1

Court Commentary About The Firm's Antitrust Practice ..................................... 2

Current Lead Or Co-Lead Counsel Appointments ................................................ 3

Other Major Pending Antitrust Cases...................................................................... 7

Significant Settlements In Which The Firm Played A Major Role.................... 10

The Firm's Role In Advancing Corporate Governance ...................................... 11

Attorneys at Labaton Sucharow ............................................................................. 13

      LAWRENCE A. SUCHAROW, CHAIRMAN ................................................... 14

      BERNARD PERSKY, PARTNER ....................................................................... 15

      THOMAS A. DUBBS, PARTNER ..................................................................... 17

      HOLLIS L. SALZMAN, PARTNER.................................................................... 18

      CHRISTOPHER J. MCDONALD, PARTNER .................................................... 20

      RICHARD T. JOFFE, OF COUNSEL ................................................................ 21

      GREGORY ASCIOLLA, ASSOCIATE ............................................................... 22

      MICHAEL W. STOCKER, ASSOCIATE............................................................ 24

      KELLIE SAFAR-LERNER, ASSOCIATE........................................................... 24

      WILLIAM V. REISS, ASSOCIATE.................................................................... 25

      BENJAMIN D. BIANCO, ASSOCIATE ............................................................ 26

      MORISSA FALK, ASSOCIATE ......................................................................... 27

      VICKY KU, ASSOCIATE .................................................................................. 28

      YOKO GOTO, ASSOCIATE ............................................................................. 28

Founded in 1963, Labaton Sucharow LLP is an internationally respected law firm with more than 60 attorneys and a professional staff that includes certified public accountants, financial analysts, e-discovery specialists and investigators with extensive private sector and federal law enforcement experience.  The Firm is based in New York City and has relationships throughout Europe

Labaton Sucharow's experienced antitrust counsel have engaged in major complex antitrust, securities, consumer, products liability and RICO class action litigation throughout the United States involving commercial activities ranging from trading derivatives (copper, natural gas and crude oil futures, equity options), to supplying inputs to production and related services (industrial chemicals, food additives, paper, resins, vitamins, ocean freight shipping), to selling finished goods (food products, prescription drugs), to salary disputes.

Labaton Sucharow is also known and respected for its Investor Protection Litigation Group, which offers comprehensive services for our institutional investor clients and has recovered, through trial and settlement, more than $3 billion for the benefit of investors who have been victimized by such diverse schemes as stock price manipulation, mismanagement, and fraudulent offerings of securities.  In addition to obtaining monetary recoveries for injured investors, the Group regularly secures corporate governance reforms to meaningfully change the way that boards of directors and management of defendant companies operate, thus minimizing the likelihood that perpetrators of securities fraud will repeat their wrongful conduct.

Visit our website at **www.labaton.com** for more information about our Firm

## ANTITRUST PRACTICE GROUP

The Firm's Antitrust Practice Group represents businesses, unions and consumers in class actions to combat price-fixing, monopolization, bid-rigging and other anticompetitive or unfair business practices.

Labaton Sucharow's pioneering efforts in antitrust litigation are exemplified by its having long been on the front lines in the struggle to control the rising cost of prescription pharmaceuticals. In 1996, in the *In re Brand Name Prescription Drug Litigation*, Labaton Sucharow obtained a $65 million settlement on behalf of consumers. In addition to obtaining this substantial recovery, the Firm secured Court approval to use settlement funds to subsidize approximately one million prescriptions for low-income patients at community health centers in eleven states. Since then, the Firm has recovered almost $1 billion for prescription drug purchasers injured by pharmaceutical company misconduct.

## MAJOR RECOVERIES IN ANTITRUST ACTIONS

As Lead or Co-Lead Counsel, Labaton Sucharow's Antitrust Practice Group has achieved many outstanding results. Recent (2000 - 2008) highlights include the following:

- In 2008, obtained preliminary approval of an $85 million partial settlement on behalf of businesses and consumers injured by an alleged conspiracy by defendants Deutsche Lufthansa AG, Lufthansa Cargo AG, and Swiss International Air Lines Ltd. to fix cargo surcharges. The case continues against remaining defendants. *In re Air Cargo Shipping Services Antitrust Litigation*, C.A. No. 1:06-MD-01775 (CBA) (E.D.N.Y.).

- In 2006-2007, obtained $101 million in settlements on behalf of a class of NYMEX natural gas futures traders injured by defendant energy companies' alleged manipulation of published price indices. This is the second-largest class action commodities manipulation recovery on record. *In re Natural Gas Commodity Litigation*, C.A. No. 1:03-cv-06186 (VM) (S.D.N.Y.).

- In 2005-2006, obtained $47 million in settlements on behalf of a class of equity options purchasers injured by an alleged scheme to restrict the exchange listing of equity options.

*In re Stock Exchanges Options Trading Antitrust Litigation*, MDL No. 1283;  C.A. No. 1:99-cv-00962 (RCC) (S.D.N.Y.).

- In 2004, obtained a $90 million settlement on behalf of third-party payors (union health and welfare funds and insurers) nationwide, and consumers in certain states, for claims that Bristol-Myers Squibb engaged in monopolistic and anticompetitive conduct in marketing BuSpar, an anti-anxiety drug.  *In re Buspirone Antitrust Litigation*, MDL No. 1413; C.A. No. 1:01-md-01413 (JGK) (S.D.N.Y.).

- In 2003, obtained $135.4 million in settlements on behalf of consumers and third-party payors nationwide for claims that Mylan Laboratories, Inc. implemented unlawful and anticompetitive price increases for generic versions of the anti-anxiety drugs Lorazepam and Clorazepate.  *In re Lorazepam and Clorazepate Antitrust Litigation*, MDL No. 1290; C.A. No. 1:99-cv-01082 (TFH) (D.D.C.).

- In 2002, obtained $18 million in settlements of price fixing and market allocation claims against Pfizer, Inc. and others on behalf of businesses that directly purchased the food additives Maltol and Sodium Erythorbate.  *In re Maltol Antitrust Litigation*, C.A. No. 1:99-cv-05931 (TPG) (S.D.N.Y.).

- In 2001, obtained a $44.5 million settlement on behalf of consumers and third-party payors for claims that DuPont Pharmaceuticals Company unlawfully suppressed generic competition for Coumadin, a blood-thinning drug.  *In re Warfarin Sodium Antitrust Litigation*, MDL No. 1232; C.A. No. 1:98-md-01232 (SLR) (D. Del.).

- In 2000, obtained almost $90 million in settlements in California state court on behalf of business purchasers of copper products harmed by the alleged unlawful inflation of copper prices by Sumitomo Corporation and others.  *Heliotrope General, Inc. v. Credit Lyonnais Rouse, Ltd., et al.*, C.A. No.  GIC749280 (JMB) (Superior Court, County of San Diego, California).

## COURT COMMENTARY ABOUT THE FIRM'S ANTITRUST PRACTICE

- *"The class counsel are well-qualified to litigate this type of complex class action, and they showed their effectiveness in the case at bar through the favorable cash settlement they were able to obtain."*

     — Chief Judge Sue L. Robinson

*In re Warfarin Sodium Antitrust Litigation*, MDL 1232; C.A. No. 1:98-md-01282 (SLR) (D. Del.) (approving $44.5 million cash settlement).

- *"Let me say that the lawyers in this case have done a stupendous job.  They really have."*

  — Judge John Koeltl

  *In Re Buspirone Antitrust Litigation*, MDL No. 1413; C.A. No. 1:01-md-01413 (JGK) (S.D.N.Y.) (approving $90 million settlement with Bristol-Myers Squibb).

- *"I think the lawyering in this case is most commendable...[Counsel] have accorded themselves in a manner that allows us to be proud of the profession."*

  — Judge Myron S. Greenberg

- *"This Court has been helped along every step of the way by some outstanding lawyering...  [Y]ou can hardly say that there has been anything but five star attorneys involved in this case."*

  — Judge Moria G. Krueger

- *"I'll join my learned colleagues...in commending counsel in arriving at something that represents a great deal of hard work and a great deal of ingenuity in putting together a settlement of this magnitude and complexity."*

  — Judge Carl O. Bradford

  *In re Brand Name Prescription Drug Litigation* settlement comments from the bench.  Courts in ten states and the District of Columbia approved almost $65 million in cash settlements on behalf of consumers who purchased brand-name drugs at retail from brand name prescription drug manufacturers.  Judges Greenberg, Krueger and Bradford oversaw, respectively, the Minnesota, Wisconsin and Maine actions.  *See Kerr v. Abbott Laboratories*, C.A. No. 96-2837 (MSG) (4th Judicial District, Hennepin County, Minnesota); *Scholfield v. Abbott Laboratories, et al.*, C.A. No. 96-cv-460 (MGA) (Circuit Court, Dane County, Wisconsin), *Karofsky v. Abbott Laboratories, et al.*, C.A. No. cv-95-1009 (COB) (Superior Court, Cumberland County, Maine).

## CURRENT LEAD OR CO-LEAD COUNSEL APPOINTMENTS

### IN RE FLAT GLASS II ANTITRUST LITIGATION
### MDL NO. 1942 (W.D. PA.)

In July 2008, Labaton Sucharow LLP was appointed Co-Lead Counsel representing plaintiffs who allege that several manufacturers of flat glass entered into a global conspiracy to fix, raise, and maintain prices for sales of flat glass in the United States and elsewhere, in

violation of the federal antitrust laws. A Consolidated Amended Complaint will be filed in September 2008.

## IN RE MARINE HOSES ANTITRUST LITIGATION
## MDL NO. 1888 (S.D. FLA.)

In February 2008, Labaton Sucharow LLP was appointed Co-Lead Counsel representing plaintiffs who allege that several manufacturers of marine hoses entered into a global conspiracy to fix prices and allocate markets in order to suppress and eliminate competition for sales of marine hoses in the United States and elsewhere, in violation of the federal antitrust laws. On July 11, 2008, Plaintiffs entered into a $6.5 million settlement with Dunlop Oil and Marine Ltd, and its former employees Bryan Allison and David Brammar. The case is proceeding against the remaining Defendants.

## IN RE ENERGY TRANSFER PARTNERS NATURAL GAS LITIGATION,
## MASTER FILE NO. 4:07-CV-03349 (S.D. TEX.)

In November 2007, Labaton Sucharow was appointed Co-Lead Counsel in *In re Energy Transfer Partners Natural Gas Litigation*, representing plaintiffs who allege Energy Transfer Partners, a multi-billion dollar publicly-traded energy company, manipulated the price of NYMEX natural gas futures and options contracts downward over a two-year period in violation of the Commodity Exchange Act. Defendants have moved to dismiss the claims, and the parties are currently briefing the motion.

## RIO GRANDE ROYALTY COMPANY V. ENERGY TRANSFER PARTNERS,
## C.A. NO. H-08-0857

Labaton Sucharow is also Lead Counsel in *Rio Grande Royalty Company v. Energy Transfer Partners*, a class action based on the same conduct referred to above, but brought under the antitrust laws alleging conspiracy and monopolization claims. In *Rio Grande*, the Firm represents plaintiffs who sold natural gas at a price referencing the Houston Ship Channel Index, which they claim was unlawfully fixed based on Defendants' abuse of monopoly power at the Houston Ship Channel, a major delivery hub for natural gas in Texas and the United States. Defendants have moved to dismiss the antitrust claims as well, and the parties are currently briefing the motion.

## IN RE AIR CARGO SHIPPING SERVICES ANTITRUST LITIGATION
## C.A. NO. 1:06-MD-01775 (CBA) (E.D.N.Y.)

In November 2006, Labaton Sucharow was appointed co-lead counsel for plaintiffs and a proposed class of businesses and consumers who allege that the defendant airlines participated in a global conspiracy to fix shipment surcharges in the $50 billion airfreight shipping services industry and to allocate customers, routes and territories. A Consolidated Amended Complaint was filed in February 2007. Defendants' motions to dismiss were briefed later in 2007 and argued in early 2008, and decisions on the motions are pending. In April 2008, an $85 million settlement with defendants Deutsche Lufthansa AG, Lufthansa Cargo AG, and Swiss International Air Lines Ltd. was preliminarily approved. The case is continuing against the remaining defendants.

### ANIMALFEEDS INTERNATIONAL CORP. V. STOLT-NIELSEN SA
### C.A. NO. 06-CV-00420 (JSR) (S.D.N.Y.), APPEAL FILED, NO. 06-3473-CV (2d CIR.)

Labaton Sucharow is Co-Lead Counsel on behalf of a class of direct purchasers of parcel tanker ocean shipping services. Plaintiff alleges that the defendant shipping companies engaged in a global cartel and conspiracy to restrain the world market for parcel tanker shipping services, which caused the plaintiff and the proposed class to pay inflated prices for the transportation of bulk liquid chemicals, edible oils, acids, and other specialty liquids. Many of the defendants have pleaded guilty to the alleged anticompetitive conduct and paid substantial fines. Although plaintiff initially prevailed in its motion to proceed in arbitration as a class action, a district court overruled the unanimous decision of the 3-member arbitration panel. The district court's decision is on appeal to the Second Circuit Court of Appeals. Plaintiff maintains that where a contract requires disputes concerning statutory rights to be resolved in arbitration, plaintiffs must be allowed to seek relief as a class in order to effectively vindicate their rights.

### IN RE CIPROFLOXACIN HYDROCHLORIDE ANTITRUST LITIGATION
### C.A. NO. 05-2863-CV (2d CIR.)

Labaton Sucharow is Co-Lead Counsel for a class of third-party payors and consumers. Defendant, a brand-name drug company, paid a generic competitor about $400 million to settle patent infringement litigation involving a lucrative brand-name drug, Bayer's Cipro® brand antibiotic. The generic competitor had claimed that the brand-name drug company's patent was invalid or unenforceable. A final federal court verdict to that effect would have permitted generic versions of the brand-name product to come to market, resulting in much lower prices for consumers and third-party payors. The brand-name manufacturer paid off the generic challenger to drop the suit. This phenomenon is known as a "reverse payment" settlement because in ordinary patent infringement cases, it is unheard of for the patent holder to pay the alleged infringer to settle a case; any money paid in settlement usually flows from the infringer to the patent holder. If allowed to stand, brand-name drug companies will continue to pay off rivals who challenge lucrative patents of dubious validity, resulting in continued monopoly-level pricing of essential medicines. This matter is currently on appeal to the United States Court of Appeals for the Federal Circuit.

### IN RE TRICOR INDIRECT PURCHASER ANTITRUST LITIGATION
### C.A. NO. 1:05-CV-00360 (D. DEL.)

Labaton Sucharow is Co-Lead Counsel for a class of third-party payors and consumers against Abbott Laboratories and French pharmaceutical company Fournier. Abbott markets the TriCor brand of prescription cholesterol-lowering drug products in the US pursuant to a license from Fournier, which holds several patents relating to TriCor. Abbott and Fournier are accused of abusing FDA regulations, defrauding the US Patent and Trademark Office and engaging in anticompetitive conduct in the marketplace to deprive doctors and consumers of a meaningful opportunity to choose less expensive generic versions of TriCor. The court denied the defendants' motion to dismiss in May 2006, discovery is ongoing and plaintiffs' motion for class certification is pending.

*IN RE ABBOTT LABORATORIES ANTITRUST LITIGATION*
*C.A. NO. 4:04-CV-01511-CW (N.D. CAL.)*

Labaton Sucharow has been prosecuting the case as Co-Lead Counsel since 2004, shortly after Abbott raised the price of a key HIV drug, Norvir, by 400%. Since then, the Firm has scored significant victories on behalf of patients with HIV and their health insurers.

Norvir is a critical component of an antiretroviral drug "cocktail" used in the treatment of HIV and AIDS; when used in combination treatment, Norvir significantly boosts the efficacy of the other HIV/AIDS drugs it is paired with. Abbott is allegedly trying to drive the medical community to either use Abbott's own AIDS treatment combination, called Kaletra (which contains the active ingredient in Norvir), or pay exorbitant amounts for Norvir as a stand alone product. In 2003, Abbott quadrupled the price of Norvir – thus making its use in combination with HIV/AIDS drugs of other manufacturers significantly more expensive – but did not raise the price of Kaletra. Other HIV/AIDS drug cocktails containing Norvir are more effective than Kaletra, so third-party payors such as the Service Employees International Union Health and Welfare Fund – the Firm's client and one of the lead plaintiffs – claim they have been forced to pay an unlawful price increase that violates antitrust laws. Despite boycotts by some HIV physicians and investigations launched by several states and a congressional committee, Abbott refused to roll back its anticompetitive price hike.

Thus far Labaton Sucharow has successfully defeated Abbott's motion to dismiss the case, and on July 6, 2006, in a ground-breaking decision, United States District Judge Claudia Wilken denied Abbott's motion for summary judgment. Abbott argued that it owned a patent on the method of using Norvir to boost other AIDS drugs, and that it could legally take steps to prevent consumers from using Norvir with other HIV drugs. In rejecting Abbott's argument the Court made key rulings dealing with the intersection of intellectual property and antitrust law.

On June 12, 2007, the Court, among other things, granted plaintiffs' motion and certified a nationwide class of consumers and third-party payors for injunctive relief and for damages under California law.

Most recently, on May 16, 2008, the Court granted plaintiffs' cross-motion for partial summary judgment invalidating three of Abbott's key patents involving Norvir. The Court also denied, in part, Abbott's motion for summary judgment and held that plaintiffs have demonstrated a triable issue of fact with respect to all of the elements of a Sherman Act claim, including antitrust injury, monopoly power (through direct and circumstantial evidence) and anticompetitive conduct.

The case, which if successful will preserve legitimate competition in the market for drugs critical to the survival of people living with AIDS, is set to go to trial in August 2008.

*IN RE FOUNDRY RESINS ANTITRUST LITIGATION*
*C.A. NO. 2:04-MD-01638-GLF-MRA (S.D. OHIO)*

> Labaton Sucharow is Co-Lead Counsel for a class of direct purchasers who allege that defendant suppliers have illegally conspired to fix prices, rig bids and allocate customers in the market for foundry resins. After plaintiffs' motion for class certification was granted and merits discovery was commenced, the parties entered into settlements totaling $14.2 million, approximately 90% of the damages estimated by plaintiffs' experts. The settlement was finally approved in March 2008 and claims administration is ongoing.

*IN RE OXYCONTIN ANTITRUST LITIGATION*
*C.A. NO. 1:04-MD-01603 (SHS) (S.D.N.Y.)*

> Labaton Sucharow is Co-Lead Counsel and represents third-party payors and consumers in this antitrust and consumer protection class action. Plaintiffs allege that consumers have paid inflated prices for the drug OxyContin® because defendant Purdue Pharma purposely misled the Patent and Trademark Office about the efficacy of OxyContin® in obtaining the patent. Plaintiffs further claim that Purdue initiated sham patent infringement litigation to stave off generic competition and thereby maintain its monopolistic prices. The parties are awaiting a decision on the defendants' motions to dismiss.

## OTHER MAJOR PENDING ANTITRUST CASES

*IN RE CHOCOLATE CONFECTIONARY ANTITRUST LITIGATION*
*1:08-MDL-01935-CCC MDL 1935*

> Labaton Sucharow, a member of the Plaintiffs' Executive Committee, represents confectioneries, wholesalers, and consumers who directly purchased chocolate and allege that Defendant chocolate manufacturers participated in a conspiracy to fix prices of chocolate at above-market levels, in violation of the federal antitrust laws.

*IN RE AMARANTH NATURAL GAS COMMODITIES LITIGATION*
*MASTER FILE NO. 07-CIV. 6377 (S.D.N.Y.)*

> Labaton Sucharow is currently working with other counsel in representing plaintiffs who allege Amaranth, a large multi-strategy trading fund, manipulated the prices of NYMEX natural gas contracts in 2006 in violation of the Commodity Exchange Act ("CEA"). Plaintiffs also allege J.P. Morgan, Amaranth's clearing broker and futures commission merchant, aided and abetted Amaranth in its unlawful conduct in violation of the CEA. Defendants have moved to dismiss the claims, and the parties are currently briefing the motions.

**IN RE PAYMENT CARD INTERCHANGE FEE AND
  MERCHANT DISCOUNT ANTITRUST LITIGATION
C.A. NO. 1:05-MD-01720 (JG) (E.D.N.Y.)**

Labaton Sucharow, a member of Plaintiffs' Executive Committee, represents merchants who filed suit against Visa, MasterCard, and their member banks for conspiring to impose exorbitant "interchange fees" – a per-use charge on credit cards, imposed on the retailer. The consolidated cases are currently in the midst of discovery and plaintiffs' motion for class certification is pending.

**IN RE FUNERAL CONSUMERS ANTITRUST LITIGATION
C.A. NO. 4:05-CV-03394 (KMH) (S.D. TEX.)**

Labaton Sucharow is currently working with other counsel in prosecuting claims that the three largest funeral home chains in the U.S. and the dominant manufacturer of caskets have engaged in a group boycott against independent casket discounters and fixed the prices of caskets at artificially high levels in violation of state and federal antitrust laws. These unlawful practices are alleged to have suppressed competition in casket sales, forcing that consumers to pay artificially inflated prices for caskets. Plaintiffs' motion for class certification is pending before the court.

**IN RE NEW MOTOR VEHICLES CANADIAN EXPORT ANTITRUST LITIGATION
C.A. NO. 2:03-MD-01532 (DBH) (D. ME.)**

Labaton Sucharow, a member of Plaintiffs' Executive Committee, represents Plaintiffs who allege that the major car manufacturers conspired to prevent lower-priced new cars sold in Canada from being imported into the United States. The effect of the conspiracy was to restrict inter-brand competition within the United States market for new cars, to maintain new car prices in the United States at levels that are significantly higher than prices charged in Canada for the same cars, and to maintain the prices for new cars in the United States at supracompetitive levels.

On February 24, 2006, Toyota Motor Sales USA agreed to pay $35 million to settle Plaintiffs' claims. Toyota also agreed to refrain from engaging in anticompetitive conduct with other auto makers and trade associations. The Toyota settlement has not yet been approved by the court.

On June 15, 2007, the District Court certified a nationwide class for injunctive relief and a 20 state class for damages. This decision was recently reversed by the United States Court for the first Circuit Court of Appeals and Plaintiffs' Petition for Rehearing En Banc was denied.

**AMERICAN BANANA CO., INC. v. DEL MONTE FRESH PRODUCE COMPANY
C.A. NO. 1:03-CV-10230-RMB (S.D.N.Y.)**

Labaton Sucharow, a member of Plaintiffs' Executive Committee, represents direct purchasers of a particular pineapple variety in this litigation. Del Monte, the world's leading seller of pineapples, allegedly obtained a patent for the extra-sweet pineapple by defrauding the U.S. Patent and Trademark Office, and misleadingly used that patent to interfere with

competitors and initiate sham litigation against them. The Court recently granted class certification and denied, in part, the defendants' motion to dismiss.

### IN RE DDAVP INDIRECT PURCHASER ANTITRUST LITIGATION
### C.A. NO. 7:05-CV-02237 (CLB) (S.D.N.Y.)

Labaton Sucharow brought this antitrust suit on behalf of a class of consumers and prescription drug benefit providers alleging antitrust claims against Dutch drug company Ferring and U.S. drug company Aventis Pharmaceuticals. The defendants are alleged to have unlawfully maintained their monopoly on the diuretic drug, desmopressin acetate (known as DDAVP), by fraudulently procuring a patent that effectively blocked generic drug manufacturers from coming to market with less expensive generic versions of DDAVP. Labaton Sucharow, as third-party payor allocation counsel, is currently working with other counsel in prosecuting claims on behalf of endpayors who overpaid for DDAVP. The district court's decision dismissing plaintiffs' claims for lack of standing is on appeal to the Second Circuit.

### IN RE HYDROGEN PEROXIDE ANTITRUST LITIGATION
### C.A. NO. 2:05-MD-01682 (SD) (E.D. PA.)

Labaton Sucharow brought direct purchaser antitrust claims against thirteen of the world's leading hydrogen peroxide manufacturers alleging that they formed a cartel that horizontally restrained trade for at least the past decade. Hydrogen peroxide is a versatile industrial chemical widely used by the pulp, paper and textile industries to bleach their products, by municipalities to treat drinking and industrial waste water, and by manufacturers of sodium perborate, which is used in dishwashing and laundry agents. Several dozen individual actions have been consolidated for pretrial purposes in the United States District Court for the Eastern District of Pennsylvania. Labaton Sucharow is working with other counsel for direct purchasers in the consolidated class cases to prosecute claims against the defendants on behalf of corporations that bought hydrogen peroxide directly from one or more of the defendants. The Court recently rejected the defendants' motion to dismiss the plaintiffs' claims, and certified the class of direct purchasers. Discovery is ongoing and partial settlements have been preliminarily approved.

### IN RE NEURONTIN ANTITRUST LITIGATION
### MDL NO. 1479; C.A. NO. 2:02-CV-01390 (FSH) (D.N.J.)

This case arises from Warner-Lambert's alleged abuse of the patent process in order to maintain a monopoly on a drug long past the original patent term. Gabapentin, sold under the brand name Neurontin, was approved by the FDA in 1993, and it is alleged that the last legitimately applicable patent expired on January 16, 2000. No generic formulations for Neurontin were launched, however, until October 8, 2004, when they were marketed "at risk" during pending patent litigation. Labaton Sucharow is third-party payor allocation counsel. Plaintiffs have filed an amended complaint and discovery is about to commence.

# SIGNIFICANT SETTLEMENTS IN WHICH
# THE FIRM PLAYED A MAJOR ROLE

## IN RE MICROCRYSTALLINE CELLULOSE ANTITRUST LITIGATION
## C.A. NO. 2:10-MD-01402 (TNO) (E.D. PA.)

Labaton Sucharow represented direct purchasers of microcrystalline cellulose, a natural substance derived from the pulp of wood and often used as a safe filler for tablets and to enhance certain desirable qualities in common food products such as fat reduction or fiber enhancement. FMC Corporation and Asahi Chemical Industry Co, Ltd. were accused of entering into agreements to attempt to corner the market and restrain competition for the manufacture and sale of this product, resulting in higher prices. In 2006, the court approved a settlement of the case of over $50 million.

## IN RE POLYCHLOROPRENE RUBBER ANTITRUST LITIGATION
## C.A. NO. 3:05-MD-01642 (SRU) (D. CONN.)

Labaton Sucharow represented a class of direct purchasers of Neoprene, a synthetic rubber product. Due to defendants' conspiracy to raise, fix, maintain and/or stabilize prices of Neoprene, direct purchasers were forced to pay artificially inflated prices for Neoprene. Labaton Sucharow acted as Settlement Counsel in the action and allocation counsel in the proceedings concerning the allocation of the Neoprene case's share of Bayer's overall settlement in the Rubber Chemicals, Neoprene, and EPDM antitrust cases. The settlements were approved in 2006.

## RELAFEN ANTITRUST LITIGATION
## C.A. NO. 1:01-CV-12222 (WGY) (D. MASS.)

In 2002, Labaton Sucharow filed a class action on behalf of direct purchasers (e.g. wholesalers and distributors) against GlaxoSmithKline Corporation (GSK) and its predecessors. The suit alleged that GSK fraudulently obtained a patent to prevent a generic version of Relafen® from coming to the market. Relafen® is an anti-inflammatory drug used in the treatment of arthritis, rheumatism, gout, tendonitis and menstrual cramps. The parties agreed to a $175 million settlement, which was finally approved by the Court on April 9, 2004. The Firm served as Co-Chair of the Discovery Committee.

## RYAN-HOUSE V. GLAXOSMITHKLINE PLC
## C.A. NO. 2:02-CV-0442 (HCM) (E.D. VA.)

Labaton Sucharow represented a class of prescription drug benefit providers and consumers who alleged that GlaxoSmithKline misled the U.S. Patent and Trademark Office into issuing "evergreening" patents to protect Augmentin® from competition from generic drug substitutes. In 2005, the court approved a settlement of $29 million. The Firm served as third-party payor allocation counsel.

*NICHOLS V. SMITHKLINE BEECHAM CORPORATION*
*C.A. NO. 2:00-CV-06222 (JP) (E.D. PA.)*

> Labaton Sucharow represented a class of consumers and prescription drug benefit providers who overpaid for the drug Paxil, a commonly prescribed medication used to treat depression. Plaintiffs alleged that GlaxoSmithKline monopolized the market for Paxil and its generic bioequivalents, by filing serial sham litigations intended to block lower-priced generic competitors. In April 2005, the court approved a $65 million settlement. The Firm served as third-party payor allocation counsel.

*IN RE VITAMIN PRODUCTS ANTITRUST LITIGATION*
*CASE NO. 96-CV-0460 (WISC. CIRC. CT. AND OTHER STATE COURTS)*

> Labaton Sucharow represents plaintiffs who alleged a horizontal price-fixing and market allocation conspiracy among vitamin manufacturers. As a member of the National Executive Committee and as Co-Lead Counsel in the Wisconsin state indirect purchaser case, Labaton Sucharow has recovered over $267.5 million to date on behalf of indirect purchasers of vitamins.

*VISTA HEALTHPLAN, INC. V. BRISTOL-MYERS SQUIBB CO.*
*CASE NO. 1:01-CV-01295 (EGS) (D.D.C.)*

> Bristol-Myers Squibb allegedly listed phony patents with the FDA in order to unlawfully extend its monopoly for the anti-cancer drug, Taxol. Labaton Sucharow served as sub-class co-lead counsel for third-party payors in this litigation, whose claims were settled for over $15 million.

*KELLEY SUPPLY, INC. V. EASTMAN CHEMICAL CO.*
*CASE NO. 99-CV-001528 (CIR. CT., DANE CO., WIS.)*
        *-AND-*
*ORLANDO'S BAKERY V. NUTRINOVA NUTRITION SPECIALTIES & FOOD INGREDIENTS, GMBH*
*CASE NO. 99-560-II (CHANCERY COURT, DAVIDSON CO., TENN.)*

> Labaton Sucharow, as Co-Lead Counsel, represented a multistate class of indirect purchasers of potassium sorbate, a chemical preservative used in food products, alleging that defendants engaged in a worldwide conspiracy to fix prices for the product. Plaintiffs obtained settlements in Wisconsin and Tennessee totaling over $10.4 million.


## THE FIRM'S ROLE IN ADVANCING CORPORATE GOVERNANCE

Not only is Labaton Sucharow a recognized leader in Antitrust and Securities litigation,

the Firm is also committed to corporate governance reform. The Firm is a patron of the John L.

Weinberg Center for Corporate Governance of the University of Delaware. The Center provides

a forum for business leaders, directors of corporate boards, the legal community, academics, practitioners, graduate and undergraduate students, and others interested in corporate governance issues to meet and exchange ideas.  One of Labaton Sucharow's senior partners, Edward Labaton, is a member of the Advisory Committee of The Center.  Additionally, Mr. Labaton has for more than 10 years served as a member of the Program Planning Committee for the annual ALI-ABA Corporate Governance Institute, and serves on the Task Force on the Role of Lawyers in Corporate Governance of the Association of the Bar of the City of New York.

On behalf of its institutional and individual investor clients, Labaton Sucharow has achieved some of the largest precedent-setting settlements since the enactment of the Private Securities Litigation Reform Act of 1995, and has helped deter future instances of securities fraud by negotiating substantial corporate governance reforms as a condition of many of its largest settlements.

Because of the depth of their experience and deep commitment to the principles of corporate governance, many Labaton Sucharow partners have served as featured speakers at various symposia and lectures on topics relating to corporate governance and reform.

The Firm's clients have secured meaningful reforms, in addition to substantial monetary recoveries, in significant settlements in securities class actions, such as:

*IN RE WASTE MANAGEMENT, INC. SECURITIES LITIGATION*
*C.A. NO. 4:99-CV-02183 (MH) (S.D. TEX.)*

> Labaton Sucharow, as Lead Class Counsel representing Lead Plaintiff, State of Connecticut Retirement Plans & Trust Funds, caused the Company to fund promotion of a shareholder vote in favor of a binding resolution to declassify its board of directors.  The resolution was approved by its shareholders.  As a consequence of Labaton Sucharow's efforts, the Company further agreed to amend its Audit Committee charter, which led to its enhanced effectiveness.

*IN RE VESTA INSURANCE GROUP SECURITIES LITIGATION*
*C.A. NO. 2:98-CV-01407 (KOB) (N.D. ALA.)*

> Labaton Sucharow, as Lead Counsel representing Lead Plaintiff, Florida State Board of Administration, caused the Company to adopt provisions requiring that: (i) a majority of its Board members be independent; (ii) at least one independent director be experienced in corporate governance; (iii) the audit, nominating and compensation committees be comprised entirely of independent directors; and (iv) the audit committee comply with the recommendations of a Blue Ribbon Panel on the effectiveness of audit committees.

*IN RE ORBITAL SCIENCES CORPORATION SECURITIES LITIGATION*
*C.A. NO. 1:99-CV-00197 (LMB) (E.D. VA.)*

> Labaton Sucharow, as Lead Counsel representing Lead Plaintiff, New York City Pension Funds, negotiated the implementation of measures concerning the Company's quarterly review of its financial results, the composition, role and responsibilities of its Audit and Finance committee, and the adoption of a Board resolution providing guidelines regarding senior executives' exercise and sale of vested stock options.

*IN RE BRISTOL-MYERS SQUIBB SECURITIES LITIGATION*
*C.A. NO. 3:00-CV-01990 (SRC) (D.N.J.)*

> Labaton Sucharow, as Lead Counsel representing Lead Plaintiff, LongView Collective Investment Fund of the Amalgamated Bank, negotiated noteworthy corporate governance reforms. Bristol-Myers Squibb has agreed to publicly disclose the following information concerning all of its drugs marketed for at least one indication: a description of the clinical study design and methodology; results of the clinical trials; and safety results, including the reporting of adverse events seen during the clinical trials. The disclosures will be posted on BMS's website, www.BMS.com, as well as an industry website, www.clinicalstudyresults.org. BMS has agreed to post these disclosures for a 10-year period following approval of the settlement, and has further agreed that any modifications to the disclosure protocol must be approved by the Court, at the request of Labaton Sucharow as Lead Counsel, unless the modifications increase the scope of the disclosures. The corporate reform measures obtained in this case exceed the scope of reforms obtained by New York State Attorney General Eliot Spitzer in his settlement of an action against GlaxoSmithKline in that the State Action was limited to disclosures regarding drugs sold in the United States, whereas as a result of the BMS settlement, the Company must post the clinical trial results of drugs marketed throughout the world.

## ATTORNEYS AT LABATON SUCHAROW

Among the attorneys at Labaton Sucharow who are involved in the prosecution of antitrust litigation are Partners Lawrence A. Sucharow, Bernard Persky, Thomas A. Dubbs, Hollis L. Salzman, Christopher J. McDonald, Of Counsel Attorney Richard T. Joffe, and

Associates Gregory Asciolla, Michael W. Stocker, Kellie Safar-Lerner, William V. Reiss, Benjamin D. Bianco, Morissa Falk, Vicky Ku, and Yoko Goto.  A short description of the qualifications and accomplishments of each follows.

### LAWRENCE A. SUCHAROW, CHAIRMAN                    *lsucharow@labaton.com*

*Lawrence A. Sucharow*, a nationally recognized leader of the securities class action bar, is the managing partner of Labaton Sucharow.  In this capacity, he participates in developing the litigation and settlement strategies for virtually all of the class action cases Labaton Sucharow prosecutes.

For more than three decades, Mr. Sucharow has devoted his practice to counseling clients and prosecuting cases on complex issues involving securities, antitrust, business transaction, product liability, and other class actions.  Mr. Sucharow has successfully recovered more than $1 billion on behalf of institutional investors such as state, city, county and union pension funds, shareholders of public companies, bondholders, purchasers of limited partnership interests, purchasers of consumer products and individual investors.

Mr. Sucharow recently obtained $225 million in savings for the class of *In re CNL Resorts, Inc. Securities Litigation*.  In other recently settled actions, Mr. Sucharow undertook a lead role in obtaining benefits for class members of $200 million (*In re Paine Webber Incorporated Limited Partnerships Litigation*); $110 million partial settlement (*In re Prudential Securities Incorporated Limited Partnerships Litigation*); $91 million (*In re Prudential Bache Energy Income Partnerships Securities Litigation*); and more than $92 million (*Shea v. New York Life Insurance Company*).  In approving the *Prudential* settlement, Judge Milton Pollack referred to the efforts of plaintiffs' counsel as "Herculean," stating: "…this case represents a unique recovery – a recovery that does honor to every one of the lawyers on your side of the case."

In addition, in 2002 Mr. Sucharow served as Co-Trial Counsel in a six-week trial of a federal securities law claim on behalf of 18,000 passive investors in the Real Estate Associates limited partnerships.  That trial resulted in an unprecedented $182 million jury verdict.

Mr. Sucharow is a member of the Federal Bar Council's Committee on Second Circuit Courts, and the Federal Courts Committee of the New York County Lawyers' Association.  He is also a member of the Securities Law Committee of the New Jersey State Bar Association and was the founding chairman of the Class Action Committee of the Commercial and Federal Litigation Section of the New York State Bar Association from 1988-1994.  He was honored by his peers by his election to serve as President of the National Association of Shareholder and Consumer Attorneys (NASCAT), a membership organization of approximately 100 law firms which practice complex civil litigation including class actions.

Mr. Sucharow earned a B.B.A., *cum laude*, from Baruch School of the City College of the City University of New York in 1971 and a J.D., *cum laude*, from Brooklyn Law School in 1975.

Mr. Sucharow is admitted to practice in New York and New Jersey.

### BERNARD PERSKY, PARTNER                                    bpersky@labaton.com

**Bernard Persky** is the Chair of the Firm's Antitrust Practice Group.  For more than 38 years his practice has involved complex business litigation and class actions, primarily antitrust, trade regulation, securities fraud and civil RICO.  Among his peers, he is recognized as a leading antitrust litigator.  He has played a key role in major antitrust class actions that have resulted in monetary recoveries to class members, including consumers and businesses, of well over $1 billion.

In *County of Suffolk v. Long Island Lighting Company*, a case in which Mr. Persky was Co-Lead Trial Counsel, the Second Circuit, in upholding a $400 million class settlement and awarding attorneys' fees to Plaintiff, quoted the trial judge, Honorable Jack B. Weinstein, as stating "counsel [has] done a superb job [and] tried this case as well as I have ever seen any case tried." 907 F.2d at 1327 (2d Cir. 1990).

Mr. Persky has acted as Co-Lead Counsel in major antitrust class actions, including: *In re Natural Gas Commodity Manipulation Litigation* ($101 million settlement); *In re Warfarin Sodium Antitrust Litigation* ($44.5 million settlement); *In re Buspirone Patent Litigation* ($90 million settlement); *In re Lorazepam & Clorazepate Antitrust Litigation* ($135 million settlement); *In re Stock Exchanges Options Antitrust Litigation* ($47 million settlement); *In re Foundry Resins Antitrust Litigation* ($14.2 million settlement); *In re TriCor Antitrust Litigation*; *In re Parcel Tanker Shipping Services Antitrust Litigation*; *In re OxyContin Antitrust Litigation* and *In re Energy Transfer Partners Natural Gas Litigation*.

He is a member of the Advisory Board of the American Antitrust Institute and the Executive Committee of the Antitrust Section of the New York State Bar Association and co-author of an article entitled "Antitrust Protections Expanded In New York," *New York Law Journal*. He has also lectured before bar associations (Indirect Purchaser Antitrust Litigation) and other interested groups (*How Viable Is Hatch Waxman Class Action Litigation: Plaintiffs' Perspective*).

Mr. Persky earned a B.A. from the City College of New York in 1965, graduating Phi Beta Kappa, and received a J.D., *cum laude*, from Harvard Law School in 1968.

He is admitted to practice in New York, before the United States Supreme Court, the United States Courts of Appeals for Second, Third and Fifth Circuits and the United States District Courts for the Southern, Eastern and Northern Districts of New York.

## THOMAS A. DUBBS, PARTNER                                    tdubbs@labaton.com

*Thomas A. Dubbs* specializes in the representation of institutional investors including pension funds in securities fraud and other types of litigation. A recognized leader in the field, Mr. Dubbs represented the first major private institutional investor to become a lead plaintiff in a class action under the Private Securities Litigation Reform Act.

Mr. Dubbs currently serves as Lead Counsel in the federal securities fraud class actions brought against AIG on behalf of Lead Plaintiff Ohio (comprised of several of Ohio's retirement systems) as well as Lead Counsel for the class and Lead Plaintiff New Mexico (comprised of several of New Mexico's retirement systems) in the securities class actions against St. Paul Travelers Companies, Inc. in relation to the merger between The St. Paul Companies and Travelers Property Casualty Corporation.

A Labaton Sucharow team led by Mr. Dubbs successfully litigated a class action against Bristol-Myers Squibb, which resulted in a settlement of $185 million and major corporate governance reforms.

Mr. Dubbs also led the team of Labaton Sucharow attorneys that represented the Lead Plaintiff, the Florida State Board of Administrators, in the *Vesta Insurance Group* class action. To date, settlements with the Company and its auditor, KPMG, total more than $79 million, which represents more than 37% of the damages sustained by the class.

Most recently, Mr. Dubbs leads the team prosecuting the *In re HealthSouth Securities Litigation* on behalf of the New Mexico State Investment Council, the Educational Retirement

Board of New Mexico, and the Michigan Pension Funds, the Court appointed Co-Lead Plaintiffs for stockholders of HealthSouth Corporation. Mr. Dubbs secured a partial settlement of $445 million from HealthSouth over the massive fraud that led to the healthcare provider's collapse and conviction of numerous former employees.

Prior to joining Labaton Sucharow, Mr. Dubbs was Senior Vice President & Senior Litigation Counsel for Kidder, Peabody & Co. where he represented the firm in many class actions, including the *First Executive* and *Orange County* litigations. Before joining Kidder, Mr. Dubbs was head of the litigation department at Hall, McNicol, Hamilton & Clark, where he was the principal partner representing Thomson McKinnon Securities Inc. in litigation matters including class actions such as the *Petro Lewis* and *Baldwin United* litigations.

He frequently lectures to institutional investors and other groups such as the Government Finance Officers Association, the National Conference on Public Employee Retirement Systems and the Council of Institutional Investors. Most recently, Mr. Dubbs spoke at the Ohio Forum on Public Retirement.

Mr. Dubbs received a B.A. and a J.D. from the University of Wisconsin in 1969 and 1974, respectively. In 1971, he earned an M.A. from the Fletcher School of Law and Diplomacy of Tufts University. Mr. Dubbs is a member of the New York State Bar Association and the Association of the Bar of the City of New York. He is admitted to practice in New York.

### HOLLIS L. SALZMAN, PARTNER                                hsalzman@labaton.com

*Hollis L. Salzman* is a partner in the Firm's Antitrust Practice Group. She represents businesses and consumers in cases involving federal and state antitrust law violations. She is also involved in the Firm's securities litigation practice group where she represents institutional

investors in portfolio monitoring and securities litigation. Some of Ms. Salzman's clients include MARTA and the City of Macon, Georgia.

Ms. Salzman is actively engaged in the prosecution of major antitrust class actions pending throughout the United States. She is presently Co-Lead Counsel in many antitrust cases, including: *In re Air Cargo Shipping Services Antitrust Litigation*, *In re Marine Hoses Antitrust Litigation*, and *In re Abbott Laboratories Norvir Antitrust Litigation* which is set for trial in August 2008. She is also actively involved in other pending major antitrust litigations, including *In re Funeral Consumers Antitrust Litigation*, *In re Pineapple Antitrust Litigation*, *In re New Motor Vehicles Canadian Export Antitrust Litigation*, and *In re Live Rock Concert Antitrust Litigation*.

She also served as Co-Lead Counsel in several antitrust class actions which resulted in extraordinary settlements for consumers and third-party payors. *In re Buspirone Antitrust Litigation* ($90 million settlement); *In re Lorazepam & Clorazepate Antitrust Litigation* ($35.4 million on behalf of third-party payors, and $100 million on behalf of consumers in conjunction with the Federal Trade Commission and State Attorneys General actions); also *In re Maltol Antitrust Litigation, and Continental Seasonings Inc. v. Pfizer, Inc., et al.*, ($18.45 million on behalf of direct purchasers of chemical food additives). Additionally, she was principally responsible for administering a $65 million settlement with certain brand-name prescription drug manufacturers where their conduct allegedly caused retail pharmacy customers to overpay for their prescription drugs.

Ms. Salzman is a Co-Chair of the New York State Bar Association, Commercial & Federal Litigation Section — Antitrust Committee.

Ms. Salzman is co-author of articles entitled "The State of State Antitrust Enforcement," NYSBA *NYLitigator*, Winter 2003, Vol. 8, No. 1, and "Analysis of Abbott Laboratories Antitrust Litigation," *Pharmaceutical Law & Industry Report*, June 20, 2008. She is also a member of the Association of the Bar of the City of New York Antitrust Committee and Women's Antitrust Bar Association. Ms. Salzman also provides pro bono representation to indigent and working-poor women in matrimonial and family law matters.

Ms. Salzman earned a B.A. in Economics from Boston University in 1987 and a J.D. from Nova University School of Law in 1992.

She is admitted to practice in New York, New Jersey and Florida as well as before the United States District Courts for the Southern and Middle Districts of Florida, the United States District Courts for the Southern and Eastern Districts of New York, and the United States Court of Appeals for the Eleventh Circuit.

### CHRISTOPHER J. MCDONALD, PARTNER                  cmcdonald@labaton.com

*Christopher J. McDonald*, a member of the Firm's Antitrust Practice Group, represents businesses, associations and individuals injured by anticompetitive activities. Mr. McDonald's practice also involves representing institutional investors victimized by securities fraud.

In the antitrust field, Mr. McDonald currently represents end-payors (e.g., union health and welfare funds and consumers) of the prescription drug TriCor® in the *In re TriCor Indirect Purchaser Antitrust Litigation*. The drug's manufacturer and U.S. marketer are alleged to have unlawfully impeded the introduction of lower-priced generic alternatives in violation of federal and state antitrust laws. The case is set to go to trial in early November 2008.

In the securities field, Mr. McDonald is currently prosecuting *In re Schering-Plough Corporation/ENHANCE Securities Litigation* to recover losses investors suffered after the

disclosure of negative clinical trial data for Vytorin®, a fixed-dose combination pill comprised of ezitimibe (Schering-Plough's Zetia®) and simvastatin (Merck & Co., Inc.'s Zocor®). He was also part of the team that litigated *In re Bristol-Myers Squibb Securities Litigation*, where Labaton Sucharow was able to secure a $185 million settlement and meaningful corporate governance reforms on behalf of Bristol-Myers Squibb shareholders following negative disclosures about omapatrilat, an experimental hypertension drug. The settlement with BMS is the largest ever obtained against a pharmaceutical company in a securities fraud case that did not involve a restatement of financial results.

A litigator for most of his career, Mr. McDonald also has in-house and regulatory experience. As a senior attorney with a telecommunications company he regularly addressed legal, economic and public policy issues before state public utility commissions.

Mr. McDonald received his undergraduate degree, *cum laude*, from Manhattan College in 1985, and a J.D. from Fordham University School of Law in 1992, where he was on the *Law Review*.

Mr. McDonald is admitted to practice in New York as well as before the following federal courts: the United States Courts of Appeals for the Second, Third and Federal Circuits; the United States District Courts for the Southern and Eastern Districts of New York; and the United States District Court for the Western District of Michigan. He is a member of the New York State Bar Association and the Association of the Bar of the City of New York.

### RICHARD T. JOFFE, OF COUNSEL                    *rjoffe@labaton.com*

**Richard Joffe**'s practice focuses on class action litigation, including securities fraud, antitrust and consumer fraud cases. Since joining the Firm, Mr. Joffe has represented such

varied clients as institutional purchasers of corporate bonds, Wisconsin dairy farmers, and consumers who alleged they were defrauded when they purchased annuities.

Prior to joining Labaton Sucharow, Mr. Joffe was an associate at Gibson, Dunn & Crutcher LLP, where he played a key role in obtaining a dismissal of claims against Merrill Lynch & Co. and a dozen other of America's largest investment banks and brokerage firms, who, in *Friedman v. Salomon/Smith Barney, Inc.*, were alleged to have conspired to fix the prices of initial public offerings.

Mr. Joffe also worked as an associate at Fried, Frank, Harris, Shriver & Jacobson where he defended Goldman Sachs & Co. against allegations of securities fraud and professional negligence. In addition, he obtained a successful settlement for several older women who alleged they were victims of age and sex discrimination when they were selected for termination by New York City's Health and Hospitals Corporation during a city-wide reduction in force.

He co-authored "Protection Against Contribution and Indemnification Claims" in *Settlement Agreements in Commercial Disputes* (Aspen Law & Business, 2000). He is a member of the Association of the Bar of the City of New York and the American Bar Association.

Mr. Joffe received a J.D. from Columbia Law School in 1993. He earned a Ph.D. from Harvard University in 1984. He earned a B.A., *summa cum laude*, from Columbia University in 1972.

Long before becoming a lawyer, Mr. Joffe was a founding member of the internationally famous rock and roll group, Sha Na Na.

## GREGORY ASCIOLLA, ASSOCIATE                    gasciolla@labaton.com

**Gregory Asciolla** focuses his practice on representing consumers and businesses in complex antitrust and commodities class actions. Currently, Mr. Asciolla is representing clients

in several antitrust matters involving alleged price-fixing and other anticompetitive practices, including *In re Air Cargo Shipping Services Antitrust Litigation*, In *re Marine Hoses Antitrust Litigation*, and *In re Chocolate Confectionery Antitrust Litigation*.   He is also representing clients in several commodities matters involving the alleged manipulation of the prices of natural gas futures and options contracts, including *In re Energy Transfer Partners Natural Gas Litigation* and *In re Amaranth Natural Gas Commodities Litigation*.

Mr. Asciolla has extensive experience in the area of antitrust law.  Prior to joining Labaton Sucharow, Mr. Asciolla practiced antitrust litigation and counseling on behalf of clients worldwide at Schulte Roth & Zabel LLP and Morgan Lewis & Bockius LLP.  He began his career as an attorney at the U.S. Department of Justice/Antitrust Division, where he focused on anticompetitive conduct in the healthcare industry.

Mr. Asciolla also has represented clients in the arts in several *pro bono* matters involving art law and intellectual property.

Mr. Asciolla received an A.B., *cum laude*, from Boston College in 1987 and a J.D. from Catholic University of America in 1993.  As a law student, he served as a member of the *Catholic University Law Review* and was the Co-Founder and Executive Editor of the *CommLaw Conspectus: Journal of Communications Law & Policy*.

Mr. Asciolla is admitted to practice in New York, the District of Columbia, and the United States District Courts for the Southern and Eastern Districts of New York.  He is a member of the New York State Bar Association, Commercial & Federal Litigation Section – Antitrust Committee.

## MICHAEL W. STOCKER, ASSOCIATE                    mstocker@labaton.com

*Michael W. Stocker* represents clients in commercial litigation, with a primary focus on sophisticated antitrust and securities class action matters.

Earlier in his career, Mr. Stocker worked as a senior staff attorney with the United States Court of Appeals for the Ninth Circuit, and completed a legal externship with United States Magistrate Judge (now District Judge) Phyllis J. Hamilton of the Northern District of California.

Mr. Stocker is the co-author of "Tellabs: PSLRA Pleading Test Comparative, Not Absolute," *New York Law Journal*, October 3, 2007, "Analysis of Abbott Laboratories Antitrust Litigation," *Pharmaceutical Law & Industry Report*, June 20, 2008, and "Key to Avoiding Compensation Suits," *Financial Executive*, July/August 2008.

Mr. Stocker has served on the boards of the University of California San Francisco's AIDS Health Project and AIDS Benefits Counselors, and has worked for the Immigrant HIV Assistance Project and the Volunteer Legal Services Program in San Francisco as well as Legal Assistance for Seniors in Oakland, California.

Mr. Stocker earned a B.A. from the University of California, Berkeley, in 1989, a J.D. from the University of California, Hastings College of Law, in 1995, and a Master of Criminology degree from the Law Department of the University of Sydney in 2000. He is admitted to practice in California and New York as well as before the United States District Courts for the Northern and Central Districts of California, the Southern and Eastern Districts of New York, and the United States Courts of Appeal for the Eight and Ninth Circuits.

## KELLIE SAFAR-LERNER, ASSOCIATE                    klerner@labaton.com

*Kellie Safar-Lerner* focuses her practice on representing consumers, businesses and governmental entities in complex antitrust actions in the pharmaceutical, automotive, chemical

and food industries.  Since joining the Firm, Ms. Safar-Lerner has litigated a wide variety of antitrust claims, including price-fixing, unlawful boycotting, monopolization, and monopoly leveraging cases.  Currently, Ms. Safar-Lerner is representing clients in the following cases: *In re Abbott Laboratories Norvir Antitrust Litigation*, *In re New Motor Vehicles Canadian Export Antitrust Litigation*, and *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*.

She is a member of the New York State Bar Association, Commercial & Federal Litigation Section – Antitrust Committee, the Women in Antitrust Committee, and the Federal Bar Council.  She has also provided pro bono assistance to the Lawyers' Committee for Civil Rights Under Law and the AARP.

Ms. Safar-Lerner obtained a B.A. from Rutgers University in 1999, where she graduated Phi Beta Kappa and with honors.  She received a J.D. from Rutgers Law School in 2003.  While in law school, she served as Managing Editor of the *Rutgers Computer and Technology Law Journal* and as a Board Member of the Moot Court Board.  She also worked as a Legal Aide in the Antitrust Bureau of the New York Attorney General's Office.

Ms. Safar-Lerner is admitted to practice in New York and New Jersey.

## WILLIAM V. REISS, ASSOCIATE                                    wreiss@labaton.com

*William V. Reiss* represents consumers and businesses in complex antitrust and commodities class actions.  Currently, Mr. Reiss is representing clients in several price-fixing and other anticompetitive practices, including *In re Marine Hoses Antitrust Litigation* and *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*.  He is also representing clients in several commodities matters involving the alleged manipulation of the

prices of natural gas futures and options contracts, including *In re Energy Transfer Partners Natural Gas Litigation*.

Prior to joining Labaton Sucharow, Mr. Reiss was an associate at Sidley Austin LLP where he represented corporations in antitrust investigations initiated by the Attorneys General of various states, participated in numerous depositions in complex bankruptcy litigation, and participated in oral arguments concerning discovery disputes in complex commercial litigation. Mr. Reiss began his career at Latham & Watkins LLP as an associate. During his time there, he assisted in the trial and subsequent appeal in a complex antitrust litigation involving hundreds of plaintiffs and numerous defendants, which resulted in a favorable jury verdict for the client.

Mr. Reiss maintains a strong commitment to *pro bono* work. He has provided a defendant with *pro bono* representation in connection with death penalty post-conviction proceedings, first chaired a *pro bono* asylum litigation, and successfully advocated in several *pro bono* World Trade Center Victims' Compensation Fund hearings before the Special Master.

Mr. Reiss earned a B.A. from The George Washington University in 1998, graduating *magna cum laude* and with Phi Beta Kappa honors. He earned a J.D. from New York University School of Law in 2001. During law school, he served as the staff editor of the *Environmental Law Journal*.

Mr. Reiss is admitted to practice in New York and the United States District Courts for the Southern and Eastern Districts of New York.

### BENJAMIN D. BIANCO, ASSOCIATE                    *bbianco@labaton.com*

Benjamin D. Bianco represents businesses and consumers in complex antitrust class actions. Currently, Mr. Bianco is representing clients in *In re Air Cargo Shipping Services Antitrust Litigation*.

Prior to joining Labaton Sucharow, Mr. Bianco served as a litigation associate at O'Melveny & Myers LLP, where he practiced complex commercial litigation in federal and state courts, before international arbitration panels, and proceedings before the U.S. Securities and Exchange Commission, with a particular focus on antitrust, insurance, and securities fraud matters. He began his career at Sidley Austin LLP, where he also worked as a litigation associate.

Mr. Bianco earned a B.A. from Gonzaga University in 1999, and a J.D., *cum laude*, from Brooklyn Law School in 2002. During law school, he was a member of the *Journal of Law and Policy*. In addition to being a recipient of the Order of the Barristers Award, he was also Vice President of the Moot Court Honor Society.

Mr. Bianco is admitted to practice in New York and before the United States District Courts for the Southern and Eastern Districts of New York.

## MORISSA FALK, ASSOCIATE                    *mfalk@labaton.com*

***Morissa Falk*** represents consumers and businesses in cases involving price fixing, monopolization, and other anticompetitive practices. Currently, Ms. Falk is representing clients in *In re Air Cargo Shipping Services Antitrust Litigation* and *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*.

Ms. Falk earned a B.A. from Haverford College in 2003. She received a J.D. from Brooklyn Law School in 2006, graduating on the Dean's List. While in law school, Ms. Falk interned at the Office of the New York State Attorney General in the Civil Rights Bureau, various women's rights organizations and the Appellate Division of the Supreme Court for the State of New York. She also was a member of the Legal Association of Activist Women.

Ms. Falk is admitted to practice in New York and the United States District Courts for the Southern and Eastern Districts of New York.  She is a member of the Association of the Bar of the City of New York Bioethics Committee, and the New York State Bar Association, Commercial & Federal Litigation Section - Antitrust Committee.

## VICKY KU, ASSOCIATE                                    vku@labaton.com

*Vicky Ku* joined Labaton Sucharow as an associate in the Firm's Antitrust Practice Group, representing consumers and businesses in cases involving price fixing, monopolization, and other anticompetitive practices.  Currently, Ms. Ku is actively involved in *In re TriCor Indirect Purchaser Antitrust Litigation* and *In re Marine Hoses Antitrust Litigation*.

Ms. Ku obtained her B.A. from California State University, Fullerton in 1997 and earned her J.D. from the Hofstra University School of Law in 2005.  During law school, Ms. Ku interned at the New York State Attorney General's Office in the Antitrust Bureau.  She also was the Managing Editor of Articles for the *Family Court Review* and published two student notes, including a note for the *Yale Journal of Law and Technology*.

Prior to law school, Ms. Ku worked in the high-tech public relations industry for five years and received numerous awards based on crisis communications plans developed for clients that included Microsoft, Sun Microsystems and Taiwan Semiconductor Manufacturing Corp.

Ms. Ku is admitted to practice in New York and New Jersey.  She is a member of the New York State Bar Association.

## YOKO GOTO, ASSOCIATE                                  ygoto@labaton.com

*Yoko Goto* represents consumers and businesses in cases involving price fixing, monopolization, and other anticompetitive practices.  Currently, Ms. Goto is representing clients

in *In re Air Cargo Shipping Services Antitrust Litigation* and *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*.

Ms. Goto earned a B.A. from Hokkaido University (Sapporo, Japan) and an M.A. from Columbia University, Teachers College.  She received her J.D. from Brooklyn Law School. While in law school, Ms. Goto interned at the New York City Housing Development Corporation, the Department of Consumer Affairs and the Office of General Counsel for Merrill Lynch.

Ms. Goto is fluent in Japanese and conversational in Chinese.

Ms. Goto is admitted to practice in New York.  She is a member of the New York State Bar Association, the Association of the Bar of the City of New York and the New York County Lawyers' Association.

# SUSMAN GODFREY L.L.P.

www.susmangodfrey.com

| Suite 5100 | Suite 5100 | Suite 3800 | Suite 950 | 5th Floor |
|---|---|---|---|---|
| 1000 Louisiana | 901 Main street | 1201 third avenue | 1901Avenue of | 654 Madison |
| Houston, Texas | Dallas, Texas | Seattle, Washington | the Stars | Avenue |
| 77002-5096 | 75202-3775 | 98101-3000 | Los Angeles, Ca | New York, New York |
| (713) 651 - 9366 | (214) 754 - 1900 | (206) 516 - 3880 | 90067-6029 | 10065-8440 |
| | | | (310) 789-3100 | (212) 336-8330 |

# FIRM RESUME

Founded in 1980, Susman Godfrey focuses its nationally recognized practice on just one thing: big - stakes commercial litigation. We are one of the nation's leading litigation boutique law firms with locations in Houston, Dallas, Los Angeles, Seattle, and New York. Each of the firm's 82 trial attorneys devotes all of his or her time and talent to achieving excellent outcomes within the complex commercial litigation environment.

How successfully does Susman Godfrey represent its clients?

When *The American Lawyer* recently held the first-ever "Litigation Boutique of the Year" competition, the firm was named one of the two top litigation boutiques in the nation.

"These firms manage to combine cutting-edge technologies, palpable tastes for risk, and an old-fashioned sense of partnership," said *The American Lawyer*. "The rewards are obvious: Their clients are stellar, and so are their profits."

In other words, Susman Godfrey represents its clients *very* well.

## A record of winning

Susman Godfrey's very first case, the *Corrugated Container* antitrust trial, led to one of the highest antitrust jury verdicts ever obtained. Off to an exceptional start, the firm devoted the next 25 years to helping businesses and individuals achieve optimal outcomes in some of the biggest and most-publicized commercial lawsuits in the nation. Recent high-profile victories (click on the links below to see the particular facts and circumstances of these representations):

- Representation of the plaintiffs in a number of successful private antitrust actions against Microsoft Corporation, including litigation or private negotiations on behalf of Gateway, Novell, Caldera, Be, Inc., and others.

- Representation of MicroUnity Systems in patent infringement litigation against Intel and Sony. Although the settlements are confidential, the financial terms of Intel's are disclosed in its third-quarter 2005 10Q.

- Representation of the bankruptcy estate of Enron Corp. against ten banks and investment banks for aiding and abetting breach of fiduciary duty and fraud. Settlements to date have brought more than one billion dollars in value to the Enron estate.

- Successfully concluded the pro bono representation of Texas Clean Air Cities Coalition which included Dallas, Houston, Fort Worth, Waco, El Paso, Plano, Arlington, Irving, and 28 other local governments across Texas. The cities were concerned about the environmental threats resulting from the large amounts of nitrogen oxides, sulfur dioxide, particulate matter, mercury, and carbon dioxide to be emitted from the proposed plants. The coalition of Texas cities challenged permit applications by TXU Corporation to build eight coal-fired power units across Texas. In February 2007, following the announcement of the proposed buyout of TXU by two private equity firms and citing a new environmental direction for the company, TXU announced that it would withdraw applications for all eight of the coal units that the coalition opposed.

These are only a few of our recent cases. Our practice area inserts provide a more complete description of Susman Godfrey's successes in a number of areas of commercial litigation, including intellectual property, antitrust, accounting malpractice, energy and natural resources, securities litigation, and climate change litigation.

**The will to win**

At Susman Godfrey, we want to win because we are stand-up trial attorneys, not discovery litigators. We approach each case as if it is headed for trial. Everything that we do is designed to prepare our attorneys to persuade a jury. When you are represented by Susman Godfrey, the opposing party will know that you are willing to take the case all the way to a verdict if necessary; this fact alone can make a good settlement possible.

*The American Lawyer* award confirmed Susman Godfrey's longstanding reputation as one of the premier firms of trial lawyers in the United States. We are often brought in on the eve of trial to "rescue" troubled cases or to take the reins when the case requires trial lawyers with a proven record of courtroom success.

We also want to win because we share the risk with our clients. We prefer to work on a contingency-fee basis so that our time and efforts pay off only when we win. Our interests are aligned with our clients—we want to achieve the best-possible outcome at the lowest possible cost.

Finally, we want to win because each of our attorneys shares a commitment to your success. Each attorney at the firm – associate as well as partner – examines every proposed contingent fee case and has an equal vote on whether or not to accept it. The resulting profit or loss affects the compensation of every attorney at the firm. This model has been a tremendous success for both our attorneys and our clients. In recent years, we have achieved the highest profit-per-partner results in the nation. Our associates have enjoyed performance bonuses equal to their annual salaries. When you win, our attorneys win.

**Unique perspective**

Susman Godfrey represents an equal number of plaintiffs and defendants. Ours is not a cookie-cutter practice turning out the same case from the same side of the bar time after time. We thrive on variety, flexibility, and creativity. Clients appreciate the insights that our broad experience brings. "I think that's how they keep their tools sharp," says one.

Many companies who have had to defend cases brought by Susman Godfrey on behalf of plaintiffs are so impressed with our work in the courtroom that they hire us themselves next time around – companies like El Paso Corporation, Georgia-Pacific Corporation, Mead Paper, Nokia Corporation and Tenneco.

We know from experience what motivates both plaintiffs and defendants. This dual perspective informs not just our trial tactics, but also our approach to settlement negotiations and mediation presentations. We are successful in court because we understand our opponent's case as well as our own.

**A lean and mean structure**

At Susman Godfrey, our clients hire us to achieve the best possible result in the courtroom at the least possible cost. Because we learned to run our practice on a contingency-fee model where preparation of a case is at our expense, we have developed a very efficient approach to commercial litigation. We proved that big cases do not require big hours. And, because we staff and run all cases using the same model, clients who prefer to hire us by the hour also benefit from our approach.

There is no costly pyramid structure at Susman Godfrey. As a business, we are lean, mean and un-leveraged – with a one-to-one ratio between partners and associates. To counter the structural bloat of our opponents, who often have three associates for each partner, we rely on creativity and efficiency.

Susman Godfrey's experience has taught what is important at trial and what can be safely ignored. We limit document discovery and depositions to the essential. For most depositions and other case related events we send one attorney and one attorney alone to handle the matter. After three decades of trials, we know what we need – and what is just a waste of time and money.

**Unparalleled talent**

Susman Godfrey prides itself on a talent pool as deep as any firm in the country. Clerking for a judge in the federal court system is considered to be the best training for a young trial attorney, and 82% of our lawyers served in these highly sought-after clerkships after law school. Six of our attorneys have clerked at the highest level – for Justices of the United States Supreme Court.

Our associates are not document-churning drones. Each associate at Susman Godfrey is expected to second-chair cases in the courtroom from the start. Because we are so confident in their abilities, we make our associates eligible for partnership in just four years – about half the track at other law firms. We pay them top salaries and bonuses, make them privy to the firm's financials, and let them vote – on an equal standing with partners – on virtually all firm decisions.

Each trial attorney at Susman Godfrey is invested in our unique model and stands ready to handle your big-stakes commercial litigation.

Disclaimer: The information contained herein is revised frequently and is only accurate and current as of the date printed below.  Please call us for the most recent edition.

# SUSMAN GODFREY L.L.P.

www.susmangodfrey.com

| Suite 5100 | Suite 5100 | Suite 3800 | Suite 950 | 5th Floor |
|---|---|---|---|---|
| 1000 Louisiana | 901 Main street | 1201 third avenue | 1901Avenue of | 654 Madison |
| Houston, Texas | Dallas, Texas | Seattle, Washington | the Stars | Avenue |
| 77002-5096 | 75202-3775 | 98101-3000 | Los Angeles, Ca | New York, New York |
| (713) 651 - 9366 | (214) 754 - 1900 | (206) 516 - 3880 | 90067-6029 | 10065-8440 |
|  |  |  | (310) 789-3100 | (212) 336-8330 |

# ANTITRUST

Susman Godfrey is one of the preeminent firms in the country in antitrust litigation.

Steve Susman founded the firm in 1980 after specializing in antitrust at a large law firm, teaching antitrust at the Texas Law School, and serving as a special assistant on antitrust to the Attorney General of Texas. Beginning with the landmark Corrugated Container price-fixing case in 1980, in which Susman Godfrey recovered $500 million on behalf of plaintiffs as a result of settlements and a verdict after a 3-month jury trial, Susman Godfrey has been in the forefront of antitrust litigation. We have recovered millions of dollars for plaintiffs bringing price-fixing, market allocation, concerted refusal to deal, and monopolization claims involving laundry and dry cleaning supplies (Campus Cleaners), milk (The State of Arkansas), specialty steel (Pipe Fabricators), wholesale plumbing fixtures (Circle Plumbing), shipping and trade channels (Chevron Phillips), airlines (Alaska Airlines), and other products such as peanut seed, bread, commercial explosives, high fructose corn syrup, and citric acid. We litigated two landmark cases, Affiliated Capital v. City of Houston and Business Electronics v. Sharp, from jury verdicts to decisions by the United States Supreme Court. For the plaintiffs, we have tried to judgment predatory pricing cases (Continental Airlines v. American Airlines; Arkansas Gazette v. Arkansas Democrat); Robinson-Patman Act cases (Computer Statistics v. Blair); and dealer termination cases (Coastal Spark Plug v. NKG). We have represented companies such as Bell Atlantic in a Section 7 case against AT&T, and Gearhart Industries, Inc. in an injunction trial brought by the Attorney General of Texas to block a merger. We have represented Northwest Airlines in a consumer class action challenging its merger with Republic Airlines under Section 7. During 1985, six of our lawyers lived in Los Angeles preparing to try a huge Section 2 case for Northrop against McDonnell Douglas involving the F18 jet fighter. More recently, we have successfully represented Caldera and Be, Inc. in antitrust litigation against Microsoft.

Susman Godfrey has not only represented plaintiffs, our experience in plaintiffs' actions has given us a unique advantage in representing defendants in antitrust actions also. We have successfully represented Aetna (conspiracy to restrain trade), Northwest Airlines (price-fixing), Steve & Sons (price-fixing), Intel (monopolization), Picker International (a defense verdict in a jury trial charging tying), Little Caesars (tying), Medtronic, Inc. (raiding), and ACE Limited (market allocation) in a variety of antitrust matters.

Susman Godfrey represents clients in antitrust cases across the United States. We have handled antitrust cases in Anchorage, Detroit, Reno, Baltimore, Los Angeles, Orange County, Salt Lake City, San Francisco, Minneapolis, Houston, and Kansas City, as well as numerous cities in Texas. Our partners have served on the Council of the ABA Antitrust Section, the Texas Bar Antitrust Section, the Washington State Bar Antitrust and Consumer Protection Section, and the Executive Committee of the Antitrust and Unfair Competition Law Section of the State Bar of

California. They regularly publish and lecture around the country on antitrust subjects.

***Example Cases***

- Susman Godfrey is one of two co-lead counsel in an antitrust class action on behalf of a class of current and former football and basketball players at Division I schools. The case challenged the "GIA cap," an NCAA rule under which the NCAA limits the amount of athletics-based financial aid member schools may provide to amounts that do not cover the full cost of attending school, as a violation of Section I of the Sherman Act. The case raised novel issues because no one had previously successfully prosecuted an antitrust claim against the NCAA on behalf of current or former student athletes. After defeating a motion to dismiss, obtaining class certification, and obtaining helpful deposition testimony from current and former NCAA presidents and high-profile coaches and athletic directors, and with the case set for trial in two months, we were able to negotiate a settlement in late 2007 that provides substantial benefits to current and former student athletes.

  Under the settlement, which was approved by the court on August 5, 2008, the NCAA will make $218 over five year available for schools to provide additional benefits to student athletes, create a $10 million fund to provide educational and professional benefits to former student athletes, and modify its rules to allow schools to provide student-athletes with comprehensive year-round health insurance under the schools' health insurance plans. The settlement was obtained after months of negotiations before the Hon. Daniel Weinstein, one of the nation's leading mediators. The NCAA was represented by David Balabanian at Bingham McCutcheon and Greg Curtner at Miller Canfield, and the Susman Godfrey team included Marc Seltzer, Steve Morrissey, Steven Sklaver, Tibor Nagy, and Amy Brantly.

- On September 7, 2007, Susman Godfrey, as one of three co-lead counsel for the class, entered into a settlement agreement with Sprint Corporation. Susman Godfrey represented long-distance telephone subscribers in a class action lawsuit alleging that Sprint, AT&T, and MCI/WorldCom illegally fixed prices. Judge Lungstrum of the District of Kansas approved the settlement on March 4, 2008 and entered a judgment dismissing Sprint. Sprint Nextel Corp. will pay $30 million to settle a class action lawsuit accusing it and AT&T Corp. of overcharging customers for assessments that help pay for subsidized phone services. Under the settlement, qualified business and residential customers will receive prepaid telephone calling cards with a face value of $25 million.

- Susman Godfrey represents Tessera Technologies, Inc., which develops and owns a wide range of semiconductor packaging, interconnect and consumer optics technologies, in an antitrust case against Hynix Semiconductor, Inc. and Hynix Semiconductor America, Inc.  Tessera alleges that Hynix violated the Cartwright Act by conspiring with the other major DRAM manufacturers to boycott Tessera's proprietary packaging technology as well as the Rambus memory technology known as "RDRAM," to monopolize the market, and to fix prices.  Tessera also accuses Hynix of unfair competition and intentional interference with contract and prospective economic relations in violation of California law.  The case is pending in the California Superior Court in San Jose, California.

- Susman Godfrey represents airline passengers who allege that Korean Airline and Asiana engaged in a conspiracy to fix the prices of airfares in flights to and from Korea. The litigation involves more than 70 class action cases which have been transferred to the Central District of California by the Judicial Panel on Multidistrict Litigation.  In February 2008, the Court appointed Susman Godfrey as one of plaintiffs' co-lead counsel to represent plaintiffs and the putative class.

- Susman Godfrey is co-lead counsel for a class of several million Comcast cable subscribers in the Boston, Chicago, and Philadelphia metropolitan areas who allege that Comcast conspired with competitors to divide markets by, among other ways, "swapping" subscribers in other areas for subscribers in Boston, Chicago, and Philadelphia, and that Comcast monopolized those markets. The United States District Court for the Eastern District of Pennsylvania denied Comcast's motions to dismiss and for judgment on the pleadings and certified the Chicago and Philadelphia classes. Comcast's appeals of the class certification issues did not succeed; the Third Circuit denied review. The Court also rejected Comcast's efforts to send the cases to arbitration on a non-class basis. The litigation could result in an award of several billion dollars.

- Susman Godfrey is representing start-up mainframe computer company Platform Solutions, Inc. ("PSI") in a major antitrust and intellectual property case against IBM, the dominant player in the multi-billion dollar worldwide mainframe market. PSI alleges that IBM is abusing its monopoly power in that market by tying its mainframe operating systems to its mainframe computer products, and through discriminatory licensing of intellectual property relating to its mainframe products. IBM claims that PSI's product infringes patents relating to IBM's mainframe architecture, and also is asserting copyright and trade secrets claims against PSI. The case is pending in the U.S. District Court in the Southern District of New York, and is scheduled for trial in March 2009.

- Susman Godfrey represents defendant ACE Limited and several of its subsidiaries in *In re Insurance Brokerage Antitrust Litigation*. The plaintiffs allege that ACE conspired with brokers and other insurers to allocate property and casualty insurance markets over a ten-year period. In September 2007, the United States District Court for the District of New Jersey dismissed plaintiffs' claims in their entirety. The case is now on appeal to the Third Circuit Court of Appeals.

- Susman Godfrey is co-lead counsel and represents a class of direct purchasers of vitamin C in a federal price-fixing case against industrial defendants from the Peoples Republic of China. The case, The Ranis Company v. Hebei Welcome Pharmaceutical Co. et al, is pending in the Eastern District of New York and raises important new issues concerning the Chinese central and provincial governments' roles in the pricing and output decisions of Chinese manufacturers.

- Susman Godfrey recently filed several class actions in federal court in Dallas, Texas, alleging that the three major producers of packaged ice in the United States and Canada conspired to fix prices and to allocate markets for packaged ice in the United States.

- Susman Godfrey recently filed a case against the major chocolate manufacturers for price-fixing. The case, Chocolate Confectionary Antitrust Litigation, is pending in the United States District Court for the Middle District of Pennsylvania.

- In January 2006, Susman Godfrey settled the multi-million dollar antitrust claims of Chevron Phillips Chemical Company and Chevron Oronite against four international parcel tanker shipping companies. We initiated two separate arbitrations asserting that the parcel tanker shipping companies had violated antitrust laws by conspiring to increase prices and allocate shipping markets and trade lanes, all to the financial detriment of our clients and other chemical companies. Over the course of several months, and before we engaged in any formal discovery, we negotiated separate settlements with all four shipping companies on behalf of both of our clients. The amounts of these eight settlements are confidential.

- In September 2005, Susman Godfrey finalized the settlement of an antitrust claim brought by ChoiceParts against General Motors, Ford Motor Company, Daimlyer Chrysler, and OE Connection. The terms of the settlement are confidential. ChoiceParts

alleged that the Big 3 automakers conspired to refuse to license parts data to ChoiceParts' revolutionary electronic parts locating service. After a request for injunction was denied, ChoiceParts hired Susman Godfrey to assist in preparing the case for trial.

- In April 2005, Susman Godfrey represented Gateway, Inc. in negotiation of an agreement pursuant to which Microsoft will pay Gateway a multi-million dollar settlement over four years; as part of the agreement, Gateway released antitrust claims against Microsoft.

- Susman Godfrey was hired by Hollywood's major movie Studios to defend antitrust claims brought by small video rental stores against the Hollywood studios and Blockbuster. We were brought in to try the case after discovery was completed and after summary judgment was briefed. After two weeks of trial in federal court in San Antonio, Judge Edward Prado granted a motion for judgment as a matter of law in favor of the Hollywood studios and Blockbuster. During the trial, the Plaintiffs called a dozen Hollywood studio executives as adverse witnesses, including Sumner Redstone and Michael Eisner. Although the Hollywood studios had separate counsel, Lee Godfrey spoke on behalf of all them -- handling the opening statement, presenting studio witnesses who were called adverse, and cross-examining the plaintiffs and their antitrust expert. The case was brought on behalf of three plaintiffs, whose lawyers represent hundreds of other independent retailers, and hoped to use this case as a test case, after the Court denied plaintiffs' motion for class certification. The Fifth Circuit affirmed the trial court's decision to grant our clients' motion for judgment as a matter of law. A related class action was brought in the California Superior Court in Los Angeles by the same plaintiffs' lawyer who filed the Texas action. Like the trial court in Texas, the California court denied plaintiffs' motion for class certification. The California court also granted summary judgment. Plaintiffs appealed, and Susman Godfrey was retained to argue the appeal on behalf of all of the Hollywood studios. The Court of Appeal affirmed summary judgment in favor of the studios on the antitrust claim but reversed it on the California Practices Act claim.

- On March 21, 2005, a federal jury in Los Angeles, California reached a verdict in favor of our client, Masimo Corporation, against Tyco Health Care Group, LP and its affiliate, Mallinckrodt, Inc. Masimo brought claims under the federal antitrust laws based on Tyco's anticompetitive practices that prevented Masimo from selling its competing pulse oximetry products to hospitals located throughout the United States. After the trial court vacated the damages award and certain liability findings in its ruling on Tyco's post-trial motions, the issue of damages was re-tried at a bench trial, and the trial court entered a judgment in Masimo's favor for $43.5 million, plus attorneys' fees and costs. Both parties have appealed the judgment to the U.S. Court of Appeals for the Ninth Circuit.

- In November 2004, our client, Novell, Inc., obtained a settlement from Microsoft for $536 million, of which $88 million was awarded in attorneys' fees. Susman Godfrey represented Novell in negotiating the settlement of antitrust claims related to Novell's NetWare business. As Novell's general counsel Joseph A. LaSala, Jr., stated, "This is a significant settlement, particularly since we were able to achieve our objectives without filing expensive litigation."

- In August 2003, Susman Godfrey obtained a mediated settlement with Microsoft on behalf of former operating system competitor Be, Incorporated. Under the settlement agreement, Be would receive a payment of $23,250,000 from Microsoft after $8,645,000 in attorneys' fees and expenses. All other terms of the settlement remain confidential, and Microsoft did not admit any wrongdoing. Susman Godfrey filed the antitrust suit on behalf of Be, alleging that Microsoft's predatory conduct and exclusive dealing destroyed Be's business.

- In August 2003, Susman Godfrey represented plaintiff Duramed in a lawsuit alleging

monopolization of the market for estrogen replacement and hormone replacement drugs. Duramed alleged that Wyeth-Ayerst, the maker of market-dominant estrogen replacement and hormone replacement drugs, had violated the Sherman Act and Clayton Act by, among other things, entering into contracts with managed care entities to exclude Duramed's drug Cenestin from managed care formularies. The parties reached a confidential settlement providing favorable terms for Susman Godfrey's client.

- In June 2003, Susman Godfrey and its cocounsel Boies Schiller & Flexner and Cohen Milstein Hausfeld & Toll obtained a verdict from a federal jury in Washington D.C. against four defendants, Mitsui & Co. of Japan, Mitsui USA, DCV, Inc. and DuCoa L.P., who were found to have participated in a global conspiracy to allocate world markets and fix the price of vitamin B4 during the ten year period from 1988 to 1998. The 11-member jury unanimously awarded our clients, a class of direct purchasers of vitamin B4, $49.5 million in damages, for a total award of over $150 million after trebling and attorneys' fees.

- Susman Godfrey represented defendant Clear Channel Communications, Inc. in a suit brought by Spanish Broadcasting Corporation, Inc. ("SBS") in June 2002 in the Southern District of Florida.  SBS alleged $1.5 billion in damages from supposed anticompetitive conduct by Clear Channel and another defendant.  On behalf of Clear Channel, Susman Godfrey filed a motion to dismiss the complaint in its entirety, arguing that the allegations were legally insufficient. On January 31, 2003, after argument by Steve Susman, the Court dismissed each of SBS' antitrust claims against Clear Channel with prejudice.  SBS appealed to the Eleventh Circuit, which affirmed the dismissal in favor of Clear Channel.

- In January 2000, Susman Godfrey settled our client Caldera Inc.'s multi-hundred million dollar monopolization case against Microsoft Corporation. Our massive discovery efforts included taking the depositions of such top Microsoft executives as Bill Gates and Steve Ballmer. We defeated Microsoft's repeated summary judgment motions and settled the case just two weeks before trial. The amount of the settlement is confidential.

The information contained herein is revised frequently and is only accurate and current as of the date printed above. Please call us for the most recent edition.

**SUSMAN GODFREY L.L.P.**

# Marc M. Seltzer
## Partner



Los Angeles, California
Phone: 310.789.3102
Fax: 310.789.3006
mseltzer@susmangodfrey.com*

MARC M. SELTZER, born Los Angeles, California; admitted
to bar, 1972, California.

## EDUCATION

- University of California at Berkeley (B.A., 1969)
- UCLA School of Law (1972)

## PUBLICATIONS

- Co-author, California Federal Civil Rules (Matthew Bender & Co., Inc. 2005)
- Co-author, California Antitrust and Unfair Competition Law (Third 2003), published by the Antitrust and Trade Regulation Law Section, State Bar of California;
- "Choosing Between Class and Derivative Actions," published in Second Annual Institute, Class and Derivative Litigation in the 1990's - The New Frontier (Prentice Hall Law & Bus. 1991); and the same topic for the Third, Fourth, and Fifth Annual Institutes;
- "Measures of Damages in Private Actions for Violations of the Federal Securities Laws: The Basic Rules and Selected Problems," published in Securities Litigation 1990 (PLI 1990);
- Author: "Shareholders' Derivative Suits in Contests for Corporate Control," published in Securities Litigation 1986: Prosecution and Defense Strategies (PLI 1986);

## PROFESSIONAL AFFILIATIONS

- Bars of the United States District Courts for the Central, Southern, Eastern, and Northern Districts of California
- Eastern District of Texas
- United States Courts of Appeals for the Fifth, Ninth, Tenth, and Eleventh Circuits
- American Bar Association (and its Business Law, Antitrust Law, Torts and Insurance Law, and Litigation Sections)
- American Law Institute
- Association of Trial Lawyers of America
- Association of Business Trial Lawyers
- Past Vice-Chair of the Executive Committee, Antitrust and Unfair Competition Law

Section, State Bar of California
- President of the Ninth Judicial Circuit Historical Society, past President and current member of the Board of Directors of the Legal Aid Foundation of Los Angeles, member of the Board of Directors of the National Equal Justice Library, Board of Directors, Equal Justice Works, Board of Directors, American Friends of Hebrew University, Western Region
- Board of Editors of Class Action Reports
- Board of Trustees, Lawyers Committee for Civil Rights Under Law
- Selden Society

## HONORS & DISTINCTIONS

- Named a "Super Lawyer" by *Southern California Law & Politics* magazine (2004-2008)
- 2004 American ORT Jurisprudence Award

Marc Seltzer has practiced law for more than thirty years in Los Angeles, California, litigating complex cases in both state and federal courts. For twenty years, he was a principal in the law firm of Corinblit & Seltzer, a Professional Corporation. Marc Seltzer's relationship with the partners of Susman Godfrey began in the late 1970's when Steve Susman and Marc Seltzer worked together on the *Corrugated Container* antitrust case. In the ensuing years, Mr. Seltzer and the lawyers of Susman Godfrey worked together on a number of cases. In February 1998, Marc Seltzer became a partner of Susman Godfrey L.L.P., and opened the firm's Los Angeles office. Since then, the office has become one of the leading litigation boutiques in Los Angeles.

Marc Seltzer concentrates his practice in the prosecution and defense of complex business law cases, including antitrust, securities, corporate and financial institution law matters.

Mr. Seltzer's involvement in nationally prominent litigation began in the mid-1970's, when he was tapped by Jack Corinblit to work on the massive *Equity Funding* securities litigation. That case consisted of more than 100 consolidated class and private action cases, and was settled in 1976 for over $60 million, then the largest recovery ever achieved in a securities fraud class action. *See In re Equity Funding Corp. of America Securities Litigation,* 438 F. Supp. 1303 (C.D. Cal. 1977). Later, in the 1980's, Mr. Seltzer was appointed by the Los Angeles federal court to serve as sole lead counsel to represent the plaintiff class in the *ZZZZ Best* securities fraud case. The *ZZZZ Best* fraud was described by the United States Attorney for the Central District of California as "the most massive and elaborate securities fraud perpetrated on the West Coast in over a decade," harking back to the *Equity Funding* case. The case was settled for more than $40 million and resulted in several important published decisions sustaining plaintiffs' claims. *See, e.g., In re ZZZZ Best Securities Litigation,* 864 F. Supp. 960 (C.D. Cal. 1994). More recently, Mr. Seltzer was, together with Steve Susman, part of the Susman Godfrey trial team representing approximately 90 financial institutions in a negligent misrepresentation case against one of the "Big Four" accounting firms. That case settled just prior to the commencement of trial. Among other cases Mr. Seltzer has litigated are:

*Masimo v. Tyco Healthcare L.P.,* an antitrust case in which Marc Seltzer served as co-trial counsel for the plaintiff, together with Steve Susman, Vineet Bhatia and Steve Morrissey. The case was tried to a verdict resulting in an award of $140 million (before trebling) in favor of the plaintiff in March 2005. A new trial has been granted as to damages. Post-trial proceedings are pending.

*In re Structured Settlement Litigation,* consolidated class actions brought in the Los Angeles Superior Court in which Marc Seltzer served as one of the lead counsel for the plaintiffs. The

2

case was settled in 2004 for approximately $135 million.

*In Motorcar Parts & Accessories Securities Litigation*, fourteen consolidated securities class actions in which Marc Seltzer was appointed by the Los Angeles federal court to serve as lead counsel for the class. The case was settled for $7.5 million in cash. *See Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*, 231 F.3d 1215 (9th Cir. 2000).

*In re IDB Communications Group, Inc. Securities Litigation*, in which Marc Seltzer served as one of four co-lead counsel appointed by the Los Angeles federal court to represent the plaintiff class in more than twenty consolidated class action cases. The case was settled for $75 million.

*In re Taxable Municipal Bond Securities Litigation*, in which four lawyers, including Marc Seltzer, served on Plaintiffs' Executive Committee, and together with plaintiffs' lead counsel, supervised and managed every aspect of the litigation. This case was a consolidated multi-district proceeding brought on behalf of defrauded purchasers of municipal bonds. The case resulted in numerous reported decisions on important recurring issues arising under the federal securities laws. *See, e.g., In re Taxable Municipal Bond Litigation*, [1993 Transfer Binder] Fed. Sec. L. Rep. (CCH) 97,742 (E.D. La. 1993). After several years of intense litigation, the case was settled for approximately $110 million.

*Financial Federation, Inc. v. Ashkenazy*, in which Marc Seltzer and his co-counsel successfully defended a case brought by a savings and loan association against persons who sought to take control of the institution in a bench trial in Los Angeles federal court. *See Financial Federation, Inc. v. Ashkenazy*, [1984 Transfer Binder] Fed. Sec. L. Rep. (CCH) 91,489 (C.D. Cal. 1983).

*Green v. Occidental Petroleum Corp.*, in which Marc Seltzer, together with co-counsel, represented plaintiffs in consolidated securities class action cases that established important precedent in the Ninth Circuit regarding the certification of plaintiff classes and the computation of damages in securities fraud cases. *See Green v. Occidental Petroleum Corp.*, 541 F.2d 1335 (9th Cir. 1976). The case was settled for $12 million.

*Wool v. Tandem Computers, Inc.*, a securities class action in which Marc Seltzer played a leading role. One of the notable achievements in this case was a victory for the plaintiffs in the Ninth Circuit which established important precedent concerning the measure of damages recoverable in federal securities fraud class action cases, the standard for "controlling person" liability under the federal securities laws and the requirements for pleading fraud with the particularity specified under Rule 9(b), Fed.R. Civ. P. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433 (9th Cir. 1987). Following the issuance of the Ninth Circuit's opinion, the case was settled for $16.5 million.

*Plaine v. McCabe*, a securities class action, in which Marc Seltzer argued before the Ninth Circuit, obtaining a substantial victory for plaintiffs, establishing significant precedent in the Ninth Circuit regarding the standards for liability for violations of tender offer disclosure rules under the federal securities laws. *See Plaine v. McCabe*, 797 F.2d 713 (9th Cir. 1986).

*Biben v. Card*, where Marc Seltzer served as co-lead counsel for plaintiffs. The plaintiffs achieved substantial pretrial victories, including establishing the validity of their claims under the federal securities laws against the director, accountant and attorney defendants in that case. *See Biben v. Card*, [1984-1985 Transfer Binder] Fed. Sec. L. Rep. (CCH) 92,010 (W.D. Mo. 1985), on *denial of motion for reconsideration*, [1984-1985 Transfer Binder] Fed. Sec. L. Rep. (CCH) 92,083 (W.D. Mo. 1985). The case settled for approximately $12 million.

*Sanwa Bank California v. Facciani*, where Marc Seltzer was co-lead counsel for a class of investors in a state court securities case and a companion federal case in which settlements

3

totaling approximately $26 million were obtained on behalf of defrauded investors.

*In re California Indirect-Purchaser Infant Formula Antitrust Class Action Litigation* was comprised of several consolidated consumer class actions brought for the alleged price-fixing of infant formula products. Marc Seltzer was appointed by the court to serve as one of two co-lead counsel for plaintiffs and the class. The case was settled for more than $20 million.

*Lilienthal v. Levi Strauss & Co.*, an individual minority shareholder's action for breach of fiduciary duty by the majority owners, which resulted in a judgment after trial for the plaintiff providing for a recovery in excess of $3 million.

*Small v. Sunset Park*, where Marc Seltzer was counsel for a class of investors in a state court class action involving an alleged Ponzi scheme in which settlements totaling more than $16.8 million were obtained, including $12 million paid in settlement by a then "Big Five" accounting firm.

*Schneider v. Traweek*, federal and state court securities class actions in which Marc Seltzer was lead counsel for the plaintiffs. Significant victories were obtained on plaintiffs' behalf in defeating motions to dismiss and in obtaining class certification. *See Schneider v. Traweek* [1990 Transfer Binder] Fed. Sec. L. Rep. (CCH) 95,419 and 95,505 (C.D. Cal. 1990). The case was settled for approximately $14 million.

*Johnson v. Boston,* where Marc Seltzer was co-lead counsel for a class of investors in a nationwide class action in state court in which approximately $20 million in settlements were achieved for investors.

In 1972 and 1973, he was a Deputy Attorney General for the State of California specializing in criminal appellate cases. In 1985, Mr. Seltzer was elected to the membership of the American Law Institute.

*Internet mail is not fully secure or private. Therefore, please do not transmit confidential information via Internet mail. Transmission of information is not intended to and does not create an attorney-client relationship. Please do not assume that your communications sent using Internet mail is privileged or confidential. Please do not send Susman Godfrey any confidential information via the Internet without previously consulting one of our attorneys.

**Nothing on this web page is intended to represent that Susman Godfrey currently represents any particular clients mentioned because matters and client relationships naturally terminate from time to time.

## SUSMAN GODFREY L.L.P.

# Stephen E. Morrissey
# Partner



Los Angeles, California
Phone: 310.789.3103
Fax: 310.789.3005
smorrissey@susmangodfrey.com *

STEPHEN E. MORRISSEY, born Kettering, Ohio; admitted to bar, 1997, California.

Steve Morrissey is a partner in the Los Angeles office of Susman Godfrey L.L.P.  Mr. Morrissey has a nationwide practice representing plaintiffs and defendants in a broad range of commercial litigation matters, including antitrust cases, securities and other corporate governance and shareholder cases, patent and other intellectual property cases, fraud cases and breach of contract cases.  He has substantial trial experience, and has appeared in state and federal courts throughout the country and in administrative proceedings before the FTC.

Mr. Morrissey has been named a "Rising Star" in by *Southern California Super Lawyers* each of the past four years.  Mr. Morrissey has worked on some of the most significant antitrust litigation of the past decade, including the jury trial and subsequent re-trial of damages issues *Masimo Corp. v. Tyco Healthcare Group L.P.*  Mr. Morrissey previously represented defendants in high-profile cases involving patent settlements between brand-name and generic drug manufacturers and an FTC challenge to a joint venture in the music recording industry, and has advised clients on antitrust issues in the entertainment, theatrical distribution and pharmaceutical industries.  Mr. Morrissey also has handled a number of significant securities and corporate governance cases, including the defense of a shareholder class action in Iowa state court involving the acquisition of a diversified energy company, and the representation of a group of founders, former employees and other shareholders of an Internet company who brought fraud and breach of fiduciary claims against the venture capitalists who funded the company and other insiders who were alleged to have deprived our clients of the fair value of their stock by misrepresenting and failing to disclose material financial information when the company was acquired by another Internet company. Mr. Morrissey's most recent cases include an antitrust class action against the NCAA in the U.S. District Court for the Central District of California, a breach of contract and fraud case brought by a Los Angeles-based electronics company's against companies based in China, Taiwan and Singapore in state court in Los Angeles, and an antitrust and patent case on behalf of mainframe computer manufacturer Platform Solutions, Inc. against IBM in the U.S. District Court for the Southern District of New York.

The results in some of  Mr. Morrissey's recent cases include:

**June 2008**. Settled *IBM v. PSI*. Morrissey was one of the lawyers principally responsible for the representation of startup mainframe computer manufacturer Platform Solutions, Inc. in prosecuting antitrust claims against IBM, and in defending PSI against patent infringement, copyright, and trade secrets claims brought by PSI. Morrissey was also involved in coordinating PSI's prosecution of competition claims against IBM in the EU. The case settled on confidential terms in June 2008; as part of the settlement, PSI was acquired by IBM.

**2006-2008**. Morrissey was one of the lead lawyers for the responsible for the groundbreaking litigation and settlement in *White, et al. v. NCAA*, an antitrust class action in the Central District of California, in which the plaintiffs challenged NCAA's restrictions on athletics-based financial aid. The district court certified the class and denied the NCAA's motion to dismiss in 2006. With the case scheduled for trial in January 2008, the parties reached a settlement in December 2007 that was approved by the Court in August 2008. Under the settlement, the NCAA will make $218 million over five years available to provide additional benefits for student-athletes, will revise its rules to allow member schools to provide student athletes with comprehensive year-round health insurance, and will create a $10 million fund to cover educational and professional development expenses incurred by members of the class.

**December 2005**. Settled *Ravikant v. Tolia*, a case brought by 51 former shareholders of Epinions, Inc. (including three founders of that company) whose stock was cancelled without compensation in the 2003 acquisition of Epinions by DealTime, Ltd. (which subsequently became Shopping.com, Ltd. and was acquired by eBay, Inc.). The defendants included the venture capitalists and venture capital firms that were alleged to have participated in and approved the Epinions/DealTime merger; the CEO of Epinions at the time of the merger; and Shopping.com. The amount and terms of the settlement are confidential, but we and our clients were pleased with the result. Former clients and Epinions founders Naval Ravikant (650-575-0830) and Mike Speiser would be happy to discuss my work on the case.  Mr. Speiser's contact information is available upon request.

**June 2005.** Settled *Cohan v. Fiserv, Inc.*, a wrongful termination and breach of fiduciary duty case brought by our former client Perry Cohan, the former CEO of a financial services company that was acquired by Fiserv, a publicly traded company based in Wisconsin.  The case settled for a substantial sum of money less than six months after it was filed.  Mr. Cohan (310-659-3222) was very pleased with the result and would be happy to discuss my work on the case.

**March 2005/June 2007**.  With partners Steve Susman, Marc Seltzer and Vineet Bhatia, won a $420 million jury verdict (after trebling) in *Masimo Corp. v. Tyco Healthcare Group L.P. Masimo* is an antitrust case involving challenges to exclusionary contracting practices in the United States market for pulse oximetry products. The trial court upheld the jury's liability findings, but ordered a new trial on damages. After the subsequent re-trial, the trial court awarded Masimo $43.5 million in damages (after trebling) in June 2007.

Morrissey graduated from Columbia Law School in 1996.  He was a Managing Editor of the *Columbia Law Review* and was named a Kent Scholar (once) and Stone Scholar (twice) based on his outstanding academic achievements in law school.  After graduation, Morrissey clerked for the Hon. David M. Ebel on the United States Court of Appeals for the 10th Circuit.  Before joining Susman Godfrey, Morrissey practiced for several years at another nationally prominent law firm in Los Angeles.  He earned his B.A., with honors and distinction, and was named to *Phi Beta Kappa*, at the University of Iowa, where he was also a four-time letter winner on the varsity track and cross-country teams.

Morrissey lives in Los Angeles with his wife, Patty, and three children, Emily, Matthew and

Eleanor.

**EDUCATION**

- University of Iowa (B.A., with honors and distinction, 1993)
- Columbia University School of Law (J.D., 1996)

**HONORS AND DISTINCTIONS**

- Law Clerk, Hon. David M. Ebel, U.S. Court of Appeals, 10th Circuit
- Managing Editor (1995-1996) and Staff Member (1994-95), *Columbia Law Review*
- Kent Scholar (1996)
- Harlan Fiske Stone Scholar (1994-95)
- Represented Columbia at Willem C. Vis International Arbitral Moot Court, Vienna, Austria (1996)
- Phi Beta Kappa
- Named "Rising Star" by *Southern California Super Lawyers* in 2004 and 2005

**PROFESSIONAL AFFILIATIONS**

- State Bar of California (Antitrust & Unfair Competition and Litigation Sections)
- American Bar Association (Litigation and Antitrust Sections)
- Association of Business Trial Lawyers (Los Angeles Chapter)
- Los Angeles County Bar Association

**PUBLICATIONS**

Note, "State Settlement Class Actions that Release Exclusive Federal Claims: Developing a Framework for the Multijurisdictional Management of Shareholder Litigation," 95 Colum. L. Rev. 1765 (1995).

*Internet mail is not fully secure or private. Therefore, please do not transmit confidential information via Internet mail. Transmission of information is not intended to and does not create an attorney-client relationship. Please do not assume that your communications sent using Internet mail is privileged or confidential. Please do not send Susman Godfrey any confidential information via the Internet without previously consulting one of our attorneys.

## SUSMAN GODFREY L.L.P.

# Vineet Bhatia
# Partner

Houston, Texas
Phone: 713.653.7855
Fax: 713.654.3344
vbhatia@susmangodfrey.com*



VINEET BHATIA, admitted to bar, 1991, New York and 1996, Texas.

**EDUCATION**

- Rice University (B.A. 1987)
- Columbia University School of Law (J.D. 1990)

**HONORS & DISTINCTIONS**

- Law Clerk to The Honorable Jack B. Weinstein, United States District Court for the Eastern District of New York
- Notes and Comments Editor, Columbia Law Review, 1989-90
- Harlan Fiske Stone Scholar (1987-90)

**PROFESSIONAL AFFILIATIONS**

- State Bar of Texas
- American Bar Association; Litigation Section, Antitrust Section
- New York State Bar Association
- New York City Bar Association
- Texas Bar Association
- Houston Bar Association

Mr. Bhatia started his career at Wachtell Lipton Rosen & Katz in New York City in 1991 and joined Susman Godfrey in 1996. He became a partner in the firm in 1997 and is the youngest partner to have served on the firm's Executive Committee.

Over the last 15 years, Mr. Bhatia has had tremendous success handling a wide variety of complicated, high-stakes commercial disputes for plaintiffs and defendants. Mr. Bhatia is experienced in antitrust litigation, contract disputes, intellectual property cases, insurance coverage litigation, first amendment litigation, product liability litigation and many other types of cases.

1

Mr. Bhatia has a nationwide practice and has handled lawsuits in California, New York, Florida, Mississippi, Oklahoma, Texas, Virginia and Washington. His cases, which have arisen under domestic and foreign law, have taken him to Brazil, England, Russia, and Venezuela. Mr. Bhatia has also handled a number of disputes arising out of corporate transactions, such as purchase price adjustment arbitrations and tax sharing agreement arbitrations. He has been hired to try lawsuits for a number of Fortune 500 companies, including ACE Limited, Lyondell Chemical Company, Philip Morris, Kmart, and Western Resources.

In the last five years alone, Mr. Bhatia has recovered over $400 million for plaintiffs by either settlement or judgment. In addition, Mr. Bhatia made a major contribution to one of the Top Ten Verdicts in the United States in 2005, when Steve Susman and he obtained a $140 million jury verdict (automatically trebled to $420 million) in an antitrust case against Tyco Healthcare Group. The case was tried in federal court in Los Angeles in March 2005. In March 2006, the Court upheld the jury's findings of antitrust liability but ordered a new trial on damages, which has not yet been scheduled.

In addition to winning money for plaintiffs, Mr. Bhatia successfully has defended clients facing multi-million and multi-billion dollar claims. Philip Morris placed Mr. Bhatia on a National Steering Committee to organize the defense of tobacco litigation brought by dozens of foreign countries and placed him in charge of the cases brought in Texas. The cases in Texas and throughout the country were dismissed, and those dismissals were upheld on appeal. Philip Morris ended up paying nothing. Two of the world's largest insurers – ACE Property and Casualty Co. and Equitas – have also hired Mr. Bhatia to handle coverage disputes involving hundreds of millions of dollars of exposure throughout the United States.

If you are interested in contacting Mr. Bhatia's clients to find out about how he handles cases, call Joe Speelman at Lyondell Chemical Company, (713) 652-7402, Steve Rissman at Philip Morris, (917)-663-3310, or Simon Wright at Equitas 011-44-207-342-2678. You can also speak to opposing counsel from some of Mr. Bhatia's trials such as Steve Neal at Cooley Godward (650) 843-5182 or Ronald Redcay at Arnold & Porter, (213) 243-4002.

The results in some of Mr. Bhatia's recent cases are described below.

**April 2006:** Lyondell Chemical Company announced that it had settled a breach of contract claim brought on behalf of Lyondell-Citgo Refining L.P. against PDVSA, the Venezuela national oil company, for breaching a long-term crude supply contract. The settlement terms are confidential. The case was filed in the Southern District of New York and arose under New York and Venezuelan law. After defeating PDVSA's motion to dismiss the case under the "act of state" doctrine and completing extensive discovery in the United States and Venezuela, Mr. Bhatia obtained an adverse inference against PDVSA for refusing to produce documents, and, following that discovery sanction, filed a motion for summary judgment on behalf of the plaintiff. The case settled while that summary judgment motion was pending. SG partners, Lee Godfrey and Vineet Bhatia, were the lead lawyers for Lyondell in this matter.

**March 2005:** A federal jury in Los Angeles California awarded Masimo Corporation, $420 million in damages (after trebling) against Tyco Health Care Group and its affiliate, Mallinckrodt, Inc. The claims had been brought under the federal antitrust laws based on Tyco's anticompetitive practices that prevented Masimo from selling its competing pulse oximetry products to hospitals located in the United States. The case was tried by Mr. Bhatia, Steve Susman, and two other partners in the firm's Los Angeles office. Mr. Bhatia selected the jury and presented and cross-examined the majority of witnesses at trial.

**March 2005:** A federal district court in San Antonio dismissed all claims by 53 plaintiffs suing ConocoPhillips and Rio Grande Resources, alleging that defendants' uranium mining and milling operations caused cancer and other medical ailments. Plaintiffs sought damages in excess of $50

million plus punitive damages; they recovered nothing.

**December 2003:** Several large financial institutions paid more than $100 million to settle consolidated class actions brought in Los Angeles on behalf injured people whose reserves for future medical care and living expenses had been looted from trust funds. The suit was filed after the trustee stopped paying disbursements of settlement proceeds to approximately 250 seriously injured people and wrongful death claimants. The plaintiffs recovered 100% of their losses. Mr. Bhatia worked extensively on this case with co-lead class counsel, Marc M. Seltzer, in Susman Godfrey's Los Angeles office.

**August 2002:** An arbitrator rendered an arbitration decision in favor of our client, Lyondell Chemical Company, against Atlantic Richfield Company. The arbitration involved the breach of a long-term agreement to supply MTBE. After the arbitration decision, the parties agreed that ARCO should pay Lyondell $21.5 million. Mr. Bhatia served as lead counsel in this case, and the result was featured in an article in the National Law Journal on the top plaintiffs firms in the United States.

**June 2002:** Mr. Bhatia concluded two cases arising out of ACE Limited's acquisition of Cigna Corporation – a tax sharing agreement arbitration and a lawsuit filed in New York. Mr. Bhatia represented ACE in both cases. The settlement agreement in the case is confidential.

**November 2000:** Mr. Bhatia served as lead counsel for Western Resources in a purchase price adjustment arbitration and related litigation against Westinghouse Electric Corporation. The arbitration and related case involved Western Resources's purchase of Westinghouse's home-monitored security business in December 1996. The terms of the settlement were confidential, although Western Resources disclosed, as required by the SEC, that it received $37.5 million to resolve all the claims.

**April 2000:** After an extensive evidentiary hearing, a state judge in Texas dismissed a $15 billion lawsuit against Unocal brought by Bridas Corporation, an Argentine oil & gas company. Mr. Bhatia worked on the case with partners Randy Wilson and Eric Mayer. The case was dismissed based on choice of law and summary judgment briefing prepared by Mr. Bhatia. The ruling was upheld on appeal by the Court of Appeals, and Bridas recovered nothing on its claims.

*Internet mail is not fully secure or private. Therefore, please do not transmit confidential information via Internet mail. Transmission of information is not intended to and does not create an attorney-client relationship. Please do not assume that your communications sent using Internet mail is privileged or confidential. Please do not send Susman Godfrey any confidential information via the Internet without previously consulting one of our attorneys.

## *ABOUT THE FIRM*

### FINE, KAPLAN AND BLACK, RPC
1835 MARKET STREET, 28th FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
(215) 567-6565

Fine, Kaplan and Black is a nationally recognized firm located in Philadelphia, Pennsylvania, which devotes its practice entirely to litigation, with particular emphasis on antitrust, securities, RICO, consumer protection and complex commercial litigation.

Fine, Kaplan and Black, R.P.C. is consistently highly ranked in Pennsylvania in the antitrust practice area by the Chambers USA Guide. The 2007 Guide states that:

> Clients endorsed this lean, ten-lawyer practice as "*incredibly intelligent and a real pleasure to work with - in a crisis situation the lawyers are always available to jump right in and solve a difficult problem*." Others enthused: "*We entrust our most sensitive matters to this extremely ethical firm as the attorneys really listen to our concerns*." The litigation boutique advises both plaintiffs and defendants in high-profile antitrust litigation.

According to the Guide in 2006, Fine Kaplan has in recent years forged "an interesting and enviable niche practice" that combines both plaintiff and defendant representation. In 2005, peers "described the boutique as being heavy with 'intellectually gifted lawyers' who have extensive trial experience in civil and criminal antitrust cases."

Fine, Kaplan and Black's litigation partners Allen Black, Roberta Liebenberg, Donald Perelman and Jeffrey Istvan have been named as Pennsylvania Super Lawyers by *Philadelphia Magazine*. In 2008, *Philadelphia Magazine* named Ms. Liebenberg as one of the "10 Best Super Lawyers" in Pennsylvania. In May 2007, she was named as one of the National Law Journal's "50 Most Influential Women Lawyers in America." Every year since 2004, Ms. Liebenberg and Mr. Black have been recognized by *Philadelphia Magazine* as one of the "Top 100 Super Lawyers" in Pennsylvania and Philadelphia.

Over the years since its formation in 1975, the firm has had leading roles in numerous important complex actions, including class actions, in federal and state courts.  A few examples of these cases include:

United States v. Stolt-Nielsen, et al., 2007 WL 4225668 (E.D. Pa. Nov. 29, 2007), a criminal prosecution brought after the Antitrust Division rescinded an Amnesty Agreement that promised immunity from prosecution to the Company and its executives.  This represents the first case in which the Government had rescinded an Amnesty Agreement and attempted to maintain a criminal prosecution against the parties to such an Agreement.  After a four-week trial on a Motion to Dismiss the Indictment and extensive briefing by the parties, the Court found that the Government had "no reasonable basis" for revoking the Amnesty Agreement, and dismissed the indictment.

In re Urethane [Polyether Polyols] Antitrust Litig., M.D.L No. 1616 (D. Kan.), a pending multidistrict price-fixing action in which the firm serves as co-lead counsel for a putative class of direct purchasers. An initial settlement of $55 million has been reached with one defendant. The court has approved the settlement and certified a settlement class. The firm continues litigation against the remaining four defendants.  In August 2008, the Court granted class certification of all claims against the remaining four defendants.

In re Nasdaq Market-Makers Antitrust Litigation, 187 F.R.D. 465 (S.D.N.Y. 1998), was a large, complex multidistrict price-fixing class action in which a member of the firm was Plaintiffs' Co-Lead Counsel, a class of more than a million class members was certified by the Court, and which ultimately was settled for a recovery of more than one billion dollars for the benefit of the class.

Love Terminal Partners v. City of Dallas, No. 06-1279, 2007 WL 3196307 (N.D. Tex. Oct. 31, 2007), a complex antitrust litigation growing out of the Wright Amendment Reform Act of 2006 in which the firm successfully represented Southwest Airlines and the Court granted a motion to dismiss the complaint.

In re Terrapin Express, Inc. v. Airborne Express, Inc., No. 11-199-01536-05 (AAA 2007), a class-wide arbitration in which the firm represents a class of independent contractors alleging systematic underpayment and breach of contract. In June 2008, a panel of arbitrators approved a $24.75 million settlement.

In re Copper Antitrust Litigation, M.D.L. No. 1303, 2007 WL 3355368 (W.D. Wisc. Apr. 24, 2007), an antitrust case in which the firm represented a group of large purchasers of copper in litigation alleging price manipulation in the copper market which settled favorably in 2007.

In re Remeron End-Payor Antitrust Litigation, 2005-2 (CCH) Trade Cas. ¶ 74,966, No. 02-cv-2007 (D.N.J. Sept. 13, 2005), an antitrust class action in which the firm was Co-Lead counsel, and achieved a settlement of $36 million for the class of end users of a prescription drug.

In re Linerboard Antitrust Litigation, 321 F. Supp. 2d 619 (E.D. Pa. 2004), and 2004 WL 1221350, at *6 (E.D. Pa. June 2, 2004), was a horizontal price-fixing class action against the major manufacturers of corrugated containers, in which the firm was a member of Plaintiffs' Executive Committee. Settlements in the fall of 2003 resulted in a recovery in excess of $202.5 million for the benefit of the class.

Harleysville Mutual Ins. Co. v. GE Reinsurance Corp., 2002 WL 922148 (E.D. Pa. May 6, 2002), was a complex litigation in which the firm won summary judgment for its plaintiff client less than six months after the action was filed.

In re Lorazepam and Clorazepate Antitrust Litigation, 2003 WL 22037741, *3 (D.D.C. 2003), was an antitrust class action in which the firm was Co-Counsel for the class of direct purchasers. The Court, in approving a $35,000,000 settlement for the class, characterized counsel "among the best and most experienced antitrust litigators in the country."

In re Microcrystalline Cellulose Antitrust Litigation, M.D.L. No. 1402 (E.D. Pa.), is a price-fixing class action involving the sale of microcrystalline cellulose (MCC) which was settled for $50 million. The firm was one of the Discovery Co-Chairs.

In re Vitamins Antitrust Litigation, M.D.L. No. 1285 (D.D.C.), is a massive international price-fixing class action, in which the firm is a member of Plaintiffs' Executive Committee. Settlements have been reached resulting in a recovery for the class in excess of $325 million.

Parsky v. First Union Corp., 51 Pa. D &C 4th 468, 2001 WL 535786 (Phila. Com. Pl. 2001), was a class action alleging breach of contract and breach of fiduciary duty against First Union Corp., arising out of First Union's conversion of its common trust funds to shares of its in-house mutual funds. In the fall of 2003 the firm achieved a settlement in excess of $23 million for the benefit of the class.

In re Providian Financial Corp. Credit Card Terms Litigation (E.D. Pa. 1999), a large, consumer fraud class action in which a member of the firm was Plaintiffs' Co-Lead Counsel, ultimately was settled for $105 million dollars for the benefit of the class.

In re Allegheny Health, Education & Research Foundation. The firm represented a former executive of the Allegheny Health System as a defendant in a variety of civil proceedings in federal and state trial courts, and in a federal bankruptcy court. The firm also represented the client in connection with a variety of government investigations concerning the financial collapse of the Allegheny system. See Browne v. Abdelhak, 2000 WL 1201889 (E.D. Pa. 2000)

In re Polypropylene Carpet Antitrust Litigation, 93 F. Supp. 2d 1348 (N.D. Ga. 2000), a horizontal price-fixing class action involving the carpet industry, in which the firm was Co-Counsel for the class, resulting in a recovery of nearly $50 million.

In re Commercial Explosives Antitrust Litigation, MDL 1093 (D. Utah), a large, complex multidistrict price-fixing class action in which a member of the firm was Discovery Co-Chair.  The case was settled for a recovery of more than $ 77 million dollars for the benefit of the class.

In re Drill Bits Antitrust Litigation (C.A. No. H-91-627) (S.D. Tex.), a complex price-fixing class action in which a partner of the firm was on the Plaintiffs' Trial Team.  The case ultimately was settled for a recovery of $ 53.4 million dollars for the benefit of the class.

In re Corrugated Container Antitrust Litigation, 1983-2 CCH Trade Cases ¶ 65,628 (S.D. Tex. 1983), a seminal price-fixing class action case in which a firm partner was one of six trial counsel for the plaintiff class and obtained $500 million in settlements, including a four month jury trial that resulted in a verdict for the class.

Mead Data Central v. West Publishing Co. (S.D. Ohio 1987); and West Publishing Co. v. Mead Corporation, (D. Minn. 1988).  The firm, with co-counsel, represented West Publishing Company in two courts as both counterclaim defendant and plaintiff in a massive antitrust battle with Lexis, and ultimately achieved a very favorable settlement for West.

Northeast Jet Co. v. Lehigh-Northampton Airport Authority, et al., 767 F. Supp. 672 (E.D. Pa. 1991).  A firm partner represented Defendants in RICO, antitrust, § 1983, and other claims against an airport authority, the chairman of its board, and the airport's executive director.  All claims were dismissed on summary judgment before trial.

Swarthmore Radiation Oncology, Inc. v. Melvyn J. Lapes, M.D., et al., 1993-2 CCH Trade Cases ¶ 70,443 (E.D. Pa. 1992), a group boycott case in which the firm represented the Plaintiff and achieved an exceptionally satisfactory settlement, the amount of which is subject to a confidentiality agreement.

In re Domestic Air Transportation Antitrust Litigation, 137 F.R.D. 677 (N.D. Ga. 1991), a large complex antitrust price-fixing class action, in which the Court appointed one of the firm's partners as Plaintiffs' Co-Lead Counsel and in which a settlement valued by the Court at $ 458 million was obtained.

Hoefer & Arnett, Inc. v. The Lehigh Press, Inc., 695 F. Supp. 832 (E.D. Pa. 1988), a securities class action that was settled for $4 million after trial had begun, in which the firm was lead counsel for the plaintiff class.  The Court found that "[t]he result is excellent in relation to the contingencies and risks of this lawsuit." Id. at 835.

Stainton v. Tarantino, 637 F. Supp. 1051 (E.D. Pa. 1986).  The firm represented a partner of a prominent Philadelphia law firm in RICO litigation, and obtained a defense verdict after a month-long jury trial.

Virginia Soft Drinks Antitrust Litigation (E.D. Va. 1990), was a price-fixing action in which the firm, as one of the principal counsel, obtained class

certification and a settlement for 100% of damages after prior similar actions (brought by others) had failed.

<u>Sutton v. Independence Medical Service Association of Pennsylvania, et al.</u>, (E.D. Pa. 1992) ("Blue Cross/Blue Shield") was an ERISA and fraud class action in which the firm as Plaintiffs' Lead Counsel obtained a class action settlement including full damages and equitable relief greatly improving the extent to which Blue Cross/Blue Shield pay major medical benefits.

<u>Transamerican Refining Corporation v. Dravo Corporation, et al.</u>, 130 F.R.D. 70 (S.D. Tex. 1990) (Specialty Steel Piping Antitrust Litigation), was an antitrust action in which the firm and its co-counsel obtained a $50 million settlement for the plaintiff class.

<u>In Re Tricor Indirect Purchaser Antitrust Litigaton</u>, C.A. No. 05-360 (D. Del.) is an antitrust action in which the firm is co-lead counsel for the class of indirect purchasers of a prescription drug.

Various courts have commented favorably on the quality of our firm's work in antitrust and other class actions.  For example, in <u>In re Linerboard Antitrust Litigation</u>, 321 F. Supp. 2d 619 (E.D. Pa. 2004), and 2004 WL 1221350, at *6 (E.D. Pa. June 2, 2004), in which Donald Perelman and Roberta Liebenberg were members of Plaintiffs' Executive Committee, the Court approved a settlement of $202.5 million for the benefit of the class, and stated, "[T]he lawyering in the case at every stage was superb...."  In <u>In re Lorazepam and Clorazepate Antitrust Litigation</u>, 2003 WL 22037741, *6, M.D.L. No. 1290 (D.D.C. 2003), in which our firm was co-counsel for the class of direct purchasers, the Court in approving settlement characterized counsel "among the best and most experienced antitrust litigators in the country."  In the <u>In re Nasdaq Market-Makers Antitrust Litigation</u>, 1998 WL 782020, at *5 (S.D.N.Y. 1998), in which a member of our firm was Plaintiffs' Co-Lead Counsel, the Court in approving settlement stated that, "It is difficult to conceive of better representation than the parties to this action achieved...."

Allen D. Black, a member, is a graduate of Princeton University and the University of Pennsylvania Law School, <u>magna cum laude</u>, where he was Comment Editor of the Law Review and a member of the Order of the Coif. Thereafter, he served as law clerk to the Honorable John Minor Wisdom of the United States Court of Appeals for the Fifth Circuit, as a trial attorney in

- 5 -

the Civil Rights Division of the United States Department of Justice, and in the Judge Advocate General's Corps of the United States Navy.

Mr. Black was selected by his peers as one of the top 100 "Super Lawyers" in Pennsylvania in 2006. He is highly rated in both general commercial litigation and antitrust law by the 2006 Chambers Guide, which said: Allen Black is "a superb litigator with the rare ability to take on both the plaintiff and defendant side." Professor Stephen Burbank of the University of Pennsylvania Law School recently stated: "Allen Black is quite simply one of the best and most thoughtful lawyers in the country, a highly successful litigator and important contributor to numerous law reform efforts." Burbank, Litigation in a Free Society: The Roles of Litigation, 80 Wash. U.L.Q., 705, 719 (2002).

Mr. Black has been an elected member of The American Law Institute for 30 years, has served as a member of its council for 13 years, and was recently elected as the second vice president of the Institute. He is a Fellow of the American College of Trial Lawyers. Mr. Black has taught at the law schools of the University of North Dakota, Rutgers University, Temple University, and the University of Pennsylvania.

Roberta D. Liebenberg, a member, is a 1970 graduate of the University of Michigan and a 1975 graduate of the Catholic University Columbus School of Law, magna cum laude, where she was the Notes Editor of the Law Review. Thereafter, she served as a law clerk for the United States Court of Appeals for the Fourth Circuit. She is an elected member of the American Law Institute and has written and lectured extensively on a wide range of subjects including, antitrust, RICO, consumer financial services litigation and discovery issues. In August 2008, she was appointed by the President of the American Bar Association to serve as Chair of the Commission on Women in the Profession. She has served as the Chair of the American Bar Association's Standing Committee on the Federal Judiciary. Prior to that appointment, she served as the Third Circuit representative on the Standing Committee from 2005-2006. She also has served as Chair

- 6 -

of the Class Action and Derivative Suits Committee of the Section of Litigation of the American Bar Association and as co-chair for many years of the Philadelphia Bar Association's Antitrust Committee. She served on the Board of Governors of the American Bar Association.

Ms. Liebenberg is the recipient of the 2008 Sandra Day O'Connor Award. This Award is conferred annually on a woman attorney who has demonstrated superior legal talent, achieved significant legal accomplishments and has furthered the advancement of women in both the profession and the community. In May 2007, she was named as one of the National Law Journal's "50 Most Influential Women Lawyers in America." In October 2006, Ms. Liebenberg was named by Pennsylvania Governor Ed Rendell as a Distinguished Daughter of Pennsylvania. In April 2003, she was named as a first recipient of the Lynette Norton Award by the Pennsylvania Bar Association's Commission on Women in the Profession. That award was given to her in recognition of her outstanding litigation skills and mentoring of women attorneys. In December 2003, she was named as one of the "Women of Distinction" by the Philadelphia Business Journal and the National Association of Women Business Owners, based on her commitment to professional excellence and community involvement.

Ms. Liebenberg has served in leadership roles in a number of antitrust and consumer class actions, including: In re Providian Financial Corp. Credit Card Terms Litigation, MDL No. 1301 (E.D. Pa.) (Co-Lead Counsel) ($105 million settlement); In re Linerboard Antitrust Litigation, MDL No. 1261 (E.D. Pa.) (Executive Committee) ($202.5 million settlement); In re Vitamins Antitrust Litigation, MDL No. 1285 (D.D.C.) (Expert Committee) (approximately $325 million settlement); In re MSG Antitrust Litigation, MDL No. 1328 (D. Minn.) (Co-Chair, Expert Committee) ($123 million settlement); In re Automotive Paint Antitrust Litigation, MDL No. 1426 (E.D. Pa.) (Executive Committee) ($105.75 million settlement); Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc. (Carbon Fibers), No. CV-99-07796 (C.D. Cal.) (Expert Committee) ($68 million settlement); In re Polypropylene Carpet Antitrust

Litigation, MDL No. 1075 (N.D. Ga.) (Co-Chair, Expert Committee) (approximately $50 million settlement); and In re Commercial Explosives Antitrust Litigation, MDL 1093 (D. Utah) (Co-Chair, Discovery Committee) ($71 million settlement).

Ms. Liebenberg's antitrust expertise has also led to her retention by major corporations and senior executives in the defense of a number of high-profile, difficult cases. For instance, Ms. Liebenberg recently defended a former high-ranking shipping executive who was charged by the Department of Justice with violating the Sherman Act. This litigation raised the novel and important issue of whether the Department of Justice properly revoked a grant of amnesty after a company and its executives had provided extensive cooperation based on the promise of amnesty. After a four-week bench trial, the court granted the defendants' motion to dismiss the indictment. See United States v. Stolt-Nielsen, 524 F. Supp. 2d 586 (E.D. Pa. 2007).

In 2006, Southwest Airlines retained Ms. Liebenberg to defend it in a multi-million dollar antitrust suit arising from its negotiations with the cities of Dallas and Fort Worth regarding the proposed allocation of gates and demolition of a terminal at Dallas' Love Field. The court granted the motion to dismiss the complaint. See Love Terminal Partners, L.P. v. City of Dallas, Texas, 527 F. Supp. 2d 538 (N.D. Tex. 2007).

In 2008, Ms. Liebenberg was named as one of the Top Ten Attorneys in Pennsylvania by *Philadelphia Magazine*. Every year since 2004, Ms. Liebenberg has been recognized by the magazine as one of the "Top 50 Female Super Lawyers in Pennsylvania" and one of the "Top 100 Super Lawyers in Pennsylvania." Ms. Liebenberg was named one of the "Women Leaders in the Profession" by The Legal Intelligencer. She was recognized as a leader in the field of "Class Actions." Ms. Liebenberg is listed in the highest band-level as one of the leading antitrust lawyers in Pennsylvania by the *Chambers USA Guide: America's Leading Business Lawyers*. The *Chambers Guide* states that she "always impresses with her deep knowledge, experience and

vital understanding of the economic aspects of a case." Since 2000, she has been listed in *Best Lawyers in America* in the field of Antitrust, and serves as a member of the Best Lawyers Advisory Board.

Ms. Liebenberg writes and speaks extensively concerning antitrust and class actions, including presentations at a Federal Trade Commission conference and the ABA National Institute on Class Actions.

Donald L. Perelman, a member, is a graduate of the University of Michigan Law School (J.D. *magna cum laude*, 1980), and has extensive experience since then in the conduct of antitrust, class action and other complex litigation. Mr. Perelman is a senior member of the co-lead counsel team in the In re Urethane Antitrust Litigation (Polyether Polyols), MDL No. 1616 (D. Kan. July 29, 2008), in which the court recently granted class certification. He served as a member of the Plaintiffs' Executive Committee in the In re Linerboard Antitrust Litigation, 321 F. Supp. 2d 619 (E.D. Pa. 2004), and 2004 WL 1221350, at *6 (E.D. Pa. June 2, 2004). He was part of the core team that litigated this case until a settlement was reached in late 2003 resulting in a recovery for the class in excess of $202 million. In the In re OSB Antitrust Litigation, Master File No. 06-826 (E.D. Pa.), which was recently settled shortly before trial for more than $125 million, Mr. Perelman served as a member of the Plaintiffs' Executive Committee and played an integral role in the factual and theoretical development of this complex conspiracy case. In the Polypropylene Carpet Antitrust Litigation, MDL No. 1075 (N.D. Ga.), he was a key member of the team that defeated defendants' summary judgment and Daubert motions. Mr. Perelman is currently a member of the Executive Committee in the In Re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation, MDL No. 1720 (E.D.N.Y.). He also served as Co-Discovery Chair in the Commercial Explosives Antitrust Litigation, MDL 1093 (D. Utah), and he was principally responsible for the management of the discovery programs in Lawrence v. Phillip Morris, Civ. 94-1494 (E.D.N.Y.) and Transamerican v. Dravo, Civ. H-88-

789 (S.D.N.Y.).

Michael D. Basch, a member, is a graduate of Duke University, summa cum laude, and Yale Law School. He clerked for Hon. U.W. Clemon, United States District Judge for the Northern District of Alabama, and was an associate at Dechert, Price & Rhoads, Philadelphia, before joining the firm in 1989.

Jeffrey S. Istvan, a member, received his law degree from the University of Virginia School of Law in 1992, where he was a Hardy Cross Dillard Scholar. He received his undergraduate education at the University of Rochester, from which he graduated summa cum laude and was elected to Phi Beta Kappa. He clerked for The Honorable Robert S. Gawthrop, III, United States District Court for the Eastern District of Pennsylvania (1992-93), before joining Fine, Kaplan and Black, R.P.C. in October 1993.

Mr. Istvan has had wide-ranging experience in many complex cases, including antitrust, securities fraud, RICO, legal malpractice, corporate mismanagement, consumer protection, commercial and civil rights cases. He has earned a reputation as an outstanding writer, and he has been the primary drafter and editor of many complex briefs in important cases. Mr. Istvan has been named a Pennsylvania Super Lawyer by *Philadelphia Magazine*.

Mr. Istvan was Lead Counsel in Parsky v. First Union Corp., No. 771, Feb. Term 2001 (C.C.P. Phila. Cty.), which in the fall of 2003 resulted in a recovery of more than $23 million for a class of trust customers of a bank. He was Co-Lead counsel in In re Remeron Antitrust Litigation, No. 02-cv-2007 (D.N.J.), in which a $36 million dollar settlement for end users of a prescription drug was approved the court in the fall of 2005. He was one of the principal counsel to a group of large purchasers of copper in In re Copper Antitrust Litigation, 436 F.3d 782 (7th Cir. Feb. 6, 2006), in which the Seventh Circuit reversed the district court's entry of summary judgment, and following intense discovery, defendant JP Morgan Chase settled on confidential

terms that were very favorable to Mr. Istvan's clients.  Mr. Istvan presently is co-lead counsel in Terrapin Express, Inc. v. Airborne Express, Inc., No. 11-199-01536-05 (AAA 2007) in which a panel of AAA arbitrators recently approved a $24.75 million dollar settlement in favor of a class of independent contractors who were allegedly underpaid by defendant DHL.  That settlement is believed to be the largest class action settlement in AAA arbitration.

Gerard A. Dever, a member, received his law degree from Temple University School of Law in 2000, where he graduated magna cum laude.  He received his undergraduate education at American University from which he graduated cum laude.  Prior to attending law school, he served as a legislative assistant to Philadelphia City Councilman Daniel P. McElhatton.  Prior to joining Fine, Kaplan and Black, R.P.C., in January 2002, he was an associate at Pepper Hamilton LLP.   Mr. Dever successfully defended the United States v. Stolt-Nielsen, S.A., et al. case with partner Roberta Liebenberg.

Mary L. Russell, an associate, received her law degree cum laude from Georgetown University Law Center, where she was an editor of the American Criminal Law Review.  She received her undergraduate education at Kalamazoo College, where she was a Stone Honor Scholarship recipient.  She was previously associated with Winthrop, Stimson, Putman & Roberts in New York City and Ballard, Spahr, Andrews & Ingersoll in Philadelphia, and was Of Counsel at Liebenberg & White.

Paul Costa, an associate, received his undergraduate degree from the University of Pennsylvania, where he graduated cum laude.  He received his law degree from Georgetown University Law Center, where he graduated magna cum laude and was elected to the Order of the Coif.  Following law school, he worked as an associate in the Washington, D.C. offices of Akin, Gump, Strauss, Hauer & Feld, L.L.P.  Prior to joining Fine, Kaplan and Black, R.P.C. in October 2004, he served as a law clerk to the Honorable Cynthia M. Rufe of the United States District

Court for the Eastern District of Pennsylvania.

Matthew H. Duncan, an associate, received his law degree from the University of Pennsylvania Law School in 2003, where he graduated cum laude, and won the Dolores Sloviter Award for best paper in the field of judicial administration.  He received his undergraduate degree from Bucknell University in 1996 with a degree in Civil Engineering.  He worked for four years in New York City as a construction project superintendent for Moretrench American Corp.  Prior to joining Fine, Kaplan and Black, R.P.C., Matt served as a law clerk to the Honorable Anthony J. Scirica, Chief Judge of the United States Court of Appeals for the Third Circuit.

Ria C. Momblanco, an associate, received her law degree from the University of Pennsylvania Law School in 2002, where she was a senior editor and the technology editor for the Law Review.  She received her undergraduate degree in chemical engineering from the University of California, Los Angeles.  She is admitted to practice before the U.S. Patent and Trademark Office as well as in Pennsylvania and California.  Prior to joining Fine, Kaplan and Black in 2006, Ms. Momblanco was an associate at Jones Day in Orange County, California where she practiced complex commercial litigation in the fields of health care and consumer credit reporting.

Adam J. Pessin, an associate, received his law degree from the University of Pennsylvania Law School magna cum laude in 2003, where he was research assistant for Professor Stephen Burbank, teaching assistant for Judge Alison Whitmer Tumas, and an editor of the Law Review.  He received an undergraduate degree in English from Yale with distinction in 1996, and a diploma in Hebrew and Jewish studies from Oxford University in 1997.  Prior to joining Fine, Kaplan and Black in 2007, Adam clerked for The Honorable Maryanne Trump Barry of the United States Court of Appeals for the Third Circuit and was an associate at Patterson, Belknap, Webb and Tyler in New York City.