# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: AFTERMARKET AUTO FILTER ANTITRUST LITIGATION | ) Master File No. 1:08-cv-4883 ) ) MDL No. 1957 |
| ———————————————— | ) |
| This Document Relates to: All Indirect-Purchaser Actions | ) ) Honorable Robert W. Gettleman ) ) ) ) |
| ———————————————— | ) |

## RESPONSIVE MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO APPOINT LOVELL STEWART HALEBIAN LLP AS INTERIM LEAD OR CO-LEAD COUNSEL

Plaintiffs[1] respectfully submit this Responsive Memorandum and the accompanying Declarations of Christopher Lovell, Esq. and Craig Essenmacher, Esq. in order to further demonstrate that it is in the best interests of the Indirect Purchaser class to appoint Lovell Stewart Halebian LLP ("Lovell Stewart") as one of the interim co-lead counsel, and Miller Law LLC as the liaison counsel, for such class.[2]

---

[1] The named Plaintiffs are Justus Austin, David Stoll, Packard Automotive, Inc., David Carpenter, Barbara Cochran, Neil Freedman, Robert Hallowell, Luis Carlos Fuentes Lopez, Bernadette Martin, Samuel Scott Miller, Harry Obstar, Larry A. Penix, Jonathan P. Schiavone, Laura Schneider, Nelson Siegel, Marjorie Weeks, Janice Boone, and Washburn's Auto Body (collectively, "Plaintiffs")

Plaintiffs represent the District of Columbia and the following fourteen states: California Arizona, New York, Florida, Michigan, Wisconsin Maine, Montana, Nevada, New Hampshire, New Mexico, Tennessee, Vermont, and West Virginia.

[2] Attached as Exhibit A hereto is a proposed Case Management Order No. 1 for the Indirect Purchaser action.

### I.     This Is A "Competing Counsel" Rather Than A "Private Ordering" Fact Situation

In their moving memoranda, the fine firms of Zelle, Hofmann, Voelbel, Mason & Gette LLP and Heins Mills & Olson P.LC (the "Zelle/Heins Group") do not explain how it is in the best interests of the Indirect Purchaser class to have one-half as many interim co-lead counsel as the Direct Purchaser class has.  (This Court has already appointed four interim co-lead counsel for the Direct Purchasers).[3]

Instead of explaining how only two interim co-lead counsel are supposedly in the best interests of the Class, the Zelle/Heins Group makes essentially two arguments: (a) private ordering under the MANUAL FOR COMPLEX LITIGATION ("MANUAL"), and (b) estoppel.

However, the MANUAL carefully distinguishes between a fact situation involving the "private ordering" approach and one involving the "competing counsel" approach:

> There are several methods for selecting among competing applicants….[the first approach] is the so-called private ordering" approach:  **The lawyers agree who should be lead class counsel** ….[the Court should examine whether there are agreements, side agreements, etc.]
>
> ****

---

[3] For example, the Zelle/Heins Group does not suggest that there is only one-half the amount of work for Indirect Purchaser plaintiffs as there is for the Direct Purchaser Plaintiffs.

In fact, the Indirect Purchaser plaintiffs must do everything the Direct Purchasers have to do **plus** the Indirect Purchasers have to prove additional elements for damages and certain other State law requirements.

> In the 'selection from competing counsel' approach, the judge selects from **counsel who have filed actions, are unable to agree on a lead class counsel,** and are competing for appointment.

MANUAL § 21.272 at 280 (emphasis supplied).

The fact situation here involves the "selection from competing counsel" approach. This is because the "counsel who have filed actions, are unable to agree on lead class counsel" as explicitly stated in the MANUAL's above quoted terminology.

Therefore (no matter how many times the fine firms in the Zelle/Heins Group chant "private ordering", "private ordering", "private ordering"), this is **not** a fact situation for the "private ordering approach". Rather, this is a "selection from competing counsel" situation as to which the MANUAL advises as follows:

> The lawyer best able to represent the class's interests may emerge from an examination of the factors listed in Rule 23(g)(1)(C), as well as other factors…

MANUAL § 21.272 at 280.[4]

Therefore, the Zelle/Heins Group's own authority, the MANUAL, advises this Court, as Lovell Stewart originally urged the Court, to revert to the Rule 23(g)(1)(c) factors here.

## II. The Record Now Shows That Under Rule 23(g), It Is In The Best Interests Of The Class That Lovell Stewart Be Appointed As One

---

[4] Even those courts who have given "some weight" to the number of counsel supporting competing motions, have taken pains to appoint one counsel from each competitor group. *In re Air Cargo Shipping Services Antitrust Litigation*, 06-MD-1775 (E.D.N.Y.). This furthers the MANUAL's advice too.

**Of The Interim Co-Lead Counsel And Miller Law Be Appointed As Liaison Counsel**

Under F.R.Civ.P. Rule 23(g)(1)(C)(i), the Court considers the following mandatory criteria:

- the work counsel has done in identifying or investigating potential claims in the action;
- counsel's experience in handling class actions, other complex litigation, and the claims of the type asserted in the action,
- counsel's knowledge of the applicable law, and
- the resources counsel will commit to representing the class.

Fed. R. Civ. Proc. 23(g)(1)(c).

In reviewing the papers submitted by other applicants, it is clear that no firm has done what Lovell Stewart has done. Regarding the work done in this action, Lovell Stewart has conducted an extensive investigation of this matter, filed the first case in Connecticut on May 8, 2008,[5] was the only firm to argue on behalf of the Indirect Purchasers before the JPML, and it appears (from the papers) to be the only firm to retain an expert economist.[6]

---

[5] In fact, Lovell Stewart began to investigate the potential claims herein on or about April 22, 2008, and it filed its complaint in Connecticut on May 8, 2008. The Firm incorrectly stated in one instance in plaintiffs' moving brief that it had filed that complaint on April 23, 2008.

[6] In preparing that complaint, the Firm was faced with a decision as to whether to agree to serious restrictions on the use of information which were being imposed by one of the firms which has now been appointed a co-lead counsel for the direct purchaser plaintiffs. The Firm chose not to agree to such restrictions, and therefore certain information has not now been made available to it.

Thus, while the Firm's complaint is similar to those filed by other plaintiffs, the complaint filed by the Zelle/Heins group contains, as they note in their motion papers, additional details. The difference is attributable to the fact that the Zelle/Heins group agreed to the

However, the Heins Mills firm did make a trade-off (*see* n. 2 *supra*) to come up with a more detailed complaint than that filed by Lovell Stewart.

On net, Lovell Stewart has done as much as any interim co-lead applicant to further the Indirect Purchasers' claims.

### A. "Counsel's Experience In Handling Class Actions," Demonstrates That It Is In The Best Interests Of The Class That Lovell Stewart Be Appointed An Interim Co-Lead Counsel

Part of Rule 23(g) focuses on "counsel's experience in handling class actions." Lovell Stewart believes that the best indicator of "experience in handling class actions" is the results that have been obtained for the class when the applicant law firm has been interim lead or co-lead counsel for the class.

As lead or co-lead counsel, Lovell Stewart and its predecessors (the "Firm") have achieved class action settlements that recovered, after deduction for all costs and attorneys fees, 100 cents on each dollar of losses[7] of each claiming class member in **each** of five separate class actions:

- *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 471 (S.D.N.Y. 1998) ("*NASDAQ*") ($1,027,000,000);

- *In re Sumitomo Copper Litig.,* 74 F. Supp. 2d 393, 395 (S.D.N.Y. 1999) ("*Sumitomo*") ($149,600,000);

---

restrictions on use of the information, whereas the Firm did not. The full implications of the restrictions agreed to by the Zelle/Heins group have not yet been resolved.

[7] "Losses" means single, actual damages, exclusive of trebling and also exclusive of any prejudgment interest.

- *Blatt v. Merrill Lynch Fenner & Smith Inc.,* 94 Civ. 2348 (JAG) (D.N.J.) ("*Blatt*") ($70,000,000);

- *In re Soybeans Futures Litig.,* 89 Civ. 7009 (CRN) (N.D. Ill.) ($21,500,000); and

- *Kaplan v. E.F. Hutton Group, Inc., et al.*, Civ. Action No. 88-00889 (N.Y. Sup. Ct.) ($8,180,000).

The papers submitted by other plaintiffs do not state that any other firm has achieved recoveries **for the class** of 100 cents on the dollar in even a single case. Lovell Stewart knows of no other firm that has achieved recoveries **for the class** of 100 cents on the dollar in five separate cases. This disparity in the record indicates that the class will be well served by the appointment of Lovell Stewart as a interim co-lead counsel for the Indirect Purchaser plaintiffs.

Lovell Stewart believes that a lesser indication of "counsel's experience in handling class actions," under Rule 23(g) involves the results obtained under the relevant statutory scheme. As sole or co-lead counsel, the Firm has achieved what were the then largest class action recoveries under three separate statutes: the Sherman Act, 15 U.S.C. § 1 *et seq.*, the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.*, and the Investment Company Act, 15 U.S.C. § 80a-1 *et seq.*[8]

---

[8] *In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 465, 471 (S.D.N.Y. 1998)(a class action resulting in an "all-cash [$1.027 billion] settlement, achieved through 'four years of hard-fought litigation,' apparently is [at that time] the largest recovery (class action or otherwise) in the hundred year history of the state and federal antitrust laws");

The papers submitted by other plaintiffs do not state that any other firm has achieved, as lead or co-lead counsel, the largest class action recoveries under three statutory schemes. We know of no other firm that has achieved the three largest recoveries under three separate statutory schemes.

This disparity in the record further demonstrates that the appointment of Lovell Stewart as a co-lead counsel for the Indirect Purchaser plaintiffs is in the best interests of the class.

Also, with regard to "experience in handling class actions," Lovell Stewart believes that experience **in this District** is relevant. Lovell Stewart has been appointed chairman of co-lead counsel, or sole lead counsel, in numerous previous class actions in the Northern District of Illinois. In the *BP Propane Indirect Purchaser Antitrust Litigation*, 06-C-3541, now pending before Judge Zagel, the Firm serves as chairman of interim co-lead counsel for the plaintiffs-indirect purchasers. In *Soybean Futures Litigation*, 89-C-7009, the Firm served as chairman of co-lead counsel in a price manipulation class action before Judge

---

*In re Sumitomo Copper Litigation*, 74 F. Supp. 2d 393, 395 (S.D.N.Y. 1999), a class action that led to a $134.6 million recovery which provided each claiming class member with more than 100¢ on the dollar of each investor's losses on a purchase-sale differential basis] "is the largest class action recovery in the 75 plus year history of the Commodity Exchange Act");

*Blatt v. Merrill Lynch Fenner & Smith Inc.*, 94 Civ. 2348 (JAG) (D.N.J.), a $76.5 million settlement in 1997 of impermissible investment and related claims under the Investment Company Act, 15 U.S.C. §80a-1 et seq., providing one hundred cents on the dollar exclusive of interest on plaintiffs' purchase-sale differential losses constituted "by far the largest settlement" of class claims under the Investment Company Act according to Securities Class Action Alert letter dated August 17, 2000).

Norgle.  In *Kohen v. Pacific Investment Management Co. LLC*, 05-C-4681, the Firm was appointed sole lead counsel after a contested lead counsel motion in a price manipulation action before Judge Guzman.

The Firm or its attorneys have also been involved in other price-fixing or price manipulation cases in this District since 1978.  For example, in *Brand Name Prescription Drugs Antitrust Litigation*, 94-C-897, Robert Skirnick, a member of the Firm's predecessor, was appointed to the Executive Committee by Judge Kocoras.  The Firm then performed extensive work in that case.  This resulted in what was then the second-largest class action settlement in the history of the federal antirust laws.

Therefore, the Class here will be well served by the appointment of Lovell Stewart as a co-lead counsel for the Indirect Purchaser plaintiffs.

> **B.  The "Counsel's Experience In Handling …Claims Of The Type Asserted Herein" Demonstrates That It Is In The Best Interests Of The Class That Lovell Stewart Be Appointed A Co-Lead Counsel**

Another part of Rule 23(g) focuses on "counsel's experience in handling . . . claims of the type asserted in the action."  The "claim" here is price fixing.  The Firm (per Christopher Lovell) tried an antitrust price-fixing case to verdict twenty-five years ago.  *Strobl v. New York Mercantile Exch.*, 582 F.Supp. 770 (S.D.N.Y. 1984), *aff'd*, 708 F.2d 22 (2d Cir. 1985).  Virtually all damages requested were awarded by the jury, and the awarded damages were all upheld on appeal.  *Id.*

The papers submitted by other counsel seeking leadership appointment, apparently do not assert that they have successfully tried a price-fixing case to verdict and upheld that verdict on appeal.[9]

This part of the record demonstrates that the Class will be well served by the appointment of Lovell Stewart as a co-lead counsel for the Indirect Purchaser plaintiffs.

### C. "Counsel's Knowledge Of The Applicable Law" Demonstrates That It Is In The Best Interests Of The Class That Lovell Stewart Be Appointed A Co-Lead Counsel

Another part of Rule 23(g) focuses on "counsel's knowledge of the applicable law." The Firm has demonstrated that Mr. Lovell has argued antitrust issues before federal courts of appeals and the Supreme Court of the United States. *Billing v. Credit Suisse First Boston Ltd.*, 426 F.3d 130 (2d Cir. 2005), *vacated on other grounds sub nom. Credit Suisse Securities (USA) LLC v. Billing*, 127 S.Ct. 1867 (2007).

The papers submitted by other attorneys do not reveal that any other attorneys assert that they have done this. This part of the record indicates that the class will be well served by the appointment of Lovell Stewart as a co-lead counsel for the Indirect Purchaser plaintiffs.

---

[9] Mr. Esades of Heins Mills apparently served as "one of the trial counsel" in a price-fixing case that went to verdict, but that was a defense verdict and apparently Ms. Steiner, rather than Mr. Esades, is seeking to be the counsel from the Heins Mills firm appointed herein.

    **D.**    **The "Resources Counsel Will Commit To Representing The Class" Factor Under Rule 23(g) Demonstrates That It Is In The Best Interests Of The Class That Lovell Stewart Be Appointed A Co-Lead Counsel**

The final part of Rule 23 focuses on "the resources counsel will commit to representing the class," Lovell Stewart has stated that it has previously committed in excess of $3 million dollars in expenses in a complex class action, and is prepared to do so for the class in the case.

The papers submitted by other attorneys do not reflect any other such commitment. This disparity in the record indicates that it is in the best interests of the class that Lovell Stewart be appointed as a co-lead counsel for the Indirect Purchaser plaintiffs.

One of the most important changes in class action litigation over the last thirty years has been the transformation to electronically stored information. Efficiently reviewing this information can now save substantial attorneys' time. However, an efficient review frequently involves vendor software costs. Lovell Stewart has proprietary vendor software which will be available to the other firms in the case at no cost and will save the class substantial sums on vendor software.

The papers submitted by other attorneys on this motion do not reveal any other firm prepared to do this for the class. This disparity in the record further demonstrates that it is in the best interest of the class that Lovell Stewart be appointed as a co-lead counsel for the Indirect Purchaser plaintiffs.

### III. The Facts Refute An Estoppel Which, In Any Event, Is Repugnant To The Best Interests of The Class

The Zelle/Heins Group's estoppel argument says, in effect, Lovell Stewart attended "our" meeting. Therefore, it is forever bound by what we say.

Prefatorily, this "gotcha" methodology could never be in the best interests of the class—even if the facts were as related in Zelle/Heins papers. Further, the facts are very different:

1. **Before** the June 25 meeting to which the Zelle/Heins Group refers, Richard Hagstrom of Zelle Hoffman had agreed with Christopher Lovell of Lovell Stewart on a "tri-lead" counsel arrangement with Heins Mills as the third co-lead counsel. Declaration of Christopher Lovell ("Lovell Decl.") ¶3.

2. On this basis, Lovell Stewart attended the June 25th meeting. *Id* at ¶4. (Lovell Stewart believed it was "our" meeting, too. *Id*.)

3. However, when the issue of leadership was raised during the meeting, the discussion of such issue was abruptly terminated. Declaration of Craig Essenmacher, Esq. ("Essenmacher Decl.") ¶4. No discussion of the various counsel's relative accomplishments was had. No vote on leadership was taken. Nothing.

4. Later, as Lovell Stewart was preparing to argue the JPML on behalf of all counsel representing the Indirect Purchasers herein, Richard Hagstrom called Christopher Lovell. Lovell Decl. ¶5. Mr. Hagstrom stated that a leadership

decision had been made: Zelle Hoffman and Heins Mills would be the **two** co-lead counsel. *Id.*

5.     Lovell Stewart had not been invited to, apprised of, nor involved in the discussions (if any) that led to this "decision". *Id.*

6.     Lovell Stewart politely disagreed with the decision (*Id* at ¶5), and proceeded to argue the MDL motion on behalf of **all** counsel, retain an expert economist for the class motion herein and otherwise prosecute the claims. *Id* at ¶6.

7.     No "assignments' were given to Lovell Stewart by any group. Essenmacher Decl. ¶6. Lovell Stewart argued the JPML, and retained an expert economist, etc. on its own initiative.

Therefore, far from supporting any estoppel, the actual facts show that this has been a "competing counsel" situation in which no vote and no discussion of lead counsel has occurred. *Id.*

### IV.   Miller Law LLC Should be Appointed Liaison Counsel

No other motion for lead counsel has requested the appointment of liaison counsel. In Lovell Stewart's experience, it will be in the best interests of the Class to have Miller Law serve as Liaison Counsel. (This is not to denigrate in any way our other fine colleagues in Chicago.)

As such, Plaintiffs request that Marvin Miller of Miller Law LLC appointed liaison counsel on behalf of all indirect purchaser plaintiffs.

## **CONCLUSION**

It is in the best interests of the Class that Lovell Stewart be appointed as one of the interim Lead Counsel, and Miller Law LLC be appointed as liaison counsel for the Indirect Purchaser class herein.

Dated: September 19, 2008        Respectfully submitted,

       */s/ Marvin A. Miller*
       Marvin A. Miller
       Matthew E. Van Tine
       MILLER LAW LLC
       115 South LaSalle St., Suite 2910
       Chicago, Illinois 60603
       (312) 332-3400
       mmiller@millerlawllc.com

       */s/ Christopher Lovell*
       Christopher Lovell
       Gary Jacobson
       Peggy Wedgworth
       Craig Essenmacher
       Imtiaz A. Siddiqui
       LOVELL STEWART HALEBIAN LLP
       500 Fifth Avenue, Floor 58
       New York, NY 10110
       (212) 608-1900
       clovell@lshllp.com

       *Attorneys for Plaintiffs and the Proposed*
       *Lead Counsel for Indirect Purchaser*
       *Plaintiffs*

Guri Ademi
Shpetim Ademi
David Syrios
ADEMI & O'REILLY, LLP
3620 E. Layton
Cudahy, WI 53110
Telephone: (414) 482-8000
Facsimile: (414) 482 8001

Exhibit A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

_____
                                        )
IN RE:  AFTERMARKET FILTERS           )
ANTITRUST LITIGATION                  )
_____     )     **Case No. 1:08-cv-4883**
                                        )     **MDL No. 1957**
THIS DOCUMENT RELATES TO:            )     **Honorable Robert W. Gettleman**
ALL INDIRECT ACTIONS                  )
_____     )


[PROPOSED] CASE MANAGEMENT ORDER NO. 1

WHEREAS, approximately 23 class actions have been filed in various United States

District Courts on behalf of a putative class of persons and entities who purchased aftermarket

oil, air, fuel and transmission filters ("Filters") indirectly from defendants (" Indirect Actions");

WHEREAS, approximately 33 class actions have been filed in various United States

District Courts on behalf of a putative class of persons and entities who purchased Filters directly

from defendants ("Direct Actions");

WHEREAS, each of the Indirect Actions alleges an equivalent or substantially similar

class period and further alleges that defendants' conduct violated, *inter alia,* the Federal and state

antitrust laws;

WHEREAS, on August 18, 2008, the Judicial Panel on Multidistrict Litigation issued an

Order transferring 25 actions to the Court which include both Direct Actions and Indirect Actions

(collectively "Related Actions");

WHEREAS, there are approximately 30 additional Related Actions pending transfer to

the Court;

WHEREAS, in order to avoid unnecessary cost and delay, as well as to promote judicial economy, the Court finds that it is appropriate to consolidate the Indirect Actions and to provide procedures for the coordination of these Actions;

NOW, THEREFORE, THE COURT ORDERS:

**I.** **CONSOLIDATION, MASTER DOCKET, MASTER FILE AND SEPARATE ACTION DOCKETS**

1.      All actions pending in or transferred to the Court that assert or purport to assert claims on a class-wide basis arising from or relating to the operative facts and allegations contained in the complaints filed in the Indirect Actions (collectively, the "Consolidated Action") are hereby consolidated for all purposes pursuant to Fed. R. Civ. P. 42(a).

2**.**      A Master Docket and a Master File are hereby established for this and all Related Actions filed in or subsequently transferred to the Court.  Entries in said Master Docket shall be applicable to this Consolidated Action as more fully set forth below.  Separate dockets shall also be maintained for each Indirect Action currently pending, subsequently filed in or transferred to the Court, and entries shall be made therein in accordance with the regular procedures of the Clerk of the Court, except as modified by this Order or a future order of the Court.

3.      When a pleading or other court paper is filed and the caption, pursuant to paragraph 10, *infra*, shows that it is to be applicable to "All Indirect Actions," the Clerk shall file such pleading or other court paper in the Master File and note such filing in the Master Docket. No further copies need be filed nor docket entries made.

2

4.      When a pleading or other court paper is filed and the caption, pursuant to

paragraph 9, *infra*, shows that it is applicable to fewer than all actions before the Court, the Clerk

need file such pleading or other court paper only in the Master File, but nonetheless shall note

such filing in both the Master Docket and in the docket of each such action.

## II.    NEWLY FILED OR TRANSFERRED ACTIONS

5.      When a case which relates to the subject matter of this Consolidated Action is

hereafter filed in the Court or transferred here from another court, the Clerk of the Court shall:

a.      Make an appropriate entry in the Master Docket;

b.      Place a copy of this Order in the separate file for such action;

c.      Mail a copy of this Order to the attorneys for the plaintiffs in the newly-
filed or transferred case and to the attorneys for any new defendants named
in the newly-filed or transferred case; and

d.      Mail a copy of the Order of assignment to counsel for plaintiffs and
counsel for defendants in the Consolidated Action.

6.      The Court requests the assistance of counsel in calling to the attention of the Clerk

of the Court the filing or transfer of any case which should properly be consolidated or

coordinated with this Consolidated Action.

7.      This Order shall apply to each Indirect Action currently pending in the Court,

subsequently filed in the Court or transferred to the Court unless a party objecting to the

consolidation of such case or to any other provision of this Order shall, within twenty-one (21)

days after the date upon which a copy of this Order is mailed to counsel for such party, file an application for relief from this Order or any provision herein and the Court deems it appropriate to grant such application.

8.      The terms of this Order shall not have the effect of making any person, firm, or corporation a party to any action in which he, she or it has not been properly named, served, or joined, in accordance with the Federal Rules of Civil Procedure.  The terms of this Order and the consolidation ordered herein, and defendants' consent thereto, shall not constitute a waiver by any party of any claims in or defenses to any of the actions, including defenses based on personal jurisdiction.

### III.    CAPTION OF CASES

9.      Every pleading filed in this proceeding, or in any separate action included herein, shall bear the following caption:



|  |  |  |
| --- | --- | --- |
| | ) | |
| **IN RE:  AFTERMARKET FILTERS ANTITRUST LITIGATION** | ) ) | |
| | ) | Case No. 1:08-cv-4883 |
| | ) | MDL No. 1957 |
| **THIS DOCUMENT RELATES TO:** | ) | Honorable Robert W. Gettleman |
| | ) | |
| | ) | |

10.     When a pleading or other court paper is intended to be applicable to all Related Actions, the words "All Indirect Actions" shall appear immediately after the words "THIS

4

DOCUMENT RELATES TO:" in the caption set out above.  When a pleading or other court paper is intended to be applicable only to one, or some, but not all such Actions, the party filing the document shall indicate the actions(s) to which the document is intended to be applicable by indicating the last name of the named plaintiffs and the docket number(s).

## IV.    ORGANIZATION OF PLAINTIFFS' COUNSEL

11.    The Court designates Lovell Stewart Halebian LLP to act on behalf of all indirect purchaser plaintiffs as Plaintiffs' Interim Class Counsel with responsibilities hereinafter described.

12.    Plaintiffs' Interim Class Counsel shall have the following responsibilities:

      a.      prepare and file a consolidated amended complaint;

      b.      submit to the Court a schedule governing discovery, the filing of dispositive motions and trial;

      c.      designate plaintiffs' counsel to act as spokesperson at pretrial conferences;

      d.      call meetings of indirect purchaser plaintiffs' counsel when appropriate;

      e.      make all work assignments to indirect purchaser plaintiffs' counsel to facilitate the orderly and efficient prosecution of this litigation and to avoid duplicative or unproductive effort, and monitor the work and time expended by plaintiffs' counsel;

      f.      brief and argue motions and file opposing briefs in proceedings initiated by other parties;

      g.      initiate and conduct discovery proceedings;

      h.      negotiate with defense counsel with respect to settlement and other matters;

      i.      request that the Court approve settlements, if any, and fee awards;

      j.      conduct trial and post-trial proceedings;

k. consult with and employ experts;

l. allocate fees;

m. perform such other duties and undertake such other responsibilities as they deem necessary or desirable; and

n. coordinate and communicate with defendants' counsel with respect to matters addressed in this paragraph or its subparts.

13. All work performed by indirect purchaser plaintiffs' counsel in this class action must be authorized in advance by Plaintiffs' Interim Class Counsel.

14. No motion shall be initiated or filed on behalf of any class plaintiff except through Plaintiffs' Interim Class Counsel.

15. All indirect purchaser plaintiffs' counsel shall submit to Plaintiffs' Interim Class Counsel or their designee a contemporaneous record of the time expended and expenses incurred in the form set forth by Plaintiffs' Interim Class Counsel.

16. Plaintiffs' Interim Class Counsel shall have sole authority to communicate with defendants' counsel and the Court on behalf of all class plaintiffs, unless that authority is expressly delegated to other counsel. Defendants' counsel may rely on all agreements made with Plaintiffs' Interim Class Counsel, and such agreements shall be binding on all other indirect purchaser class plaintiffs in their respective cases.

17. The Court designates Miller Law LLC as Plaintiffs' Liaison Counsel. Plaintiffs' Liaison Counsel shall have the responsibility to receive orders, notices, correspondence, and telephone calls from the Court on behalf of all indirect purchaser plaintiffs, and to maintain an up-to-date service list of all counsel for distributing copies of orders, notices and other documents to indirect purchaser plaintiffs' counsel.

6

18.     Defendants shall effect service of papers on plaintiffs by serving a copy of the

paper by overnight mail service, electronic mail or hand delivery on Plaintiffs' Interim Class

Counsel.  Plaintiffs' Interim Class Counsel shall effect service on all other plaintiffs' counsel by

first-class, United States mail, electronic mail or hand delivery.  Plaintiffs shall effect service of

papers on defendants by serving a copy of the paper by overnight mail service, electronic mail or

hand delivery on Defendants' counsel.  The Court's Master Service List shall govern in all

proceedings.

**V.     <u>ADMISSION OF ALL ATTORNEYS</u>**

19.     Each attorney not a member of the Bar of the Court who is acting as counsel for a

plaintiff or defendant herein and who is in good standing in any district court of the United States

shall be deemed admitted *pro hac vice* to practice before the Court in connection with this

Consolidated Action upon payment of the appropriate filing fee and compliance with the Court's

registration procedures with respect to electronic filing.


                                        ENTERED:

Dated:  _____, 2008


                                        _____
                                        Honorable Robert W. Gettleman,
                                        United States District Judge

7

**CERTIFICATE OF SERVICE BY ELECTRONIC MEANS**

I, Marvin A. Miller, hereby certify that on September 19, 2008, service of the foregoing document was accomplished pursuant to ECF as to Filing Users and I shall comply with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.


*/s/ Marvin A. Miller*
Marvin A. Miller