**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: AFTERMARKET FILTERS ANTITRUST LITIGATION**<br><br>**THIS DOCUMENT RELATES TO:**<br><br>**ALL CASES** | **Master Docket No. 1:08-cv-4883**<br><br>**MDL Docket No. 1957**<br><br>**Honorable Robert W. Gettleman Magistrate Geraldine Soat Brown** |

### CASE MANAGEMENT ORDER No. 2

WHEREAS, on January 11, 2010 the parties to these consolidated actions submitted to the Court their proposed Joint Discovery Plan pursuant to the Court's orders dated December 4, 2009 and January 4, 2010;

WHEREAS, on January 13, 2010 this Court held a hearing regarding the parties' proposed Joint Discovery Plan and approved said plan subject to certain rulings entered on the record by this Court;

NOW THEREFORE, THE COURT ORDERS

**A.      Fact Discovery**

1.      **Timing of Responses to Written Discovery Requests:**

Except as provided in Sections A(2)(b) & (c) and Section A(3)(c) of this Order, the time in which the parties shall respond to any written discovery request shall be governed by the applicable provision of the Federal Rules of Civil Procedure.

2.      **Documents:**

a.      Prior to the filing of motions for class certification, any party may serve on any other party written requests for documents pursuant

to Federal Rule of Civil Procedure 34 on subjects that relate to the merits and class certification.

b. Defendants shall have until February 16, 2010 to serve written responses and objections to the Direct Purchaser Plaintiffs', Indirect Purchaser Plaintiffs' and Plaintiff, State of Florida, Office of the Attorney General, Department of Legal Affairs' First Request for Production of Documents Directed to All Defendants. The parties shall meet and confer in a timely manner after February 16, 2010 to discuss and attempt to resolve any disputes relating to those requests and defendants' written responses and objections thereto.

c. The parties shall produce documents on a rolling basis, and shall substantially complete the production of documents no later than 150 days after the Court enters this Order.

d. Upon completion of the production of responsive documents, an attorney for the producing party shall certify in writing to opposing counsel that the production is complete.

3. **Interrogatories:**

a. Except for the interrogatories described in Section A(3)(c) of this Order, the parties shall not serve interrogatories that request information that relates to the merits until after the Court rules on plaintiffs' motions for class certification. Nothing in this provision, however, shall prohibit a party from serving on any

2

other party at any time interrogatories that request information that relates to class certification, or that request preliminary information that will assist the serving party in conducting the initial phase of discovery, including but not limited to interrogatories that request (1) the identity of individuals who may have relevant and discoverable information or documents, (2) the location of relevant and discoverable information or documents, and (3) information that relates to the manner in which relevant and discoverable information or documents are maintained.

b.    After the Court rules on each of the plaintiffs' motions for class certification, the parties shall meet and confer and attempt in good faith to reach an agreement as to the number of merits-related interrogatories that each side will be permitted to serve.

c.    On December 10, 2009, the direct purchaser plaintiffs served their First Set of Interrogatories Directed to All Defendants. Defendants shall serve responses and objections to interrogatories 1-4, 12-13, 17-18, and 20 of the direct purchaser plaintiffs' first set of interrogatories by February 16, 2010. Defendants shall serve responses and objections to interrogatories 5-11, 14-16, and 19 of the direct purchaser plaintiffs' first set of interrogatories no later than 60 days after the completion of the production of documents.

3

4.      **Depositions:**

      a.      Prior to briefing on class certification, plaintiffs collectively may conduct one Rule 30(b)(6) deposition of each defendant on topics that relate to class certification and defendants collectively may conduct one Rule 30(b)(6) deposition of each class representative on topics that relate to class certification.

      b.      The parties shall meet and confer in advance of the completion of the production of documents to discuss the scheduling of merits-related depositions.

      c.      With the exception of the depositions of William G. Burch and former employees of the defendants, which the parties shall address at the meet and confer required by Section A(4)(b) of this Order, nothing in this Order shall prohibit a party from deposing any third party at any time.

**B.      Expert Discovery:**  Prior to the completion of fact discovery, the parties shall meet and confer to set a schedule for expert reports and depositions of experts on issues other than class certification.

**C.      Discovery Updates:**  The parties shall submit to the Court monthly joint status reports on the progress of discovery, highlighting any problems that may need attention from the Court.

**D.      Electronically Stored Information:**      The defendants, the direct purchaser plaintiffs, the indirect purchaser plaintiffs, plaintiff the State of Florida, and plaintiffs Loodvik Peerali and Oyster Incorporated shall each designate a liaison responsible for all issues that may

arise related to the production of electronically stored information.  The parties have provided to the Court an agreed upon stipulation concerning the production of electronically stored information, a copy of which is attached as Exhibit A to this Order.  That stipulation is in lieu of the Court's Standing Order on electronically stored information.

       **E.**    **Privileged Documents:**  A producing party shall serve a privilege log on the other parties 60 days after the producing party completes each installment of its production of documents.

       **F.**    **Dispositive Motions:**  Nothing in this Order shall prohibit any party from filing a dispositive motion at any time.

ENTERED:    January 21, 2010

 

_____
Geraldine Soat Brown
United States Magistrate Judge

EXHIBIT A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: AFTERMARKET FILTERS**<br>**ANTITRUST LITIGATION**<br><br>**THIS DOCUMENT RELATES TO:**<br>**ALL ACTIONS** | **Master Docket**<br>**No. 1:08-cv-04883**<br>**MDL No. 1957**<br><br>**Honorable Robert W. Gettleman**<br>**Magistrate Geraldine Soat Brown** |

**STIPULATED AGREEMENT REGARDING**
**ELECTRONICALLY STORED INFORMATION**
**AND OTHER TANGIBLE ITEMS AND FORMATS FOR PRODUCTION**

WHEREAS, the parties agree that this Stipulated Agreement Regarding Electronically Stored Information and other Tangible Items and Formats for Production (the "Agreement") shall govern the parties in the above-captioned MDL Proceedings (the "Action");

WHEREAS, the parties recognize that certain paper documents and electronically stored information ("ESI") are relevant to these actions;

WHEREAS, the parties recognize their continuing obligations under the Stipulated Agreement Regarding Preservation of Documents, Electronically Stored Information, And Other Tangible Items;

WHEREAS, the parties have engaged in discussions regarding the production format of such documents and ESI;

NOW, THEREFORE, THE PARTIES, THROUGH THEIR RESPECTIVE COUNSEL, STIPULATE AS FOLLOWS:

DSMDB-2741296v01

I.     **PRODUCTION FORMAT OF ELECTRONICALLY STORED INFORMATION**

    A.     Definitions

        1.     "Document" means paper documents or electronically stored information (ESI) existing in any medium from which information can be obtained or translated into reasonably usable form.

        2.     "Native File(s)" means ESI in the file type for (or of) the application in which such ESI is normally created, viewed and/or modified.

        3.     "Metadata" means: (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

        4.     "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems.  A Tagged Image File Format (TIFF) image is an example of a Static Image.

        5.     "Load/Unitization file" means a set of paper-scanned images or electronically processed files and indicates where individual pages or files belong together as documents, including attachments, and where each document begins and ends.  A Load/Unitization file will also contain data relevant to the individual documents, such as Metadata, coded data, and OCR or Extracted Text.

        6.     "OCR" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software.

        7.     "Extracted Text" means the text extracted from a Native File and includes all header, footer and document body information.

    B.     Format of Production

        1.     Paper Documents

The parties will produce paper documents, including spreadsheets maintained in paper form, as TIFF images (consistent with the specifications in Section I.B.2.a.) with the

DSMDB-2741296v01

appropriate Load/Unitization files, including custodian information for each paper document along with the OCR .TXT file.

2.    ESI

a.    All TIFF-formatted documents will be single page, Group 4 TIFF at 300 x 300 dpi resolution and 8.5 x 11 inch page size, except for documents that in the producing party's reasonable judgment require a different resolution or page size.  If a color image is produced in black and white, the receiving party may request the producing party to produce the original, color image.  After receiving such a request for color production, the parties will meet and confer on a reasonable and cost-effective means of providing the requested documents.

b.    In the absence of agreement of the parties or order of Court, a Static Image will be provided in TIFF format (.TIF files).  The image file names shall match the Bates number assigned to the image.  All documents are to be provided with multi-page searchable OCR or Extracted Text files, as described in paragraph (c).  These text files should indicate page breaks where possible.

c.    Text files refer to Extracted Text and/or OCR-generated text.  Extracted Text will be provided for all documents which exist in electronic form.  OCR will be provided for documents existing in paper form or for which Extracted Text is not available (e.g., PDF format).  The OCR or Extracted Text files will be produced on a document level as .TXT files, with the Text filename matching the Bates number applied to the first page of the corresponding image file followed by .TXT.  Text files will be located in a separate directory from the TIFF image named TEXT.

d.    There will be two Load/Unitization files accompanying all productions.  One will be a data file that contains the agreed-upon Metadata fields in an ASCII text file using either Concordance default delimiters or ^ carat and | pipe delimiters to separate the fields and records.  The other will be a cross-reference file that will contain the corresponding image information.  The acceptable formats for the cross-reference files are .log, .opt, .dii or .lfp.  Image load files should indicate page breaks.  A path to the corresponding OCR or Extracted text file shall be included as a field in the Metadata import file (e.g., .dat, .txt).

e.    ESI will be produced to the requesting party as Static Images together with a Load/Unitization file that will contain the

3

DSMDB-2741296v01

Metadata fields described below on the document level, except as set forth in sub-paragraph (B)(2)(h).  The following fields associated with each electronic document (or their equivalents), including the body of the document, will be produced in the appropriate Load/Unitization file, to the extent the fields exist as electronic Metadata associated with the original electronic documents or are created as part of the electronic data discovery process:

| | Field | Summation Field (Florida) | Definition | Doc Type | Source: Load File (L) or Metadata (M) |
|---|---|---|---|---|---|
| 1 | SOURCE | SOURCE | Name of party producing the document | All | L |
| 2 | CUSTODIAN | CUSTODIAN | Name of person from whose files the document is produced | All | M or L |
| 3 | BEGBATES | BEGDOC# | Beginning Bates Number (production number) | All | L |
| 4 | ENDBATES | ENDDOC# | End Bates Number (production number) | All | L |
| 5 | PGCOUNT | PGCOUNT | Number of pages in the document | All | L |
| 6 | FILESIZE | FILESIZE | File Size | All | M |
| 7 | APPLICAT | APPLICAT | Application used to create document | All | M |
| 8 | FILEPATH | FILEPATH (for Edocs)<br><br>FOLDER (for emails) | File source path for all electronically collected documents, which includes location, folder name, file name, and file source extension | All | M |
| 9 | NATIVEFILELINK | DOCLINK | For documents provided in native format only | All | L |
| 10 | TEXTPATH | LOGFILE or FULLTEXT | File path for OCR or Extracted Text files per paragraph (d) above | All | L |
| 11 | REDACTED | REDACTED | User-generated field that will indicated redacted TIFF documents per paragraph (g) below | All | L |
| 12 | MSGID | MSGID | Hash Value for Emails | Email | M |
| 13 | FROM | FROM | Sender | Email | M |
| 14 | TO | TO | Recipient | Email | M |
| 15 | CC | CC | Additional Recipients | Email | M |
| 16 | BCC | BCC | Blind Additional Recipients | Email | M |
| 17 | SUBJECT | SUBJECT | Subject line of email | Email | M |

DSMDB-2741296v01

| | | | | | |
|---|---|---|---|---|---|
| 18 | PARENTBATES | PARENTID | BeginBates number for the parent email of a family (will not be populated for documents that are not part of a family) | Email | L |
| 19 | ATTACHBATES | ATTACHID | Bates number from the first page of each attachment | Email | L |
| 20 | BEGATTACH | (will be provided from ATTRANGE) | First Bates number of family range (i.e. Bates number of the first page of the parent email) | Email | L |
| 21 | ENDATTACH | (will be provided from ATTRANGE) | Last Bates number of family range(i.e. Bates number of the last page of the last attachment) | Email | L |
| 22 | ATTACHCOUNT | ATTACHMENT COUNT | Number of attachments to an email | Email | L |
| 23 | ATTACHNAME | ATTACHMENT LIST | Name of each individual attachment | Email | M |
| 24 | DATESENT (mm/dd/yyyy) | DATESENT | Date Sent | Email | M |
| 25 | TIMESENT | TIMESENT | Time Sent | Email | M |
| 26 | DATERCVD | DATERCVD | Date Received | Email | M |
| 27 | TIMERCVD | TIMERCVD | Time Received | Email | M |
| 28 | EMAILDATSORT | DATESENT | Sent Date of the parent email (physically top email in a chain, i.e. immediate/direct parent email) | Email | L |
| 29 | EMAILTIMSORT | TIMESENT | Sent Time of the parent email (physically top email in a chain, i.e. immediate/direct parent email) | Email | L |
| 30 | OL_CAL_START | OL_CAL_START | Outlook calendar appointment start time | Email | M |
| 31 | OL_ CREATIONTIME | OL_ CREATIONTIME | Outlook calendar appointment creation time | Email | M |
| 32 | OL_DELIVER_ TIME | OL_DELIVER_ TIME | Outlook calendar appointment delivered time | Email | M |
| 33 | OL_SENT | OL_SENT | Outlook calendar appointment sent time | Email | M |
| 34 | Email Outlook Type | Email Outlook Type | Type of Outlook item, e.g. email, calendar item, contact, note, task | Email | M |
| 35 | HASHVALUE | MD5 HASH | MD5 Hash or SHA Value for Edocs | Edocs | M |
| 36 | FILETYPE | DOCTYPES | Descriptive field loaded by the vendor (e.g. email, edoc) | Edocs | L |

DSMDB-2741296v01

| 37 | TITLE | DOCTITLE | Title provided by user within the document | Edocs | M |
|----|-------|----------|--------------------------------------------|-------|---|
| 38 | AUTHOR | AUTHOR | Creator of a document | Edocs | M |
| 39 | DATECRTD (mm/dd/yyyy) | DATECRTD | Creation Date | Edocs | M |
| 40 | TIMCRTD | TIMCRTD | Creation Time | Edocs | M |
| 41 | MODIFIED BY | LAST EDITED BY | Person who has modified a document | Edocs | M |
| 42 | LASTMODD (mm/dd/yyyy) | LASTMODD (mm/dd/yyyy) | Last Modified Date | Edocs | M |
| 43 | LASTMODT | LASTMODT | Last Modified Time | Edocs | M |

This list of fields does not create any obligation to create or manually code fields that are not automatically generated by the processing of the ESI; that do not exist as part of the original Metadata of the document; or that would be burdensome or costly to obtain. The parties retain the right to move the Court for the production of additional electronic metadata fields should ongoing discovery reveal the need for such Metadata.

> f. When processing ESI, GMT should be selected as the time zone. To the extent that a party has already processed ESI using a different time zone, the producing party will note the time zone used in its processing.

> g. When processing ESI for review and for production in TIFF format, the producing party will instruct its vendor, if possible, to force off Auto Date and force on the following: hidden columns or rows, hidden text or worksheets, speaker notes, and track changes (which includes comments). Additionally, if the producing party redacts all or any portion of a TIFF-formatted document, those redactions shall be noted on the TIFF-formatted documents and in a user-generated field, which the producing party shall provide.

> h. Where an email or other ESI contains an attachment, the email or other ESI and the attachment may be produced as one file. For ESI that contains a parent document and an attachment, the following fields shall be produced as part of the Metadata load file to provide the parent/child or parent/sibling relationship: BegBates, EndBates, BegAttach, EndAttach, AttachCount, AttachName, and PGCount.

DSMDB-2741296v01

i.  When the Static Image is produced, the producing party should maintain the Native File and it should not modify the Native File in a manner that materially changes the file and the Metadata.  After initial production in Static Images is complete, a receiving party may request from the producing party that certain documents be produced in native format.  The receiving party shall provide a list of Bates numbers of the TIFF documents requested to be produced in native file format.  Within fourteen (14) days of receiving a request to produce native documents, the producing party will either: (i) produce the requested native files to the extent production is reasonably practicable or (ii) respond in writing, setting forth its position on the production of the requested native format files.  If the parties are unable to agree as to the production of the requested documents in native format, the parties may submit the matter to the Court.  Any produced native documents will be assigned a file name with the Bates number of the first page of the Bates range that corresponds to the TIFF image.

j.  Any files produced in native format will be produced with (i) a Metadata load file that shall contain the full directory path and file name of the database or spreadsheet as contained in the produced media and (ii) a hash calculation field.  Except as set forth in paragraph I(B)(2)(k), or unless the parties otherwise agree to production in native format for certain files, all other ESI will be produced as set forth in paragraph 2 above.

k.  The parties agree to produce spreadsheet and database files in native format, subject to the right of the producing party to object in advance to native production of specific files or parts of such files.  The producing party may object to the native production of files where such production would (i) result in the disclosure of commercially sensitive or proprietary information that is non-responsive; (ii) result in the disclosure of information that is protected from disclosure by the attorney-client privilege or the work product doctrine; or (iii) create a burden on the producing party ("Native Objection Files").  The producing party will provide a list of Native Objection Files with its production that identifies each Native Objection File by author, filename, and a description of content. The parties agree that the producing party shall be permitted to produce reports or spreadsheets generated from the Native Objection Files that contain only responsive and potentially relevant information, in accordance with section I(C)2 of this agreement.  In the alternative, the parties may agree to permit the producing party to produce a Native Objection File in TIFF format with the protected and/or non-responsive information redacted.

DSMDB-2741296v01

l.    All system and application files, as defined by their metadata header information (not file extension), will be excluded from processing.  User-generated files that cannot be produced and/or imaged because of technical issues should be identified as exception files and included on a log that lists the file name, custodian, and reason for exception: for example, corruption, unavailable password protection, proprietary software, or other technical issues.  The producing party shall provide a copy of this log with its production.  If the receiving party requests production of any files listed on the exception log, the parties will meet and confer on a reasonable and cost-effective means of providing the requested data.

m.    The parties may de-duplicate identical ESI by custodian. Parties may de-duplicate ESI across custodians if the producing party provides Metadata field(s) that indicate additional custodians of a document. The parties will use MD5 Hash or SHA methodology to de-duplicate.  The receiving party may request confirmation or authentication of additional custodians of duplicate files.  Upon receipt of such request, the parties will meet and confer on a reasonable and cost-effective means of authentication.

n.    Before discovery closes, parties must raise any objections to the format, accessibility, readability, or any other technical aspect of the production.  Parties will use their best efforts to raise such objections within sixty (60) days of receipt of a production.  All objections must be in writing.

C.    Objections to Production of ESI

1.    A party may object to production of ESI that is not reasonably accessible because of undue burden or cost.

2.    Where production of a database file or other large file types would be unduly burdensome and would require production of large volumes of non-responsive ESI, the parties may agree to permit the producing party to generate reports or spreadsheets that contain only responsive and potentially relevant data.  Such reports or spreadsheets will be provided in a reasonably usable format, including, without limitation, Excel spreadsheets, Access databases, Comma-delimited files, or other commonly used programs.  The format of the report or spreadsheet need not be identical to the format of the original native file from which it was created.  Before the producing party generates such a report, the parties shall meet to discuss and attempt to agree upon the type of report that will be generated and the information that the report will contain.  If the parties are unable to agree about the report, the parties may submit the matter to the Court.  After the report is produced, the receiving party may request the production of any of the underlying, or referenced, documents or files, and the producing party must produce such documents within fourteen

DSMDB-2741296v01

(14) days of the request or respond to the requesting party in writing, setting forth its position on the production of the requested documents or files.  If the parties are unable to agree about the production, the parties may submit the matter to the Court.

3.   The parties will continue to preserve the oldest known complete backup of all files reasonably expected to contain potentially relevant information, consistent with the obligations set forth in the Stipulated Agreement Regarding Preservation of Documents, Electronically Stored Information, and Other Tangible Items dated October 2, 2008; however, parties shall not be required to collect or process data from backup tapes absent further agreement by the parties or order by the Court.

4.   If asserting an objection based on paragraph I(C)(1), the responding party will inform the requesting party of the electronic information it is willing to produce, the nature and location of the information claimed to not be reasonably accessible, the reason(s) why the requested production would impose an undue burden or is unreasonably costly, and afford the requesting party 10 working days (calendar days minus weekends and state or federal holidays) to propose an alternative means of compliance with the request, including payment of all or part of the costs of retrieving the information.

D.   Continuing Obligations

1.   To expedite discovery of relevant electronic evidence and reduce costs, the parties' computer experts will informally cooperate and discuss procedures or protocols to facilitate identification, retrieval and production of computerized information.  This responsibility shall be continuing, unless otherwise ordered by the Court.  Further, the parties will designate ESI liaisons, which will be set forth in Exhibit A to this stipulation.

2.   Without waiving any applicable privileges or objections, the parties shall abide by their agreement as contained in the September 23, 2008 Protective Order, as such order may be amended from time to time, relating to the "clawback" of inadvertently produced privileged information, including the application of Fed. R. Evid. 502, and may execute further agreements relating to "quick peek," testing or sampling procedures as appropriate.

II.   This Agreement shall continue in full force and effect until order of the Court or until this litigation is terminated by a final judgment.

IT IS SO STIPULATED.

DSMDB-2741296v01

Dated:  January 13, 2010

/s/ Margaret M. Zwisler
Margaret M. Zwisler
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington DC 20004-1304
Telephone: 202-637-1092
Fax: 202-637-2201

*Counsel for Champion Labs., Inc.*

/s/ Richard G. Parker
Richard G. Parker
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC  20006-4001
Telephone:  202-383-5300

/s/  Edward D. Hassi
Edward D. Hassi
O'MELVENY & MYERS LLP
7 Times Square
New York, NY  10036
Telephone:  212-326-2000

*Counsel for Honeywell International Inc.*

/s/ John DeQ. Briggs
John DeQ. Briggs
AXINN VELTROP HARKRIDER LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: 202-721-5400
Fax: 202-912-4701

*Counsel for Wix Filtration Corp. LLC*

/s/  Bernard Persky
Gregory Asciolla
Benjamin D. Bianco
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Co-Lead Counsel for Direct Purchaser Plaintiffs*

 /s/  Michael J. Freed
Steven A. Kanner
William H. London
Douglas A. Millen
Michael E. Moskovitz
FREED KANNER LONDON & MILLEN LLC
2201 Waukegan Rd.
Suite 130
Bannockburn, IL 60015
Telephone:  224-632-4500
Fax:  224-632-4521

*Co-Lead Counsel for Direct Purchaser Plaintiffs*

 /s/  Roberta D. Liebenberg
Donald L. Perelman
Adam Pessin
FINE KAPLAN & BLACK, R.P.C.
1835 Market Street
28th Floor
Philadelphia, PA 19103
Telephone:  215-567-6565
Fax:  215-568-5872

*Co-Lead Counsel for Direct Purchaser Plaintiffs*

DSMDB-2741296v01

/s/ Michael A. Paskin
Michael A. Paskin
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
Telephone:  212-474-1000
Fax:  212-474-3700

*Counsel for Cummins Filtration Inc.*

/s/ James T. McKeown
James T. McKeown
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, Wisconsin 53202
Telephone: 414-297-5530
Fax: 414-297-4900

*Counsel for Donaldson Company, Inc.*

/s/ Darrell Prescott
Darrell Prescott
BAKER & MCKENZIE LLP
1114 Avenue of the Americas
New York, New York 10036
Telephone: 212-626-4100
Fax: 212-310-1600

*Counsel for Baldwin Filters, Inc.*

/s/ Peter J. Kadzik
Peter J. Kadzik
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006
Tel: 202-420-2200
Fax: 202-420-2201

*Counsel for ArvinMeritor Inc., Purolator
Products NA, LLC, and Purolator Products
Company, LLC*

/s/  Marc M. Seltzer
Marc M. Seltzer
Vineet Bhatia
Stuart V. Kusin
SUSMAN GODFREY LLP
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone:  (310) 789-3100
Fax:  (310) 789-3150

*Co-Lead Counsel for Direct Purchaser Plaintiffs*

/s/ Renae D. Steiner
Renae D. Steiner
Vincent J. Esades
Katherine Kelly
Heins Mills & Olson, P.L.C.
310 Clifton Avenue
Minneapolis, MN  55403
(612) 338-4605
(612) 338-4692 (facsimile)

*Co-Lead Counsel for Indirect Purchaser
Plaintiffs*

s/ Richard M. Hagstrom
Richard M. Hagstrom
James S. Reece
Michael E. Jacobs
Aaron M. McParlan
Zelle, Hofmann, Voelbel, Mason & Gette, LLP
500 Washington Avenue South, Suite 4000
Minneapolis, MN 55415
(612) 339-2020
(612) 336-9100 (facsimile)

*Co-Lead Counsel for Indirect Purchaser
Plaintiffs*

/s/ Mario N. Alioto
Mario N. Alioto
Lauren C. Russell
Trump, Alioto, Trump & Prescott, LLP
2280 Union Street
San Francisco, CA 94123
(415) 563-7200

*Co-Lead Counsel for Indirect Purchaser
Plaintiffs*

DSMDB-2741296v01

*/s/ Christopher Lovell*
Christopher Lovell
Gary Jacobson
Peggy Wedgworth
LOVELL STEWART HALEBIAN LLP
500 Fifth Avenue, Floor 58
New York, NY 10110
(212) 608-1900
clovell@lshllp.com

*Co-Lead Counsel for Indirect Purchaser
Plaintiffs*

/s/ Christopher R. Hunt
CHRISTOPHER R. HUNT
Assistant Attorney General
PATRICIA A. CONNERS
Associate Deputy Attorney General
R. SCOTT PALMER
Special Counsel for Antitrust
LIZABETH A. LEEDS
Chief, Multistate Antitrust Enforcement
Office of the Attorney General, Antitrust Division
PL-01, The Capitol Tallahassee, FL 32399-1050
Telephone: (850) 414-3300
Facsimile: (850) 488-9134

*Counsel for the State of Florida, Office of the
Attorney General*

/s/ Martin R. Fox
Martin R. Fox
BLEAU FOX, A P.L.C.
3575 Cahuenga Blvd., Suite 580
Los Angeles, CA 90068
Tel: 323-874-8613
Fax: 323-874-1234

Joseph M. Alioto
ALIOTO LAW FIRM
555 California Street, Suite 3160
San Francisco, CA 94104
Tel: 415-434-8900
Fax: 415-434-9200

*Counsel for Loodvik Peerali and Oyster
Incorporated*

DSMDB-2741296v01

EXHIBIT A

ESI Liaisons

Plaintiffs

| Direct Purchaser Plaintiffs | Michael Moskovitz (Freed Kanner London & Millen LLC) Stuart Kusin (Susman Godfrey) |
|---|---|
| Indirect Purchaser Plaintiffs | Michael E. Jacobs (Zelle Hofmann Voelbel & Mason LLP) |
| State of Florida | Christopher Hunt (Office of the Attorney General) |
| Loodvik Peerali and Oyster Incorporated | Martin Fox (Bleau Fox A.P.L.C.) |

Defendants

| ArvinMeritor, Inc. Purolator Products NA, LLC, and Purolator Products Company, LLC | Megan Lewis (Dickstein Shapiro LLP) |
|---|---|
| Baldwin Filters, Inc. | Catherine Koh (Baker & McKenzie LLP) |
| Champion Labs., Inc. | Maggy Sullivan (Latham & Watkins LLP) |
| Cummins Filtration, Inc. | Craig Batchelor (Cravath, Swaine & Moore LLP) |
| Donaldson Company, Inc. | Holden Brooks (Foley & Lardner LLP) |
| Honeywell International, Inc. | Mark Germann (O'Melveny & Myers LLP) |
| Wix Filtration Corp. LLC | Mike Keeley (Axinn Veltrop Harkrider LLP) |

13