## THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| _____ | ) | **File No. 1:08-cv-04883** |
| **IN RE: AFTERMARKET FILTERS** | ) |  |
| **ANTITRUST LITIGATION** | ) | **MDL No. 1957** |
| _____ | ) |  |
|  | ) | Honorable Robert W. Gettleman |
| **THIS DOCUMENT RELATES TO:** | ) |  |
| **ALL INDIRECT PURCHASER** | ) |  |
| **ACTIONS** | ) | Magistrate Geraldine S. Brown |
| _____ | ) |  |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' JOINT MOTION TO DISMISS SECOND AMENDED CONSOLIDATED INDIRECT PURCHASER COMPLAINT

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ........................................................................................................... 1

II. PLAINTIFFS' AMENDED ALLEGATIONS STATE A CLAIM UNDER THE
CONSUMER PROTECTION LAWS OF NEW YORK AND RHODE ISLAND .......... 2

    A. New York General Business Law § 349 ................................................................. 2

    B. Rhode Island Gen. Laws §§ 6-13.1-2 .................................................................... 7

III. PLAINTIFFS' UNJUST ENRICHMENT CLAIMS ARE PROPER ............................... 9

    A. Plaintiffs Are Not Pursuing Freestanding Unjust Enrichment Claims
For New York And Rhode Island Because They Have Stated Viable
Consumer Protection Claims For These States .................................................... 10

    B. The Laws Of Kansas, Maine, Michigan, New York, North Carolina,
Utah And Wyoming Do Not Require That Plaintiffs Confer A "Direct
Benefit" On Defendants In Order To State A Claim For Unjust
Enrichment ........................................................................................................... 10

        1. Kansas ...................................................................................................... 12

        2. Maine ....................................................................................................... 14

        3. Michigan .................................................................................................. 16

        4. New York ................................................................................................. 17

        5. North Carolina ......................................................................................... 20

        6. Utah .......................................................................................................... 21

        7. Wyoming .................................................................................................. 23

IV. CONCLUSION .............................................................................................................. 25

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*A & M Supply Co. v. Microsoft Corp.,* No. 274164, 2008 WL 540883 (Mich. App. Feb. 28, 2008) ........................................................................................................... 16

*Aladdin Elec. Assocs. v. Town of Old Orchard Beach,* 645 A.2d 1142 (Me. 1994) ............. 11, 14

*Ames v. Oceanside Welding & Towing Co.*, 767 A.2d 677 (R.I. 2001)......................................... 7

*Bailey v. Bishop,* 67 S.E. 968 (N.C. 1910)................................................................................. 11

*Baker Constr. Co. v. City of Burlington,* No. COA09-13, 2009 N.C. App. LEXIS 1647 (N.C. Ct. App. Oct. 20, 2009) ........................................................................................ 20, 21

*Booe v. Shadrick,* 322 N.C. 567 (N.C. 1988)............................................................................. 21

*Boyce v. Freeman*, 39 P.3d 1062 (Wyo. 2002) ................................................................ 23, 24, 25

*Concrete Products Co. v. Salt Lake County,* 734 P.2d 910 (Utah 1987)................................ 21, 22

*Cox v. Microsoft Corp.,* 8 A.D.3d 39 (N.Y. App. Div. 2004) ............................................. 5, 17, 18

*Effler v. Pyles,* 380 S.E. 2d 149 (N.C. Ct. App. 1989) ........................................................ 20, 21

*Forest Assocs. v. Passamaquoddy Tribe,* 760 A.2d 1041 (Me. 2000)............................... 14, 15, 16

*HAZ-MAT Response, Inc. v. Certified Waste Resources Ltd.,* 910 P.2d 839 (Kan. 1996) ......................................................................................................................... 11, 12, 13

*Illinois Brick Co. v. Illinois,* 431 U.S. 720 (1977) ....................................................................... 9

*In re Bayou Hedge Funds Investment Litig.,* 472 F. Supp. 2d 528 (S.D.N.Y. 2007) .................. 19

*In re Cardizem Antitrust Litig.,* 105 F. Supp. 2d 618 (E.D. Mich. 2000).................... 16, 17, 18, 21

*In re Chocolate Confectionary Antitrust Litigation*, 602 F. Supp. 2d 538 (N.D. Pa. 2009) ............................................................................................................................... 8

*In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, 536 F. Supp. 2d 1129 (N.D. Cal. 2008)..................................................................................................... 5, 7, 8

*In re Flash Memory Antitrust Litig.*, 4:07-cv-00086-SBA (N.D. Cal.) ........................................ 15

*In re Graphics Processing Units Antitrust Litigation*, 527 F. Supp. 2d 1011 (N.D. Cal. 2007) ............................................................................................................................... 6

*In re K-Dur Antitrust Litig.,* 338 F. Supp. 2d 517 (D.N.J. 2004) ................................. 12

*In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 175 F.
Supp. 2d 593 (S.D.N.Y. 2001)............................................................................. 3, 5

*In re Pharm. Indus. Average Wholesale Price Litig.,* MDL No. 1456, No. 01-12257-
PBS, 2007 WL 1051642 (D. Mass. Apr. 2, 2007) .................................................. 18

*In re Potash Antitrust Litig.,* No. 08 C 6910, 2009 U.S. Dist. LEXIS 102623 (N.D. Ill.
Nov. 3, 2009) .............................................................................................. 12, 13, 16

*In re Static Random Access Memory (SRAM) Antitrust Litigation*, No. 07-1819, 2008
WL 2610549 (N.D. Cal. June 27, 2008)............................................... 6, 9, 15, 23

*In re TFT-LCD (Flat Panel) Antitrust Litigation*, 586 F. Supp. 2d 1109 (N.D. Cal.
2008) ........................................................................................................... passim

*Kammer Asphalt Paving Co., Inc. v. East China Tp. Schools,* 504 N.W.2d 635 (Mich.
1993) ......................................................................................................................... 16

*Manufacturers Hanover Transp. Co. v. Chem. Bank,* 160 A.D.2d 113 (N.Y. App. Div.
1990) ......................................................................................................................... 11

*Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, 72 Fed. Appx. 916 (4th
Cir. 2003) ................................................................................................................. 20

*Morris Pumps v. Centerline Pumping,* 729 N.W. 2d 898 (Mich. App. 2006)...................... 16, 17

*Morrissey v. Nextel Partners, Inc.*, 880 N.Y.S.2d 874 (N.Y. Sup. 2009)....................................... 5

*New York v. Feldman*, 210 F.Supp.2d 294 (S.D.N.Y. 2002) ........................................................... 3

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647
N.E.2d 741 (N.Y. 1995)........................................................................................... 3

*Perkins v. Healthmarkets, Inc.,* 2007 NCBC 25 (N.C. Super. Ct. July 30, 2007) ...................... 20

*Powers v. Lycoming Engines*, 245 F.R.D. 226 (E.D. Pa. 2007) ................................ 12, 13, 17, 18

*Quality Prods & Concepts Co. v. Nagel Precision, Inc.*, No. 207538, 2000 Mich. App.
LEXIS 2469 (Mar. 21, 2000)................................................................................... 11

*Rapp v. Salt Lake City,* 527 P.2d 651 (Utah 1974)............................................................... 11, 21

*Rivers v. Amato*, No. CIV. A. CV-00-131, 2001 WL 1736498 (Me. Super. June 22,
2001) ......................................................................................................................... 14

*Silver Dollar Motel v. Taylor Elec. Co.,* 761 P.2d 1006 (Wyo. 1988) .................................. 11, 23

74987.1

*Smith v. Cannell,* 723 A.2d 876 (Me. 1999) ............................................................. 14

*Sperry v. Crompton Corp.,* 863 N.E. 2d 1012 (N.Y. 2007)..................................... 18, 19

*Spires v. Adams,* 289 Fed. Appx. 269 (10th Cir. 2008) ......................................... 12, 13

*Stutman v. Chemical Bank*, 731 N.E.2d 608 (N.Y. 2000) ......................................... 3, 5

**Statutes**

New York GBL § 349 ........................................................................................ passim

R. I. Gen. Laws § 6-13.1-1(6)(xii) ................................................................................ 7

R.I. Gen. Laws § 6-13.1-2............................................................................................ 7

R.I. Gen. Laws § 6-13.1-5.2(a) .................................................................................... 7

**Other Authorities**

ABA Section of Antitrust Law, *Indirect Purchaser Litigation Handbook*, 55 (2007) ................ 10

**Rules**

Fed. R. Civ. P. 8 ........................................................................................................ 3

Fed. R. Civ. P. Rule 8(a).............................................................................................. 3

Fed. R. Civ. P. Rule 9(b)............................................................................................. 3

74987.1

Indirect Purchaser Plaintiffs ("Plaintiffs") respectfully submit this memorandum of law in support of their response to Defendants' Joint Motion to Dismiss the Second Amended Consolidated Indirect Purchaser Complaint ("Joint Motion").

## I.      INTRODUCTION

Plaintiffs brought a four count consolidated indirect purchaser complaint alleging violations of § 1 of the Sherman Act (Count I), unjust enrichment (Count II), violations of certain states' antitrust laws (Count III), and violations of certain states' consumer protection and unfair competition laws (Count IV).   Defendants moved to dismiss parts or all of Counts I, II, III, and IV.   This Court granted in part and denied in part Defendants' motions it its Memorandum Opinion and Order, dated November 5, 2009.   *In re Aftermarket Filters Antitrust Litigation*, No. 08-C-4883, 2009 WL 3754041 (N.D. Ill. November 5, 2009) (hereinafter referred to as "November 5 Order").   Plaintiffs were directed by the November 5 Order to file an amended complaint addressing the deficiencies identified by the Court.   Plaintiffs timely filed their amended complaint ("ACIPC") on November 30, 2009.   Shortly thereafter, Plaintiffs sought leave to file a second amended complaint ("SACIPC").   This Court granted that motion on December 22, 2009, and provided Defendants with the opportunity to file a motion to dismiss based on the amended allegations.   *See* December 23, 2009 Minute Entry.

Defendants have now moved to dismiss several claims asserted by Plaintiffs' SACIPC. Specifically, Defendants believe the SACIPC fails to allege facts sufficient to support standing under the consumer protection laws of New York and Rhode Island.  Joint Motion at 2-4. Defendants also argue that Plaintiffs fail to state a claim for unjust enrichment under the laws of New York, Rhode Island, New Jersey, Wyoming (prior to 2006) and New Hampshire (prior to 2008) because these states do not (or did not) have a viable antitrust or consumer protection

statute and Plaintiffs cannot pursue unjust enrichment as a "freestanding claim."  Joint Motion at

5-6.  Finally, Defendants contend that Plaintiffs fail to state a claim for unjust enrichment under

the laws of Kansas, Maine, Michigan, New Jersey, New York, North Carolina, Utah and

Wyoming because these states require a plaintiff to have conferred a "direct benefit" on a

defendant in order to state a claim for unjust enrichment.  Joint Motion at 7-8.

Plaintiffs respectfully request that Defendants' motion be denied.  With respect to the

consumer protection laws of New York and Rhode Island, Plaintiffs have identified specific,

deceptive, consumer-oriented statements made by Defendants that invoke the public interest.

Additionally, the SACIPC properly pleads causation as it establishes the link between the

Defendants' deceptive practice and the injury to consumers sustained as a result of this practice.

Requiring more, as Defendants attempt to do, confuses the concepts of reliance and causation.

Moreover, because the SACIPC properly alleges claims under the consumer protection laws of

New York and Rhode Island, the unjust enrichment claims made under these states are not

freestanding claims.[1]  Finally, Defendants are incorrect in their assertion that the laws of certain

states require a plaintiff to confer a benefit directly upon a defendant in order for an unjust

enrichment claim to succeed.  Such a privity requirement conflicts with the settled law of the

states at issue.

## II.   PLAINTIFFS' AMENDED ALLEGATIONS STATE A CLAIM UNDER THE CONSUMER PROTECTION LAWS OF NEW YORK AND RHODE ISLAND

### A.   New York General Business Law § 349

To establish a prima facie violation of New York GBL § 349, a plaintiff must

demonstrate that the defendant is engaging in consumer-oriented conduct which is deceptive or

---

[1] Plaintiffs withdraw the New Jersey unjust enrichment claim, the Wyoming unjust enrichment claim (prior to 2006), and the New Hampshire unjust enrichment claim (prior to 2008).

misleading in a material way, and that the plaintiff has been injured because of these practices.

*See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741,

744 (N.Y. 1995).

A defendant engages in consumer-oriented conduct "if his actions cause any consumer

injury or harm to the public interest." *New York v. Feldman*, 210 F. Supp. 2d 294, 301 (S.D.N.Y.

2002). Statements or omissions are deceptive or misleading in a material way when they are

"likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego*,

647 N.E.2d at 745.

To satisfy the "by reason of" requirement, plaintiffs need only allege that "the

defendant[s'] material deceptive act[s] caused the injury." *In re Methyl Tertiary Butyl Ether*

*("MTBE") Products Liability Litigation*, 175 F. Supp. 2d 593, 631 (S.D.N.Y. 2001) (quoting

*Stutman v. Chemical Bank*, 731 N.E.2d 608 (N.Y. 2000)). Whether plaintiffs relied on the

alleged deceptive conduct is irrelevant because "[r]eliance is *not* an element of a section 349

claim." *Id.* (quoting *Stutman*, 731 N.E.2d at 612). Claims under GBL § 349 are subject to Fed.

R. Civ. P. 8. *See Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005)

("[A]n action under § 349 is not subject to the pleading-with-particularity requirements of Rule

9(b), Fed. R. Civ. P., but need only meet the bare-bones notice-pleading requirements of Rule

8(a).")).

Defendants believe the SACIPC fails to allege facts sufficient to support standing under

the consumer protection law of New York. Joint Motion at 2-4. Although acknowledging the

SACIPC identifies specific deceptive public statements made by Defendants, Defendants

nonetheless claim Plaintiffs "do not allege any facts demonstrating that any New York …

consumer actually saw any of them." Joint Motion at 4.

But Plaintiffs' SACIPC pleads consumer-oriented conduct and includes allegations that Defendants made statements directly to New York consumers in publicly-available statements. These mass media statements were directly contrary to their private price-fixing scheme:

> Defendant Champion's Guide to Ethics and Standards of Business Conduct, disseminated to the public on the Internet as a link from Champion's website, Defendant Champion proclaims it "supports vigorous but fair competition," which means employees are precluded from "discussing pricing or pricing policy, costs, marketing or strategic plans, proprietary or confidential information, agreeing on prices you will charge customers, or agreeing to divide customers or markets…."; 

> Defendant Honeywell states in its Form 10-K Annual Report filed March 30, 2001, that it is "subject to active competition in substantially all product and services areas."; 

> Defendant Wix promised to consumers in its Spring 2007 Newsletter "to provide you with the best products and services in the industry at the most competitive prices possible."; 

> Defendant Donaldson highlights in its Form 10-K Annual Report filed July 31, 2005, that it "competes in a number of filtration markets . . . in a highly competitive environment."; and 

> Clarcor Inc., Defendant Baldwin's parent, endorses a free and competitive Filters market in its 2006 Form 10-K Annual Report by stating "The Company encounters strong competition in the sale of all its products." 

*See* SACIPC ¶¶ 158-59.

Thus, the SACIPC sets forth these specific statements made by particular Defendants and alleges that these statements were materially deceptive. *Id.* A reasonable consumer acting reasonably under the circumstances would understand Defendants' statements to mean that New York consumers were purchasing Filters at prices resulting from free and open competition. *Id.* These statements were deceptive because the Filters market in New York was not competitive; rather Filter prices were fixed by collusion. *Id.* Thus, Plaintiffs now plead specific deceptive acts—in the form of public statements—directed at New York consumers, in addition to anti-competitive conduct.

The SACIPC also properly pleads causation. Specifically, Plaintiffs aver "Defendants' materially deceptive statements caused Plaintiffs and the New York consumer Class members injury in that New York consumers were deprived of open and free competition, and by paying supra-competitive prices." *Id.* This allegation is sufficient to meet the causation requirement. *See MTBE*, 175 F. Supp. 2d at 631; *Stutman*, 731 N.E.2d at 613. *See also, Cox v. Microsoft Corp.,* 8 A.D.3d 39, 40 (N.Y. App. Div. 2004) ("A cause of action under General Business Law § 349 is stated by plaintiffs' allegations that Microsoft engaged in purposeful, deceptive monopolistic business practices, including entering into secret agreements . . . to inhibit competition . . . unbeknownst to consumers . . . and that such practices resulted in artificially inflated prices for defendant's products."). New York law requires only causation, and not reliance, be pled in a GBL § 349 claim.

Defendants confuse reliance and causation. Reliance and causation, while "twin concepts," are not identical. Reliance is the causal link between an alleged deceptive practice and a consumer's decision to transact business with the defendant, whereas causation refers to the link between an alleged deceptive practice and an actual injury sustained by a consumer as a result of such a practice. *See Morrissey v. Nextel Partners, Inc.*, 880 N.Y.S.2d 874, at *5 (N.Y. Sup. 2009). Because each New York consumer paid more for Filters because of Defendants' collusion, they have been injured.

Other Federal courts in recent indirect purchaser antitrust cases have found similar or even less robust allegations to be sufficient under New York law. *See In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, 536 F. Supp. 2d 1129, 1143 (N.D. Cal. 2008) ("Plaintiffs' revised complaint contains the following allegations: that defendants engaged in trade or commerce in New York; that defendants secretly agreed to raise prices by direct

agreements on bids to customers located in New York and through artificial supply restraints on

the entire DRAM market; that New York consumers were targets of the conspiracy; and that due

to defendants' unlawful conduct in New York, plaintiffs—including New York residents—paid

artificially high prices for DRAM."); *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 586 F.

Supp. 2d 1109, 1128 (N.D. Cal. 2008) ("[T]he complaint alleges a price-fixing scheme that

resulted in New York consumers paying inflated prices for LCD panels and products, and that

Defendants took efforts to conceal their agreements from the New York plaintiffs and the

indirect class.  The Court finds that these allegations are similar to those that Judge Hamilton

found sufficient in *DRAM II* … and for the same reasons set forth in that order, the Court

DENIES defendants' motion."); *In re Static Random Access Memory (SRAM) Antitrust*

*Litigation*, No. 07-1819, 2008 WL 2610549, at *2 (N.D. Cal. June 27, 2008) ("In their amended

complaint, IP Plaintiffs allege that Defendants made public statements about the price of SRAM

and products containing SRAM that Defendants knew would be seen by New York consumers;

such statements either omitted material information that rendered the statements that they made

materially misleading or affirmatively misrepresented the real cause of price increases for SRAM

and products containing SRAM; Defendants alone possessed material information that was

relevant to consumers, but failed to provide the information . . . IP Plaintiffs have provided

allegations to suggest that Defendants provided information that they knew would be seen by IP

Plaintiffs and failed to provide other material information necessary to prevent the provided

information from being misleading.  For purposes of a motion to dismiss, this is sufficient to

allege that Defendants made a "consumer oriented" misrepresentation or, in other words,

directed a misrepresentation at IP Plaintiffs.") (internal quotations omitted); *In re Graphics*

*Processing Units Antitrust Litigation*, 527 F. Supp. 2d 1011, 1030 (N.D. Cal. 2007) (denying

motion to dismiss allegations under New York GBL § 349 where "Plaintiffs have alleged at least in a conclusory fashion that defendants engaged … in deceptive acts to conceal the alleged agreement to fix prices.").  Plaintiffs' claim under GBL § 349 should be permitted to proceed.

**B.     Rhode Island Gen. Laws §§ 6-13.1-2**

The Rhode Island Unfair Trade Practice and Consumer Protection Act ("RIUTPCPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  R.I. Gen. Laws § 6-13.1-2.  The statute enumerates 20 prohibited practices, including conduct that "creates a likelihood of confusion or of misunderstanding."  *Id.* § 6-13.1-1(6)(xii).  A plaintiff has standing to advance a RIUTPCPA claim if he or she "purchases or leases goods or services primarily for personal, family or household purposes."  *Id.* § 6-13.1-5.2(a).  A trade practice qualifies as "unfair" under the RIUTPCPA when: (1) the practice affronts public policy, as delineated by the common law, statutes, and other concepts of unfairness; (2) it is immoral, unethical, oppressive, or unscrupulous; or (3) it causes substantial injury to consumers.  *See Ames v. Oceanside Welding & Towing Co.*, 767 A.2d 677, 681 (R.I. 2001).  These factors encompass price fixing-injuries.  *DRAM*, 536 F. Supp. 2d at 1144-45.

Here, the Court found that the deficiencies requiring dismissal of Plaintiffs' New York GBL § 349 claim also justified dismissal of Plaintiffs' RIUTPCPA claim.  *See November 5 Order*, at *11.  As with Plaintiffs' New York GBL § 349 claim, Defendants maintain the SACIPC does not cure these deficiencies.  Joint Motion at 2-4.  But, because Plaintiffs now plead substantially the same additional allegations with regards to Plaintiffs' RIUTPCPA as they do for Plaintiffs New York GBL § 349 claim, the Court's concerns have been assuaged under Rhode Island's statute as well.  *See* SACIPC ¶¶ 160-161.

Plaintiffs now allege Defendants made statements directed at consumers in Rhode Island. *Id.* Those statements created the likelihood of confusion or misunderstanding on the part of the average, non-business Rhode Island consumer, including Plaintiffs and members of the Rhode Island consumer Class. *Id. See* Section II, A, *supra.* The statements were materially misleading because a reasonable consumer acting reasonably under the circumstances would understand Defendants' statements to mean that the Filters market was competitive and prices were set accordingly. *Id.* Rhode Island consumers who indirectly purchased Filters were misled to believe they were paying a fair price for Filters, or that the price increases for Filters were imposed for valid business reasons. *Id.* Defendants' materially deceptive statements caused Plaintiffs and the Rhode Island consumer Class members' injury in that Rhode Island Consumers were deprived of open and free competition, and by paying supra-competitive prices. *Id.*

Again, federal courts in recent indirect purchaser antitrust cases have found similar or even less robust allegations sufficient. *See In re Chocolate Confectionary Antitrust Litigation*, 602 F. Supp. 2d 538, 586-87 (N.D. Pa. 2009) ("In the instant matter, the IEU plaintiffs allege that defendants conspired to raise prices in Rhode Island, that they issued misleading statements about the true reasons for these price increases, and that they caused Rhode Island consumers to believe that prices for chocolate candy were the result of fair competition in an open marketplace. The IEU plaintiffs further allege they purchased defendants' products for personal, family, or household use. These allegations adequately plead a cause of action under the RIUTPCPA."); *DRAM,* 536 F. Supp. 2d at 1144-45 ("Now, plaintiffs' SAC alleges: that defendants engaged in unfair or deceptive acts or practices, which mis[led] or deceive[d] members of the public; and that Rhode Island consumers were injured by Defendants actions . . .This time around, plaintiffs' argument prevails.") (internal quotations omitted); *TFT-LCD*, 586

F. Supp. 2d at 1129 (finding plaintiffs' allegations that "affirmative misrepresentations and omissions concerning the price of LCD, likely misled all consumers acting reasonably under the circumstances" sufficient to state a claim under the RIUTPCPA); *SRAM*, No. 07-1819, 2008 WL 2610549, at *4 ("[T]he SAC alleges as follows: Because of Defendants' unlawful and unscrupulous trade practices in Rhode Island, natural persons in Rhode Island who indirectly purchased SRAM primarily for personal, family or household purposes were misled or deceived to believe that they were paying a fair price for SRAM or the price increases for SRAM were for valid business reasons … These allegations are sufficient to establish a statutory claim under the UTPCPA.") (internal quotations omitted).  As such, Plaintiffs' claim under RIUTPCPA should also be permitted to proceed.

## III.   PLAINTIFFS' UNJUST ENRICHMENT CLAIMS ARE PROPER

Defendants argue that (1) Plaintiffs fail to state a claim for unjust enrichment under the laws of New York, Rhode Island, New Jersey, Wyoming (prior to 2006) and New Hampshire (prior to 2008) because these states do not (or did not) have a viable antitrust or consumer protection statute and Plaintiffs cannot pursue unjust enrichment as a "freestanding claim;" and (2) Plaintiffs fail to state a claim for unjust enrichment under the laws of Kansas, Maine, Michigan, New Jersey, New York, North Carolina, Utah and Wyoming because these states require a plaintiff to have conferred a "direct benefit" on a defendant in order to state a claim for unjust enrichment.

Plaintiffs withdraw the New Jersey unjust enrichment claim because New Jersey, unlike the other states, has not repealed the Supreme Court's holding in *Illinois Brick Co. v. Illinois,* 431 U.S. 720 (1977).  Plaintiffs also withdraw the Wyoming unjust enrichment claim prior to 2006 and the New Hampshire claim prior to 2008.

Defendants' arguments as to the remaining state unjust enrichment claims are without

merit.  First, Plaintiffs are not pursuing so-called "freestanding" unjust enrichment claims for

New York and Rhode Island because Plaintiffs have stated viable claims for relief under the

consumer protection statutes of these states.  *See* Section II, A and B, *supra*.  Second, the laws of

Kansas, Maine, Michigan, New York, North Carolina, Utah and Wyoming do not require that

Plaintiffs confer a "direct benefit" on Defendants in order to state a claim for unjust enrichment.

Defendants' motion to dismiss these claims should therefore be denied.

### A.    Plaintiffs Are Not Pursuing Freestanding Unjust Enrichment Claims For New York And Rhode Island Because They Have Stated Viable Consumer Protection Claims For These States

Contrary to Defendants' arguments, Plaintiffs are not pursuing "freestanding" unjust

enrichment claims for New York and Rhode Island because, as demonstrated in Section II, A and

B, *supra*, Plaintiffs have stated viable consumer protection claims under the laws of these states.

Defendants' motion to dismiss these unjust enrichment claims should be denied.

### B.    The Laws Of Kansas, Maine, Michigan, New York, North Carolina, Utah And Wyoming Do Not Require That Plaintiffs Confer A "Direct Benefit" On Defendants In Order To State A Claim For Unjust Enrichment

In a series of bullet points without any analysis, Defendants argue that the laws of the

above-referenced states require a "direct benefit" in order to state a claim for unjust enrichment.

In their Joint Motion, Defendants state that "[i]ndirect purchasers, like plaintiffs here, confer a

benefit directly on others in the chain of distribution, but not on the defendants.  Only direct

purchasers supply a direct benefit to the defendants."  Joint Motion at 8.[2]  In other words,

---

[2] Defendants cite to the ABA Section of Antitrust Law, *Indirect Purchaser Litigation Handbook*, 55 (2007) for this proposition.  Defendants fail to mention that the Handbook also lays out generally what a plaintiff must allege to prevail on a claim for unjust enrichment: "[A] plaintiff must show that he conferred a benefit upon the defendant, the defendant accepted or knew of the benefit, and the defendant accepted or retained the benefit under such circumstances as to make

Defendants are arguing that only a party in privity with them can confer a "direct benefit" and thus state a claim for unjust enrichment.[3]

This argument defies common sense. Plaintiffs are the end users of Defendants' products. But for purchases of Defendants' products by these end users, Defendants would have no purchasers of their products. These end users, by purchasing Defendants' products, confer a substantial benefit on the Defendants. Thus, they should be allowed to bring claims for unjust enrichment.

Moreover, it is well settled in each of the states at issue that a plaintiff need not be in privity with the defendant to state a claim for unjust enrichment.[4] Recognizing this fact, Defendants are careful not to use the word "privity," and instead argue that each of the states requires Plaintiffs to confer a "direct benefit" on them. To the extent Defendants intend "direct

---

non-payment inequitable." Plaintiffs have alleged all of these elements in the SACIPC. *See* ¶¶ 148-150. Notably, there is no requirement that the benefit be "direct."

[3] Defendants are also re-arguing remoteness. That is, they are re-arguing that since the indirect plaintiffs' purchased Filters down the distribution chain their claims are too attenuated. The Court has already rejected this argument. *See November 5 Order,* at*6-8.

[4] *See HAZ-MAT Response, Inc. v. Certified Waste Resources Ltd.,* 910 P.2d 839, 847 (Kan. 1996) ("This conclusion is consistent with the theory of quasi-contract and unjust enrichment, which does not depend on privity"); *Aladdin Elec. Assocs. v. Town of Old Orchard Beach,* 645 A.2d 1142, 1144 (Me. 1994) ("Lack of privity of contract and failure to perfect a lien do not bar an action for unjust enrichment."); *Quality Prods & Concepts Co. v. Nagel Precision, Inc.*, No. 207538, 2000 Mich. App. LEXIS 2469, *16 n.6 (Mar. 21, 2000) ("A quasi contract is not a contractual obligation in the true sense because there is no agreement; it is an obligation that does not require privity, and that will be imposed by law even though it is clear that no promise was ever made or intended."). *Manufacturers Hanover Transp. Co. v. Chem. Bank,* 160 A.D.2d 113, 117 (N.Y. App. Div. 1990) (In an unjust enrichment claim, "[i]t does not matter whether the benefit is directly or indirectly conveyed."); *Bailey v. Bishop,* 67 S.E. 968, 969 (N.C. 1910) (privity is not required to maintain a quasi contract claim); *Rapp v. Salt Lake City,* 527 P.2d 651, 655 (Utah 1974) ("[Quasi-contractual] liability exists from an implication of law that arises from the facts and circumstances independent of agreement or presumed intention."); *Silver Dollar Motel v. Taylor Elec. Co.,* 761 P.2d 1006, 1007 (Wyo. 1988) ("The quantum meruit/unjust enrichment theory is found on implied contract . . .").

benefit" to mean that the benefit to them must flow directly from Plaintiffs, and not pass through an intermediary, the decisions Defendants rely upon do not support the argument that either is an essential element of an unjust enrichment claim under the state common laws at issue here.

      1.    <u>Kansas</u>

The Kansas Supreme Court has unequivocally stated that privity is not required for an unjust enrichment claim. *See HAZ-MAT Response, Inc. v. Certified Waste Resources Ltd.,* 910 P.2d 839, 847 (Kan. 1996) ("This conclusion is consistent with the theory of quasi-contract and unjust enrichment, which does not depend on privity"). Nor is a "direct benefit" required under Kansas law. *See Powers v. Lycoming Engines*, 245 F.R.D. 226, 232 (E.D. Pa. 2007)[5] (noting, as part of an in-depth analysis of various states' unjust enrichment laws, that Kansas is among nine states that, "have explicitly determined that an indirect benefit is enough. These states have allowed indirect purchasers to establish claims for unjust enrichment so long as they can prove that the defendant benefited at the plaintiffs' expense, even if the benefit flowed indirectly from the plaintiff to the defendant."); *In re K-Dur Antitrust Litig.,* 338 F. Supp. 2d 517, 544 (D.N.J. 2004) (rejecting defendants' argument that various state unjust enrichment laws, including Kansas, require an allegation that plaintiffs dealt directly with defendants, and holding that, "[t]he critical inquiry is whether the plaintiff's detriment and the defendant's benefit are related to, and flow from, the challenged conduct.")

Defendants rely solely on *In re Potash Antitrust Litig.,* No. 08 C 6910, 2009 U.S. Dist. LEXIS 102623, *112-13 (N.D. Ill. Nov. 3, 2009), which in turn relies solely on *Spires v. Adams,* 289 Fed. Appx. 269, 273 (10th Cir. 2008). *See* Joint Motion at 7. This reliance is misplaced.

---

[5] *Powers* was reversed by the Third Circuit in *Powers v. Lycoming Engines*, No. 07-4710, 2009 WL 826842 (3d Cir. Mar. 31, 2009), for failure to conduct a proper choice-of-law analysis. The district court's analysis of the various states' unjust enrichment laws is still good law.

*Spires* does not support Defendants' argument that an indirect purchaser plaintiff *cannot* state a claim for unjust enrichment under Kansas law.

First, *Spires* is distinguishable because the relationship between the parties, and the alleged benefit to defendant and loss to the plaintiffs, was extremely attenuated.  There, plaintiffs represented the estates of deceased next of kin who had been admitted into hospitals affiliated with the defendant.  The plaintiffs alleged that defendant injured them by maintaining inadequate numbers of nurses as a cost-saving strategy.  *Id.* at 270.  Plaintiffs sought to recover for payments made to defendant's affiliated hospitals under a theory of unjust enrichment.  This attenuated claim, which the *Spires* court held, "failed to allege that deceased family members had actually conferred a benefit on [defendant]" (*id*. at 273), is a far cry from this case where Plaintiffs seek to recover a portion of the actual cost of the Filters that they purchased, albeit indirectly, from Defendants.

Second, the *Potash* court mischaracterizes the holdings in *Spires*.  *Spires* did not hold, as the *Potash* opinion states, "that Kansas law does not support an 'indirect unjust enrichment claim.'"  2009 U.S. Dist. LEXIS 102623, *112.  Rather, *Spires* found that, "[p]laintiffs have pointed to nothing in Kansas law that supports an indirect unjust enrichment claim against [defendant] for payments made to subsidiary hospitals." 289 F. Appx. at 273.  That the plaintiffs in *Spires did not* point to Kansas law supporting their indirect unjust enrichment claim does not mean that a plaintiff *cannot* point to such law.  In fact, Plaintiffs here have pointed to Kansas law supporting their indirect unjust enrichment claim.  *See HAZ-MAT,* 910 P.2d at 847*; Powers v. Lycoming,* 245 F.R.D. at 232*;* and *In re K-Dur,* 338 F. Supp. 2d at 544.

Accordingly, Plaintiffs respectfully request that this Court decline to follow the decision in *Potash* and deny Defendants' motion to dismiss the Kansas unjust enrichment claim.

2.      Maine

Similarly, the Maine Supreme Court has stated that privity is not required to bring a claim for unjust enrichment under Maine law. *See Aladdin Elec. Assocs. v. Town of Old Orchard Beach,* 645 A.2d 1142, 1144 (Me. 1994) ("Lack of privity of contract and failure to perfect a lien do not bar an action for unjust enrichment."). There is also no requirement that Plaintiffs confer a "direct benefit" on Defendants in order to state a claim for unjust enrichment under the laws of Maine. The sole case cited by Defendants, *Rivers v. Amato*, No. CIV. A. CV-00-131, 2001 WL 1736498 (Me. Super. June 22, 2001), is inapposite. *Rivers* involved a real estate agreement between a seller and his agents. The Rivers claimed that they were entitled to a real estate commission pursuant to an exclusive listing agreement with Amato. In the alternative, they contended that they were entitled to the commission based on quantum meruit. Thus, the holding in *Rivers* has no bearing on whether an indirect purchaser can maintain an unjust enrichment claim for violations of Maine's antitrust statute.

Moreover, Defendants cite to the unpublished opinion of a Maine Superior Court, as opposed to the published opinion of the Maine Supreme Court in the same matter. *See Rivers v. Amato,* 827 A.2d 827 (Me. 2003). The Maine Supreme Court opinion makes no reference to a "direct" versus an "indirect" benefit. Contrary to Defendants' contentions, the court denied the quantum meruit claim on the basis that, "the Rivers did not satisfy the requirements of the listing agreement and therefore it is not reasonable for the Rivers to expect compensation." *Id.* at 830 citing *Smith v. Cannell,* 723 A.2d 876, 879-91 (Me. 1999), and *Forest Assocs. v. Passamaquoddy Tribe,* 760 A.2d 1041, 1045 (Me. 2000).[6]

---

[6] A review of *Forest Assocs.* indicates that Maine considers quantum meruit and unjust enrichment to be different theories of recovery. *See* 760 A.2d at 1045-1046 (discussing quantum meruit and unjust enrichment separately and citing different standards for each).

Plaintiffs are unaware of any indirect purchaser cases that directly address the question of whether Maine requires a "direct benefit" in order to sustain a claim for unjust enrichment. This is the first case in which defendants have challenged Maine on this basis. Notably, however, unjust enrichment claims under Maine law are proceeding in several pending indirect purchaser class actions.[7]

Finally, according to the Maine Supreme Court, "to sustain a claim for unjust enrichment, a claimant must establish 'that it conferred a benefit on the other party . . . that the other party had 'appreciation or knowledge of the benefit' . . . and . . . that the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value.' Unjust enrichment, therefore, permits recovery 'for the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay . . .'" *Forrest Assocs.,* 720 A.2d at 1045-46 (internal citations omitted). Significantly, the Maine Supreme Court does not hold that the benefit must flow directly from the plaintiff to the defendant.

Here, Plaintiffs allege that they conferred a benefit on Defendants by paying higher prices for Filters than they would have in the absence of Defendants' price fixing conspiracy. SACIPC ¶¶ 148-150. Plaintiffs further allege that Defendants knowingly accepted and retained the overpayments such that it would be inequitable for Defendants to keep these inflated profits. *Id.*

---

[7] *See, e.g., In re SRAM Antitrust Litig.,* 2009 U.S. Dist. LEXIS 110407, *29-31, 70 (N.D. Cal. Nov. 25, 2009) (certifying a Maine indirect purchaser class (along with 26 other state classes) in a case seeking recovery for price-fixing under the Maine antitrust statute and Maine's unjust enrichment law); *In re TFT-LCD,* MDL No. 1827, 3:07-cv-1827-SI (N.D. Cal.) (motion to certify a Maine indirect purchaser class (along with 23 other state classes) in a case seeking recovery for price-fixing under the Maine antitrust statute and Maine's unjust enrichment law currently pending); *In re Flash Memory Antitrust Litig.,* 4:07-cv-00086-SBA (N.D. Cal.) (same).

Under *Forest Assocs.,* Plaintiffs have thus stated a claim for unjust enrichment. Defendants'
motion to dismiss the Maine unjust enrichment claim should be denied.

        3.   <u>Michigan</u>

Relying on an unpublished, per curiam decision from the Michigan Court of Appeals, and
a district court opinion that follows it without analysis, Defendants also contend that Michigan
law requires a "direct benefit" in order state a claim for unjust enrichment. *See* Joint Motion at
7, citing *A & M Supply Co. v. Microsoft Corp.,* No. 274164, 2008 WL 540883 (Mich. App. Feb.
28, 2008) (per curiam), and *In re Potash,* 2009 U.S. Dist. LEXIS 102623, *112-13.

Michigan imposes no such requirement. In *Kammer Asphalt Paving Co., Inc. v. East
China Tp. Schools,* Michigan's Supreme Court allowed an unjust enrichment claim to go
forward "[*e*]*ven though no contract may exist between [the] parties,*" and "[a]lthough plaintiff
*indirectly* provided defendant a benefit," because "under the equitable doctrine of unjust
enrichment 'a person who is unjustly enriched at the expense of another is required to make
restitution to the other.'" 504 N.W.2d 635, 640-41 (Mich. 1993) (emphases added). *See also
Morris Pumps v. Centerline Pumping,* 729 N.W. 2d 898, 904 (Mich. App. 2006) ("The key to
any quantum meruit recovery from a non-contracting party is proof that he or she unjustly
received and retained a benefit from the plaintiff's contractual services.").

Moreover, when the *In re TFT-LCD* court was recently confronted with an identical
argument by defendants, it rejected *A & M Supply* as "hardly [] controlling authority," and
instead relied upon *Kammer Asphalt, Morris Pumps,* and *In re Cardizem Antitrust Litig.,* 105 F.
Supp. 2d 618, 670-671 (E.D. Mich. 2000), to deny defendants' motion to dismiss the Michigan
unjust enrichment claim:

> Plaintiffs cite several cases, including a Michigan Supreme Court case, for the
> proposition that they need not allege a direct benefit to defendants to state an
> unjust enrichment claim in Michigan. *See, e.g., Kammer Asphalt Paving Co., Inc.*

*v. East China Tp. Schools,* 504 N.W. 2d 635, 640-41 (Mich. 1993); *Morris Pumps v. Centerline Pumping,* 729 N.W. 2d 898, 904 (Mich. App. 2006); *In re Cardizem Antitrust Litig.,* 105 F. Supp. 2d 618, 670-71 (E.D. Mich. 2000).  These three cases hold that a party can bring an unjust enrichment claim against a defendant even in the absence of privity or a contract between the parties.  *In re Cardizem* is the most factually apposite.  In that case, the indirect purchaser plaintiffs 'alleged that they conferred a benefit, in the form of overpayments and increased profits, on Defendants, that Defendants accepted that benefit and that it would be unjust under the alleged circumstances for Defendants to retain that benefit.'  105 F. Supp. 2d at 671.  The court rejected the defendants' 'narrow' argument that a direct benefit was required under Michigan law.  **'Whether or not the benefit is directly conferred on the defendant is not the critical inquiry; rather, the plaintiff must show that his detriment and the defendants' benefit are related and flow from the challenged conduct.'**

*In re TFT-LCD Antitrust Litig.,* 599 F. Supp. 2d 1179, 1189-90 (N.D. Cal. 2009) (emphasis added); *see also Powers*, 245 F.R.D. at 232 (noting that Michigan allows indirect purchasers to bring claims for unjust enrichment so long as they can prove that the defendant benefited at the plaintiffs' expense, "even if the benefit flowed indirectly from the plaintiff to the defendant.")

Here, Plaintiffs' allegations are just like those found sufficient in *In re Cardizem* and *In re TFT-LCD.*  Thus, Plaintiffs have stated a claim for unjust enrichment under Michigan law and Defendants' motion to dismiss should be denied.

  4. <u>New York</u>

Contrary to Defendants' arguments, New York law does not require privity or that Plaintiffs confer a "direct benefit" on Defendants in order to state a claim for unjust enrichment. In *Cox v. Microsoft,* 8 A.D.3d 39 (N.Y. App. Div. 2004), a case analogous to this in that it was an antitrust class action brought by indirect purchasers of Microsoft's Window's software under New York General Business Law § 349, the court rejected the very argument made by Defendants here:

> [T]he motion court erroneously dismissed plaintiffs' cause of action for unjust enrichment, holding that, as indirect purchasers of Microsoft's software products, plaintiffs only indirectly bestowed a benefit upon Microsoft.  Contrary to such reasoning, plaintiffs' allegations that Microsoft's deceptive practices caused them

> to pay artificially inflated prices for its products state a cause of action for unjust enrichment. (*cf. Manufacturers Hanover Trust Co. v. Chemical Bank,* 160 A.D.2d 113, 117-118, 559 N.Y.S.2d 704 (1990), *lv denied* 77 N.Y.2d. 803, 569 N.E.2d 874, 568 N.Y.S.2d. 15 (1991) ("It does not matter whether the benefit is directly or indirectly conveyed")).

*Id.* at 40-41.

Similarly here, Plaintiffs allege that Defendants' deceptive practices caused them to pay artificially inflated prices for their Filters.  *See* Section II, A, *supra*; SACIPC ¶¶ 148-150.  Under *Cox,* these allegations are sufficient to state a cause of action for unjust enrichment under New York law.  *Cox,* 8 A.D.3d at 40-41.  *See also In re Cardizem CD,* 105 F. Supp. 2d at 670-671 (rejecting the need to show plaintiffs directly conferred a benefit on the defendant and denying dismissal of unjust enrichment claims by indirect purchasers under the laws of ten states, including New York); *In re Pharm. Indus. Average Wholesale Price Litig.,* MDL No. 1456, No. 01-12257-PBS, 2007 WL 1051642, *9-10 (D. Mass. Apr. 2, 2007) (finding a "substantive connection" between defendants and indirect payer plaintiffs sufficed under New York law to support an unjust enrichment claim); *Powers*, 245 F.R.D. at 232 (noting that New York is among nine states that, "have explicitly determined that an indirect benefit is enough. These states have allowed indirect purchasers to establish claims for unjust enrichment so long as they can prove that the defendant benefited at the plaintiffs' expense, even if the benefit flowed indirectly from the plaintiff to the defendant.")

The cases cited by Defendants are distinguishable.  *Sperry v. Crompton Corp.,* 863 N.E. 2d 1012 (N.Y. 2007), holds that "a plaintiff need not be in privity with the defendant to state a claim for unjust enrichment" under New York law.  *Id.* at 215.  The *Sperry* court affirmed the dismissal of plaintiffs' unjust enrichment claim only because it found "the connection between the purchaser of tires [plaintiffs] and the producers of chemicals [defendants] used in the rubber

making process is simply too attenuated to support such a claim." *Id.* at 216.  Unlike *Sperry*, where the rubber chemicals constituted only a tiny, unidentifiable part of the tires purchased by the end consumers, Plaintiffs here allege that they purchased filters themselves (Do-It-Yourself purchasers), or purchased filters as part of a service (Do-It-For-Me purchasers).  This Court previously found that these purchasers were not too attenuated to maintain state antitrust and consumer protection claims against Defendants.  *See November 5 Order*, *6-8.  A similar reasoning should be applied here to find that Plaintiffs' claims are not too attenuated to support a claim for unjust enrichment under New York law.

*In re Bayou Hedge Funds Investment Litig.,* 472 F. Supp. 2d 528 (S.D.N.Y. 2007), is similarly distinguishable.  Like *Sperry*, *Bayou* involved an extremely attenuated connection between the plaintiffs and the defendants.  In *Bayou*, the defendants were a law firm and one of its partners who had performed "unspecified legal services for unspecified entities among the Bayou Group hedge funds." *Id.* at 529.  Plaintiffs were clients of a separate investment group that had invested in Bayou funds.  Plaintiffs alleged that these defendants "knew or ignored various (unspecified) aspects of fraud and other misconduct that was being committed by the Bayou Defendants" (*id.* at 530), and that therefore, any legal fees earned by the law firm from Bayou were recoverable under a theory of unjust enrichment. *Id.* at 531.  The remote relationship between the parties in *Bayou* and the vague nature of any benefit conferred on the defendant cannot be meaningfully compared to this case.  Here, Plaintiffs paid for Filters manufactured by Defendants and seek to recover a portion of the actual cost of those Filters.  Accordingly, Defendants' motion to dismiss Plaintiffs' unjust enrichment claim under New York law should be denied.

5.    <u>North Carolina</u>

There is also no requirement of privity or that Plaintiffs confer a "direct benefit" on Defendants to sustain a claim for unjust enrichment under North Carolina law.  Defendants' reliance on *Baker Constr. Co. v. City of Burlington,* No. COA09-13, 2009 N.C. App. LEXIS 1647 (N.C. Ct. App. Oct. 20, 2009), an unpublished decision of the North Carolina Court of Appeals, is unavailing.  According to the North Carolina Rules of Appellate Procedure, *Baker* "does not constitute controlling legal authority," and "citation of [such] unpublished opinions in briefs, memoranda, and oral arguments . . . is disfavored, except for the purpose of establishing claim preclusion, issue preclusion, or the law of the case."[8]

In addition, *Baker* cites exclusively to *Effler v. Pyles,* 380 S.E. 2d 149 (N.C. Ct. App. 1989) as authority for its holding that, "the benefit conferred must be conferred directly from plaintiff to defendant, not through a third party."  2009 N.C. App. LEXIS 1647, *17.  Cases since *Effler*, however, have suggested that *Effler's* holding is narrow, and that it is sufficient for a plaintiff to prove that it has conferred "some benefit" on the defendant.  *See Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, 72 Fed. Appx. 916, 921 (4th Cir. 2003) (stating that North Carolina cases decided since *Effler* suggest that "it is sufficient for a plaintiff to prove that it has conferred some benefit on the defendant, without regard to the directness of the transaction"); *see also Perkins v. Healthmarkets, Inc.,* 2007 NCBC 25, *21-24 (N.C. Super. Ct. July 30, 2007) (distinguishing *Effler* and holding that there is no requirement of "direct benefit" in cases alleging fraud or civil conspiracy).

Finally, as the *In re TFT-LCD* court recognized in allowing the plaintiffs' North Carolina unjust enrichment claim to proceed, *Effler* relied on the North Carolina Supreme Court's

---

[8] Rule 30(e)(3), N.C. Rules of Appellate Procedure.
http://www.aoc.state.nc.us/www/public/html/pdf/therules.pdf

decision in *Booe v. Shadrick,* 322 N.C. 567 (N.C. 1988), which did not require that a benefit be direct to state an unjust enrichment claim:

> *Booe* did not, however, require that a benefit be direct to state an unjust enrichment claim. 'In order to establish a claim for unjust enrichment, a party must have conferred a benefit on the other party. The benefit must not have been conferred officiously, that is it must not be conferred by an interference in the affairs of the other party in a manner that is not justified in the circumstances. The benefit must not be gratuitous and it must be measurable.' *Booe,* 322 N.C. at 570.

*In re TFT-LCD,* 599 F. Supp. 2d at 1190; *see also In re Cardizem CD,* 105 F. Supp. 2d at 670-671 (rejecting the need to show plaintiffs directly conferred a benefit on the defendant and denying dismissal of unjust enrichment claims by indirect purchasers under the laws of ten states, including North Carolina).

Thus, the holdings in *Baker* and *Effler* do not support Defendants' argument that an indirect purchaser plaintiff cannot state a claim for unjust enrichment under North Carolina law. Here, Plaintiffs have alleged that they conferred a benefit on Defendants by paying higher prices for Filters than they would have in the absence of the alleged price-fixing conspiracy. *See* SACIPC ¶¶ 148-150. This Court should follow the holding in *In re TFT-LCD* and find that, "under *Booe*[,] these allegations are sufficient to state a claim." 599 F. Supp. 2d at 1190.

### 6.    Utah

The Utah Supreme Court has stated that privity is not required to state a claim for unjust enrichment under Utah law. *See Rapp v. Salt Lake City,* 527 P.2d 651, 655 (Utah 1974) ("[Quasi-contractual] liability exists from an implication of law that arises from the facts and circumstances independent of agreement or presumed intention.").

In addition, Defendants fail to support their argument that Utah unjust enrichment law requires a "direct benefit." Their sole authority, *Concrete Products Co. v. Salt Lake County,* 734 P.2d 910 (Utah 1987), is inapposite. It has nothing to do with whether indirect purchasers may

maintain a claim for unjust enrichment under the laws of Utah.  Defendants take the *Concrete Products* court's reference to "direct benefit" wholly out of context and ascribe a meaning to it that was not intended by the court.

In reality, the court denied the plaintiff's unjust enrichment claim because it did not believe that "[defendant] Salt Lake County was unjustly enriched by [plaintiff] Concrete Products' delivery of concrete for curbs and gutters to a third party" (*id.* at 911), and because "the circumstances are such that it is not inequitable for Salt Lake County to retain whatever benefit it may have received from the materials delivered by Concrete Products."  *Id.* at 912. The court's stray comments about a "direct benefit" in another case are *dicta*.  *Id.*  The court did not define "direct benefit."  But more importantly, the court did not, as Defendants claim, hold that a "direct benefit" was a necessary element to sustain an unjust enrichment claim under Utah law.

Rather, the *Concrete Products* court described "[t]hree elements [that] must be present before unjust enrichment may serve as a basis of recovery: There must be (1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value."  *Id.* at 911.  Plaintiffs here satisfy all of these elements.

As to the first element, Plaintiffs allege that they conferred a benefit on Defendants by paying higher prices for Filters than they would have in the absence of Defendants' price fixing conspiracy.  SACIPC ¶¶ 148-150.  As to the second element, Plaintiffs allege that Defendants knowingly accepted and retained the overpayments.  *Id.*  And as to the third element, Plaintiffs allege that in light of the fact that Defendants deliberately engaged in an unlawful price-fixing

conspiracy in violation of federal and state antitrust, unfair competition and consumer protection laws, it would be inequitable for Defendants to keep these inflated profits. *Id.* As such, Plaintiffs have stated a claim for unjust enrichment under Utah law.

Finally, as with Maine, Plaintiffs are unaware of any indirect purchaser cases that directly address the question of whether Utah requires a "direct benefit" in order to sustain a claim for unjust enrichment. This is the first case in which defendants have challenged Utah on this basis. But again, unjust enrichment claims under Utah law are proceeding in other pending indirect purchaser class actions. *See, e.g., In re SRAM,* 2009 U.S. Dist. LEXIS 110407, *29-31, 79 (certifying a Utah indirect purchaser class (along with 26 other state classes) in a case seeking recovery for price-fixing under the Utah antitrust statute and Utah's unjust enrichment law). This Court should therefore allow the Utah unjust enrichment claim to proceed in this case and deny Defendants' motion to dismiss.

### 7.   Wyoming

The Wyoming Supreme Court has held that privity is not required in order to state a claim for unjust enrichment. *See Silver Dollar Motel v. Taylor Elec. Co.,* 761 P.2d 1006, 1007 (Wyo. 1988) ("The quantum meruit/unjust enrichment theory is founded on implied contract . . .").

And once again, Defendants' lone authority fails to support their argument that Wyoming requires a "direct benefit" in order to state a claim for unjust enrichment. *Boyce v. Freeman*, 39 P.3d 1062 (Wyo. 2002) involved a dispute over whether a trucking company should pay for a truck purchased by one of its employees. The employee had told the seller that the company would pay for the truck and used the truck for his personal use and on the job. *Id.* at 1063-64. When the trucking company refused to pay for the truck, the seller sued claiming, among other

things, that the company had been unjustly enriched through the employee's use of the truck on the job. *Id.* at 1064.

The court affirmed the trial court's dismissal of the seller's unjust enrichment claim, finding that "none of the elements of unjust enrichment are met in this case." *Id.* at 1065. Most significantly, the court found that there was "*no benefit* conferred upon [defendant] T & R Trucking" by the seller because the company believed the truck to belong to the employee and the company expected the employee to use his own vehicle on the job. *Id.* (emphasis added).

The Defendants seize on the court's use of the words "no direct benefit" in its conclusion (*id.* at 1066) and attempt to twist them to fit the facts of this case. But a plain reading of the opinion reveals that the court did not dismiss the unjust enrichment claim because there was "no direct benefit." It dismissed the unjust enrichment claim because there was "no benefit" to the defendant, and because at bottom, "the record [was] completely devoid of any evidence that [defendant] T & R Trucking was unjustly enriched at [the seller] Boyce's expense." *Id.* at 1065-66. In short, the holding in *Boyce* has no bearing on the issue before this court: whether an indirect purchaser plaintiff can state a claim for unjust enrichment under the laws of Wyoming.

Even though the holding in *Boyce* is limited to its facts, the opinion does state the elements of an unjust enrichment claim in Wyoming:

(1) Valuable services were rendered, or materials furnished,

(2) to the party to be charged,

(3) which services or materials were accepted, used and enjoyed by the party, and,

(4) under such circumstances which reasonably notified the party to be charged that the plaintiff, in rendering such services or furnishing such materials, expected to be paid by the party to be charged. Without such payment, the party would be unjustly enriched.

*Id.* at 1065.  Notably, there is no requirement that the benefit flow directly from the plaintiff to the defendant.  Moreover, the *Boyce* court notes that "[e]lement four is the heart of an unjust enrichment claim" (*id.*), and that although "[a]ffirmative misconduct on the part of the party to be charged is not a prerequisite of a finding of unjust enrichment, [] the presence of such misconduct would be indicative that any enrichment might be unjust."  *Id.* 1066 n.1.

Here, Plaintiffs allege that Defendants were unjustly enriched because Plaintiffs paid more for Filters than they otherwise would have in the absence of Defendants' affirmative anticompetitive misconduct.  SACIPC ¶¶ 148-150.  Plaintiffs further allege that Defendants knowingly accepted the benefit of these overcharges in the form of inflated profits and that it would be inequitable for Defendants to keep these profits.  *Id.*  Plaintiffs have thus stated a claim for unjust enrichment under the laws of Wyoming.  Accordingly, Defendants' motion to dismiss should be denied.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that Defendants' motion should be denied in all respects.

Respectfully submitted,

Dated:  February 2, 2010

/s/  Renae D. Steiner
Renae D. Steiner (admitted *pro hac vice*)
James W. Anderson (admitted *pro hac vice*)
**Heins Mills & Olson, P.L.C.**
310 Clifton Avenue
Minneapolis, MN 55403
Telephone: (612) 338-4605
Fax: (612) 338-4692
Email: rsteiner@heinsmills.com
            janderson@heinsmills.com

Richard M. Hagstrom
James S. Reece
Michael E. Jacobs
Aaron M. McParlan
**Zelle, Hofmann, Voelbel,**
**Mason & Gette LLP**
500 Washington Avenue South, Suite 4000
Minneapolis, MN  55415
Telephone:  (612) 339-2020
Fax:  (612) 336-9100
Email:  rhagstrom@zelle.com
        jreece@zelle.com
        mjacobs@zelle.com
        amcparlan@zelle.com

Mario N. Alioto
Lauren C. Russell
**Trump, Alioto, Trump & Prescott, LLP**
2280 Union Street
San Francisco , CA 94123
Telephone:  (415) 563-7200
Email:  malioto@tatp.com
        lrussell@tatp.com

Christopher Lovell
Victor E. Stewart
Gary Jacobson
Ian T. Stoll
Craig M. Essenmacher
**Lovell Stewart Halebian, LLP**
61 Broadway, Suite 501
New York, NY  10006
Telephone:  (212) 608-1900
Email:  clovell@lshllp.com
        gjacobson@lshllp.com
        istoll@lshllp.com
        craigessenmacher@yahoo.com

**CO-LEAD COUNSEL FOR INDIRECT**
**PURCHASER PLAINTIFFS**