UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE AFTERMARKET FILTERS ANTITRUST LITIGATION ) ) ) ) THIS DOCUMENT RELATES TO: ) All Direct and Indirect Purchase ) Actions ) ) ) ) ) | Lead Case No. 08 C 4883<br><br>MDL Docket No. 1957<br><br><br>Judge Robert W. Gettleman<br>Magistrate Judge Geraldine Soat Brown |

**MEMORANDUM OPINION AND ORDER**

Before the court is defendants' Motion to Compel Direct Purchaser Plaintiffs to Produce Improperly Withheld Documents. (Defs.' Mot. Compel.) [Dkt 547.] Direct purchaser plaintiffs (hereinafter, "plaintiffs") oppose the motion (Pls.' Resp.) [dkt 549], and submitted the documents for an *in camera* review. Argument was held on the motion and additional submissions were filed by the parties.[1] For the reasons stated below, the motion is granted in part and denied in part.[2]

---

[1] The parties' submissions are cited as: Defendants' Memorandum in Support of Motion to Compel Direct Purchaser Plaintiffs to Produce Improperly Withheld Documents ("Defs.' Mem.") [dkt 548]; Direct Purchaser Plaintiffs' Opposition to Defendants' Motion to Compel Production of Privileged Work Product ("Pls.' Resp."); Direct Purchaser Plaintiffs' Supplemental Submission Regarding Certain Disputed Documents Withheld on the Basis of Privilege ("Pls.' Suppl.") [dkt 557]; Direct Purchaser Plaintiffs' Amended Supplemental Submission Regarding Certain Disputed Documents Withheld on the Basis of Privilege ("Pls.' Am. Suppl.") [dkt 569]; Defendants' Response to Direct Purchaser Plaintiffs' Amended Supplemental Submission Regarding Improperly Withheld Documents (Defs.' Resp. to Pls.' Am. Suppl.) [dkt. 575]; and Corrected Defendants' Response to Direct Purchaser Plaintiffs' Amended Supplemental Submission Regarding Improperly Withheld

1

**BACKGROUND**

In this multidistrict litigation, several putative plaintiff classes allege that the leading manufacturers of automobile aftermarket filters conspired together to fix, raise, maintain or stabilize prices, rig bids, and allocate customers of aftermarket automotive filters in violation of federal and/or state antitrust laws. (Transfer Order at 1.) [Dkt 1.] Discovery has been underway for several months. Defendants served plaintiffs with their First Request for Production of Documents to All Plaintiffs. (Defs.' Mem., Ex. 11.) Plaintiffs produced some documents in response, and provided defendants with an amended privilege log, identifying seventeen documents plaintiffs claim are protected from discovery. (Pls.' Am. Log.)[3] Plaintiffs are not claiming that any of the withheld documents are attorney-client privileged.

By their motion, defendants challenge the claimed work-product protection as to eleven of plaintiffs' withheld documents.[4] In the course of the hearings on the motion, plaintiffs withdrew

---

Documents (Defs.' Corrected Resp. to Pls.' Am. Suppl.) [dkt 578].

[2] Defendants subsequently filed a motion to enforce defendants' subpoena to William Burch. [Dkt 560.] Although there is some overlap of the issues, this opinion is based on the parties' briefing of the present motion, and should not be taken to suggest any decision on the subpoena to Mr. Burch.

[3] Plaintiffs' amended privilege log is attached as Ex. 2 to defendants' memorandum in support of their motion and is cited as "Pls.' Am. Log."

[4] Defendants prepared a chart assigning numbers to the disputed documents they seek. (*See* Defs.' Corrected Resp. to Pls.' Am. Suppl., Ex. B.) Defendants' numbers do not correspond with the numbers assigned in Plaintiffs' Amended Privilege Log. This opinion uses defendants' numbers.

their claim of protection as to one document, so ten documents are now in dispute.[5]

     A.     <u>Burch litigation</u>

Defendants are attempting to obtain information from plaintiffs relating to a witness, William G. Burch. Although the parties dispute Mr. Burch's importance in the litigation, at least some of plaintiffs' complaint appears to be based in part on information obtained from Mr. Burch. (*See, e.g.,* Consolidated Am. Compl. ¶ 79.) [Dkt 150.] Mr. Burch had been a sales executive with defendant Purolator Filters N.A., LLC, and defendant Champion Laboratories, Inc. ("Champion"), during most of the class period. (*Id*. ¶ 2.) On January 13, 2006, a representative of Champion, Mr. Burch, and a representative of the FBI had a meeting during which Mr. Burch accused Champion of price-fixing and Champion accused Mr. Burch of embezzlement from the company. (The parties dispute which accusation occurred first.) In 2006, Mr. Burch sued Champion for wrongful discharge alleging that his employment had been terminated in retaliation for refusing to participate in price fixing and other illegal activities and for reporting Champion's alleged activities to an FBI agent. (Pls.' Resp., Ex. A, Complaint.) Champion sued Mr. Burch for fraud. Those actions were settled. Mr. Burch dismissed his employment action in September 2008.

In March 2008, Mr. Burch filed a *qui tam* action against Champion and other filter manufacturers (who are also defendants here). (Pls.' Am. Suppl., Decl. G. Steven Stidham ¶¶ 1, 5.)

---

[5] After filing the motion, defendants learned that Document 4 is a copy of a document they had obtained from the Florida Attorney General's Office, which obtained it pursuant to a Civil Investigative Demand. (*See* Defs.' Corrected Resp. to Pls.' Am. Suppl. at 8; Defs.' Cover Letter to Court and counsel.) [Dkt 581.] During the September 20, 2010 continued hearing on the motion, plaintiffs withdrew their claim of work-product protection as to that document. Defendants' motion to compel is therefore moot as to Document 4.

On December 10, 2008, the government declined to intervene, and on December 23, 2008, Mr. Burch dismissed the action without prejudice. (*Id*. ¶ 6.) Nearly a year later, on December 21, 2009, Mr. Burch re-filed the *qui tam* action in the Northern District of Oklahoma. (*Id*. ¶ 7.) The government again declined to intervene. (Defs.' Mem., Ex. 10.) That action is still pending.

Mr. Burch has been represented in those lawsuits by attorneys from the law firm Sneed Lang Herrold LLP ("Sneed Lang attorneys"), including G. Steven Stidham. He has not been represented by any of the attorneys representing plaintiffs in this case, although he or his counsel shared all of the disputed documents with attorneys at Labaton Sucharow LLP, one of the law firms representing the putative direct purchaser class in this litigation ("Labaton Sucharow attorneys").

B.   Defendants' motion

The disputed documents at issue in defendants' motion are either e-mail communications between Mr. Burch, Sneed Lang attorneys, and Labaton Sucharow attorneys, or documents prepared by Mr. Burch or the Sneed Lang attorneys and shared with the Labaton Sucharow attorneys. (*See* Pls.' Am. Log.) Defendants argue that: 1) most of the documents are not protected work product; and 2) if they are work product, any protection was waived either by Mr. Burch's or his counsel's sharing of the documents with the Labaton Sucharow attorneys, or by plaintiffs' intentional disclosure of other documents in this case. (Defs.' Mem. at 8-11.) Defendants further argue that plaintiffs have waived any discovery protection by placing Mr. Burch's knowledge at issue. (*Id*. at 12-14.) Defendants claim they need the withheld material in order to explore Mr. Burch's credibility and prepare their defense. (*Id*. at 14-15.)

Plaintiffs assert that the documents are protected work product, and that the common interest

4

between Mr. Burch and plaintiffs' counsel in this litigation maintains the documents' protected status. (Pls.' Resp. at 3-6) Plaintiffs argue that neither their production of other documents nor their use of Mr. Burch as a witness waived work-product protection for the disputed documents. (*Id*. at 9-12.) They also argue that the documents constitute opinion work product, and they dispute defendants' claim of substantial need. (*Id*. at 12-14.)

## LEGAL STANDARD

The work-product doctrine protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *U.S. v. Nobles*, 422 U.S. 225, 238 (1975). The doctrine is an "intensely practical" one, grounded in the realities of adversary litigation. *Id.* It is designed to serve two purposes: first, to protect an attorney's thought processes and mental impressions from disclosure, and second, to "limit the circumstances in which attorneys may piggyback on the fact-finding investigation of their more diligent counterparts." *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2010). The work-product protection is distinct from and broader than the attorney-client privilege. *Nobles*, 422 U.S. at 238 n. 11. To establish work-product protection, a party must show that the document was in fact created in anticipation of litigation. *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976 (7th Cir. 1996). In determining whether the protection applies, courts look to "whether in light of the factual context the document can fairly be said to have been prepared or obtained *because* of the prospect of

litigation." *Id.* at 976-977 (emphasis in original, internal quotations omitted).

Discovery of work product can be ordered when the party seeking the information "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii); *accord Sandra T.E.*, 600 F.3d at 622. But if such discovery is ordered, the court must protect "the mental impressions, conclusions, opinions or legal theories of a party's attorney or other representative concerning the litigation" – the so-called "opinion" work-product. Fed. R. Civ. P. 26(b)(3)(B).

The work-product protection may be waived. *See, e.g,, Vardon Golf Co. v. Karsten*, 213 F.R.D. 528, 534 (N.D. Ill. 2003) (finding plaintiff waived work-product protection by disclosure of information in public document obtained by opposing party). The common interest doctrine, however, extends discovery protection in limited circumstances; specifically, where the parties undertake a joint effort with respect to a common legal interest and the disclosure is made to further an ongoing enterprise. *U.S. v. BDO Seidman, LLP*, 492 F.3d 806, 815-16 (7th Cir. 2007) (analyzing common interest extension of attorney-client privilege); *Beneficial Franchise Co. v. Bank One, N.A.*, 205 F.R.D. 212, 216 (N.D. Ill. 2001) (applying common interest extension to work-product analysis). "The common interest doctrine, of course, protects only those documents that otherwise would have been privileged in the origin." *Zitzka v. Village of Westmont*, 2009 WL 1346256 at *3 (N.D. Ill. May 13, 2009).

With these principles in mind, the disputed documents are addressed below. Because the documents raise similar issues, they are discussed in groups.

**DISPUTED DOCUMENTS**

**Documents 5, 7, 9 and 11**

Documents 5, 7 and 9 are charts prepared by Mr. Burch which Mr. Stidham provided to the Department of Justice ("DOJ"), and also shared with the Labaton Sucharow attorneys. (Stidham Decl. ¶ 10.) Document 11 is a version of Document 7. (Defs.' Corrected Resp. to Pls.' Am. Suppl., Ex. A, Tr. Aug. 30, 2010 at 17.) Document 9 is a slightly modified version of Document 4, to which plaintiffs have withdrawn their objection because defendants had already obtained a copy of it. (*See* n. 5, *supra*.)

The fact that the documents were given to the DOJ is significant because throughout the discovery in this litigation, and, indeed, at the argument on the present motion, plaintiffs have taken the position that they would not claim any protection from discovery in this case for documents shared with the DOJ. Plaintiffs' counsel informed the court, "Our position has been materials sent to the DOJ are not privileged." (*Id.* at 18.)

Documents 7 and 11 were discussed at length in an August 28, 2009 memorandum written by Mr. Burch for Mr. Stidham and e-mailed a few days later by Sneed Lang legal assistant Sharon Poole to an attorney at the DOJ. (Defs.' Mem., Ex. 8, "the Burch Memorandum.")[6] In his Memorandum, Mr. Burch highlights for his counsel several documents that he says support his price-fixing claims against Champion, and he provides his recollections about the creation of certain documents. (*Id.*) Mr. Burch or his attorneys shared the Burch Memorandum with plaintiffs, who produced it in its entirety to defendants in this litigation.

---

[6] It is undisputed that the Burch memorandum is dated August 28, 2009, although it was apparently misdated August 28, 2008. (*See* Defs.' Mem. at 5 n. 3; Pls.' Suppl. at 3.)

Because plaintiffs initially were unable to state conclusively whether Documents 7 and 11 were the documents discussed in the Burch Memorandum or had been attached to that memorandum when it was shared with the DOJ, they were ordered to file a supplemental submission addressing those issues. (Order, Aug. 30, 2010.) [Dkt 553.] Plaintiffs acknowledged at the argument that if Documents 7 and 11 had been shared with the DOJ, they would not be shielded from discovery. (Tr. Aug. 30, 2010 at 17-18.) Plaintiffs subsequently confirmed that Documents 7 and 11 were discussed in the Burch Memorandum, and that, although they had not been attached when that memorandum was e-mailed to the DOJ, Documents 7 and 11 had earlier been shared with the DOJ along with Documents 5 and 9 (as well as Document 4, as to which plaintiffs have withdrawn any claim of protection (*see* n. 5, *supra*)). (Pls.' Am. Suppl. at 4-5.)

Although plaintiffs' counsel stated repeatedly during the argument and briefing on the motion that plaintiffs would not claim discovery protection for documents shared with the DOJ, plaintiffs subsequently changed their position. (*Compare* Tr. Aug. 30, 2010 at 17-22 *with* Pls.' Am. Suppl. at 5-7.) Apparently, the Sneed Lang attorneys are now taking the position that documents shared with the DOJ retain their privileged and protected status (Pls.' Am. Suppl. at 2), although Mr. Burch's attorneys have not sought to be heard on the present motion.[7] Plaintiffs now contend that because the DOJ had a common interest with Mr. Burch in pursuing antitrust claims against

---

[7] To respond to questions about certain documents, plaintiffs submitted Mr. Stidham's declaration discussing the documents' history. (*See* Pls.' Am. Suppl., Stidham Decl.) Mr. Stidham acknowledges sharing Documents 4, 5, 7, 9 and 11 with both the DOJ and plaintiffs' attorneys but is "taking the position" that they remain protected under the common interest doctrine. (Stidham Decl. ¶ 10.) Notably, however, neither Mr. Stidham nor anyone else on behalf Mr. Burch or plaintiffs suggests that Mr. Burch and his counsel were unaware that plaintiffs' attorneys here were producing documents to defendants that had been shared with the DOJ. Likewise, Mr. Burch has never sought an order to require defendants to return the documents produced by plaintiffs on a theory that he did not consent to their production.

defendants, the sharing of protected documents with the DOJ did not waive any applicable privilege. (Pls.' Am. Suppl. at 5-7.) Defendants challenge that argument substantively, and argue further that counsel's concession during the hearing waived any objection to the production of these documents. (Defs.' Corrected Resp. to Pls.' Am. Suppl. at 4-9.)

An *in camera* review of Documents 5, 7, 9 and 11 shows that they may well be work product. Each document reflects Mr. Burch's compilation of information at the request of his counsel to aid in litigation. Plaintiffs have waived any claim of protection as to these documents, however, not solely by virtue of plaintiffs' counsel's concessions at the motion hearings, but because those concessions were consistent with plaintiffs' position throughout the litigation. Plaintiffs have not claimed a common interest as a basis for withholding other documents shared with the DOJ. On the contrary, they have produced other documents responsive to the production requests in this case *because* they had been shared with the DOJ. *See* Pls.' Resp. at 9: "[P]laintiffs have never suggested that communications between or on behalf of Burch and the DOJ are entitled to work product protection. Indeed, Plaintiffs have, in fact, produced to Defendants all such communications in their possession, custody or control of which they are aware."

Although plaintiffs belatedly argue for a common interest between Mr. Burch, the DOJ, and themselves, they present no authority – or even rationale – to suggest that they may selectively withhold these four documents while producing all others that have been shared with the DOJ. Two of the documents were discussed in detail in the Burch Memorandum, which plaintiffs voluntarily produced, and a third document is substantially the same as a document to which plaintiffs have withdrawn any claim of protection. Were it not for plaintiffs' initial mistaken belief that these documents had not been shared with the DOJ, these documents would have been turned over to

defendants with the rest of plaintiffs' production.

Defendants' motion to compel is therefore granted as to Document Nos. 5, 7, 9 and 11.

**Document 1**

Document 1 is a November 19, 2009 e-mail from William Burch to Mr. Stidham, Sneed Lang legal assistant Sharon Poole, and Labaton Sucharow attorney Bernard Persky. (Pls.' Am. Log at 1.) Plaintiffs describe the document as an "[e]-mail discussing litigation strategy involving response to query from Department of Justice, as requested by G. Steven Stidham." (*Id*.) *In camera* review shows that it is a three-sentence e-mail, only half of which is relevant to the litigation. The query to which the e-mail responds is in a November 18, 2009 e-mail from DOJ attorney Jeffrey Parker which was produced to defendants (along with a redacted version of Document 1). (Defs.' Mem., Ex. 9.)

The battle over Document 1 highlights the parties' differing views of another document that has been produced in this case, a Honeywell price increase announcement dated October 11, 2004 that bears a fax transmission header dated September 23, 2004 from "Champion Exec Sales." (Defs.' Mem., Ex. 4, the "Honeywell Announcement.")[8] Although the parties dispute the significance of and circumstances surrounding the Honeywell Announcement, it is undisputed that Mr. Burch himself added the September 23, 2004 fax transmission header to it. (*See* Defs.' Mem., Ex. 8.) DOJ attorney Jeffery Parker's November 18, 2009 e-mail asks for Mr. Burch's consent to disclose to defendants what Mr. Burch told the government about how he came to apply the fax

---

[8] Three differently dated versions of that document have been produced in the litigation. (*See* Defs.' Mem., Exs. 4-6.)

header on the Honeywell Announcement, along with a draft of the proposed disclosure. (Defs.' Mem., Ex. 9.)

Because plaintiffs initially conceded that Mr. Burch's communications with the DOJ are not privileged or work product, defendants argued that this e-mail "relating directly" to those communications cannot be privileged or protected. (Defs.' Mem. at 8-9.) Citing Federal Rule of Evidence 502(a), defendants further argue that even if any discovery protection once applied to the withheld document, it was waived by the plaintiffs' intentional disclosure to defendants of other communications with the DOJ regarding the same subject matter, including Mr. Parker's e-mail to which Document 1 responds. *Id*. at 9.

Federal Rule of Evidence 502(a) provides:

When the disclosure [protected by attorney-client privilege or work-product protection] is made in a Federal proceeding or to a Federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a Federal or State proceeding only if:

(1) the waiver is intentional;

(2) the disclosed and undisclosed communications or information concern the same subject matter; and

(3) they ought in fairness to be considered together.

Under Rule 502(a), the intentional disclosure of privileged information may lead to the compelled disclosure of additional privileged information only if the disclosed and withheld materials concern the same subject matter *and* ought in fairness to be considered together. *See, e.g., Trustees of the Elec. Workers Local No. 26 Pen. Trust Fund v. Trust Fund Advisors, Inc.,* 266 F.R.D. 1, 11 (D. D.C. 2010). "The idea is to limit subject matter waiver to situations in which the privilege holder seeks to use the disclosed material for advantage in the litigation but to invoke the privilege

11

to deny its adversary access to additional materials that could provide an important context for proper understanding of the privileged materials." Charles Alan Wright et al., *Federal Practice and Procedure* vol. 8, § 2016.2 (3d ed. 1995, Suppl. 2010). Subject matter waiver thus "is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." Fed R. Evid. 502 advisory comm. nn.

Plaintiffs resist the production of Document 1, claiming that because there is a common litigation interest between Mr. Burch, plaintiffs, and the DOJ, there was no waiver by disclosure to the DOJ. (Pl.'s Resp. at 3-6.) Plaintiffs' argument overlooks an important fact. Even assuming, *arguendo*, that a common interest between Mr. Burch, the plaintiffs, and the DOJ would extend any privilege or work-product protection (an issue that is not decided on this motion), the relevant disclosure regarding Document 1 is the plaintiffs' disclosure of work-product protected materials to *defendants*.

In light of other materials that plaintiffs have produced to defendants, Document 1 must be produced pursuant to Rule 502(a). Document 1 concerns the same subject matter as the Burch Memorandum, namely, Mr. Burch's thoughts and actions regarding his alteration of the Honeywell Announcement. In his four-page, single-spaced Memorandum, Mr. Burch commented at length about his reasons for adding a September 23, 2004 fax date stamp to the Honeywell Announcement. There is no dispute that the Burch Memorandum was work product that was intentionally produced by plaintiffs to defendants in this action.

It would be unfair to allow plaintiffs to selectively produce both the Burch Memorandum with some of Mr. Burch's thoughts about alteration of the Honeywell Announcement, and the DOJ's

proposed disclosure to defendants about that subject, and yet withhold an additional short e-mail with Mr. Burch's thoughts about how to respond to the DOJ on that the same subject.

Defendants' motion to compel is therefore granted as to Document 1.

**Document 6**

Document 6 is an e-mail by Mr. Burch dated March 11, 2006, described by plaintiffs as: "Memorandum discussing potential knowledgeable sources of information, created at the request of plaintiffs' counsel." (Pls.' Am. Log at 2.) Plaintiffs' log states that it was sent to Mr. Stidham and shared with plaintiffs' counsel. (*Id.*) *In camera* review, however, shows that part of the address line had been redacted, apparently to delete some of the addressees. Plaintiffs were therefore ordered to investigate and determine the other addressees. (Order, Aug. 30, 2010.) Plaintiffs subsequently reported that, according to Mr. Stidham, the redacted addressees are James Lang (a Sneed Lang attorney), and Matthew Cantor and Gordon Schnell, who are attorneys of the law firm Constantine Cannon, although Mr. Stidham did not provide plaintiffs with an unredacted copy of the document. (Pls.' Am. Suppl. at 3; Stidham Decl. ¶ 4.)

Plaintiffs now argue that sharing Document 6 with the Constantine Cannon attorneys as well as with plaintiffs' counsel here did not waive work-product protection. In support, plaintiffs submit the declaration of Mr. Stidham, who states that he and his partner Mr. Lang believed that Mr. Burch had information to form the basis of his own *qui tam* action, a class action, or individual purchaser actions, that he and Mr. Lang "consulted with" Constantine Cannon attorneys Cantor and Schnell "in connection with those matters," and that Mr. Stidham directed Mr. Burch to send certain information to Messrs. Cantor and Schnell. (Stidham Decl. ¶ 3.)

13

It is plaintiffs' burden to establish that Document 6 is protected work product. *See BDO Seidman*, 492 F.3d at 821 (the proponent of any privilege must establish each of its elements). It is not apparent from the text of Document 6 that it is work product. It does not discuss or allude to litigation or the possibility of litigation. At the argument on the motion, plaintiffs were specifically directed to demonstrate that Document 6 is work product, including that document's relationship to any anticipated litigation. (Tr. Aug. 30, 2010 at 42.) Mr. Stidham's declaration does not sufficiently establish the circumstances surrounding the e-mail because the terms "consulted with" and "in connection with" are so broad that they provide no context, especially in light of the fact that Mr. Burch's *qui tam* action was not filed until more than two years later and the fact that the Constantine Cannon lawyers apparently had no role in any of the lawsuits. Plaintiffs have provided just enough, however, to suggest that further explanation might provide a basis for work-product protection. Plaintiffs therefore are given seven days following this order to supplement Mr. Stidham's declaration with further support for their claim of work-product protection. If plaintiffs are unable to provide a sufficient factual basis for their assertion of work-product protection, Document 6 shall be ordered to be produced.

**<u>Documents 2, 3, 8 and 10</u>**

Document 2, 3 and 8 are e-mails exchanged between Mr. Burch and Labaton Sucharow attorneys and copied to Mr. Stidham and Ms. Poole. (Pls.' Am. Log. at 1-2.) Documents 2 and 3 are part of an e-mail chain; Document 3 is a May 6, 2008 e-mail from Mr. Burch, and Document 2 is Labaton Sucharow attorney Gregory Asciolla's May 7, 2008 responsive e-mail and Mr. Burch's reply of the same day. (*Id*.) Plaintiffs describe them as "e-mail[s] discussing litigation strategy,

including identification and discussion of materials that will facilitate the prosecution of the case." (*Id*.) Document 8 is an April 1, 2010 e-mail from Mr. Burch to Mr. Asciolla, and is described by plaintiffs as discussing "potential knowledgeable sources of information." (*Id*. at 2.) Document 10 is a factual compilation created by Mr. Burch for his counsel. (*Id*.) Plaintiffs describe it as a "[c]hart discussing potential knowledgeable sources of information, as requested by G. Steven Stidham." (*Id*. at 3.) In addition to Mr. Stidham, the chart has been shared with plaintiffs' counsel in this case. (*Id*.)

*In camera* review shows that Documents 2, 3, 8 and 10 qualify as work product. All of them were created after the filing of the first of the cases consolidated here and during the pendency of one of Mr. Burch's *qui tam* lawsuits.[9] The first two were written at Mr. Stidham's request. The third is a cover letter for information Mr. Burch sent to plaintiffs' counsel. Similarly, Document 10 was prepared by Mr. Burch at his counsel's request, and dated April 15, 2006, just a few weeks after Mr. Burch filed his employment action against Champion. Mr. Burch shares a common interest with plaintiffs here in that, like plaintiffs, he has pursued claims against these defendants that involve the same allegations of price fixing. The motivation for the creation and sharing of each document is the common litigation interest of plaintiffs and Mr. Burch in their similarly based claims against defendants. It has not been suggested that any of these particular documents were shared with the DOJ.

Contrary to defendants' argument, plaintiffs have not waived the work-product status of these

---

[9] This opinion, therefore, does not need to reach an issue raised in defendants' motion to compel documents pursuant to subpoena to Mr. Burch [dkt 560], that is, whether there was a common interest during the interval when Mr. Burch did not have any litigation pending against defendants.

15

documents by incorporating some information obtained from Mr. Burch into the assertion of their claims. Work-product protection is waived when a party relies on a legal claim or defense, the truthful resolution of which will require examining confidential communications, for example, by asserting an affirmative defense of reliance on advice of counsel. *See Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1098 (7th Cir. 1987) (applying analysis to attorney-client privilege). Here, plaintiffs' claims may be based in part on information obtained from Mr. Burch, but that does alone does not put their confidential communications with him at issue. To accept defendants' argument to the contrary would eviscerate the work product protection for any plaintiff who uses a witness' information in the drafting of the plaintiff's complaint.

The underlying facts within these documents are, of course, not protected from discovery. The work-product protection does not prevent disclosure of underlying facts which are discoverable in an adversary proceeding. Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine*, vol. 2, 802 (5th ed., ABA 2007). The doctrine "does not shield information from disclosure; it only protects a party against having to turn over particular documents containing the information." *Id.* at 821; *see also U.S. v. Dentsply Intl., Inc.*, 187 F.R.D. 152, 155-156 (N.D. Ill. 1999) ("The general rule is that one party may discover relevant facts known or available to the other party, even though such facts are contained in documents that are not discoverable.") Although these particular documents are work-product protected, defendants may pursue the information in them from other sources.

Defendants argue that production should be ordered pursuant to Federal Rule of Civil Procedure 26(b)(3)(A)(ii) because they have shown that they have substantial need for Mr. Burch's communications with plaintiffs in order to prepare their case. They point to the controversy

surrounding Mr. Burch's altering of the Honeywell Announcement and their intention to explore his credibility. However, courts are "extremely reluctant to allow discovery of attorney work product simply as impeachment evidence." *Sandra T.E.*, 600 F.3d at 622 (rejecting plaintiffs' substantial need argument for attorneys' investigation notes as impeachment tool). The credibility of any witness – and indeed any party – is at issue in every case. The fact that defendants are especially interested in exploring Mr. Burch's credibility does not establish a substantial need for work-product material.[10]

Defendants' motion to compel is therefore denied as to Documents 2, 3, 8 and 10.

## CONCLUSION

For the reasons set forth above, defendants' Motion to Compel Direct Purchaser Plaintiffs to Produce Improperly Withheld Documents (Doc. 527) is granted as to Documents 1, 5, 7, 9 and 11, denied as moot as to Document 4, and denied as to Documents 2, 3, 8 and 10. Plaintiffs may provide any supplemental information to support their claim of work product as to Document 6 by November 12, 2010.

**IT IS SO ORDERED.**

_____
GERALDINE SOAT BROWN
United States Magistrate Judge

**DATED:** November 4, 2010

---

[10] Because defendants have not demonstrated a substantial need for Documents 2, 3, 8 and 10, it is not necessary to reach plaintiffs' argument that those documents contain opinion work product. *See Logan,* 96 F.3d at 976 n. 4.