UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE AFTERMARKET FILTERS ANTITRUST LITIGATION ) ) ) ) ) THIS DOCUMENT RELATES TO: ) All Direct and Indirect Purchaser ) Actions ) ) ) ) | Lead Case No. 08 C 4883<br><br>MDL Docket No. 1957<br><br><br>Judge Robert W. Gettleman<br>Magistrate Judge Geraldine Soat Brown |

**MEMORANDUM OPINION AND ORDER**

Geraldine Soat Brown, United States Magistrate Judge

Before the court is defendants' Motion to Enforce Defendants' Subpoena of William G. Burch. [Dkt 560.] Mr. Burch has filed a response to the motion, as have the attorneys for the putative direct purchaser class ("plaintiffs").[1] For the following reasons, the motion is granted in part and denied in part, and further submissions are required with respect to certain documents.

**BACKGROUND**

---

[1] The parties' submissions are cited as follows: Defendants' Memorandum in Support of Motion to Enforce Subpoena of William G. Burch ("Defs.' Mem.") [dkt 561]; Direct Purchaser Plaintiffs' Memorandum in Opposition to Defendants' Motion to Enforce Subpoena of William G. Burch ("Pl.'s Mem.") [dkt 589 (redacted version), 592 (unredacted version)]; Burch's Response to Defendants' Motion to Enforce Subpoena ("Burch Resp.") [dkt 596]; Burch's Brief in Support of Response to Defendants' Motion to Enforce Subpoena ("Burch's Mem. Resp.") [dkt 597]; Defendants' Consolidated Reply in Support of Motion to Enforce Subpoena ("Defs.' Reply") [dkt 609 (unredacted version), 610 (redacted version)].

Some background to the present motion was set out in the opinion on defendants' earlier motion to compel plaintiffs to produce documents relating to Mr. Burch. (Memo. Op. and Or., Nov. 4, 2010 (the "November 4 Opinion").) [Dkt 667.] Defendants served a subpoena on Mr. Burch for, *inter alia*, all the documents he had provided to the Antitrust Division of the United States Department of Justice ("DOJ"). (Defs.' Mem., Ex. A-1, Subpoena to William G. Burch at 7.) Defendants' present motion seeks to compel a number of documents to which Mr. Burch has asserted attorney-client privilege, work-product protection or the extension of those protections by way of the common interest doctrine. During the course of the briefing on the motion certain disputes were resolved, and 34 documents remain at issue. (*See* App. to this opinion.) Most of the documents were provided to the court for *in camera* review.[2]

In addition to the factual background set out in the earlier opinion, the following facts are relevant to this opinion. In early 2006, Mr. Burch filed a wrongful termination case against his former employer Champion Laboratories, Inc. ("Champion"), and Champion filed a lawsuit against Mr. Burch for embezzlement. On March 31, 2008, Mr. Burch filed a *qui tam* action against Champion and the other defendants in this lawsuit. (Pls.' Mem., Decl. of G. Steven Stidham ¶ 5.) Shortly thereafter, Mr. Burch's attorney G. Steven Stidham met with Phil Pinnell, an Assistant United States Attorney, and with Antonia Hill and Richard Rosenberg, attorneys from the Antitrust Division of the DOJ, and gave them materials that had been prepared for Mr. Burch's pending employment and *qui tam* litigation. (Stidham Decl. ¶ 6.) When Mr. Stidham communicated in April and May 2008 with Ms. Hill and Mr. Rosenberg, it was his belief that the DOJ was conducting a

---

[2] Because the disputes over some documents were resolved, there are gaps in the numbering of the remaining documents. Also, some of the documents listed were not, in fact, provided, as described below.

2

criminal investigation of defendants' participation in the alleged price-fixing conspiracy that was the subject of Mr. Burch's *qui tam* action. (*Id.*)

On or about September 5, 2008, Mr. Burch and Champion reached a settlement of his employment case and Champion's embezzlement lawsuit, which was set out in a confidential Settlement Agreement and Release. (Pls.' Mem., Decl.of Bernard Persky, Ex. C, Settlement Agreement and Release (filed under seal).)[3] Champion's lawsuit against Mr. Burch and Mr. Burch's employment lawsuit against Champion were dismissed shortly thereafter. The Settlement Agreement and Release carved out Mr. Burch's *qui tam* action from the scope of the release, except that Mr. Burch agreed not to pursue any claim under 31 U.S.C. § 3730(h) (whistleblower's protection from retaliation).

On December 10, 2008, the DOJ declined to intervene in the *qui tam* action, and on December 23, 2008, Mr. Burch dismissed his *qui tam* action without prejudice. (Stidham Decl. ¶ 7.) Mr. Stidham states that he and Mr. Burch always intended to re-file the *qui tam* action after further development of facts in support of the antitrust claims. (*Id.*).

In his response to defendants' motion, Mr. Burch claims that the common legal interest with the DOJ was "the anticompetitive activity of Defendants" and the joint effort was "to prove the anticompetitive activity his *qui tam* case alleged." (Burch Resp. ¶ 2.) Mr. Stidham states:

> [A]fter the December 2008 voluntary dismissal of the first *qui tam* case, I and Mr. Burch continued to cooperate with the Antitrust Division . . . . I continued to provide additional information, including confidential attorney-client and work product privileged documents to the DOJ. This included providing privileged material to

---

[3] In parts of their briefs filed under seal, the parties discuss the terms of the settlement. Those terms, however, are irrelevant to the issues in this opinion. The settlement is only background to the dismissal of the lawsuits and the question of whether there was a common litigation privilege at the time a particular document was shared.

> Jeffery Parker, another attorney with the Antitrust Division's Philadelphia Office, beginning in July 2009 and continuing through December 2009. The reason Mr. Burch and I continued to share this privileged information with the Antitrust Division from and after December 2008 was the common interest that we had an [sic] assisting the Antitrust Division to develop potential criminal antitrust charges against Champion and the other filters manufacturer defendants.

(Stidham Decl. ¶ 8.)

Plaintiffs also claim that "Mr. Burch and his counsel shared a common interest with the DOJ at all times when the disputed privileged materials involving the August 25 Burch Memorandum were provided" to the DOJ. (Pls.' Mem. at 9.) As discussed below, however, any arguable common interest with the DOJ ended no later than June 2009.

### *IN CAMERA* INSPECTION

Voluntarily providing materials to the government may waive any attorney-client privilege or work-product protection for them. *See, e.g., U.S. ex rel Robinson v. Northrop Corp.*, 824 F. Supp. 830, 838-39 (N.D. Ill. 1993).[4] In order to avoid such a waiver, some, but not all, courts will apply a common interest theory to extend protection from discovery for attorney-client privileged or work-product protected materials given by a *qui tam* relator to the government. *Compare Miller v. Holzmann*, 240 F.R.D. 20, 21-23 (D.D.C. 2007) (extending protection) *with Robinson*, 824 F. Supp. at 838-39 (rejecting protection).

For attorney-client privilege or work-product protection to be extended by the common interest doctrine, however, the person to whom the material has been disclosed must be part of a joint

---

[4] Federal Rule of Evidence 502(a) does not determine whether providing materials to the government waives protection from discovery; rather, if it is a waiver, Rule 502 determines whether protection for other material not provided is also waived. Fed. R. Evid. 502(a) advisory comm. n, (2007).

effort with respect to a common legal interest and the disclosure must have been made to further an ongoing enterprise. *U.S. v. BDO Seidman, LLP*, 492 F.3d 806, 815-16 (7th Cir. 2007) (analyzing common interest extension of attorney-client privilege). "[T]he doctrine is limited strictly to those communications made to further an ongoing enterprise." *Id.* at 816. The *in camera* review of the documents in this case, described below, revealed facts dispositive of Mr. Burch's and plaintiffs' claim of a common interest with the DOJ, at least as of June 2009.

Communications with Assistant U.S. Attorney Jeffrey Parker

As described in the November 4 Opinion, a controversial document in this case is the "Honeywell Announcement." (*See* November 4 Opinion at 10-11.) It is now undisputed that Mr. Burch cut-and-pasted a fax header, including a date, on a version of that announcement. (*Id.*) Mr. Burch's explanation for doing so was set out in an August 25, 2009 memorandum (the "Burch Memorandum") to his attorney Mr. Stidham, which Mr. Stidham sent to Assistant United States Attorney Jeffery Partker at the DOJ and which was produced in its entirety to defendants in this case.[5]

The *in camera* review of the disputed documents revealed that Mr. Stidham's motivation for sending the Burch Memorandum to Mr. Parker was not, as plaintiffs and Mr. Burch contend, a continuing joint interest with the DOJ in investigating a potential antitrust case against defendants, but rather Mr. Stidham's response on behalf of Mr. Burch to the DOJ's investigation of possible

---

[5] A copy of the Burch Memorandum was attached as Exhibit 8 to defendants' memorandum in support of their prior motion to compel. [Dkt 548.] Although the Burch Memorandum bears the date "August 25, 2008," it is undisputed that the actual date is August 25, 2009. (*See* November 4 Opinion at 7 n. 6; *see also* Order, Nov. 15, 2010.) [Dkt 676.]

criminal charges against Mr. Burch for false statements and obstruction of justice.

Document 4 is an August 14, 2009 letter from Mr. Parker on DOJ letterhead to Mr. Stidham. In that letter Mr. Parker recounted his telephone conversation on June 30, 2009 with Mr. Stidham in which Mr. Parker expressed the DOJ's "concerns of possible criminal wrongdoing, including false statements and obstruction of justice, by Mr. Burch." (Doc. 4 at 1.) In particular, Mr. Parker expressed concerns about the authenticity of the Honeywell Announcement and statements Mr. Burch made in a communication with DOJ attorney Richard Rosenberg in May 2008. Mr. Parker requested a response in writing by August 28, 2009, although he acknowledged that any response would be voluntary. The Burch Memorandum is Mr. Burch's response to Mr. Parker's request. That memorandum expressly refers to "Mr. Parker's questions." (Burch Memorandum at 1.)

Mr. Parker's letter also states, "To the extent that you believe you have not already waived attorney-client and/or work-product privileges, I am not asking you to disclose information which you believe is protected by such privileges. Please, however, inform me in writing if you are invoking any such privileges." (Doc. 4 at 2 n. 2.) The DOJ was not taking the view that its communication at that time was pursuant to a common interest with Mr. Burch, but rather that it was in a potentially adversarial position.

Furthermore, it appears that Mr. Stidham recorded and transcribed at least part of that June 30, 2009 telephone conversation with Mr. Parker. Document 90 is entitled "Telephone conversation with Jeffrey C. Parker, June 30, 2009." In that conversation, Mr. Parker explained that the reason that he, a different U.S. Attorney, was brought in was to segregate the previous U.S. Attorneys (Ms. Hill and Mr. Rosenberg), who had been investigating claimed antitrust violations by defendants, from the investigation of possible charges against Mr. Burch. (Doc. 90 at 1.)

6

From these facts, it is apparent that Mr. Parker's communications with Mr. Burch and his counsel were not, in fact, pursuant to any common interest against defendants. Mr. Burch and Mr. Stidham were communicating with Mr. Parker in response to the DOJ's investigation of Mr. Burch. As Mr. Parker's letter illustrates, Mr. Burch could have no expectation of privilege or protection for such communications. Plaintiffs argue that the questioning of a document by DOJ attorney is "a standard part of any investigation" and does not destroy the common interest. (Pls.' Mem. at 9.) The possibility of criminal charges for obstruction of justice, however, goes far beyond any "standard" questioning of documents.

The reason for applying the common interest protection to materials provided by a *qui tam* relator is "the congressional desire that the relator apprise the government of all he or she knows as a condition of bringing a *qui tam* action." *Miller*, 240 F.R.D. at 23. That reason, however, does not exist here for communications with Mr. Parker. In *Miller,* the court observed that a relator in a *qui tam* action may have mixed motives for coming forward to the government with information, including "saving his own skin" because of his own complicity in the putative defendant's claimed offenses. *Id*. at 22-23. Whether that was part of Mr. Burch's original motivation for contacting the DOJ in 2008 need not be decided here. Mr. Parker's focus was not on defendants' alleged antitrust violations and Mr. Burch's possible complicity in those violations, but rather on Mr. Burch's possible culpability for his own independent actions. There is no "common interest" in any sense being advanced in Mr. Burch's communications with Mr. Parker. The purpose of the *qui tam* statute, as discussed in *Miller*, is not advanced by protecting those communications under the facts here.

Mr. Burch claims attorney-client privilege and work-product protection for Document 4, but there is no basis for either claim. Accordingly, Document 4 and all documents containing

communications with Mr. Parker, as well as all documents that were sent to Mr. Parker, including any sent as attachments to e-mails, must be produced.[6] That includes Documents 1 (including attachments), 2, 3, 5, 6, 7, 8 and 9.

Mr. Stidham's recordings of his conversations with Mr. Parker

In addition to the June 30, 2009 recording, Mr. Stidham also recorded and transcribed his conversations with Mr. Parker on September 29, 2009 and November 17, 2009. (Docs. 91 and 92.) Neither plaintiffs nor Mr. Burch tender any explanation or justification for the recordings. At no time in any of the transcripts does Mr. Stidham tell Mr. Parker that the conversation is being recorded.[7]

All of those conversations related to Mr. Parker's investigation of Mr. Burch, not to any joint prosecution of antitrust claims against defendants. Indeed, in the November 17, 2009 conversation, Mr. Parker asked Mr. Stidham whether Mr. Burch had any ongoing litigation against anyone in the filter industry, and Mr. Stidham responded, "No. Not personally, Jeff." (Doc. 92 at 1.) Mr. Stidham did not mention any intention to re-file Mr. Burch's *qui tam* lawsuit.

In a letter to defendants' counsel, Mr. Stidham claims attorney-client privilege and work-product privilege concerning those tape recordings. (Defs.' Reply, Ex. B.) There is no arguable basis for attorney-client privilege with respect to Mr. Stidham's conversations with Mr. Parker, nor are

---

[6] Some of the documents sent to Mr. Parker were either voluntarily produced by plaintiffs or were ordered produced in the November 4 Opinion.

[7] Defendants suggest that making the recordings violated Pennsylvania law. (Mr. Parker was in Pennsylvania.) (Defs.' Reply at 2 n. 1.) It is not necessary to reach that question for purposes of this opinion.

the conversations *per se* Mr. Stidham's work-product. The conversations were not to further any common interest between the DOJ and Mr. Burch, but rather to the contrary. In appropriate circumstances, Mr. Stidham could be compelled to testify about the content of those conversations. Mr. Burch has not submitted any argument or authority to support his claim that the transcripts are work product, and the court is skeptical about any such claim, since the transcripts appear to be simply verbatim transcriptions of the conversations. Even assuming, *arguendo*, that Mr. Burch is contending that the act of making the recordings and transcripts (whether proper or not) was "in anticipation of litigation" (*i.e.*, Mr. Burch's defense of criminal charges), the transcripts must be produced.

The transcripts concern the same subject matter as documents intentionally produced in this case and ought in fairness to be considered with them. *See* Fed. R. Evid. 502(a).[8] Two of the conversations concerned the Burch Memorandum. The June 30, 2009 conversation set out the context in which the memorandum was written and the September 29, 2009 conversation was about the memorandum itself. The November 17, 2009 conversation was about the draft communication

---

[8] Federal Rule of Evidence 502(a) provides:

When the disclosure [protected by attorney-client privilege or work-product protection] is made in a Federal proceeding or to a Federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a Federal or State proceeding only if:

    (1) the waiver is intentional;

    (2) the disclosed and undisclosed communications or information concern the same subject matter; and

    (3) they ought in fairness to be considered together.

that Mr. Parker proposed to send to defendants, which was the subject of an e-mail previously produced by plaintiffs in this case. (*See* November 4 Opinion at 10-11.) Fairness requires that Mr. Burch and plaintiffs reveal all of their communications with the DOJ on those subjects, not just the communications they select, especially in light of Mr. Stidham's declaration about his communications with the DOJ, quoted above.[9] There is no "opinion" work product – attorney's mental impressions or theories – to be protected because Mr. Stidham was communicating with a potential adversary in those conversations.

Accordingly, Documents 90, 91 and 92 must be produced.[10]

Document 18

Document 18 is an April 24, 2008 letter from the DOJ to Mr. Burch regarding Mr. Burch's anticipated interview as part of the DOJ's investigation of the alleged antitrust violations. Although Mr. Burch claims both attorney-client privilege and work-product protection for this document, there is no basis for those assertions. It is not work product of Mr. Burch or his counsel. If it is work product at all, it would be work product of the DOJ. Mr. Burch has not submitted any authority or argument to suggest that he may assert a work-product protection for this letter prepared by the DOJ. It appears, moreover, to be a standard agreement for a witness interview, without any content relating specifically to the particular investigation.

Document 18 must be produced.

---

[9] It might also be argued that defendants have a substantial need for the transcripts and cannot, without undue hardship, obtain the substantial equivalent. *See* Fed. R. Civ. P. 26(b)(3)(ii). But it is not necessary to reach that issue.

[10] Documents 93, 94 and 95 are represented to be copies of Documents 90, 91 and 92.

Mr. Burch's recordings of conversations with others

Document 19 is a short April 29, 2008 cover letter from Mr. Stidham to an attorney in the DOJ enclosing a tape recording made by Mr. Burch (which has not been provided to the court for *in camera* review) and his transcripts of relevant portions of the tape. The transcripts (and presumably the tape) are of conversations Mr. Burch had with various individuals in June and July, 1999, September 2004 and December 2005. It is not suggested that any of those individuals are lawyers, nor do the conversations relate to legal questions. Rather, they are conversations about business deals. All of the conversations predate the earliest litigation, some of them by many years. Although Mr. Burch claims attorney-client privilege and work-product protection for those items, no facts or arguments have been presented to suggest that either the tape recording or the transcripts are protected from discovery, and the cover letter has no protectable content.

Document 19 and the tape recording and transcripts enclosed with that cover letter must be produced.

Document 20

Document 20 is a May 6, 2008 e-mail from Mr. Burch to Assistant U.S. Attorney Richard Rosenberg with enclosures (a list of individuals and a draft affidavit for signature by Paul McFall). Although the e-mail was sent during the time that Mr. Burch's *qui tam* litigation was pending, it is not necessary to decide whether work-product protection might have been extended by a common interest under different facts. That e-mail and the enclosures were among the subjects of Mr. Parker's August 14, 2009 letter, and both the e-mail and the list of individuals were attachments to Document 1, Mr. Parker's July 1, 2009 e-mail (although only the list and not the e-mail or draft

11

affidavit were included with the version of Document 1 provided for *in camera* inspection). As discussed above, Document 1 and its attachments must be produced, so there is no protection left for Document 20. Additionally, the Burch Memorandum discusses and explains those enclosures, including a discussion of Paul McFall's affidavit. (Burch Memorandum at 3.) Because the Burch Memorandum has been produced, Federal Rule of Evidence 502(a) also requires that Document 20 and its enclosures be produced.

Documents 16, 40 and 52

Document 16 is a November 18, 2009 e-mail from one of plaintiffs' attorneys to Mr. Stidham. It concerns Mr. Stidham's communications with the DOJ (which, at that time, were with Mr. Parker). Document 40 is a January 14, 2009 e-mail from one of plaintiffs' counsel to Mr. Stidham, which was less than a month after Mr. Burch dismissed his first *qui tam* action. Mr. Burch claims that those e-mails are protected by attorney-client privilege, but they clearly are not. The attorney-client privilege protects communications:

> (1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*U.S. v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997). Plaintiffs' attorneys were neither seeking nor rendering legal advice from or to Mr. Stidham.

Both Mr. Burch and plaintiffs also claim the common interest extension of work-product protection for the documents. In both instances, plaintiffs' counsel wrote the e-mail because of the pending litigation, but Mr. Burch had no litigation pending on either date. The sole factual basis for

12

the common interest argument is Mr. Stidham's statement that Mr. Burch always intended to re-file his *qui tam* action. Notably, Mr. Burch did not submit an affidavit or declaration regarding his intention. With respect to Document 40, there are no facts suggested by plaintiffs to support any reasonable expectation on the part of plaintiffs' counsel in January 2009 that Mr. Burch was anticipating litigation against defendants, and his then-recent dismissal of his *qui tam* action and settlement of his employment case would suggest the contrary. Mr. Burch did re-file the *qui tam* case a month after Document 16 was sent, but on November 17, 2009 – only a day before that e-mail was sent – when asked directly by Mr. Parker whether Mr. Burch was personally involved in any litigation against anyone in the filter industry, Mr. Stidham answered, "No. Not personally, Jeff." (Doc. 92 at 1.) Mr. Stidham did not then suggest that Mr. Burch intended to re-file the *qui tam* action, as Mr. Stidham now claims was always his intention.

Document 52 is similar: a March 4, 2009 letter from an Assistant Attorney General in Florida to Mr. Stidham. It is not clear whether that office has asserted work-product protection for it. Mr. Burch asserts work-product protection for it, but at the time Mr. Burch had no litigation pending and has not sufficiently shown that he was, in fact, engaged in a joint enterprise with the state of Florida at that time.

Plaintiffs and Mr. Burch have failed to provide sufficient factual support for their argument of a common interest extension of work-product protection for Documents 16, 40 and 52. The issues, then, are: whether plaintiffs and the state of Florida are entitled to any work-product protection for these communications with Mr. Stidham; if so, whether that protection has been waived; and, if it has been waived, whether the documents contain any so-called "opinion" work product – the mental impressions, conclusions, opinions, or legal theories of a party's attorney or

13

other representative – which must be protected under Federal Rule of Civil Procedure 26(b)(3)(B).

Ruling on Documents 16, 40 and 52 is reserved. Plaintiffs and Mr. Burch, as the advocates for protecting Documents 16, 40 and 52 from discovery, may submit supplemental briefs addressing those questions no later than November 22, 2010. The Attorney General of Florida may also submit a brief as to Document 52 no later than November 22, 2010. Defendants may file a response to those supplemental briefs no later than November 29, 2010. If no supplemental briefing is submitted by plaintiffs, Mr. Burch or the Florida Attorney General, the documents will be ordered produced to defendants.

Protected documents

Documents 12, 13, 14 and 15 are communications between Mr. Burch and Mr. Stidham or Mr. Stidham's assistant Sharon Poole that do not appear to have been shared with anyone else, including plaintiffs' counsel. Those documents are protected by attorney-client privilege and are not required to be produced, although certain of the attachments to those documents have been produced or are ordered to be produced in other contexts.

Cover e-mails

Document 10 is an e-mail from Ms. Poole to Mr. Burch that contains no text but attaches Document 4 (the August 14, 2009 letter from Mr. Parker to Mr. Stidham). Document 11 is simply a copy of the Burch Memorandum sent to Mr. Stidham and Ms. Poole, which Mr. Burch transmitted to them by e-mail. There is no protectable content in those e-mails.

Document 22 was already produced as part of an e-mail chain in a partially-redacted format

in connection with defendants' previous motion to compel. Document 23 is the originally-redacted portion of that e-mail chain that was ordered to be produced. (*See* November 4 Opinion at 10-11.)

Document 44 is a brief e-mail from Ms. Poole to one of plaintiffs' attorneys. It contains no protectable content.

Documents 10, 11, 22 , 23, and 44 must be produced.

Incomplete documents

A number of the disputed documents were not provided to the court or were incomplete.

Document 17: The attachment, which is the only content, is missing.

Document 21: There is no document provided for *in camera* inspection.

Document 39: The text says, "See below," but there is no text below.

Document 43: There is no text in the document, only a subject line.

Document 45: There is no document provided for *in camera* inspection.

Those documents must be provided to the court for *in camera* review by November 22, 2010. For any document that cannot be provided, an explanation of the reason why it was listed on the privilege log but cannot be produced must be submitted.

Documents 41 and 42

*In camera* review shows that these documents have no relevance to this case and were apparently listed on the privilege log in error. Documents 41 and 42 do not have to be produced.

15

**CONCLUSION**

For the forgoing reasons, defendants' Motion to Enforce Defendants' Subpoena of William G. Burch is granted in part, denied in part, and ruling is reserved as to a number of documents. Mr. Burch shall submit the missing and incomplete documents for *in camera* review no later than November 22, 2010. No later than November 22, 2010, plaintiffs and Mr. Burch may file additional submissions as set out in this opinion, and the State of Florida may file an additional submission regarding Document 52 if it chooses. Any response by defendants to these submissions must be filed no later than November 29, 2010.

**IT IS SO ORDERED**.

_____
Geraldine Soat Brown
United States Magistrate Judge

November 18, 2010

**Appendix**

| Document Number | Document Description | Ruling |
|---|---|---|
| 1 | 1) 7/1/09 email to Stidham from Jeffrey Parker (DOJ Antitrust Divison); cc Kimberly A. Justice and Patricia Kalita<br><br>2) attachment labeled "Burch Documents" with 3 versions Honeywell Announcement<br><br>3) attachment labeled "05-06-2008email" with attached "Listing of Individuals" | **Ordered to be produced** |
| 2 | 1) 7/6/09 email to Parker from Sharon Poole about Burch<br><br>2) attachment labeled "Documents Overview"<br><br>3) attachment labeled "SL Listing of Individuals" | **Ordered to be produced** |
| 3 | 7/7/09 email to Stidham from Parker about William Burch; cc Poole, Kimberly A. Justice and Patricia Kalita | **Ordered to be produced** |
| 4 | 1) 8/14/09 letter to Stidham from Parker about Burch<br><br>2) replica of 7/6/09 email with attachments in Document 2, *supra* | **Ordered to be produced** |
| 5 | 12/2/09 email to Stidham from Parker about Burch | **Ordered to be produced** |
| 6 | 12/9/09 email to Stidham from Parker about Burch; cc Patricia Kalita | **Ordered to be produced** |
| 7 | 12/9/09 email to Stidham from Parker about Burch; cc Patricia Kalita | **Ordered to be produced** |

| | | |
|---|---|---|
| 8 | 1) 12/22/09 email to Parker from Poole<br><br>2) attached letter about Burch dated 12/22/09 to Parker from Stidham | **Ordered to be produced** |
| 9 | 12/22/09 letter to Parker from Stidham (*same as Document 8, *supra*) | **Ordered to be produced** |
| 10 | 8/14/09 letter to Burch from Poole with attached letter from DOJ to Stidham dated 8/14/09 | **Ordered to be produced** |
| 11 | 8/27/09 email to Stidham from Burch with attached memo dated 8/25/08 by Burch to Stidham; cc Poole | **Ordered to be produced** |
| 12 | 9/30/09 email to Burch from Poole regarding "TC Jeffry Parker" | **Not required to be produced** |
| 13 | 1) 10/3/09 email to Stidham from Burch regarding "transcript of recent conversation with DOJ;" cc Poole<br><br>2) attachments labeled "acebulk10.1.04" and "acebulk9.23.04" | **Not required to be produced** |
| 14 | 1) 10/20/09 email to Poole from Burch regarding "Current Documents;" cc Stidham<br><br>2) attachment labeled "Affidavit of Paul McFall 031908"<br><br>3) two identical attachments labeled "SL Subpoena List"<br><br>4) attachment labeled "acebulk9.23.04"<br><br>5) attachment labeled "Documents Overview"<br><br>6) attachment labeled "SL Key Document and Tape Summary" | **Not required to be produced** (however, the documents "SL Subpoena List" and "Documents Overview" were previously ordered to be produced in the November 4 Opinion) |

| | | |
|---|---|---|
| 15 | 10/20/09 email to Stidham from Burch regarding "Response to recent conversation between S. Stidham and Mr. Parker;" cc Poole | **Not required to be produced** |
| 16 | 11/18/09 email to Stidham from Bernard Persky | **Ruling reserved - plaintiffs and Mr. Burch may submit supplemental briefing - if no supplemental briefing filed, ordered to be produced** |
| 17 | 12/2/09 email to Persky from Poole regarding "IKON DocSend files for you" with attachment | **Incomplete - must be provided to court for *in camera* review or explanation for why document cannot be provided** |
| 18 | 4/24/08 letter to Burch c/o Stidham from DOJ Antitrust Division regarding "Replacement Filters" | **Ordered to be produced** |
| 19 | 4/29/08 letter to DOJ Antitrust Division from Stidham with attached tapes and transcripts of Burch conversations | **Ordered to be produced** |
| 20 | 1) 5/6/08 email to Richard Rosenberg (DOJ Antitrust Division ) from Burch regarding "Contact Listing of Individuals - Automotive Filter Industry;" cc Stidham and Poole<br><br>2) attachment labeled "Listing of Individuals"<br><br>3) attachment labeled "Affidavit of Paul McFall 031908" | **Ordered to be produced** |
| 21 | 5/19/08 email to Stidham from Rosenberg regarding "Burch v. CLI" with attachments | **Missing - must be provided to court for *in camera* review or explanation for why document cannot be provided** |
| 22 | 11/18/09 email to Burch and Persky from Poole regarding "William Burch" | **Ordered to be produced** |
| 23 | 11/19/09 email to Poole and Persky from Burch regarding "William Burch;" cc Stidham | **Ordered to be produced** |

| | | |
|---|---|---|
| 39 | 1/8/09 email to Stidham from Eric Belfi regarding "Filters" | **Incomplete - must be provided to court for *in camera* review or explanation for why document cannot be provided** |
| 40 | 1/14/09 email to Stidham from Greg Asciolla regarding "Filters" | **Ruling reserved - plaintiffs and Mr. Burch may submit supplemental briefing - if no supplemental briefing filed, ordered to be produced** |
| 41 | 2/12/09 email to Stidham from Eric Belfi regarding "Oklahoma" | **Not required to be produced** |
| 42 | 2/23/09 email to Stidham from Belfi regarding "Oklahoma" | **Not required to be produced** |
| 43 | 5/19/09 email to Belfi, Asciolla, and Persky from Poole regarding "Is Champion Labs on Life Support?" | **Incomplete - must be provided to court for *in camera* review or explanation for why document cannot be provided** |
| 44 | 11/9/09 email to Persky from Poole regarding "Good Morning" | **Ordered to be produced** |
| 45 | 11/9/09 email to Belfi from Poole regarding "3:00 p.m. Conference Call" | **Missing - must be provided to court for *in camera* review or explanation for why document cannot be provided** |
| 52 | 3/4/09 letter to Stidham from Christopher Hunt (Florida AAG) regarding "CID No. 08-109" | **Ruling reserved - plaintiffs, Mr. Burch, and the Attorney General of Florida may submit supplemental briefing - if no supplemental briefing filed, ordered to be produced** |
| 90 | Transcript of 6/30/09 phone conversation between Parker and Stidham | **Ordered to be produced** |
| 91 | Transcript of 9/29/09 phone conversation between Parker and Stidham | **Ordered to be produced** |
| 92 | Transcript of 11/17/09 phone conversation between Parker and Stidham | **Ordered to be produced** |