**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: AFTERMARKET FILTERS ANTITRUST LITIGATION** | **Master Docket No.: 08-cv-4883** |
| | **MDL Docket No.: 1957** |
| **This Document Relates to:** | **Judge Robert W. Gettleman** |
| ***WILLIAM BURCH'S AMENDED QUI TAM*** | **Magistrate Judge Geraldine Soat Brown** |

**ANSWER OF HONEYWELL INTERNATIONAL INC. TO PLAINTIFFS' FIRST AMENDED QUI TAM COMPLAINT**

Defendant Honeywell International Inc. ("Honeywell"), through its attorneys O'Melveny & Myers LLP, answers the allegations in Plaintiff's First Amended Qui Tam Complaint ("Complaint"), filed on November 24, 2010, as follows:

1. This action is based partly on evidence of an antitrust conspiracy to fix prices between and among the largest manufacturers of light duty air, oil, and fuel filters ("Filters"). That price fixing conspiracy is the subject of private class actions, which this Court has determined sufficient state claims for relief under federal antitrust laws.

**ANSWER:** Denies the allegations in paragraph 1, except admits that Plaintiff purports to allege an antitrust conspiracy, and that a private class action has been filed in this Court (Master Docket No.: 08-cv-4883).

2. At the same time that the Defendants conspired to fix prices for these Filters they also: a). concealed their conspiracy from the United States and from the States, and b). submitted, and caused to be submitted, false and fraudulent claims for payment to the United States and the States and submitted false statements in support of such claims to the United States and the States. Consequently, these entities paid inflated prices for the Filters and obtained and maintained contracts they would not have otherwise received and/or would have been terminated had the federal and state governments learned of the price fixing.

**ANSWER:** Denies the allegations in paragraph 2.

3. This action seeks damages and penalties under the False Claims Act ("FCA") and

comparable State laws based on false claims the Defendants submitted or caused to be submitted; false statements these Defendants made in support of such false claims; and the Defendants conspiratorial acts to violate the FCA and comparable State laws.

**ANSWER:** Denies the allegations in paragraph 3, except admits that (i) Plaintiff purports to assert claims pursuant to the False Claims Act and comparable State laws and (ii) Plaintiff seeks damages and penalties in connection with those claims.

4.     The Complaint provides many examples of contracts the Defendants had with the United States and the States, and of claims and evidence of claims submitted by, and caused to be submitted by, the Defendants to these entities.  Although not exclusive, these lists of contracts and claims are extensive; they also are representative of the Filter contracts that the Defendants had with the United States and the States, and the Filter claims they submitted and caused to be submitted while they colluded to fix the prices for these Filters.

**ANSWER:** Denies the allegations in paragraph 4 as they relate to Honeywell, except admits that Honeywell has sold light duty aftermarket air, oil, and fuel filters to United States military-based exchange service entities and distributors, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4 concerning any other defendant.

5.     The Complaint also explains why and how the Defendants knew that their prices and claims were false, and how Defendants knowingly certified that they were not engaged in price-fixing, when they were doing just that.  Thus, Mr. Burch's allegations of the "who, what, when, where, and why" of these claims establish not only that Defendants might plausibly have submitted, and caused to be submitted, false claims and statements in support of claims; instead, they demonstrate that the Defendants did submit and cause to be submitted false claims and false statements in support of claims while also engaging in a conspiracy to defraud federal and state taxpayers.  The damages to the United States and the States stemming from the Defendants' actions are substantial, though yet to be determined.

**ANSWER:** Denies the allegations in paragraph 5.

## SUMMARY OF CLAIMS

6.     Plaintiff brings this action to recover damages, civil penalties, and other relief, arising from a). false claims Defendants made, or caused to be made, b). false certifications and representations Defendants made in support of false claims, and c). Defendants' conspiracy to make false claims.

2

**ANSWER**: Denies the allegations in paragraph 6, except admits that Plaintiff is seeking damages, civil penalties, and other relief.

7.     Each of these acts violates the FCA, 31 U.S.C. § 3729, *et seq.*; the California False Claims Act, Cal. Gov. Code § 12650, *et seq.*; the Delaware False Claims and Reporting Act, Del. Code Ann. tit. 6, § 1201, *et seq.*; the District of Columbia False Claims Act, D.C. Code § 2-308.13, *et seq.*; the Florida False Claims Act, Fla Stat. § 68.081, *et seq.*; the Hawaii False Claims Act, Hawaii Rev. Stat. § 661-21, *et seq.*; the Illinois False Claims Act, 740 Ill. Comp. Stat. 175/1, *et seq.*; the Indiana State False Claims Act, Ind. Code § 5-11-5.5-1, *et seq.*; the Massachusetts False Claims Act, Mass. Gen. Laws 12 § 5A, *et seq.*; the Minnesota False Claims Act, Minn. Stat. § 15C.01, *et seq.*; the Montana False Claims Act, Mont. Code Ann. § 17-8-401, *et seq.*; the Nevada False Claims Act, Nev. Rev. Stat. § 357.010, *et seq.*; the New Hampshire False Claims Act, N.H. Rev. Stat. Ann. § 167:58, *et seq.*; the New Jersey False Claims Act, N.J. Stat. Ann. § 2A:32C-1, *et seq.*; the New Mexico Fraud Against Taxpayers Act, N.M. Stat. § 44-9-1, *et seq.*; the New York False Claims Act, N.Y. Finance Law § 187, *et seq.*; the North Carolina False Claims Act, N.C. Gen. Stat. § 1-605, *et seq.*; the Oklahoma False Claims Act, Okla Stat. tit. 63 § 5053, *et seq.*; the Rhode Island False Claims Act, R.I. Gen. Laws § 9-1.1-1, *et seq.*; the Tennessee False Claims Act, Tenn. Code Ann. § 4-18-101, *et seq.*; and the Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.1, *et seq.* (collectively the "State FCAs").

**ANSWER:** Denies the allegations in paragraph 7.

8.     Defendants are the largest manufacturers and sellers of light vehicle aftermarket air, oil, and fuel filters.  For years, the Defendants and their co-conspirators have conspired to unlawfully eliminate competition among themselves and to fix, raise, maintain, and/or stabilize prices, and to coordinate the allocation of customers, for Filters in the United States. Their illegal activities, violating Section 1 of the Sherman Act, began on or around March 1, 1999 and continue to the present ("Time Period").

**ANSWER:** Denies the allegations in paragraph 8, except admits that Honeywell manufactured and sold light duty air, oil, and fuel filters during the alleged class period.

9.     The unlawful, anticompetitive conspiracy of Defendants and their co-conspirators included, but was not limited to, in-person meetings, telephone calls, facsimiles, and other communications.

**ANSWER:** Denies the allegations in paragraph 9.

10.     Throughout the Time Period, Defendants' unlawful conduct depressed competition and caused Filters to sell at artificially-inflated prices.  As a result, retailers, consumers, the United States, and the States have consistently overpaid for Filters.  This

3

action seeks recovery for all Filters purchased by the United States and the States during the Time Period.

**ANSWER:** Denies the allegations in paragraph 10.

11. Throughout the Time Period, the United States and the States entered various contracts with Defendants and their subsidiaries or distributors to purchase Filters.

**ANSWER:** Denies the allegations in paragraph 11 as they relate to Honeywell, except admits that Honeywell sold light duty aftermarket air, oil, and fuel filters to military-based exchange service entities and various distributors during the alleged Time Period, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 concerning any other defendant.

12. Every time the United States or the States paid a claim associated with Defendants' Filters during the Time Period, that claim was false and fraudulent because the prices were artificially inflated.

**ANSWER:** Denies the allegations in paragraph 12.

13. Moreover, each time any Defendant entered into a contract with the United States, renewed a contract, extended a contract, or modified its terms, as well as on other occasions, it certified that its prices were independent (i.e., not the product of an antitrust price-fixing conspiracy). Defendants made similar certifications both explicitly and implicitly when they entered into, renewed, and extended contracts with the States, as well as on other occasions in their dealings with the States. These certifications were false statements in support of false claims.

**ANSWER:** Denies the allegations in paragraph 13.

14. Each time a Defendant submitted an invoice for Filters under a contract, it was representing to the United States and the States that its prices were not artificially inflated. In fact, each certification and each invoice was false because the price for the filters was artificially inflated, and because the Defendants had colluded to depress competition and had artificially inflated the price of Filters.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to whether Honeywell made any such representation, and denies the remaining allegations in paragraph 14.

15.     Defendants have entered contracts during the Time Period with, among others, the United States Department of Defense, other federal agencies, the States, and cities, counties and municipalities within the States.  The FCA, and the State FCAs, prohibit Defendants' conduct and allow the United States, the States, and cities, counties and municipalities, to recover their damages, including statutory penalties and attorneys' fees.

**ANSWER:**  Admits that Honeywell sold filters to military-based exchange service entities and various distributors, and denies the remaining allegations in paragraph 15.

16.     Defendants' claims were false, and in violation of the FCA and the State FCAs, for three primary reasons:

  a.     *First*, each claim submitted and paid was false because Defendants (either directly or through a distributor or subsidiary) misrepresented the true, non-inflated, price for the Filters.  The price of any product is always a material term, and the United States and the States relied on the accuracy of the Filter prices in paying claims and entering contracts.  If they had known of the antitrust conspiracy, they would not have purchased Defendants' Filters, and would not have paid inflated prices for them;

  b.     *Second*, each claim Defendants, their distributors, or subsidiaries, submitted was based on false certifications that Defendants were not colluding over prices.  To the extent that Defendants did not actually sign certifications with the United States or the States, the United States and the States believed that Defendants were not engaged in a price-fixing conspiracy and this was an implicit representation every time Defendants made a claim for payment on the United States or the States.  If not for the false certifications, the contracts (that were premised upon these certifications) would never have been awarded, and/or would have been terminated, and the claims would never have been paid.  These certifications were also material representations upon which the United States and the States relied;

  c.     *Third*, Defendants conspired with one another to violate each of the foregoing provisions.  As explained in detail herein, during the Time Period Defendants held secret meetings, made phone calls, and exchanged email and other documents to accomplish their antitrust violations.

**ANSWER:**  Denies the allegations in paragraph 16 and each of its subsections.

17.     Defendants knowingly:

  a.     submitted, or caused to be submitted, false claims to the United States and the States, and improperly sought and obtained reimbursement that they were not entitled to;

      b.      made, or caused to be made, false statements in support of false claims; and,

      c.      conspired to submit false claims and statements in support of claims.

**ANSWER:** Denies the allegations in paragraph 17 and each of its subsections.

18.     Many of the allegations contained herein, particularly those regarding collusive meetings and communications between Defendants and their co-conspirators, are based upon the personal knowledge of the Plaintiff/Relator, William G. Burch. Additionally, these allegations are further corroborated by recorded conversations that took place between Mr. Burch and Defendants' representatives who participated in and furthered the conspiracy, and statements made under oath by other individuals with personal knowledge of the conspiracy.

**ANSWER:** Admits that many of the allegations in the Complaint purport to rely on William Burch, who unlawfully manufactured evidence against certain of the Defendants to make it appear that they engaged in price-fixing when they did not; denies the remaining allegations in paragraph 18.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction pursuant to 31 U.S.C. §1331 and 31 U.S.C. § 3732 which confer jurisdiction on this Court for actions brought under 31 U.S.C. §§ 3729 and 3730.

**ANSWER:** Avers that paragraph 19 asserts legal conclusions to which no responsive pleading is required. To the extent that a response is required, denies the allegations in paragraph 19.

20.     This Court has jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732(a) that authorizes nation-wide service of process.

**ANSWER:** Avers that paragraph 20 asserts a legal conclusion to which no responsive pleading is required. To the extent that a response is required, denies the allegations in paragraph 20.

21.     Venue is proper in this district pursuant to 31 U.S.C. § 3732(a) because the

Defendants can be found in, and/or they transact business in, the Northern District of Illinois.

**ANSWER:** Avers that paragraph 21 asserts a legal conclusion to which no responsive

pleading is required. To the extent that a response is required, denies the allegations in

paragraph 21.

## INTERSTATE COMMERCE

22.     The activities of Defendants and their co-conspirators as described herein were within the flow of, and substantially affected, interstate commerce.

**ANSWER:** Avers that paragraph 22 states a legal conclusion to which no responsive

pleading is required. To the extent a response is required, denies the allegations in paragraph 22

23.     During the Time Period, Defendants manufactured, sold, and/or distributed, substantial quantities of Filters in a continuous and uninterrupted flow of interstate commerce to customers located throughout the United States.

**ANSWER:** Denies the allegations in paragraph 23, except admits that Honeywell

manufactured and sold light duty air, oil, and fuel filters to customers located throughout the

United States during the period of March 1, 1999 to the present.

## THE PARTIES

24.     Plaintiff/Relator William G. Burch was a senior sales executive at Defendants Purolator Products, NA, LLC, Purolator Products Co. LLC, and Champion Laboratories, Inc. during most of the Time Period. Burch began working with Purolator in 1987. He was employed there as a National Account Manager until 1999. After ArvinMeritor acquired Purolator in 1999, Burch began working for Champion Laboratories, Inc. Burch's primary responsibility at both companies was to sell Filters in the automotive aftermarket. Burch currently resides in Tulsa, Oklahoma.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 24.

25.     Defendant Champion Laboratories, Inc. ("Champion") is a corporation headquartered in Albion, Illinois, with a business address at 200 S. Fourth St., Albion, Illinois 62806. Throughout the Time Period, Champion manufactured Filters and sold them to the United States and the States.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25.

26.     Defendants Purolator Products, NA, LLC and Purolator Products Co. LLC collectively ("Purolator") are limited liability companies with their principal places of business in Fayetteville, North Carolina, and a business address at 3200 Natal St., Fayetteville, North Carolina 28306-2845.     Throughout the Time Period, Purolator manufactured Filters and sold them to the United States and the States.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26.

27.     Defendant ArvinMeritor, Inc. ("ArvinMeritor") is a corporation headquartered in Troy, Michigan, with a business address at 2135 West Maple Road, Troy, Michigan 48084. From around March 1999 to April 2006, ArvinMeritor and/or its predecessor owned Purolator.   Throughout the Time Period, ArvinMeritor manufactured Filters and sold them to the United States and the States.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27.

28.     Defendant Honeywell International ("Honeywell") is a corporation headquartered in Morristown, New Jersey, with a business address at 100 Columbia Road, Morristown, New Jersey 07962.   Honeywell International Consumer Products Group is a division of Honeywell located in Danbury, Connecticut, and is responsible for the manufacture and sale of Filters, principally under the FRAM® brand.   Throughout the Time Period, Honeywell manufactured Filters and sold them to the United States and the States.

**ANSWER:** Denies the allegations in paragraph 28, except admits that (i) Honeywell is a corporation headquartered in Morristown, New Jersey, with a business address at 100 Columbia Road, Morristown, New Jersey 07962; and (ii) the Consumer Products Group is a division of Honeywell with offices in Danbury, Connecticut that is responsible for the manufacture and sale of light duty air, oil, and fuel filters, principally under the FRAM® brand, and has done so since March 1999.

29.     Defendant Wix Filtration Corp. LLC is a limited liability company headquartered in Gastonia, North Carolina, with a business address at One Wix Way, Gastonia, North Carolina.   From on or about December 1, 2004 Wix Filtration Corp. LLC manufactured

Filters and sold them to the United States and the States. Wix is now owned by Affinia Group.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29.

30. Defendant Affinia Group Inc. is a Delaware corporation located at 1101 Technology Drive, Ann Arbor, Michigan 48108. On or about December 1, 2004 Affinia Group Inc. (formerly AAG OPCO Corp.) purchased the stock, assets, and liabilities of Wix Filtration Products from Dana Corporation, as set forth in the stock and asset purchase agreement between AAG OPCO Corp. and Dana Corporation dated as of July 8, 2004 (the "Purchase Agreement"). A true and correct copy of the Purchase Agreement was filed on March 16, 2009 as Exhibit C to Direct Purchaser Plaintiffs' Opposition to Defendants' Motion to Dismiss for Failure to State a Claim (Document 234). The Purchase Agreement can also be found online at http://secinfo.com/dsvrn.z5Gy.7.htm#1stPage.

At all relevant times prior to December 1, 2004, Dana Corporation operated Wix Filtration Products through its Automotive Aftermarket Group. Wix Filtration Products manufactured and sold Filters in the United States.

*********

Pursuant to the terms of the Purchase Agreement, Affinia Group Inc. assumed and succeeded to the liabilities of Dana Corporation's Aftermarket Automotive Group. The Purchase Agreement specifically states in the recitals that liabilities are being purchased relating to the manufacture and distribution of automotive aftermarket components:

Whereas, Seller and its Subsidiaries are, among other things, engaged through Seller's Aftermarket Automotive Group in the manufacture and distribution of automotive aftermarket components in the North America, Europe, Asia, and South America, as described in Exhibit A (the "Business"); and

Whereas, upon the terms and subject to the conditions hereinafter set forth, the parties desire that Seller and its Subsidiaries sell, assign and transfer to Purchaser, and that Purchaser purchase and acquire from Seller and its Subsidiaries, all of the right, title and interest of the Seller and its Subsidiaries in and to the Purchased Shares and the Purchased Assets, and that Purchaser assumes the Assumed Liabilities.

(Purchase Agreement at p. 5.)

The broad definition of Assumed Liabilities in Section 1.4 states:

Simultaneously with the Closing, on the terms and subject to the conditions set forth herein, Purchaser shall assume and be liable for, and shall pay, perform and discharge when due, all obligations and Liabilities of Seller and its Subsidiaries (other than the Acquired Companies), whether occurring or accruing before, on or after the Closing Date, whether known or unknown,

fixed or contingent, asserted or unasserted, and not satisfied or extinguished as of the Closing Date, primarily relating to, primarily arising out of or primarily resulting from the Business (collectively, and excluding the Excluded Liabilities the "ASSUMED LIABILITIES"), including, by way of example and not limitation, all of the following obligations and liabilities of Seller and its Subsidiaries (other than the Acquired Companies):

********

all Liabilities arising from commitments (in the form of accepted purchase order or otherwise) to sell, distribute, manufacture or market products, or outstanding quotations, proposals or bids, primarily relating to, primarily arising out of or primarily resulting from the Business;

********

all Liabilities under Business Contracts;

********

(Purchase Agreement pp. 8-9.)

As set forth above, the liabilities of Dana Corporation transferred "simultaneous with the closing" and were not executor terms of the Purchase Agreement. Affinia Group Inc. is liable for the illegal practices alleged herein that occurred prior to December 1, 2004 as it assumed those liabilities by contract.

********

Affinia Group Inc. has represented that, since on or about December 1, 2004, Wix Filtration Products has been operating through the Affinia Global Filtration Operating Group and Wix Filtration Corp. LLC, a wholly-owned subsidiary of Affinia Group Inc. All references to "Wix" herein are to Affinia Group Inc., as the successor-in-interest to Dana Corporation, and Wix Filtration Corp. L.L.C.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 30.


31.     Defendant Cummins Filtration Inc. ("Cummins"), a wholly-owned subsidiary of Cummins, Inc., is headquartered in Nashville, Tennessee, with a business address at 2931 Elm Hill Pike, Nashville, Tennessee 37214. Throughout the Time Period, Cummins manufactured Filters and sold them to the United States and the States.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 31.

32.     Defendant Donaldson Company, Inc. ("Donaldson") is a corporation headquartered in Minneapolis, Minnesota, with a business address at 1400 West 94th St., Minneapolis, Minnesota 55431. Throughout the Time Period, Donaldson manufactured Filters and sold them to the United States and the States.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32.

33.     Defendant Baldwin Filters, Inc. ("Baldwin") is a corporation headquartered in Kearney, Nebraska, with a business address at 4400 E. Hwy. 30, Kearney, Nebraska 68848. Throughout the Time Period, Baldwin manufactured Filters and sold them to the United States and the States.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 33.

34.     Wherever in this First Amended Complaint ("Complaint") reference is made to any act, deed, or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's business affairs.

**ANSWER:** Avers that paragraph 34 does not require a responsive pleading. To the extent a responsive pleading is required, denies the allegations.

35.     The acts alleged in this Complaint, engaged in by Defendants, were performed by their officers, directors, agents, employees or representatives while engaged in the management, direction, control or transaction of the Defendants' business affairs.

**ANSWER:** Denies the allegations in paragraph 35.

## CO-CONSPIRATORS

36.     Various other persons, firms and corporations not named as Defendants herein have participated as co-conspirators in the violations of law alleged herein, and have aided, abetted and performed acts and made statements in furtherance thereof.

**ANSWER:** Denies the allegations in paragraph 36.

## INDUSTRY BACKGROUND

**Automotive Filter Products**

37.     Nearly every car and light truck sold in the United States, excluding vehicles that are solely electric, uses filters to keep engines, fuel, and other hydraulic systems free from particulate contamination.  Most vehicles contain three or more filters that must be replaced at regular intervals.  While filter technology and the range of filter products have changed over time, the primary filters categories remain the same: oil, air, and fuel.

**ANSWER:**  Denies the allegations in paragraph 37.

38.     Oil filters clean the oil circulating through an engine by picking up tiny contaminants, such as metal, carbon, rust and dirt particles that can be abrasive and hinder efficient operation of engine parts.  Oil filtration in engines is essential for enhancing a vehicle's longevity and performance.

**ANSWER:**  Denies the allegations in paragraph 38.

39.     Air filters trap air particles that mix with fuel and circulate into the engine.  The air filter's body is typically made of metal or heat-resistant plastic.  Most fuel-injected vehicles use a pleated paper filter element in the form of a flat panel, while older, carburetor vehicles use radial air filters made of similar materials.

**ANSWER:**  Denies the allegations in paragraph 39.

40.     Fuel filters screen out dirt and rust particles, improving a vehicle's performance by enabling the fuel to burn more efficiently.

**ANSWER:**  Denies the allegations in paragraph 40.

**The Distribution Channels for Filters**

41.     Defendants primarily sell Filters through two separate channels: (i) Original Equipment Manufacturers ("OEMs") and (ii) aftermarket sellers of replacement filters ("Aftermarket Sellers").

**ANSWER:**  Admits that Honeywell sells light duty air, oil, and fuel filters to original

equipment manufacturers and to customers who sell those filters in the aftermarket; otherwise,

denies the allegations in paragraph 41.

42.     OEMs purchase automotive filters for installation into new vehicles during the production process.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 42.

43.    Aftermarket Sellers purchase Filters directly from Defendants for wholesale or retail sale to the public, either (i) in connection with professional services rendered to an indirect ("Do it For Me") purchaser (for example, an oil filter sold to a customer as part of an oil change) or (ii) for individuals (known as "Do it Yourself" purchasers) who replace their own filters.

**ANSWER:**  Denies the allegations in paragraph 43, except admits that Honeywell has

sold light duty air, oil, and fuel filters to customers, some of whom sell such filters in the

aftermarket in connection with professional services and some of whom sell such filters to

individuals, but denies knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 43 concerning any other defendant.

44.    Aftermarket Sellers include, but are not limited to, traditional warehouse (wholesale) distributors, jobbers, automotive parts and mass merchandising retailers, and direct/private label purchasers.  Sales to traditional distributors and automotive parts retailers account for almost seventy percent of aftermarket automotive filter revenues.  Defendants sell and market Filters through common distribution channels.  And, Defendants control 90 percent of the entire market for Filters.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 44.

**The Filters Aftermarket**

45.    The Filters aftermarket in the United States is a mature market.  Oil and air filters in particular have shown low growth in unit shipments and revenues during the Time Period.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 45.

46.    Most vehicle maintenance guides recommend that in order to maintain the engine's efficient operation, Filters should be regularly replaced.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 46.

47.     Typically, oil filters and air filters require more frequent replacement and comprise the largest segment of the market, followed by fuel filters.  Oil filters account for over sixty percent of U.S. Filters revenues.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 47.

48.     Filters are fungible products.  Most manufacturers generally produce each type of Filter.  Brand loyalty for Filters is limited.  And, in addition to manufacturing their own brand filters, the largest filter manufacturers also make filters that are sold under well-known brand-names, such as Wal-Mart, Sears, AC Delco, and Mobil 1, just to name a few.  While the filter business includes numerous brands, only a handful of manufacturers who actually make the filters.

**ANSWER**:  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 48.

49.     Defendants purchase the same raw materials from the same group of suppliers, and use identical designs to manufacture functionally-equivalent Filters.  Specifically, each type of Filter (*i.e.*, oil, air and fuel) is interchangeable with the same type of Filter produced by any other manufacturer.

**ANSWER:** Denies the allegations in paragraph 49.

50.     At aftermarket industry gatherings and events, Filters are often referred to as "light sweet crude" because of their complete substitutability.  Not surprisingly, many consumers perceive Filters as a commodity-type product.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 50.

51.     Annual U.S. revenues for Filters were approximately $1.5 billion, and total U.S. revenues over the Time Period were approximately $13 billion.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 51.

**Consolidation and Concentration in the Automotive Filters Aftermarket**

52.     The Filters aftermarket is highly concentrated.  Four manufacturers – Honeywell, Purolator (owned by Bosch and MANN+HUMMEL in a 50/50 joint venture), Wix (owned by Affinia Group) and Champion – control over eighty percent of the Filters aftermarket.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 52.

53.     Purolator and Honeywell's FRAM® are the most well-known Filters brands. Wix, while not having as strong a brand name, manufactures, among other things, private label Filters for NAPA Auto Parts and Carquest Auto Parts.  Wix is also the number one filter supplier for NASCAR.  Champion also focuses on private label manufacturing. Champion manufactures such private label Filters as Mobil 1, Valvoline, STP, Mighty and Firestone.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 53, except admits that Honeywell manufacturers light duty air, oil, and fuel filters with the FRAM® brand name.

54.     The Filters aftermarket has become increasingly consolidated since the 1990s.  In 1999, for example, Honeywell merged with AlliedSignal; FRAM became part of Honeywell Consumer Products Group; and Mark IV sold Purolator to Arvin Industries.  In 2000, Arvin Industries merged with Meritor Automotive to become ArvinMeritor, Inc.  And, in 2006 ArvinMeritor sold Purolator to Bosch and Mann + Hummel.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 54, except admits that Honeywell merged with AlliedSignal in 1999, at which point the FRAM® brand name products became part of Honeywell Consumer Products Group, but denies that the Honeywell/AlliedSignal Merger caused concentration in the Filters aftermarket.

55.     While the Filters industry has experienced a wave of consolidation, there have been no significant new entrants into the market.

**ANSWER:**  Denies the allegations in paragraph 55.

56. The small number of companies controlling the Filters aftermarket is conducive to cartel behavior, allowing Defendants and their co-conspirators to coordinate the conduct, while making it hard for customers to avoid the effects of collusive behavior.

**ANSWER:** Denies the allegations in paragraph 56.

## DEFENDANTS' ANTITRUST CONSPIRACY

### Defendants' Unlawfully Conspire to Fix Prices

57. During the Time Period, Defendants and their co-conspirators conspired, contracted, or combined to fix, raise, maintain and/or stabilize prices and allocate customers, including the United States government and the States, for Filters in the United States.

**ANSWER:** Denies the allegations in paragraph 57 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 57 concerning any other defendant.

58. Defendants' conspiracy conduct occurred via in-person meetings, electronic and other communications, and included the exchange of competitively-sensitive information.

**ANSWER:** Denies the allegations in paragraph 58 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 58 concerning any other defendant.

59. Defendants met, discussed, and communicated to reach an agreement to implement, monitor, and further their unlawful, continuing price-fixing and customer allocation scheme.

**ANSWER:** Denies the allegations in paragraph 59 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 59 concerning any other defendant.

60. Throughout the Time Period, and in furtherance of their conspiracy, Defendants and their co-conspirators engaged in numerous unlawful anticompetitive activities, including, but not limited to:

a. Agreeing with each other to charge prices for Filters at specified levels, and

otherwise fix, increase, maintain and/or stabilize the prices of, and allocate customers for, Filters sold in the United States;

b.      Engaging in discussions and communications between the Filter manufacturers via meetings, conferences, conventions, in the United States and elsewhere, and by telephone, facsimile,  and electronic mail regarding the sale of Filters;

c.      Communicating with each other to discuss, *inter alia*, Filter pricing, customer allocation, Filter markets and price levels generally of Filters sold in the United States;

d.      Selling Filters in the United States and elsewhere at collusive and noncompetitive prices pursuant to the unlawful agreement reached;

e.      Accepting payment for Filters sold in the United States and elsewhere at collusive and non-competitive prices;

f.      Directing, authorizing or consenting to the participation of employees in the conspiracy; and

g.      Concealing the conspiracy and conspiratorial contacts through various means.

**ANSWER:**  Denies the allegations in paragraph 60 and each of its subsections as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 60 concerning any other defendant.

61.      Beginning at least as early as March 1999 and continuing through to the present, Defendants and their co-conspirators met on numerous occasions, had confidential discussions, and exchanged competitively-sensitive information, regarding pricing and customers for Filters in the United States.

**ANSWER:**  Denies the allegations in paragraph 61 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 61 concerning any other defendant.

62.      Defendants used their meetings, discussions, and exchanges of information successfully to agree to, and to further, their conspiracy to fix, raise, maintain and/or stabilize prices of, and allocate customers for, Filters sold in the United States.

**ANSWER:**  Denies the allegations in paragraph 62 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in paragraph 62 concerning any other defendant.

63.    On or about February 26, 1999, Arvin Industries acquired Purolator. Marlen Silverii, an Arvin Industries Senior Vice President (and formerly employed by Purolator) was instrumental in completing the acquisition.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 63.

64.    At the time that Arvin Industries acquired Purolator, Mr. Burch was a National Accounts Manager at Purolator.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 64.

65.    Shortly after that acquisition (in or around March 1999), Mr. Silverii met with certain Purolator senior employees, including Mr. Burch, to discuss Purolator's profit margins, which, in the view of Arvin Industries' executives, were too low.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 65.

66.    During the meeting, Mr. Silverii explained that, to increase Filters' profit margins, Arvin Industries' executives wanted to implement a Filters price-increase. But, to do so successfully and without losing market share or business, Mr. Silverii explained that Purolator would need all Defendants to agree to jointly raise their prices together.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 66.

67.    Mr. Silverii told the assembled Purolator senior personnel to contact their counterparts (the other Defendants) to obtain each Defendant's agreement to implement a coordinated, industry-wide Filters priced increase.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 67.

68.    A number of Purolator's senior personnel who attended the meeting complied with Mr. Silverii's directive. These individuals contacted and communicated with their counterparts regarding coordinated industry-wide price increase for Filters.

**ANSWER:** Denies that any Purolator employee contacted and communicated with Honeywell regarding a Filters coordinated price increase, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 68.

69.     As part of their collusive agreement to increase Filters prices, Defendants met and discussed plans, and otherwise communicated with each other, to coordinate the timing, amount, and purported false pretexts, that they would jointly agree to as the justification for planned, coordinated, and conspired price increases.

**ANSWER:** Denies the allegations in paragraph 69 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 69 concerning any other defendant.

70.     One series of meetings occurred at the Jiffy Lube Association of Franchisees Show ("JLAF Show") at the Gaylord Opryland Hotel in Nashville, Tennessee, in or around May 1999.  At the JLAF Show, Defendants discussed increasing Filters prices.

**ANSWER:** Denies the allegations in paragraph 70 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 70 concerning any other defendant.

71.     For example, at the JLAF Show, Mr. Silverii and at least one other senior Purolator employee met with a senior employee at Honeywell and discussed increasing Filters prices.

**ANSWER:** Denies the allegations in paragraph 71.

72.     A fellow Purolator employee told Mr. Burch that Purolator had spoken with Honeywell at the JLAF Show in Nashville and told them to raise prices.  That same Purolator employee also told Mr. Burch that "FRAM knows we're going up." (As noted above, Fram filters are manufactured by Honeywell.)

**ANSWER:** Denies that Honeywell spoke to Purolator at the JLAF Show about raising prices, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 72.

73.     Also in mid-1999, Mr. Silverii met with Tom Mallett, Champion's President.  Mr. Silverii and Mr. Mallett discussed fixing and coordinating Filters prices in the United States.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 73.

74.     On or about June 28, 1999, Mr. Silverii directed Larry Curtis (Vice President of Sales at Purolator) to fax Brad Hayes (Honeywell) a copy of a letter that Purolator intended to send to its customers.  The letter informed Purolator's customers of an impending price-increase on all Purolator Filters.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 74.

75.     Mr. Curtis falsely back-dated this price-increase letter to appear as if it had been written earlier.  (In fact, he wrote the letter approximately a week after the date he put on it.) And, Purolator actually sent this price-increase letter to its customers several weeks after coordinating the price-increase with Honeywell.

**ANSWER:**  Denies the allegations in paragraph 75 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 75 concerning any other defendant.

76.     The letter also provided a false pretext or excuse that the conspirators would give for their planned and conspired price-increase: the Defendants would claim that the increase in Filter prices was directly and solely attributed to price increases in cost for labor, health care, freight, and raw materials.  In truth, the price-increase was due to price fixing, and was the result of a conspiracy among various Defendants to raise the price for Filters.

**ANSWER:**  Denies the allegations in paragraph 76 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 76.

77.     On June 28, 1999, pursuant to Mr. Silverii's directive, Larry Curtis sent the draft price-increase letter by fax to his counterpart at Honeywell, Brad Hayes [sic].  The fax recipient at Honeywell, Brad Hayes [sic], was the person whom Mr. Silverii had already met with, secretly, at the JLAF Show.

**ANSWER:**  Denies the allegations in paragraph 77.

78.    Notably, as of June 28, 1999, Purolator had not yet sent the price-increase letter to any of its customers.  The customer letter would not go out for several weeks.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 78.

79.    Recorded telephone conversations (from June 1999) further evidence the Defendants' collusive price-fixing activity during this time period.

**ANSWER:**  Denies the allegations in paragraph 79.

80.    Purolator's actual customer price-increase letter (dated "July 7, 1999," but sent to its customers at a subsequent date) was virtually to identical to the draft letter Purolator had already shared with Honeywell a few weeks earlier.

**ANSWER:**  Denies the allegations in paragraph as they relate to Honeywell, and denies

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in paragraph 80.

81.    Significantly, both letters contained the *same exact* price percentage increase, and the same price-increase effective date.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 81.

82.    Shortly after Purolator sent its price-increase letter pursuant to the unlawful agreement, the other Defendants followed Purolator's lead and also implemented very similar Filters price increases.

**ANSWER:**  Denies the allegations in paragraph 82 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 82 concerning any other defendant.

83.    Following months of illicit, secret contacts and communications, regarding a price increase, each Defendant successfully implemented (in or around August 1999) the agreed-upon price-increase for Filters in the United States.

**ANSWER:**  Denies the allegations in paragraph 83 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 83 concerning any other defendant.

84.    Plaintiff/Relator Burch left Purolator to join Champion as a National Accounts Manager in August 1999.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 84.

85.    Champion's President John Evans met (in or around February 2004) with Champion's senior employees who were responsible for the Filters business (including Mr. Burch) to discuss Champion's intention to raise Filters prices.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 85.

86.    At that meeting, Mr. Evans told Champion's senior employees that Champion would "lead the way" with another Filters price increase.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 86.

87.    Mr. Evans advised those assembled that Champion needed to coordinate the price-increase with Defendants to ensure the continued success of the conspiracy.  For example, it was critical to Champion that its Filter price increase not detrimentally affect its market share.  For this reason, Mr. Evans directed Champion's senior employees to make frequent telephone calls to Defendants to discuss coordinated pricing and to conspire to reach an agreement about the coordinated price-increase.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 87.

88.    Mr. Evans, together with other Champion senior employees, contacted each Defendant, including Mr. Silverii at ArvinMeritor, to coordinate this planned Filters price increase.

**ANSWER:**   Denies the allegations in paragraph 88 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 88 concerning any other defendant.

89.     Because of these illicit communications, and based on their conspiring, the Defendants agreed to jointly increase Filters prices.

**ANSWER:** Denies the allegations in paragraph 89.

90.     In or around April 2004, each Defendant announced and successfully implemented their coordinated Filters price-increase.

**ANSWER:** Denies the allegations in paragraph 90 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 90 concerning any other defendant.

91.     Champion, in September 2004, then led Defendants' effort to implement a second 2004 coordinated Filters price-increase, in furtherance of their conspiracy.

**ANSWER:** Denies the allegations in paragraph 91 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 91 concerning any other defendant.

92.     This second time, Mr. Evans once again enlisted several senior Champion sales representatives to discuss the price-increase with Defendants and to garner their agreement to the amount of the increase.

**ANSWER:** Denies the allegations in paragraph 92 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 92 concerning any other defendant.

93.     Some of the conversations took place at the Filters Manufacturers Council meeting in Nashville, Tennessee between September 26 and September 28, 2004.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 93.

94.     At the Nashville meeting, Champion employees discussed with employees and agents of Purolator and Wix (among other Defendants) Champion's intention to raise Filters prices a second time in 2004.

**ANSWER:** Denies the allegations in paragraph 94 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 94 concerning any other defendant.

95.     In the words of one Champion employee, the "primary goal over the next day and a half [at the Convention] is to get everybody to get out there, and the message is gonna be that we're going up again, and when." This employee clarified: "That's basically our message to everybody."

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 95.

96.     Champion's agenda was so crystal clear that a Champion sales representative joked that he and Mr. Evans "talked about going to [the] Filter Council cocktail party wearing T-shirts saying 'we went up first last time.'"

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 96.

97.     By October 27, 2004, Champion had received confirmation from (Defendants) Honeywell, Cummins, Donaldson, and Purolator, that each Defendant would implement a Filters price-increase of at least 5%.

**ANSWER:** Admits that by October 27, 2004, Honeywell had announced publicly to its

customers that it would implement a price increase, and denies the remaining allegations in

paragraph 97 as they relate to Honeywell.

98.     Honeywell, Donaldson, and Cummins were so brazen that they sent to Champion their draft price-increase letters *in advance* of publicly-announcing their price hikes.

**ANSWER:** Denies the allegations in paragraph 98. In his December 2010 sworn

deposition, relator Burch admitted that he had no support whatsoever for this allegation as it

relates to Honeywell. Moreover, Burch unlawfully manufactured evidence to make it appear that

Honeywell had engaged in price-fixing in the Fall of 2004 when it did not.

99.     Purolator confirmed to Champion that it had agreed with the other conspirators to also increase its Filters prices in this coordinated action.

**ANSWER:** Denies the allegations in paragraph 99 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 99 concerning any other defendant.

100.    Subsequent to their unlawful coordination, in or around October or November 2004, the Defendants informed their respective customers of the previously agreed-upon Filters price-increase.

**ANSWER:** Denies the allegations in paragraph 100 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 100 concerning any other defendant.

101.    In an attempt to conceal their conspiracy and their collusively coordinated price-increase, the Defendants agreed to, and did, falsely blame the increase solely on rising steel costs.

**ANSWER:** Denies the allegations in paragraph 101 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 101 concerning any other defendant.

102.    At or around the same time, one of Champion's largest private-label customers questioned the need for another price-increase in 2004. This customer also questioned Champion's explanation that rising steel prices necessitated the price-increase. The customer requested that Champion provide it with an additional explanation justifying the price-increase.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 102.

103.    This customer request for an explanation created a serious dilemma for Champion. A few months earlier, Champion had introduced a new oil filter called eCore, twelve models of which fit 75% of the cars on the road. The eCore filter was made partly out of fabric *instead of steel*. Thus, Champion's oil filter input costs had in fact decreased by approximately 20% because of its diminished need for raw steel in the manufacture of eCore oil filters.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 103.

104.    Instead of providing its customer with its eCore input prices, Champion gave its customer a Purolator spreadsheet for *Purolator's outdated input costs*.   Champions spreadsheet, falsely represented Purolator's costs as its own.   The spreadsheet satisfied the complaining customer.   But more importantly, the spreadsheet conceded the true reason for Champion's price increase – the Defendants' unlawful price-fixing agreement, and not increasing steel prices that Champion would have to pay.

**ANSWER:**  Denies the allegations in paragraph 104 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 104 concerning any other defendant.

105.    By November or December 2004, each Defendant had successfully implemented the second 2004 coordinated Filters price-increase.

**ANSWER:**  Denies the allegations in paragraph 105 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 105 concerning any other defendant.

106.    In subsequent years, Defendants continued to adhere to their unlawful agreement and conspiracy as they continued to conspire to and increase Filters prices periodically.

**ANSWER:**  Denies the allegations in paragraph 106 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 106 concerning any other defendant.

107.    In addition to price-fixing, Defendants engaged in bid-rigging.

**ANSWER:**  Denies the allegations in paragraph 107 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 107 concerning any other defendant.

108.    In or about June of 2003, Shell asked Defendant Champion and other Defendants to bid for its business. (As noted within this complaint, Defendant Filter manufacturers made Filters for other brand-names besides their own.)

**ANSWER:**  Denies the allegations in paragraph 108, except admits that Honeywell bid on Shell business in 2003.

109.    At the time, Honeywell and Purolator shared Shell's Light Vehicle Aftermarket Filter business.  Plaintiff/Relator Burch and Mark McDaniel, Burch's supervisor, told Shell that Champion would bid for the business.  In truth, Champion had already secretly agreed with Purolator and Honeywell to bid high so that they could keep the business at an inflated price.

**ANSWER:**  Denies the allegations in paragraph 109.  In his December 2010 sworn

deposition, relator Burch admitted that he had no support whatsoever for this allegation as it

relates to Honeywell.

110.    Mr. McDaniel had instructed Burch to contact his counterpart at Purolator, Jim Burnham, to discuss the bidding for Shell's business and to tell Burnham that Champion would bid high -but Burch refused.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 110.

111.    Mr. McDaniel then told Burch that he would handle it since Burch was not being cooperative.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 111.

112.    Mr. McDaniel also complained in an email and verbally, telling Burch that he was going to write him up for mishandling the bid.  Burch responded in a formal letter and noted that he was not comfortable with McDaniel's request to rig the bid.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 112, except denies that Honeywell was involved in any effort to rig

the Shell bid.

113.    During the Time Period, pursuant to, and in furtherance of, their unlawful agreement, Defendants fixed, raised, maintained and/or stabilized prices and allocated customers for Filters in the United States.  In so doing, Defendants acted unlawfully to foreclose price competition and to maintain artificially high prices for the Filters they sold in the United States.

**ANSWER:**  Denies the allegations in paragraph 113.

114.    Similarly, Defendants' unlawful conduct during the Time Period in allocating customers amongst themselves was for the sole purpose of foreclosing price competition to

maintain artificially high prices for the Filters they sold in the United States.

**ANSWER:** Denies the allegations in paragraph 114.

115. As a result of Defendants' unlawful conspiracy, the United States and the States have been forced to pay super competitive and artificially inflated prices for Defendants' Filters.

**ANSWER:** Denies the allegations in paragraph 115.

116. Throughout the Time Period, Defendants affirmatively concealed the conspiracy from the United States and the States by, among other things, engaging in secret meetings and communications in furtherance of the conspiracy, and by falsely certifying to the United States and the States that they were not engaged in price-fixing activity.

**ANSWER:** Denies the allegations in paragraph 116.

117. Because of such fraudulent concealment and the inherently self-concealing nature of this conspiracy, the United States and the States could not have discovered, through reasonable due diligence, and did not discover, the existence of this conspiracy.

**ANSWER:** Denies the allegations in paragraph 117.

118. As a result of the active-and-ongoing concealment of the conspiracy by Defendants and their co-conspirators, all applicable statutes of limitation are tolled.

**ANSWER:** Denies the allegations in paragraph 118.

**Defendants' Conduct Violates the Sherman Act**

119. Defendants' conspiratorial conduct constitutes horizontal price-fixing that violates Section 1 of the Sherman Act, 15 U.S.C. § 1.

**ANSWER:** Denies the allegations in paragraph 119.

120. This conspiracy is illegal *per se*, and consists of a continuing, unlawful understanding and concert of action among Defendants to coordinate their Filters prices. As a direct and proximate result, both direct and indirect purchasers of have been injured in their business and property, in an amount not presently known, in that they paid more for Filters than they otherwise would have paid in the absence of Defendants' unlawful conduct. (As discussed below, the United States and the States also have been injured by of the Defendants' illegal price-fixing conspiracy).

**ANSWER:** Denies the allegations in paragraph 120.

121. In addition to this action, several groups of purchasers have filed private actions, in the form of class actions, in which these classes seek to recover their damages resulting

from Defendants' conduct. On November 26, 2008, for example, a group of direct purchasers filed their Consolidated Amended Complaint. Defendants moved to dismiss that complaint, and on November 5, 2009, the Court denied that motion.

**ANSWER:** Denies the allegations in paragraph 121, except admits the existence of a

Multi-District Litigation ("MDL") in this Court (Master Docket No.: 08-cv-4883), and refers to

the docket in that matter with respect to any motion practice.

## FALSE CLAIMS

122.    During the Time Period, the United States spent many millions of dollars on Filters. According to the OMB Watch, a public watch dog organization that monitors the Office of Management and Budget ("OMB"), between 2000 and 2009, the United States spent more than $40 million dollars on engine, air, and oil filters and cleaners for non-aircraft vehicles. In 2004 alone, OMB Watch estimated that the United States spent almost $6 million on engine air and oil filters, strainers, and cleaners, for non-aircraft use.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 122.

123.    Significant as they are, however, these numbers most likely underestimate – perhaps substantially – the amount the federal government paid for Filters. The reason for this is that the United States' contract coding system only captures the primary product sold as a result of the contract. Thus, there are likely to be many millions of dollars worth of additional Filters purchases that are not reflected in the foregoing numbers.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 123.

124.    Defendants manufactured well over 90 percent of the Filters on the market. In addition to Filters sold under Defendants' own brand-names, Defendants also provided Filters to private brands such as Napa, CarQuest, and Firestone, among others.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 124, except admits that Honeywell sold both brand name and private

label light duty air, oil, and fuel filters in the aftermarket during the Time Period.

125.    Regardless of brand name (or distributor), the majority of the Filters the United States and the States purchased during the time Period were undoubtedly manufactured by Defendants.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 125.

126.    Table 1 lists Filters by National Stock Number ("NSN") and Part Number.  It represents a portion of the Filters manufactured by Defendants (the most popular models) and sold to the United States during the Time Period.

**ANSWER:** Table 1 speaks for itself, otherwise Honeywell denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 126.

127.    Table 2 shows particular, representative claims the United States paid during the Time Period for the Filters listed in Table 1.

**ANSWER:** Table 2 speaks for itself, otherwise Honeywell denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 127.

128.    Attached as Exhibit A, are spreadsheets that show additional claims submitted to the United States by NSN and award date.

**ANSWER:** Exhibit A speaks for itself, otherwise Honeywell denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 128.

129.    Neither Table 2 nor Exhibit A is anywhere close to a complete list, because the United States paid thousands of claims for Filters from the Defendants during the Time Period.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 129.

**Table 1**
**Examples of Filters the U.S. Purchased**

| Manufacturer/Defendant | Part Number | NSN |
|---|---|---|
| Honeywell | PH47 | 2940000969529 |
| ArvinMeritor | PH47 | 2940000969529 |
| Honeywell | PH3387A | 2940011459456 |
| Wix | 51040 | 2940011459456 |
| ArvinMeritor | 51040 | 4330003360687 |
| Luber-finer/Champion | PH8A | 2940009860276 |
| Champion | PH8A | 2940009860276 |
| Honeywell | PH8A | 2940009860276 |
| ArvinMeritor | PER1A | 2940009860276 |

| Manufacturer/Defendant | Part Number | NSN |
|---|---|---|
| Wix | 51515 | 2940009860276 |
| Luber-finer/Champion | PH253 | 2940005864792 |
| Champion | PH253 | 2940005864792 |
| Luber-finer/Champion | PH16 | 2940005864792 |
| Champion | PH16 | 2940005864792 |
| Honeywell | PH16 | 2940005864792 |
| ArvinMeritor | PER17 | 2940005864792 |
| Wix | 51068 | 2940005864792 |
| Luber-finer/Champion | PH2835 | 2940011545127 |
| Champion | PH2835 | 2940011545127 |
| Wix | 51348 | 2940011545127 |
| Honeywell | PH3614 | 2940011545127 |
| ArvinMeritor | 335 | 2940011545127 |
| Honeywell | PH3600 | 2940011741347 |
| Wix | 51516 | 2940011741347 |
| Honeywell | PH2 | 2940013997371 |
| Wix | 51372 | 2940013997371 |
| Honeywell | PH3593A | 2940013362632 |
| Champion | PH51A | 2940011949730 |
| Honeywell | PH3980 | 2940011949730 |
| Wix | 51036 | 2940011949730 |
| Champion | PH1218 | 4330013988484 |
| Honeywell | PH5 | 4330013988484 |
| Wix | 51060 | 4330013988484 |
| Honeywell | PH3766 | 2940012311696 |
| ArvinMeritor | PER288 | 2940012311696 |
| Wix | 51742 | 2940012311696 |
| Honeywell | PH3786 | 2940014457560 |
| Wix | 51734 | 2940014457560 |
| Honeywell | PH3976 | 2940012808419 |
| Wix | 79396 | 2940012808419 |

**Table 2**
**Examples of Claims the U.S. Paid for Filters**

| NSN | Part No. | Unit Price | Award Date | Quantity |
|---|---|---|---|---|
| 2940013362632 | PH3593A | $5.04 | 4/9/2002 | 6 |
| 2940013362632 | PH3593A | $5.04 | 4/15/2002 | 24 |
| 2940013362632 | PH3593A | $5.04 | 4/22/2002 | 34 |
| 2940013362632 | PH3593A | $5.04 | 5/21/2002 | 15 |
| 2940013362632 | PH3593A | $5.04 | 9/25/2003 | 5 |
| 2940013362632 | PH3593A | $.504 | 1/6/2005 | 3 |
| 2940013362632 | PH3593A | $5.45 | 7/26/2006 | 11 |

| NSN | Part No. | Unit Price | Award Date | Quantity |
|---|---|---|---|---|
| 2940000969529 | PH47 | $8.00 | 5/25/2006 | 1 |
| 2940000969529 | PH47 | $8.00 | 5/26/2006 | 1 |
| 2940000969529 | PH47 | $8.00 | 5/27/2006 | 3 |
| 2940005864792 | PH253 PH16 PER17 51068 | $2.36 | 3/28/2006 | 95 |
| 2940005864792 | PH253 PH16 PER17 51068 | $2.36 | 5/3/2006 | 6,094 |
| 2940005864792 | PH253 PH16 PER17 51068 | $2.36 | 5/3/2006 | 1730 |
| 2940011741347 | PH3600 51516 | $1.89 | 3/3/2006 | 177 |
| 2940013997371 | PH2 51372 | $2.12 | 5/5/2006 | 918 |
| 2940013997371 | PH2 51372 | $2.12 | 5/5/2006 | 948 |
| 2940012311696 | PH3766 PER288 | $4.65 | 4/24/2006 | 121 |
| 2940012311696 | PH3766 PER288 | $4.65 | 4/24/2006 | 470 |
| 2940012808419 | PH3976 51607 | $5.20 | 3/15/2006 | 29 |
| 2940012808419 | PH3976 51607 | $5.20 | 7/18/2006 | 13 |
| 2940012808419 | PH3976 51607 | $5.20 | 6/29/2006 | 984 |
| 4330003360687 | 51040 | $4.35 | 1/28/1999 | 4 |
| 4330003360687 | 51040 | $3.84 | 3/17/1999 | 20 |
| 4330003360687 | 51040 | $4.70 | 5/12/2000 | 4 |
| 4330003360687 | 51040 | $6.18 | 10/6/2000 | 8 |
| 2940009860276 | PH8A PER1A 51515 | $2.22 | 4/14/2004 | 40 |
| 2940009860276 | PH8A PER1A 51515 | $2.22 | 2/4/2005 | 56 |
| 2940009860276 | PH8A PER1A 51515 | $2.22 | 2/7/2005 | 58 |

| NSN | Part No. | Unit Price | Award Date | Quantity |
|---|---|---|---|---|
| 2940005864792 | PH16<br>PH253<br>51068<br>PER17 | $2.17 | 2/9/2005 | 97 |
| 2940011545127 | PH2835<br>PH3614<br>51348<br>335 | $2.31 | 3/23/2005 | 32 |
| 2940011545127 | PH2835<br>PH3614<br>51348<br>335 | $2.31 | 3/23/2005 | 72 |
| 2940013997371 | PH2<br>51372 | $2.50 | 5/9/2002 | 179 |

130.    The United States and the States purchased Filters from Defendants both directly through contracts with individual Defendants, and through distributors.

**ANSWER:**  Denies the allegations in paragraph 130, except admits that Honeywell sold light duty aftermarket air, oil, and fuel filters to military-based exchange service entities and various distributors during the alleged Time Period.

131.    With regard to the latter, in some instances, the United States or the States contracted with a Filters' distributor to purchase a large quantity of Filters.  Those distributors would then purchase Filters from the Defendants and provide them to the United States or the States.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 131, except admits that Honeywell sold light duty aftermarket air, oil, and fuel filters to various distributors during the alleged Time Period.

132.    Whether the United States or the States purchased Filters via a direct contract with an individual Defendant or through a distributor, the result was the same: The United States and the States paid money to purchase Defendants' Filters at inflated prices, and would not have purchased the Filters at all, at any price, had the Defendants disclosed their price fixing.

**ANSWER:**  Denies the allegations in paragraph 132 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 132 concerning any other defendant.

133.    Thus, during the Time Period, every time the United States or the States paid for Defendants' Filters, there was a false and fraudulent claim – sometimes for more than one reason.  This was true whether the Defendants themselves submitted the contract or claim, or whether it was submitted by a distributor or subsidiary that merely supplied Defendants' Filters.

**ANSWER:**  Denies the allegations in paragraph 133 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 133 concerning any other defendant.

**Defendants Submitted False Claims and Caused Others to Submit False Claims**

134.    Each time Defendants directly made a claim for payment under a contract for Filters, they submitted or caused to be submitted a false claim.  Defendants conspired to fix and artificially inflate the prices of Filters during the Time Period.

**ANSWER:**  Denies the allegations in paragraph 134 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 134 concerning any other defendant.

135.    When Defendants made a direct claim on the United States or the States for payment under a Filters contract, that claim was false.  The United States and the States relied on the accuracy of Defendants' prices, and obviously price is always a material term of any contract.  The prices that the United States and States paid for the Filters were inflated were artificially inflated as a result of the Defendants' price-fixing conspiracy.

**ANSWER:**  Denies the allegations in paragraph 135 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 135 concerning any other defendant.

136.    Moreover, if the United States and States had known the truth – that Defendants conspired to fix prices and bid – they never would have purchased the Filters.

**ANSWER:**  Denies the allegations in paragraph 136 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 136 concerning any other defendant.

137.    Similarly, when the United States or the States purchased Filters from a subsidiary or distributor for one of the Defendants, the Defendants themselves also submitted

and/or caused false claims to be submitted.

**ANSWER:** Denies the allegations in paragraph 137 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 137 concerning any other defendant.

138.    For example, during the Time Period, U.S. Motor Works contracted to provide the United States with spare vehicle parts that included, among other things, Filters. U.S. Motor Works distributed many brand name parts, including Wix and Cummins.  Because Defendants controlled substantially more than 90 percent of the Filters market during the Time Period, in virtually all instances the Defendants actually manufactured and provided the requisite Filters, and they profited from the sale of the Filters at inflated prices - regardless of whether the claim was submitted directly by the Defendant, or through an intermediary like a distributor (and caused to be distributed by or more or the Defendants).

**ANSWER:** Denies the allegations in paragraph 138 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 138 concerning any other defendant.

139.    As another example, on or about September 28, 2007, the United States sold $359,681.38 worth of Filters to the United States pursuant to Contract No. SPM7MX-07-D9005) with Facet USA, Inc. ("Facet USA"), which allowed for the purchase of as much as $24 million worth of Filters over time.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 139.

140.    Like other government contracts, this one identified the required part by NSN. The NSN identifies the part generically and does not refer to a particular brand.  Thus, where multiple companies make the same part under different brand names, the United States might accept any number of the brand names as long as it is the correct part.  Here, the contract identifies a number of Filters by NSN.  Under each NSN, the contract provides an acceptable list of sources/manufacturers and identifies them by a Commercial and Governmental Entity Code ("Cage Code"), the code assigned to companies that register with United States to compete for government business.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 140.

141. The contract lists the following Defendants and their Cage Codes as acceptable sources for the Filters: Cummins, Wix, Baldwin, Luber-Finer (i.e., Champion), and ArvinMeritor. The contract also lists Quaker State Oil Refining Corp. as an acceptable source, and during the Time Period, Honeywell and ArvinMeritor manufactured and provided Filters to Quaker State. Thus, under the contract, Facet USA was allowed to, and did, provide the United States with Filters from each of these Defendants at various times. Because Filters are largely a fungible product, it matters little to the United States which Filters it receives so long as they come from one of the approved companies. And, that list of approved companies was comprised virtually exclusively of the Defendants and filter brands they manufactured.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 141, except admits Honeywell sold light duty aftermarket air, oil, and fuel filters to Quaker State during the alleged Time Period.

142. Each time Facet USA provided Filters to the United States under the contract it would have had to be providing the Defendants' products. Because the price of Defendants' Filters was inflated, any negotiations between Facet and the United States were predicated on an inflated market price. Thus, the Defendants ultimately caused Facet USA to submit inflated, false, and fraudulent claims to the United States. (Moreover, these Filters would not have been acceptable at all to the United States irrespective of the inflated price had the United States known of the price fixing conspiracy by the Defendants).

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 142, denies the remaining allegations in paragraph 142 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 142 concerning any other defendant.

### Defendants Made False Certifications and Representations in Support of Claims

143. Defendants also submitted false certifications and representations in support of false and fraudulent claims. To compete for and receive contracts to supply the government with Filters, and to maintain and sustain those contracts after they were obtained, Defendants represented in contracts and certifications (as required by governmental regulations) that their prices were not the result of collusive activity, including any price-fixing conspiracy.

**ANSWER:** Denies the allegations in paragraph 143 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 143 concerning any other defendant.

144.    Contracts with the United States are governed by a comprehensive set of statutes and regulations.  One of the primary goals of these laws is to ensure robust competition, which results in the United States (and all of its agencies or departments) receiving fair prices for goods.  The United States Code mandates that agency heads "obtain full and open competition through the use of competitive procedures in accordance with the requirements of the . . . Federal Acquisition Regulation."  *See* 10 U.S.C. § 2304; 41 U.S.C. § 253 (same); 48 C.F.R. § 6.101 (requiring government officials to use policies that "promote and provide for full and open competition . . .").

**ANSWER:** Refers to the United States Code and Code of Federal Regulations for their

terms, which speak for themselves, and denies knowledge or information sufficient to form a

belief as to the truth of the remaining allegations in paragraph 144.

145.    The Federal Acquisition Regulations or "FAR" require all "prospective contractors" to complete a number of steps before they can be awarded a government contract or provide their products to the government.

**ANSWER:** Refers to the Federal Acquisition Regulations for its terms, which speak for

themselves, and denies knowledge or information sufficient to form a belief as to the truth of the

remaining allegations in paragraph 145.

146.    During the Time Period, all Defendants had registered through CCR and received a Cage Code.  Defendants operated under a variety of Cage Codes during the Time Period.  And, when a given Defendant's name or corporate affiliation changed, its Cage Code may have also changed.  The following chart lists examples of Cage Codes for Defendants during the Time Period:

| Defendant | Current Cage Code |
|---|---|
| Champion | 50284 |
| Purolator | 57108 |
| ArvinMeritor | 3QYY9 |
| Honeywell | 73370 |
| Wix | 79396 |
| Affinia | 54M54 |
| Cummins | 4NUM0 |
| Baldwin | 12658 |

| Donaldson | 18265 |
|-----------|-------|

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 146, except admits that Honeywell's current cage code is 77370.

147. In addition, all prospective vendors must make certain representations and certifications when they contract with the government and periodically thereafter. For instance, the Code of Federal Regulations requires "prospective contractors to update their representations and certifications annually to ensure they are kept current, accurate and complete. *See* C.F.R. § 4.1201(b)(1) (At the beginning of the Time Period, vendors were required to submit these representations and certifications prior to receipt of any individual larger purchase contract award. Since about January 1, 2005, vendors have been allowed to complete their representations and certifications online using the Online Representations and Certifications Application ("ORCA")).

**ANSWER:** Refers to the Code of Federal Regulations for its terms, which speak for themselves, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 147.

148. The representations and certifications remain valid for a year, and any time during that year the relevant vendor may compete for government business. After implementation of ORCA, each time a vendor signs a solicitation it certifies that its representations and certifications are current, accurate, and complete.

**ANSWER:** Refers to the Code of Federal Regulations for its terms, which speak for themselves, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 148.

149. ORCA contains an explicit representation and certification of an "Independent Price Determination." The certification states, among other things, that:

- the prices contained in a bid or proposal "*have been arrived at independently, without, for the purpose of restricting competition, any consultation, communication, or agreement with any other offeror or competitor relating to (i) those prices, (ii) the intention to submit an offer, or (iii) the methods or factors used to calculate the prices offered*"; and

- the vendors have not done anything to "*induce any other concern to submit or not submit and offer for the purpose of restricting competition.*"

**ANSWER:** Refers to ORCA, which speaks for itself, and denies knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in paragraph

149.

150. During the Time Period, each time a Defendant signed such certification it falsely certified that it was not price-fixing. Likewise, because the same certification language also is in all government solicitations, any time any Defendant applied for a contract and signed a solicitation or submitted a proposal in response to a solicitation it also falsely certified that it engaged in anti-competitive activities, including pricing-fixing.

**ANSWER:** Denies the allegations in paragraph 150 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 150 concerning any other defendant.

151. Even those Defendants, who solely sold their Filters to the United States through a distributor or subsidiary, were required to be register through CCR and complete the ORCA certifications. There is a reason for this: If any Defendant did not register through CCR and complete the ORCA certifications, they could not sell their products to the United States, even through a distributor.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 151.

152. Notably, solicitations all also contain an explicit warning that "[b]idders must provide full, accurate, and complete information as required by this solicitation . . ." and that there is a criminal penalty for making false statements in a bid. (The States have similar statutory provisions.)

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 152.

153. To the extent that Defendants did not explicitly make such certifications with regard to any given contract or claim, they were nonetheless implicitly certifying to both the United States and the States that they were not engaged in price-fixing.

**ANSWER:** Avers that paragraph 153 asserts legal conclusions to which no responsive

pleading is required. To the extent that a response is required, denies knowledge or information

sufficient to form a belief as to the truth of the allegations in paragraph 153.

154. Neither the United States nor the States would knowingly purchase products from Defendants at inflated prices resulting from violation of the federal and state antitrust laws.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 154.

155. Defendants were engaged in a conspiracy to fix the prices of Filters in violation of the federal antitrust laws. As a result, contrary to their ORCA certifications, their prices were not "independent," or the product of full and fair competition.

**ANSWER:** Denies the allegations in paragraph 155.

156. Thus, each time any Defendant was awarded a contract to supply the United States or the States with Filters, that Defendant had misrepresented that its prices were the product of competition not collusion.

**ANSWER:** Denies the allegations in paragraph 156 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 156 concerning any other defendant.

157. Similarly, if Defendants products appeared as acceptable products under a government contract awarded to a distributor or subsidiary of the Defendants (e.g. Contract No. No. SPM7MX-07-D-9005, referenced herein), then that Defendant had made a false certification and representation that caused the United States to pay a false claim.

**ANSWER:** Denies the allegations in paragraph 157 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 157 concerning any other defendant.

158. Such terms were material terms of every contract between the United States and the States, and the United States and the States would not have entered the contracts for Filters had they known of the Defendants antitrust conspiracy.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 158, except denies that Honeywell was involved in an antitrust conspiracy.

159. Defendants' false certifications were false statements that caused the United States and the States to pay fraudulent claims.

**ANSWER:** Denies the allegations in paragraph 159.

**Evidence of Defendants' False Claims**

160. A complete list of contracts between Defendants and the United States, and Defendants' claims for payment to the United States and the States, is uniquely within the possession of Defendants. Although Defendants manufactured more than 90 percent of the Filters during the Time Period, in many instances, the United States and the States purchased the Filters from a variety of distributors, and Defendants manufactured and distributed Filters under a variety of private brand names. The distribution chain is complex.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 160, except admits that Honeywell manufactured light duty air, oil,

and fuel filters during the Time Period.

161. The following non-exclusive list of contracts and claims provides strong evidence that all Defendants: a) sold filters to the United States and the States; b.) made or caused others to make false claims to the United States and the States; and c.) made false representations or certifications in support of claims for payment to the United States and the States.

**ANSWER:** Denies the allegations in paragraph 161.

**Evidence of Defendant Donaldson's False Claims**

162. During the Time Period, Donaldson sold Filters to the United States and the States both directly and through subsidiaries and distributors. Donaldson's primary contact for government related business is Robyn Barlarge.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 162.

163. Donaldson was registered with the United States through the CCR systems during the Time Period, had a Cage Code, and regularly certified to the United States that its prices were independent.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 163.

164. Donaldson also regularly made similar certifications to the States, either explicitly or implicitly.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 164.

165. Donaldson made false claims for payment, caused others to make false claims for payment, and conspired to violate the FCA and parallel laws of the States. The States and the United States paid for Donaldson Filters in reliance on Donaldson's false certifications and false claims.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 165.

166. The following is a non-exclusive list of examples of contracts the United States entered with Donaldson during the Time Period:

| Defendant/Company | Product | Total Value | Date | Agency |
|---|---|---|---|---|
| Western Filter Corporation, a division of Donaldson | Engine, air, and oil filters, non-aircraft | $66,060.00 | Aug. 19, 2010 | Defense Logistics Agency |
| Western Filter Corporation, a division of Donaldson | Engine, air, and oil filters, non-aircraft | $35,266.00 | June 12, 2010 | Defense Logistics Agency |
| Western Filter Corporation, a division of Donaldson | Engine, air, and oil filters, non-aircraft | $26,145.00 | May 26, 2010 | Defense Logistics Agency |
| Western Filter Corporation, a division of Donaldson | Engine, air, and oil filters, non-aircraft | $47,854.00 | May 10, 2010 | Defense Logistics Agency |
| Western Filter Corporation, a division of Donaldson | Engine, air, and oil filters, non-aircraft | $24,640.00 | Mar. 24, 2010 | Defense Logistics Agency |
| Western Filter Corporation, a division of Donaldson | Engine, air, and oil filters, non-aircraft | $31,524.00 | Mar. 12, 2010 | Defense Logistics Agency |
| Western Filter Corporation, a division of Donaldson | Engine, air, and oil filters, non-aircraft | $20,174.00 | Feb. 5, 2010 | Defense Logistics Agency |
| Donaldson | Engine, air, and oil filters, non-aircraft | $9,848.00 | Dec. 29, 2009 | Defense Logistics Agency |
| Western Filter Corporation, a division of Donaldson | Engine, air, and oil filters, non-aircraft | $28,968.00 | Nov. 30, 2009 | Defense Logistics Agency |

| Defendant/Company | Product | Total Value | Date | Agency |
|---|---|---|---|---|
| Western Filter Corporation, a division of Donaldson | Engine, air, and oil filters, non-aircraft | $28,730 | Nov. 25, 2009 | Defense Logistics Agency |
| Western Filter Corporation, a division of Donaldson | Engine, air, and oil filters, non-aircraft | $8,004.00 | Oct. 26, 2009 | Defense Logistics Agency |
| Donaldson | Engine, air, and oil filters, non-aircraft | $32,279.00 | Oct. 5, 2009 | Defense Logistics Agency |
| Western Filter Corporation, a division of Donaldson | Engine, air, and oil filters, non-aircraft | $34,506.00 | Sept. 11, 2009 | Defense Logistics Agency |
| Western Filter Corporation, a division of Donaldson | Engine, air, and oil filters, non-aircraft | $24,282.00 | June 19, 2009 | Defense Logistics Agency |
| Western Filter Corporation, a division of Donaldson | Engine, air, and oil filters, non-aircraft | $4,860.00 | Aug. 24, 2009 | Defense Logistics Agency |
| Western Filter Corporation, a division of Donaldson | Engine, air, and oil filters, non-aircraft | $8,280.00 | Mar. 26, 2009 | Defense Logistics Agency |
| Donaldson | Engine, air, and oil filters, non-aircraft | $8,352.00 | Feb. 26, 2009 | Dept. of the Army |
| Donaldson | Engine, air, and oil filters, non-aircraft | $7,344 | June 17, 2008 | Dept. of the Army |
| Donaldson | Engine, air, and oil filters, non-aircraft | $460,044.00 | January 2, 2008 | Defense Logistics Agency |
| Donaldson | Engine, air, and oil filters, non-aircraft | $18,860.00 | Oct. 30, 2007 | Defense Logistics Agency |
| Donaldson | Engine, air, and oil filters, non-aircraft | $22,115.00 | Sept. 24, 2007 | Defense Logistics Agency |
| Donaldson | Engine, air, and oil filters, non-aircraft | $23,454.00 | Sept. 7, 2007 | Defense Logistics Agency |
| Donaldson | Engine, air, and oil filters, non-aircraft | $410,004.00 | July 10, 2007 | Dept. of the Army |

| Defendant/Company | Product | Total Value | Date | Agency |
|---|---|---|---|---|
| Donaldson | Engine, air, and oil filters, non-aircraft | $3,626.00 | June 22, 2007 | Defense Logistics Agency |
| Donaldson | Engine, air, and oil filters, non-aircraft | $71,598.00 | June 6, 2007 | Defense Logistics Agency |
| Donaldson | Engine, air, and oil filters, non-aircraft | $28,875.00 | May 21, 2007 | Defense Logistics Agency |
| Donaldson | Engine, air, and oil filters, non-aircraft | $83.00 | May 16, 2007 | Dept. of the Army |
| Donaldson | Engine, air, and oil filters, non-aircraft | $120,125.00 | March 28, 2007 | Dept. of the Army |
| Donaldson | Engine, air, and oil filters, non-aircraft | $11,336 | March 27, 2007 | Dept. of the Navy |
| Donaldson | Engine, air, and oil filters, non-aircraft | $3,136.00 | March 23, 2007 | Dept. of the Army |
| Donaldson | Engine, air, and oil filters, non-aircraft | $71,598.00 | June 6, 2007 | Defense Logistics Agency |
| Western Filter Corporation, a division of Donaldson | Engine, air, and oil filters, non-aircraft | $56,160.00 | Nov. 18, 2005 | Defense Logistics Agency |

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 166.

167. Many of Donaldson's contracts were multi-year installment agreements under which the United States made continuous and periodic orders for Filters. For example, contract SP0740-03-D-7680 was a multi-year contract between the United States and Donaldson.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 167.

168. The United States made at least the following orders under contract SP0740-03-D-7680 and each time it made such an order Donaldson submitted a false and fraudulent claim for payment:

| Date | Order | Total Price Paid |
|------|-------|------------------|
| June 25, 2007 | 291 Filters (x $8.01 per unit) | $2,330.91 |
| December 17, 2007 | 456 Filters (x $15.21 per unit) | $6,935.76 |
| May 12, 2008 | 500 Filters (x $8.36 per unit) | $4,180.00 |

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 168.

169.    Each time the United States awarded Donaldson a contract, Donaldson delivered the Filters and received payment, i.e., made a claim to a governmental entity.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 169.

170.    Donaldson made many claims for payment to the United States and the States in addition to those claims listed above, and Donaldson conspired with the other Defendants to violate the FCA.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 170.

171.    Each time Donaldson made a claim for payment under any Filters contract, it violated the FCA because: a) it was engaged in a long-running price-fixing conspiracy, contrary to its representations and certifications, and b.) the prices of its Filters were falsely inflated.  Similarly, each time a subsidiary of or a distributor for Donaldson submitted claims for payment to the United States or the States, Donaldson violated the FCA because: a) it was engaged in a long-running price-fixing conspiracy, contrary to its representations and certifications, and b.) the prices of its Filters were falsely inflated.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 171.

172.    If the United States or the States had been aware of this it would not have paid Donaldson's false claims or paid the claims of subsidiaries of and distributors for Donaldson.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 172.

**Evidence of Defendant Honeywell's False Claims**

173.    During the Time Period, Honeywell sold Filters to the United States and the States both directly and through subsidiaries and distributors.

**ANSWER:** Denies the allegations in paragraph 173, except admits that Honeywell sold light duty aftermarket air, oil, and fuel filters to military-based exchange service entities and various distributors during the alleged Time Period.

174. Honeywell's primary contact for government related business is Nancy Luna. Honeywell was registered with the United States through the CCR systems during the Time Period, had a Cage Code, and regularly certified to the United States that its prices were independent. Honeywell also regularly made similar certifications to the States, either explicitly or implicitly.

**ANSWER:** Denies that Nancy Luna was the primary contact for any government-related business, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 174, except admits that Honeywell was registered through the CCR system and had a cage code during the alleged Time Period.

175. Honeywell made false claims for payment, caused others to make false claims for payment, and conspired to violate the FCA and parallel laws of the States. The States and the United States paid for Honeywell Filters in reliance on Honeywell's false certifications and false claims.

**ANSWER:** Denies the allegations in paragraph 175.

176. The following is an example of such claims: On or about March 19, 2004, Honeywell had a contract to supply the United States, through the Army & Air Force Exchange Services with FRAM Filters. (*See* Exhibit B.)

**ANSWER:** Denies the allegations in paragraph 176, except admits that Honeywell sold FRAM® filters to the Army & Air Force Exchange Services.

177. At the time, Honeywell was renegotiating its prices with the United States. Honeywell represented to the United States that it needed to increase the price of its Filters because of a shortage of raw materials and an increase in the cost of steel. This representation was false. The United States implemented this price-increase at Honeywell's request.

**ANSWER:** Denies the allegations in paragraph 177, except admits that Honeywell sought to raise its filter prices in the Spring of 2004. In his December 2010 sworn deposition, relator Burch admitted that he had no personal knowledge whatsoever to support this allegation.

178.   As noted, in or about April 2004 and again in September 2004, Defendants, including Honeywell, Champion, Cummins, Donaldson, and Purolator all collusively decided to raise their prices and "blame" the price-increase on the rising cost of steel.

**ANSWER:** Denies the allegations in paragraph 178.  In his December 2010 sworn deposition, relator Burch admitted that he had no personal information whatsoever to support this allegation as it relates to Honeywell.

179.   Prior to and after this negotiation, Honeywell continuously and repeatedly made claims on the United States for payment under this Filters contract. (See Exhibit B.) For example, Honeywell made the following claims for payment:

| Date | Quantity of Filters | Price Per Filter |
|---|---|---|
| April 15, 2002 | 24 | $5.04 |
| April 22, 2002 | 34 | $5.04 |
| July 26, 2006 | 11 | $5.45 |
| June 29, 2006 | 1750 | $4.54 |

**ANSWER:** Admits that Honeywell sold light duty aftermarket air, oil, and fuel filters to military-based exchange service entities and various distributors during the alleged Time Period, otherwise denies the allegations in paragraph 179.

180.   Additional Honeywell claims for payment under this contract are listed on Exhibit B.

**ANSWER:** Admits that Honeywell sold light duty aftermarket air, oil, and fuel filters to military-based exchange service entities and various distributors during the alleged Time Period, otherwise denies the allegations in paragraph 180.

181.   Moreover, Tables 1 and 2 above, also show that the United States purchased Honeywell Filters during the Time Period.

**ANSWER:** Admits that Honeywell sold light duty aftermarket air, oil, and fuel filters to military-based exchange service entities and various distributors during the alleged Time Period, otherwise denies the allegations in paragraph 181.

182.   Each time the United States awarded Honeywell a contract, Honeywell delivered the Filters and received payment, i.e., made a claim to a governmental entity.  Honeywell made many claims for payment to the United States and the States in addition to those claims listed above, and Honeywell conspired with the other Defendants to violate the FCA.

**ANSWER:** Denies the allegations in paragraph 182, except admits that Honeywell sold light duty aftermarket air, oil, and fuel filters to military-based exchange service entities and distributors during the alleged Time Period.

183.    Each time Honeywell made a claim for payment under any Filters contract, it violated the FCA because: a.) it was engaged in a long-running price-fixing conspiracy, contrary to its representations and certifications, and b.) the prices of its Filters were falsely inflated.

**ANSWER:** Denies the allegations in paragraph 183.

184.    Similarly, each time a subsidiary of or a distributor for Honeywell submitted claims for payment to the United States or the States, Honeywell violated the FCA because: a.) it was engaged in a long-running price-fixing conspiracy, contrary to its representations and certifications, and b.) the prices of its Filters were falsely inflated.  If the United States or the States had been aware of this it would not have paid Honeywell's false claims or paid the claims of subsidiaries of and distributors for Honeywell.

**ANSWER:** Denies the allegations in paragraph 184.

185.    In addition to the false claims submitted to the United States, Honeywell also submitted, and caused to be submitted, false claims to the States.  For example, Honeywell sold more than $1 million in Fram filters to the State of Illinois between 2004 and 2010.

**ANSWER:** Denies the allegations in paragraph 185.

186.    Attached as Exhibit C is a list of Fram filters that Illinois purchased for one six month time frame during this period.  Illinois has provided Mr. Burch with eleven additional similar lists of Illinois purchases of Fram filters during this time frame.  Each of these twelve lists consists of approximately $100,000 worth of Fram filter purchases over a six month period.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 186.

**Evidence of Defendant Champion's False claims**

187.    Champion has a sales department devoted solely to processing claims to the United States and the States.  Sheryl McBride is the current Government Contract Specialist who handles Champion's Filter sales to the United States and the States.  Ms. McBride has worked for Champion during most of the Time Period.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 187.

188.    Champion was registered with the United States through the CCR systems during the Time Period, had a Cage Code, and regularly certified to the United States that its prices were independent.  Champion also regularly made similar certifications to the States, either explicitly or implicitly.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 188.

189.    During the Time Period, part of which time the Relator worked for Champion, Champion sold Filters to the United States and the States both directly and through subsidiaries and distributors.  Champion made false claims for payment, caused others to make false claims for payment, and conspired to violate the FCA and parallel laws of the States.   The States and the United States paid for Champion Filters in reliance on Champion's false certifications and false claims.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 189.

190.    As noted under Contract No. SPM7MX-07-D-9005, Facet USA agreed to provide the United States with Filters.  Most if not all of the Filters that Facet provided to the United States were manufactured by Defendants Cummins, Wix, Baldwin, Champion, and ArvinMeritor.  Thus, United States purchased Champion Filters during the Time Period.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 190.

191.    Moreover, Tables 1 and 2 above, also show that the United States purchased Champion Filters during the Time Period.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 191.

192.    Each time the United States awarded Champion a contract, Champion delivered the Filters and received payment, i.e., made a claim to a governmental entity.  Champion made many claims for payment to the United States and the States in addition to those claims listed above, and Champion conspired with the other Defendants to violate the FCA.

**ANSWER:** Denies the allegations in paragraph 192 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in paragraph 192 concerning any other defendant.

193. Each time Champion made a claim for payment under any Filters contract, it
violated the FCA because: a.) it was engaged in a long-running price-fixing conspiracy,
contrary to its representations and certifications, and b.) the prices of its Filters were falsely
inflated.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 193.

194. Similarly, each time a subsidiary of or a distributor for Champion submitted
claims for payment to the United States or the States, Champion violated the FCA because:
a) it was engaged in a long-running price-fixing conspiracy, contrary to its representations
and certifications, and b.) the prices of its Filters were falsely inflated. If the United States or
the States had been aware of this it would not have paid Champion's false claims or paid the
claims of subsidiaries of and distributors for Champion.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 194.

**Evidence of Defendant Purolator's False Claims**

195. During the Time Period, Purolator sold Filters to the United States and the States
both directly and through subsidiaries and distributors. Purolator was registered with the
United States through the CCR systems during the Time Period, had a Cage Code, and
regularly certified to the United States that its prices were independent. Purolator also
regularly made similar certifications to the States, either explicitly or implicitly.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 195.

196. Purolator made false claims for payment, caused others to make false claims for
payment, and conspired to violate the FCA and parallel laws of the States. The States and
the United States paid for Purolator Filters in reliance on Purolator's false certifications and
false claims.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 196.

50

197.   For example, on January 8, 2003, Purolator contracted to provide non-air engine fuel system components to the United States (Defense Logistics Agency).  The United States paid Purolator $90,520.00 in connection with this contract, and some if not all of the products supplied under this contract were Filters.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 197.

198.   Similarly on May 28, 2002, Purolator contracted to provide non-air engine fuel systems components to the United States (Defense Logistics Agency).  The United States paid Purolator $100,394.00 in connection with this contract, and some if not all of the products supplied under this contract were Filters.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 198.

199.   Each time the United States awarded Purolator a contract, Purolator delivered the Filters and received payment, i.e., made a claim to a governmental entity.  Purolator made many claims for payment to the United States and the States in addition to those claims listed above, and Purolator conspired with the other Defendants to violate the FCA.

**ANSWER:**  Denies the allegations in paragraph 199 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in paragraph 199 concerning any other defendant.

200.   Each time Purolator made a claim for payment under any Filters contract, it violated the FCA because: a) it was engaged in a long-running price-fixing conspiracy, contrary to its representations and certifications, and b.) the prices of its Filters were falsely inflated.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 200.

201.   Similarly, each time a subsidiary of or a distributor for Purolator submitted claims for payment to the United States or the States, Purolator violated the FCA because: a) it was engaged in a long-running price-fixing conspiracy, contrary to its representations and certifications, and b.) the prices of its Filters were falsely inflated.  If the United States or the States had been aware of this it would not have paid Purolator's false claims or paid the claims of subsidiaries of and distributors for Purolator.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 201.

**Evidence of Defendant ArvinMeritor's False Claims**

202.    During the Time Period, ArvinMeritor sold Filters to the United States and the States both directly and through subsidiaries and distributors.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 202.

203.    ArvinMeritor's primary contact for government related business is Timothy Burns.  ArvinMeritor was registered with the United States through the CCR systems during the Time Period, had a Cage Code, and regularly certified to the United States that its prices were independent.  ArvinMeritor also regularly made similar certifications to the States, either explicitly or implicitly.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 203.

204.    ArvinMeritor made false claims for payment, caused others to make false claims for payment, and conspired to violate the FCA and parallel laws of the States.  The States and the United States paid for ArvinMeritor Filters in reliance on ArvinMeritor's false certifications and false claims.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 204.

205.    As noted under Contract No. SPM7MX-07-D-9005, Facet agreed to provide the United States with Filters.  Most if not all of the Filters that Facet provided to the United States were manufactured by Defendants Cummins, Wix, Baldwin, Champion, and ArvinMeritor.  Thus, United States purchased ArvinMeritor Filters during the Time Period.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 205.

206.    Moreover, Tables 1 and 2 above, also show that the United States purchased ArvinMeritor Filters during the Time Period.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 206.

207.    Each time the United States awarded ArvinMeritor a contract, ArvinMeritor delivered the Filters and received payment, i.e., made a claim to a governmental entity. ArvinMeritor made many claims for payment to the United States and the States in addition to those claims listed above, and ArvinMeritor conspired with the other Defendants to violate the FCA.

**ANSWER:** Denies the allegations in paragraph 207 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in paragraph 207 concerning any other defendant.

208.    Each time ArvinMeritor made a claim for payment under any Filters contract, it violated the FCA because: a.) it was engaged in a long-running price-fixing conspiracy, contrary to its representations and certifications, and b.) the prices of its Filters were falsely inflated.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 208.

209.    Similarly, each time a subsidiary of or a distributor for ArvinMeritor submitted claims for payment to the United States or the States, ArvinMeritor violated the FCA because: a) it was engaged in a long-running price-fixing conspiracy, contrary to its representations and certifications, and b.) the prices of its Filters were falsely inflated.  If the United States or the States had been aware of this it would not have paid ArvinMeritor's false claims or paid the claims of subsidiaries of and distributors for ArvinMeritor.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 209.

**Evidence of Defendant Affinia's False Claims**

210.    During the Time Period, Affinia sold Filters to the United States and the States both directly and through subsidiaries and distributors.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 210.

211.    Affinia's primary contact for government related business is Melissa Fletcher. Affinia was registered with the United States through the CCR systems during the Time Period, had a Cage Code, and regularly certified to the United States that its prices were independent.  Affinia also regularly made similar certifications to the States, either explicitly or implicitly.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 211.

212.    Affinia made false claims for payment, caused others to make false claims for payment, and conspired to violate the FCA and parallel laws of the States. The States and the United States paid for Affinia Filters in reliance on Affinia's false certifications and false claims.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 212.

213.    Each time the United States awarded Affinia a contract, Affinia delivered the Filters and received payment, i.e., made a claim to a governmental entity. Affinia made many claims for payment to the United States and the States in addition to those claims listed above, and Affinia conspired with the other Defendants to violate the FCA.

**ANSWER:** Denies the allegations in paragraph 213 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 213 concerning any other defendant.

214.    Each time Affinia made a claim for payment under any Filters contract, it violated the FCA because: a) it was engaged in a long-running price-fixing conspiracy, contrary to its representations and certifications, and b.) the prices of its Filters were falsely inflated.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 214.

215.    Similarly, each time a subsidiary of or a distributor for Purolator submitted claims for payment to the United States or the States, Affinia violated the FCA because a.) it was engaged in a long-running price-fixing conspiracy, contrary to its representations and certifications, and b.) the prices of its Filters were falsely inflated. If the United States or the States had been aware of this it would not have paid Affinia's false claims or paid the claims of subsidiaries of and distributors for Affinia.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 215.

### Evidence of Defendant Wix's False Claims

216.    During the Time Period, Wix, which is wholly-owned by Affinia Group's Affinia Global Filtration, sold Filters to the United States and the States both directly and through

subsidiaries and distributors.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 216.

217.    Wix was registered with the United States through the CCR systems during the
Time Period, had a Cage Code, and regularly certified to the United States that its prices
were independent.  Wix also regularly made similar certifications to the States, either
explicitly or implicitly.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 217.

218.    Wix made false claims for payment, caused others to make false claims for
payment, and conspired to violate the FCA and parallel laws of the States.  The States and
the United States paid for Wix Filters in reliance on Wix's false certifications and false
claims.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 218.

219.    As noted under Contract No. SPM7MX-07-D-9005, Facet USA agreed to provide
the United States with Filters.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 219.

220.    Most if not all of the Filters that Facet USA provided to the United States were
manufactured by Defendants Cummins, Wix, Baldwin, Champion, and ArvinMeritor.  Thus,
United States purchased Wix Filters during the Time Period.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 220.

221.    The United States also entered contracts for Filters with Northeast Filter &
Equipment Co. ("Northeast").  Northeast is a supplier and distributor of, among others, Wix
brand Filters.  During the Time Period, the United States entered the following contracts with
Northeast.

| Defendant/ Company | Product | Total Value | Date | Contracting Agency/ Issuing Agency |
| --- | --- | --- | --- | --- |

| Northeast | Engine, air, and oil filters, non-aircraft | $15,516.00 | Dec. 10, 2009 | Defense Logistics Agency |
|---|---|---|---|---|
| | Engine, air, and oil filters, non-aircraft | $8,195.00 | Aug. 23, 2009 | Defense Logistics Agency |
| Northeast | Engine, air, and oil filters, non-aircraft | $6,603.00 | Nov. 20, 2008 | Defense Logistics Agency |
| Northeast | Filters | Unknown | July 5, 2005 | Defense Supply Center Columbus |

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 221.

222.    Under the foregoing contracts, Northeast supplied Wix filters to the United States. Moreover, Tables 1 and 2 above, also show that the United States purchased Wix Filters during the Time Period.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 222.

223.    In addition to these claims, Wix, based on information and belief, sold its Flam filters to the United States through the General Services Administration.  The General Services Administration (GSA) supplies products and communications for U.S. government offices.  In its GSA catalogues distributed to governmental agencies to order supplies from that are paid for by the United States, Wix filters are specifically listed as product to be purchased for government vehicles.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 223.

224.    Each time the United States awarded Wix a contract, Wix delivered the Filters and received payment, i.e., made a claim to a governmental entity.  Wix made many claims for payment to the United States and the States in addition to those claims listed above, and Wix conspired with the other Defendants to violate the FCA.

**ANSWER:**  Denies the allegations in paragraph 224 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in paragraph 224 concerning any other defendant.

225.    Each time Wix made a claim for payment under any Filters contract, it violated the FCA because: a.) it was engaged in a long-running price-fixing conspiracy, contrary to its representations and certifications, and b.) the prices of its Filters were falsely inflated.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 225.

226.    Similarly, each time a subsidiary of or a distributor for Wix submitted claims for payment to the United States or the States, Wix violated the FCA because: a) it was engaged in a long-running price-fixing conspiracy, contrary to its representations and certifications, and b.) the prices of its Filters were falsely inflated.  If the United States or the States had been aware of this it would not have paid Wix's false claims or paid the claims of subsidiaries of and distributors for Wix.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 226.

### Evidence of Defendant Cummins's False Claims

227.    During the Time Period, Cummins sold Filters to the United States and the States both directly and through subsidiaries and distributors.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 227.

228.    Cummins's primary contact for government related business is Russ Wong. Cummins was registered with the United States through the CCR systems during the Time Period, had a Cage Code, and regularly certified to the United States that its prices were independent.  Cummins also regularly made similar certifications to the States, either explicitly or implicitly.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 228.

229.    Cummins made false claims for payment, caused others to make false claims for payment, and conspired to violate the FCA and parallel laws of the States.  The States and the United States paid for Cummins Filters in reliance on Cummins's false certifications and false claims.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 229.

230.    As noted under Contract No. SPM7MX-07-D-9005, Facet USA agreed to provide the United States with Filters.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 230.

231.    Most if not all of the Filters that Facet USA provided to the United States were manufactured by Defendants Cummins, Wix, Baldwin, Champion, and ArvinMeritor.  Thus, United States purchased Cummins Filters during the Time Period.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 231.

232.    Moreover, the following is one example of a contract between Cummins and the United States during the Time Period:

| Defendant/Company | Product | Total Value | Date | Agency |
|---|---|---|---|---|
| Cummins NPower LLC, the exclusive distributor for Cummins | Engine, air, and oil filters, and cleaners, nonaircraft | $36,925.00 | Dec. 30, 2008 | Dept. of Defense |

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 232.

233.    Under this and other contracts, the United States purchased Cummins Filters.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 233.

234.    Each time the United States awarded Cummins a contract, Cummins delivered the Filters and received payment, i.e., made a claim to a governmental entity.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 234.

235.    Cummins made many claims for payment to the United States and the States in addition to those claims listed above, and Cummins conspired with the other Defendants to violate the FCA.  Each time Cummins made a claim for payment under any Filters contract, it violated the FCA because: a). it was engaged in a long-running price-fixing conspiracy, contrary to its representations and certifications, and b) the prices of its Filters were falsely inflated.

**ANSWER:** Denies the allegations in paragraph 235 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in paragraph 235 concerning any other defendant.

236.    Similarly, each time a subsidiary of or a distributor for Cummins submitted
claims for payment to the United States or the States, Cummins violated the FCA because:
a). it was engaged in a long-running price-fixing conspiracy, contrary to its representations
and certifications, and b). the prices of its Filters were falsely inflated.  If the United States or
the States had been aware of this it would not have paid Cummins's false claims or paid the
claims of subsidiaries of and distributors for Cummins.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 236.

**Evidence of Defendant Baldwin's False Claims**

237.    During the Time Period, Baldwin sold Filters to the United States and the States
both directly and through subsidiaries and distributors.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 237.

238.    Baldwin was registered with the United States through the CCR systems during
the Time Period, had a Cage Code, and regularly certified to the United States that its prices
were independent.  Baldwin also regularly made similar certifications to the States, either
explicitly or implicitly.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 238.

239.    Baldwin made false claims for payment, caused others to make false claims for
payment, and conspired to violate the FCA and parallel laws of the States.  The States and
the United States paid for Baldwin Filters in reliance on Baldwin's false certifications and
false claims.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 239.

240.    As noted under Contract No. SPM7MX-07-D-9005, Facet USA agreed to provide
the United States with Filters.  Most if not all of the Filters that Facet USA provided to the
United States were manufactured by Defendants Cummins, Wix, Baldwin, Champion, and

ArvinMeritor. Thus, United States purchased Baldwin Filters during the Time Period.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 240.

241. Moreover, the following is one example of a contract the United States entered with Baldwin during the Time Period. On or about September 30, 2008, the United States entered a year-long contract with Jasmin Defense Depot ("Jasmin") to provide Filters.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 241.

242. The United States extend this contract through the year 2010. The United States specified that certain of its Filters requirements were only to be satisfied by Baldwin Filters. Thus, as part of the contract, the United States required Jasmin to provide proof that it was an authorized dealer for Filters manufactured by Baldwin and that it was providing Baldwin Filters to the United States.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 242.

243. To fulfill this requirement, Jasmin a fax from Diesel Equipment Inc., indicating that it was in fact an authorized Baldwin dealer, as well as a letter from Baldwin to Diesel evidencing a strategic sales relationship between the companies.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 243.

244. The United States accepted this chain of letters and entered the contract. Ultimately, Jasmin supplied Baldwin Filters to the United States as requested and made claims for payment to the United States.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 244.

245. These claims for payment were false as a result of Baldwin's participation in the antitrust conspiracy.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 245.

246. First, the United States chose Baldwin based on its knowledge that it was an approved manufacturer that had registered with the United States and signed the annual ORCA representations, i.e. represented that it was not colluding to fix prices. Had Baldwin not fulfilled its annual ORCA obligations, the United States would not have sought to purchase Baldwin Filters. Thus, Baldwin made a false certification in support of a claim for payment.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 246.

247. Second, the Baldwin's prices for Filters under the contract were inflated and false. Baldwin submitted its false and inflated prices to Diesel Equipment Inc. and then Jasmin, who in turn submitted the false prices to the United States for payment.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 247.

248. Each time the United States awarded Baldwin a contract, Baldwin delivered the Filters and received payment, i.e., made a claim to a governmental entity.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 248.

249. Baldwin made many claims for payment to the United States and the States in addition to those claims listed above, and Baldwin conspired with the other Defendants to violate the FCA.

**ANSWER:** Denies the allegations in paragraph 249 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 249 concerning any other defendant.

250. Each time Baldwin made a claim for payment under any Filters contract, it violated the FCA because: a) it was engaged in a long-running price-fixing conspiracy, contrary to its representations and certifications, and b.) the prices of its Filters were falsely inflated.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 250.

251. Similarly, each time a subsidiary of or a distributor for Baldwin submitted claims for payment to the United States or the States, Baldwin violated the FCA because: a) it was

engaged in a long-running price-fixing conspiracy, contrary to its representations and certifications, and b.) the prices of its Filters were falsely inflated. If the United States or the States had been aware of this it would not have paid Baldwin's false claims or paid the claims of subsidiaries of and distributors for Baldwin.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 251.

### Additional False State Claims and Statements in Support of Claims

252.    Besides Illinois, which as alleged above, purchased Fram Filters manufactured by Honeywell during the Time Period, other states have also purchased Defendants' Filters during the Time Period.

The State of California entered a contract (contract number 1-04-29-02) with American Transit Supply ("ATS") to provide, among other things, Filters. The contract was effective between December 1, 2004 and November 30, 2009. (Prior to the entry of this contract, California entered similar contracts to purchase Defendants' Filters.) The terms of the California contract specified which brand of Filters the state would accept. The list included among others: Fram (manufactured by Honeywell); Luber-finer (manufactured by Champion); Baldwin (manufactured by Baldwin); Fleetguard (a Cummins product); Mighty and Purolator (manufactured by Purolator); and Wix, Carquest, Napa, and Big A (all manufactured by Wix). Under the foregoing contract, Defendants provided Filters to California through ATS. ATS submitted claims to California for payment, and California paid those claims. Each time this happened, Defendants had caused ATS to submit a false claim to California, because of the price-fixing conspiracy.

**ANSWER:** Denies the allegations in paragraph 252 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in paragraph 252, except admits that Honeywell sold light duty aftermarket air, oil,

and fuel filters to distributors who sold Honeywell's filters to California, Florida, Illinois,

Massachusetts, Montana, New York, Oklahoma, Rhode Island, Tennessee, and Virginia.

253.    The State of Florida has filed a complaint alleging that during the Time Period it purchased Filters from Defendants through various distributors.

**ANSWER:** Refers to the complaint filed by the State of Florida, consolidated in the

MDL (Master Docket No.: 08-cv-4883), which speaks for itself.

254.    Suffolk County in New York State has filed a complaint with similar allegations. Suffolk County alleges that it purchased Filters indirectly from Wix, Donaldson, Honeywell,

and Baldwin, apparently through distributors. From 2002 until the present, Suffolk County purchased 207 Wix Filters, 119 Donaldson Filters, and 15 Baldwin Filters. Suffolk County paid $9,025.21 for these Filters. Additionally, Suffolk County purchased approximately $63,000 of Fram filters (manufactured by Defendant Honeywell) during the Time Period.

**ANSWER:** Refers to the complaint filed by Suffolk County, which speaks for itself.

255. The State of New Hampshire entered a contract with Wix for Filters (contract number 8000056). The contract became effective in July 2009 and lasts until 2014. Each time New Hampshire submits an order, Wix delivers the Filters and submits an invoice. As explained above, all of these invoices were false as a result of the price-fixing conspiracy.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 255.

## COUNT ONE
### (False Claims Act 31 U.S.C. § 3729(a)(1))
### (Against All Defendants)

256. Plaintiff realleges and incorporates by reference all paragraphs set forth herein.

**ANSWER:** Repeats and realleges its responses to each and every allegation as if fully set forth herein.

257. As result of price-fixing conspiracy described herein, Defendants knowingly, or acting with deliberate ignorance or reckless disregard, presented or caused to be presented to the United States false of fraudulent claims for approval in violation of the FCA.

**ANSWER:** Denies the allegations in paragraph 257 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 257 concerning any other defendant.

258. Because of these acts the United States has suffered damages.

**ANSWER:** Denies the allegations in paragraph 258 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 258 concerning any other defendant.

## COUNT TWO
### (False Claims Act 31 U.S.C. § 3729(a)(2))
### (Against All Defendants)

259.     Plaintiff realleges and incorporates by reference all paragraphs set forth herein.

**ANSWER:** Repeats and realleges its responses to each and every allegation as if fully set forth herein.

260.     As a result of the price-fixing conspiracy described herein, Defendants knowingly, or acting with deliberate ignorance or reckless disregard, made, used, or caused to be made or used, a false record or false statement to get a false or fraudulent claim paid or approved by the United States in violation of the FCA.

**ANSWER:** Denies the allegations in paragraph 260 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 260 concerning any other defendant.

261.     Because of these acts, the United States has suffered damages.

**ANSWER:** Denies the allegations in paragraph 261 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 261 concerning any other defendant.

**COUNT THREE**
**(False Claims Act 31 U.S.C. § 3729(a)(3))**
**(Against All Defendants)**

262.     Plaintiff realleges and incorporates by reference all paragraphs set forth herein.

**ANSWER:** Repeats and realleges its responses to each and every allegation as if fully set forth herein.

263.     As a result of the price-fixing conspiracy, Defendants conspired to defraud the United States by getting a false or fraudulent claim allowed or paid in violation of the FCA.

**ANSWER:** Denies the allegations in paragraph 263 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 263 concerning any other defendant.

264.     Because of these acts, the United States has suffered damages.

**ANSWER:** Denies the allegations in paragraph 264 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 264 concerning any other defendant.

**COUNT FIVE**
**(Common Law Fraud)**
**(Against All Defendants)**

265.    Plaintiff realleges and incorporates by reference all paragraphs set forth herein.

**ANSWER:** Repeats and realleges its responses to each and every allegation as if fully set forth herein.

266.    The false records or statements made by defendants, as described above, misrepresented and conceded material facts.

**ANSWER:** Denies the allegations in paragraph 266 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 266 concerning any other defendant.

267.    Defendants knowingly, and/or in reckless disregard of the truth, misrepresented and conceded material facts

**ANSWER:** Denies the allegations in paragraph 267 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 267 concerning any other defendant.

268.    Defendants made these misrepresentations of material fact, or failed to disclose material facts, intending that the United States and the States would rely on their accuracy in purchasing Defendants Filters and approving and paying claims associated therewith.

**ANSWER:** Denies the allegations in paragraph 268 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 268 concerning any other defendant.

269.    The United States and the States justifiably relied on Defendants' false and misleading representations in evaluating claims associated with payment for Defendants' Filters.

**ANSWER:** Denies the allegations in paragraph 269 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 269 concerning any other defendant.

270. Defendants defrauded the United States and the States.

**ANSWER:** Denies the allegations in paragraph 270 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 270 concerning any other defendant.

271. Defendants have caused the United States and the States to suffer damages.

**ANSWER:** Denies the allegations in paragraph 271 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 271 concerning any other defendant.

**COUNT SIX**
**(Unjust Enrichment)**
**(Against All Defendants)**

272. Plaintiff realleges and incorporates by reference all paragraphs set forth herein.

**ANSWER:** Repeats and realleges its responses to each and every allegation as if fully set forth herein.

273. The United States and the States paid Defendants monies to which Defendants were not entitled.

**ANSWER:** Denies the allegations in paragraph 273 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 273 concerning any other defendant.

274. By reason of these payments, Defendants have been unjustly enriched at the expense of the United States and the States.

**ANSWER:** Denies the allegations in paragraph 274 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 274 concerning any other defendant.

275. The United States and the States are entitled to the amount of the Defendants' unjust enrichment as damages.

**ANSWER:** Avers that paragraph 275 asserts legal conclusions to which no responsive pleading is required. To the extent that a response is required, denies the allegations in paragraph 275 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 275 concerning any other defendant.

**COUNT SEVEN**
**Payment Under Mistake of Fact**
**(Against All Defendants)**

276. Plaintiff realleges and incorporates by reference all paragraphs set forth herein.

**ANSWER:** Repeats and realleges its responses to each and every allegation as if fully set forth herein.

277. The United States and the States paid or approved the claims submitted by Defendants under the erroneous belief that the statements Defendants made in their claims at issue were truthful.

**ANSWER:** Denies the allegations in paragraph 277 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 277 concerning any other defendant.

278. The United States and the States erroneous beliefs were material to the amount of money the United State and the States paid for Defendants' claims.

**ANSWER:** Denies the allegations in paragraph 278 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 278 concerning any other defendant.

279. Because of these mistakes of fact, Defendants received money to which they were

not entitled.

**ANSWER:** Denies the allegations in paragraph 279 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 279 concerning any other defendant.

280.    By reason of the overpayment described above, the United States and the States
are entitled to damages in the amount of overpayment.

**ANSWER:** Avers that paragraph 280 asserts legal conclusions to which no responsive

pleading is required.  To the extent that a response is required, denies the allegations in

paragraph 280 as they relate to Honeywell, and denies knowledge or information sufficient to

form a belief as to the truth of the allegations in paragraph 280 concerning any other defendant.

**COUNT EIGHT**
**California False Claims Act**
**Cal. Gov. Code §12651(a)(1), (2) and (3)**

281.    Plaintiff realleges and incorporates by reference all paragraphs set forth herein.

**ANSWER:** Repeats and realleges its responses to each and every allegation as if fully

set forth herein.

282.    This is a claim for treble damages and penalties under the California False Claims
Act.

**ANSWER:** Denies the allegations in paragraph 282, except admits that Plaintiff purports

to bring a claim for treble damages and penalties under the California False Claims Act.

283.    By virtue of the acts described above, Defendants knowingly presented, or caused
to be presented, false or fraudulent claims to the State of California for payment or approval.

**ANSWER:** Denies the allegations in paragraph 283 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 283 concerning any other defendant.

284.    By virtue of the acts described above, Defendants knowingly made, used, or
caused to be made or used, false records and statements, and omitted material facts, to induce

the State of California, the state government, and its agencies, to approve and pay such false and fraudulent claims.

**ANSWER:**  Denies the allegations in paragraph 284 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 284 concerning any other defendant.

285.    By virtue of the acts described above, Defendants knowingly conspired to violate the California False Claims Act.

**ANSWER:**  Denies the allegations in paragraph 285 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 285 concerning any other defendant.

286.    The State of California, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' illegal price-fixing and false statements made in submitting Filter bids to the State.

**ANSWER:**  Denies the allegations in paragraph 286 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 286 concerning any other defendant.

287.    By reason of the Defendants' acts, the State of California has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

**ANSWER:**  Denies the allegations in paragraph 287 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 287 concerning any other defendant.

288.    The State of California is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, records or statement made, used, presented or caused to be made, used or presented by Defendants.

**ANSWER:**  Avers that paragraph 288 asserts legal conclusions to which no responsive

pleading is required.  To the extent that a response is required, denies the allegations in

paragraph 288 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 288 concerning any other defendant.

**COUNT NINE**
**Delaware False Claims And Reporting Act**
**6 Del. Ann. tit. §1201(a)(1), (2) and (3)**

289.    Plaintiff realleges and incorporates by reference all paragraphs set forth herein.

**ANSWER:** Repeats and realleges its responses to each and every allegation as if fully set forth herein.

290.    This is a claim for treble damages and penalties under the Delaware False Claims and Reporting Act.

**ANSWER:** Denies the allegations in paragraph 290, except admits that Plaintiff purports to bring a claim for treble damages and penalties under the Delaware False Claims and Reporting Act.

291.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Delaware State Government for payment or approval.

**ANSWER:** Denies the allegations in paragraph 291 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 291 concerning any other defendant.

292.    By virtue of the acts described above, Defendants knowingly made, used or caused to be made or used, false records and statements, and omitted material facts, to induce the Delaware State Government to approve and pay such false and fraudulent claims.

**ANSWER:** Denies the allegations in paragraph 292 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 292 concerning any other defendant.

293.    By virtue of the acts described above, Defendants knowingly conspired to violate the Delaware False Claims Act.

**ANSWER:** Denies the allegations in paragraph 293 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 293 concerning any other defendant.

294. The Delaware State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' illegal practices.

**ANSWER:** Denies the allegations in paragraph 294 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 294 concerning any other defendant.

295. By reason of the Defendants' acts, the State of Delaware has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

**ANSWER:** Denies the allegations in paragraph 295 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 295 concerning any other defendant.

296. The State of Delaware is entitled to the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**ANSWER:** Avers that paragraph 296 asserts legal conclusions to which no responsive

pleading is required. To the extent that a response is required, denies the allegations in

paragraph 296 as they relate to Honeywell, and denies knowledge or information sufficient to

form a belief as to the truth of the allegations in paragraph 296 concerning any other defendant.

**COUNT TEN**
**District of Columbia**
**District of Columbia False Claims Act**
**D.C. Code §2-308.14(a)(1), (2), and (3)**
**(formerly D.C. Code Ann. §1-1188.14(a))**

297. Plaintiff realleges and incorporates by reference all paragraphs set forth herein.

**ANSWER:** Repeats and realleges its responses to each and every allegation as if fully

set forth herein.

298. This is a claim for treble damages and penalties under the District of Columbia
False Claims Act.

**ANSWER:** Denies the allegations in paragraph 298, except admits that Plaintiff purports

to bring a claim for treble damages and penalties under the District of Columbia False Claims

Act.

299. By virtue of the acts described above, Defendants knowingly presented or caused
to be presented, false or fraudulent claims to the District of Columbia Government for
payment or approval.

**ANSWER:** Denies the allegations in paragraph 299 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 299 concerning any other defendant.

300. By virtue of the acts described above, Defendants knowingly made, used, or
caused to be made or used, false records and statements, and omitted material facts, to induce
the District of Columbia Government to approve and pay such false and fraudulent claims.

**ANSWER:** Denies the allegations in paragraph 300 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 300 concerning any other defendant.

301. By virtue of the acts described above, Defendants knowingly conspired to violate
the District of Columbia False Claims Act.

**ANSWER:** Denies the allegations in paragraph 301 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 301 concerning any other defendant.

302. The District of Columbia Government, unaware of the falsity of the records,
statement and claims made, used, presented or caused to be made, used or presented by
Defendants, paid and continues to pay the claims that would not be paid but for Defendants'
illegal practices.

**ANSWER:** Denies the allegations in paragraph 302 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 302 concerning any other defendant.

303.    By reason of defendants' acts, the District of Columbia has been damaged and continues to be damaged in substantial amount to be determined at trial.

**ANSWER:** Denies the allegations in paragraph 303 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 303 concerning any other defendant.

304.    The District of Columbia is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, records or statement made, used, presented or caused to be made, used or presented by Defendants.

**ANSWER:** Avers that paragraph 304 asserts legal conclusions to which no responsive pleading is required. To the extent that a response is required, denies the allegations in paragraph 304 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 304 concerning any other defendant.

### COUNT ELEVEN
### Florida False Claims Act
### Fla. Stat. § 68.082(2)(a), (b), and (c)

305.    Plaintiff realleges and incorporates by reference all paragraphs set forth herein.

**ANSWER:** Repeats and realleges its responses to each and every allegation as if fully set forth herein.

306.    This is a claim for treble damages and penalties under the Florida False Claims Act.

**ANSWER:** Denies the allegations in paragraph 306, except admits that Plaintiff purports to bring a claim for treble damages and penalties under the Florida False Claims Act.

307.    By virtue of the acts described above, Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the State of Florida for payment or approval.

**ANSWER:** Denies the allegations in paragraph 307 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 307 concerning any other defendant.

308.    By virtue of the acts described above, Defendants knowingly made, used or caused to be made or used, false records and statements, and omitted material facts, to induce the State of Florida, the state government and its agencies, to approve and pay such false and fraudulent claims.

**ANSWER:** Denies the allegations in paragraph 308 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 308 concerning any other defendant.

309.    By virtue of the acts described above, Defendants knowingly conspired to violate the Florida False Claims Act.

**ANSWER:** Denies the allegations in paragraph 309 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 309 concerning any other defendant.

310.    The State of Florida, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' illegal price-fixing, bid-rigging, and false statements made in submitting Filter bids to the State.

**ANSWER:** Denies the allegations in paragraph 310 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 310 concerning any other defendant.

311.    By reason of the Defendants' acts, the State of Florida has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

**ANSWER:** Denies the allegations in paragraph 311 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 311 concerning any other defendant.

312.    The State of Florida is entitled to the maximum penalty of $10,000 for each and

every false or fraudulent claim, records or statement made, used, presented or caused to be made, used or presented by Defendants.

**ANSWER:** Avers that paragraph 312 asserts legal conclusions to which no responsive pleading is required. To the extent that a response is required, denies the allegations in paragraph 312 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 312 concerning any other defendant.

## COUNT TWELVE
### Hawaii False Claims Act
### Haw. Rev. Stat. § 661-21(a)(1), (2), and (3)

313.    Plaintiff realleges and incorporates by reference all paragraphs set forth herein.

**ANSWER:** Repeats and realleges its responses to each and every allegation as if fully set forth herein.

314.    This is a claim for treble damages and penalties under the Hawaii False Claims Act.

**ANSWER:** Denies the allegations in paragraph 314, except admits that Plaintiff purports to bring a claim for treble damages and penalties under the Hawaii False Claims Act.

315.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Hawaii State Government for payment or approval.

**ANSWER:** Denies the allegations in paragraph 315 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 315 concerning any other defendant.

316.    By virtue of the acts described above, Defendants knowingly made, used, or cause to be made or used, false records and statements, and omitted material facts, to induce the Hawaii State Government to approve and pay such false and fraudulent claims

**ANSWER:** Denies the allegations in paragraph 316 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 316 concerning any other defendant.

317.    By virtue of the acts described above, Defendants knowingly conspired to violate the Hawaii False Claims Act.

**ANSWER:**  Denies the allegations in paragraph 317 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 317 concerning any other defendant.

318.    The Hawaii State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for defendants' illegal practices.

**ANSWER:**  Denies the allegations in paragraph 318 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 318 concerning any other defendant.

319.    By reason of the Defendants' acts, the State of Hawaii has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

**ANSWER:**  Denies the allegations in paragraph 319 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 319 concerning any other defendant.

320.    The State of Hawaii is entitled to the maximum penalty of $11,000 for each and every false or fraudulent claim, records or statement made, used, presented or caused to be made, used or presented by Defendants.

**ANSWER:**  Avers that paragraph 320 asserts legal conclusions to which no responsive

pleading is required.  To the extent that a response is required, denies the allegations in

paragraph 320 as they relate to Honeywell, and denies knowledge or information sufficient to

form a belief as to the truth of the allegations in paragraph 320 concerning any other defendant.

**COUNT THIRTEEN**
**Illinois False Claims Act**
**740 Ill. Comp. Stat. §175/1(a)(1)(A), (B), and (C)**

321.    Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

**ANSWER:** Repeats and realleges its responses to each and every allegation as if fully set forth herein.

322. This is a claim for treble damages and penalties under the Illinois False Claims Act.

**ANSWER:** Denies the allegations in paragraph 322, except admits that Plaintiff purports to bring a claim for treble damages and penalties under the Illinois False Claims Act.

323. By virtue of the acts described above, Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the State of Illinois for payment or approval.

**ANSWER:** Denies the allegations in paragraph 323 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 323 concerning any other defendant.

324. By virtue of the acts described above, Defendants knowingly made, used or caused to be made or used, false records and statements, and omitted material facts, to induce the State of Illinois, the state government and its agencies, to approve and pay such false and fraudulent claims.

**ANSWER:** Denies the allegations in paragraph 324 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 324 concerning any other defendant.

325. By virtue of the acts described above, Defendants knowingly conspired to violate the Illinois False Claims Act.

**ANSWER:** Denies the allegations in paragraph 325 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 325 concerning any other defendant.

326. The State of Illinois, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' illegal price-fixing and false statements made in submitting Filter bids to the State.

**ANSWER:** Denies the allegations in paragraph 326 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 326 concerning any other defendant.

327. By reason of the Defendants' acts, the State of Illinois has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

**ANSWER:** Denies the allegations in paragraph 327 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 327 concerning any other defendant.

328. The State of Illinois is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, records or statement made, used, presented or caused to be made, used or presented by Defendants.

**ANSWER:** Avers that paragraph 328 asserts legal conclusions to which no responsive pleading is required. To the extent that a response is required, denies the allegations in paragraph 328 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 328 concerning any other defendant.

### COUNT FOURTEEN
### Indiana False Claims Act
### Ind. Code § 5-11-5.5-2(b)(1), (2), and (7)

329. Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

**ANSWER:** Repeats and realleges its responses to each and every allegation as if fully set forth herein.

330. This is a claim for treble damages and penalties under the Indiana False Claims Act.

**ANSWER:** Denies the allegations in paragraph 330, except admits that Plaintiff purports to bring a claim for treble damages and penalties under the Indiana False Claims Act.

331. By virtue of the acts described above, Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the State of Indiana for payment or approval.

**ANSWER:** Denies the allegations in paragraph 331 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 331 concerning any other defendant.

332. By virtue of the acts described above, Defendants knowingly made, used or caused to be made or used, false records and statements, and omitted material facts, to induce the State of Indiana, the state government and its agencies, to approve and pay such false and fraudulent claims.

**ANSWER:** Denies the allegations in paragraph 332 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 332 concerning any other defendant.

333. By virtue of the acts described above, Defendants knowingly conspired to violate the Indiana False Claims Act.

**ANSWER:** Denies the allegations in paragraph 333 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 333 concerning any other defendant.

334. The State of Indiana, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' illegal price-fixing and false statements made in submitting Filter bids to the State.

**ANSWER:** Denies the allegations in paragraph 334 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 334 concerning any other defendant.

335. By reason of the Defendants' acts, the State of Indiana has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

**ANSWER:** Denies the allegations in paragraph 335 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 335 concerning any other defendant.

336. The State of Indiana is entitled to the maximum penalty of $10,000 for each and

every false or fraudulent claim, records or statement made, used, presented or caused to be made, used or presented by Defendants.

**ANSWER:** Avers that paragraph 336 asserts legal conclusions to which no responsive pleading is required. To the extent that a response is required, denies the allegations in paragraph 336 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 336 concerning any other defendant.

**COUNT FIFTEEN**
**Massachusetts False Claims Law**
**Mass. Gen Laws ch. 12 § 5B(1), (2), and (3)**

337.    Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

**ANSWER:** Repeats and realleges its responses to each and every allegation as if fully set forth herein.

338.    This is a claim for treble damages and penalties under the Massachusetts False Claims Law.

**ANSWER:** Denies the allegations in paragraph 383, except admits that Plaintiff purports to bring a claim for treble damages and penalties under the Massachusetts False Claims Act.

339.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Massachusetts State Government for payment or approval.

**ANSWER:** Denies the allegations in paragraph 339 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 339 concerning any other defendant.

340.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records and statements, and omitted material facts, to induce the Massachusetts State Government to approve and pay such false and fraudulent claims.

**ANSWER:** Denies the allegations in paragraph 340 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 340 concerning any other defendant.

341.    By virtue of the acts described above, Defendants knowingly conspired to violate the Massachusetts False Claims Act.

**ANSWER:** Denies the allegations in paragraph 341 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 341 concerning any other defendant.

342.    The Massachusetts State Government, unaware of the falsity of the records, statement and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' illegal practices.

**ANSWER:** Denies the allegations in paragraph 342 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 342 concerning any other defendant.

343.    By reason of defendants' acts, the State of Massachusetts has been damaged and continues to be damaged in substantial amount to be determined at trial.

**ANSWER:** Denies the allegations in paragraph 343 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 343 concerning any other defendant.

344.    The State of Massachusetts is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, records or statement made, used, presented or caused to be made, used or presented by Defendants.

**ANSWER:** Avers that paragraph 344 asserts legal conclusions to which no responsive

pleading is required.  To the extent that a response is required, denies the allegations in

paragraph 344 as they relate to Honeywell, and denies knowledge or information sufficient to

form a belief as to the truth of the allegations in paragraph 344 concerning any other defendant.

**COUNT SIXTEEN**
**Minnesota False Claims Act**
**Minn. Stat. § 15C.02(a)(1), (2), and (3)**

345.    Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

**ANSWER:** Repeats and realleges its responses to each and every allegation as if fully set forth herein.

346.    This is a claim for treble damages and penalties under the Minnesota False Claims Act.

**ANSWER:** Denies the allegations in paragraph 346, except admits that Plaintiff purports to bring a claim for treble damages and penalties under the Minnesota False Claims Act.

347.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Minnesota State Government for payment or approval.

**ANSWER:** Denies the allegations in paragraph 347 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 347 concerning any other defendant.

348.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records and statements, and omitted material facts, to induce the Minnesota State Government to approve and pay such false and fraudulent claims.

**ANSWER:** Denies the allegations in paragraph 348 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 348 concerning any other defendant.

349.    By virtue of the acts described above, Defendants knowingly conspired to violate the Minnesota False Claims Act.

**ANSWER:** Denies the allegations in paragraph 349 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 349 concerning any other defendant.

350.    The Minnesota State Government, unaware of the falsity of the records, statement and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' illegal practices.

**ANSWER:** Denies the allegations in paragraph 350 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 350 concerning any other defendant.

351. By reason of defendants' acts, the State of Minnesota has been damaged and continues to be damaged in substantial amount to be determined at trial.

**ANSWER:** Denies the allegations in paragraph 351 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 351 concerning any other defendant.

352. The State of Minnesota is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, records or statement made, used, presented or caused to be made, used or presented by Defendants.

**ANSWER:** Avers that paragraph 352 asserts legal conclusions to which no responsive pleading is required. To the extent that a response is required, denies the allegations in paragraph 352 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 352 concerning any other defendant.

### COUNT SEVENTEEN
### Montana False Claims Act
### Mont. Code Ann. § 17-8-403(1)(a), (b), and (c)

353. Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

**ANSWER:** Repeats and realleges its responses to each and every allegation as if fully set forth herein.

354. This is a claim for treble damages and penalties under the Montana False Claims Act.

**ANSWER:** Denies the allegations in paragraph 354, except admits that Plaintiff purports to bring a claim for treble damages and penalties under the Montana False Claims Act.

355. By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Montana State Government for payment or approval.

**ANSWER:** Denies the allegations in paragraph 355 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 355 concerning any other defendant.

356.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records and statements, and omitted material facts, to induce the Montana State Government to approve and pay such false and fraudulent claims.

**ANSWER:** Denies the allegations in paragraph 356 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 356 concerning any other defendant.

357.    By virtue of the acts described above, Defendants knowingly conspired to violate the Montana False Claims Act.

**ANSWER:** Denies the allegations in paragraph 357 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 357 concerning any other defendant.

358.    The Montana State Government, unaware of the falsity of the records, statement and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' illegal practices.

**ANSWER:** Denies the allegations in paragraph 358 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 358 concerning any other defendant.

359.    By reason of defendants' acts, the State of Montana has been damaged and continues to be damaged in substantial amount to be determined at trial.

**ANSWER:** Denies the allegations in paragraph 359 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 359 concerning any other defendant.

360.    The State of Montana is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, records or statement made, used, presented or caused to be

made, used or presented by Defendants.

**ANSWER:** Avers that paragraph 360 asserts legal conclusions to which no responsive

pleading is required. To the extent that a response is required, denies the allegations in

paragraph 360 as they relate to Honeywell, and denies knowledge or information sufficient to

form a belief as to the truth of the allegations in paragraph 360 concerning any other defendant.

**COUNT EIGHTEEN**
**Nevada False Claims Act**
**Nev. Rev. Stat. Ann. § 357.040(1) (a), (b), and (c)**

361.    Plaintiff realleges and incorporates by reference the allegations all paragraphs
contained herein.

**ANSWER:** Repeats and realleges its responses to each and every allegation as if fully

set forth herein.

362.    This is a claim for treble damages and penalties under the Nevada False Claims
Law.

**ANSWER:** Denies the allegations in paragraph 362, except admits that Plaintiff purports

to bring a claim for treble damages and penalties under the Nevada False Claims Act.

363.    By virtue of the acts described above, Defendants knowingly presented or caused
to be presented, false or fraudulent claims to the Nevada State Government for payment or
approval.

**ANSWER:** Denies the allegations in paragraph 363 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 363 concerning any other defendant.

364.    By virtue of the acts described above, Defendants knowingly made, used, or
caused to be made or used, false records and statements, and omitted material facts, to induce
the Nevada State Government to approve and pay such false and fraudulent claims

**ANSWER:** Denies the allegations in paragraph 364 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 364 concerning any other defendant.

365.    By virtue of the acts described above, Defendants knowingly conspired to violate the Nevada False Claims Act.

**ANSWER:**  Denies the allegations in paragraph 365 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 365 concerning any other defendant.

366.    The Nevada State Government, unaware of the falsity of the records, statement and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' illegal practices.

**ANSWER:**  Denies the allegations in paragraph 366 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 366 concerning any other defendant.

367.    By reason of defendants' acts, the State of Nevada has been damaged and continues to be damaged in substantial amount to be determined at trial.

**ANSWER:**  Denies the allegations in paragraph 367 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 367 concerning any other defendant.

368.    The State of Nevada is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, records or statement made, used, presented or caused to be made, used or presented by Defendants.

**ANSWER:**  Avers that paragraph 368 asserts legal conclusions to which no responsive

pleading is required.  To the extent that a response is required, denies the allegations in

paragraph 368 as they relate to Honeywell, and denies knowledge or information sufficient to

form a belief as to the truth of the allegations in paragraph 368 concerning any other defendant.

**COUNT NINETEEN**
**New Hampshire False Claims Act**
**N.H. Rev. Stat. Ann. § 167:61-a, *et seq*.**

369.    Plaintiff realleges and incorporates by reference the allegations all paragraphs contained herein.

**ANSWER:** Repeats and realleges its responses to each and every allegation as if fully set forth herein.

370.   This is a claim for treble damages and penalties under the New Hampshire False Claims Law.

**ANSWER:** Denies the allegations in paragraph 370, except admits that Plaintiff purports to bring a claim for treble damages and penalties under the New Hampshire False Claims Act.

371.   By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the New Hampshire State Government for payment or approval.

**ANSWER:** Denies the allegations in paragraph 371 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 371 concerning any other defendant.

372.   By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records and statements, and omitted material facts, to induce the New Hampshire State Government to approve and pay such false and fraudulent claims.

**ANSWER:** Denies the allegations in paragraph 372 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 372 concerning any other defendant.

373.   By virtue of the acts described above, Defendants knowingly conspired to violate the New Hampshire False Claims Act.

**ANSWER:** Denies the allegations in paragraph 373 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 373 concerning any other defendant.

374.   The New Hampshire State Government, unaware of the falsity of the records, statement and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' illegal practices.

**ANSWER:** Denies the allegations in paragraph 374 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 374 concerning any other defendant.

375. By reason of defendants' acts, the State of New Hampshire has been damaged and continues to be damaged in substantial amount to be determined at trial.

**ANSWER:** Denies the allegations in paragraph 375 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 375 concerning any other defendant.

376. The State of New Hampshire is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, records or statement made, used, presented or caused to be made, used or presented by Defendants.

**ANSWER:** Avers that paragraph 376 asserts legal conclusions to which no responsive pleading is required. To the extent that a response is required, denies the allegations in paragraph 376 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 376 concerning any other defendant.

### COUNT TWENTY
### New Jersey False Claims Act
### N.J. Stat. Ann. § 2A:32C-3(a), (b), and (c)

377. Plaintiff realleges and incorporates by reference all paragraphs set forth herein.

**ANSWER:** Repeats and realleges its responses to each and every allegation as if fully set forth herein.

378. This is a claim for treble damages and penalties under the New Jersey False Claims Act.

**ANSWER:** Denies the allegations in paragraph 378, except admits that Plaintiff purports to bring a claim for treble damages and penalties under the New Jersey False Claims Act.

379. By virtue of the acts described above, Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the State of New Jersey for payment or approval.

**ANSWER:** Denies the allegations in paragraph 379 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 379 concerning any other defendant.

380.    By virtue of the acts described above, Defendants knowingly made, used or caused to be made or used, false records and statements, and omitted material facts, to induce the State of New Jersey, the state government and its agencies, to approve and pay such false and fraudulent claims.

**ANSWER:** Denies the allegations in paragraph 380 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 380 concerning any other defendant.

381.    By virtue of the acts described above, Defendants knowingly conspired to violate the New Jersey False Claims Act.

**ANSWER:** Denies the allegations in paragraph 381 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 381 concerning any other defendant.

382.    The State of New Jersey unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' illegal price-fixing, bid-rigging, and false statements made in submitting filter bids to the State.

**ANSWER:** Denies the allegations in paragraph 382 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 382 concerning any other defendant.

383.    By reason of the Defendants' acts, the State of New Jersey has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

**ANSWER:** Denies the allegations in paragraph 383 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 383 concerning any other defendant.

384.    The State of New Jersey is entitled to the maximum penalty of $10,000 for each

and every false or fraudulent claim, records or statement made, used, presented or caused to be made, used or presented by Defendants.

**ANSWER:** Avers that paragraph 384 asserts legal conclusions to which no responsive pleading is required. To the extent that a response is required, denies the allegations in paragraph 384 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 384 concerning any other defendant.

**COUNT TWENTY ONE**
**New Mexico Fraud Against Taxpayers Act**
**N.M. Stat. § 44-9-3(A)(1), (2), and (3)**

385.    Plaintiff realleges and incorporates by reference all paragraphs set forth herein.

**ANSWER:** Repeats and realleges its responses to each and every allegation as if fully set forth herein.

386.    This is a claim for treble damages and penalties under the New Mexico Fraud Against Taxpayer's Act.

**ANSWER:** Denies the allegations in paragraph 386, except admits that Plaintiff purports to bring a claim for treble damages and penalties under the New Mexico Fraud Against Taxpayers Act.

387.    By virtue of the acts described above, Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the State of New Mexico for payment or approval.

**ANSWER:** Denies the allegations in paragraph 387 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 387 concerning any other defendant.

388.    By virtue of the acts described above, Defendants knowingly made, used or caused to be made or used, false records and statements, and omitted material facts, to induce the State of New Mexico, the state government and its agencies, to approve and pay such false and fraudulent claims.

**ANSWER:** Denies the allegations in paragraph 388 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 388 concerning any other defendant.

389.    By virtue of the acts described above, Defendants knowingly conspired to violate the New Mexico Fraud Against Taxpayer's Act.

**ANSWER:** Denies the allegations in paragraph 389 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 389 concerning any other defendant.

390.    The State of New Mexico unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' illegal price-fixing and false statements made in submitting filter bids to the State.

**ANSWER:** Denies the allegations in paragraph 390 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 390 concerning any other defendant.

391.    By reason of the Defendants' acts, the State of New Mexico has been damaged, and continues to be damaged, in substantial amount to be determined at trial. The State of New Mexico is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, records or statement made, used, presented or caused to be made, used or presented by Defendants.

**ANSWER:** Avers that paragraph 391 asserts legal conclusions to which no responsive

pleading is required. To the extent that a response is required, denies the allegations in

paragraph 391 as they relate to Honeywell, and denies knowledge or information sufficient to

form a belief as to the truth of the allegations in paragraph 391 concerning any other defendant.

**COUNT TWENTY TWO**
**New York False Claims Act**
**N.Y. Finance Law § 189(1)(a), (b), and (c)**

392.    Plaintiff realleges and incorporates by reference all paragraphs set forth herein.

**ANSWER:** Repeats and realleges its responses to each and every allegation as if fully set forth herein.

393. This is a claim for treble damages and penalties under the New York False Claims Act and includes claims presented to officers, employees or agents of state and local governments under § 188(1)(i), including but not limited to officers, employees or agents of Suffolk County and the City of New York.

**ANSWER:** Denies the allegations in paragraph 393, except admits that Plaintiff purports to bring a claim for treble damages and penalties under the New York False Claims Act.

394. By virtue of the acts described above, Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the State of New York for payment or approval.

**ANSWER:** Denies the allegations in paragraph 394 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 394 concerning any other defendant.

395. By virtue of the acts described above, Defendants knowingly made, used or caused to be made or used false records and statements, and omitted material facts, to induce the State of New York, the state government and its agencies, to approve and pay such false and fraudulent claims.

**ANSWER:** Denies the allegations in paragraph 395 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 395 concerning any other defendant.

396. By virtue of the acts described above, Defendants knowingly conspired to violate the New York False Claims Act.

**ANSWER:** Denies the allegations in paragraph 396 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 396 concerning any other defendant.

397. The State of New York, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' illegal price-fixing and false statements made in submitting Filter bids to the State.

**ANSWER:** Denies the allegations in paragraph 397 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 397 concerning any other defendant.

398. By reason of the Defendants' acts, the State of New York has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

**ANSWER:** Denies the allegations in paragraph 398 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 398 concerning any other defendant.

399. The State of New York is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, records or statement made, used, presented or caused to be made, used or presented by Defendants.

**ANSWER:** Avers that paragraph 399 asserts legal conclusions to which no responsive pleading is required. To the extent that a response is required, denies the allegations in paragraph 399 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 399 concerning any other defendant.

## COUNTY TWENTY THREE
### The North Carolina False Claims Act
### N.C. Gen. Stat. § 1-607(a)(1), (2), and (3)

400. Plaintiff realleges and incorporates by reference all paragraphs set forth herein.

**ANSWER:** Repeats and realleges its responses to each and every allegation as if fully set forth herein.

401. This is a claim for treble damages and penalties under the North Carolina False Claims Act.

**ANSWER:** Denies the allegations in paragraph 401, except admits that Plaintiff purports to bring a claim for treble damages and penalties under the North Carolina False Claims Act.

402. By virtue of the acts described above, Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the State of North Carolina for payment or approval.

**ANSWER:** Denies the allegations in paragraph 402 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 402 concerning any other defendant.

403. By virtue of the acts described above, Defendants knowingly made, used or caused to be made or used, false records and statements, and omitted material facts, to induce the State of North Carolina, the state government and its agencies, to approve and pay such false and fraudulent claims.

**ANSWER:** Denies the allegations in paragraph 403 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 403 concerning any other defendant.

404. By virtue of the acts described above, Defendants knowingly conspired to violate the North Carolina False Claims Act.

**ANSWER:** Denies the allegations in paragraph 404 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 404 concerning any other defendant.

405. The State of North Carolina, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' illegal price-fixing and false statements made in submitting filter bids to the State.

**ANSWER:** Denies the allegations in paragraph 405 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 405 concerning any other defendant.

406. By reason of the Defendants' acts, the State of North Carolina has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

**ANSWER:** Denies the allegations in paragraph 406 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 406 concerning any other defendant.

407. The State of North Carolina is entitled to the maximum penalty of $10,000 for

each and every false or fraudulent claim, records or statement made, used, presented or caused to be made, used or presented by Defendants.

**ANSWER:** Avers that paragraph 407 asserts legal conclusions to which no responsive pleading is required. To the extent that a response is required, denies the allegations in paragraph 407 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 407 concerning any other defendant.

**COUNT TWENTY FOUR**
**The Oklahoma False Claims Act**
**Okla. Stat. tit. 63 § 505.1 B., 1, 2, and 3**

408. Plaintiff realleges and incorporates by reference all paragraphs set forth herein.

**ANSWER:** Repeats and realleges its responses to each and every allegation as if fully set forth herein.

409. This is a claim for treble damages and penalties under the Oklahoma False Claims Act.

**ANSWER:** Denies the allegations in paragraph 409, except admits that Plaintiff purports to bring a claim for treble damages and penalties under the Oklahoma False Claims Act.

410. By virtue of the acts described above, Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the State of Oklahoma for payment or approval.

**ANSWER:** Denies the allegations in paragraph 410 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 410 concerning any other defendant.

411. By virtue of the acts described above, Defendants knowingly made, used or caused to be made or used, false records and statements, and omitted material facts, to induce the State of Oklahoma, the state government and its agencies, to approve and pay such false and fraudulent claims.

**ANSWER:** Denies the allegations in paragraph 411 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 411 concerning any other defendant.

412.    By virtue of the acts described above, Defendants knowingly conspired to violate the Oklahoma False Claims Act.

**ANSWER:** Denies the allegations in paragraph 412 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 412 concerning any other defendant.

413.    The State of Oklahoma, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' illegal price-fixing and false statements made in submitting filter bids to the State.

**ANSWER:** Denies the allegations in paragraph 413 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 413 concerning any other defendant.

414.    By reason of the Defendants' acts, the State of Oklahoma has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

**ANSWER:** Denies the allegations in paragraph 414 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 414 concerning any other defendant.

415.    The State of Oklahoma is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, records or statement made, used, presented or caused to be made, used or presented by Defendants.

**ANSWER:** Avers that paragraph 415 asserts legal conclusions to which no responsive

pleading is required.  To the extent that a response is required, denies the allegations in

paragraph 415 as they relate to Honeywell, and denies knowledge or information sufficient to

form a belief as to the truth of the allegations in paragraph 415 concerning any other defendant.

**COUNT TWENTY FIVE**
**the Rhode Island False Claims Act**
**R.I. Gen. Laws § 9-1.1-3(a)(1), (2), and (3)**

416.    Plaintiff realleges and incorporates by reference all paragraphs set forth herein.

**ANSWER:** Repeats and realleges its responses to each and every allegation as if fully set forth herein.

417.    This is a claim for treble damages and penalties under the Rhode Island False Claims Act.

**ANSWER:** Denies the allegations in paragraph 417, except admits that Plaintiff purports to bring a claim for treble damages and penalties under the Rhode Island False Claims Act.

418.    By virtue of the acts described above, Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the State of Rhode Island for payment or approval.

**ANSWER:** Denies the allegations in paragraph 418 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 418 concerning any other defendant.

419.    By virtue of the acts described above, Defendants knowingly made, used or caused to be made or used, false records and statements, and omitted material facts, to induce the State of Rhode Island, the state government and its agencies, to approve and pay such false and fraudulent claims.

**ANSWER:** Denies the allegations in paragraph 419 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 419 concerning any other defendant.

420.    By virtue of the acts described above, Defendants knowingly conspired to violate the Rhode Island False Claims Act.

**ANSWER:** Denies the allegations in paragraph 420 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 420 concerning any other defendant.

421.    The State of Rhode Island, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' illegal price-fixing and false statements made in submitting filter bids to the State.

**ANSWER:**  Denies the allegations in paragraph 421 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 421 concerning any other defendant.

422.    By reason of the Defendants' acts, the State of Rhode Island has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

**ANSWER:**  Denies the allegations in paragraph 422 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 422 concerning any other defendant.

423.    The State of Rhode Island is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, records or statement made, used, presented or caused to be made, used or presented by Defendants.

**ANSWER:**  Avers that paragraph 423 asserts legal conclusions to which no responsive

pleading is required.  To the extent that a response is required, denies the allegations in

paragraph 423 as they relate to Honeywell, and denies knowledge or information sufficient to

form a belief as to the truth of the allegations in paragraph 423 concerning any other defendant.

**COUNT TWENTY SIX**
**the Tennessee False Claims Act**
**Tenn. Code Ann. § 4-18-103(a)(1), (2), and (3)**

424.    Plaintiff realleges and incorporates by reference all paragraphs set forth herein.

**ANSWER:**  Repeats and realleges its responses to each and every allegation as if fully

set forth herein.

425.    This is a claim for treble damages and penalties under the Tennessee False Claims Act.

**ANSWER:**  Denies the allegations in paragraph 425, except admits that Plaintiff purports

to bring a claim for treble damages and penalties under the Tennessee False Claims Act.

426.    By virtue of the acts described above, Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the State of Tennessee for payment or approval.

98

**ANSWER:** Denies the allegations in paragraph 426 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 426 concerning any other defendant.

427. By virtue of the acts described above, Defendants knowingly made, used or caused to be made or used, false records and statements, and omitted material facts, to induce the State of Tennessee, the state government and its agencies, to approve and pay such false and fraudulent claims.

**ANSWER:** Denies the allegations in paragraph 427 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 427 concerning any other defendant.

428. By virtue of the acts described above, Defendants knowingly conspired to violate the Tennessee False Claims Act.

**ANSWER:** Denies the allegations in paragraph 428 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 428 concerning any other defendant.

429. The State of Tennessee, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' illegal price-fixing and false statements made in submitting Filter bids to the State.

**ANSWER:** Denies the allegations in paragraph 429 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 429 concerning any other defendant.

430. By reason of the Defendants' acts, the State of Tennessee has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

**ANSWER:** Denies the allegations in paragraph 430 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 430 concerning any other defendant.

431. The State of Tennessee is entitled to the maximum penalty of $10,000 for each

and every false or fraudulent claim, records or statement made, used, presented or caused to be made, used or presented by Defendants.

**ANSWER:** Avers that paragraph 431 asserts legal conclusions to which no responsive pleading is required. To the extent that a response is required, denies the allegations in paragraph 431 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 431 concerning any other defendant.

**COUNT TWENTY SEVEN**
**Virginia Fraud Against Taxpayers Act**
**Va. Code Ann. §8.01-216.3(a)(1), (2), and (3)**

432.     Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

**ANSWER:** Repeats and realleges its responses to each and every allegation as if fully set forth herein.

433.     This is a claim for treble damages and penalties under the Virginia Fraud Against Taxpayers Act.

**ANSWER:** Denies the allegations in paragraph 433, except admits that Plaintiff purports to bring a claim for treble damages and penalties under the Virginia Fraud Against Taxpayers Act.

434.     By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Virginia State Government for payment or approval.

**ANSWER:** Denies the allegations in paragraph 434 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 434 concerning any other defendant.

435.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records and statements, and omitted material facts, to induce the Virginia State Government to approve and pay such false and fraudulent claims.

**ANSWER:** Denies the allegations in paragraph 435 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 435 concerning any other defendant.

436. By virtue of the acts described above, Defendants knowingly conspired to violate
the Virginia False Claims Act.

**ANSWER:** Denies the allegations in paragraph 436 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 436 concerning any other defendant.

437. The Virginia State Government, unaware of the falsity of the records, statement
and claims made, used, presented or caused to be made, used or presented by Defendants,
paid and continues to pay the claims that would not be paid but for Defendants' illegal
practices.

**ANSWER:** Denies the allegations in paragraph 437 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 437 concerning any other defendant.

438. By reason of defendants' acts, the State of Virginia has been damaged and
continues to be damaged in substantial amount to be determined at trial.

**ANSWER:** Denies the allegations in paragraph 438 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 438 concerning any other defendant.

439. The State of Virginia is entitled to the maximum penalty of $10,000 for each and
every false or fraudulent claim, records or statement made, used, presented or caused to be
made, used or presented by Defendants

**ANSWER:** Avers that paragraph 439 asserts legal conclusions to which no responsive

pleading is required. To the extent that a response is required, denies the allegations in

paragraph 439 as they relate to Honeywell, and denies knowledge or information sufficient to

form a belief as to the truth of the allegations in paragraph 439 concerning any other defendant.

## PRAYER FOR RELIEF

To the extent any response is required to the Prayer For Relief, Honeywell denies each and every allegation contained therein. Honeywell also denies each and every allegation of the Complaint not specifically admitted above.

## AFFIRMATIVE DEFENSES

Honeywell asserts the following affirmative defenses in response to the Complaint without assuming the burden of proof where such burden is otherwise on Plaintiff pursuant to applicable substantive or procedural law. Honeywell reserves the right to amend or supplement its defenses and raise counterclaims as additional facts concerning its defenses become known.

### FIRST DEFENSE

The Complaint, in whole or in part, fails to state a claim upon which relief can be granted, and Burch has admitted that he has no support for or personal knowledge of many of the allegations in the Complaint as it relates to Honeywell. Honeywell incorporates by reference the defenses set forth in the Defendants' February 2, 2009 Motion to Dismiss.

### SECOND DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff lacks standing to sue. Among the reasons Plaintiff does not have standing are: (i) the alleged injury is not the type addressed by the laws under which Plaintiff brings these claims; (ii) the alleged injury is indirect and too remote; (iii) more direct victims of the alleged injury exist and are pursuing claims; (iv) the alleged damages are speculative; and (v) Plaintiff's damage claims create an impermissible risk of duplicate recoveries and complex damage apportionment.

THIRD DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff has not suffered any cognizable antitrust injury, including but not limited to: (a) "injury in fact"; and (b) any injury proximately caused by any conduct of Honeywell.

FOURTH DEFENSE

Plaintiff is barred, either in whole or in part, from asserting their claims because he comes to Court with unclean hands, including, but not limited to, the fact that Burch unlawfully manufactured evidence to make it seem as if certain Defendants, including Honeywell, fixed prices when they did not.

FIFTH DEFENSE

Plaintiff's claims are barred in whole or in part by the applicable statute of limitations.

SIXTH DEFENSE

Plaintiff has failed to mitigate damages, if any, and any recovery should be reduced or denied accordingly.

SEVENTH DEFENSE

Plaintiff's claims are barred in whole or in part by the equitable doctrine of laches.

EIGHTH DEFENSE

Plaintiff's claims are barred in whole or in part because recovery or relief would unjustly enrich Plaintiff.

NINTH DEFENSE

Plaintiff's claims are barred in whole or in part because the named statutes do not apply retroactively to the conduct alleged in Plaintiff's complaint.

<u>TENTH DEFENSE</u>

Plaintiff's claims are barred in whole or in part because enforcing Plaintiff's claims would have an ex post facto effect against Defendants.

<u>ELEVENTH DEFENSE</u>

Plaintiff's claims are barred in whole or in part because Plaintiff does not have standing to bring this action.

<u>TWELTH DEFENSE</u>

Plaintiff's claims are barred in whole or in part because Plaintiff has failed to comply with the procedural requirements of the named statutes.

<u>THIRTEENTH DEFENSE</u>

Honeywell adopts and incorporates any applicable defense pleaded by any other defendant not otherwise expressly set forth herein.

## DEMAND FOR JURY TRIAL

**ANSWER:** Admits that Plaintiff seeks a jury trial under Rule 38 of the Federal Rules of

Civil Procedure.

WHEREFORE, Honeywell prays for judgment as follows:

      a.     dismissing Plaintiff's Amended Qui Tam Complaint with prejudice;

      b.     that Honeywell be awarded its costs and disbursements in this action,

             including reasonable attorneys' fees;

      c.     that Honeywell be granted prejudgment interest, as appropriate; and

      d.     granting such other and further relief as this Court may deem proper

             and just.

Dated: February 24, 2011     Respectfully Submitted,

By: /s/ Patrick M. Collins
Patrick M. Collins
Jonathan R. Buck
PERKINS COIE LLP
131 South Dearborn Street, Suite 1700
Chicago, IL 60603
Tel: (312) 324-8558
Fax: (312) 324-9558

Richard G. Parker (*pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Tel: (202) 383-5300
Fax: (202) 383-5414

Mark Racanelli (*pro hac vice admission pending*)
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036
Tel: (212) 326-2000
Fax: (212) 326-2061

Counsel for Defendant
HONEYWELL INTERNATIONAL INC.

## CERTIFICATE OF SERVICE

I, Jonathan R. Buck, hereby certify that on Thursday, February 24, 2011, I caused the foregoing **ANSWER OF HONEYWELL INTERNATIONAL, INC. TO PLAINTIFFS' FIRST AMENDED QUI TAM COMPLAINT** to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties indicated on the electronic filing receipt.


_____/s/ Patrick M. Collins_____