# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| IN RE: AFTERMARKET FILTERS ANTITRUST LITIGATION <br><br> THIS DOCUMENT RELATES TO: <br><br> ALL INDIRECT PURCHASER ACTIONS | Master Docket No. 1:08-cv-4883 <br><br> MDL Docket No. 1957 <br><br> Honorable Robert W. Gettleman <br> Magistrate Geraldine Soat Brown |

## ANSWER OF DONALDSON COMPANY, INC. TO PLAINTIFFS' FOURTH AMENDED CONSOLIDATED INDIRECT PURCHASER COMPLAINT

Defendant Donaldson Company, Inc. ("Donaldson") answers the allegations contained in plaintiffs' Fourth Amended Consolidated Indirect Purchaser Complaint ("Complaint") as follows. Unless specifically admitted, Donaldson denies all allegations of the Complaint.

1. This action involves a conspiracy among the Defendants and their co-conspirators to fix prices and to engage in other unlawful practices intended to raise, maintain, and/or stabilize prices for replacement motor vehicle oil, fuel and engine air filters ("Filters").

**ANSWER:** Donaldson admits that plaintiffs purport to allege a conspiracy among defendants to fix prices and to engage in other unlawful practices intended to raise, maintain, and/or stabilize prices for replacement motor vehicle oil, fuel and engine air filters. Donaldson denies the remaining allegations contained in Paragraph 1.

2. Beginning as early as January 1999, the Defendants exchanged confidential pricing and other competitively-sensitive information with one another via in-person meetings, telephone calls, facsimile and other communications. A number of the allegations with respect to the collusive meetings and communications between and among the Defendants are based upon the personal knowledge of William G. Burch, a former senior sales executive at Purolator and Champion (two Defendants who together controlled a significant portion of the market) during most of the Class Period.

**ANSWER:** Donaldson denies the allegations contained in Paragraph 2 concerning Donaldson. Donaldson is without sufficient information to form a belief as to the

truth of all other allegations contained in Paragraph 2, including those concerning any other defendant, and on that basis denies them.

3.    Since the conspiracy began, the Defendants successfully implemented multiple coordinated price increases for Filters.

**ANSWER:**    Donaldson denies the allegations contained in Paragraph 3.

4.    The Defendants charged more for Filters than they could have charged in a market unfettered by their unlawful conduct. The Defendants' illegal overcharges were passed through to end-users. Plaintiffs and other similarly situated indirect purchasers accordingly suffered injury to their business and property.

**ANSWER:**    Donaldson denies the allegations contained in Paragraph 4.

5.    Plaintiffs seek injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26, for the Defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1. Plaintiffs also seek to recover damages under state antitrust, unfair trade, consumer protection, and/or deceptive trade practices laws, and common law principles of restitution, disgorgement, and unjust enrichment (as well as to recover the costs of suit, including reasonable attorneys fees), for the injuries that they and all others similarly situated sustained as a result of the Defendants' conspiracy to fix, raise, maintain and/or stabilize the prices of Filters.

**ANSWER**:    Donaldson admits that plaintiffs purport to assert claims pursuant to Section 16 of the Clayton Act for alleged violations of Section 1 of the Sherman Act and under various state antitrust, unfair trade, consumer protection and deceptive trade practices laws and common law principles of restitution, disgorgement and unjust enrichment. Donaldson further admits that plaintiffs seek injunctive relief and damages. Donaldson denies the remaining allegations contained in Paragraph 5.

6.    This Court has subject matter jurisdiction over the federal antitrust claims asserted in this action under Section 1 of the Sherman Act (15 U.S.C. § 1), Section 16 of the Clayton Antitrust Act (15 U.S.C. § 26) and 28 U.S.C. §§ 1331 and 1337. The Court has jurisdiction over the state law claims under 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy. The Court also has jurisdiction over the state law claims under 28 U.S.C. § 1332 because the amount in controversy for the Class exceeds $5,000,000, and there are members of the Class who are citizens of a different state than the Defendants.

**ANSWER:**    Paragraph 6 asserts legal conclusions that do not require a response. To the extent that a response is required, Donaldson admits that the Court has subject

matter jurisdiction as to the claims brought under Section 1 of the Sherman Act and Section 16

of the Clayton Antitrust Act and that the Court has jurisdiction pursuant to 28 U.S.C. § 1332.

Donaldson denies the remaining allegations contained in Paragraph 6.

7.   Pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22 and 28 U.S.C. § 1391,
venue is proper in this district because one or more of the Defendants resided, transacted
business, were found, or had agents in this district and/or a substantial portion of the affected
interstate trade and commerce described below has been carried out in this district.

   **ANSWER:**   Paragraph 7 asserts legal conclusions that do not require a

response.  To the extent that a response is required, Donaldson admits that it transacted business

in the district but denies the remaining allegations contained in Paragraph 7.

8.   This Court has personal jurisdiction over each Defendant because, inter alia, each
Defendant: (a) transacted business throughout the United States, including in this district; (b)
manufactured, sold, shipped, and/or delivered substantial quantities of Filters throughout the
United States, including this district; (c) had substantial contacts with the United States,
including in this district; and/or (d) was engaged in an illegal scheme and price-fixing conspiracy
that was directed at and had the intended effect of causing injury to persons residing in, located
in, or doing business throughout the United States, including in this district.

   **ANSWER:**   Paragraph 8 asserts legal conclusions that do not require a

response.  To the extent that a response is required, Donaldson admits that the Court has personal

jurisdiction as to Donaldson.  Donaldson is without sufficient information to form a belief as to

the truth of the allegations contained in Paragraph 8 concerning any other defendant, and on that

basis denies them.  Donaldson denies the remaining allegations contained in Paragraph 8.

9.   The activities of the Defendants and their co-conspirators, as described herein,
substantially affected commerce throughout the United States and in each of the states identified
herein because the Defendants, directly or through their agents, engaged in activities affecting
each such state.  The Defendants purposefully availed themselves of the laws of each of the
states identified herein in connection with their activities relating to the production, marketing,
and/or sale of Filters.  The Defendants produced, promoted, sold, marketed, and/or distributed
Filters, thereby purposefully profiting from access to indirect-purchaser consumers in each such
state.  The Defendants also contracted to supply or obtain goods or revenue related to the
business for Filters.  As a result of the activities described herein:

   a. The Defendants caused damage to the residents of the states
   identified herein;

b. The Defendants caused damage in each of the states identified herein by acts or omissions committed outside each such state by regularly doing or soliciting business in each such state;

c. The Defendants engaged in persistent courses of conduct within each such state and/or derived substantial revenue from the marketing of Filters (and services relating to such marketing); and

d. The Defendants committed acts or omissions that they knew or should have known would cause damage (and did, in fact, cause such damage) in each such state while regularly doing or soliciting business in each such state, engaging in other persistent courses of conduct in each such state, and/or deriving substantial revenue from the marketing of Filters in each such state.

**ANSWER:** Donaldson admits that it manufactured and sold a very limited amount of automotive and light-duty truck oil, air, and fuel filters during the alleged class period. Donaldson denies that it caused damage to the residents of any states identified in the complaint. Donaldson denies that it caused damage in any of the states identified in the complaint by acts or omissions committed outside each state. Donaldson denies that it committed acts or omissions that it knew or should have known would cause damage. Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 9 concerning the actions of any other defendant, and on that basis denies them. The remaining allegations contained in Paragraph 9 assert legal conclusions that do not require a response. To the extent that a response is required, Donaldson denies the allegations contained in Paragraph 9.

10.   The conspiracy described herein adversely affected every person nationwide who indirectly purchased the Defendants' Filters. The Defendants' conspiracy has resulted in an adverse monetary effect on indirect purchasers in each state identified herein.

**ANSWER:** Donaldson denies the allegations contained in Paragraph 10.

11.   Prices of Filters in each state can be manipulated by conspirators within that state, outside of it, or both. Without enforcing the antitrust and/or consumer protection laws of each of the states identified herein, companies that break the law will go unpunished. The Defendants knew that commerce in each of the states identified herein would be adversely affected by implementing their conspiracy.

**ANSWER:** Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in the first sentence of Paragraph 11, and on that basis denies them. The second sentence of Paragraph 11 asserts policy statements that do not require a response. To the extent that a response is required, Donaldson denies the allegations contained in the second sentence of Paragraph 11. Donaldson denies the allegations contained in the third sentence of Paragraph 11 concerning Donaldson. Donaldson is without sufficient information to form a belief as to the truth of the remaining allegations contained in Paragraph 11, including those concerning any other defendant, and on that basis denies them.

12. Plaintiff Phillip Bowers is an Arizona resident. During the relevant period, Mr. Bowers indirectly purchased Filters from one or more of the Defendants or their coconspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:** Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 12, and on that basis denies them.

13. Plaintiff Nicholas Turberville is an Arkansas resident. During the relevant period, Mr. Tuberville indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:** Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 13, and on that basis denies them.

14. Plaintiff Arthur Cordisco is a California resident. During the relevant period, Mr. Cordisco indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:** Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 14, and on that basis denies them.

15. Plaintiff Francis Doll III is a California resident. During the relevant period, Mr. Doll indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:** Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 15, and on that basis denies them.

16. Plaintiff Mark Moynahan is currently a New York resident. During the relevant period, Mr. Moynahan resided in California and indirectly purchased Filters in California from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

> **ANSWER:** Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 16, and on that basis denies them.

17. Plaintiff Patrick Houston is a resident of the District of Columbia. During the relevant period, Mr. Houston indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

> **ANSWER:** Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 17, and on that basis denies them.

18. Plaintiff Mario Paquet is a Florida resident. During the relevant period, Mr. Paquet indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

> **ANSWER:** Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 18, and on that basis denies them.

19. Plaintiff Kris Clute is a Florida resident. During the relevant period, Mr. Clute indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

> **ANSWER:** Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 19, and on that basis denies them.

20. Plaintiff Robert Callopy is a Hawaii resident. During the relevant period, Mr. Callopy indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

> **ANSWER:** Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 20, and on that basis denies them.

21. Plaintiff Julie R. Kenner, MD, PhD, LLC is a Hawaii limited liability company. During the relevant period, Ms. Kenner indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:** Donaldson is without sufficient information to form a belief as to

the truth of the allegations contained in Paragraph 21, and on that basis denies them.

22. Plaintiff Kurt Evinger is an Illinois resident. During the relevant period, Mr. Evinger indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:** Donaldson is without sufficient information to form a belief as to

the truth of the allegations contained in Paragraph 22, and on that basis denies them.

23. Plaintiff Geraldine Davidson is an Illinois resident. During the relevant period, Ms. Davidson indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:** Donaldson is without sufficient information to form a belief as to

the truth of the allegations contained in Paragraph 23 and on that basis denies them.

24. Plaintiff Thomas Lown is an Iowa resident. During the relevant period, Mr. Lown indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:** Donaldson is without sufficient information to form a belief as to

the truth of the allegations contained in Paragraph 24, and on that basis denies them.

25. Plaintiff Edward Colburn is currently a Missouri resident. During the relevant period, Mr. Colburn resided in Kansas and indirectly purchased Filters in Kansas from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:** Donaldson is without sufficient information to form a belief as to

the truth of the allegations contained in Paragraph 25, and on that basis denies them.

26. Plaintiff Perry Piper is a Kansas resident. During the relevant period, Mr. Piper indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:** Donaldson is without sufficient information to form a belief as to

the truth of the allegations contained in Paragraph 26, and on that basis denies them.

27.   Plaintiff James Egan is a Massachusetts resident.  During the relevant period, Mr. Egan indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:**    Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 27, and on that basis denies them.

28.   Plaintiff Justus Austin is a Michigan resident.  During the relevant period, Mr. Austin indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:**    Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 28, and on that basis denies them.

29.   Plaintiff Benjamin Hammer is a Minnesota resident.  During the relevant period, Mr. Hammer indirectly purchased Filters from one or more of the Defendants or their coconspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:**    Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 29, and on that basis denies them.

30.   Plaintiff Mark Uglem is a Minnesota resident. During the relevant period, Mr. Uglem indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:**    Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 30, and on that basis denies them.

31.   Plaintiff Christopher Papale is a Mississippi resident.  During the relevant period, Mr. Papale indirectly purchased Filters from one or more of the Defendants or their coconspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:**    Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 31, and on that basis denies them.

32.   Plaintiff Dale Bentley is a Nebraska resident.  During the relevant period, Mr. Bentley indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:**    Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 32, and on that basis denies them.

33.   Plaintiff David Faircloth is a Nevada resident.  During the relevant period, Mr. Faircloth indirectly purchased Filters from one or more of the Defendants or their coconspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:**   Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 33, and on that basis denies them.

34.   Plaintiff Norman Wallin is a Nevada resident.  During the relevant period, Mr. Wallin indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:**   Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 34, and on that basis denies them.

35.   Plaintiff Robert Nilsen is a New York resident.  During the relevant period, Mr. Nilsen indirectly purchased Filters from one or more of the Defendants or their coconspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:**   Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 35, and on that basis denies them.

36.   Plaintiff David E. Boardman is a North Dakota resident.  During the relevant period, Mr. Boardman indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER**:   Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 36, and on that basis denies them.

37.   Plaintiff Carlos Cuevas is a Puerto Rico resident.  During the relevant period, Mr. Cuevas indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER**:   Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 37, and on that basis denies them.

38.   Plaintiff Karen Healy is a Rhode Island resident.  During the relevant period, Ms. Healy indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:**   Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 38, and on that basis denies them.

39.    Plaintiff Charles Gregory is a South Dakota resident.  During the relevant period, Mr. Gregory indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

      **ANSWER**:    Donaldson is without sufficient information to form a belief as to

the truth of the allegations contained in Paragraph 39, and on that basis denies them.

40.    Plaintiff Janice Boone is a Tennessee resident. During the relevant period, Ms. Boone indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

      **ANSWER**:    Donaldson is without sufficient information to form a belief as to

the truth of the allegations contained in Paragraph 40, and on that basis denies them.

41.    Plaintiff Dan McKittrick is a Utah resident.  During the relevant period, Mr. McKittrick indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

      **ANSWER:**    Donaldson is without sufficient information to form a belief as to

the truth of the allegations contained in Paragraph 41, and on that basis denies them.

42.    Plaintiff Harold Miles is a West Virginia resident.  During the relevant period, Mr. Miles indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

      **ANSWER:**    Donaldson is without sufficient information to form a belief as to

the truth of the allegations contained in Paragraph 42, and on that basis denies them.

43.    Plaintiff Bettendorf Transfer & Excavating, Inc. is a Wisconsin corporation. During the relevant period, Bettendorf Transfer & Excavating, Inc. indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

      **ANSWER**:    Donaldson is without sufficient information to form a belief as to

the truth of the allegations contained in Paragraph 43, and on that basis denies them.

44.    Defendant Champion Laboratories, Inc. ("Champion") is a Delaware corporation headquartered in Albion, Illinois, with its business address at 200 South Fourth St., Albion, Illinois 62806.  During the Class Period, Champion manufactured, marketed, sold and/or distributed Filters to customers throughout the United States.  Champion sells Filters under the

brand names Champ, Encore, Imperial, Kleener, Luber-finer, MXM, Petro Clear, Roughneck, TotalTec, United Components, and Z Guard.

      **ANSWER**:    Donaldson admits that Champion sold filters in the United States during the relevant period and believes that Champion manufactured filters but is without sufficient information to form a belief as to the truth of the remaining allegations contained in Paragraph 44, and on that basis denies them.

      45.   Defendant Honeywell International Inc. ("Honeywell") is a Delaware corporation headquartered in Morristown, New Jersey, with its business address at 101 Columbia Road, Morristown, New Jersey 07962.  During the Class Period, Honeywell manufactured, marketed, sold and/or distributed Filters to customers throughout the United States.  Honeywell International Consumer Products Group is a division of Honeywell located in Danbury, Connecticut and is responsible for the manufacture and sale of Filters, principally under the brand name FRAM.

      **ANSWER**:    Donaldson admits that Honeywell sold filters in the United States during the relevant period and believes that Honeywell manufactured filters but is without sufficient information to form a belief as to the truth of the remaining allegations contained in Paragraph 45, and on that basis denies them.

      46.   Defendant Wix Filtration Corp. LLC is a Delaware company headquartered in Gastonia, North Carolina, with a principal mailing address of 1 Wix Way, Gastonia, North Carolina 28054.  From on or about December 1, 2004, Wix Filtration Corp., LLC manufactured, marketed, sold and/or distributed Filters to customers throughout the United States.

      **ANSWER**:    Donaldson admits that Wix sold filters in the United States during the relevant period and believes that Wix manufactured filters but is without sufficient information to form a belief as to the truth of the remaining allegations contained in Paragraph 46, and on that basis denies them.

      47.   Defendant Affinia Group Inc. is a Delaware corporation located at 1101 Technology Drive, Ann Arbor, Michigan 48108.  On or about December 1, 2004, Affinia Group, Inc. (formerly AAG OPCO Corp.) purchased the stock, assets and liabilities from Dana Corporation relating to Wix Filtration Products as set forth in the Stock and Asset Purchase Agreement by and between AAG OPCO Corp. and Dana Corporation dated July 8, 2004 (the "Purchase Agreement").  A true and correct copy of the Purchase Agreement is attached hereto as Exhibit A.  The Purchase Agreement can also be found online at http://www.secinfo.com/dsvrn.z5Gy.7.htm#1stPage.

A.      At all relevant times prior to December 1, 2004, Dana Corporation operated Wix Filtration Products through its Automotive Aftermarket Group.  Wix Filtration Products manufactured, marketed, sold and distributed Filters to customers throughout the United States.

B.      Pursuant to the terms of the Purchase Agreement, Affinia Group Inc. assumed and succeeded to the liabilities of Dana Corporation's Automotive Aftermarket Group.

The Purchase Agreement specifically states in the recitals that liabilities are being purchased relating to the manufacture and distribution of automotive aftermarket components:

> Whereas, Seller and its Subsidiaries are, among other things, engaged through Seller's Automotive Aftermarket Group in the manufacture and distribution of automotive aftermarket components in the North America, Europe, Asia, and South America, as described in Exhibit A (the "Business"); and
>
> Whereas, upon the terms and subject to the conditions hereinafter set forth, the parties desire that Seller and its Subsidiaries sell, assign and transfer to Purchaser, and that Purchaser purchase and acquire from Seller and its Subsidiaries, all of the right, title and interest of Seller and its Subsidiaries in and to the Purchased Shares and the Purchased Assets, and that Purchaser assume the Assumed Liabilities.

(Purchase Agreement at p. 5)

C.      The broad definition of Assumed Liabilities in Section 1.4 states:

> Simultaneously with the Closing, on the terms and subject to the conditions set forth herein, Purchaser shall assume and be liable for, and shall pay, perform and discharge when due, all obligations and Liabilities of Seller and its Subsidiaries (other than the Acquired Companies), whether occurring or accruing before, on or after the Closing Date, whether known or unknown, fixed or contingent, asserted or unasserted, and not satisfied or extinguished as of the Closing date, primarily relating to, primarily arising out of or primarily resulting from the Business (collectively, and excluding the Excluded Liabilities the "ASSUMED LIABILITIES"), including, by way of example and not limitation, all of the following obligations and liabilities of Seller and its Subsidiaries (other than the Acquired Companies):

*********

(d)      all Liabilities arising from commitments (in the form of accepted purchase orders or otherwise) to sell, distribute, manufacture or market products, or outstanding quotations, proposals or bids, primarily relating to, primarily arising out of or primarily resulting from the Business;

**********

(f)      all Liabilities under Business Contracts;

Purchase Agreement at pp. 8-9.

D.     As set forth above, the liabilities of Dana Corporation transferred "simultaneous with the closing" and were not executory terms of the Purchase Agreement. Affinia Group, Inc. is liable under successorship liability for the illegal practices alleged herein that occurred prior to December 1, 2004 because it assumed those liabilities by contract.

E.     Affinia Group, Inc. is also liable for the illegal practices alleged herein throughout the conspiracy because it joined, and continued to participate in, the previously established conspiracy.

F.     Affinia Group has represented that since on or about December 1, 2004, Wix Filtration Products has been operating through the Affinia Global Filtration Operating Group and Wix Filtration Corp. LLC, a wholly- owned subsidiary of Affinia Group, Inc.  All references to "Wix" herein refer to Affinia Group Inc., both individually and as the successor-in-interest to Dana Corporation and its subsidiaries, and Wix Filtration Corp. LLC and Affinia are collectively referred to herein as "Wix."

**ANSWER**:     Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 47, and on that basis denies them.

48.  Defendant Cummins Filtration, Inc. ("Cummins") is an Indiana corporation headquartered in Nashville, Tennessee, with its business address at 2931 Elm Hill Pike, Nashville, Tennessee 37214.  During the Class Period, Cummins manufactured, marketed, sold and/or distributed Filters to customers throughout the United States, principally under the brand name Fleetguard.

**ANSWER**:  Donaldson admits that Cummins sold filters in the United States during the relevant period and believes that Cummins manufactured filters but is without sufficient information to form a belief as to the truth of the remaining allegations contained in Paragraph 48, and on that basis denies same.

49.  Defendant Donaldson Company, Inc. ("Donaldson") is a Delaware corporation headquartered in Minneapolis, Minnesota, with its business address at 1400 West 94th Street, Minneapolis, Minnesota 55431.  During the Class Period, Donaldson manufactured, sold and/or distributed Filters to customers throughout the United States.

**ANSWER**:     Donaldson admits the allegations contained in the first sentence of Paragraph 49.  Donaldson admits that during the alleged class period, Donaldson manufactured and sold a limited number of light-duty oil, air, and fuel filters in the United States.

50.  Defendant Baldwin Filters, Inc. ("Baldwin") is a Delaware corporation headquartered in Kearney, Nebraska, with a business address of 4400 E. Hwy. 30, Kearney, Nebraska 68848.  During the Class Period, Baldwin manufactured, marketed, sold and/or distributed Filters to customers throughout the United States.

**ANSWER**:    Donaldson admits that Baldwin sold filters in the United States during the relevant period and believes that Baldwin manufactured filters but is without sufficient information to form a belief as to the truth of the remaining allegations contained in Paragraph 50, and on that basis denies them.

51.    Defendant ArvinMeritor, Inc. ("ArvinMeritor") is an Indiana corporation headquartered in Troy, Michigan, with its business address at 2135 West Maple Road, Troy, Michigan 48084.  In February 1999, ArvinMeritor Industries, Inc. (ArvinMeritor's predecessor) acquired Purolator Products NA, Inc. (now known as Arvinmeritor Filters Operating Company LLC), Purolator Products Company (now known as ArvinMeritor Filters Holding Company LLC) (collectively, the "Purolator LLCs"), the owner of the Purolator brand and leading manufacturers of automotive oil, air and fuel filters, and filter housings. ArvinMeritor or its predecessor owned and operated Purolator LLCs' Aftermarket Filters business from February 1999 until March 2006.

**ANSWER**:    Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 51, and on that basis denies them.

52.    Defendant Purolator Products NA, Inc. (now known as ArvinMeritor Filters Operating Company LLC), is a Delaware limited liability corporation and was located in Fayetteville, North Carolina with a business address of 3200 Natal St., Fayetteville, North Carolina, 28306, and operated from Brentwood, Tennessee, with a business address at 100 Westwood Place, Suite 200, Brentwood, Tennessee, 37027.  Defendant, Purolator Products Company (now known as ArvinMeritor Filters Holding Company LLC) is a Delaware limited liability corporation and was located in Fayetteville, North Carolina, with a business address of 3200 Natal St., Fayetteville, North Carolina, 28306, and operated from Brentwood, Tennessee, 37027.  The Purolator LLCs were a wholly-owned subsidiary of defendant ArvinMeritor (or its predecessor) from February 1999 through March 2006.  During the Class Period, the Purolator LLCs manufactured, marketed, sold and/or distributed Filters to customers throughout the United States.

**ANSWER**:    Donaldson admits that Purolator sold filters in the United States during the relevant period and believes that Purolator manufactured filters but is without sufficient information to form a belief as to the truth of the remaining allegations contained in Paragraph 52, and on that basis denies them.

53.    Defendants ArvinMeritor, Purolator Products NA, Inc. (now known as ArvinMeritor Filters Operating Company LLC), and Purolator Products Company (now known as ArvinMeritor Filters Holding Company LLC) are collectively referred to hereinafter as "Former Purolator."

**ANSWER**:     Donaldson admits that plaintiffs purport to refer collectively to

defendants ArvinMeritor and Purolator Filters NA LLC as "Purolator" as stated in Paragraph 53.

54.     Champion, Purolator, Honeywell, Wix, Cummins, Donaldson, and Baldwin are collectively referred to hereinafter as the "Defendants."

**ANSWER**:     Donaldson admits that plaintiffs purport to define the term

"Defendants" as stated in Paragraph 54.

55.     Various persons and entities, whose identities are at this time unknown to Plaintiffs, participated as coconspirators in the violations alleged herein and performed acts and made statements in furtherance thereof. When Plaintiffs learn the identities of such co-conspirators, Plaintiffs may seek leave to amend this Complaint to add such co-conspirators as Defendants.

**ANSWER**:     Donaldson denies the allegations contained in the first sentence of

Paragraph 55. The second sentence of Paragraph 55 does not require a response. To the extent

that a response is required, Donaldson denies the allegations contained in the second sentence of

Paragraph 55.

56.     The acts alleged in this Complaint have been done by the Defendants and their co-conspirators, or were authorized, ordered, or done by their respective officers, agents, employees, or representatives while actively engaged in the management of each Defendant's business or affairs.

**ANSWER**:     Donaldson denies the allegations contained in Paragraph 56

concerning Donaldson. Donaldson is without sufficient information to form a belief as to the

truth of all other allegations contained in Paragraph 56, including those concerning any other

defendant, and on that basis denies them.

57.     Each of the Defendants named herein acted as the agent or joint venturer of or for the other Defendants with respect to the acts, violations and common course of conduct alleged herein.

**ANSWER**:     Donaldson denies the allegations contained in Paragraph 57

concerning Donaldson. Donaldson is without sufficient information to form a belief as to the

truth of all other allegations contained in Paragraph 57, including those concerning any other

defendant, and on that basis denies them.

58.   Filters are used to remove contaminants from combustion engines and related systems.  Oil filters remove contaminants from the motor oil used to lubricate an engine's pistons.  Fuel filters primarily screen dirt and rust particles from an engine's fuel lines.  Engine air filters prevent particulate matter from entering an engine's cylinders.  Because they become less effective over time as contaminants are filtered out of or away from the respective systems, the Filters at issue in this litigation are designed to be replaced periodically.  Replacement filters are purchased to replace original equipment filters included in new motor vehicles.  The Freedonia Group, a market research firm, estimates that in 2006 oil filters sales were approximately $1.6 billion, engine air filters sales were approximately $930 million, and fuel filters sales were approximately $200 million.

ANSWER:   Donaldson admits the allegations contained in the first six

sentences of Paragraph 58.  Donaldson is without sufficient information to form a belief as to the

truth of the remaining allegations contained in Paragraph 58, and on that basis denies them.

59.   Filter manufacturers sell their products to vehicle manufacturers for use in new automobiles, and to "aftermarket" sellers for professional or self-installation.  The Defendants are the primary manufacturers of aftermarket (or "replacement") Filters in the United States and the allegations contained herein involve the Filters aftermarket.

ANSWER:   Donaldson admits that it sells certain limited light-duty oil, air, and

fuel filters to original equipment manufacturers and to customers that sell such filters in the

aftermarket.  Donaldson denies that it is a primary manufacturer of aftermarket automotive and

light-duty truck air, oil, or fuel filters.  Donaldson is without sufficient information to form a

belief as to the truth of the allegations contained in the second sentence of Paragraph 59, and on

that basis denies them.  Donaldson is without sufficient information to form a belief as to the

truth of the remaining allegations contained in Paragraph 59, including those concerning any

other defendant, and on that basis denies them.

60.   Honeywell estimated that in 2007 there were 217 million automobiles on the road in the United States.  An important part of maintaining the life and performance of an automobile involves changing its Filters.  Most automobile manufacturers recommend that the oil filter be replaced at every oil change.  According to a car care web site, "next to changing your oil and oil filter, replacing your air and fuel filters on a regular basis is the single most important act of maintenance you can perform for your engine."  NAPA recommends that a car owner replace the air filter once a year, or every 15,000 miles.  Thus, for most cars on the road today, the owners replace their vehicle's oil and air filters at least every year.

**ANSWER**: Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 60, and on that basis denies them.

61. Because of the recommended maintenance intervals, oil changes are the automotive aftermarket's number one service and, therefore, oil filters are the aftermarket's highest volume replacement part.

**ANSWER**: Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 61, and on that basis denies them.

62. The Filters aftermarket is organized around two groups of direct purchasers. The first group of direct purchasers buys Filters for installation into others' vehicles. This group includes companies such as Jiffy Lube, Midas, and Express Lube. Those direct purchasers sell filters to the end-users called the "do-it-for-me" (DIFM) purchasers, who pay the retailers to install Filters into their vehicles for them.

**ANSWER**: Donaldson admits that certain direct purchasers of aftermarket Filters install those filters into others' vehicles. Donaldson admits that some end users pay retailers to install Filters into their vehicles for them. Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 62, and on that basis denies them.

63. The second group of direct purchasers includes retailers and distributors. These retailers include automotive supply stores such as Advance Auto Parts, AutoZone and O'Reilly, and mass merchandisers like Wal-Mart. According to O'Reilly Automotive Co-President Greg Henslee, the top ten retailers account for approximately 40 percent of all replacement Filters sold in the United States. This group of direct purchasers in turn re-sells those Filters to the do-it-yourself ("DIY") end-users, who install Filters into their own vehicles.

**ANSWER**: Donaldson admits that certain direct purchasers of aftermarket Filters resell those filters. Donaldson admits that some end users install Filters into their own vehicles. Donaldson is without sufficient information to form a belief as to the truth of the remaining allegations contained in Paragraph 63, and on that basis denies them.

64. End users of Filters, either as purchasers of Filters separately (DIY) or as part of a service package that included both parts and services (DIFM), are included in the Class.

**ANSWER**:     Paragraph 64 asserts a legal conclusion to which no response is required.  To the extent a response is required, Donaldson denies the allegations contained in Paragraph 64.

65.   The Filters industry is highly susceptible to cartel activity.  This is a result of a number of factors including: (a) high market concentration, (b) the commodity nature of Filters (including both interchangeability and price as the primary drivers of sales), (c) barriers to entry, (d) inelastic demand, and (e) lack of substitutability of the product.

**ANSWER**:     Donaldson is without information sufficient to form a belief as to the truth of the allegations contained in Paragraph 65, and on that basis denies them.

66.   A high degree of concentration facilitates the operation of a cartel because it makes it easier to coordinate behavior among possible co-conspirators and makes it more difficult for customers to avoid the effects of collusive behavior.  The market for Filters is highly concentrated, with the Defendants controlling about 90 percent of the sales of these products. Several of the Defendants also have interlocking business arrangements.  For example, in April 2006, ArvinMeritor sold Purolator to Bosch and Mann + Hummel.  Bosch and Mann + Hummel now operate Purolator as a joint venture.  Mann + Hummel CEO Dieter Seipler stated that the joint venture was a natural alliance because Bosch is a major private-brand customer for Mann + Hummel in Europe and in other regions of the world.  These interlocking business arrangements, in a highly concentrated market, assisted the Defendants in successfully implementing their conspiracy.

**ANSWER**:     Donaldson denies that it was part of any alleged conspiracy. Donaldson is without sufficient information to form a belief as to the truth of the remaining allegations contained in Paragraph 66, including those concerning any other defendant, and on that basis denies them.

67.   Filters are considered to be inter-exchangeable, undifferentiated products.  All Filters must undergo Society of Automotive Engineers (SAE) testing to ensure that they meet vehicle manufacturers' specifications.  An industry report notes that vehicle manufacturers have done a better job utilizing a small number of oil filters to cover all of their engine applications. Thus, there are fewer part numbers in the aftermarket Filter line than other aftermarket automotive products.

**ANSWER**:     Donaldson admits that some oil, air, and fuel filters are subjected to Society of Automotive Engineers or other testing to ensure that they meet vehicle

manufacturers' specifications. Donaldson is without sufficient information to form a belief as to the truth of the remaining allegations contained in Paragraph 67, and on that basis denies them.

68. Purolator and Honeywell's FRAM are perhaps the most well known Filters brands. Wix lacks a similarly strong brand name but manufactures Filters under private label for, inter alia, NAPA Auto Parts and Carquest Auto Parts. Wix is also the number one filter supplier for NASCAR. Champion focuses on private label manufacturing as well and manufacturing Filters under Mobile 1, Valvoline, STP, Mighty, and Firestone labels.

**ANSWER**: Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 68, and on that basis denies them.

69. The private label segment provides an example of the fungible nature of Filters. Shell and Pennzoil, for example, both sell private label Filters made for them by a number of the Defendants to Shell or Pennzoil's specifications. Table 1 below shows the manufacturers suppliers) of Filters for Shell in 2004.

**Table 1**

| Company/Brand | Sales Volume |
|---|---|
| Honeywell/FRAM | 28% |
| ArvinMeritor/Purolator | 26% |
| Champion Laboratories | 17% |
| Wix | 14% |
| Baldwin/Hastings | 3% |
| AC Delco | 10% |

For the Pennzoil and Quaker brand of Filters, Honeywell (FRAM) and Former Purolator are the main suppliers, as shown in Table 2.

**Table 2**

| Filter Brand | Manufacturer | Purchase Volume |
|---|---|---|
| Pennzoil Filters (USA) | Honeywell/FRAM | 40 Million Units |
| Quaker State Filters (CAN) | | |
| Quaker State Filters (USA) | ArvinMeritor/Purolator | 25.1 Million Units |
| Pennzoil Filters (CAN) | | |

**ANSWER**: Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 69, and on that basis denies them.

70. Price is the key driver of sales of Filters. According to an industry report, direct purchasers surveyed for the report considered price to be the most important factor in their purchase of Filters.

**ANSWER**: Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 70, and on that basis denies them.

71. The presence of significant barriers to entry makes new entry by others difficult and facilitates the operation of a cartel. In the market for Filters, there are significant barriers to entry. In the Filters market, barriers to entry arise primarily from the need for significant start-up capital expenditures, initial product depth within a product line, distribution infrastructure, and long-standing customer relationships.

**ANSWER**: Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 71, and on that basis denies them.

72. There is significant evidence that demand for Filters is inelastic, or in other words, does not change in the face of price changes. It is well established in economics that goods which form a small share of consumer expenditure exhibit inelastic demand, because consumers are less likely to change consumption patterns when the absolute price increase is limited. Because vehicle manufacturers either require or strongly encourage Filter changes at specific intervals, end users do not decrease their use of Filters when prices increase. Filters are a small part of the cost of owning and maintaining an automobile.

**ANSWER**: Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 72, and on that basis denies them.

73. There are no reasonable substitutes for Filters. Vehicle owners have little choice but to have the Filters in their vehicles replaced because they tend to wear out over time and are necessary for the operation of their vehicles.

**ANSWER**: Donaldson admits that automotive and light-duty truck oil, air and fuel filters tend to wear out over time and for that reason must be replaced. Donaldson is without sufficient information to form a belief as to the truth of the remaining allegations contained in Paragraph 73, and on that basis denies them.

74. Beginning at least as early as January 1, 1999, and continuing thereafter, the Defendants and their co-conspirators participated in a continuing contract, combination and

conspiracy to artificially fix, raise, maintain and/or stabilize prices for Filters in the United States.

> **ANSWER**: Donaldson denies the allegations contained in Paragraph 74.

75. In formulating and effectuating their unlawful scheme, the Defendants and their co-conspirators engaged in anticompetitive and other unlawful activities, including but not limited to the following:

> a. Attending meetings or otherwise engaging in discussions in the United States and elsewhere by telephone, facsimile, and email regarding the pricing and sale of Filters;
>
> b. Agreeing to charge specific prices for Filters and otherwise fix, increase, maintain, or stabilize the prices of Filters sold to purchasers in the United States;
>
> c. Selling Filters to customers in the United States and elsewhere at collusive and non-competitive prices pursuant to the agreement reached;
>
> d. Accepting payment for Filters sold to customers in the United States and elsewhere at collusive and non-competitive prices;
>
> e. Communicating with one another to discuss the prices, customers, markets, and price levels of Filters sold in the United States;
>
> f. Giving actual and/or apparent authority to employees' participation in furtherance of the wrongful conduct; and
>
> g. Fraudulently concealing the conspiracy, conspiratorial contacts, and wrongful conduct through various means.

> **ANSWER**: Donaldson denies the allegations contained in Paragraph 75.

76. As a result of their unlawful actions, the Defendants were able to impose multiple coordinated price increases for Filters during the Class Period, including in 1999, early 2004, and late 2004/early 2005.

> **ANSWER**: Donald denies the allegations contained in Paragraph 76.

77. Numerous allegations contained herein, particularly with respect to the collusive meetings and communications between and among the Defendants and their co-conspirators, are based upon the personal knowledge of William G. Burch, a former senior sales executive at Defendants Purolator and Champion during most of the relevant period.

> **ANSWER**: Donaldson denies that William Burch possesses any personal

knowledge of any wrongdoing by Donaldson and is without sufficient information to form a

belief as to the truth of the allegations contained in Paragraph 77, including those that concern

other defendants, and on that basis denies them.

78. In February 1999, ArvinMeritor (or its predecessor) acquired the Purolator LLCs. Marlen Silverii, an ArvinMeritor Senior Vice President formerly employed by Former Purolator, was instrumental in completing the acquisition.

**ANSWER**: Donaldson is without sufficient information to form a belief as to

the truth of the allegations contained in Paragraph 78, and on that basis denies them.

79. Shortly after the acquisition, in or around March 1999, Mr. Silverii met with certain Former Purolator senior employees to discuss Former Purolator's profit margins. In the view of ArvinMeritor executives, those profit margins were too low.

**ANSWER**: Donaldson is without sufficient information to form a belief as to

the truth of the allegations contained in Paragraph 79, and on that basis denies them.

80. At the time ArvinMeritor acquired Purolator LLCs, Mr. Burch was a National Accounts Manager at Former Purolator. Mr. Burch was present at the March 1999 meeting with Mr. Silverii and other senior Former Purolator employees.

**ANSWER**: Donaldson is without sufficient information to form a belief as to

the truth of the allegations contained in Paragraph 80, and on that basis denies them.

81. During the meeting, Mr. Silverii explained that ArvinMeritor's executives wanted to implement a Filters price increase. In order to do so successfully without losing market share or business, Mr. Silverii said that Former Purolator would need the agreement of other Defendants to raise prices along with Former Purolator. Mr. Silverii told the assembled Former Purolator senior personnel to contact their counterparts at other Defendant Filter manufacturers with the express purpose of obtaining each Defendant's agreement to implement a coordinated, industry-wide Filters price increase.

**ANSWER**: Donaldson is without sufficient information to form a belief as to

the truth of the allegations contained in Paragraph 81, and on that basis denies them.

82. A number of the senior Former Purolator personnel who attended the meeting complied with Mr. Silverii's directive. These individuals contacted and communicated with their counterparts at the other Defendants regarding a coordinated price increase for Filters. The Defendants met, discussed, and otherwise coordinated the timing, amount and purported public justification for the price increase on at least several occasions in the following months.

**ANSWER**:    Donaldson denies that any employees of Former Purolator contacted and communicated with Donaldson employees regarding a coordinated price increase and denies the remaining allegations contained in Paragraph 82 concerning Donaldson. Donaldson is without sufficient information to form a belief as to the truth of the remaining allegations contained in Paragraph 82, and on that basis denies them.

83.   In or about May 1999, the Defendants discussed increasing Filter prices at the Jiffy Lube Association of Franchisees Show ("JLAF Show") in Nashville, Tennessee.  Mr. Silverii and at least one other senior Former Purolator employee met with a senior Honeywell employee at the JLAF Show and discussed increasing Filters prices.

**ANSWER**:    Donaldson denies the allegations contained in the first sentence of Paragraph 83.  Donaldson is without sufficient information to form a belief as to the truth of all other allegations contained in Paragraph 83, and on that basis denies them.

84.   In or about June 1999, Mr. Burch heard from a fellow Former Purolator employee that Former Purolator had spoken with Honeywell at the JLAF Show and told them to raise prices.  The fellow Former Purolator employee also told Mr. Burch that "FRAM knows we're going up."

**ANSWER:**    Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 84, and on that basis denies them.

85.   Also in mid-1999, Mr. Silverii met with Champion's President, Tom Mowatt.  Mr. Silverii and Mr. Mowatt discussed fixing and coordinating Filters prices in the United States.

**ANSWER:**    Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in the first sentence of Paragraph 85, and on that basis denies them.

86.   On or about June 28, 1999, Mr. Silverii directed a senior Former Purolator employee to fax Honeywell a draft letter that Former Purolator intended to send to its customers informing them of an impending price increase on all Purolator Filters.  The draft letter, backdated June 21, 1999, announced a price increase that Former Purolator planned to implement on August 15, 1999.  The pretext for the price increase, as set out in the letter, included increases in costs for labor, health care, freight, and raw materials.

**ANSWER:** Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 86, and on that basis denies them.

87. On June 28, 1999, the Former Purolator senior employee sent the draft price increase letter by fax to his counterpart at Honeywell, as requested by Mr. Silverii. The fax recipient at Honeywell was the same person with whom Mr. Silverii secretly met at the JLAF Show. When the fax was sent, Former Purolator had not yet sent the price increase letter to any of its customers.

**ANSWER:** Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 87, and on that basis denies them.

88. On July 14, 1999, Former Purolator sent the price increase letter to its customers (though the letter was dated "July 7, 1999"). The letter was nearly identical to the draft letter Former Purolator shared with Honeywell a few weeks earlier. Shortly thereafter, around August 1999, the other Defendants followed Former Purolator and successfully implemented similar Filters price increases. With this unlawful agreement in place, Defendants could maintain their price fixing scheme going forward.

**ANSWER:** Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in the first two sentences of Paragraph 88, and on that basis denies them. Donaldson denies the remaining allegations contained in Paragraph 88.

89. Over the next few years, the Defendants continued to adhere to their unlawful agreement and conspiracy. Each Defendant acted with the knowledge that every other Defendant had already made a conscious commitment to the common scheme of joint price increases.

**ANSWER:** Donaldson denies the allegations contained in Paragraph 89.

90. No Defendant announced its withdrawal from the conspiracy. No Defendant voiced any hesitation. In fact, before a trade association meeting in 2004, a Champion sales representative joked that he and Champion's President, John Evans, "talked about going to [the] Filter [Manufacturers] Council cocktail party wearing T-shirts saying 'we went up first last time.'"

**ANSWER**: Donaldson denies being a part of any alleged conspiracy and denies the allegations contained in Paragraph 90 concerning Donaldson. Donaldson is without sufficient information to form a belief as to the truth of the remaining allegations contained in Paragraph 90, and on that basis denies them.

91.     In or about February 2004, Champion's President, Mr. Evans, met with Champion's senior employees who were responsible for the Filters business, including Mr. Burch (who had left Former Purolator in August 1999 to join Champion as a National Accounts Manager).  Mr. Evans indicated at that meeting that Champion would "lead the way" with another Filters price increase.  Mr. Evans advised the assembled employees that it was important the Filters price increase not come at the expense of Champion's market share.  Champion needed to coordinate the price increase with the other Defendants to ensure the continued success of the conspiracy.  Mr. Evans therefore directed Champion's senior employees to make frequent telephone calls to the other Defendants to discuss pricing.

        **ANSWER**:     Donaldson is without sufficient information to form a belief as to

the truth of the allegations in Paragraph 91, and on that basis denies them.

92.     Mr. Evans, together with other Champion senior employees, contacted each of the other Defendants, including Mr. Silverii at ArvinMeritor, to coordinate this proposed Filters price increase.

        **ANSWER**:     Donaldson denies that it was contacted by Mr. Evans or any other

Champion employee with respect to a proposed price increase.  Donaldson is without sufficient

information to form a belief as to the truth of the remaining allegations contained in Paragraph

92, and on that basis denies them.

93.     As a result of these illicit communications, and in furtherance of their continuing conspiracy, the Defendants agreed to increase Filters prices.  In or about April 2004, each of the Defendants announced and successfully implemented a coordinated Filters price increase.

        **ANSWER**:     Donaldson admits that in early March, 2004, it announced price

adjustments on certain products, including some filters, but Donaldson denies that these price

adjustments were implemented as a result of coordination with any other defendant.  Donaldson

is without sufficient information to form a belief as to the truth of the allegations contained in

Paragraph 93 regarding the timing or success of other defendants' price increases, and on that

basis denies them.  Donaldson denies the remaining allegations contained in Paragraph 93.

94.     In early September 2004, Champion led the effort to implement yet another price increase among the Defendants in furtherance of the conspiracy.  Mr. Evans again enlisted several senior Champion sales representatives, including Mr. Burch, to discuss the price increase with the other Defendants.

**ANSWER:** Donaldson denies that it was contacted by Mr. Evans or any other Champion employees with respect to a proposed price increase. Donaldson is without sufficient information to form a belief as to the truth of all other allegations in Paragraph 94, and on that basis denies them.

95. In September 2004, at the Filters Manufacturers Council meeting in Nashville, Tennessee, Champion employees discussed with Former Purolator and Wix, among other Defendants, Champion's intention to raise Filters prices again in 2004. At the time of the meeting, Mr. Evans (from Champion) was the Council's Vice-Chairman, and Mr. Silverii (from ArvinMeritor) was Secretary. In the words of one Champion employee, the "primary goal over the next day and a half [of the Council meeting] is to get everybody to get out there, and the message is gonna be that we're going up again, and when." The employee noted: "That's basically our message to everybody."

**ANSWER:** Donaldson admits that one or more Donaldson employees attended a Filter Manufacturers Council meeting in Nashville, Tennessee in September 2004. Donaldson is without sufficient information to form a belief as to the truth of the remaining allegations contained in Paragraph 95, and on that basis denies them.

96. By October 27, 2004, Champion had received confirmation from Honeywell, Cummins, Donaldson, and Former Purolator that each would follow (or had already followed) Champion in implementing a Filters price increase of at least 5 percent. Honeywell, Donaldson and Cummins went so far as to send Champion their draft price increase letters. Former Purolator gave Champion a verbal confirmation that it agreed to increase its Filters prices.

**ANSWER:** Donaldson denies the allegations contained in Paragraph 96 concerning Donaldson. Donaldson is without sufficient information to form a belief as to the truth of all other allegations contained in Paragraph 96, and on that basis denies them.

97. In or around October or November 2004, the Defendants informed their respective customers of the previously agreed-upon Filters price increase. In an attempt to conceal the conspiracy and the collusively coordinated price increase, the Defendants "blamed" the increase on rising steel costs.

**ANSWER:** Donaldson admits that it began notifying customers of price increases for certain filters beginning in September 2004, but Donaldson denies that its price

adjustments were the result of coordination with any other defendant.  Donaldson denies the

remaining allegations contained in Paragraph 97.

98.     At or around the same time, one of Champion's largest private-label customers questioned the need for another price increase in 2004.  The customer also questioned Champion's explanation that rising steel prices necessitated the price increase.  The customer requested that Champion provide it with an additional explanation justifying the price increase.

**ANSWER:**    Donaldson is without sufficient information to form a belief as to

the truth of the allegations contained in Paragraph 98, and on that basis denies them.

99.     The request created a serious dilemma for Champion.  A few months earlier, Champion had introduced a new oil filter called eCore, twelve models of which fit 75 percent of the cars on the road.  The eCore filter was made, in part, out of fabric instead of steel.  Thus, Champion's oil filter input costs had actually decreased by approximately 20 percent because of its diminished need for raw steel in the manufacture of eCore oil filters.

**ANSWER:**    Donaldson is without sufficient information to form a belief as to

the truth of the allegations contained in Paragraph 99, and on that basis denies them.

100.    Instead of providing its customers with its eCore input prices, Champion gave its customer a Former Purolator spreadsheet for Former Purolator's outdated input costs, falsely representing Former Purolator's costs as its own.  The spreadsheet satisfied the complaining customer.  But more importantly, the spreadsheet concealed the true basis for the price increase: the Defendants' price-fixing agreement.

**ANSWER:**    Donaldson is without sufficient information to form a belief as to

the truth of the allegations contained in Paragraph 100, and on that basis denies them.

101.    Likewise, in the same time period, Honeywell changed the design of most of its FRAM filters, and its private-label filters for Pennzoil and Quaker State, to have cardboard end caps instead of steel, greatly reducing the amount of steel needed for its filters.  Yet, when it increased prices in late 2004, it cited increased steel costs as the pretextual reason.

**ANSWER:**    Donaldson is without sufficient information to form a belief as to

the truth of the allegations contained in Paragraph 101, and on that basis denies them.

102.    Ultimately, in or around November or December 2004, each of the Defendants had successfully implemented another coordinated Filters price increase.  Thereafter, in subsequent years, the Defendants continued to adhere to their unlawful agreement and conspiracy, maintaining or increasing Filters prices.  To date, no Defendant has announced its withdrawal from the conspiracy.

**ANSWER:** Donaldson denies that it participated in any alleged conspiracy. Donaldson admits that it began notifying customers of price increases for certain filters beginning in September, 2004, but Donaldson denies that its price adjustments were the result of coordination with any other defendant and denies the allegations contained in the second sentence of Paragraph 102. Donaldson is without sufficient information to form a belief as to the truth of the remaining allegations contained in Paragraph 102, and on that basis denies them.

103. In July 2008, a spokesperson for the United States Department of Justice confirmed that "[t]he Antitrust Division is investigating the possibility of anti-competitive practices in the automotive oil filter industry." The spokesperson, however, declined to identify which companies were under investigation.

**ANSWER:** Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 103, and on that basis denies them.

104. In a July 2008 10-Q filing with the Securities and Exchange Commission, Honeywell confirmed that various Defendants, including Honeywell itself, had received subpoenas in connection with the DOJ's investigation. After disclosing that it was a defendant in various suits involving the claims set forth in this Complaint, Honeywell stated that "[t]he Antitrust Division of the Department of Justice (DOJ) is also investigating the allegations raised in these suits and has issued subpoenas to certain employees of the defendants including Honeywell."

**ANSWER:** Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 104, and on that basis denies them.

105. The purpose and effect of the Defendants' unlawful conduct was to be able to charge more for Filters than the Defendants could have charged in a free market unencumbered by their illegal activities.

**ANSWER:** Donaldson denies the allegations contained in Paragraph 105.

106. The Defendants' conspiracy to fix, raise, maintain, and/or stabilize the prices of Filters at supra-competitive levels resulted in harm to Plaintiffs and class members. The entire overcharge for the Filters at issue was passed on to end users and is readily identifiable and quantifiable. As a result, Plaintiffs and class members paid higher prices than they would have in the absence of the Defendants' conspiracy.

**ANSWER:** Donaldson denies the allegations contained in Paragraph 106.

107.    As two noted antitrust scholars – Professors Robert G. Harris (Professor Emeritus and former Chair of the Business and Public Policy Group at the Haas School of Business at the University of California at Berkeley) and Lawrence A. Sullivan (former Professor of Law Emeritus at Southwestern Law School and author of the Handbook of the Law of Antitrust) – have observed, "in a multiple-level chain of distribution, passing on monopoly overcharges is not the exception; it is the rule."

ANSWER:    Donaldson is without sufficient information to form a belief as to

the truth of the allegations contained in Paragraph 107, and on that basis denies them.

108.    Retailers and distributors of Filters are subject to vigorous price competition. Filters are commodity products, with functionally equivalent products available from the Defendants, which manufacture them pursuant to standard specifications and sizes.  As commodities, Filters enjoy little or no brand loyalty, such that aggressive pricing causes consumers to switch preferences to different brands.

ANSWER:    Donaldson is without sufficient information to form a belief as to

the truth of the allegations contained in Paragraph 108, and on that basis denies them.

109.    Because retailers and distributors are subject to vigorous price competition, they have thin net margins and rapidly pass on cost changes for Filters rather than absorbing them. As a result, indirect purchaser Class members paid more for Filters than they would have paid in a competitive marketplace.

ANSWER:    Donaldson denies plaintiffs' allegations that members of the

purported class did not purchase light-duty air, oil and fuel filters in a competitive market and

that they paid artificially high prices.  Donaldson is without sufficient information to form a

belief as to the truth of the remaining allegations contained in Paragraph 109, and on that basis

denies them.

110.    As with the overcharges to DIY Class members who purchased standalone Filters, the overcharges to DIFM Class members who purchased Filters as part of a service package that included both parts and services is both identifiable and quantifiable.  States generally require service package providers to collect sales tax on the sale of Filters, but not on the service portion of the package of services (i.e., the oil change or installation of the filter itself).  Retailers in those states must, by law, break out the charge for the Filter.  Those charges may be itemized on a sales receipt, or may be kept internally by the retailer for purposes of calculating its sales tax collection and payment obligations.

**ANSWER:** Donaldson denies that members of the purported DIY or DIFM classes paid overcharges. Donaldson is without sufficient information to form a belief as to the truth of the remaining allegations contained in Paragraph 110, and on that basis denies them.

111. The aforesaid combination and conspiracy has had the following effects, among others:

a. Price competition for Filters has been suppressed, restrained and eliminated;

b. The price of Filters has been fixed, raised, maintained, and/or stabilized at artificial and non-competitive levels; and

c. Consumers of Filters were deprived of free and open competition in the Filters market.

**ANSWER:** Donaldson denies the allegations contained in Paragraph 111.

112. The Defendants charged supra-competitive prices for Filters. By reason of the alleged violations of the antitrust laws, Plaintiffs and Class members have sustained injury to their business or property, having paid higher prices for Filters than they would have paid in the absence of the illegal contract, combination or conspiracy. As a result, Plaintiffs and Class members have been injured in their business and/or property and have suffered damages in an amount presently undetermined. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

**ANSWER:** Donaldson denies the allegations contained in Paragraph 112.

113. The specific amounts of damages have not yet been determined because such determination will require discovery. Commonly used and well-accepted economic models can be used to measure both the extent and the amount of the supra-competitive charge passed through the chain of distribution to indirect purchasers such as Plaintiffs and Class members.

**ANSWER:** Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in the first sentence of Paragraph 113, and on that basis denies them. Donaldson denies the remaining allegations contained in Paragraph 113.

114. Plaintiffs bring this action as a class action under Rules 23(a), 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and others similarly situated, seeking injunctive relief under the federal antitrust laws. This "Nationwide Injunctive Class" is defined as:

All persons or entities in the United States who indirectly purchased for their own use and not for resale Filters manufactured and/or sold by one or more of the Defendants or any of their

parents, affiliates, subsidiaries, predecessors or successors in interest at any time from at least January 1, 1999 through the present (the "Class Period") from one or more of the following "Reseller Entities". Advance Auto Parts, Inc., Ashland, Inc., Autozone, Inc., Bridgestone Retail Operations, LLC d/b/a Firestone Complete Auto General Parts, Inc., Genuine Parts Company, Goodyear Tire & Rubber Company d/b/a Goodyear Gemini Automotive Care, Jiffy Lube, Pennzoil-Quaker State Company, The Pep Boys—Manny, Moe & Jack, Sears Roebuck & Co.,Texaco, Inc., Wal-Mart Store, Inc. or any of their parents, affiliates, subsidiaries, predecessors, or successors in interest.

Excluded from the Class are the Defendants and their officers, directors, employees, parents, affiliates, subsidiaries, predecessors or successors in interest, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and all federal or state governmental entities (but not local, municipal or other governmental entities).

**ANSWER:** Donaldson admits that plaintiffs purport to bring this action as a class action under Rules 23(a), (b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure and that plaintiffs purport to represent the class described in Paragraph 114. Donaldson denies that class action treatment is appropriate and denies all remaining allegations contained in Paragraph 114.

115. Plaintiffs also bring this action on their own behalf and as a class action pursuant to Rules 23(a), 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure and/or respective state statute(s), on behalf of all members of the following "Indirect Purchaser State Classes":

All persons and entities in Arizona, Arkansas, California, the District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Massachusetts, Nevada, New Mexico, New York, North Carolina, North Dakota, Puerto Rico, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin who indirectly purchased for their own use and not for resale Filters manufactured and/or sold by one or more of the Defendants or any of their parents, affiliates, subsidiaries, predecessors or successors in interest at any time from at least January 1, 1999 through the present (the "Class Period"), from one or more of the following "Reseller Entities". Advance Auto Parts, Inc., Ashland, Inc., Autozone, Inc., Bridgestone Retail Operations, LLC d/b/a Firestone Complete Auto General Parts, Inc., Genuine Parts Company, Goodyear Tire & Rubber Company d/b/a Goodyear Gemini Automotive Care, Jiffy Lube, Pennzoil-Quaker

State Company, The Pep Boys—Manny, Moe & Jack, Sears Roebuck & Co.,Texaco, Inc., Wal-Mart Store, Inc. or any of their parents, affiliates, subsidiaries, predecessors, or successors in interest.

All persons and entities in Nebraska who indirectly purchased for their own use and not for resale Filters manufactured and/or sold by one or more of the Defendants or any of their parents, affiliates, subsidiaries, predecessors or successors in interest at any time from at least January 1, 2002 through the present from one or more of the following "Reseller Entities". Advance Auto Parts, Inc., Ashland, Inc., Autozone, Inc., Bridgestone Retail Operations, LLC d/b/a Firestone Complete Auto General Parts, Inc., Genuine Parts Company, Goodyear Tire & Rubber Company d/b/a Goodyear Gemini Automotive Care, Jiffy Lube, Pennzoil-Quaker State Company, The Pep Boys—Manny, Moe & Jack, Sears Roebuck & Co.,Texaco, Inc., Wal-Mart Store, Inc. or any of their parents, affiliates, subsidiaries, predecessors, or successors in interest

All persons and entities in New Hampshire who indirectly purchased for their own use and not for resale Filters manufactured and/or sold by one or more of the Defendants or any of their parents, affiliates, subsidiaries, predecessors or successors in interest at any time from at least January 1, 2008 through the present from one or more of the following "Reseller Entities". Advance Auto Parts, Inc., Ashland, Inc., Autozone, Inc., Bridgestone Retail Operations, LLC d/b/a Firestone Complete Auto General Parts, Inc., Genuine Parts Company, Goodyear Tire & Rubber Company d/b/a Goodyear Gemini Automotive Care, Jiffy Lube, Pennzoil-Quaker State Company, The Pep Boys—Manny, Moe & Jack, Sears Roebuck & Co.,Texaco, Inc., Wal-Mart Store, Inc. or any of their parents, affiliates, subsidiaries, predecessors, or successors in interest.

All persons and entities in Utah who indirectly purchased for their own use and not for resale Filters manufactured and/or sold by one or more of the Defendants or any of their parents, affiliates, subsidiaries, predecessors or successors in interest at any time from at least January 1, 2006 through the present one or more of the following "Reseller Entities". Advance Auto Parts, Inc., Ashland, Inc., Autozone, Inc., Bridgestone Retail Operations, LLC d/b/a Firestone Complete Auto General Parts, Inc., Genuine Parts Company, Goodyear Tire & Rubber Company d/b/a Goodyear Gemini Automotive Care, Jiffy Lube, Pennzoil-Quaker State Company, The Pep Boys—Manny, Moe & Jack, Sears Roebuck & Co.,Texaco, Inc., Wal-Mart Store, Inc. or any of their parents, affiliates, subsidiaries, predecessors, or successors in interest.

All persons and entities in Wyoming who indirectly purchased for their own use and not for resale Filters manufactured and/or sold

by one or more of the Defendants or any of their parents, affiliates, subsidiaries, predecessors or successors in interest at any time from at least January 1, 2006 through the present one or more of the following "Reseller Entities". Advance Auto Parts, Inc., Ashland, Inc., Autozone, Inc., Bridgestone Retail Operations, LLC d/b/a Firestone Complete Auto General Parts, Inc., Genuine Parts Company, Goodyear Tire & Rubber Company d/b/a Goodyear Gemini Automotive Care, Jiffy Lube, Pennzoil-Quaker State Company, The Pep Boys—Manny, Moe & Jack, Sears Roebuck & Co.,Texaco, Inc., Wal-Mart Store, Inc. or any of their parents, affiliates, subsidiaries, predecessors, or successors in interest.

Excluded from these Classes are the Defendants and their officers, directors, employees, parents, affiliates, subsidiaries, predecessors or successors in interest, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and all federal or state governmental entities (but not local, municipal or other governmental entities).

**ANSWER:**     Donaldson admits that plaintiffs purport to bring this action as a

class action under Rules 23(a), (b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure and

that plaintiffs purport to represent the classes described in Paragraph 115. Donaldson denies that

class action treatment is appropriate and denies all remaining allegations contained in Paragraph

115.

116.     Due to the nature of the trade or the commerce involved, Class members are geographically dispersed throughout the United States, and joinder of all Class members would be impracticable. While the exact number of Class members is unknown to Plaintiffs at this time, Plaintiffs believe that there are, at least, hundreds of thousands of Class members.

**ANSWER:**     Donaldson is without sufficient information to form a belief as to

the truth of the allegations contained in Paragraph 116, and on that basis denies them.

117.     Plaintiffs' claims are typical of the claims of the other Class members. Plaintiffs and Class members purchased Filters at artificially maintained, supra-competitive prices established by the actions of the Defendants in connection with the restraint of trade alleged herein. Plaintiffs and Class members have all sustained damage in that they paid inflated prices for Filters.

**ANSWER:**     The first sentence of Paragraph 117 asserts legal conclusions that

do not require a response. To the extent that a response is required, Donaldson denies the

allegations contained in the first sentence of Paragraph 117. Donaldson denies that plaintiffs and the class members that they seek to represent paid artificially maintained, supra-competitive, or inflated prices. Donaldson denies that plaintiffs and the class members that they seek to represent have sustained damages. Donaldson is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 117, and on that basis denies them.

118. Plaintiffs will fairly and adequately protect the interests of Class members and have retained counsel competent and experienced in class action and antitrust litigation.

**ANSWER:** Paragraph 118 asserts legal conclusions that do not require a response. To the extent that a response is required, Donaldson denies the allegations contained in Paragraph 118.

119. Common questions of law and fact exist as to all Class members, which predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Classes are:

a. Whether the Defendants and their co-conspirators engaged in a contract, combination or conspiracy to fix, raise, maintain, and/or stabilize the price of Filters;

b. Whether the Defendants' contract, combination or conspiracy as alleged in this Complaint is a per se violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and similar state laws;

c. Whether the Defendants' conduct violates the antitrust, unfair competition, and consumer protection laws of the states identified below;

d. Whether the Defendants' wrongful conduct caused injury to the business or property of Plaintiffs and Class members;

e. Whether the unlawful conduct of the Defendants caused Plaintiffs and Class members to pay more for Filters than they otherwise would have paid absent the Defendants' conduct;

f. Whether the Defendants and their co-conspirators fraudulently concealed the existence of their unlawful conduct;

g. Whether Plaintiffs and Class members are entitled to injunctive relief;

h. Whether the Defendants and their co-conspirators unjustly enriched themselves as a result of their inequitable conduct at the expense of Class members; and

i. The appropriate measure of damages suffered by Class members.

**ANSWER:** Paragraph 119 asserts legal conclusions that do not require a response. To the extent that a response is required, Donaldson denies the allegations contained in Paragraph 119.

120. These and other questions of law and fact are common to members of the Classes and predominate over any questions affecting only individual members, including legal and factual issues relating to liability, damages, and restitution.

**ANSWER:** Paragraph 120 asserts legal conclusions that do not require a response. To the extent that a response is required, Donaldson denies the allegations contained in Paragraph 120

121. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable. The prosecution of separate actions by individual Class members would impose heavy burdens upon the courts and the Defendants, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Classes. A class action, on the other hand, would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

**ANSWER:** Paragraph 121 asserts legal conclusions that do not require a response. To the extent that a response is required, Donaldson denies the allegations contained in Paragraph 121.

122. The interest of Class members in individually controlling the prosecution of separate actions is theoretical rather than practical. The Classes have a high degree of cohesion, and prosecution of the action through representatives would be unobjectionable. The amounts at stake for Class members, while substantial in the aggregate, may not be great enough individually to enable them to maintain separate suits against the Defendants. Plaintiffs do not anticipate any difficulty in the management of this action as a class action.

**ANSWER:** Donaldson denies the allegations contained in Paragraph 122.

123. The claims asserted herein are also appropriate for class certification under the laws of each of the states under which claims are asserted.

**ANSWER:** Paragraph 123 asserts legal conclusions that do not require a response. To the extent that a response is required, Donaldson denies the allegations contained in Paragraph 123.

124. Throughout the Class Period, the Defendants and their co-conspirators affirmatively and fraudulently concealed their unlawful conduct by engaging in secret meetings and communications in furtherance of their conspiracy, and by holding themselves out to the public and their customers, including Plaintiffs, as true competitors.

**ANSWER:** Donaldson denies the allegations contained in Paragraph 124.

125. Plaintiffs and Class members had no knowledge of the Defendants' unlawful scheme and could not have discovered the Defendants' unlawful conduct at an earlier date by the exercise of due diligence. The Defendants affirmatively concealed their illegal acts and these acts only recently became known to the public through filings in a lawsuit in the Southern District of Illinois. As a result of Plaintiffs' lack of knowledge of the Defendants' unlawful scheme, Plaintiffs assert the tolling of any applicable statutes of limitations affecting the rights of action by Plaintiffs and Class members.

**ANSWER:** Donaldson admits that plaintiffs purport to assert the tolling of any applicable statutes of limitations. Donaldson denies all other allegations contained in Paragraph 125.

126. Moreover, the Defendants' actions constitute a continuing violation in that the Defendants' anticompetitive practices have resulted in unlawfully priced Filters, and each and every such transaction at artificially inflated prices is an overt act that injures Plaintiffs and/or other Class members. These artificially inflated prices continue to exist in the relevant market as the Defendants have yet to cease their unlawful conduct or otherwise withdraw from the conspiracy. Upon each and every instance that the Defendants failed to disclose their illegal conduct and their effect on the prices paid by Plaintiffs and Class members, the Defendants knew or should have known that the undisclosed information was material to those who purchased such products.

**ANSWER:** Donaldson denies the allegations contained in Paragraph 126.

127. In addition to this overcharging, the Defendants committed numerous additional overt acts in furtherance of their conspiracy, both within and prior to four years from the date of the original filing of this Complaint. Such overt acts included the illegal meetings and communications regarding Filter prices described herein.

**ANSWER:** Donaldson denies the allegations contained in Paragraph 127.

128. Therefore, each instance in which the Defendants engaged in the conduct complained of herein and each instance in which a Class member unknowingly paid supra-

competitive prices for Filters constitute part of a continuing violation and operate to toll any applicable statutes of limitation. Furthermore, the Defendants are estopped from relying on any statute of limitations defense because of their unfair and deceptive conduct.

**ANSWER:** Donaldson denies that it engaged in any of the alleged unlawful

conduct complained of in the Complaint. The remaining allegations in Paragraph 128 assert

legal conclusions that do not require a response. To the extent that a response is required,

Donaldson denies the remaining allegations contained in Paragraph 128.

## COUNT I

129. Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

**ANSWER:** Donaldson incorporates by reference its answers to each and every

allegation in the Complaint as if fully set forth herein.

130. The Defendants and the unnamed co-conspirators entered into and engaged in a contract, combination or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act.

**ANSWER:** Donaldson denies the allegations contained in Paragraph 130.

131. The contract, combination or conspiracy has resulted in an agreement, understanding or concerted action between and among the Defendants in furtherance of which the Defendants fixed, raised, maintained, and/or stabilized prices for Filters in the United States and allocated the market for Filters among themselves. Such contract, combination, or conspiracy constitutes a per se violation of the federal antitrust laws and is, in any event, an unreasonable and unlawful restraint of trade.

**ANSWER:** Donaldson denies the allegations contained in Paragraph 131.

132. The Defendants' contract, combination, agreement, understanding or concerted action with the co-conspirators occurred in or affected interstate commerce. The Defendants' unlawful conduct was through mutual understandings, combinations or agreements by, between and among the Defendants and other unnamed co-conspirators. These other co-conspirators have either acted willingly or, due to coercion, unwillingly in furtherance of the unlawful restraint of trade alleged herein.

**ANSWER:** Donaldson denies the allegations contained in Paragraph 132.

133. The contract, combination or conspiracy has had the following effects, among others:

a. Prices charged to Plaintiffs and Class members for Filters were fixed or stabilized at higher, artificially derived, supra-competitive levels;

b. Plaintiffs and Class members have been deprived of the benefits of free, open and unrestricted competition in the market for Filters; and

c. Competition in establishing the prices paid, customers of, and territories for Filters has been unlawfully restrained, suppressed and eliminated.

**ANSWER:** Donaldson denies the allegations contained in Paragraph 133.

134.    As a proximate result of the Defendants' unlawful conduct, Plaintiffs and Class members have suffered injury in that they have paid supra-competitive prices for Filters. Plaintiffs and Class members will continue to be injured in their business and property by paying more for Filters purchased indirectly from the Defendants and their co-conspirators than they would pay in the absence of the contract, combination or conspiracy.

**ANSWER:** Donaldson denies the allegations contained in Paragraph 134.

135.    These violations are continuing and will continue unless enjoined by this Court.

**ANSWER:** Donaldson denies the allegations contained in Paragraph 135.

136.    Plaintiffs and Class members are entitled to an injunction against the Defendants, preventing and restraining the violations alleged herein.

**ANSWER:** Donaldson denies the allegations contained in Paragraph 136.

## COUNT II

137.    Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

**ANSWER:** Donaldson incorporates by reference its answers to each and every

allegation in the Complaint as if fully set forth herein.

138.    By reason of their unlawful conduct, Defendants should make restitution to Plaintiffs and members of the Indirect Purchaser State Classes listed below.

**ANSWER:** Donaldson denies the allegations contained in Paragraph 138.

139.    Plaintiffs and members of the following Indirect Purchaser State Classes, by overpaying for Filters, have conferred a benefit on Defendants.  Defendants knowingly accepted

and retained the overpayments such that it would be inequitable for Defendants to keep the inflated profits.

      **ANSWER:**    Donaldson denies the allegations contained in Paragraph 139.

140.    The Defendants have been unjustly enriched through overpayments by Plaintiffs and the Class members and the profits reaped by the Defendants as a direct result of such overpayments. The detriment suffered by Plaintiffs and the Class members, and the Defendants' unjust enrichment, were related to and flowed from the wrongful conduct alleged herein, including, without limitation, the Defendants' unlawful and anti-competitive acts described above which fixed, raised, and/or maintained the purchase price of Filters at supra-competitive levels.

      **ANSWER:**    Donaldson denies the allegations contained in Paragraph 140.

141.    Under common law principles of unjust enrichment, the Defendants should not be permitted to retain the benefits conferred through over-payments by Plaintiffs and Class members. Plaintiffs and the Class members accordingly are entitled to disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiffs and Class members may seek restitution.

      **ANSWER:**    Donaldson denies the allegations contained in Paragraph 141.

142.    Plaintiffs and the following Indirect Purchaser State Classes base their claims for unjust enrichment and disgorgement of profits upon common law principles of unjust enrichment recognized in each of their respective states:

    A. Arkansas Indirect Purchaser Class;

    B. California Indirect Purchaser Class;

    C. District of Columbia Indirect Purchaser Class;

    D. Hawaii Indirect Purchaser Class;

    E. Illinois Indirect Purchaser Class;

    F. Iowa Indirect Purchaser Class;

    G. Massachusetts Indirect Purchaser Class;

    H. Minnesota Indirect Purchaser Class;

    I. Nebraska Indirect Purchaser Class;

    J. Nevada Indirect Purchaser Class;

    K. New Hampshire Indirect Purchaser Class;

    L. New Mexico Indirect Purchaser Class;

M. New York Indirect Purchaser Class;

N. Puerto Rico Indirect Purchaser Class;

O. Rhode Island Indirect Purchaser Class;

P. South Dakota Indirect Purchaser Class;

Q. Tennessee Indirect Purchaser Class;

R. Vermont Indirect Purchaser Class;

S. West Virginia Indirect Purchaser Class;

T. Wisconsin Indirect Purchaser Class; and

**ANSWER:**    Because the Court in its April 1, 2010 Order dismissed plaintiffs'
claims of unjust enrichment under the laws of New York and under the laws of New Hampshire
for periods prior to 2008, no response is required with respect to the allegations contained in
Paragraph 142 that purport to bring class actions under New York common law principles of
unjust enrichment and New Hampshire common law principles of unjust enrichment for periods
prior to 2008.  To the extent a response is required to these claims, Donaldson admits that
plaintiffs and the purported indirect purchaser state classes purport to base their claims for unjust
enrichment and disgorgement of profits upon common law principles of unjust enrichment
recognized under New York law and under New Hampshire law prior to 2008.  With respect to
the remaining purported indirect purchaser classes, Donaldson admits that plaintiffs and the
purported indirect purchaser state classes purport to base their claims for unjust enrichment and
disgorgement of profits upon common law principles of unjust enrichment of their respective
states.  Donaldson denies any liability for any claim alleged in Paragraph 142 and denies the
remaining allegations contained in Paragraph 142.

## COUNT III

143.    Plaintiffs incorporate by reference the allegations in the above paragraphs as if
fully set forth herein.

**ANSWER:** Donaldson incorporates by reference its answers to each and every allegation in the Complaint as if fully set forth herein.

144. By reason of the foregoing, the Defendants have entered into a trust, contract, combination, understanding, and agreement in restraint of trade in violation of Arizona Revised Stat. § 44-1401 *et seq.*[1]; California Bus. & Prof. Code § 16701 *et seq.*; District of Columbia Code Ann. § 28-4501 *et seq.*; Hawaii Code, H.R.S. § 480-4[2]; 740 Illinois Compiled Statutes § 10/1 et. seq.; Iowa Code § 553.1 *et seq.*; Kansas Stat. Ann. § 50-101 *et seq.*; Maine Rev. Stat. Ann. tit. 10, § 1101 *et seq.*; Michigan Comp. Laws. Ann. § 445.771 *et seq.*; Minnesota Stat. § 325D.49 *et seq.*; Mississippi Code Ann. § 75-21-1 *et seq.*; Nebraska Rev. Stat. §§ 59-801 *et seq.* and § 59-1601 *et seq.*; Nevada Rev. Stat. Ann. § 598A *et seq.*[3]; New Hampshire Revised Stat. 356:1 *et seq.*; New Mexico Stat. Ann. § 57-1-1 et seq.; New York Gen. Bus. Law § 340 *et seq.*; North Carolina Gen. Stat. § 75-1 *et seq.*; North Dakota Cent. Code § 51-08.1-01 *et seq.*; Puerto Rico Code 10 LPRA § 257 *et seq.*; South Dakota Codified Laws § 37-1-3.1 *et seq.*; Tennessee Code Ann. § 47-25-101 *et seq.*; Utah Code Ann. § 76-10-911 *et seq.*[4]; Vermont Stat. Ann. tit. 9, § 2451 *et seq.*; West Virginia § 47-18-1 *et seq.*; Wisconsin Stat. § 133.01 *et seq.*; and Wyoming Stat. Ann. § 40-4-101 *et seq.*

**ANSWER:** Donaldson is without sufficient information to form a belief as to the truth of the allegations about notice purportedly given to various state attorneys general as alleged in the footnotes to Paragraph 144, and on that basis denies them. Donaldson denies the remaining allegations contained in Paragraph 144.

145. Class members in each of the states listed above paid supra-competitive, artificially inflated prices for Filters. As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and Class members have been injured in their business and property in that they paid more for Filters than they otherwise would have paid in the absence of the Defendants' unlawful conduct.

---

[1] In compliance with Arizona's Antitrust Act, Ariz. Rev. Stat. § 44-1415, Plaintiffs notified the Arizona Attorney General of the existence of this action.

[2] On May 28, 2009, in compliance with Hawaii Rev. Stat. § 480-13.3, Plaintiffs served a copy of the Consolidated Indirect Purchaser Complaint (Dkt. No. 155) on the Hawaii Attorney General. In response to a request from the Hawaii Attorney General, Plaintiffs also served copies of all relevant supporting and exculpatory materials on Hawaii Attorney General on June 29, 2009. These materials included al papers filed in support of and in opposition to the various motions to dismiss filed by Defendants, the Complaint filed by the Florid Attorney General, and a copy of the Civil Docket for MDL No. 1957. Plaintiffs have not heard anything further from the Hawaii Attorney General.

[3] In compliance with the Nevada Unfair Trade Practices Act, Nev. Rev. Stat., Ann. § 589A.210(3), Plaintiffs notified the Nevada Attorney General of this action.

[4] On May 28, 2009, in compliance with Utah Code Ann. § 76-10-919(9), Plaintiffs served copies of the Consolidated Indirect Purchaser Complaint (Dkt. No. 155) and the Civil Docket for MDL No. 1957 on the Utah Attorney General. To date, Plaintiffs have not heard from the Utah Attorney General.

**ANSWER:** Donaldson denies the allegations contained in Paragraph 145.

146. As a result of the Defendants' violations of the statutes set forth above, Plaintiffs and other Class members seek damages and costs of suit, including reasonable attorneys' fees, and all other forms of relief available under the state antitrust statutes listed above.

**ANSWER:** Donaldson admits that plaintiffs and members of the purported

classes purport to seek damages and costs of suit, including reasonable attorneys' fees, and all

other forms of relief available under the state antitrust statutes listed above. Donaldson denies

any liability and denies the remaining allegations contained in Paragraph 146.

## COUNT IV

147. Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

**ANSWER:** Donaldson incorporates by reference its answers to each and every

allegation in the Complaint as if fully set forth herein.

148. The Defendants have engaged in unfair, unconscionable, deceptive, and fraudulent acts or practices in violation of Arkansas Code § 4-88-101 *et seq.*; California Bus. & Prof. Code § 17200 *et seq.*; District of Columbia Code § 28-3901 *et seq.*; Florida Stat. § 501.201 *et seq.*; Hawaii Code, H.R.S. § 480-2; Massachusetts General Laws, Chapter 93A, § 1 *et seq.*; Nebraska Revised Statutes § 59-1601 *et seq.*; Nevada Revised Statutes § 598.0903 *et seq.*; New Mexico Stat. § 57-12-1 *et seq.*; North Carolina General Statutes § 75-1.1 *et seq.*; Utah Code § 13-11-1 *et seq.*; and Vermont Statutes, Title 9, § 2451 *et seq.*

**ANSWER:** Donaldson denies the allegations contained in Paragraph 148.

149. The defendants have also violated Rhode Island Gen. Laws § 6-13.1-1 *et seq.* Specifically, (a) the Defendants engaged in commerce in Rhode Island; (b) the Defendants and their co-consipirators secretly agreed to raise prices for Filters sold to Rhode Island consumers by direct agreement and through artificial supply restraints on the entire Filters market including the Reseller Entities; (c) Rhode Island consumers were targets of the conspiracy; (d) the secret agreements were not known to Rhode Island consumers; and (e) the Defendants made public statements about the prices of Filters or the Filters market such that Plaintiffs and reasonable consumers in Rhode Island were deceived into believing Filter prices to be born of a free and fair market. For example:

A. Defendant Champion's Guide to Ethics and Standards of Business Conduct, disseminated to the public on the Internet as a link from Champion's website. Defendant Champion proclaims it "supports vigorous but fair competition," which means employees are precluded from "discussing pricing or

- 42 -

pricing policy, costs, marketing or strategic plans, proprietary or confidential information, agreeing on prices you will charge customers, or agreeing to divide customers or markets…."

B.      Defendant Honeywell states in its Form 10-K Annual Report filed March 30, 2001, that it is "subject to active competition in substantially all product and services areas."

C.      Similarly, Defendant Wix promised to consumers in its Spring 2007 Newsletter "to provide you with the best products and services in the industry at the most competitive prices possible."

D.      Defendant Donaldson highlights in its Form 10-K Annual Report filed July 31, 2005, that it "competes in a number of filtration markets…in a highly competitive environment."

E.      Clarcor, Inc., Defendant Baldwin's parent, endorses a free and competitive Filters market in its 2006 Form 10-K Annual Report by stating "The Company encounters strong competition in the sale of all its products."

**ANSWER:**      Donaldson admits that subsection (D) of Paragraph 149 excerpts a portion of its Form 10-K filing for the fiscal year ending July 31, 2005.  Donaldson denies the remaining allegations of Paragraph 149 concerning Donaldson.  Donaldson is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 149, and on that basis denies them.

150.   These statements were specifically directed at Rhode Island consumers who indirectly purchased Filters primarily for personal, family, or household purposes.  Defendants intended for the Rhode Island consuming public to see the aforementioned statements. Defendants' statements created the likelihood of confusion or misunderstanding on the part of the average, non-business Rhode Island consumer, including Plaintiffs and members of the Rhode Island consumer Class.  The statements were materially misleading because a reasonable consumer acting reasonably under the circumstances would understand Defendants' statements to mean that the Filters market was competitive and prices were set accordingly.  Rhode Island consumers who indirectly purchased Filters were misled to believe they were paying a fair price for Filters, or that the price increases for Filters were imposed for valid business reasons. Defendants' materially deceptive statements caused Plaintiffs and the Rhode Island consumer Class members injury in that Rhode Island consumers were deprived of open and free competition, and by paying supra-competitive prices.

**ANSWER:**      Donaldson denies the allegations contained in Paragraph 150.

151.   Class members in the states listed above paid supra-competitive, artificially inflated prices for Filters.  As a direct and proximate result of the Defendants' unlawful conduct,

Plaintiffs and the members of the Classes have been injured in their business and property in that they paid more for Filters than they otherwise would have paid absent the Defendants' unlawful conduct.

> **ANSWER:** Donaldson denies the allegations contained in Paragraph 151.

152. As a result of the Defendants' violations of the laws listed above, Plaintiffs and Class members in the states listed above are entitled to equitable relief, including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits that may have been obtained by the Defendants as a result of such business practices, including compensable and such other damages in all States allowed by law.

> **ANSWER:** Donaldson denies the allegations contained in Paragraph 152.

153. Additionally, Plaintiffs and the Classes seek actual damages for their injuries caused by these violations in an amount to be determined at trial.

> **ANSWER:** Donaldson admits that plaintiffs and the purported classes seek damages for their alleged injuries. Donaldson denies the remaining allegations contained in Paragraph 153.

154. The Defendants' willful and unlawful conduct allows Plaintiffs and the Class to recover attorneys' fees in the states where they are allowed by law. Therefore, Plaintiffs and the Classes seek attorneys' fees where they are allowed by law.

> **ANSWER:** Donaldson admits that plaintiffs and the purported classes seek attorneys' fees. Donaldson denies the remaining allegations contained in Paragraph 154.

155. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial as to all issues triable by a jury.

> **ANSWER:** Plaintiffs' demand for a jury trial contains no factual allegations and therefore does not require a response from Donaldson. To the extent that a response is required, Donaldson denies that plaintiffs are entitled to any relief.

WHEREFORE, Plaintiffs and Class members pray for judgment against the Defendants, as follows:

a. That the Court determine that this action may be maintained as a class action under Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, that Plaintiffs be appointed as class representatives and that Plaintiffs' counsel be appointed as counsel for the Classes;

b. That the unlawful agreement, conduct, contract, conspiracy or combination alleged herein be adjudged and decreed to be:

>   (1) A restraint of trade or commerce in violation of Section 1 of the Sherman Act, as alleged in the First Cause of Action;

>   (2) Acts of unjust enrichment as set forth in the Second Cause of Action.

>   (3) An unlawful combination, trust, agreement, understanding and/or concert of action in violation of state antitrust laws identified in the Third Cause of Action;

>   (4) Violations of state consumer protection and unfair competition laws identified in the Fourth Cause of Action; and

c. That the Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, contract, conspiracy or combination alleged herein, or from entering into any other conspiracy alleged herein, or from entering into any other contract, conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

d. That Plaintiffs and Class members recover damages, as provided by state antitrust laws, and that a judgment be entered in favor of Plaintiffs and Class members against the Defendants, jointly and severally, in an amount to be trebled in accordance with such laws.

e. That Plaintiffs and Class members recover damages and/or all available monetary and equitable remedies under the state consumer protection and unfair competition laws identified above;

f. That Plaintiffs and Class members obtain penalties, punitive or exemplary damages, and/or full consideration, where the laws of the respective states identified herein so permit;

g. That Plaintiffs and Class members be awarded restitution, including disgorgement of profits obtained by the Defendants as a result of their acts of unfair competition and acts of unjust enrichment;

h. That Plaintiffs and Class members be awarded pre- and post-judgment interest, and that such interest be awarded at the highest legal rate;

i. That Plaintiffs and Class members recover their cost of this suit, including reasonable attorneys' fees as provided by law; and

j. That Plaintiffs and Class members have such other, further, and additional relief as the case may require and the Court may deem just and proper under the circumstances.

**ANSWER:**  Plaintiffs' prayer for relief contains no factual allegations and therefore does not require a response from Donaldson.  To the extent that a response is required, Donaldson denies that plaintiffs are entitled to any relief.

## DEFENSES

Donaldson adopts and incorporates any applicable defense pleaded by any other defendant not otherwise expressly set forth herein.  Donaldson reserves the right to add any additional defenses as discovery proceeds.

### FIRST DEFENSE

Donaldson did not participate in, and had no knowledge of, any agreement or conspiracy to fix prices of oil, air, and/or fuel filters.

### SECOND DEFENSE

The Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

### THIRD DEFENSE

Plaintiffs' claims are barred in whole or in part by the applicable statute of limitations, and/or by laches.

### FOURTH DEFENSE

Plaintiffs' claims are barred in whole or in part because plaintiffs have failed to mitigate their alleged damages, if any.

### FIFTH DEFENSE

Plaintiffs' claims are barred in whole or in part because plaintiffs passed on any alleged overcharge to third parties and therefore did not suffer a compensable injury.

### SIXTH DEFENSE

Plaintiffs' claims are barred in whole or in part because recovery or relief would unjustly enrich plaintiffs.

### SEVENTH DEFENSE

Plaintiffs' claims are barred because they lack standing to seek relief.

### EIGHTH DEFENSE

Plaintiffs' claims are barred because they have not suffered antitrust injury.

### EIGHTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Donaldson did not make appreciable sales of Filters to the Resellers by which plaintiffs define the purported class.

### PRAYER FOR RELIEF

WHEREFORE, Donaldson prays as follows:

A.      For dismissal of plaintiffs' Fourth Amended Consolidated Indirect Purchaser Complaint, with prejudice;

B.      For an award to Donaldson of its costs, expenses, and disbursements in this action;

C.      That Donaldson be awarded the attorneys' fees incurred by it in defending this action, including reasonable attorneys' fees; and

D.      For such further relief as this Court may deem just and proper.

Dated:    March 25, 2011.

/s/ Elizabeth A. N. Haas
James T. McKeown
H. Holden Brooks
Elizabeth A. N. Haas
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202
Telephone: (414) 297-
Facsimile: (414) 297-4900

*Attorneys for Donaldson Company, Inc.*

**CERTIFICATE OF SERVICE**

I, Elizabeth A. N. Haas, hereby certify that on March 25, 2011, I caused the

foregoing Answer of Donaldson Company, Inc. to Plaintiff's Fourth Amended Consolidated

Indirect Purchaser Complaint to be filed with the Clerk of the Court using the CM/ECF system,

which will send notification of such filing to all parties indicated on the electronic filing receipt.


/s/ Elizabeth A. N. Haas
Elizabeth A. Haas