**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: AFTERMARKET FILTERS ANTITRUST LITIGATION** | Master Docket No. 08-cv-4883 |
| | MDL Docket No. 1957 |
| **THIS DOCUMENT RELATES TO: ALL INDIRECT PURCHASER ACTIONS** | Honorable Robert W. Gettleman |
| | Magistrate Judge Geraldine Soat Brown |

**ANSWER OF HONEYWELL INTERNATIONAL INC. TO PLAINTIFFS' FOURTH
AMENDED CONSOLIDATED INDIRECT PURCHASER COMPLAINT**

Defendant Honeywell International Inc. ("Honeywell"), through its attorneys O'Melveny

& Myers LLP, answers the allegations in plaintiff's Fourth Amended Consolidated Indirect

Purchaser Complaint ("Complaint"), filed on February 25, 2011, as follows:

1.      This action involves a conspiracy among the Defendants and their co-conspirators
to fix prices and to engage in other unlawful practices intended to raise, maintain, and/or
stabilize prices for replacement motor vehicle oil, fuel and engine air filters ("Filters").

**ANSWER:** Denies the allegations in paragraph 1, except admits that plaintiffs purport to

allege a conspiracy among Defendants to fix prices and to engage in other unlawful practices

intended to raise, maintain, and/or stabilize prices for replacement motor vehicle oil, fuel and

engine air filters.

2.      Beginning as early as January 1999, the Defendants exchanged confidential
pricing and other competitively-sensitive information with one another via in-person meetings,
telephone calls, facsimile and other communications.  A number of the allegations with respect
to the collusive meetings and communications between and among the Defendants are based
upon the personal knowledge of William G. Burch, a former senior sales executive at Former
Purolator and Champion (two Defendants who together controlled a significant portion of the
market) during most of the Class Period.

**ANSWER:** Denies the allegations in the first sentence of paragraph 2 as they relate to

Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the

remaining allegations in paragraph 2. Admits that plaintiffs purport to base their allegations on

the personal knowledge of William G. Burch.

3.    Since the conspiracy began, the Defendants successfully implemented multiple coordinated price increases for Filters.

**ANSWER:** Denies the allegations in paragraph 3 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations

concerning any other defendant.

4.    The Defendants charged more for Filters than they could have charged in a market unfettered by their unlawful conduct. The Defendants' illegal overcharges were passed through to end-users. Plaintiffs and other similarly situated indirect purchasers accordingly suffered injury to their business and property.

**ANSWER:** Denies the allegations in paragraph 4.

5.    Plaintiffs seek injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26, for the Defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1. Plaintiffs also seek to recover damages under state antitrust, unfair trade, consumer protection, and/or deceptive trade practices laws, and common law principles of restitution, disgorgement, and unjust enrichment (as well as to recover the costs of suit, including reasonable attorneys fees), for the injuries that they and all others similarly situated sustained as a result of the Defendants' conspiracy to fix, raise, maintain and/or stabilize the prices of Filters.

**ANSWER:**  Denies the allegations in paragraph 5, except admits that (i) plaintiffs

purport to assert claims pursuant to Section 16 of the Clayton Act for alleged violations of

Section 1 of the Sherman Act and under various state antitrust, unfair trade, consumer protection

and deceptive trade practices laws and common law principles of restitution, disgorgement and

unjust enrichment and (ii) plaintiffs seek injunctive relief and damages.

6.    This Court has subject matter jurisdiction over the federal antitrust claims asserted in this action under Section 1 of the Sherman Act (15 U.S.C. § 1), Section 16 of the Clayton Antitrust Act (15 U.S.C. § 26) and 28 U.S.C. §§ 1331 and 1337. The Court has jurisdiction over the state law claims under 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy. The Court also has jurisdiction over the state law claims under 28 U.S.C. § 1332 because the amount in controversy for the Class exceeds $5,000,000, and there are members of the Class who are citizens of a different state than the Defendants.

**ANSWER:**  Avers that paragraph 6 asserts legal conclusions to which no responsive

pleading is required.  To the extent that a response is required, denies the allegations in

paragraph 6.

7.      Pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22 and 28 U.S.C. § 1391,
venue is proper in this district because one or more of the Defendants resided, transacted
business, were found, or had agents in this district and/or a substantial portion of the affected
interstate trade and commerce described below has been carried out in this district.

**ANSWER:**  Avers that paragraph 7 asserts legal conclusions to which no responsive

pleading is required.  To the extent that a response is required, denies the allegations in

paragraph 7.

8.      This Court has personal jurisdiction over each Defendant because, *inter alia*, each
Defendant: (a) transacted business throughout the United States, including in this district; (b)
manufactured, sold, shipped, and/or delivered substantial quantities of Filters throughout the
United States, including this district; (c) had substantial contacts with the United States,
including in this district; and/or (d) was engaged in an illegal scheme and price-fixing conspiracy
that was directed at and had the intended effect of causing injury to persons residing in, located
in, or doing business throughout the United States, including in this district.

**ANSWER:**  Admits that Honeywell manufactured and sold light duty oil, air and fuel

filters during the alleged class period.  The remaining allegations contained in Paragraph 8 assert

legal conclusions to which no responsive pleading is required.  To the extent that a response is

required, denies the allegations in paragraph 8.

9.      The activities of the Defendants and their co-conspirators, as described herein,
substantially affected commerce throughout the United States and in each of the states identified
herein because the Defendants, directly or through their agents, engaged in activities affecting
each such state.  The Defendants purposefully availed themselves of the laws of each of the
states identified herein in connection with their activities relating to the production, marketing,
and/or sale of Filters.  The Defendants produced, promoted, sold, marketed, and/or distributed
Filters, thereby purposefully profiting from access to indirect-purchaser consumers in each such
state.  The Defendants also contracted to supply or obtain goods or revenue related to the
business for Filters.  As a result of the activities described herein:

a.      The Defendants caused damage to the residents of the states identified herein;

      b.      The Defendants caused damage in each of the states identified herein by acts or omissions committed outside each such state by regularly doing or soliciting business in each such state;

      c.      The Defendants engaged in persistent courses of conduct within each such state and/or derived substantial revenue from the marketing of Filters (and services relating to such marketing); and

      d.      The Defendants committed acts or omissions that they knew or should have known would cause damage (and did, in fact, cause such damage) in each such state while regularly doing or soliciting business in each such state, engaging in other persistent courses of conduct in each such state, and/or deriving substantial revenue from the marketing of Filters in each such state.

**ANSWER:** Denies the allegations in paragraph 9 as they relate to Honeywell, except admits that it manufactured and sold light duty oil, air and fuel filters during the alleged class period, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9 concerning any other defendant.

10.     The conspiracy described herein adversely affected every person nationwide who indirectly purchased the Defendants' Filters. The Defendants' conspiracy has resulted in an adverse monetary effect on indirect purchasers in each state identified herein.

**ANSWER:** Denies the allegations in paragraph 10.

11.     Prices of Filters in each state can be manipulated by conspirators within that state, outside of it, or both. Without enforcing the antitrust and/or consumer protection laws of each of the states identified herein, companies that break the law will go unpunished. The Defendants knew that commerce in each of the states identified herein would be adversely affected by implementing their conspiracy.

**ANSWER:** Denies the allegations in the last sentence of paragraph 11 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 11.

12.     Plaintiff Phillip Bowers is an Arizona resident. During the relevant period, Mr. Bowers indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12.

13.     Plaintiff Nicholas Tuberville is an Arkansas resident.  During the relevant period, Mr. Tuberville indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13.

14.     Plaintiff Arthur Cordisco is a California resident.  During the relevant period, Mr. Cordisco indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14.

15.     Plaintiff Francis Doll III is a California resident.  During the relevant period, Mr. Doll indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15.

16.     Plaintiff Mark Moynahan is currently a New York resident.  During the relevant period, Mr. Moynahan resided in California and indirectly purchased Filters in California from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16.

17.     Plaintiff Patrick Houston is a District of Columbia resident. During the relevant period, Mr. Houston indirectly purchased Filters from one or more of the Defendants or their coconspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17.

18.     Plaintiff Mario Paquet is a Florida resident. During the relevant period, Mr. Paquet indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18.

19.     Plaintiff Kris Clute is a Florida resident. During the relevant period, Mr. Clute indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19.

20.     Plaintiff Robert Collopy is a Hawaii resident.  During the relevant period, Mr. Collopy indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20.

21.     Plaintiff Julie R. Kenner, MD, PhD, LLC is a Hawaii limited liability company. During the relevant period, Ms. Kenner indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21.

22.     Plaintiff Kurt Evinger is an Illinois resident.  During the relevant period, Mr. Evinger indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22.

23.     Plaintiff Geraldine Davison is an Illinois resident.  During the relevant period, Ms. Davison indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23.

24. Plaintiff Thomas Lown is an Iowa resident. During the relevant period, Mr. Lown indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24.

25. Plaintiff Edward Colburn is currently a Missouri resident. During the relevant period, Mr. Colburn resided in Kansas and indirectly purchased Filters in Kansas from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25.

26. Plaintiff Perry Piper is a Kansas resident. During the relevant period, Mr. Piper indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26.

27. Plaintiff James Egan is a Massachusetts resident. During the relevant period, Mr. Egan indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27.

28. Plaintiff Justus Austin is a Michigan resident. During the relevant period, Mr. Austin indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28.

29.     Plaintiff Benjamin Hammer is a Minnesota resident.  During the relevant period, Mr. Hammer indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29.

30.     Plaintiff Mark Uglem is a Minnesota resident.  During the relevant period, Mr. Uglem indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30.

31.     Plaintiff Christopher Papale is a Mississippi resident.  During the relevant period, Mr. Papale indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31.

32.     Plaintiff Dale Bentley is a Nebraska resident.  During the relevant period, Mr. Bentley indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32.

33.     Plaintiff David Faircloth is a Nevada resident.  During the relevant period, Mr. Faircloth indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 33.

34.     Plaintiff Norman Wallin is a Nevada resident.  During the relevant period, Mr. Wallin indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 34.

35.      Plaintiff Robert Nilsen is a New York resident.  During the relevant period, Mr. Nilsen indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 35.

36.      Plaintiff David E. Boardman is a North Dakota resident.  During the relevant period, Mr. Boardman indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 36.

37.      Plaintiff Carlos Cuevas is a Puerto Rico resident.  During the relevant period, Mr. Cuevas indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 37.

38.      Plaintiff Karen Healy is a Rhode Island resident. During the relevant period, Ms. Healy indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 38.

39.      Plaintiff Charles Gregory is a South Dakota resident.  During the relevant period, Mr. Gregory indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 39.

40.      Plaintiff Janice Boone is a Tennessee resident.  During the relevant period, Ms. Boone indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 40.

41.     Plaintiff Dan T. McKittrick is a Utah resident.  During the relevant period, Mr. McKittrick indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 41.

42.     Plaintiff Harold Miles is a West Virginia resident.  During the relevant period, Mr. Miles indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 42.

43.     Plaintiff Bettendorf Transfer & Excavating, Inc. is a Wisconsin corporation. During the relevant period, Bettendorf Transfer & Excavating, Inc. indirectly purchased Filters from one or more of the Defendants or their co-conspirators and has been injured by reason of the unlawful conduct alleged in this Complaint.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 43.

44.     Defendant Champion Laboratories, Inc. ("Champion") is a Delaware corporation headquartered in Albion, Illinois, with its business address at 200 South Fourth St., Albion, Illinois 62806.  During the Class Period, Champion manufactured, marketed, sold and/or distributed Filters to customers throughout the United States.  Champion sells Filters under the brand names Champ, Encore, Imperial, Kleener, Luber-finer, MXM, Petro Clear, Roughneck, TotalTec, United Components, and Z Guard.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 44.

45.     Defendant Honeywell International Inc. ("Honeywell") is a Delaware corporation headquartered in Morristown, New Jersey, with its business address at 101 Columbia Road, Morristown, New Jersey 07962.  During the Class Period, Honeywell manufactured, marketed, sold and/or distributed Filters to customers throughout the United States.  Honeywell International Consumer Products Group is a division of Honeywell located in Danbury, Connecticut and is responsible for the manufacture and sale of Filters, principally under the brand name FRAM.

**ANSWER:** Denies the allegations in paragraph 45, except admits that (i) Honeywell is a Delaware corporation headquartered in Morristown, New Jersey, with its business address at 100 Columbia Road, Morristown, New Jersey 07962; (ii) that from March 1999 to the present, Honeywell has manufactured, marketed, sold and/or distributed Filters; and (iii) the Consumer Products Group is a division of Honeywell located in Danbury, Connecticut that is responsible for the manufacture and sale of light duty oil, air and fuel filters, principally under the FRAM® brand.

46.     Defendant Wix Filtration Corp. LLC is a Delaware company headquartered in Gastonia, North Carolina, with a principal mailing address of 1 Wix Way, Gastonia, North Carolina 28054. From on or about December 1, 2004, Wix Filtration Corp., LLC manufactured, marketed, sold and/or distributed Filters to customers throughout the United States.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 46.

47.     Defendant Affinia Group Inc. is a Delaware corporation located at 1101 Technology Drive, Ann Arbor, Michigan 48108. On or about December 1, 2004, Affinia Group, Inc. (formerly AAG OPCO Corp.) purchased the stock, assets and liabilities from Dana Corporation relating to Wix Filtration Products as set forth in the Stock and Asset Purchase Agreement by and between AAG OPCO Corp. and Dana Corporation dated July 8, 2004 (the "Purchase Agreement"). A true and correct copy of the Purchase Agreement is attached hereto as Exhibit A. The Purchase Agreement can also be found online at http://www.secinfo.com/dsvrn.z5Gy.7.htm#1st Page.

A.     At all relevant times prior to December 1, 2004, Dana Corporation operated Wix Filtration Products through its Automotive Aftermarket Group. Wix Filtration Products manufactured, marketed, sold and distributed Filters to customers throughout the United States.

B.     Pursuant to the terms of the Purchase Agreement, Affinia Group Inc. assumed and succeeded to the liabilities of Dana Corporation's Automotive Aftermarket Group. The Purchase Agreement specifically states in the recitals that liabilities are being purchased relating to the manufacture and distribution of automotive aftermarket components:

Whereas, Seller and its Subsidiaries are, among other things, engaged through Seller's Automotive Aftermarket Group in the manufacture and distribution of automotive aftermarket components in the North America, Europe, Asia, and South America, as described in Exhibit A (the "Business"); and

Whereas, upon the terms and subject to the conditions hereinafter set forth, the parties desire that Seller and its Subsidiaries sell, assign and transfer to Purchaser, and that Purchaser purchase and acquire from Seller and its Subsidiaries, all of the right, title and interest of Seller and its Subsidiaries in and to the Purchased Shares and the Purchased Assets, and that Purchaser assume the Assumed Liabilities.

(Purchase Agreement at p. 5)

C.      The broad definition of Assumed Liabilities in Section 1.4 states:

Simultaneously with the Closing, on the terms and subject to the conditions set forth herein, Purchaser shall assume and be liable for, and shall pay, perform and discharge when due, all obligations and Liabilities of Seller and its Subsidiaries (other than the Acquired Companies), whether occurring or accruing before, on or after the Closing Date, whether known or unknown, fixed or contingent, asserted or unasserted, and not satisfied or extinguished as of the Closing date, primarily relating to, primarily arising out of or primarily resulting from the Business (collectively, and excluding the Excluded Liabilities the "ASSUMED LIABILITIES"), including, by way of example and not limitation, all of the following obligations and liabilities of Seller and its Subsidiaries (other than the Acquired Companies):

*********

(d)      all Liabilities arising from commitments (in the form of accepted purchase orders or otherwise) to sell, distribute, manufacture or market products, or outstanding quotations, proposals or bids, primarily relating to, primarily arising out of or primarily resulting from the Business;

**********

(f)      all Liabilities under Business Contracts;

Purchase Agreement at pp. 8-9.

D.      As set forth above, the liabilities of Dana Corporation transferred "simultaneous with the closing" and were not executory terms of the Purchase Agreement.  Affinia Group, Inc. is liable under successorship liability for the illegal practices alleged herein that occurred prior to December 1, 2004 because it assumed those liabilities by contract.

E.      Affinia Group, Inc. is also liable for the illegal practices alleged herein throughout the conspiracy because it joined, and continued to participate in, the previously established conspiracy.

F.      Affinia Group has represented that since on or about December 1, 2004, Wix Filtration Products has been operating through the Affinia Global Filtration Operating Group and Wix Filtration Corp. LLC, a wholly-owned subsidiary of Affinia Group, Inc.  All references to "Wix" herein refer to Affinia Group Inc., both individually

and as the successor-in-interest to Dana Corporation and its subsidiaries, and Wix Filtration Corp. LLC.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 47.

48.     Defendant Cummins Filtration, Inc. ("Cummins") is an Indiana corporation headquartered in Nashville, Tennessee, with its business address at 2931 Elm Hill Pike, Nashville, Tennessee 37214. During the Class Period, Cummins manufactured, marketed, sold and/or distributed Filters to customers throughout the United States, principally under the brand name Fleetguard.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 48.

49.     Defendant Donaldson Company, Inc. ("Donaldson") is a Delaware corporation headquartered in Minneapolis, Minnesota, with its business address at 1400 West 94th Street, Minneapolis, Minnesota 55431. During the Class Period, Donaldson manufactured, marketed, sold and/or distributed Filters to customers throughout the United States.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 49.

50.     Defendant Baldwin Filters, Inc. ("Baldwin") is a Delaware corporation headquartered in Kearney, Nebraska, with a business address of 4400 E. Hwy. 30, Kearney, Nebraska 68848. During the Class Period, Baldwin manufactured, marketed, sold and/or distributed Filters to customers throughout the United States.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 50.

51.     Defendant ArvinMeritor, Inc. ("ArvinMeritor") is an Indiana corporation headquartered in Troy, Michigan, with its business address at 2135 West Maple Road, Troy, Michigan 48084. In February 1999, ArvinMeritor Industries, Inc. (ArvinMeritor's predecessor) acquired Purolator Products NA, Inc. (now known as ArvinMeritor Filters Operating Company LLC), Purolator Products Company (now known as ArvinMeritor Filters Holding Company LLC) (collectively, the "Purolator LLCs"), the owner of the Purolator brand and leading manufacturers of automotive oil, air and fuel filters, and filter housings. ArvinMeritor or its predecessor owned and operated Purolator LLCs' Aftermarket Filters business from February 1999 until March 2006.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 51.

52. Defendant Purolator Products NA, Inc. (now known as ArvinMeritor Filters Operating Company LLC) is a Delaware limited liability corporation and was located in Fayetteville, North Carolina, with a business address of 3200 Natal St., Fayetteville, North Carolina, 28306, and operated from Brentwood, Tennessee, with a business address at 100 Westwood Place, Suite 200, Brentwood, Tennessee, 37027. Defendant Purolator Products Company (now known as ArvinMeritor Filters Holding Company LLC) is a Delaware limited liability corporation and was located in Fayetteville, North Carolina, with a business address of 3200 Natal St., Fayetteville, North Carolina, 28306, and operated from Brentwood, Tennessee, 37027. The Purolator LLCs were a wholly-owned subsidiary of defendant ArvinMeritor (or its predecessor) from February 1999 through March 2006. During the Class Period, the Purolator LLCs manufactured, marketed, sold and/or distributed Filters to customers throughout the United States.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 52.

53. Defendants ArvinMeritor, Purolator Products NA, Inc. (now known as ArvinMeritor Filters Operating Company LLC), and Purolator Products Company (now known as ArvinMeritor Filters Holding Company LLC) are collectively referred to hereinafter as "Former Purolator."

**ANSWER:** Admits that plaintiffs purport to refer collectively to defendants ArvinMeritor and Purolator Filters NA LLC as "Purolator" as stated in paragraph 53.

54. Champion, Purolator, Honeywell, Wix, Cummins, Donaldson, and Baldwin are collectively referred to hereinafter as the "Defendants."

**ANSWER:** Admits that plaintiffs purport to define the term "Defendants" as stated in paragraph 54.

55. Various persons and entities, whose identities are at this time unknown to Plaintiffs, participated as co-conspirators in the violations alleged herein and performed acts and made statements in furtherance thereof. When Plaintiffs learn the identities of such co-conspirators, Plaintiffs may seek leave to amend this Complaint to add such co-conspirators as Defendants.

**ANSWER:** Denies the allegations in the first sentence of paragraph 55, and avers that

the second sentence of paragraph 55 does not require a response. To the extent that a response is

required, denies the allegations in paragraph 55.

56. The acts alleged in this Complaint have been done by the Defendants and their co-
conspirators, or were authorized, ordered, or done by their respective officers, agents, employees,
or representatives while actively engaged in the management of each Defendant's business or
affairs.

**ANSWER:** Denies the allegations in paragraph 56 as they relate to Honeywell, except as

otherwise explicitly admitted in this Answer, and denies knowledge or information sufficient to

form a belief as to the truth of the allegations in paragraph 56 concerning any other defendant.

57. Each of the Defendants named herein acted as the agent or joint venturer of or for
the other Defendants with respect to the acts, violations and common course of conduct alleged
herein.

**ANSWER:** Denies the allegations in paragraph 57 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 57 concerning any other defendant.

58. Filters are used to remove contaminants from combustion engines and related
systems. Oil filters remove contaminants from the motor oil used to lubricate an engine's
pistons. Fuel filters primarily screen dirt and rust particles from an engine's fuel lines. Engine
air filters prevent particulate matter from entering an engine's cylinders. Because they become
less effective over time as contaminants are filtered out of or away from the respective systems,
the Filters at issue in this litigation are designed to be replaced periodically. Replacement filters
are purchased to replace original equipment filters included in new motor vehicles. The
Freedonia Group, a market research firm, estimates that in 2006 oil filters sales were
approximately $1.6 billion, engine air filters sales were approximately $930 million, and fuel
filters sales were approximately $200 million.

**ANSWER:** Admits that filters are designed to remove contaminants from combustion

engines and that the first four sentences of Paragraph 58 describe uses of oil filters, fuel filters,

and engine air filters. With respect to the fifth and sixth sentences of Paragraph 58, admits that

Honeywell believes that filters should be replaced periodically, and that replacement filters are

sold to replace filters included in new motor vehicles. Denies knowledge or information

sufficient to form a belief as to the truth of the allegations in the last sentence of paragraph 58,

and denies any other allegations not expressly admitted.

59.     Filter manufacturers sell their products to vehicle manufacturers for use in new automobiles, and to "aftermarket" sellers for professional or self-installation.  The Defendants are the primary manufacturers of aftermarket (or "replacement") Filters in the United States and the allegations contained herein involve the Filters aftermarket.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 59, except admits that Honeywell sells light duty oil, air and fuel

filters to original equipment manufacturers and to customers who resell those filters.

60.     Honeywell estimated that in 2007 there were 217 million automobiles on the road in the United States.  An important part of maintaining the life and performance of an automobile involves changing its Filters.  Most automobile manufacturers recommend that the oil filter be replaced at every oil change.  According to a car care web site, "next to changing your oil and oil filter, replacing your air and fuel filters on a regular basis is the single most important act of maintenance you can perform for your engine."  NAPA recommends that a car owner replace the air filter once a year, or every 15,000 miles.  Thus, for most cars on the road today, the owners replace their vehicle's oil and air filters at least every year.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 60.

61.     Because of the recommended maintenance intervals, oil changes are the automotive aftermarket's number one service and, therefore, oil filters are the aftermarket's highest volume replacement part.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in Paragraph 61.

62.     The Filters aftermarket is organized around two groups of direct purchasers.  The first group of direct purchasers buys Filters for installation into others' vehicles.  This group includes companies such as Jiffy Lube, Midas, and Express Lube.  Those direct purchasers sell filters to the end-users called the "do-it-for-me" (DIFM) purchasers, who pay the retailers to install Filters into their vehicles for them.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 62, except admits that Honeywell sells light duty oil, air and fuel

filters to customers who provide services to customers that are sometimes referred to as "do-it-for-me" purchasers.

63.    The second group of direct purchasers includes retailers and distributors. These retailers include automotive supply stores such as Advance Auto Parts, AutoZone and O'Reilly, and mass merchandisers like Wal-Mart. According to O'Reilly Automotive Co-President Greg Henslee, the top ten retailers account for approximately 40 percent of all replacement Filters sold in the United States. This group of direct purchasers in turn re-sells those Filters to the do-it-yourself ("DIY") end-users, who install Filters into their own vehicles.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to truth of the allegations in paragraph 63, except admits that Honeywell sells light duty oil, air and fuel filters to retailers and distributors who sell them to customers who install the filters into their own vehicles.

64.    End users of Filters, either as purchasers of Filters separately (DIY) or as part of a service package that included both parts and services (DIFM), are included in the Class.

**ANSWER:** Admits that plaintiffs purport to include DIY and DIFM end users of filters in plaintiffs' proposed class.

65.    The Filters industry is highly susceptible to cartel activity. This is a result of a number of factors including: (a) high market concentration, (b) the commodity nature of Filters (including both interchangeability and price as the primary drivers of sales), (c) barriers to entry, (d) inelastic demand, and (e) lack of substitutability of the product.

**ANSWER:** Denies the allegations in paragraph 65.

66.    A high degree of concentration facilitates the operation of a cartel because it makes it easier to coordinate behavior among possible co-conspirators and makes it more difficult for customers to avoid the effects of collusive behavior. The market for Filters is highly concentrated, with the Defendants controlling about 90 percent of the sales of these products. Several of the Defendants also have interlocking businesses arrangements. For example, in April 2006, ArvinMeritor sold Purolator to Bosch and Mann + Hummel. Bosch and Mann + Hummel now operate Purolator as a joint venture. Mann + Hummel CEO Dieter Seipler stated that the joint venture was a natural alliance because Bosch is a major private-brand customer for Mann + Hummel in Europe and in other regions of the world. These interlocking business arrangements, in a highly concentrated market, assisted the Defendants in successfully implementing their conspiracy.

**ANSWER:**  Denies that Honeywell was part of any alleged conspiracy or cartel and that the relevant market is highly concentrated, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 66.

67.    Filters are considered to be inter-exchangeable, undifferentiated products.  All Filters must undergo Society of Automotive Engineers (SAE) testing to ensure that they meet vehicle manufacturers' specifications.  An industry report notes that vehicle manufacturers have done a better job utilizing a small number of oil filters to cover all of their engine applications.  Thus, there are fewer part numbers in the aftermarket Filter line than other aftermarket automotive products.

**ANSWER:**  Denies the allegations in the first sentence of paragraph 67 and denies knowledge or information sufficient to form a belief as the truth of the remaining allegations of paragraph 67.

68.    Purolator and Honeywell's FRAM are perhaps the most well known Filters brands.  Wix lacks a similarly strong brand name but manufactures Filters under private label for, *inter alia*, NAPA Auto Parts and Carquest Auto Parts.  Wix is also the number one filter supplier for NASCAR.  Champion focuses on private label manufacturing as well and manufacturing Filters under Mobile 1, Valvoline, STP, Mighty, and Firestone labels.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 68, except admits that Honeywell manufactures certain filters primarily under the FRAM® brand.

69.    The private label segment provides an example of the fungible nature of Filters.  Shell and Pennzoil, for example, both sell private label Filters made for them by a number of the Defendants to Shell or Pennzoil's specifications.   Table 1 below shows the manufacturers (suppliers) of Filters for Shell in 2004.

**Table 1**

| Company/Brand | Sales Volume |
|---|---|
| Honeywell/FRAM | 28% |
| ArvinMeritor/Purolator | 26% |
| Champion Laboratories | 17% |
| Wix | 14% |

| Company/Brand | Sales Volume |
|---|---|
| Baldwin/Hastings | 3% |
| AC Delco | 10% |

For the Pennzoil and Quaker brand of Filters, Honeywell (FRAM) and Former Purolator are the main suppliers, as shown in Table 2.

**Table 2**

| Filter Brand | Manufacturer | Purchase Volume |
|---|---|---|
| Pennzoil Filters (USA) | Honeywell/FRAM | 40 Million Units |
| Quaker State Filters (CAN) | | |
| Quaker State Filters (USA) | ArvinMeritor/Purolator | 25.1 Million Units |
| Pennzoil Filters (CAN) | | |

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 69, except admits that Honeywell has sold light duty oil, air and fuel filters to Shell, Quaker State and Pennzoil.

70.    Price is the key driver of sales of Filters.  According to an industry report, direct purchasers surveyed for the report considered price to be the most important factor in their purchase of Filters.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 70.

71.    The presence of significant barriers to entry makes new entry by others difficult and facilitates the operation of a cartel.  In the market for Filters, there are significant barriers to entry.  In the Filters market, barriers to entry arise primarily from the need for significant start-up capital expenditures, initial product depth within a product line, distribution infrastructure, and long-standing customer relationships.

**ANSWER:** Denies that there are significant barriers to entry in the relevant market, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 71.

72.     There is significant evidence that demand for Filters is inelastic, or in other words, does not change in the face of price changes.  It is well established in economics that goods which form a small share of consumer expenditure exhibit inelastic demand, because consumers are less likely to change consumption patterns when the absolute price increase is limited.  Because vehicle manufacturers either require or strongly encourage Filter changes at specific intervals, end users do not decrease their use of Filters when prices increase.  Filters are a small part of the cost of owning and maintaining an automobile.

**ANSWER:** Denies that demand for Filters is inelastic, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 72.

73.     There are no reasonable substitutes for Filters. Vehicle owners have little choice but to have the Filters in their vehicles replaced because they tend to wear out over time and are necessary for the operation of their vehicles.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 73, except that admits that light duty oil, air and fuel filters tend to wear out over time and for that reason must be replaced.

74.     Beginning at least as early as January 1, 1999, and continuing thereafter, the Defendants and their co-conspirators participated in a continuing contract, combination and conspiracy to artificially fix, raise, maintain and/or stabilize prices for Filters in the United States.

**ANSWER:** Denies the allegations in paragraph 74 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 74 concerning any other defendant.

75.     In formulating and effectuating their unlawful scheme, the Defendants and their co-conspirators engaged in anticompetitive and other unlawful activities, including but not limited to the following:

a.      Attending meetings or otherwise engaging in discussions in the United States and elsewhere by telephone, facsimile, and email regarding the pricing and sale of Filters;

b.      Agreeing to charge specific prices for Filters and otherwise fix, increase, maintain, or stabilize the prices of Filters sold to purchasers in the United States;

c.      Selling Filters to customers in the United States and elsewhere at collusive and non-competitive prices pursuant to the agreement reached;

d.      Accepting payment for Filters sold to customers in the United States and elsewhere at collusive and non-competitive prices;

e.      Communicating with one another to discuss the prices, customers, markets, and price levels of Filters sold in the United States;

f.      Giving actual and/or apparent authority to employees' participation in furtherance of the wrongful conduct; and

g.      Fraudulently concealing the conspiracy, conspiratorial contacts, and wrongful conduct through various means.

**ANSWER:**  Denies the allegations in paragraph 75 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in paragraph 75 concerning any other defendant.

76.     As a result of their unlawful actions, the Defendants were able to impose multiple coordinated price increases for Filters during the Class Period, including in 1999, early 2004, and late 2004/early 2005.

**ANSWER:**  Denies the allegations in paragraph 76 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in paragraph 76 concerning any other defendant.

77.     Numerous allegations contained herein, particularly with respect to the collusive meetings and communications between and among the Defendants and their co-conspirators, are based upon the personal knowledge of William G. Burch, a former senior sales executive at Defendants Purolator and Champion during most of the relevant period.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 77, except admits that plaintiffs purport to base their allegations on

the personal knowledge of William G. Burch.

78.     In February 1999, ArvinMeritor (or its predecessor) acquired the Purolator LLCs. Marlen Silverii, an ArvinMeritor Senior Vice President formerly employed by Former Purolator, was instrumental in completing the acquisition.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 78.

79.     Shortly after the acquisition, in or around March 1999, Mr. Silverii met with certain Former Purolator senior employees to discuss Former Purolator's profit margins.  In the view of ArvinMeritor  executives, those profit margins were too low.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 79.

80.     At the time ArvinMeritor acquired the Purolator LLCs, Mr. Burch was a National Accounts Manager at Former Purolator.  Mr. Burch was present at the March 1999 meeting with Mr. Silverii and other senior Former Purolator employees.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 80.

81.     During the meeting, Mr. Silverii explained that ArvinMeritor's executives wanted to implement a Filters price increase.  In order to do so successfully without losing market share or business, Mr. Silverii said that Former Purolator would need the agreement of other Defendants to raise prices along with Former Purolator.  Mr. Silverii told the assembled Former Purolator senior personnel to contact their counterparts at other Defendant Filter manufacturers with the express purpose of obtaining each Defendant's agreement to implement a coordinated, industry-wide Filters price increase.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 81.

82.     A number of the senior Former Purolator personnel who attended the meeting complied with Mr. Silverii's directive.  These individuals contacted and communicated with their counterparts at the other Defendants regarding a coordinated price increase for Filters.  The Defendants met, discussed, and otherwise coordinated the timing, amount and purported public justification for the price increase on at least several occasions in the following months.

**ANSWER:**  Denies the allegations in paragraph 82 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in paragraph 82 concerning any other defendant.

83.     In or about May 1999, the Defendants discussed increasing Filter prices at the Jiffy Lube Association of Franchisees Show ("JLAF Show") in Nashville, Tennessee.  Mr. Silverii and at least one other senior Former Purolator employee met with a senior Honeywell employee at the JLAF Show and discussed increasing Filters prices.

**ANSWER:**  Denies the allegations in paragraph 83 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in paragraph 83 as they relate to any other defendant.

84.     In or about June 1999, Mr. Burch heard from a fellow Former Purolator employee that Former Purolator had spoken with Honeywell at the JLAF Show and told them to raise prices.  The fellow Former Purolator employee also told Mr. Burch that "FRAM knows we're going up."

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 84.

85.     Also in mid-1999, Mr. Silverii met with Champion's President, Tom Mowatt. Mr. Silverii and Mr. Mowatt discussed fixing and coordinating Filters prices in the United States.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 85.

86.     On or about June 28, 1999, Mr. Silverii directed a senior Former Purolator employee to fax Honeywell a draft letter that Former Purolator intended to send to its customers informing them of an impending price increase on all Purolator Filters.  The draft letter, back-dated June 21, 1999, announced a price increase that Former Purolator planned to implement on August 15, 1999.  The pretext for the price increase, as set out in the letter, included increases in costs for labor, health care, freight, and raw materials.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 86.

87.     On June 28, 1999, the Former Purolator senior employee sent the draft price increase letter by fax to his counterpart at Honeywell, as requested by Mr. Silverii.  The fax recipient at Honeywell was the same person with whom Mr. Silverii secretly met at the JLAF Show.  When the fax was sent, Former Purolator had not yet sent the price increase letter to any of its customers.

**ANSWER:** Denies the allegations in paragraph 87 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 87 concerning any other defendant.

88.     On July 14, 1999, Former Purolator sent the price increase letter to its customers (though the letter was dated "July 7, 1999"). The letter was nearly identical to the draft letter Former Purolator shared with Honeywell a few weeks earlier. Shortly thereafter, around August 1999, the other Defendants followed Former Purolator and successfully implemented similar Filters price increases. With this unlawful agreement in place, Defendants could maintain their price fixing scheme going forward.

**ANSWER:** Denies the allegations in paragraph 88 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 88 concerning any other defendant.

89.     Over the next few years, the Defendants continued to adhere to their unlawful agreement and conspiracy. Each Defendant acted with the knowledge that every other Defendant had already made a conscious commitment to the common scheme of joint price increases.

**ANSWER:** Denies the allegations in paragraph 89.

90.     No Defendant announced its withdrawal from the conspiracy. No Defendant voiced any hesitation. In fact, before a trade association meeting in 2004, a Champion sales representative joked that he and Champion's President, John Evans, "talked about going to [the] Filter [Manufacturers] Council cocktail party wearing T-shirts saying 'we went up first last time.'"

**ANSWER:** Denies the allegations in paragraph 90 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 90 concerning any other defendant.

91.     In or about February 2004, Champion's President, Mr. Evans, met with Champion's senior employees who were responsible for the Filters business, including Mr. Burch (who had left Former Purolator in August 1999 to join Champion as a National Accounts Manager). Mr. Evans indicated at that meeting that Champion would "lead the way" with another Filters price increase. Mr. Evans advised the assembled employees that it was important the Filters price increase not come at the expense of Champion's market share. Champion needed to coordinate the price increase with the other Defendants to ensure the continued success of the conspiracy. Mr. Evans therefore directed Champion's senior employees to make frequent telephone calls to the other Defendants to discuss pricing.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 91.

92.     Mr. Evans, together with other Champion senior employees, contacted each of the other Defendants, including Mr. Silverii at ArvinMeritor, to coordinate this proposed Filters price increase.

**ANSWER:** Denies the allegations in paragraph 92 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 92 concerning any other defendant.

93.     As a result of these illicit communications, and in furtherance of their continuing conspiracy, the Defendants agreed to increase Filters prices. In or about April 2004, each of the Defendants announced and successfully implemented a coordinated Filters price increase.

**ANSWER:** Denies the allegations in paragraph 93 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 93 concerning any other defendant.

94.     In early September 2004, Champion led the effort to implement yet another price increase among the Defendants in furtherance of the conspiracy. Mr. Evans again enlisted several senior Champion sales representatives, including Mr. Burch, to discuss the price increase with the other Defendants.

**ANSWER:** Denies the allegations in paragraph 94 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 94.

95.     In September 2004, at the Filters Manufacturers Council meeting in Nashville, Tennessee, Champion employees discussed with Former Purolator and Wix, among other Defendants, Champion's intention to raise Filters prices again in 2004. At the time of the meeting, Mr. Evans (from Champion) was the Council's Vice-Chairman, and Mr. Silverii (from ArvinMeritor) was Secretary. In the words of one Champion employee, the "primary goal over the next day and a half [of the Council meeting] is to get everybody to get out there, and the message is gonna be that we're going up again, and when." The employee noted: "That's basically our message to everybody."

**ANSWER:**  Denies the allegations in paragraph 95 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 95 concerning any other defendant.

96.    By October 27, 2004, Champion had received confirmation from Honeywell, Cummins, Donaldson, and Former Purolator that each would follow (or had already followed) Champion in implementing a Filters price increase of at least 5 percent.  Honeywell, Donaldson and Cummins went so far as to send Champion their draft price increase letters.  Former Purolator gave Champion a verbal confirmation that it agreed to increase its Filters prices.

**ANSWER:**  Denies the allegations in paragraph 96 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 96 concerning any other defendant.

97.    In or around October or November 2004, the Defendants informed their respective customers of the previously agreed-upon Filters price increase.  In an attempt to conceal the conspiracy and the collusively coordinated price increase, the Defendants "blamed" the increase on rising steel costs.

**ANSWER:**  Denies the allegations in paragraph 97 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 97 concerning any other defendant.

98.    At or around the same time, one of Champion's largest private-label customers questioned the need for another price increase in 2004.  The customer also questioned Champion's explanation that rising steel prices necessitated the price increase.  The customer requested that Champion provide it with an additional explanation justifying the price increase.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 98.

99.    The request created a serious dilemma for Champion.  A few months earlier, Champion had introduced a new oil filter called eCore, twelve models of which fit 75 percent of the cars on the road.  The eCore filter was made, in part, out of fabric instead of steel.  Thus, Champion's oil filter input costs had actually decreased by approximately 20 percent because of its diminished need for raw steel in the manufacture of eCore oil filters.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 99.

100.    Instead of providing its customers with its eCore input prices, Champion gave its customer a Former Purolator spreadsheet for Former Purolator's outdated input costs, falsely representing Former Purolator's costs as its own.  The spreadsheet satisfied the complaining customer.  But more importantly, the spreadsheet concealed the true basis for the price increase: the Defendants' price-fixing agreement.

**ANSWER:**  Denies the allegations in paragraph 100 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in paragraph 100.

101.    Likewise, in the same time period, Honeywell changed the design of most of its FRAM filters, and its private-label filters for Pennzoil and Quaker State, to have cardboard end caps instead of steel, greatly reducing the amount of steel needed for its filters.  Yet, when it increased prices in late 2004, it cited increased steel costs as the pretextual reason.

**ANSWER:**  Denies the allegations in paragraph 101 except admits that Honeywell

announced a price increase in October 2004, due, in part, to rising steel costs.

102.    Ultimately, in or around November or December 2004, each of the Defendants had successfully implemented another coordinated Filters price increase.  Thereafter, in subsequent years, the Defendants continued to adhere to their unlawful agreement and conspiracy, maintaining or increasing Filters prices.  To date, no Defendant has announced its withdrawal from the conspiracy.

**ANSWER:**  Denies the allegations in paragraph 102 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 102 concerning any other defendant.

103.    In July 2008, a spokesperson for the United States Department of Justice confirmed that "[t]he Antitrust Division is investigating  the possibility of anti-competitive practices in the automotive oil filter industry."  The spokesperson, however, declined to identify which companies were under investigation.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 103.

104.    In a July 2008 10-Q filing with the Securities and Exchange Commission, Honeywell confirmed that various Defendants, including Honeywell itself, had received subpoenas in connection with the DOJ's investigation.  After disclosing that it was a defendant in various suits involving the claims set forth in this Complaint, Honeywell stated that "[t]he Antitrust Division of the Department of Justice (DOJ) is also investigating the allegations raised

in these suits and has issued subpoenas to certain employees of the defendants including Honeywell."

**ANSWER:** Admits that Honeywell disclosed the existence of an investigation by the

United States Department of Justice as well as civil suits involving price-fixing allegations in its

July 2008 Form 10-Q filing with the Securities and Exchange Commission, and respectfully

refers the Court to the Form 10-Q for a true and complete statement of its contents. Honeywell

avers that on January 21, 2010, the Department of Justice informed Honeywell that it had

officially closed its investigation.

105. The purpose and effect of the Defendants' unlawful conduct was to be able to charge more for Filters than the Defendants could have charged in a free market unencumbered by their illegal activities.

**ANSWER:** Denies the allegations in paragraph 105.

106. The Defendants' conspiracy to fix, raise, maintain, and/or stabilize the prices of Filters at supra-competitive levels resulted in harm to Plaintiffs and class members. The entire overcharge for the Filters at issue was passed on to end users and is readily identifiable and quantifiable. As a result, Plaintiffs and class members paid higher prices than they would have in the absence of the Defendants' conspiracy.

**ANSWER:** Denies the allegations in paragraph 106.

107. As two noted antitrust scholars – Professors Robert G. Harris (Professor Emeritus and former Chair of the Business and Public Policy Group at the Haas School of Business at the University of California at Berkeley) and Lawrence A. Sullivan (former Professor of Law Emeritus at Southwestern Law School and author of the Handbook of the Law of Antitrust) – have observed, "in a multiple-level chain of distribution, passing on monopoly overcharges is not the exception; it is the rule."

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 107.

108. Retailers and distributors of Filters are subject to vigorous price competition. Filters are commodity products, with functionally equivalent products available from the Defendants, which manufacture them pursuant to standard specifications and sizes. As commodities, Filters enjoy little or no brand loyalty, such that aggressive pricing causes consumers to switch preferences to different brands.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 108.

109.    Because retailers and distributors are subject to vigorous price competition, they have thin net margins and rapidly pass on cost changes for Filters rather than absorbing them. As a result, indirect purchaser Class members paid more for Filters than they would have paid in a competitive marketplace.

**ANSWER:** Denies the allegations in the last sentence of paragraph 109, and denies

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in paragraph 109.

110.    As with the overcharges to DIY Class members who purchased standalone Filters, the overcharges to DIFM Class members who purchased Filters as part of a service package that included both parts and services is both identifiable and quantifiable.  States generally require service package providers to collect sales tax on the sale of Filters, but not on the service portion of the package of services (i.e., the oil change or installation of the filter itself).  Retailers in those states must, by law, break out the charge for the Filter.  Those charges may be itemized on a sales receipt, or may be kept internally by the retailer for purposes of calculating its sales tax collection and payment obligations.

**ANSWER:** Denies that members of purported DIY or DIFM classes paid overcharges,

and denies knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in paragraph 110.

111.    The aforesaid combination and conspiracy has had the following effects, among others:

a.     Price competition for Filters has been suppressed, restrained and eliminated;

b.     The price of Filters has been fixed, raised, maintained, and/or stabilized at artificial and non-competitive levels; and

c.     Consumers of Filters were deprived of free and open competition in the Filters market.

**ANSWER:** Denies the allegations in paragraph 111.

112.    The Defendants charged supra-competitive prices for Filters.  By reason of the alleged violations of the antitrust laws, Plaintiffs and Class members have sustained injury to their business or property, having paid higher prices for Filters than they would have paid in the absence of the illegal contract, combination or conspiracy.  As a result, Plaintiffs and Class

members have been injured in their business and/or property and have suffered damages in an amount presently undetermined.  This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

**ANSWER:**  Denies the allegations in paragraph 112.

113.    The specific amounts of damages have not yet been determined because such determination will require discovery.  Commonly used and well-accepted economic models can be used to measure both the extent and the amount of the supra-competitive charge passed-through the chain of distribution to indirect purchasers such as Plaintiffs and Class members.

**ANSWER:**  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 113.

114.    Plaintiffs bring this action as a class action under Rules 23(a), 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and others similarly situated, seeking injunctive relief under the federal antitrust laws.  This "Nationwide Injunctive Class" is defined as:

> All persons or entities in the United States who purchased for their own use and not for resale Filters manufactured and/or sold by one or more of the Defendants or any of their parents, affiliates, subsidiaries, predecessors or successors in interest at any time from at least January 1, 1999 through the present (the "Class Period") from one or more of the following "Reseller Entities": Advance Auto Parts, Inc., Ashland, Inc., Autozone, Inc., Bridgestone Retail Operations, LLC d/b/a Firestone Complete Auto, General Parts, Inc., Genuine Parts Company, Goodyear Tire & Rubber Company d/b/a/ Goodyear Gemini Automotive Care, Jiffy Lube International, Inc., Midas, Inc., O'Reilly Automotive, Inc., Pennzoil-Quaker State Company, The Pep Boys – Manny, Moe & Jack, Sears, Roebuck & Co., Texaco, Inc., Wal-Mart Store, Inc., or any of their parents, affiliates, subsidiaries, predecessors or successors in interest.

> Excluded from the Class are the Defendants and their officers, directors, employees, parents, affiliates, subsidiaries, predecessors or successors in interest, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and all federal or state governmental entities (but not local, municipal or other governmental entities).

**ANSWER:**  Denies the allegations in paragraph 114, except admits that plaintiffs

purport to bring this action as a class action under Rules 23(a), (b)(2) and/or (b)(3) of the Federal

Rules of Civil Procedure and that plaintiffs purport to represent the class described in paragraph 114.

115. Plaintiffs also bring this action on their own behalf and as a class action pursuant to Rules 23(a), 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure and/or respective state statute(s), on behalf of all members of the following "Indirect Purchaser State Classes":

> All persons and entities in Arizona, Arkansas, California, the District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Massachusetts, Nevada, New Mexico, New York, North Carolina, North Dakota, Puerto Rico, Rhode Island, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin who purchased for their own use and not for resale Filters manufactured and/or sold by one or more of the Defendants or any of their parents, affiliates, subsidiaries, predecessors or successors in interest at any time from at least January 1, 1999 through the present (the "Class Period") from one or more of the following "Reseller Entities": Advance Auto Parts, Inc., Ashland, Inc., Autozone, Inc., Bridgestone Retail Operations, LLC d/b/a Firestone Complete Auto, General Parts, Inc., Genuine Parts Company, Goodyear Tire & Rubber Company d/b/a/ Goodyear Gemini Automotive Care, Jiffy Lube International, Inc., Midas, Inc., O'Reilly Automotive, Inc., Pennzoil-Quaker State Company, The Pep Boys – Manny, Moe & Jack, Sears, Roebuck & Co., Texaco, Inc., Wal-Mart Store, Inc., or any of their parents, affiliates, subsidiaries, predecessors or successors in interest.

> All persons and entities in Nebraska who indirectly purchased for their own use and not for resale Filters manufactured and/or sold by one or more of the Defendants or any of their parents, affiliates, subsidiaries, predecessors or successors in interest at any time from at least January 1, 2002 through the present from one or more of the following "Reseller Entities": Advance Auto Parts, Inc., Ashland, Inc., Autozone, Inc., Bridgestone Retail Operations, LLC d/b/a Firestone Complete Auto, General Parts, Inc., Genuine Parts Company, Goodyear Tire & Rubber Company d/b/a/ Goodyear Gemini Automotive Care, Jiffy Lube International, Inc., Midas, Inc., O'Reilly Automotive, Inc., Pennzoil-Quaker State Company, The Pep Boys – Manny, Moe & Jack, Sears, Roebuck & Co., Texaco, Inc., Wal-Mart Store, Inc., or any of their parents, affiliates, subsidiaries, predecessors or successors in interest.

> All persons and entities in New Hampshire who indirectly purchased for their own use and not for resale Filters manufactured and/or sold by one or more of the Defendants or any of their parents, affiliates, subsidiaries, predecessors or successors in

interest at any time from at least January 1, 2008 through the present from one or more of the following "Reseller Entities": Advance Auto Parts, Inc., Ashland, Inc., Autozone, Inc., Bridgestone Retail Operations, LLC d/b/a Firestone Complete Auto, General Parts, Inc., Genuine Parts Company, Goodyear Tire & Rubber Company d/b/a/ Goodyear Gemini Automotive Care, Jiffy Lube International, Inc., Midas, Inc., O'Reilly Automotive, Inc., Pennzoil-Quaker State Company, The Pep Boys – Manny, Moe & Jack, Sears, Roebuck & Co., Texaco, Inc., Wal-Mart Store, Inc., or any of their parents, affiliates, subsidiaries, predecessors or successors in interest.

All persons and entities in Utah who indirectly purchased for their own use and not for resale Filters manufactured and/or sold by one or more of the Defendants or any of their parents, affiliates, subsidiaries, predecessors or successors in interest at any time from at least January 1, 2006 through the present from one or more of the following "Reseller Entities": Advance Auto Parts, Inc., Ashland, Inc., Autozone, Inc., Bridgestone Retail Operations, LLC d/b/a Firestone Complete Auto, General Parts, Inc., Genuine Parts Company, Goodyear Tire & Rubber Company d/b/a/ Goodyear Gemini Automotive Care, Jiffy Lube International, Inc., Midas, Inc., O'Reilly Automotive, Inc., Pennzoil-Quaker State Company, The Pep Boys – Manny, Moe & Jack, Sears, Roebuck & Co., Texaco, Inc., Wal-Mart Store, Inc., or any of their parents, affiliates, subsidiaries, predecessors or successors in interest.

All persons and entities in Wyoming who indirectly purchased for their own use and not for resale Filters manufactured and/or sold by one or more of the Defendants or any of their parents, affiliates, subsidiaries, predecessors or successors in interest at any time from at least January 1, 2006 through the present from one or more of the following "Reseller Entities": Advance Auto Parts, Inc., Ashland, Inc., Autozone, Inc., Bridgestone Retail Operations, LLC d/b/a Firestone Complete Auto, General Parts, Inc., Genuine Parts Company, Goodyear Tire & Rubber Company d/b/a/ Goodyear Gemini Automotive Care, Jiffy Lube International, Inc., Midas, Inc., O'Reilly Automotive, Inc., Pennzoil-Quaker State Company, The Pep Boys – Manny, Moe & Jack, Sears, Roebuck & Co., Texaco, Inc., Wal-Mart Store, Inc., or any of their parents, affiliates, subsidiaries, predecessors or successors in interest.

Excluded from these Classes are the Defendants and their officers, directors, employees, parents, affiliates, subsidiaries, predecessors or successors in interest, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and all federal or state

governmental entities (but not local, municipal or other governmental entities).

**ANSWER:** Denies the allegations in paragraph 115, except admits that plaintiffs purport to bring this action as a class action under Rules 23(a), (b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure and that plaintiffs purport to represent the other classes described in Paragraph 115.

116.    Due to the nature of the trade or the commerce involved, Class members are geographically dispersed throughout the United States, and joinder of all Class members would be impracticable.  While the exact number of Class members is unknown to Plaintiffs at this time, Plaintiffs believe that there are, at least, hundreds of thousands of Class members.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 116.

117.    Plaintiffs' claims are typical of the claims of the other Class members.  Plaintiffs and Class members purchased Filters at artificially maintained, supra-competitive prices established by the actions of the Defendants in connection with the restraint of trade alleged herein.  Plaintiffs and Class members have all sustained damage in that they paid inflated prices for Filters.

**ANSWER:** Avers that paragraph 117 states a legal conclusion to which no responsive pleading is required.  To the extent that a response is required, denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 117.

118.    Plaintiffs will fairly and adequately protect the interests of Class members and have retained counsel competent and experienced in class action and antitrust litigation.

**ANSWER:** Avers that paragraph 118 states a legal conclusion to which no responsive pleading is required.  To the extent that a response is required, denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 118.

119.    Common questions of law and fact exist as to all Class members, which predominate over any questions affecting solely individual members of the Class.  Among the questions of law and fact common to the Classes are:

a.   Whether the Defendants and their co-conspirators engaged in a contract, combination or conspiracy to fix, raise, maintain, and/or stabilize the price of Filters;

b.   Whether the Defendants' contract, combination or conspiracy as alleged in this Complaint is a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 and similar state laws;

c.   Whether the Defendants' conduct violates the antitrust, unfair competition, and consumer protection laws of the states identified below;

d.   Whether the Defendants' wrongful conduct caused injury to the business or property of Plaintiffs and Class members;

e.   Whether the unlawful conduct of the Defendants caused Plaintiffs and Class members to pay more for Filters than they otherwise would have paid absent the Defendants' conduct;

f.   Whether the Defendants and their co-conspirators fraudulently concealed the existence of their unlawful conduct;

g.   Whether Plaintiffs and Class members are entitled to injunctive relief;

h.   Whether the Defendants and their co-conspirators unjustly enriched themselves as a result of their inequitable conduct at the expense of Class members; and

i.   The appropriate measure of damages suffered by Class members.

**ANSWER:** Avers that paragraph 119 states a legal conclusion to which no responsive

pleading is required. To the extent that a response is required, denies the allegations in

paragraph 119.

120.   These and other questions of law and fact are common to members of the Classes and predominate over any questions affecting only individual members, including legal and factual issues relating to liability, damages, and restitution.

**ANSWER:** Avers that paragraph 120 states a legal conclusion to which no responsive

pleading is required. To the extent that a response is required, denies the allegations in

paragraph 120.

121.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable. The prosecution of separate actions by individual Class members would impose heavy burdens upon the courts and the Defendants, and would create a risk of inconsistent or varying adjudications of

the questions of law and fact common to the Classes. A class action, on the other hand, would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

**ANSWER:** Avers that paragraph 121 states a legal conclusion to which no responsive

pleading is required. To the extent that a response is required, denies knowledge or information

sufficient to form a belief as to the truth of the allegations in paragraph 121.

122. The interest of Class members in individually controlling the prosecution of separate actions is theoretical rather than practical. The Classes have a high degree of cohesion, and prosecution of the action through representatives would be unobjectionable. The amounts at stake for Class members, while substantial in the aggregate, may not be great enough individually to enable them to maintain separate suits against the Defendants. Plaintiffs do not anticipate any difficulty in the management of this action as a class action.

**ANSWER:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 122.

123. The claims asserted herein are also appropriate for class certification under the laws of each of the states under which claims are asserted.

**ANSWER:** Avers that paragraph 123 states a legal conclusion to which no responsive

pleading is required. To the extent that a response is required, denies the allegations in

paragraph 123.

124. Throughout the Class Period, the Defendants and their co-conspirators affirmatively and fraudulently concealed their unlawful conduct by engaging in secret meetings and communications in furtherance of their conspiracy, and by holding themselves out to the public and their customers, including Plaintiffs, as true competitors.

**ANSWER:** Denies the allegations in paragraph 124 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 124 concerning any other defendant.

125. Plaintiffs and Class members had no knowledge of the Defendants' unlawful scheme and could not have discovered the Defendants' unlawful conduct at an earlier date by the exercise of due diligence. The Defendants affirmatively concealed their illegal acts and these acts only recently became known to the public through filings in a lawsuit in the Southern District of Illinois. As a result of Plaintiffs' lack of knowledge of the Defendants' unlawful

scheme, Plaintiffs assert the tolling of any applicable statutes of limitations affecting the rights of action by Plaintiffs and Class members.

**ANSWER:** Denies the allegations in paragraph 125, except admits that plaintiffs purport

to assert the tolling of any applicable statutes of limitations.

126.    Moreover, the Defendants' actions constitute a continuing violation in that the Defendants' anticompetitive practices have resulted in unlawfully priced Filters, and each and every such transaction at artificially inflated prices is an overt act that injures Plaintiffs and/or other Class members.  These artificially inflated prices continue to exist in the relevant market as the Defendants have yet to cease their unlawful conduct or otherwise withdraw from the conspiracy.  Upon each and every instance that the Defendants failed to disclose their illegal conduct and their effect on the prices paid by Plaintiffs and Class members, the Defendants knew or should have known that the undisclosed information was material to those who purchased such products.

**ANSWER:** Denies the allegations in paragraph 126.

127.    In addition to this overcharging, the Defendants committed numerous additional overt acts in furtherance of their conspiracy, both within and prior to four years from the date of the original filing of this Complaint.  Such overt acts included the illegal meetings and communications regarding Filter prices described herein.

**ANSWER:** Denies the allegations in paragraph 127 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 127 concerning any other defendant.

128.    Therefore, each instance in which the Defendants engaged in the conduct complained of herein and each instance in which a Class member unknowingly paid supra-competitive prices for Filters constitute part of a continuing violation and operate to toll any applicable statutes of limitation.  Furthermore, the Defendants are estopped from relying on any statute of limitations defense because of their unfair and deceptive conduct.

**ANSWER:** Denies the allegations in paragraph 128 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 128 concerning any other defendant.

129.    Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

**ANSWER:** Repeats and realleges its responses to each and every allegation as if fully set forth herein.

130.    The Defendants and the unnamed co-conspirators entered into and engaged in a contract, combination or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act.

**ANSWER:** Denies the allegations in paragraph 130 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 130 concerning any other defendant.

131.    The contract, combination or conspiracy has resulted in an agreement, understanding or concerted action between and among the Defendants in furtherance of which the Defendants fixed, raised, maintained, and/or stabilized prices for Filters in the United States and allocated the market for Filters among themselves.    Such contract, combination, or conspiracy constitutes a *per se* violation of the federal antitrust laws and is, in any event, an unreasonable and unlawful restraint of trade.

**ANSWER:** Denies the allegations in paragraph 131 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 131 concerning any other defendant.

132.    The Defendants' contract, combination, agreement, understanding or concerted action with the co-conspirators occurred in or affected interstate commerce.    The Defendants' unlawful conduct was through mutual understandings, combinations or agreements by, between and among the Defendants and other unnamed co-conspirators.    These other co-conspirators have either acted willingly or, due to coercion, unwillingly in furtherance of the unlawful restraint of trade alleged herein.

**ANSWER:** Denies the allegations in paragraph 132 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 132 concerning any other defendant.

133.    The contract, combination or conspiracy has had the following effects, among others:

a.    Prices charged to Plaintiffs and Class members for Filters were fixed or stabilized at higher, artificially derived, supra-competitive levels;

b.    Plaintiffs and Class members have been deprived of the benefits of free, open and unrestricted competition in the market for Filters; and

c.    Competition in establishing the prices paid, customers of, and territories for Filters has been unlawfully restrained, suppressed and eliminated.

**ANSWER:**  Denies the allegations in paragraph 133.

134.    As a proximate result of the Defendants' unlawful conduct, Plaintiffs and Class members have suffered injury in that they have paid supra-competitive prices for Filters. Plaintiffs and Class members will continue to be injured in their business and property by paying more for Filters purchased indirectly from the Defendants and their co-conspirators than they would pay in the absence of the contract, combination or conspiracy.

**ANSWER:**  Denies the allegations in paragraph 134.

135.    These violations are continuing and will continue unless enjoined by this Court.

**ANSWER:**  Denies the allegations in paragraph 135 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 135 concerning any other defendant.

136.    Plaintiffs and Class members are entitled to an injunction against the Defendants, preventing and restraining the violations alleged herein.

**ANSWER:**  Denies the allegations in paragraph 136.

137.    Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

**ANSWER:**  Repeats and realleges its responses to each and every allegation as if fully

set forth herein.

138.    By reason of their unlawful conduct, Defendants should make restitution to Plaintiffs and members of the Indirect Purchaser State Classes listed below.

**ANSWER:**  Denies the allegations in paragraph 138.

139.    Plaintiffs and members of the following Indirect Purchaser State Classes, by overpaying for Filters, have conferred a benefit on Defendants.  Defendants knowingly accepted and retained the overpayments such that it would be inequitable for Defendants to keep the inflated profits.

**ANSWER:**  Denies the allegations in paragraph 139.

140.    The Defendants have been unjustly enriched through overpayments by Plaintiffs and the Class members and the profits reaped by the Defendants as a direct result of such overpayments.  The detriment suffered by Plaintiffs and the Class members, and the Defendants' unjust enrichment, were related to and flowed from the wrongful conduct alleged herein, including, without limitation, the Defendants' unlawful and anti-competitive acts described above which fixed, raised, and/or maintained the purchase price of Filters at supra-competitive levels.

    **ANSWER:**  Denies the allegations in paragraph 140.

141.    Under common law principles of unjust enrichment, the Defendants should not be permitted to retain the benefits conferred through over-payments by Plaintiffs and Class members.  Plaintiffs and the Class members accordingly are entitled to disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiffs and Class members may seek restitution.

    **ANSWER:**  Denies the allegations in paragraph 141.

142.    Plaintiffs and the following Indirect Purchaser State Classes base their claims for unjust enrichment and disgorgement of profits upon common law principles of unjust enrichment recognized in each of their respective states:

| | |
|---|---|
| A. | Arkansas Indirect Purchaser Class; |
| B. | California Indirect Purchaser Class; |
| C. | District of Columbia Indirect Purchaser Class; |
| D. | Hawaii Indirect Purchaser Class; |
| E. | Illinois Indirect Purchaser Class |
| F. | Iowa Indirect Purchaser Class; |
| G. | Massachusetts Indirect Purchaser Class; |
| H. | Minnesota Indirect Purchaser Class; |
| I. | Nebraska Indirect Purchaser Class; |
| J. | Nevada Indirect Purchaser Class; |
| K. | New Hampshire Indirect Purchaser Class; |
| L. | New Mexico Indirect Purchaser Class; |
| M. | New York Indirect Purchaser Class; |
| N. | Puerto Rico Indirect Purchaser Class; |
| O. | Rhode Island Indirect Purchaser Class; |
| P. | South Dakota Indirect Purchaser Class; |
| Q. | Tennessee Indirect Purchaser Class; |
| R. | Vermont Indirect Purchaser Class; |
| S. | West Virginia  Indirect Purchaser Class; |
| T. | Wisconsin Indirect Purchaser Class; and |

    **ANSWER:**  Honeywell denies the allegations contained in Paragraph 142, except admits

that plaintiffs and alleged indirect purchaser state classes purport to base their claims for unjust

enrichment and disgorgement of profits upon common law principles of unjust enrichment recognized in each of their respective states.

143.   Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

**ANSWER:** Repeats and realleges its responses to each and every allegation as if fully set forth herein.

144.   By reason of the foregoing, the Defendants have entered into a trust, contract, combination, understanding, and agreement in restraint of trade in violation of Arizona Revised Stat. § 44-1401 *et seq*. [FOOTNOTE OMITTED]; California Bus & Prof. Code § 16701 *et seq*.; District of Columbia Code Ann. § 28-4501 *et seq*.; Hawaii Code, H.R.S. § 480-4 [FOOTNOTE OMITTED]; 740 Illinois Compiled Statutes § 10/1 *et. seq*.; Iowa Code § 553.1 *et seq*.; Kansas Stat. Ann. § 50-101 *et seq*.; Maine Rev. Stat. Ann. tit. 10, § 1101 *et seq*.; Michigan Comp. Laws. Ann. § 445.771 *et seq*.; Minnesota Stat. § 325D.49 *et seq*.; Mississippi Code Ann. § 75-21-1 *et seq*.; Nebraska Rev. Stat. §§ 59-801 *et seq*. and § 59-1601 *et seq*.; Nevada Rev. Stat. Ann. § 598A *et seq*. [FOOTNOTE OMITTED]; New Hampshire Revised Stat. 356:1 *et seq*.; New Mexico Stat. Ann. § 57-1-1 *et seq*.; New York Gen. Bus. Law § 340 *et seq*.; North Carolina Gen. Stat. § 75-1 *et seq*.; North Dakota Cent. Code § 51-08.1-01 *et seq*.; Puerto Rico Code 10 LPRA § 257 *et seq*.; South Dakota Codified Laws § 37-1-3.1 *et seq*.; Tennessee Code Ann. § 47-25-101 *et seq*.; Utah Code Ann. § 76-10-911 *et seq*. [FOOTNOTE OMITTED]; Vermont Stat. Ann. tit. 9, § 2451 *et seq*.; West Virginia § 47-18-1 *et seq*.; Wisconsin Stat. § 133.01 *et seq*.; and Wyoming Stat. Ann. § 40-4-101 *et seq*.

**ANSWER:** Denies the allegations in paragraph 144 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 144 concerning any other defendant.

145.   Class members in each of the states listed above paid supra-competitive, artificially inflated prices for Filters. As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and Class members have been injured in their business and property in that they paid more for Filters than they otherwise would have paid in the absence of the Defendants' unlawful conduct.

**ANSWER:** Denies the allegations in paragraph 145.

146.   As a result of the Defendants' violations of the statutes set forth above, Plaintiffs and other Class members seek damages and costs of suit, including reasonable attorneys' fees, and all other forms of relief available under the state antitrust statutes listed above.

40

**ANSWER:** Denies the allegations in paragraph 146, except admits that plaintiffs and purported class members purport to seek damages and costs of suit, including reasonable attorneys' fees, and all other forms of relief available under the state antitrust statutes listed above.

147. Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

**ANSWER:** Repeats and realleges its responses to each and every allegation as if fully set forth herein.

148. The Defendants have engaged in unfair, unconscionable, deceptive, and fraudulent acts or practices in violation of Arkansas Code § 4-88-101 *et seq.*; California Bus. & Prof. Code § 17200 *et seq.*; District of Columbia Code § 28-3901 *et seq.*; Florida Stat. § 501.201 *et seq.*; Hawaii Code, H.R.S. § 480-2; Massachusetts General Laws, Chapter 93A, § 1 *et seq.*; Nebraska Revised Statutes § 59-1601 *et seq.*; Nevada Revised Statutes § 598.0903 *et seq.*; New Mexico Stat. § 57-12-1 *et seq.*; North Carolina General Statutes § 75-1.1 *et seq*; Utah Code § 13-11-1 *et seq.*; and Vermont Statutes, Title 9, § 2451 *et seq.*

**ANSWER:** Denies the allegations in paragraph 148 as they relate to Honeywell, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 148 concerning any other defendant.

149. The Defendants have also violated Rhode Island Gen. Laws § 6-13.1-1 *et seq*. Specifically, (a) the Defendants engaged in commerce in Rhode Island; (b) the Defendants and their co-conspirators secretly agreed to raise prices for Filters sold to Rhode Island consumers by direct agreement and through artificial supply restraints on the entire Filters market, including the Reseller Entities; (c) Rhode Island consumers were targets of the conspiracy; (d) the secret agreements were not known to Rhode Island consumers; and (e) the Defendants made public statements about the prices of Filters or the Filters market such that Plaintiffs and reasonable consumers in Rhode Island were deceived into believing Filter prices to be born of a free and fair market. For example:

> A. Defendant Champion's Guide to Ethics and Standards of Business Conduct, disseminated to the public on the Internet as a link from Champion's website, Defendant Champion proclaims it "supports vigorous but fair competition," which means employees are precluded from "discussing pricing or pricing policy, costs, marketing or strategic plans, proprietary or confidential information, agreeing on prices you will charge customers, or agreeing to divide customers or markets...."

B.  Defendant Honeywell states in its Form 10-K Annual Report filed March 30, 2001, that it is "subject to active competition in substantially all product and services areas."

C.  Similarly, Defendant Wix promised to consumers in its Spring 2007 Newsletter "to provide you with the best products and services in the industry at the most competitive prices possible."

D.  Defendant Donaldson highlights in its Form 10-K Annual Report filed July 31, 2005, that it "competes in a number of filtration markets . . . in a highly competitive environment."

E.  Clarcor Inc., Defendant Baldwin's parent, endorses a free and competitive Filters market in its 2006 Form 10-K Annual Report by stating "The Company encounters strong competition in the sale of all its products."

**ANSWER:**  Denies the allegations in paragraph 149 as they relate to Honeywell, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 149 concerning any other defendant.

150.    These statements were specifically directed at Rhode Island consumers who indirectly purchased Filters primarily for personal, family, or household purposes.  Defendants intended for the Rhode Island consuming public to see the aforementioned statements. Defendants' statements created the likelihood of confusion or misunderstanding on the part of the average, non-business Rhode Island consumer, including Plaintiffs and members of the Rhode Island consumer Class.  The statements were materially misleading because a reasonable consumer acting reasonably under the circumstances would understand Defendants' statements to mean that the Filters market was competitive and prices were set accordingly.  Rhode Island consumers who indirectly purchased Filters were misled to believe they were paying a fair price for Filters, or that the price increases for Filters were imposed for valid business reasons. Defendants' materially deceptive statements caused Plaintiffs and the Rhode Island consumer Class members injury in that Rhode Island consumers were deprived of open and free competition, and by paying supra-competitive prices.

**ANSWER:**  Denies the allegations in paragraph 150.

151.    Class members in the states listed above paid supra-competitive, artificially inflated prices for Filters.  As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and the members of the Classes have been injured in their business and property in that they paid more for Filters than they otherwise would have paid absent the Defendants' unlawful conduct.

**ANSWER:**  Denies the allegations in paragraph 151.

152.     As a result of the Defendants' violations of the laws listed above, Plaintiffs and Class members in the states listed above are entitled to equitable relief, including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits that may have been obtained by the Defendants as a result of such business practices, including compensable and such other damages in all States allowed by law.

**ANSWER:**  Avers that paragraph 152 asserts legal conclusions to which no responsive pleading is required.  To the extent that a response is required, denies the allegations in paragraph 152.

153.     Additionally, Plaintiffs and the Classes seek actual damages for their injuries caused by these violations in an amount to be determined at trial.

**ANSWER:**  Denies the allegations in paragraph 153 except admits that plaintiffs and the purported classes seek actual damages for alleged injuries.

154.     The Defendants' willful and unlawful conduct allows Plaintiffs and the Class to recover attorneys' fees in the states where they are allowed by law.  Therefore, Plaintiffs and the Classes seek attorneys' fees where they are allowed by law.

**ANSWER:**  Denies the allegations in paragraph 154, except admits that plaintiffs and purported classes seek attorneys' fees where allowed by law.

155.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial as to all issues triable by a jury.

**ANSWER:**  Admits that plaintiffs seek a jury trial under Rule 38 of the Federal Rules of Civil Procedure.

**PRAYER FOR RELIEF**

To the extent any response is required to the Prayer For Relief, Honeywell denies each and every allegation.  Honeywell also denies each and every allegation of the Complaint not specifically admitted above.

**AFFIRMATIVE DEFENSES**

Honeywell asserts the following affirmative defenses in response to the Complaint without assuming the burden of proof where such burden is otherwise on plaintiffs pursuant to

applicable substantive or procedural law. Honeywell reserves the right to amend or supplement its defenses and raise counterclaims as additional facts concerning its defenses become known.

### FIRST DEFENSE

The Complaint, in whole or in part, fails to state a claim upon which relief can be granted. Honeywell incorporates by reference the defenses set forth in the Defendants' February 2, 2009 Motion to Dismiss.

### SECOND DEFENSE

Plaintiffs' claims are barred, in whole or in part, because plaintiffs lack standing to sue. Among the reasons plaintiffs do not have standing are: (i) the alleged injury is not the type addressed by the laws under which plaintiffs brings these claims; (ii) the alleged injury is indirect and too remote; (iii) more direct victims of the alleged injury exist and are pursuing claims; (iv) the alleged damages are speculative; and (v) plaintiffs' damage claims create an impermissible risk of duplicate recoveries and complex damage apportionment.

### THIRD DEFENSE

Plaintiffs' claims are barred, in whole or in part, because plaintiffs have not suffered any cognizable antitrust injury, including but not limited to: (a) "injury in fact"; and (b) any injury proximately caused by any conduct of Honeywell.

### FOURTH DEFENSE

Plaintiffs and members of the putative class are barred, either in whole or in part, from asserting their claims because they come to Court with unclean hands.

### FIFTH DEFENSE

Plaintiffs' claims are barred in whole or in part by the applicable statute of limitations.

### SIXTH DEFENSE

Plaintiffs have failed to mitigate damages, if any, and any recovery should be reduced or denied accordingly.

## SEVENTH DEFENSE

Plaintiffs' claims are barred in whole or in part by the equitable doctrine of laches.

## EIGHTH DEFENSE

To the extent there is a finding of an illegal overcharge, Plaintiffs' claims are barred, in whole or in part, to the extent that the overcharge was absorbed, in whole or in part, by others, and was not passed through to Plaintiffs.

## NINTH DEFENSE

Plaintiffs' claims are barred in whole or in part because recovery or relief would unjustly enrich plaintiffs.

## TENTH DEFENSE

Honeywell adopts and incorporates any applicable defense pleaded by any other defendant not otherwise expressly set forth herein.

WHEREFORE, Honeywell prays for judgment as follows:

     a.    dismissing plaintiffs' Amended Complaint with prejudice;

     b.    that Honeywell be awarded its costs and disbursements in this action, including  reasonable attorneys' fees;

     c.    that Honeywell be granted prejudgment interest, as appropriate; and

     d.    granting such other and further relief as this Court may deem proper and just.

Dated: March 25, 2011                        Respectfully Submitted,

By:  /s/ Patrick M. Collins____
Patrick M. Collins
Jonathan R. Buck
PERKINS COIE LLP
131 South Dearborn Street, Suite 1700
Chicago, IL  60603
Tel:  (312) 324-8558
Fax:  (312) 324-9558

Richard G. Parker (*pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC  20006
Tel:  (202) 383-5300
Fax:  (202) 383-5414

Edward Hassi (*pro hac vice*)
O'MELVENY & MYERS LLP
7 Times Square
New York, NY  10036
Tel:  (212) 326-2000
Fax:  (212) 326-2061

Counsel for Defendant
HONEYWELL INTERNATIONAL INC.

## **CERTIFICATE OF SERVICE**

       I, Patrick Collins, hereby certify that on March 25, 2011, I caused the foregoing Answer of Honeywell International Inc. to Plaintiffs' Fourth Amended Consolidated Indirect Purchaser Complaint to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to attorneys of record.


                        /s/ Patrick M. Collins