# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :

      v.                  :        **CRIMINAL NO. 11- 334**

WILLIAM G. BURCH          :

## GUILTY PLEA MEMORANDUM

### I.    INTRODUCTION

On June 21, 2010, the United States Attorney for the Eastern District of Pennsylvania filed a one-count criminal information ("information"), charging the defendant, William G. Burch, with making false statements to the United States, in violation of 18 U.S.C. § 1001.

The defendant was a former employee of Champion Laboratories, Inc. ("Champion"), a manufacturer of automobile filters. After being fired from Champion and filing a qui tam lawsuit against Champion and other auto filter manufacturers, Burch falsified a price increase letter and submitted it to the Antitrust Division of the Department of Justice in order to bolster his claim of pervasive price fixing among auto filter manufacturers. Burch took these actions in order to influence the Antitrust Division to open a criminal grand jury investigation into price fixing in the replacement filters market; because of Burch's obstructive actions, the Antitrust Division in Philadelphia did in fact open a grand jury investigation to determine whether automobile filter manufacturers had entered into a criminal price-fixing conspiracy, which the Antitrust Division would not have done had it been aware that Burch had falsified the price increase letter.

Burch has informed the United States through his counsel, Robert R. Nigh, Jr., Esquire, that he intends to enter a plea of guilty to the information. A guilty plea hearing has been scheduled by the Court for 10:00 a.m. on Wednesday, June 29, 2011.

## II.   GUILTY PLEA AGREEMENT

The government has entered into a guilty plea agreement with the defendant pursuant to Rule 11(e)(1)(B) of the Federal Rules of Criminal Procedure, an executed copy of which is attached as Exhibit A. Burch has agreed to plead guilty to Count One of the information, charging him with making false statements to the government, in violation of 18 U.S.C. § 1001. He has agreed to pay a fine of $30,000 as directed by the Court; and he has further agreed to pay the special assessment of $100 before sentencing. Burch agrees further to waive his appellate rights.

The parties have also entered into certain factual stipulations, pursuant to the United States Sentencing Guidelines.[1] Consistent with those stipulations, the United States reserves the right to set forth the facts surrounding the defendant's criminal involvement at the time of sentencing.

## III.   MAXIMUM PENALTIES

By pleading guilty to Count One of the information, Burch is subject to the following maximum sentence: five years in prison, a three year period of supervised release, $250,000 fine, and a $100 special assessment. Full restitution may also be ordered.

## IV.   ELEMENTS OF THE OFFENSE

### False Statements to the Government (18 U.S.C. § 1001)

Count One of the information charges Burch with knowingly making material false statements in a matter within the jurisdiction of a federal agency, in violation of Title 18, United States Code, Section 1001(a)(2). In order to prove a false statement violation of Section 1001(a)(2), the government must establish the following elements:

---

[1]   The plea agreement specifically states that these stipulations are not binding upon the Court or the Probation Department. See ¶ 9, page 4.

2

(1)    the defendant must make a statement;

(2)    the statement must be false;

(3)    the defendant must make the statement knowingly and willfully;

(4)    the statement must be material;[2] and

(5)    the statement must concern a matter within the jurisdiction of a federal department or agency.[3]

## V.    SENTENCING GUIDELINES

The advisory Sentencing Guidelines apply to this case.

At paragraph 8 of the plea agreement, the parties stipulated that the defendant committed the following offenses in addition to the false statement offense of conviction, and that the defendant understood and agreed that, for the purpose of determining the defendant's Sentencing Guidelines range, § 1B1.2(c) provides that these additional offenses shall be treated as if the defendant had been convicted of additional counts charging these offenses:

a.    In or about April or May of 2008, the defendant knowingly submitted to the Antitrust Division a price increase letter dated October 11, 2004 that he falsely altered by

---

[2]    To be "material," "[t]he statement must have a natural tendency to influence, or [be] capable of influencing, the decisionmaking body to which it is addressed." United States v. Gaudin, 515 U.S. 506, 512 (1995). The Third Circuit acknowledged and applied that language in United States v. McLaughlin, 386 F.3d 547, 553 (3d Cir. 2004). Thus, the language of the standard for materiality is well settled. It is also clear that a statement may be material even if no agency actually relied upon the statement in making a decision. See, e.g., In re Cohn, 54 F.3d 1108, 1114 (3d Cir. 1995). The test for materiality does not require that a false statement be capable of influencing an actual, particular decision of the agency at issue; all that is needed is that the statement be of a type that would naturally tend to influence a reasonable decisionmaking agency in the abstract. United States v. McBane, 433 F.3d 344, 350-52 (3d Cir. 2005).

[3]    United States v. Moore, 446 F.3d 671, 677 (7th Cir. 2006); United States v. Camper, 384 F.3d 1073, 1075 (9th Cir. 2004).

placing on the document a facsimile header dated September 23, 2004, with the intent to impede, obstruct, or influence the investigation and proper administration of a matter within the jurisdiction of an agency of the United States, in violation of 18 U.S.C. § 1519.

  b.  In or about early July and late August of 2009, the defendant knowingly and willfully made material false statements to the government, in addition to the false statement charged in Count One of the information, purporting to explain why he had falsified the price increase letter by adding the facsimile header that predated the date on the letter, in a matter within the jurisdiction of an agency of the United States, in violation of 18 U.S.C. § 1001.

  At paragraph 9 of the plea agreement, the parties stipulated to the following concerning the false statement offense of conviction:

  a.  Because the Count One offense that is the subject of this agreement also constitutes a violation of 18 U.S.C. § 1519, the obstruction of justice guideline, USSG § 2J1.2, applies via the cross-reference provision of USSG § 2B1.1(c)(3), yielding a base offense level of 14.

  b.  The Count One offense resulted in substantial interference with the administration of justice within the meaning of USSG § 2J1.2(b)(2), which adds 3 levels to the base offense level.

  c.  The defendant understands that at sentencing, the government will argue that the Count One offense involved the alteration and fabrication of an especially probative record within the meaning of USSG § 2J1.2(b)(3)(B), which provision, if applicable, adds an additional 2 levels to the base offense level.

  d.  As of the date of the plea agreement, the defendant had demonstrated acceptance of responsibility for his offense, making the defendant eligible for a 2-level downward

4

adjustment under USSG § 3E1.1(a).

        e.    As of the date of the plea agreement, the defendant had assisted authorities in the investigation or prosecution of his own misconduct by timely notifying the government of his intent to plead guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, resulting in a 1-level downward adjustment under USSG § 3E1.1(b).

## VI.    SUMMARY OF EVIDENCE

        In April 2008, the Philadelphia office of the Antitrust Division of the Department of Justice opened a preliminary inquiry into allegations of possible price fixing in the replacement auto filters market, and on June 7, 2008 officially began its grand jury investigation in that matter. The evidence would show that the Antitrust Division took these actions based on allegations made by William Burch that his former employer, Champion, had been illegally fixing prices with its competitors, Honeywell International ("Honeywell") and Purolator Filters ("Purolator"), and that he was fired for his refusal to go along with this illegal conduct. Additionally, Burch claimed that his prior employer, Purolator, engaged in illegal price fixing when he was employed there in the 1990s.

        The primary participants in this market during the relevant period were Purolator Filters, Honeywell International, and Champion Laboratories. Burch was employed as a sales manager for Purolator through late 1999, when he assumed a similar position with Champion. He was employed by Champion until January 13, 2008 when he was fired for embezzling approximately $80,000, which he accomplished by falsifying his airline travel vouchers.

        Antitrust Division attorneys initially learned of Burch's allegations through a civil class action price-fixing lawsuit filed on March 31, 2008. Burch also filed a qui tam suit against

5

Champion and other auto filter manufacturers that same day. On April 24, 2008, two Antitrust Division attorneys flew to Tulsa, Oklahoma and interviewed Burch in the presence of Burch's attorney, at the United States Attorney's Office for the Northern District of Oklahoma. An attorney from the Civil Division of the Department of Justice was present to consider whether or not the United States would intervene in the qui tam suit.[4] At the Tulsa interview, Burch turned over a collection of more than 100 pages of documents, as well as audio tapes that he had made secretly, during his employment at Purolator and Champion.[5]

Among the documents produced by Burch was a critical document which is at the heart of this prosecution: an October 11, 2004 Honeywell letter signed by Guy Andrysick, Vice President for Sales and Marketing. The letter to Honeywell customers notifies them of a 5% price increase for certain auto filters effective December 1, 2004. The price increase letter is bates numbered SL-00229. The price increase letter had a Champion fax header at the top, indicating that it had been faxed to Champion on September 23, 2004, more than two weeks prior to the date of the price increase letter itself.

When the Antitrust lawyers returned to Philadelphia, they reviewed Burch's documents. They quickly realized the importance of SL-00229. One of the Antitrust attorneys would testify at trial that SL-00229 was THE hot document in the price fixing case and it was the reason that the Antitrust Division pursued a criminal grand jury investigation. The tapes and the

---

[4] The United States did not intervene. Burch later withdrew his qui tam suit. However, Burch filed a new qui tam suit in December 2009 which remains pending.

[5] Copies of the documents were forwarded to the Antitrust office in Philadelphia on or about April 25, 2008, by a Tulsa-based Assistant U.S. Attorney (who also attended the meeting). Antitrust staff immediately took possession of the tape recordings at the time of the interview.

other documents produced by Burch, while suggestive that prices among competitors in this industry were at times discussed, did not prove an unlawful agreement to fix prices. SL-00229, which showed that Champion received notice of Honeywell's price increase weeks before it was public information, appeared to be strong evidence of an agreement to fix prices.

As part of the price fixing investigation in replacement auto filters, on May 1, 2008 an Antitrust attorney sent Burch's attorney an email asking whether Burch knew the whereabouts of certain Purolator and Champion employees. The trial evidence would show that Burch replied directly by email to him, on May 6, 2008. In his email response, Burch not only provided the requested contact information, but also made specific allegations regarding the various individuals' violations of the antitrust laws. In particular, Burch asserted that Burch's supervisor at Champion had "faxed the Fram [Honeywell] second round increase letters **including an October 11, 2004 letter on 10/26/2004, 10/14/2004 and 9/23/2004"** (emphasis added). He also wrote that his supervisor "was actively involved in the plan to fix prices."

On May 20, 2008, the Antitrust Division requested grand jury authority, which was granted on June 7, 2008. Grand Jury subpoenas for testimony were issued in June 2008; beginning in September 2008 through January 2009, Antitrust questioned eight witnesses from Champion and Honeywell in the grand jury. In November 2008, Antitrust subpoenaed Honeywell documents that could help pinpoint the price increase letter's provenance.[6] Also in November 2008, Antitrust staff contacted Burch's attorney to learn more about the letter. Shortly thereafter, after speaking to Burch, Burch's attorney advised an Antitrust Division attorney that Burch said he obtained three copies of

---

[6]     On November 18, 2008, Antitrust issued a grand jury subpoena to Champion for documents related to Champion's possession of Honeywell's price increase letter. Champion's subpoena response, however, shed no light on Burch's allegations.

the letter, SL-00229, from Champion employees, and that the copy in question had been faxed to him at a hotel in New Orleans by his supervisor while Burch was on business travel.[7]

However, the trial evidence, including witnesses from Honeywell, witnesses from the outside printer employed by Honeywell, and a forensic analysis of Honeywell's computer metadata, would show that the letter, SL-00229 was created no earlier than October 11, 2004 and that it was created without a letterhead. The letterhead was added to the letter by an outside printing vendor no earlier than October 19, 2004, and the price increase letter was not sent out to Honeywell customers until October 21, 2004.

This information – that SL-00229 did not exist in its published form until shortly before it was dated, and that it was not sent to anyone outside of Honeywell before October 11, 2004 – made Antitrust concerned that the fax banner on SL-00229 might not be authentic. An Antitrust attorney candidly relayed this concern to counsel for Burch on June 30, 2009. Burch, in direct response to Antitrust's specific questions about this issue, admitted – in writing and for the first time – that the "09/23/2004" fax was indeed a fabricated document that he created. His explanation for it being altered was both preposterous and incomprehensible.

Basically, Burch claimed to have cut and pasted the "09/23/2004" banner atop the October 11, 2004 price increase letter (that he actually received on October 26, 2004).[8] Burch

---

[7]    After being fired from Champion, Burch filed a wrongful discharge suit against his former employer. Champion counterclaimed, alleging fraud and unjust enrichment. The suit was settled on September 5, 2008, by Champion's payment of approximately $450,000 to Burch. About a month later, on October 7, 2008, at a recorded interview with Champion's attorneys, Burch repeated the false statement that he had received the price increase letter via facsimile transmission on or about September 23, 2004.

[8]    Through counsel, Burch provided the Antitrust Division with a July 3, 2009 email and an August 25, 2009 memo. Counsel transmitted these to the Antitrust Division on July 6 and

claimed that he placed the "09/23/2004" fax banner on the October 11, 2004 letter only to help him remember the date of some other document which he lost. He claimed to have not done this to mislead anyone. He also wrote that he had cut the header from yet another document. Burch said he created the fabricated document based on advice of counsel regarding the importance of making a time line.

Furthermore, Burch admitted that the information he had provided to in his May 6, 2008 email to the Antitrust attorney, concerning the three purported faxings of the October 11 price increase letter, SL-00229, was inaccurate. Burch's revised story was that while his supervisor had given him information concerning Honeywell's 2004 price increases on three occasions, there were not three faxings of the actual Honeywell price increase letter SL-00229. Burch claimed that this was merely his "mixup" based on "terminology" which he had intended to clarify once he was questioned concerning the documents. Burch wrote that he believed that his prior references to three separate fax transmissions of the October 11th price increase letter was "an all-inclusive terminology that represented the ongoing communications between Champ[ion] and [Honeywell] without rambling in print about how [he] was unable to locate one of the related documents."

At a trial of Burch, the government would prove the original transfer of the documents, including SL-00229, by the documents themselves and testimony of persons present at the Tulsa meeting (two Antitrust Division lawyers and an Assistant U.S. Attorney from the Northern District of Oklahoma). The government would prove that Burch told the Antitrust Division that he had received the October 11, 2004 price increase letter, SL-00229, by facsimile transmission on or

---

August 31, 2009, respectively. In these writings, Burch indicated that he was responding to concerns of the Antitrust Division.

about September 23, 2004, by the email transmission and the testimony of the Antitrust Division lawyer who received the May 6, 2008 email that Burch sent him containing that false statement. The government would prove the circumstances under which Burch was fired from Champion by testimony of witnesses from Champion and documents, including travel vouchers.

The government would prove that the facsimile header was false by Burch's own admission, as corroborated by the forensic investigation of Honeywell's documents undertaken by the outside experts retained to examine Honeywell's computer metadata, whose analysis showed that the letter was created no earlier than October 11, 2004 and that it was created without a letterhead. Other witnesses would testify that the letterhead was added to the letter by Honeywell's outside printing vendor no earlier than October 19, 2004, and that the letter was not sent to Honeywell customers until October 21, 2004.

The government would prove that Burch made the false statement knowingly and willfully by showing Burch's strong financial incentive to add the fax header to the price increase letter, that is, his wrongful dismissal lawsuit against Champion (which Burch later settled for $450,000) and his qui tam lawsuit. This evidence would be corroborated by Burch's later false statements as to why he added the fax header.

The government would prove the materiality of the initial false statement through the testimony of two Antitrust Division attorneys, both of whom would testify that had they known that Burch had falsified the facsimile header on the price increase letter, they would not have opened the grand jury investigation. Both would also testify that eight witnesses testified in the grand jury in connection with the Antitrust Division's grand jury investigation. This and other proof that the grand jury investigation was undertaken would show that Burch actually obstructed justice in addition to

10

making materially false statements.    Finally, at a trial the government would prove that the later

statements that Burch made to the Antitrust Division (the Burch memoranda that his counsel sent

to Antitrust on July 6 and August 31, 2009), admitting that he had falsified SL-00229 but purporting

to explain why he had done so, were also false, and made with the intent to deceive the Antitrust

Division into believing that he had no intent to deceive in the first place, by the incoherence of the

statements themselves, and the testimony of Burch's then-lawyer, who would testify at trial that at

no time did he ever advise Burch to falsify any documents that he gave to the government, in order

to create a time line or for any other reason.

The United States respectfully submits that this summary of evidence provides a

factual basis for the guilty plea by Burch to Count One of the information.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney


MARY E. CRAWLEY
Assistant United States Attorney

11

## CERTIFICATE OF SERVICE

I hereby certify that I have caused to be served a true and correct copy of the annexed

Guilty Plea Memorandum on counsel for the defendant William G. Burch, by e-filing and/or by

facsimile transmission:

Robert R. Nigh, Jr., Esquire
Brewster & DeAngelis, PLLC
2617 East 21st Street
Tulsa Oklahoma 74114


MARY E. CRAWLEY
Assistant United States Attorney

Date: 6|24|11