**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: AFTERMARKET FILTERS ANTITRUST LITIGATION** | **Master Docket No. 08-cv-4883 MDL Docket No. 1957** |
| **This Document Relates To: All Indirect Purchaser Actions** | **Honorable Robert W. Gettleman** |

**INDIRECT PURCHASER PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN
SUPPORT OF PLAINTIFFS' OMNIBUS MOTION FOR PRELIMINARY APPROVAL
OF PROPOSED SETTLEMENTS; CERTIFICATION OF SETTLEMENT CLASSES;
APPOINTMENT OF CLASS COUNSEL FOR THE SETTLEMENT CLASSES;
AUTHORIZATION TO DISSEMINATE NOTICE TO SETTLEMENT CLASSES; AND
SETTING A HEARING ON FINAL SETTLEMENT APPROVAL**

## TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION ...................................................................................................1

II.     SUMMARY OF THE SETTLEMENT AGREEMENT..........................................1

        A.      The Settlement Agreements.........................................................................1

        B.      Notice ..........................................................................................................1

        C.      Stipulation to Class Certification ...............................................................2

III.    THE PROPOSED NOTICE TO THE CLASS .......................................................5

IV.     CERTIFICATION OF THE SETTLEMENT CLASS ...........................................8

        A.      The Requirements of Rule 23(a) are Satisfied...........................................8

                1.      Numerosity......................................................................................9

                2.      Common Questions of Law and Fact............................................10

                3.      Typicality .....................................................................................11

                4.      Adequacy ......................................................................................12

        B.      The Requirements of Rule 23(b)(3) are Satisfied ....................................13

                1.      Common Questions of Law or Fact Predominate.........................14

                2.      A Class Action Is Superior to Other Methods of
                        Adjudication..................................................................................16

# TABLE OF AUTHORITIES

**PAGE**

### Cases

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .......................................................... passim

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998) ........................................... 12

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir. 1964) ................................... 9

*In re Brand Name Prescription Drugs Antitrust Litig.*, Case No. 94 C 897, MDL 997, 1994 WL 663590 (N.D. Ill. Nov. 18, 1994) ............................................ 17

*In re Community Bank of Northern Virginia & Guaranty Nat'l Bank of Tallahassee Second Mortgage Loan Litig.*, 418 F. 3d 277 (3d Cir. 2005) ................................... 8

*In re Corrugated Container Antitrust Litig.*, 80 F.R.D. 244 (S.D. Tex. 1978)............................ 15

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 WL 1530166 (N.D. Cal. June 5, 2006) ................................ 16

*In re Fine Paper Antitrust Litig.*, 82 F.R.D. 143 (E.D. Pa. 1979) ................................. 9

*In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472 (W.D. Pa. 1999) ................................. 9

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768 (3d Cir. 1995)........................................................................... 12

*In re Linerboard Antitrust Litig.*, 203 F.R.D. 197 (E.D. Pa. 2001) ............................ 10

*In re Master Key Antitrust Litig.*, 528 F.2d 5 (2d Cir. 1975)........................................ 15

*In re Plastic Cutlery Antitrust Litig.*, No. 96-CV-728, 1998 WL 135703 (E.D. Pa. Mar. 20, 1998)........................................................................... 9, 12

*In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3rd Cir. 1998) ................................................................ 10, 11, 12

*In re Relafen Antitrust Litig.*, 221 F.R.D. 260 (D.Mass. 2004) ................................. 15

*In re Rubber Chems. Antitrust Litig.,* 232 F.R.D. 346 (N.D. Cal. 2005).............................. 10, 14

*In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603 (N.D. Cal. 2009)........................................................................... 16, 17

*In re Sugar Industry Antitrust Litig.*, MDL Dkt. No. 201, 1976 WL 1374 (N.D. Cal. May 21, 1976)........................................................................... 14

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...................................... 6

*In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d at 124 (2d Cir. 2001) ................. 15, 16

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) ........................................... 11

*Jerry Enters. of Gloucester County, Inc. v. Allied Bev. Group, L.L.C.*, 178 F.R.D. 437
    (D.N.J. 1998) ........................................................................................................................... 9, 12

*Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998) ............................................................................... 11

*Levitan v. McCoy*, No. 00-C-5096, 2003 WL 1720047 (N.D. Ill. Mar. 31, 2003) ........................ 9

*Reiter v. Sonotome Corp.*, 442 U.S. 330 (1979) ............................................................................. 15

*Southeast Mo. Hosp. v. C.R. Bard, Inc.*, No. 1:07cv0031 TCM, 2008 WL 4372741
    (E.D. Mo. Sept. 22, 2008) ........................................................................................................... 11

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) ................................................. 16

*Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288 (1st Cir. 2000) ...................................... 16

*Williams v. Sinclair*, 529 F.2d 1383 (9th Cir. 1975) ...................................................................... 16

*Zenith Radio Corp. v. Hazeltine Research Inc.*, 395 U.S. 100 (1969) ........................................... 15

## Rules

Fed. R. Civ. P. 23 ..................................................................................................................... 6, 8

Fed. R. Civ. P. 23(a) ............................................................................................................... passim

Fed. R. Civ. P. 23(a)(1) ................................................................................................................. 10

Fed. R. Civ. P. 23(a)(2) ................................................................................................................. 11

Fed. R. Civ. P. 23(a)(3) ................................................................................................................. 11

Fed. R. Civ. P. 23(a)(4) ................................................................................................................. 13

Fed. R. Civ. P. 23(b) ....................................................................................................................... 8

Fed. R. Civ. P. 23(b)(3) ............................................................................................................. passim

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................................. 6

Fed. R. Civ. P. 23(e)(1) ................................................................................................................... 6

Fed. R. Civ. P. 23(g) ..................................................................................................................... 13

Fed. R. Civ. P. 23(g)(1) ........................................................................................................... 13

Fed. R. Civ. P. 23(g)(1)(A) ..................................................................................................... 13

Fed. R. Civ. P. 23(g)(4) ........................................................................................................... 13

**Other Authorities**

C.A. Wright, A. Miller & M. Kane, FEDERAL PRACTICE AND PROCEDURE, § 1762 (2d
    ed. 1986) ............................................................................................................................ 9

C.A. Wright, A. Miller & M. Kane, FEDERAL PRACTICE AND PROCEDURE, § 1781 (3d
    ed. 1986) ............................................................................................................................ 16

MANUAL FOR COMPLEX LITIGATION § 21.311 (4th ed. 2004) ........................................... 6

Newberg § 8.32 .......................................................................................................................... 6

Sherman Act, 15 U.S.C. § 1 ............................................................................................ 2, 8, 10

## I.      INTRODUCTION

Plaintiffs in all of the cases subject to the settlements described herein have contemporaneously herewith filed Plaintiffs' Omnibus Motion for Preliminary Approval of Proposed Settlements; Certification of Settlement Classes; Appointment of Class Counsel for the Settlement Class; Authorization to Disseminate Notice to Settlement Classes; and Setting a Hearing on Final Settlement Approval.

This Supplemental Memorandum is filed to address specific considerations relating to the Indirect Purchaser Plaintiffs' request that this Court certify an Indirect Purchaser Class for settlement purposes.  Of note, Indirect Purchaser Plaintiffs propose that Notice of Preliminary Approval be deferred, as explained below.

## II.     SUMMARY OF THE SETTLEMENT AGREEMENT

### A.      The Settlement Agreements

The Settlement Agreements provide, among other things, that Baldwin Filters, Inc., Cummins Filtration, Inc., and Donaldson Company, Inc. will each pay $625,000 in settlement of the captioned litigation within five (5) business days after preliminary approval by the Court of the Settlement Agreements.  Pursuant to the Settlement Agreements, each Settling Defendant has agreed to pay $156,250 to the Indirect Purchaser Class.  The total of $468,750 will be paid to the Indirect Purchaser Class and placed in an escrow account, with all interest earned on the monies to become a part of the Indirect Purchaser Class Settlement Fund.

### B.      Notice

The Settlement Agreements provides that Notice to the Indirect Purchaser Class be deferred until the earlier of (1) forty-five days after the preliminary approval of a fourth settlement (i.e., settlement with an additional defendant beyond Baldwin, Cummins and

1

Donaldson), or (2) the first other notice sent and/or published to the Indirect Purchaser Settlement Class.

Because the Indirect Purchaser Class cannot be identified by reference to Defendants' records, a nationwide publication notice plan is necessary. Such notice is cost prohibitive given the amounts of these Settlements. Therefore, the Indirect Purchaser Class Counsel propose, and the Settlement Agreement calls for Notice to the Indirect Purchaser Plaintiff Class to be deferred until the earlier of (1) another settlement or (2) other notice (for example, notice of certification of a litigation class).

The Settlement Agreements also provide that, subject to Court approval, Indirect Purchaser Class Counsel are authorized to make reasonable disbursements from the Settlement Fund (following the Court's preliminary approval of the Settlements) to pay costs of notice as well as to administer of the Settlement Fund.

###    C.    Stipulation to Class Certification

The Indirect Purchaser Plaintiffs bring claims on behalf of a putative nationwide class of indirect purchasers seeking injunctive relief under Section 1 of the Sherman Act, 15 U.S.C. § 1. In addition, the Indirect Purchaser Plaintiffs bring claims for damages under the laws of thirty (30) states, which have enacted antitrust (or analogous) statutes that allow indirect purchasers to recover damages for anticompetitive conduct. Four of the thirty states (Nebraska, New Hampshire, Utah and Wyoming) enacted their indirect purchaser statutes during the Class Period.[1] The Court previously granted defendants' motion to dismiss claims based on purchases of Filters that pre-dated the enactment of these states' indirect purchaser statutes. Thus, the class

---

[1] The Class Period is January 1, 1999 through the present. Nebraska enacted their indirect purchaser statute on January 1, 2002. New Hampshire enacted their indirect purchaser statute on January 1, 2008. Utah enacted their indirect purchaser statute on January 1, 2006. And Wyoming enacted their indirect purchaser statute on January 1, 2006.

94839

periods for these four states are limited to the dates their statutes were enacted (as detailed below). For purposes of settlement only, Settling Defendants have stipulated to the certification of all of the foregoing indirect purchaser classes.

The Settlement Agreements contemplate that for settlement purposes only, the requirements of Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure are satisfied, subject to Court approval, and that the following Indirect Purchaser Settlement Classes[2] shall be certified for settlement purposes as to the Settling Defendants:

**Nationwide Injunctive Class**: All persons or entities in the United States who purchased for their own use and not for resale Filters manufactured and/or sold by one or more of the Defendants or any of their parents, affiliates, subsidiaries, predecessors or successors in interest at any time from at least January 1, 1999 to and including the Execution Date of this Settlement Agreement from one or more of the following "Reseller Entities": Advance Auto Parts, Inc., Ashland, Inc., Autozone, Inc., Bridgestone Retail Operations, LLC d/b/a Firestone Complete Auto, General Parts, Inc., Genuine Parts Company, Goodyear Tire & Rubber Company d/b/a/ Goodyear Gemini Automotive Care, Jiffy Lube International, Inc., Midas, Inc., O'Reilly Automotive, Inc., Pennzoil-Quaker State Company, The Pep Boys – Manny, Moe & Jack, Sears, Roebuck & Co., Texaco, Inc., Wal-Mart Store, Inc., or any of their parents, affiliates, subsidiaries, predecessors or successors in interest.

Excluded from the Class are the Defendants and their officers, directors, employees, parents, affiliates, subsidiaries, predecessors or successors in interest, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and all federal or state governmental entities (but not local, municipal or other governmental entities).

**Indirect Purchaser State Damage Classes**: All persons and entities in Arizona, Arkansas, California, the District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Massachusetts, Nevada, New Mexico, New York, North Carolina, North Dakota, Puerto Rico, Rhode Island, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin who purchased for their own use and not for resale Filters manufactured and/or sold by one or more of the Defendants or any of their parents, affiliates, subsidiaries,

---

[2] "Indirect Purchaser Settlement Class" is defined in Paragraph 14 of the Settlement Agreements to mean the Nationwide Injunctive Class (as defined in Paragraph 15 of the Settlement Agreements) and the Indirect Purchaser State Damages Classes (as defined in Paragraph 16 of the Settlement Agreements).

94839

predecessors or successors in interest at any time from at least January 1, 1999 to and including the Execution Date of this Settlement Agreement from one or more of the following "Reseller Entities": Advance Auto Parts, Inc., Ashland, Inc., Autozone, Inc., Bridgestone Retail Operations, LLC d/b/a Firestone Complete Auto, General Parts, Inc., Genuine Parts Company, Goodyear Tire & Rubber Company d/b/a/ Goodyear Gemini Automotive Care, Jiffy Lube International, Inc., Midas, Inc., O'Reilly Automotive, Inc., Pennzoil-Quaker State Company, The Pep Boys – Manny, Moe & Jack, Sears, Roebuck & Co., Texaco, Inc., Wal-Mart Store, Inc., or any of their parents, affiliates, subsidiaries, predecessors or successors in interest.

All persons and entities in Nebraska who indirectly purchased for their own use and not for resale Filters manufactured and/or sold by one or more of the Defendants or any of their parents, affiliates, subsidiaries, predecessors or successors in interest at any time from at least January 1, 2002 to and including the Execution Date of this Settlement Agreement from one or more of the following "Reseller Entities": Advance Auto Parts, Inc., Ashland, Inc., Autozone, Inc., Bridgestone Retail Operations, LLC d/b/a Firestone Complete Auto, General Parts, Inc., Genuine Parts Company, Goodyear Tire & Rubber Company d/b/a/ Goodyear Gemini Automotive Care, Jiffy Lube International, Inc., Midas, Inc., O'Reilly Automotive, Inc., Pennzoil-Quaker State Company, The Pep Boys – Manny, Moe & Jack, Sears, Roebuck & Co., Texaco, Inc., Wal-Mart Store, Inc., or any of their parents, affiliates, subsidiaries, predecessors or successors in interest.

All persons and entities in New Hampshire who indirectly purchased for their own use and not for resale Filters manufactured and/or sold by one or more of the Defendants or any of their parents, affiliates, subsidiaries, predecessors or successors in interest at any time from at least January 1, 2008 to and including the Execution Date of this Settlement Agreement from one or more of the following "Reseller Entities": Advance Auto Parts, Inc., Ashland, Inc., Autozone, Inc., Bridgestone Retail Operations, LLC d/b/a Firestone Complete Auto, General Parts, Inc., Genuine Parts Company, Goodyear Tire & Rubber Company d/b/a/ Goodyear Gemini Automotive Care, Jiffy Lube International, Inc., Midas, Inc., O'Reilly Automotive, Inc., Pennzoil-Quaker State Company, The Pep Boys – Manny, Moe & Jack, Sears, Roebuck & Co., Texaco, Inc., Wal-Mart Store, Inc., or any of their parents, affiliates, subsidiaries, predecessors or successors in interest.

All persons and entities in Utah who indirectly purchased for their own use and not for resale Filters manufactured and/or sold by one or more of the Defendants or any of their parents, affiliates, subsidiaries, predecessors or successors in interest at any time from at least January 1, 2006 to and including the Execution Date of this Settlement Agreement from one or more of the following "Reseller Entities": Advance Auto Parts, Inc., Ashland, Inc., Autozone, Inc., Bridgestone Retail Operations, LLC d/b/a Firestone Complete Auto, General Parts, Inc.,

4

Genuine Parts Company, Goodyear Tire & Rubber Company d/b/a/ Goodyear Gemini Automotive Care, Jiffy Lube International, Inc., Midas, Inc., O'Reilly Automotive, Inc., Pennzoil-Quaker State Company, The Pep Boys – Manny, Moe & Jack, Sears, Roebuck & Co., Texaco, Inc., Wal-Mart Store, Inc., or any of their parents, affiliates, subsidiaries, predecessors or successors in interest.

All persons and entities in Wyoming who indirectly purchased for their own use and not for resale Filters manufactured and/or sold by one or more of the Defendants or any of their parents, affiliates, subsidiaries, predecessors or successors in interest at any time from at least January 1, 2006 to and including the Execution Date of this Settlement Agreement from one or more of the following "Reseller Entities": Advance Auto Parts, Inc., Ashland, Inc., Autozone, Inc., Bridgestone Retail Operations, LLC d/b/a Firestone Complete Auto, General Parts, Inc., Genuine Parts Company, Goodyear Tire & Rubber Company d/b/a/ Goodyear Gemini Automotive Care, Jiffy Lube International, Inc., Midas, Inc., O'Reilly Automotive, Inc., Pennzoil-Quaker State Company, The Pep Boys – Manny, Moe & Jack, Sears, Roebuck & Co., Texaco, Inc., Wal-Mart Store, Inc., or any of their parents, affiliates, subsidiaries, predecessors or successors in interest.

Excluded from these Classes are the Defendants and their officers, directors, employees, parents, affiliates, subsidiaries, predecessors or successors in interest, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and all federal or state governmental entities (but not local, municipal or other governmental entities).

Settlement Agreement at ¶ 24(b).

## III.    THE PROPOSED NOTICE TO THE CLASS

The Settlement Agreement provides and Indirect Purchaser Plaintiffs propose that notice

to the Indirect Purchaser Plaintiff Class (and the subsequent scheduling of opt-out dates,

objections and the final approval hearing) should be deferred until the earlier of (1) forty-five

days after the preliminary approval of a fourth settlement (i.e., settlement with an additional

defendant beyond Baldwin, Cummins and Donaldson), or (2) the first other notice sent and/or

published to the Indirect Purchaser Settlement Class.  Because these settlements total less than

$500,000, a notice plan sufficient under Rule 23 would consume a substantial amount of the

settlement fund.  Deferral of notice is in the best interests of the Indirect Purchaser Plaintiff

Class, as it will preserve as much of the settlement funds as possible. Deferral of notice would not prejudice the Indirect Purchaser Plaintiff Class, as the deadlines for objecting to the Settlements or opting-out of the Class would not begin to run until a subsequent order approving the Notice Plan is entered. Notwithstanding this time lag in issuing notice, the Indirect Settlement Class has agreed with the Settling Defendants that the litigation as the Settling Defendants shall be stayed except for matters related to the Settlement Agreement.

Rule 23(e)(1) states that, before any final approval proceeding can be had "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Notice of a proposed settlement must inform class members of the following: (1) the nature of the pending litigation; (2) the general terms of the proposed settlement; (3) that complete information is available from the court files; and (4) that any class member may appear and be heard at the fairness hearing. *See Newberg* § 8.32. The notice must also indicate an opportunity to opt-out, that the judgment will bind all class members who do not opt-out, and that any member who does not opt-out may appear through counsel. Fed. R. Civ. P. 23(c)(2)(B).

Notice to the class must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). Here, because Indirect Purchaser Plaintiffs by definition did not buy filters from Defendants, the members of the class cannot be identified through Defendants' sales records. Publication notice is an acceptable method of providing notice where the identity of specific class members is not reasonably available. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (citing MANUAL FOR COMPLEX LITIGATION § 21.311 (4th ed. 2004)).

6

Plaintiffs' counsel and Settling Defendants' counsel have consulted with experienced class action administrators regarding the publication notice of this settlement to the members of the Class. A notice program that fulfills all the requirements of Federal Rule of Civil Procedure 23 and due process would be cost prohibitive at this time. Thus, the parties have agreed that Notice can be deferred until the earlier of (1) forty-five days after the preliminary approval of a fourth settlement (i.e., settlement with an additional defendant beyond Baldwin, Cummins and Donaldson), or (2) the first other notice sent and/or published to the Indirect Purchaser Settlement Class.

At the time of that event (whether another settlement or class certification), Indirect Purchaser Class Counsel will propose a detailed Notice Plan, which will endeavor to notify the Indirect Purchaser Class by publication of a Summary Notice in certain newspapers, magazines and internet media, and which will direct potential class members to a settlement website where a Detailed Notice will be available.

When the Notice Plan is presented to the Court, the proposed Notices will apprise Indirect Purchaser Class members of the material terms of the Settlement Agreements and outline the available procedures and related deadlines. These include how an Indirect Purchaser Class member may exclude itself from the Indirect Purchaser Settlement Class or object to the Settlement Agreements' terms.

The notices will also inform the Indirect Purchaser Class members of the date and place of the Hearing at which the Court will consider final approval of the Settlement Agreements and the applications. Further, the Notices will advise the Indirect Purchaser Class members that Class Counsel intend to use the Settlement Fund: (a) to pay for reasonable expenses associated with the costs of giving notice; (b) administration of the Settlement Fund; and (c) subject to

7

Court approval, for partial reimbursement of expenses previously incurred by counsel for the Indirect Purchaser Class.

Finally, the Notices will inform the Indirect Purchaser Class of the investigation, analyses, and other work performed by Class Counsel, all of which provide the background for their view that the Settlement Agreements are fair, reasonable, and adequate.

## IV.  CERTIFICATION OF THE SETTLEMENT CLASS

Before the Court can authorize notice to the Indirect Purchaser Class, the Court must first determine that the Class should be certified for settlement purposes.  Rule 23 permits certification of a class action for settlement purposes.  *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).  Certification of a settlement class must satisfy each requirement set forth in Rule 23(a), as well as at least one of the separate provisions of Rule 23(b).  *Id.* at 613-14.  *See also In re Community Bank of Northern Virginia & Guaranty Nat'l Bank of Tallahassee Second Mortgage Loan Litig.*, 418 F. 3d 277, 299 (3d Cir. 2005) ("certification of classes for settlement purposes only [is] consistent with Fed. R. Civ. P. 23, provided that the district court engages in a Rule 23(a) and (b) inquiry").  As demonstrated below, this action meets all of the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3) for settlement purposes.

### A.    The Requirements of Rule 23(a) are Satisfied

Rule 23(a) permits an action to be maintained as a class action if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  Here, the Indirect Purchaser Class numbers in the millions.  The issues with respect to the unlawfulness of Defendants' actions under Sherman Act § 1 and Plaintiffs' state law antitrust, unfair competition, consumer

94839

protection and common law unjust enrichment claims are common to the claims of all members

of the Indirect Purchaser Class. Plaintiffs' claims arise from the same factual matrix and are

based on the same legal theory as the claims of all Indirect Purchaser Class members and thus

are typical of the claims of the Indirect Purchaser Class members. The Plaintiffs and their

counsel, who have extensive experience in class action and antitrust litigation, will fairly and

adequately represent the Indirect Purchaser Class.

### 1. Numerosity

"There is no magic number which satisfies the numerosity requirement, and plaintiffs do

not have to allege the precise number or identity of the class members." *In re Plastic Cutlery*

*Antitrust Litig.*, No. 96-CV-728, 1998 WL 135703, at *2 (E.D. Pa. Mar. 20, 1998); *see also*

*Levitan v. McCoy*, No. 00-C-5096, 2003 WL 1720047, *3 (N.D. Ill. Mar. 31, 2003). The

requirement that joinder be impracticable does not mean that joinder is impossible, but "that it is

extremely difficult or inconvenient to join all members of the class." *Id.* at *3 (quoting C.A.

Wright, A. Miller & M. Kane, FEDERAL PRACTICE AND PROCEDURE, § 1762 at 159 (2d ed.

1986)); *see also In re Fine Paper Antitrust Litig.*, 82 F.R.D. 143, 149 (E.D. Pa. 1979). Joinder is

impracticable where, for example, there is "significant geographical distribution among the class

members." *Id.* at 149-150; *see also Jerry Enters. of Gloucester County, Inc. v. Allied Bev.*

*Group, L.L.C.*, 178 F.R.D. 437, 442 (D.N.J. 1998); *In re Flat Glass Antitrust Litig.*, 191 F.R.D.

472, 477 (W.D. Pa. 1999).

Here, the Indirect Purchaser Class includes all individuals and entities in the United

States who purchased Filters from January 1, 1999 through the Execution Date of the Settlement

Agreements). Sales data provided by Defendants and various third party resellers confirms that

the Indirect Purchaser Class consists of millions of members nationwide. "Numerosity" is easily

established. *See Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir.

1964); *In re Rubber Chems. Antitrust Litig.,* 232 F.R.D. 346, 350 (N.D. Cal. 2005) (a finding of numerosity may be supported by common sense assumptions).

The Indirect Purchaser Class thus satisfies Rule 23(a)(1).

### 2.     Common Questions of Law and Fact

The commonality requirement "is easily met because it may be fulfilled by a single common issue." *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 205 (E.D. Pa. 2001); *see also In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283, 310 (3rd Cir. 1998) (commonality satisfied if named plaintiffs share at least one question of fact or law with prospective class). Here, there are numerous legal and factual issues common to members of the Indirect Purchaser Class. These include, among others:

1. whether Defendants engaged in a contract, combination, and/or conspiracy to fix, raise, maintain, or stabilize prices of Filters sold in the United States;

2. whether the alleged contract, combination, and/or conspiracy violated Section 1 of the Sherman Act (15 U.S.C. § 1) such that injunctive relief is available to Plaintiffs;

3. whether such alleged conspiracy violates the antitrust, consumer protection or other similar laws of the 30 states under whose laws these suits were brought;

4. the duration of the alleged illegal contract, combination, and/or conspiracy;

5. whether Defendants' alleged conduct resulted in an unlawful overcharge on the price of Filters;

6. whether the alleged unlawful overcharge on the price of Filters was passed-through to the indirect purchasers, and if so, the appropriate classwide measure of damages.

These questions revolve around the existence, scope, effectiveness, and implementation of Defendants' conspiracy and are central to each class member's claims. Similar common questions have been routinely found to satisfy the commonality requirement in other antitrust

94839

class actions. *See, e.g., Amchem Prods.,* 521 U.S. at 609, 625 (recognizing that "Rule 23(a)(2)'s 'commonality' requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions" and concluding that "[p]redominance is a test readily met in certain cases alleging . . . violations of the antitrust laws"); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004) (where defendant "engaged in a broad-based campaign, in violation of federal and state consumer fraud and antitrust laws . . . allegations naturally raise several question of law and fact common to the entire class"); *Southeast Mo. Hosp. v. C.R. Bard, Inc.*, No. 1:07cv0031 TCM, 2008 WL 4372741, at *6 (E.D. Mo. Sept. 22, 2008) (common questions of law or fact may be found in antitrust case by scrutinizing conduct of defendant).

Accordingly, the Indirect Purchaser Class satisfies Rule 23(a)(2).

### 3. Typicality

Typicality under Rule 23(a)(3) does not mean that the claims of the plaintiff and the putative class members have to be identical. *See In re Prudential*, 148 F.3d at 311 (neither the commonality nor the typicality requirement mandates that the claims be identical). Rather, a "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998) (citation and internal quotation omitted).

Here, the claims of the proposed class representative Plaintiffs are typical because they arise from the same alleged events or course of conduct and are based on the same legal theory as the antitrust, unfair competition, consumer protection and common law claims of other Indirect Purchaser Class members — namely Defendants' alleged participation in an unlawful conspiracy to fix, raise, maintain, and/or stabilize prices and allocate customers for Filters

11

purchased in the United States. *See Jerry Enters.*, 178 F.R.D. at 442 (typicality met where claim arises from the same event or course of conduct that gives rise to the claims of the class members). All members of the Indirect Purchaser Class, including the representative Plaintiffs, seek redress for the alleged overcharges they paid as a result of their having purchased Filters at prices that they allege were artificially inflated by Defendants' alleged anticompetitive conduct. Because these are the same elements that both Plaintiffs and the other Indirect Purchaser Class members would have to prove separately if they bought individual actions, *In re Plastic Cutlery Antitrust Litig.*, 1998 WL 135703, at *4, the typicality requirement of Rule 23(a)(3) is satisfied.

### 4. Adequacy

The final requirement of Rule 23(a) is that the representative plaintiffs fairly and adequately represent the interests of the class. A representative plaintiff is an adequate representative of the class if he or she: (1) does not have any interests that are antagonistic to or in conflict with the interests of the class; and (2) is represented by "qualified counsel" who will vigorously prosecute the interests of the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); *In re Prudential*, 148 F.3d at 312 (quoting *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 800 (3d Cir. 1995) (testing qualifications of counsel)) and *Amchem Prods.*, 521 U.S. at 625 (uncovering conflicts of interest)).

Here, the interests of the representative Plaintiffs are not antagonistic to the class because they are all similarly interested in obtaining prompt and valuable relief from Defendants. The interests of all Plaintiffs and class members are aligned because they allege they all suffered similar injury in the form of higher Filters prices due to a conspiracy, and they all seek the same relief. By proving their own claims, Plaintiffs will necessarily be proving the claims of their fellow class members.

Additionally, Plaintiffs are represented by counsel who are highly qualified in class action litigation and have competently and aggressively prosecuted this complex case. The firms appointed as Interim Co-Lead Counsel by the Court have served in leadership roles in numerous major antitrust and other class actions in courts throughout the United States.[3]

Since the Court's Order appointing Interim Co-Lead Counsel, Kirby McInerney LLP has assumed a leadership role in this case. A copy of Kirby McInerney LLP's firm résumé was previously submitted to the Court in connection with the motions to appoint lead counsel. *See* Dkt. No. 37.

Interim Co-Lead Counsel and Kirby McInerney LLP have diligently represented the interests of the Class in this litigation and will continue to do so. Accordingly, the requirements of Rule 23(a)(4), as well as the requirements of Rule 23(g)[4] relating to the appointment of class counsel, have been satisfied. Plaintiffs respectfully request that Trump, Alioto, Trump & Prescott LLP, Heins, Mills & Olson, PLC, Kirby McInerney LLP and Lovell, Stewart Halebian LLP be appointed as Settlement Class Counsel for purposes of these Settlements.

### B.    The Requirements of Rule 23(b)(3) are Satisfied

Once it is determined that the proposed class satisfies Rule 23(a), a class should be certified under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class

---

[3] *See* the firm biographies of Plaintiffs' Interim Co-Lead Counsel submitted in connection with the motions to appoint lead counsel. (Dkt. Nos. 22, 35, 43).

[4] Fed. R. Civ. P. 23(g)(1) provides that "[u]nless a statute provides otherwise, a court that certifies a class must appoint class counsel." Rule 23(g)(4) provides that "[a]n attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class." Rule 23(g)(1)(A) provides that "[i]n appointing class counsel, the court (i) must consider: the work counsel has done in identifying or investigating potential claims in the action, counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, counsel's knowledge of the applicable law, and the resources counsel will commit to representing the class; (ii) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class; (iii) may direct potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney fees and nontaxable costs; and (iv) may make further orders in connection with the appointment."

action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, the Indirect Purchaser Class meets both requirements.

### 1. Common Questions of Law or Fact Predominate

"Predominance," under Rule 23(b)(3), "is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem Prods.*, 521 U.S. at 625. The weight of authority holds that in alleged horizontal price-fixing cases like this one, the predominance requirement is readily met. The existence of a conspiracy is the overriding issue common to all plaintiffs, sufficient to satisfy the Rule 23(b)(3) predominance requirement. *See, e.g., In re Rubber Chemicals*, 232 F.R.D. at 352 ("the great weight of authority suggests that the dominant issues in cases like this are whether the charged conspiracy existed and whether price-fixing occurred") (citation and internal quotation omitted); *In re Sugar Industry Antitrust Litig.*, MDL Dkt. No. 201, 1976 WL 1374, at *23 (N.D. Cal. May 21, 1976) ("[i]t is the allegedly unlawful horizontal price-fixing arrangement among defendants that, in its broad outlines, comprises the predominating, unifying common interest" between the representative plaintiffs and potential class members).

Here, the alleged existence of a Filters conspiracy and Defendants' acts in furtherance of the conspiracy are the predominant common questions. To demonstrate that the Filters price-fixing conspiracy existed, Plaintiffs will necessarily focus on the conduct of the Defendants, rather than the conduct of individual class members. Specifically, Defendants allegedly entered into and implemented a conspiracy to set the prices of Filters at *supra*-competitive levels through a series of meetings and agreements during the class period. Proof of how Defendants implemented and enforced the alleged conspiracy will be common for all class members, because it will be predicated on establishing the existence of Defendants' antitrust conspiracy to

14

fix the prices of Filters. *See, e.g., In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 275 (D. Mass. 2004) ("The alleged antitrust violation relates solely to SmithKline's conduct, and as such, constitutes a common issue subject to common proof."); *In re Corrugated Container Antitrust Litig.*, 80 F.R.D. 244, 250 (S.D. Tex. 1978) ("The court is persuaded that the conspiracy issue whether price information was exchanged; if it was, with what intent; whether action was taken by the defendants based upon such exchanges; etc. is susceptible of generalized proof, since it deals primarily with what the defendants themselves did and said").

Likewise, antitrust injury, particularly in a price-fixing case, is an issue common to the class because it is readily determined based on a common evidentiary showing. The relevant legal standard in establishing an antitrust injury is demonstrating that Plaintiffs suffered some harm to business or property as a result of Defendants' unlawful conduct. *In re Master Key Antitrust Litig.*, 528 F.2d 5, 12 n.11 (2d Cir. 1975) ("If [plaintiffs] establish at the trial for liability that the defendants engaged in an unlawful national conspiracy which had the effect of stabilizing prices above competitive levels, and further establish that [plaintiffs] were consumers of that product, we would think that the jury could reasonably conclude that [defendants'] conduct caused injury to each [plaintiff].") *See also Reiter v. Sonotome Corp.*, 442 U.S. 330, 337-41 (1979); *Zenith Radio Corp. v. Hazeltine Research Inc.*, 395 U.S. 100, 126 (1969); . Therefore, common issues relating to the existence and effect of the alleged conspiracy to set Filters prices predominate over any questions arguably affecting individual class members. These issues are "overriding issues" satisfying the predominance requirement.

The existence of potential individualized damage issues does not defeat the predominance of the common liability issues. *See, e.g., In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124, 138 (2d Cir. 2001) (citing and discussing cases). Courts have also

94839

recognized that "classes were certified . . . regardless whether some members of the class negotiated price individually, or whether—as here— differences among product type, customer class, and method of purchase existed." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 WL 1530166, at *9 (N.D. Cal. June 5, 2006). This is true even if there are individual state law issues, as long as the common issues still outweigh the individual ones, e.g., as long as common theory can be alleged as to liability and impact that can be pursued by the class. *See, e.g., In re Visa Check*, 280 F.3d at 138 (citing and quoting with approval *Williams v. Sinclair*, 529 F.2d 1383, 1388 (9th Cir. 1975)); *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000).

Issues common to the classes predominate in this case. All indirect purchasers paid alleged overcharges that the Indirect Settlement Class Contends were caused by the Defendants' price-fixing activities. The presence of these common issues of liability and impact favors certification of the Settlement Class, even if individual issues may exist as to the dollar amount of damages suffered by each class member.

### 2. A Class Action Is Superior to Other Methods of Adjudication

The superiority prong of Rule 23(b)(3) requires balancing the merits of a class action with available alternate methods of adjudication. *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). "[I]f common questions are found to predominate in an antitrust action, then courts generally have ruled that the superiority prerequisite of Rule 23(b)(3) is satisfied." C.A. Wright, A. Miller & M. Kane, FEDERAL PRACTICE AND PROCEDURE, § 1781 at 254-55 (3d ed. 2004). That is because in price-fixing cases, "the damages of individual indirect purchasers are likely to be too small to justify litigation, but a class action would offer those with small claims the opportunity for meaningful redress." *In re Static Random Access Memory (SRAM) Antitrust Litig.*,  264 F.R.D. 603, 615 (N.D. Cal. 2009) (granting certification of a

16

nationwide injunctive relief class and 27 state-wide damages classes of indirect purchasers of products containing SRAM, such as computers and cell phones).

In this case, a class action is superior to individual litigation because it would be a waste of judicial resources to require numerous separate trials relating to the same legal dispute. *See In re Brand Name Prescription Drugs Antitrust Litig.*, Case No. 94 C 897, MDL 997, 1994 WL 663590, at *6 (N.D. Ill. Nov. 18, 1994) ("We fail to see the logic in defendants' contention that 50,000 individual actions are less complex than a single class action"). As in *SRAM*, the damages alleged by individual members of the class are relatively small, and the expense and burden of individual litigation would make it impracticable for them to seek redress individually. *SRAM*, 264 F.R.D. at 615. Moreover, the interests of class members in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism. Finally, separate adjudication of claims creates a risk of inconsistent rulings, which further favors class treatment. Therefore, a class action is the superior method of adjudicating the claims raised in this case.

Accordingly, the requirements of Rule 23(b)(3), like those of Rule 23(a), are satisfied, and certification of the Indirect Purchaser Class for purposes of settlement is appropriate.[5] Attached hereto as Exhibit C for the Court's consideration is a [Proposed] Preliminary Approval Order which is consistent with the requests made herein.

---

[5] In the Settlement Agreements, the Settling Defendants have agreed not to oppose class certification for settlement purposes only. Each of the Settlement Agreements expressly provides that it shall not constitute an admission by the Settling Defendants that class certification in this or any other action is appropriate for trial purposes. Should the Settlement Agreements not become effective, the Settling Defendants reserve the right to contest class certification, and the Settlement Agreements shall not constitute an admission or be admissible into evidence on the propriety of class certification. *See* Settlement Agreements at ¶ 24.

94839

Dated: October 10, 2011                    Respectfully Submitted,

*/s/ Renae D. Steiner*
Renae D. Steiner
Heins Mills & Olson, P.L.C.
310 Clifton Avenue
Minneapolis, MN  55403
(612) 338-4605

Mario N. Alioto
Trump Alioto Trump & Prescott, L.L.P.
2280 Union Street
San Francisco, CA 94123
(415) 563-7200

Christopher Lovell
Lovell Stewart Halebian, L.L.P.
500 Fifth Avenue, Floor 58
New York, NY  10110
(212) 608-1900

Dan Hume
Kirby McInerney, L.L.P.
825 Third Avenue
New York, NY 10022
(212) 371-6600

**PROPOSED INDIRECT PURCHASER
SETTLEMENT CLASS COUNSEL**

18

94839

## CERTIFICATE OF SERVICE

    I, Renae D. Steiner, hereby certify that on October 10, 2011, I caused the foregoing document to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties indicated on the electronic filing receipt.

s/ *Renae D. Steiner*
Renae D. Steiner

94839