**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: AFTERMARKET FILTERS ANTITRUST LITIGATION** | **Master Docket No. 08-cv-4883**<br>**MDL Docket No. 1957** |
| **This Document Relates To:**<br>**All Purchaser Actions** | **Honorable Robert W. Gettleman** |

**PLAINTIFFS' AMENDED OMNIBUS MOTION FOR PRELIMINARY APPROVAL OF
PROPOSED SETTLEMENTS, CERTIFICATION OF SETTLEMENT CLASSES,
APPOINTMENT OF CLASS COUNSEL FOR THE SETTLEMENT CLASSES,
AUTHORIZATION TO DISSEMINATE NOTICE TO SETTLEMENT CLASSES, AND
SETTING A HEARING ON FINAL SETTLEMENT APPROVAL[1]**

---

[1] This Amended Motion replaces the incorrectly named Purolator Filters N.A. L.L.C. with Defendants Purolator Products NA, LLC and Purolator Products Company, LLC (*see* Docket No. 329). This Amended Motion is otherwise identical to the document filed on October 10, 2011 (Docket No. 827).

# TABLE OF CONTENTS

I. Introduction ..........................................................................................................................1

II. Background .........................................................................................................................4

    A.      Procedural History of the Litigation ........................................................................4

          1.       The Direct Purchaser Class............................................................................4

          2.       The Indirect Purchaser Class ........................................................................5

          3.       The Gas Retailers Class ................................................................................7

    B.      Summary of Plaintiffs' Allegations ........................................................................8

    C.      Evidence in Support of Plaintiffs' Allegations.........................................................9

III. Summary of the Settlement Agreements .......................................................................10

    A.      Release and Discharge .........................................................................................10

    B.      Payments..............................................................................................................11

    C.      Cooperation .........................................................................................................12

IV. Standards Applicable to Determine Whether the Settlements are Fair,

    Reasonable and Adequate as to all Settlement Classes .......................................................12

    A.      Governing Standards............................................................................................12

    B.      The Settlements Are Fair and Resulted from Arm's Length Negotiations .................14

V. Conclusion ........................................................................................................................16

# TABLE OF AUTHORITIES

2 NEWBERG ON CLASS ACTIONS, §11.24 (3d ed. 1992) ........................................................ 13, 14

*Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305 (7th Cir. 1980) ......................................... 12, 13, 14

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ........................................................................ 12

*E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884 (7th Cir. 1985) ....................................... 12

*Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ....................................................................... 12

*Goldsmith v. Tech. Solutions Co.*, No. 92-C-4374, 1995 U.S. Dist. Lexis 15093 ........................ 14

*Hanrahan v. Britt*, 174 F.R.D. 356 (E.D. Pa. 1997) .................................................................... 14

*Holden v. Burlington Northern, Inc.*, 665 F. Supp. 1398 (D. Minn. 1987) .................................. 13

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981) ................................ 13

*In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631 (E.D. Pa. 2003) ...................................... 14

*In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379 (D. Md. 1983) ...................... 13, 14

*In re Montgomery County Real Estate Antitrust Litig.*, 83 F.R.D. 305 (D. Md. 1979) ............... 13

*In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99 (S.D.N.Y 1997) ........................ 13

*In re Traffic Executive Assoc.-Eastern R.R*, 627 F.2d 631 (2d Cir. 1980) .................................. 13

*In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002) ..................................... 13

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) ......................................................................... 12, 13

The Manual For Complex Litigation (Fourth) § 21.632(2004) .................................................... 12

*Uhl v. Thoroughbred Tech. & Telecomms, Inc.*, 309 F.3d 978 (7th Cir. 2002) ........................... 13

## I.     INTRODUCTION

This Omnibus Motion is brought on behalf of the Direct Purchaser Plaintiffs, the Indirect Purchaser Plaintiffs, and the Gasoline Retailers Plaintiffs.[2]  All of the Movants, together with the State of Florida, are parties to separate settlement agreements with Defendants Baldwin Filters, Inc., Cummins Filtration, Inc., and Donaldson Company Inc., which agreements are more fully described below. Because the State of Florida has filed an individual action, and not a class action, it is not a party to this Omnibus Motion; however any payment to the State of Florida from the settlements will be dependent on the Court's final approval of the settlements.

Attached as Exhibits A, B, and C are three substantially similar settlement agreements ("the Settlement Agreements") between and among Counsel for the Settlement Classes and the State of Florida Office of the Attorney General, Department of Legal Affairs ("Florida") ("together "Plaintiffs"), on the one hand, and Defendants Baldwin Filters, Inc., Cummins Filtration, Inc., and Donaldson Company, Inc., respectively ("Settling Defendants"), on the other.  Plaintiffs have executed the Settlement Agreements both individually and on behalf of (1) a class of persons and entities who purchased Filters (as defined below) in the United States directly from one or more of the Defendants in the Actions (as defined below) during the period from and including March 1, 1999 up to and including the Execution Date of this Settlement

---

[2]  Plaintiffs and Settlement Class Representatives in the direct purchaser action are Central Warehouse Sales Corporation, Neptune Warehouse Distributors, Inc., William C. Bruene d/b/a Lone Star Lube, and A&L Systems Inc. ("Direct Purchaser Plaintiffs").
Plaintiffs and Settlement Class Representatives in the indirect purchaser action are Phillip Bowers, Nicholas Tuberville, Kris Clute, Arthur Cordisco, Francis Doll III, Robert Collopy, Carlos Cuevas, Geraldine Davison, James Egan, Kurt Evinger, Karen Healy, Patrick Houston, Julie R. Kenner, MD, PhD, LLC, Thomas Lown, Edward Colburn, Mario Paquet, Perry Piper, Justus Austin, Benjamin Hammer, Mark Uglem, Christopher Papale, Dale Bentley, David Faircloth, Norman Wallin, Mark Moynahan, Robert Nilsen, David E. Boardman, Charles Gregory, Janice Boone, Dan McKittrick, Harold Miles, and Bettendorf Transfer & Excavating, Inc. ("Indirect Purchaser Plaintiffs").
Plaintiffs and Settlement Class Representatives in the gas retailers' action are Loodvik Peerali and Oyster Incorporated. ("Gas Retailer Plaintiffs").

Agreement (as described more fully in ¶¶ 13 and 22 of the Settlement Agreements); (2) various classes of persons and entities in the United States who purchased for their own use and not for resale Filters manufactured and/or sold by one or more of the Defendants in the Actions during various periods from one or more reseller entities (as described more fully in ¶¶ 14-16 and 22 of the Settlement Agreements); (3) a class of operators of service stations in California ("Gasoline Retailers") who purchased Filters in the United States indirectly for resale from one or more Defendants in the Actions during the period from and including January 1, 1999 up to and including the Execution Date of this Settlement Agreement (as described more fully in ¶¶ 17 and 22 of the Settlement Agreements); and (4) Florida government entities and consumers who purchased Filters in Florida directly and/or indirectly from one or more Defendants in the Actions during the period from and including March 1, 1999 up to and including the Execution Date of this Settlement Agreement (as described more fully in ¶ 18 of the Settlement Agreements). (The classes described above are sometimes referred to herein as "the Settlement Classes").

Pursuant to the Settlement Agreements, each Settling Defendant has agreed to pay the Plaintiffs the sum of Six Hundred Twenty Five Thousand Dollars ($625,000), said amount to be divided among the Plaintiffs with respect to each settlement as follows:  $406,250 to the direct purchaser action; $156,250 to the indirect purchaser action; $31,250 to the gas retailer action; and $31,250 to the Florida action as set forth in ¶ 11 of the Settlement Agreements.

Plaintiffs now move the Court to grant preliminary approval of the three proposed settlements and, in connection therewith, to enter an order of preliminary approval that, among other things:[3]

1. Finds the Settlement Agreements to be sufficiently fair, reasonable, and adequate to warrant dissemination of notice of the Settlement Agreements to the Settlement Classes;

2. Certifies the respective Settlement Classes for settlement purposes;

3. Appoints Plaintiffs' Interim Class Counsel for each of the Settlement Classes ("Class Counsel") as Counsel for their respective Settlement Class;

4. For the Direct Purchaser Plaintiff Class and the Gasoline Retailers Class approves the forms of mail notice and published "summary notice" of the Settlement Agreements, as well as direct the implementation of the settlement agreements for each Settlement Class; in this regard, including:

   a. The deadline for the Settlement Classes to move for final approval of the Settlement Agreements and to submit related petitions reimbursement of expenses,

   b. The deadline for members of the Settlement Classes to exclude themselves (*i.e.*, opt out) from their Settlement Classes and Settlement Agreements,

   c. The deadline for Settlement Class members to object to the Settlement Agreements and any of the related petitions,

   d. The deadline for any reply papers by Plaintiffs or Defendants, and

---

[3] Counsel for each of the Settlement Classes has filed, contemporaneously herewith, a separate pleading to supplement this Omnibus Motion, setting forth the reasons why the Settlement Agreements should be approved with respect to its respective Settlement Class and offering proposed forms of notice for its Settlement Class, as well as a proposed schedule for implementation of the settlements leading to the Court's consideration of final approval of the Settlement Agreements.

       e.       The date, time, and place for a hearing on final approval of the Settlement Agreements and the related petitions (the "Hearing"); and

5.       Approves deferral of Notice to the Indirect Purchaser Plaintiff Class until the earlier of (1) forty-five days after the preliminary approval of a fourth settlement (*i.e.*, settlement with an additional defendant beyond Baldwin, Cummins and Donaldson), or (2) the first other notice sent and/or published to the Indirect Purchaser Settlement Class.

6.       Stays as to Settling Defendants, all matters arising under the cases consolidated in this Court under 1:08-cv-4883, MDL No. 1957, except matters related to the Settlement Agreements or related to this motion.

At a hearing for final approval, Class Counsel for the Settlement Classes will request the entry of a final order and judgment ("Final Order") dismissing the Settling Defendants and retaining jurisdiction for the implementation and enforcement of the Settlement Agreements.

## II.    BACKGROUND

### A.    Procedural History of the Litigation

This litigation was commenced on March 31, 2008 with the filing of a number of class action lawsuits by purchasers of Filters from Defendants. Eventually, sixty (60) cases were filed in five federal district courts. On August 18, 2008, the Panel for Multidistrict Litigation transferred the cases to this Court and the Court consolidated all actions under the above caption.

### 1.    The Direct Purchaser Class

By Order dated September 4, 2008, the court appointed Freed Kanner London & Millen LLC, Labaton Sucharow LLP, Fine Kaplan & Black, R.P.C. and Susman Godfrey LLP to serve as Interim Co-Lead Counsel. On November 26, 2008, Plaintiffs filed the Consolidated Amended Complaint ("CAC") against the Defendants.

4

Defendant Champion filed an answer to the CAC on February 2, 2009. The other Defendants moved to dismiss the CAC on February 2, 2009. Plaintiffs filed their memorandum of law in opposition to Defendants' joint motion to dismiss on March 16, 2009, and Defendants submitted reply memorandums of law on April 16, 2009. On November 5, 2009, this Court denied Defendants' joint motion to dismiss and denied Baldwin's separate motion to dismiss on November 9, 2009. Defendants individually answered the CAC on December 28, 2009.

### 2. The Indirect Purchaser Class

By Order dated October 7, 2008, the Court appointed Trump, Alioto, Trump & Prescott, LLP, Zelle, Hoffman, Voelbel, Mason & Gette, Heins Mills & Olson, PLC and Lovell, Stewart Helebian, LLP to serve as Interim Co-Lead Counsel for the Indirect Purchaser Plaintiffs.[4]

On December 1, 2008, the Indirect Purchaser Plaintiffs filed a Consolidated Indirect Purchaser Complaint ("CIPC"). On February 2, 2009, Defendants jointly moved to dismiss the CIPC. In addition to joining the joint motion, Defendant Baldwin Filters, Inc. also separately moved to dismiss the CIPC. Indirect Purchaser Plaintiffs filed their response to Defendants' motions on March 16, 2009. Defendants submitted their reply on April 16, 2009. On November 5, 2009, the Court granted in part and denied in part Defendants' joint motion. Defendant Baldwin Filters, Inc.'s motion was denied.

Pursuant to the Court's November 5, 2009 Order, the Indirect Purchaser Plaintiffs filed an Amended Consolidated Indirect Purchaser Complaint ("ACIPC") on November 30, 2009. The ACIPC amended only those claims dismissed by the Court with leave to amend.

---

[4] Indirect Purchaser Plaintiff Settlement Class Counsel is identical to Indirect Purchaser Plaintiff Interim Co-Lead Counsel except insofar as Kirby McInerney LLP has relieved Zelle, Hoffman, Voelbel, Mason & Gette.

On December 22, 2009, the Indirect Purchaser Plaintiffs filed a Second Amended Consolidated Indirect Purchaser Complaint ("SACIPC"). The SACIPC amended the New York and Rhode Island statutory consumer protection claims, added a North Carolina class representative, and corrected certain references to "Purolator" made in the ACIPC.

On January 19, 2010, Defendants jointly moved to dismiss the SACIPC with respect to the amended New York and Rhode Island consumer protection claims and unjust enrichment claims brought pursuant to the laws of New York, Rhode Island, New Jersey, New Hampshire (prior to 2008) and Wyoming (prior to 2006). Indirect Purchaser Plaintiffs responded to this motion on February 2, 2010. Defendants replied February 16, 2010.

On April 1, 2010, the Court denied Defendants' motion with respect to the Rhode Island consumer protection and unjust enrichment claims and granted the motion in all other respects. Defendants then answered the SACIPC on April 15, 2010.

On June 30, 2010, the Indirect Purchaser Plaintiffs filed a Third Amended Consolidated Indirect Purchaser Complaint ("TACIPC"). The TACIPC added statutory antitrust claims against the Defendants under the laws of New York and Illinois based upon a recent change in the controlling law that affected the viability of these state law claims. The TACIPC also withdrew certain named plaintiffs. Defendants answered the TACIPC on July 30, 2010.

On February 24, 2011, the Indirect Purchaser Plaintiffs filed a Fourth Amended Consolidated Indirect Purchaser Complaint ("FACIPC"). The FACIPC withdrew certain named plaintiffs, substituted in others, and narrowed the class definition to include only purchases from certain specified resellers. Defendants answered the FACIPC on March 25, 2011.

### 3. The Gas Retailers Class

Loodvik Peerali and Oyster Incorporated. filed a complaint in the Superior Court of the State of California for the County of Los Angeles, Central District on January 12, 2009, Case No. BC405424. On March 5, 2009, the case was removed to the United States District Court for the Central District of California, Case No. CV 09-1560. On April 13, 2009 the case was transferred by the United States Judicial Panel on Multidistrict Litigation and consolidated into MDL 1957, *In Re Aftermarket Filters Antitrust Litigation* pending in the United States District Court for the Northern District of Illinois, Eastern Division, Master File No. 1:08-cv-04883, Related Docket no. 1:09-cv-2330.

Plaintiffs Loodvik Peerali and Oyster Incorporated filed the Gasoline Retailers' Consolidated First Amended Class Action Complaint on behalf of the Gasoline Retailers' Indirect Purchasers Class (hereafter "Gasoline Retailers") on February 9, 2010.

By Order dated February 18, 2010, the Court appointed the Alioto Law Firm, Bleau Fox, A.P.L.C., Gray, Plant, Mooty, Mooty & Bennett, P.A. and Gary D. McCallister & Associates, LLC, as Interim Co-Lead Counsel for the Gasoline Retailers' Indirect Purchaser Class.

The Gasoline Retailers filed its Consolidated Second Amended Class Action Complaint on February 25, 2010.

Defendants filed their answers to the Gasoline Retailers' Consolidated Second Amended Complaint on March 9, 2010.

Defendant Baldwin Filter's Inc. filed its Motion for Summary Judgment related to all actions on July 14, 2010. Defendant Cummins Filtration, Inc. filed its Motion for Judgment on the Pleadings related to all actions on July 19, 2010. The Gasoline Retailers filed their Joinder and Adoption of Direct Purchaser Plaintiffs' Rule 56(f) Motion for discovery on July 30, 2010.

On August, 13, 2010, Gasoline Retailers filed their Joinder and Adoption of Direct Purchaser

Plaintiffs' Memorandum of Law in Opposition to Defendant Cummins Filtration, Inc.'s Motion

for Judgment on the Pleadings. By Order entered August 23, 2010, the Court denied Defendant

Baldwin's Motion for Summary Judgment without prejudice to renewal. By Order entered on

August 31, 2010, the Court denied Defendant Cummins' Motion for Judgment on the Pleadings.


      **B.**    **Summary of Plaintiffs' Allegations**

      Plaintiffs brought their respective antitrust class actions against the largest manufacturers

of Filters[5] in the United States. Plaintiffs allege that from 1999 through the present, Defendants

conspired to fix the prices of Filters. The Defendants include Champion Laboratories, Inc.,

Purolator Products NA, LLC, Purolator Products Company, LLC, ArvinMeritor, Inc., Honeywell

International, Wix Filtration Corp. LLC, Affinia Group Inc., Cummins Filtration Inc., Donaldson

Company, Inc. and Baldwin Filters, Inc. The Defendants have denied these allegations.

      Plaintiffs based their allegations, among other things, on an industry which was

susceptible to price fixing, information provided by a "whistleblower", William G. Burch who

was employed by Defendants Purolator and Champion Laboratories, Inc. during most of the

Class Period, and statements made under oath by other individuals with personal knowledge of

the alleged conspiracy.

      Plaintiffs allege that the conditions which made the industry susceptible to price fixing

included the following:

---

[5] The term "Filters" includes oil, air and fuel filters sold in the aftermarket for light duty vehicles, *i.e.*, cars and light trucks. It does not include products for sale to original equipment manufacturers, such as vehicle manufacturers.

1.    During the class period the industry for Filters was ripe for collusion. Although the market is large in terms of dollars—encompassing approximately $1 billion in annual revenue—the industry is dominated by only four manufacturers: Champion, Purolator, Fram and Wix. These four manufacturers account for more than 80% of Filter sales in the United States.

2.    The Filters sold by these manufacturers are a commodity product, meaning that purchasers view Defendants' products as interchangeable.

3.    In addition to the Filters industry being ripe for collusion, many of the Defendants' employees have spent their entire careers in the Filters industry and key employees have transferred between Defendants. This fostered familiarity and comfort between ostensible competitors and facilitated high-level pricing coordination. That familiarity and comfort encouraged frequent and open communion between competitors at industry trade events.

4.    Additionally, Defendants bought and sold Filters from each other and engaged in a variety of joint-ventures. Defendants used these opportunities to communicate with each other about pricing.

**C.    Evidence in Support of Plaintiffs' Allegations**

After the denial of Defendants' motions to dismiss, the parties engaged in protracted discovery, which engendered many disputes resulting in extensive motion practice. (*See* Docket Nos. 527, 536, 706, 708). The parties briefed these disputes in great detail and after a number of hearings, the Court issued several discovery orders. (*See* Docket Nos. 553, 579, 652, 678, 696, 733). Subsequent to the entry of these orders, Defendants produced and Plaintiffs reviewed millions of pages of documents (excluding transactional data). Plaintiffs also conducted three

depositions.  Likewise Defendants reviewed Plaintiffs' documents, noticed and took depositions of Plaintiffs' class representatives, and subpoenaed third parties.

On September 26, 2011, based on information learned through discovery to date, and on their own investigation, Plaintiffs filed their Omnibus Memorandum of Law in Opposition to Defendants' Motions: (1) To Exclude William G. Burch's Tape Recordings; (2) To Exclude William G. Burch's Testimony; and (3) For an Evidentiary Hearing (Dkt. No. 813). That submission includes a summary of key evidence supporting Plaintiffs' allegations in this matter which, to avoid repetition, are incorporated herein by reference. On October 6, the non-settling Defendants filed a response to Plaintiffs' Omnibus memorandum.

A time will come when a trier of fact will evaluate the positions of the parties with respect to the evidence in the case. For purposes of this Motion, however, it is sufficient to note that these settlements have been entered into on the basis of a record that, while not yet complete, is well-developed.

**III.    SUMMARY OF THE SETTLEMENT AGREEMENTS**

The provisions of the Settlement Agreements are substantially identical.  The principal differences relate to the identity of the Settling Defendants.  In pertinent part the Settlement Agreements provide:

**A.    Release and Discharge**

The Settlement Agreements provide for all Plaintiffs (and all "Releasing Parties" as defined in the Settlement Agreements at ¶ 10) to release and discharge Settling Defendants upon the "Effective Date"[6] of the Settlement Agreements.  The release and discharge language in the Settlement Agreements is as follows:

---

[6] The "Effective Date" is defined in ¶ 8 of the Settlement Agreement: the first date by which all of the following events have occurred:  (a) the Court has entered a final judgment order approving this

10

Upon the occurrence of the Effective Date and in consideration of the Settlement Amount and Cooperation provided for in this Agreement, Released Parties shall be completely released, acquitted, and forever discharged, to the extent permitted by law, from any and all claims, demands, actions, suits, and causes of action, damages, liabilities of any nature, including without limitation costs, expenses, penalties, and attorneys' fees, whether class, individual, or otherwise in nature, that Releasing Parties ever had, now have, or hereafter can, shall, or may have directly, representatively, derivatively or in any other capacity against the Released Parties, whether known or unknown, suspected or unsuspected, in law or equity, concerning the pricing, selling, discounting, and marketing of Filters in the United States, which arise under and/or relate to any United States federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, trade practice, or civil conspiracy law, including, without limitation, the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*, based in whole or in part on the facts, occurrences, transactions, or other matters alleged in, or that could have been alleged in the Actions (the "Released Claims"), provided, however, that nothing herein shall release: (1) claims involving any negligence, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods or similar claim relating to Filters; and (2) claims under laws other than those of the United States.

(Settlement Agreements at ¶ 29.)

## B.    <u>Payments</u>

Each of the Settling Defendants shall pay or cause to be paid the amount of Six Hundred and Twenty five Thousand Dollars ($625,000) in settlement of the Actions. The Settlement Amount shall be wire transferred by or on behalf of Settling Defendants within five (5) business days after the entry of the order of Preliminary Approval, which shall be administered in accordance with the provisions of the Settlement Agreements. Settlement Class Counsel shall provide Settling Defendants with wire transfer instructions for these transfers within three

---

Agreement under Rule 23(e) of the Federal Rules of Civil Procedure; (b) the Court has entered a final judgment dismissing the Actions against Settling Defendant with prejudice and without costs; and (c) the time for appeal or to seek permission to appeal the Court's approval of this Agreement and entry of a final judgment as described in clause (a) above has expired or, if appealed, approval of this Agreement and the final judgment has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review. Neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651 shall be taken into account in determining the above-stated times.

business days after the Execution Date. (As described more fully in ¶¶ 33-36 of the Settlement Agreements.)

### C. Cooperation

In return for the Release and Discharge provided herein, Settling Defendants agree to provide certain Cooperation to Plaintiffs in the prosecution of these Actions, subject to certain limitations specified in the settlement agreements. The Cooperation will be limited to information needed to pursue claims by the Settlement Class Members arising from Class Claims, the claims of a proposed or certified class in these Actions, or the Florida Claims. Settling Defendants shall have no obligation to cooperate with counsel pursuing any other claims. (As described more fully in ¶¶ 44-59, 61 of the Settlement Agreements.)

## IV. STANDARDS APPLICABLE TO DETERMINING WHETHER THE SETTLEMENTS ARE FAIR, REASONABLE AND ADEQUATE AS TO ALL SETTLEMENT CLASSES

### A. Governing Standards

There is an overriding public interest in settling litigation, and this is particularly true in class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985), *cert. denied*, 478 U.S. 1004 (1986) (noting that there is a general policy favoring voluntary settlements of class action disputes); *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."), *overruled on other grounds*, *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Class action settlements minimize the litigation expenses of the parties and reduce the strain such litigation imposes upon already scarce judicial resources. *Armstrong*, 616 F.2d at 313 (*citing Cotton v. Hinton*, 559 F.2d 1326,

1331 (5th Cir. 1977)). However, a class action may be settled only with court approval. And, before the court may give that approval, all class members must be given notice of the proposed settlement in the manner the court directs. Fed. R. Civ. P. 23(e).

Generally, before directing that notice be given to the class members, the court makes a preliminary evaluation of the proposed class action settlement. The Manual For Complex Litigation (Fourth) § 21.632 (2004) explains:

> Review of a proposed class action settlement generally involves two hearings. First counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation . . . If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined . . . The Judge must make a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms and must direct the preparation of notice of the . . . proposed settlement, and the date of the [formal Rule 23(e)] fairness hearing.

See also 2 NEWBERG ON CLASS ACTIONS, §11.24 (3d ed. 1992); Armstrong, 616 F.2d at 314; In re Warfarin Sodium Antitrust Litig., 212 F.R.D. 231, 254 (D. Del. 2002); In re NASDAQ Market-Makers Antitrust Litig., 176 F.R.D. 99, 102 (S.D.N.Y 1997). A court's authorization to disseminate notice constitutes its recognition that the settlement is within the range of possible approval. See Armstrong, 616 F.2d at 309-310; In re Corrugated Container Antitrust Litig., 643 F.2d 195, 205 (5th Cir. 1981); Holden v. Burlington Northern, Inc., 665 F. Supp. 1398, 1402 (D. Minn. 1987); In re Montgomery County Real Estate Antitrust Litig., 83 F.R.D. 305, 313 (D. Md. 1979). As one court has noted, approving dissemination of notice "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." In re Traffic Executive Assoc.-Eastern R.R, 627 F.2d 631, 634 (2d Cir. 1980).

A proposed settlement falls within the "range of possible approval" under Rule 23(e) when it is conceivable that the proposed settlement will meet the standards applied for final

approval. The standard for final approval of a class action settlement is whether the proposed

settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e); *see Uhl v. Thoroughbred Tech.*

*& Telecomms, Inc.*, 309 F.3d 978, 986 (7th Cir. 2002); *Isby*, 75 F.3d at 1198-99.

When authorizing the dissemination of notice, a court does not conduct a "definitive

proceeding on the fairness of the proposed settlement, and the judge must be careful to make

clear that the determination permitting notice to members of the class is not a finding that the

settlement is fair, reasonable and adequate." *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F.

Supp. 1379, 1384 (D. Md. 1983) (quoting *Montgomery County*, 83 F.R.D. at 315-16). That

determination must await the final hearing where the fairness, reasonableness, and adequacy of

the settlement are assessed under the factors set forth in *Armstrong*.[7]

### B. The Settlements Are Fair and Resulted from Arm's Length Negotiations

The requirement that class action settlements be fair is designed to protect against

collusion among the parties. *In re Mid-Atlantic Toyota Antitrust Litig.,* 564 F.2d at1383. There is

usually an initial presumption that a proposed settlement is fair and reasonable when it was the

result of arm's length negotiations. *See* 2 NEWBERG ON CLASS ACTIONS, § 11.40 at 451 (2d ed.

1985); *Goldsmith v. Tech. Solutions Co.*, No. 92-C-4374, 1995 U.S. Dist. Lexis 15093, at *10 n.2

(N.D. Ill. October 10, 1995) ("it may be presumed that the agreement is fair and adequate where,

as here, a proposed settlement is the product of arm's-length negotiations"). Settlements

proposed by experienced counsel and which result from arm's length negotiations are entitled to

deference from the court. *See, e.g., id.* at *10 n.2; *In re Linerboard Antitrust Litig.*, 292 F. Supp.

---

[7] The *Armstrong* factors that a court considers on a motion for final approval of a class settlement as fair, reasonable, and adequate include: (1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement; (2) the defendants' ability to pay; (3) the complexity, length, and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the reaction of class members to the settlement; (7) the opinion of competent counsel; and (8) the stage of the proceedings and the amount of discovery completed. *Armstrong*, 616 F.2d at 314.

2d 631, 640 (E.D. Pa. 2003) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.") (*quoting Hanrahan v. Britt*, 174 F.R.D. 356, 366 (E.D. Pa. 1997)). The initial presumption in favor of such settlements reflects courts' understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness concerns of Rule 23(e).

The Settlements reached here are the product of intensive settlement negotiations. While these settlements are for relatively small amounts, they are "ice breaker" settlements in a matter which has been bitterly contested to date, and they will provide additional benefits to the members of the respective classes, including cooperation from the Settling Defendants as provided in the Settlement Agreements. As this Court is aware, throughout this litigation, the Settling Defendants have identified themselves as the smallest of the Defendants in this market and have denied that they participated in any conspiracy to fix prices of Filters. Plaintiffs acknowledge that Settling Defendants are indeed relatively small players, representing in the aggregate less than 5% of Filters' sales during the Class Period. The Settlements will avoid further discovery disputes and litigation relating to these small Settling Defendants and will not disadvantage the Class in light of the fact that, under the provisions of Section 1 of the Sherman Act, 15 U.S.C. § 1, the remaining Defendants will continue to be jointly and severally liable for any judgment which may be entered in this litigation in favor of the Plaintiffs.

Because the considerations pertaining to the certification of each of the Settlement Classes – including the forms of notice to be provided – are different to some extent, counsel for the Settlement Classes are contemporaneously submitting a separate brief concerning the request for the Court to certify their respective classes as Settlement Classes.

In sum, the Settlement Agreements are the result of extensive good faith negotiations, entered into after factual investigation and legal analysis, and are, in the opinion of experienced Settlement Class Counsel, fair, reasonable, and adequate to the proposed Settlement Classes. Accordingly, Proposed Settlement Class Counsel believe that the Settlement Agreements are in the best interests of the Settlement Class Members and should be preliminarily approved by the Court for the purposes of sending notice of the settlements to the Settlement Classes.

## V.    <u>CONCLUSION</u>

On the basis of the foregoing, as well as for the reasons set forth in the separate briefs which are being submitted contemporaneously herewith, Interim Class Counsel for each of the Settlement Classes respectfully request that Plaintiffs' Omnibus Motion for Settlement Class Certification, Appointment of Settlement Class Counsel, Preliminary Approval of Proposed Settlement, Authorization to Disseminate Notice, and Setting a Hearing on Final Settlement Approval be granted.


Dated: October 11, 2011                                 Respectfully Submitted,

 /s/ Michael J. Freed                                        /s/ Roberta D. Liebenberg
Michael J. Freed                                           Roberta D. Liebenberg
Steven A. Kanner                                           Adam J. Pessin
FREED KANNER LONDON & MILLEN,                              FINE KAPLAN & BLACK, R.P.C. 1835
LLC                                                        Market Street – 28th Floor
2201 Waukegan Rd. – Suite 130                              Philadelphia, PA 19103
Bannockburn, IL 60015                                      Telephone: (215) 567-6565
Telephone: (224) 632-4500                                  Fax: (215) 568-5872
Fax: (224) 632-4521

  /s/ Bernard Persky
Bernard Persky
Gregory Asciolla
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Fax: (212) 818-0477

*Co-Lead Counsel for Direct Purchaser Plaintiffs*

/s/ Renae D. Steiner
Renae D. Steiner
James Anderson
Katherine Kelly
Heins Mills & Olson, P.L.C.
310 Clifton Avenue
Minneapolis, MN 55403
Telephone: 612-338-4605

*Co-Lead Counsel for Indirect Purchaser Plaintiffs*

/s/ Gary D. McCallister
Gary D. McCallister
GARY D. MCCALLISTER & ASSOC., LLC
120 North LaSalle Street, Suite 2800
Chicago, IL 60602
Telephone: 312-345-0611

*Counsel for Gas Retailer Plaintiffs*

17