IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: AFTERMARKET FILTERS ANTITRUST LITIGATION | Master Docket No. 08-cv-4883<br>MDL Docket No. 1957 |
| This Document Relates To:<br>All Gas Retailers' Indirect Purchaser Actions | Honorable Robert W. Gettleman |

**GAS RETAILERS' CLASS PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFFS OMNIBUS MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENTS; CERTIFICATION OF SETTLEMENT CLASSES; APPOINTMENT OF CLASS COUNSEL FOR THE SETTLEMENT CLASSES; AUTHORIZATION TO DISSEMINATE NOTICE TO SETTLEMENT CLASSES; AND SETTING A HEARING ON FINAL SETTLEMENT APPROVAL**

I. **INTRODUCTION**

Plaintiffs in all of the cases subject to the settlements described herein have contemporaneously herewith filed Plaintiffs' Omnibus Motion for Preliminary Approval of Proposed Settlements; Certification of Settlement Classes; Appointment of Class Counsel for the Settlement Class; Authorization to Disseminate Notice to Settlement Classes; and Setting a Hearing on Final Settlement Approval which is expressly incorporated herein by reference as though set out in full. This Supplemental Memorandum is filed to address specific considerations relating to Gas Retailers' Class Plaintiffs request that this Court certify a Gas Retailers' Indirect Purchaser Class for settlement purposes and will not duplicate the Plaintiffs' omnibus filing.

## II. SUMMARY OF THE SETTLEMENT AGREEMENT

### A. The Settlement Agreements

The Settlement Agreements provide, among other things, that Baldwin Filters, Inc., Cummins Filtration Inc., and Donaldson Company, Inc. (collectively, the "Settling Defendants") will each pay $625,000 in settlement of the captioned litigation within five (5) business days after the Court grants preliminary approval Settlement Agreements. Of this amount, $93,750.00 will be paid to the Gas Retailers' Indirect Purchaser Class and placed in an escrow account, with all interest earned on the monies to become a part of the Gas Retailers' Indirect Purchaser Class Settlement Fund.

### B. Notice

The Settlement Agreements provide for Notice to be provided to the Gas Retailers' Indirect Purchaser Class. Gas Retailers' Indirect Purchaser Class Counsel propose to notify the Gas Retailers' Indirect Purchaser Class by mail and by publication. Individual notice (the "Mail Notice") will be sent via first class mail to all persons or entities within the Gas Retailers' Indirect Purchaser Settlement Class, as identified by the remaining Defendants in the litigation as well as by Gas Retailers' Indirect Direct Purchaser Plaintiffs' independent investigation. *See* proposed Settlement Notice attached hereto as Exhibit A. Counsel for the Gas Retailers' Indirect Purchaser Class also propose that summary notice be made by publication once in the California Service Station & Automotive Repair Association newsletter "Autosense" ("the Summary Notice"). *See* proposed Summary Notice, provided as Exhibit B hereto.

The Settlement Agreements also provide that, subject to Court approval, Gas Retailers' Indirect Purchaser Class Counsel are authorized to make reasonable disbursements from the Settlement Fund (following the Court's preliminary approval of the Settlements) to pay costs of notice as well as to administer of the Settlement Fund. Settlement Agreement at ¶ 34.

C. <u>**Stipulation to Class Certification**</u>

The Settlement Agreements contemplate that for settlement purposes only, the requirements of Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure are satisfied, subject to Court approval, and that the following Gas Retailers' Indirect Purchaser Settlement Class shall be certified for settlement purposes as to the Settling Defendants:

> All California gas retailers who operate service stations and indirectly purchased Filters for resale from one or more Defendants or any of their predecessors, successors, parents, subsidiaries, or affiliates at any time during the period from and including January 1, 1999 to and including the Execution Date of the Settlement Agreement.

Settlement Agreement at ¶ 24(c).

## III. <u>**THE PROPOSED NOTICE TO THE CLASS**</u>

Federal Rule of Civil Procedure 23(e)(1) provides that "[t]he Court must direct notice in a reasonable manner to all class members who would be bound by the proposal." While the Court has discretion as to the form and content of the notice, the notice must meet certain due process requirements. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 172-177 (1974). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the [settlement] and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Notice must be given, moreover, "in a form and manner that does not systematically leave an identifiable group without notice." *Mendoza v. Tucson School District*, 623 F.2d 1338, 1351 (9th Cir. 1980) (quoting *Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 853 (9th Cir. 1976)). The content of the notice "may consist of a very general description of the proposed settlement" and should provide a fair recital of its terms. *Id.*

The content and proposed method of dissemination of notice in this case fulfill the requirements of Rule 23(e)(1) and due process. *See generally In re Prudential Ins. Co. America Sales Litig.*, 148 F.3d 283, 326-27 (3d Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999); *Mangone v. First USA Bank*, 206 F.R.D. 222, 233-234 (S.D. Ill. 2001); *In re Lithotripsy Antitrust Litig.*, No. 98 C 8394, 2000 U.S. Dist. LEXIS 8143, at *6 (N.D. Ill. June 12, 2000); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. at 252-53. Plaintiffs propose sending the Mail Notice via first class mail, postage pre-paid, to all persons or entities identified as potential members of the Class by Gas Retailers Plaintiffs' independent investigation.

In addition, the Summary Notice will be published once in the California Service Station & Automotive Repair Association newsletter "Autosense". For more information on CSSARA, see (http://www.cssara.org/What%20is%20CSSARA.pdf). *See, In Re: Foundation for the New ERA Philantropy Litigation*, F.R.D. 202, 205 (U.S.D.C.E.D. PA. August 14, 1997) approving of publishing notice in an industry trade publication in addition to direct mail. The Summary Notice will explain how additional information, including a copy of the Settlement Notice, can be obtained by a Class member.

The proposed notice will apprise the Gas Retailers' Indirect Purchaser Class members of the material terms of the Settlement Agreements and outline the available procedures and related deadlines. These include how a Gas Retailers' Indirect Purchaser Class member may exclude itself from the Gas Retailers' Indirect Purchaser Settlement Class or object to the Settlement Agreements' terms.

The notices will also inform Gas Retailers' Indirect Purchaser Class members of the date and place of the Hearing at which the Court will consider final approval of the Settlement Agreements and the applications. Further, the mailed Settlement Notice will advise the Gas Retailers' Indirect Purchaser Class members that Class Counsel intend to use the Settlement Fund: (a) to pay for reasonable expenses associated with the costs of giving notice; (b)

administration of the Settlement Fund; and (c) subject to Court approval, for partial reimbursement of expenses previously incurred by counsel for the Gas Retailers' Indirect Purchaser Class. No application will be made by Gas Retailers' Indirect Purchaser Class counsel for attorneys' fees from this settlement fund and no attorneys' fees will be paid from the settlement fund.

Finally, the mailed notice will inform the Gas Retailers' Indirect Purchaser Class of the investigation, analyses, and other work performed by Class Counsel in determining that, and will provide the background for their view that the Settlement Agreements are fair, reasonable, and adequate.

## IV. CERTIFICATION OF THE SETTLEMENT CLASS

Before the Court can authorize notice to the Gas Retailers Indirect Purchaser Class, the Court must first determine that the Class should be certified for settlement purposes. Rule 23 permits certification of a class action for settlement purposes. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). Certification of a settlement class must satisfy each requirement set forth in Rule 23(a), as well as at least one of the separate provisions of Rule 23(b). *Id.* at 613-14. *See also In re Community Bank of Northern Virginia & Guaranty Nat'l Bank of Tallahassee Second Mortgage Loan Litig.*, 418 F. 3d 277, 299 (3d Cir. 2005) ("certification of classes for settlement purposes only [is] consistent with Fed. R. Civ. P. 23, provided that the district court engages in a Rule 23(a) and (b) inquiry"). As demonstrated below, this action meets all of the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3) for settlement purposes.

### A. The Requirements of Rule 23(a) are Satisfied

Rule 23(a) permits an action to be maintained as a class action if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact

common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Here, the Gas Retailers' Indirect Purchaser Class numbers at least in the thousands, the issues with respect to the unlawfulness of Defendants' actions under the Cartwright Act and the California Business and Professions Code §§ 16700 *et seq.* and 17200, and Plaintiffs' common law claims are common to the claims of all members of the Gas Retailers' Indirect Purchaser Class; the claims of the Plaintiffs arise from the same factual matrix and are based on the same legal theory as the claims of all Gas Retailers' Indirect Purchaser Class members and thus are typical of the claims of the Gas Retailers' Indirect Purchaser Class members; and the Plaintiffs and their counsel, who have extensive experience in class action and antitrust litigation, will fairly and adequately represent the Gas Retailers' Indirect Purchaser Class.

### 1.    Numerosity

"There is no magic number which satisfies the numerosity requirement, and plaintiffs do not have to allege the precise number or identity of the class members." *In re Plastic Cutlery Antitrust Litig.*, No. 96-CV-728, 1998 U.S. Dist. Lexis 3628, at *7 (E.D. Pa. Mar. 20, 1998); *see also Levitan v. McCoy*, No. 00-C-5096, 2003 U.S. Dist. Lexis 5078, *8-*9 (N.D. Ill. 2003). The requirement that joinder be impracticable does not mean that joinder is impossible, but "that it is extremely difficult or inconvenient to join all members of the class." *Levitan*, 2003 U.S. Dist. Lexis 5078, at *10 (quoting C.A. Wright, A. Miller & N. Kane, FEDERAL PRACTICE AND PROCEDURE, § 1762 at 159 (2d ed. 1986)); *see also In re Fine Paper Antitrust Litig.*, 82 F.R.D. 143, 149 (E.D. Pa. 1979). Joinder is impracticable where, for example, there is "significant geographical distribution among the class members." *Id.* at 149-150; *see also Jerry Enters. of*

*Gloucester County v. Allied Bev. Group, L.L.C.*, 178 F.R.D. 437, 442 (D.N.J. 1998); *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 477 (W.D. Pa. 1999).

Here, the data provided by the Settling Defendants and information Class Counsel have developed show that Class members certainly number in the thousands. Further, there is significant geographic dispersion among Class members. The Class representatives themselves are located throughout the state of California. Clearly, joinder of the numerous and geographically scattered Gas Retailers' Indirect Purchaser Class members is impracticable. The Gas Retailers' Indirect Purchaser Class thus satisfies Rule 23(a)(1).

### 2. Common Questions of Law and Fact

The commonality requirement "is easily met because it may be fulfilled by a single common issue." *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 205 (E.D. Pa. 2001); *see also In re Prudential*, 148 F.3d at 310 (commonality satisfied if named plaintiffs share at least one question of fact or law with prospective class). Here, there are numerous legal and factual issues common to members of the Gas Retailers' Indirect Purchaser Class. These include, among others:

   a. whether Defendants participated in an unlawful conspiracy to fix, raise, maintain, and/or stabilize prices and allocate customers for Filters in violation of the Cartwright Act and the Unfair Business Practices Act of the state of California, California Business and Professions Code §§ 16700 *et seq.* and 17200;

   b. the duration and extent of the alleged unlawful conspiracy;

   c. whether the Defendants' fraudulently concealed the alleged unlawful conspiracy;

   d. whether the Defendants' alleged conduct constitutes a violation of the Cartwright Act and the California Unfair Business and Professions Act;

  e.  whether Defendants' alleged conduct in fact caused the Gas Retailers' Indirect Purchaser Class's damages arising from their purchases of Filters;

  f.  whether the alleged unlawful overcharge on the price of Filters was passed through to the Gas Retailers, and if so;

  g.  the appropriate measure of the Gas Retailers' Indirect Purchaser Class's damages; and

  h.  whether the Gas Retailers' Indirect Purchaser Class is entitled to injunctive and other equitable relief.

In antitrust cases such as this, courts have consistently held that claims for violations of the Sherman Act (and California Cartwright Act and §17200 claims) involve common questions that meet the requirements of Rule 23(a)(2). *See, e.g., Amchem Prods.*, 521 U.S. at 609, 625 (recognizing that "Rule 23(a)(2)'s 'commonality' requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions" and concluding that "[p]redominance is a test readily met in certain cases alleging . . . violations of antitrust laws"); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528-29 (3d Cir. 2004) (where defendant "engaged in a broad-based campaign, in violation of federal and state consumer fraud and antitrust laws . . . allegations naturally raise several question of law and fact common to the entire class"); *Southeast Mo. Hosp. v. C.R. Bard, Inc.*, No. 1:07cv0031 TCM, 2008 WL 4372741, at *6 (E.D. Mo. Sept. 22, 2008) (common questions of law or fact may be found in antitrust case by scrutinizing conduct of defendant*). In re Cipro Cases I and II*, 121 Cal. App. 4th 402, 17 Cal. Rptr. 3d 1, 2004 Cal. App. Lexis 1286; 2004-2 Trade Cas. (CCH) P74, 483 (Ct. App. 4th Dist. 2004) (in California antitrust case common questions of law and fact pertain to all proposed class members under Cartwright Act and the California Unfair Competition Law).

Accordingly, the Gas Retailers' Indirect Purchaser Class satisfies Rule 23(a)(2).

### 3. Typicality

Typicality under Rule 23(a)(3) does not mean that the claims of the plaintiff and the putative class members have to be identical. *See In re Prudential*, 148 F.3d at 311 (neither the commonality nor the typicality requirement mandates that the claims be identical). Rather, a "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998).

Here, the claims of the proposed class representative Plaintiffs are typical because they arise from the same events or course of conduct and are based on the same legal theory as the antitrust, and common law claims of other Gas Retailers' Indirect Purchaser Class members — namely Defendants' alleged participation in an unlawful conspiracy to fix, raise, maintain, and/or stabilize prices and allocate customers for Filters purchased in the United States. *See Jerry Enters.*, 178 F.R.D. at 442 (typicality met where claim arises from the same event or course of conduct that gives rise to the claims of the class members). All members of the Gas Retailers' Indirect Purchaser Class, including the representative Plaintiffs, seek redress for the alleged overcharges they paid as a result of their having purchased Filters at prices that were allegedly artificially inflated by Defendants' alleged manipulation. Because these are the same elements that both Plaintiffs and the other Gas Retailers' Indirect Purchaser Class members would have to prove separately if they bought individual actions, *In re Plastic Cutlery Antitrust Litig.*, 1998-1 Trade Cas. (CCH) ¶ 72,107, 1998 U.S. Dist. Lexis 3628, at *11 (E.D. Pa. 1998), the typicality requirement of Rule 23(a)(3) is satisfied.

### 4. Adequacy

It is well established that named plaintiffs satisfy the adequacy requirements when they retain adequate counsel and do not have interests antagonistic to those of the class. *See In re Prudential*, 148 F.3d at 312 (quoting *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 800 (3d Cir. 1995) (testing qualifications of counsel)) and *Amchem Prods.*, 521 U.S. at 625 (uncovering conflicts of interest)).

Plaintiffs here are represented by experienced counsel thoroughly familiar with class and antitrust litigation. Interim Class Counsel appointed by the Court have served in leadership roles in numerous major antitrust and other class actions in courts throughout the United States.[1] In addition, there are no conflicts between the Plaintiffs and the members of the Gas Retailers Indirect Purchaser Class concerning the subject matter of this litigation. The Plaintiffs all purchased Filters, whose prices were affected by Defendants' conduct. The same is true of the Gas Retailers' Indirect Purchaser Class members, and thus, the Gas Retailers' Indirect Purchaser Class representatives' interest in proving liability and damages is entirely aligned with that of Gas Retailers' Indirect Purchaser Class members.

Class Counsel have diligently represented the interests of the Class in this litigation and will continue to do so. Accordingly, the requirements of Rule 23(a)(4), as well as the requirements of Rule 23(g)[2] relating to qualifications of class counsel, have been satisfied.

---

[1] *See* the firm biographies of Plaintiffs' Interim Class Counsel submitted in connection with the motion to appoint lead counsel (Dkt. No. 394).

[2] Fed. R. Civ. P. 23(g)(1) provides that "[u]nless a statute provides otherwise, a court that certifies a class must appoint class counsel." Rule 23(g)(4) provides that "[a]n attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class." Rule 23(g)(1)(A) provides that "[i]n appointing class counsel, the court (i) must consider: the work counsel has done in identifying or investigating potential claims in the action, counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, counsel's knowledge of the applicable law, and the resources counsel will commit to representing the class; (ii) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class; (iii) may direct potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for

B.    **The Requirements of Rule 23(b)(3) are Satisfied**

Once it is determined that the proposed class satisfies Rule 23(a), a class should be certified under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, because questions of law or fact common to the Gas Retailers' Indirect Purchaser Class clearly predominate over any individualized questions, and a class action is manifestly the superior method of adjudicating this controversy, the requirements of Rule 23(b)(3) are satisfied, and the Gas Retailers' Indirect Purchaser Class should be certified.

Courts have repeatedly held that, in cases alleging antitrust violations, questions common to the members of the class will predominate over questions affecting only individual members. *In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 90-91 (S.D.N.Y. 1998) ("The common factual questions of the who, what, when, where, and how of the conspiracy, and the common legal questions of the application of the law . . . to the facts proven predominate over the individual questions of whether the conspiracy caused each class member some injury."). *See, e.g., McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 231 (2d Cir. 2008) ("[T]he fact that damages may have to be ascertained on an individual basis is not, standing alone, sufficient to defeat class certification."); *Menkes*, 2010 U.S. Dist. LEXIS 94184, at *36 ("The need to prove actual losses individually incurred by each class member does not defeat predominance because differences in the amount and recoverability of individual damages do not necessarily make class actions unmanageable."); *EPDM*, 256 F.R.D. at 103 ("Common issues may predominate when liability

---

attorney fees and nontaxable costs; and (iv) may make further orders in connection with the appointment."

11

can be determined on a class-wide basis, even when there are some individualized damages issues."); *In re Indus. Diamonds Antitrust Litig.*, 167 F.R.D. 374, 382 (S.D.N.Y. 1996) ("Courts have routinely held, however, that the need for individualized determinations of the putative class members' damages does not, without more, preclude certification of a class under Rule 23(b)(3)."); Moreover, the impact of the asserted antitrust violation, as well as the damages arising out of the misconduct, can be shown on a class-wide basis.

Finally, as numerous courts have held, a class action is a superior method of adjudicating multiple claims in cases like this one. Consequently, courts around the country have consistently certified class actions in such cases. *See, e.g., Kohen*, 244 F.R.D. at 480-81; *In re Natural Gas Commodities Litig.*, 231 F.R.D. 171, 185 (S.D.N.Y. 2005); *J.B.D.L. Corp. v. Wyeth-Ayerst Labs., Inc.*, 225 F.R.D. 208, 220 (S.D. Ohio 2003); *In re Sumimoto Copper Litig.*, 189 F.R.D. at 279, 284. Clearly, a class action is superior to other available methods for the fair and efficient adjudication of this controversy, given the prohibitive and wasteful expense of duplicative prosecution and trial of the claims of thousands of geographically dispersed Gas Retailers' Indirect Purchaser Class members on a non-class basis.

Accordingly, the *requirements* of Rule 23(b)(3), like those of Rule 23(a), are satisfied, and certification of the Gas Retailers' Indirect Purchaser Class for purposes of settlement is appropriate.[3]

---

[3] In the Settlement Agreements, the Settling Defendants have agreed not to oppose class certification for settlement purposes only. The Settlement Agreements expressly provide that it shall not constitute an admission by the Settling Defendants that class certification in this or any other action is appropriate for trial purposes. Should the Settlement Agreements not become effective, the Settling Defendants reserve the right to contest class certification, and the Settlement Agreements shall not constitute an admission or be admissible into evidence on the propriety of class certification. *See* Settlement Agreements at ¶ 25.

## V. THE REQUESTED PROCEDURES AND TIMETABLE

Gas Retailers' Indirect Purchaser Class Counsel propose the following schedule to be reflected in the Court's order granting preliminary approval of the Settlements:

a. Within forty-five (45) days after the date of entry of the preliminary approval order, the Settlement Notices will be sent by first class mail to all potential Settlement Class members whom Class counsel have identified.

b. Summary Notices are to be published once in the California Service Station & Automotive Repair Association newsletter "Autosense" commencing no later than forty-five (45) days after the date of entry of the preliminary approval order, or as soon thereafter as is feasible.

c. Any requests for exclusion from the Settlement Class must be received by no later than forty-five (45) days after the date of the sending of the notice after the preliminary order is entered.

d. Any objections to the Settlement(s), requests to be heard at the final approval hearing, or entry of a separate appearance for a member of the Gas Retailers' Indirect Purchaser Class must be filed with the Court and served on Class Counsel and counsel for Settling Defendants no later than forty-five (45) days after both the Mail Notice and the Summary Notice have been provided to the Gas Retailers' Indirect Purchaser Class.

e. Thereafter, a hearing before the Court on final approval of the Settlements shall be set at a date and time to be determined by the Court.

13

Attached hereto as Exhibit C for the Court's consideration is a [Proposed] Preliminary Approval Order which is consistent with the requests made herein.

Dated: October 11, 2011                     Respectfully Submitted,

/s/ Gary D. McCallister
Gary D. McCallister
Gary D. McCallister & Associates, LLC
120 N. LaSalle St., Suite 2800
Chicago, IL 60602
(312) 345-0611

/s/ Joseph M. Alioto
Joseph M. Alioto
Alioto Law Firm
225 Bush Street
San Francisco, CA 94104
(415) 810-3940

/s/ Martin R. Fox
Martin R. Fox
Bleau Fox, A.P.L.C.
3575 Cahuenga Blvd. West, Suite 580
Los Angeles, CA 90068\
(323) 874-8613

/s/ Daniel R. Shulman
Daniel R. Shulman
Gray, Plant, Mooty, Mooty & Bennett, P.A.
500 IDS Center
80 South 8th Street
Minneapolis, MN 55402
(612) 632-3335

Attorneys for Gas Retailers' Indirect Purchaser Class