**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: AFTERMARKET FILTERS ANTITRUST LITIGATION** | **Master Docket No. 08-cv-4883 MDL Docket No. 1957** |
| **This Document Relates To: All Purchaser Actions** | **Honorable Robert W. Gettleman** |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
AMENDED OMNIBUS MOTION FOR PRELIMINARY APPROVAL OF
PROPOSED SETTLEMENTS; CERTIFICATION OF SETTLEMENT CLASSES;
APPOINTMENT OF CLASS COUNSEL FOR THE SETTLEMENT CLASSES;
AUTHORIZATION TO DISSEMINATE NOTICE TO SETTLEMENT CLASSES;
AND SETTING A HEARING ON FINAL SETTLEMENT APPROVAL**

I.  **INTRODUCTION**

On October 11, 2011, the Direct Purchaser Plaintiffs, Indirect Purchaser Plaintiffs, and

Gas Retailers' Class Plaintiffs (collectively, "Plaintiffs")[1] filed their Amended Omnibus Motion

("Motion") for preliminary approval of partial settlements with Defendants Baldwin Filters, Inc.,

Cummins Filtration, Inc., and Donaldson Company, Inc. (collectively, "Settling Defendants").[2]

At a status conference held on October 12, 2011, the Court requested additional briefing on the

Motion relating to the following matters: the propriety of partial settlements, the use of funds

from the partial settlements to pay case expenses, and the production of customer lists by non-

settling Defendants for notice purposes.

---

[1]  All defined terms used herein are the same as in the Motion.

[2]  All of the Movants, together with the State of Florida, are parties to separate settlement agreements. Because the State of Florida filed an individual action, and not a class action, it is not a party to the Motion. Counsel for each of the Settlement Classes contemporaneously filed a separate pleading to supplement the Motion, setting forth the reasons why the Settlement Agreements should be approved with respect to its respective Settlement Class, among other things.

As discussed below, courts routinely preliminarily approve partial settlements in multi-defendant class action litigation prior to the resolution of the entire case, as it benefits the parties, the court and the justice system as a whole.  In addition, the court-approved use of settlement funds to pay for future litigation expenses is proper and frequently approved.  Finally, courts routinely require non-settling defendants to produce customer lists for purposes of sending mail notice of settlements to settlement class members.

## II.    COURTS ROUTINELY PRELIMINARILY APPROVE PARTIAL SETTLEMENTS

In a class action litigation with numerous parties, it is common for settlements to be entered into and approved with less than all of the parties, *i.e.*, partial settlements.  MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.651 (2004) ("Partial settlements are . . . not unusual.").  As this Circuit has found, "[p]artial settlements often play a vital role in resolving class actions." *Agretti v. ANR Freight Sys.*, 982 F.2d 242, 247 (7th Cir. 1992), *citing* 1-Part A MANUAL FOR COMPLEX LITIGATION (SECOND), MOORE'S FEDERAL PRACTICE § 30.46 (1986); *see* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 13 (2004) ("The high stakes in complex cases increase the incentive to avoid the risk of trial, and the burgeoning cost of pretrial activity places a premium on settling early in the litigation.").  "Partial settlements not only benefit the parties involved, but the justice system as a whole."  *Edward E. Gillen Co. v. The Ins. Co. of the State of Pennsylvania*, 2011 WL 1694431, *3 (E.D. Wis. May 3, 2011).  Thus, courts routinely preliminarily approve partial settlements that meet the requirements of Rule 23.

There are a number of reasons why partial settlements are routinely preliminarily (and ultimately, finally) approved by courts.  First, early partial settlements usually provide for cooperation by the settling defendant.  A settling defendant's cooperation with class counsel may well provide evidence useful toward prosecuting the case against the remaining non-settling

defendants. MANUAL FOR COMPLEX LITIGATION (FOURTH) § 13.21 (2004). Such is the case here. Each of the Settling Defendants has agreed to provide cooperation in the ongoing litigation against the remaining non-settling Defendants. Mot., p.12 (citing cooperation provisions in the three settlement agreements). This cooperation substantially increases the value of the settlement to the class. *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003); *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1386 (D. Md. 1983) (holding commitment to cooperate is appropriate factor to consider in approving partial settlement).

Second, a settlement payment may provide funds needed to pursue the litigation going forward. MANUAL FOR COMPLEX LITIGATION (FOURTH) § 13.21 (2004); *see, e.g., Bromine Antitrust Litig.*, 203 F.R.D. 403, 416 (S.D. Ind. 2001). As discussed more fully in Section III below, courts permit use of settlement funds derived from early settlements in the litigation to help fund future litigation. This is particularly important in complex class actions such as here, where expert costs associated with future class certification can be significant, particularly the expense for economic and/or industry experts.

Third, partial settlements also have the benefit of simplifying the litigation. By reducing the number of defendants, they can narrow the scope of discovery and/or trial. MANUAL FOR COMPLEX LITIGATION (FOURTH) § 13.21 (2004). Here, the litigation will be substantially simplified as Plaintiffs have settled with three of the seven Defendants. The early reduction in the number of defendants lessens the burden on the court and the justice system as a whole. Significantly, the partial settlements in this case involve Settling Defendants whose collective sales during the class period represent less than 5% of the Filters' sales at issue in this case and, since the Settling Defendants' sales have not been eliminated in the settlement agreements, full recovery remains possible from the four non-settling Defendants.

3

Fourth, partial settlements can be "ice-breakers" which facilitate later settlements with other parties.  MANUAL FOR COMPLEX LITIGATION (FOURTH) § 13.21 (2004).  As discussed in the Motion, these ice-breaker settlements "will provide additional benefits to the members of the respective classes."  Mot., p. 15; *See Linerboard*, 292 F. Supp. 2d at 643; *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 551 (D. Colo. 1989) (benefit of partial settlement includes "encouraging remaining defendants to settle, thus promoting settlements and judicial economy").  Indeed, here the first two settlements served as the catalyst for the third settlement.

Because of these benefits, partial settlements in class action antitrust cases are routinely approved, including cases in this Circuit and District.  *See generally In re Brand Name Prescription Drugs Antitrust Litig.*, 1996 WL 351180, at *4 (N.D. Ill. June 24, 1996) (approving partial settlements); *accord In re Ready-Mixed Concrete Antitrust Litig.,* Master Docket No. 1:05-cv-00979-SEB-TAB (S.D. Ind.); *In re Plastics Additives Antitrust Litig.,* No. 03-cv-2038 (E.D. Pa.); *In re Cardizem CD Antitrust Litig.,* No. 05-2375 (E.D. Mich.); *In re Bromine Antitrust Litig.*, Nos. IP 99-9310-C-B/S, MDL No. 1310 (S.D. Ind.); *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952 (E.D. Mich.); *In re Air Cargo Shipping Services Antitrust Litig.*, Master File 06-MD-1775 (CBA)(VVP) (E.D.N.Y.); *In re Chocolate Confectionary Antitrust Litig.,* Civil Action No. 1:08-MDL-1935 (M.D. Pa.); *In re Linerboard Antitrust Litig.*, Civil Action Nos. 98-5055 and 99-1341, MDL No. 1261 (E.D. Pa.); *In re Marine Hose Antitrust Litig.*, Master Docket No. 08-MDL-10888-DLG (S.D. Fl.); *In re Municipal Derivatives Antitrust Litig.*, Master Docket No. 08-02516, MDL No. 1950 (S.D.N.Y.); *In re Urethane Antitrust Litig.*, No. 04-MD-1616-JWL (D. Kan.); *In re Processed Egg Products Antitrust Litig.*, No. 08-md-2002 (E.D. Pa.); *In re Puerto Rican Cabotage Antitrust Litig.*, MDL No. 3:08-md-1960 (DRD) (D. Puerto Rico); *In re Vitamins Antitrust Class Actions*, No. 05-7002 (C.A.D.C.); *In re OSB*

*Antitrust Litig.*, Master File No. 6826 (E.D. Pa.); *In re Automotive Refinishing Paint Antitrust Litig.*, MDL Docket No. 1426 (E.D. Pa).

Here, the partial settlements do not interfere with the ultimate resolution of the litigation. They will streamline the case and conserve scarce judicial resources. In addition, the partial settlements do not affect the rights of non-settling Defendants.[3] Thus, the Court should preliminarily approve the three partial settlements for the reasons stated herein and in the Motion.[4]

---

[3] Non-settling Defendants cannot challenge these partial settlements unless they have standing. Here, they do not. A non-settling defendant must demonstrate "plain legal prejudice" in order to have standing to challenge a partial settlement. *Smithkline Beecham Corp. v. Pentech Pharm., Inc.*, 261 F. Supp. 2d 1002, 1006-07 (N.D. Ill. 2003); *Agretti*, 982 F.2d at 246-47; *Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230, 1233 (7th Cir. 1983); *see* 4 NEWBERG ON CLASS ACTIONS § 11:55 (4th ed. 2002). The following situations have been recognized in which a partial settlement might cause plain legal prejudice to a non-settling defendant: (1) a partial settlement which strips a non-settling defendant of a legal claim or cause of action, an action for indemnity or contribution, such as a cross-claim or the right to present relevant evidence at trial; (2) a partial settlement that invalidates the contract rights of a non-participant to the agreement; and (3) a partial settlement that eliminates a non-settling defendant's right to assert an *in pari delicto* defense. *Smithkline*, 261 F. Supp. 2d at 1007, relying on *Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 582-83 (9th Cir. 1987); *Agretti*, 982 F.2d at 247 (same). None of them are applicable here. "Mere allegations of injury in fact or tactical disadvantage as a result of a settlement simply do not rise to the level of plain legal prejudice." *Agretti*, 982 F.2d at 247.

[4] As fully set forth in Indirect Purchaser Plaintiffs' Supplemental Memorandum in support of Motion (at pp. 5-8), Settlement Counsel for the Indirect Purchaser Plaintiff Class seek preliminary approval of the settlements while deferring notice to the class until the earlier of (1) forty-five days after the preliminary approval of a fourth settlement (*i.e.*, settlement with an additional defendant beyond Baldwin, Cummins and Donaldson), or (2) the first other notice sent and/or published to the Indirect Purchaser Settlement Class. This approach, which is well within the Court's discretion, will increase efficiencies and best preserve the limited settlement funds for the benefit of the Indirect Purchaser Plaintiff Class, while at the same time preserving the ability of any potential class member to object to, or opt-out of, the settlements. This is the approach that the court adopted in *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379 (D. Ariz. 1989) ("*WPPSS*"). In *WPPSS*, the court approved settlements with several defendants, but it was not until all defendants settled that the court ordered a single notice of all of the settlements be provided to the class. *Id.* at 1386. Similarly, the court in *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981), permitted one combined notice to be issued which apprised the class of 24 separate settlements. Objectors to this approach argued that separate notices should have been used to advise the class of the pendency of the actions and the proposed settlements. *Id.* at 223. However, the Fifth Circuit rejected those arguments as "specious", stating that "Rule 23 includes no language proscribing combined notice of a class action and a proposed settlement. Since there is no specific proscription, the [ ] objectors are left only with their contention that the single-notice procedure was unfair. This position is incapable of withstanding analysis." *Id.*

### III. ALLOWING CLASS COUNSEL TO USE THE SETTLEMENT FUNDS FOR LITIGATION EXPENSES IS APPROPRIATE

As set forth in Direct Purchaser Plaintiffs' Amended Supplemental Memorandum in support of Motion (at pp. 4-5) and their proposed mailed Settlement Notice (Mem. Ex. A, p. 5), and in Gas Retailers' Class Plaintiffs' Supplemental Memorandum in support of Motion (at pp. 4-5) and their proposed mailed Settlement Notice (Mem. Ex. A, p. 5), Direct Purchaser Plaintiffs and Gas Retailers' Class Plaintiffs intend to seek Court approval to allow them to use the settlement proceeds from the three partial settlements to help defray future expenses in the case.[5] The request is intended to include anticipated future litigation expenses for such items as experts' fees and document database expenses, which will be incurred by Direct Purchaser Plaintiffs and Gas Retailers' Class Plaintiffs in prosecuting the litigation against the non-settling Defendants.[6] Class members will be advised of this request in the mailed notice. Direct Purchaser Plaintiffs and Gas Retailers' Class Plaintiffs will petition the Court for any expense request and will pay expenses only upon an order of Court. Further, since Direct Purchaser and Gas Retailers' Class Plaintiffs' Counsel will not seek either an award of attorneys' fees or reimbursement of previously incurred litigation expenses from these partial settlement funds, any unspent sums which remain can be added to any future settlement funds for distribution to the settlement classes.

Substantial authority supports this type of use of funds obtained from a partial settlement. Indeed, the MANUAL FOR COMPLEX LITIGATION (FOURTH) specifically provides that "partial

---

[5] These documents state that the settlement proceeds from the partial settlements will be used for reimbursement of previously incurred expenses. Instead, Direct Purchaser Plaintiffs and Gas Retailers' Class Plaintiffs propose to modify the mail notice forms to advise settlement class members that Direct Purchaser Plaintiffs and Gas Retailers' Class Plaintiffs will seek Court approval to use the settlement proceeds only for payment of future expenses in the ongoing litigation against the non-settling Defendants.

[6] Of course, class counsel will provide the Court, at the time of a request, with a detailed statement of the expenditures which they propose to pay from the settlement funds.

settlements may provide funds needed to pursue the litigation . . . ." §13.21; *Accord In re Linerboard*, 292 F. Supp. 2d at 643 (noting that a partial "settlement provides class plaintiffs with an immediate financial recovery that ensures funding to pursue the litigation against the non-settling defendants"); *In re Corrugated Container Antitrust Litig.*, 556 F. Supp. 1117, 1146 (S.D. Tex. 1982) ("the non-refundable amount of $187,500 made available to plaintiffs by this settlement provided a substantial sum to help defray plaintiffs' expenses at a time when their trial preparation costs were mounting rapidly"); *In re M.D.C. Holdings Secs. Litig.*, No. CV89-0090, 1990 WL 454747, at *10 n.10 (S.D. Cal. Aug. 30, 1990) ("In recognition of the magnitude of the expenses likely to be incurred in prosecuting the actions against the defendants who have not settled, the Stipulation of Settlement provides for the establishment of a $1 million fund 'to pay the actual expenses incurred in the further prosecution of the Litigation against the Non-Settling Defendants' (Stipulation of Settlement at ¶ 11.1). The establishment of this fund will insure adequate funding for the vigorous ongoing prosecution of the case for the class, is of obvious benefit to the class, and is approved by the Court.").

Many courts have allowed plaintiffs to use a portion of settlement proceeds for the continued prosecution of litigation. *See, e.g., In re Worldcom, Inc. Secs. Litig.*, No. 02-3288C, 2004 WL 2591402, at *1, 22 (S.D.N.Y. Nov. 12, 2004) (approving the establishment of a $5 million litigation fund from the proceeds of a partial settlement); *Teacher's Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*, No. 01-11814C, 2004 WL 1087261, at *5-*6 (S.D.N.Y. May 14, 2004) (approving the use of $250,000 from partial settlement to be used for future expenses such as expert fees and deposition costs); *Newby v. Enron Corp.*, 394 F.3d 296, 302-03 (5th Cir. 2004) (affirming an order providing for the establishment of $15 million litigation expense fund from the proceeds of a partial settlement); *In re Brand Name Prescription Drugs Antitrust Litig.*, No.

7

94 C 897, MDL 997 (N.D. Ill. Feb. 18, 1998) (authorizing the disbursement of $6 million from the settlement funds to pay anticipated trial preparation expenses); *In re Microcrystalline Cellulose Antitrust Litig.*, Master File No. 01-CV-111, MDL No. 1402 (E.D. Pa. June 15, 2005) (granting plaintiffs' counsel's request to use up to $2.5 million of a settlement fund to pay litigation expenses against the remaining defendant); *In re Plastics Additives Antitrust Litig.*, Civil Action No. 03-2038 (E.D. Pa. Feb. 17, 2006) (permitting plaintiffs' lead counsel to withdraw $750,000 of the settlement proceeds for use in paying litigation expenses incurred in the prosecution of the action); *High Fructose Corn Syrup Antitrust Litig.*, Master File No. 95-1477, MDL No. 1087 (C.D. Ill. Feb. 15, 1997) (authorizing class counsel to use $500,000 in settlement proceeds for the payment of "future common litigation expenses on behalf of the class"); *In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426 (E.D. Pa. Oct. 13, 2004) (ordering $1 million be set aside for the payment of expenses incurred in the continued prosecution of the litigation and for administration of the settlement fund); *In re Graphite Electrodes Antitrust Litig.*, No. 97-CV-4182 (E.D. Pa. Nov. 20, 2002) (permitting class counsel to use $450,000 from proceeds of a partial settlement for payment of future pretrial and trial expenses); *In re Packaged Ice Antitrust Litig.*, No. 08-MD01952, 2011 WL 717519, *13 (E.D. Mich. Feb. 22, 2011) (allowing plaintiffs' counsel to use up to $750,000 from a partial settlement "to pay the reasonable expenses incurred in continued prosecution of this action against the non-settling defendants").

As mentioned above, the use of the settlement funds to prosecute the ongoing litigation against the non-settling Defendants will substantially benefit the classes, particularly since the costs of experts employed in connection with contested class certification can be very

substantial.[7] In *In re Terazosin Hydrochloride Antitrust Litig.*, Case No. 99-MDL-1317, Order

Approving Settlement and Final Judgment, at 7 (S.D. Fla. Dec. 19, 2002) (Ex. 1), the court

allowed counsel to use all of the settlement funds remaining after notice costs were paid "to pay

expenses incurred or to be incurred in the prosecution of this litigation." Similarly, in *In re*

*Chocolate Confectionary Antitrust Litig.,* Case No. 08-MDL-01935 (M.D. Pa., Aug. 11, 2009),

the court preliminarily approved partial settlements and forms of notice which informed the

settlement classes that counsel intended to seek the court's approval to use the entire settlement

amount from the direct purchaser partial settlement with Cadbury PLC, Cadbury Holdings Ltd.

and Cadbury Adams Canada, Inc. ("Cadbury") ($1,312,500) and the indirect purchaser partial

settlement with Cadbury ($250,000) to pay expenses reasonably incurred in the prosecution of

the lawsuit against the remaining defendants.[8] Ex. 2 (Civil Action No. 1:08-MDL-1935 (Direct

Purchaser Actions), Order Granting Prelim. Approval of Proposed Settlement with Cadbury

Defendants (Aug. 12, 2011), and Ex. A (Proposed Notice) at 5); Ex. 3 (Civil Action No. 1:08-

MDL-1935 (Indirect Purchaser Actions), Order Granting Prelim. Approval of Proposed

Settlement with Cadbury PLC, Cadbury Holdings Ltd. and Cadbury Adams Canada, Inc. (Aug.

12, 2011), and Ex. A (Proposed Notice) at 6).

## IV.    NON-SETTLING DEFENDANTS SHOULD PRODUCE CUSTOMER LISTS FOR NOTICE PURPOSES

Consistent with due process requirements for notice of settlement in an antitrust class

action, the partial settlement agreements in this case provide for two types of notice to the Direct

Purchaser Plaintiffs and Gas Retailers' Class Plaintiffs: mail notice to members of the settlement

---

[7]  In this case, granting Plaintiffs' request is particularly appropriate since it would not be economical to distribute the settlement amounts to the classes, and the interest that can be earned on the funds now (or in the foreseeable future) is *de minimus.* Indeed, with respect to the Indirect Purchaser Plaintiffs, the cost of notice could exceed the amount of settlement proceeds they received.

[8]  The final approval hearing on the partial settlements is December 12, 2011.

class and summary notice through publication. *See* Direct Purchaser Pls.' Am. Supplemental Mem. in Supp. of Mot., at 2-5; Gas Retailers' Class Pls.' Supplemental Mem. in Supp. of Mot., at 2-5; *See generally In re Prudential Ins. Co. Am. Sales Litig.*, 148 F.3d 283, 326-27 (3d Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999); *In re Lithotripsy Antitrust Litig.*, No. 98 C 8394, 2000 U.S. Dist. LEXIS 8143, at *6 (N.D. Ill. June 12, 2000). For classes to be certified under Rule 23, "the court must direct to class members the best possible notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(b)(3).

Here, the Direct Purchaser Plaintiffs, Gas Retailer's Class Plaintiffs and Settling Defendants propose to send mail notice of the proposed partial settlements to all members of the settlement classes. This includes notice to the customers of the Settling Defendants, who will provide their customers lists pursuant to the terms of their respective settlement agreements, as well as notice to the customers of the non-settling Defendants. To effectuate this notice, the non-settling Defendants should be required to promptly produce their customer lists, thereby facilitating individual mailed notice of the proposed partial settlements to the maximum possible number of settlement class members in these actions.

Although the settling parties have also proposed a plan of publication notice, the production of customer lists to effectuate individual notice is consistent with the approach of Rule 23, which prefers individual notice. This is what the Direct Purchaser Plaintiffs and Gas Retailers' Class Plaintiffs have proposed to the Court.

At the October 12, 2011 status hearing, counsel for one of the non-settling Defendants raised the issue as to who should pay for non-settling Defendants to provide their customer lists. Since it is generally understood that such lists are provided at no cost by the non-settling

Defendants, the issue is seldom litigated. *See In re Citric Acid Antitrust Litig.*, No. 1092 C-95-2963-FMS, 1997 WL 446249, *1 (N.D. Cal. Jul. 24, 1997) (defendants provided customer lists for mailed notice); Ex. 4 (*In re Urethane Antitrust Litig.*, 04-MD-1616-JWL, Order Preliminarily Approving Settlement with Bayer, Certifying a Settlement Class, and Authorizing Dissemination of Notice, at 3 (D. Kan. April 6, 2006) (same). However, where the matter has been disputed, it is common for courts to order non-settling Defendants to produce customer lists where those customer lists are accessible and can be retrieved with reasonable effort. *See In re Air Cargo Shipping Services Antitrust Litig.,* Case 1:06-md-01775-JG-VVP, Scheduling and Rulings ("non-settling defendants must provide lists of customers . . . unless they make a showing that production of such a list is too burdensome.") (Ex. 5); *In re Visa Check/MasterMoney Antitrust Litig.,* No. CV-96-5238, 2002 WL 31528478, at *3 (E.D.N.Y. June 21, 2002); *In re Art Materials Antitrust Litig.*, MDL Docket No. 436, 1983 WL 1815, *2 (N.D. Ohio May 2, 1983).

For example, in *Art Materials*, the court ordered each defendant to identify its customers during the class period, and to provide plaintiffs with those lists "to facilitate notice to the class." 1983 WL 1815 at *2. The court additionally allowed individual defendants to identify class members known to them which directly purchased product from other named defendants. *Id.*

A protective order has been granted in this action that requires parties to maintain as highly confidential any customer information provided by any Defendant. (Dkt. #75, ¶ 3). Courts have held that such orders are sufficient to protect against improper use of customer lists produced during litigation. *See Arts Materials*, 1983 WL 1815, at *2; *Seaga Mfg., Inc. v. Fortune Res. Enterprises, Inc.*, No. 99 C 50332, 2002 WL 31399408, at *3 (N.D. Ill. Oct. 24, 2002). Plaintiffs' obligation to abide by the restrictions set forth in the order, which were agreed

to by Defendants, affords sufficient protection against disclosure that production of the requested customer lists should be ordered at this time.

## V.     CONCLUSION

Based on the foregoing, as well as for the reasons set forth in the Motion, Interim Class Counsel for each of the Settlement Classes respectfully request that the Court preliminarily approve the partial settlements, approve the use, subject to application to the Court and Court approval, of the entire amount of the settlement fund (less notice costs) to pay for future litigation expenses, and require non-settling Defendants to produce customer lists for purposes of notice of partial settlements to settlement class members.

Dated:  October 26, 2011                                           Respectfully Submitted,

/s/ Michael J. Freed                                     /s/ Roberta D. Liebenberg
Michael J. Freed                                         Roberta D. Liebenberg
Steven A. Kanner                                         Adam J. Pessin
FREED KANNER LONDON & MILLEN,      FINE KAPLAN & BLACK, R.P.C. 1835
LLC                                                      Market Street – 28th Floor
2201 Waukegan Rd. – Suite 130            Philadelphia, PA  19103
Bannockburn, IL 60015                        Telephone:  (215) 567-6565
Telephone   (224) 632-4500                  Fax:          (215) 568-5872
Fax:          (224) 632-4521

                                                         /s/ Bernard Persky
                                                         Bernard Persky
                                                         Gregory Asciolla
                                                         LABATON SUCHAROW LLP
                                                         140 Broadway
                                                         New York, NY 10005
                                                         Telephone:  (212) 907-0700
                                                         Fax:          (212) 818-0477

*Co-lead Counsel for Direct Purchaser Plaintiffs*

/s/ Renae D. Steiner
Renae D. Steiner
James Anderson
Katherine Kelly
HEINS MILLS & OLSIN, P.L.C.
310 Clifton Avenue
Minneapolis, MN 55403
Telephone: (612) 338-4605

*Co-lead Counsel for Indirect Purchaser Plaintiffs*

/s/ Gary D. McCallister
Gary D, McCallister
GARY D. MCCALLISTER & ASSOC., LLC
120 North LaSalle Street, Suite 2800
Chicago, IL 60602
Telephone: (312) 345-0611

*Counsel for Gas Retailers' Class Plaintiffs*