# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **IN RE: AFTERMARKET FILTERS ANTITRUST LITIGATION**<br><br>**THIS DOCUMENT RELATES TO:**<br><br>**ALL CASES** | Master Docket No. 1:08-cv-4883<br><br>MDL Docket No. 1957<br><br>Honorable Robert W. Gettleman<br>Magistrate Geraldine Soat Brown |

## SUPPLEMENTAL SUBMISSION IN FURTHER SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPOSED BURCH-FREE CASE AND OF MOTIONS TO EXCLUDE WILLIAM G. BURCH'S TESTIMONY AND TAPES FROM EVIDENCE AND DISCOVERY

Defendants respectfully submit this Supplemental Memorandum in Further Support of Defendants' Response to Plaintiffs' Supposed Burch-Free Case and of their Motions to Exclude William Burch's Testimony and Tapes from Evidence and Discovery.

Last Wednesday, October 26, 2011, William G. Burch was sentenced in the Eastern District of Pennsylvania on his felony conviction for manufacturing the 2004 Honeywell price increase letter and making false statements to federal prosecutors. He was sentenced to 24 months in prison, fined $30,000 and ordered to pay $83,669 to the United States as compensation for the time the prosecutors spent pursuing an investigation of the filters industry based on Burch's fraudulent evidence. The seriousness of that sentence reflected the gravity of Burch's crime. As the sentencing judge, the Honorable Timothy Savage, put it: "The seriousness is that, had the fraudulent creation of the document not been discovered, the consequences to these companies is just unbelievable. What happened here is that there was a perversion of our system." (Oct. 26, 2011 Sentencing Transcript at 41, attached hereto at Exhibit A).

At the sentencing, Burch also explained for the first time *why* he doctored the Honeywell letter. Burch told the court that he tried to shop his price-fixing allegations to three different law firms (Constantine Cannon, Schopf Weiss, and Baker Botts) in the hopes that one of them would bring his price-fixing case against Defendants; but not one of them would. So Burch created the document "to make [the case] better." (*Id.* at 35.) Burch admitted that he was told by someone, "we need some hard evidence"; so he "provided the proverbial smoking gun." (*Id.* at 36.) It was only after Burch created false evidence that Plaintiffs filed the first complaint that led to this litigation. Thus, Burch established that his fraud alone generated this lawsuit.

Burch's explanation for why he created the fake document is dispositive of whether there is any viable "Burch-free" case. There isn't. According to Burch, *there was no case* until he created the fake document. The forged Honeywell fax was the case—*the* "smoking gun." The Court should not permit Plaintiffs to continue to benefit from Burch's misconduct now that the full extent of what he did, and why he did it, have come to light. Plaintiffs should be required to replead their complaint without reference to Burch, and Burch's remaining "evidence" should be excluded from this case.

## **BURCH'S SENTENCING**

The prosecutor in Burch's case framed for the sentencing judge the egregiousness of Burch's conduct: "[W]hat makes this offense so serious, Your Honor, is that it represents an attack not just on the parties who are wrongfully accused but on the underpinnings of our system of justice." (*Id.* at 8.) Burch's scheme, the prosecutor explained, proceeded along a number of fronts, all designed to pressure the filter manufacturers into paying Burch a lot of money. Burch provided information to Plaintiffs in this case: "This defendant is in more than 50 class action lawsuits that are currently pending in Chicago as part of a multidistrict litigation. Those class action lawsuits that were founded on the information that was provided by Mr. Burch." (*Id.* at 10-11.) Then, he "filed a *qui tam* lawsuit, and [on] the same day a number of class action suits

were filed," from which he stood to profit. Around the same time, "he tried to get the Antitrust Division interested in opening a grand jury investigation against the filter manufacturers." The prosecutor emphasized that the Antitrust Division opened its investigation "based on his falsified letter. And the falsified letter was the only significant evidence of price fixing. Without it, they would not have opened the grand jury investigation. So the scheme worked." (*Id.* at 10-12.) The scheme unraveled, the prosecutor noted, not because Burch came clean, but only "when the folks representing Honeywell brought it to the attention of the prosecutors that the letter could not have been" authentic. (*Id.* at 12-13.)

The prosecutor urged the court to impose a sentence of incarceration at the top of the Sentencing Guidelines range to reflect the fact that "this is a crime that undermines what this Court and what we all are trying to do in the criminal justice system every day, and that is to pursue justice fairly. The whole point is that Champion, Honeywell and the eight people involved who were grand jury witnesses, they deserved a legal process that did not have Mr. Burch's thumb on the scales." (*Id.* at 28.)

Burch then addressed the court and explained why he created the fraudulent document:

| | |
|---|---|
| Burch: | Your Honor, when I was approached by my lawyer with this case, my friend referred me to this particular lawyer, Steve Stidham with Sneed Lang, he said, this case is too big for us, we need a bigger firm….[A]nd we went and met with Constantine Cannon, and I apologize for rambling but… |
| | . . . |
| The Court: | Who's Constantine? |
| | . . . |
| Burch: | It's an antitrust firm….They considered taking the case. Then we met with a group called Schopf & Weiss out of Chicago. And Steve [Stidham] would always tell me, you know, I need your help on this. I'm going to represent you pro bono but if they don't like the case, maybe it's not that good. And we met with another group, Baker Botts out of Dallas…I'm sorry. I became worried that he was going to drop the case and drop me and *I tried to make it better*. |
| The Court: | *So you tried to make the case?* |
| Burch: | *That's right*. I added that document and I should not have. It was wrong. |

        .   .   .

| | |
|---|---|
| The Court: | *Until you created this document, nobody was willing to take the case. Right? In other words, they said to you we need some hard evidence. Right? So you provided the proverbial smoking gun. Right?* |
| Burch: | *Yes.* |
| The Court: | *But it was not a real smoking gun. Right?* |
| Burch: | *Yes, sir.* |

(*Id.* at 34-36.) (emphasis added).

The court sentenced Burch, among other things, to 24 months' incarceration. (*Id.* at 44.)

In arriving at that sentence, the court weighed the nature and circumstances of Burch's offense:

> [W]hat we see here is a crime that undermines our system of justice that was motivated by both greed and spite….The government dedicated resources to investigating an alleged criminal charge *that had no basis under the current evidence that it had other than this miscreated document*.

(*Id.* at 40.) (emphasis added).

Finally, the court described the harm Burch caused the filter manufacturers:

> The companies that were targeted by the defendant spent substantial unnecessary money in defending and responding to the false criminal charges and suffered reputational damage. And it affected employees who were falsely accused. The seriousness is that, had the fraudulent creation of the document not been discovered, the consequences to these companies and individuals is just unbelievable. What happened here is that there was a perversion of our system.

(*Id.* at 40-41.)

**ARGUMENT**

Burch's statements at sentencing show beyond any doubt that this case would not be before this Court if Burch had not provided fabricated evidence to Plaintiffs' counsel. Burch revealed for the first time that until he doctored the Honeywell price increase letter, no class action law firm he spoke with would take this case. Someone told him, "we need some hard evidence," so Burch created a "smoking gun" to try to "make [the case] better." Thus, Burch admitted that, in the judgment of three different law firms, he did not have sufficient hard evidence to substantiate an antitrust case until he made it up; *none* of the other evidence he was peddling could support a claim.

Burch's creation of the fake document opened the courthouse doors on the basis of a fraud. Without Burch and his "allegations," Plaintiffs' complaint almost certainly would not have survived a motion to dismiss under *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007). And Plaintiffs never would have had access to the more than eight million pages of discovery that Defendants produced at great expense—discovery on which Plaintiffs now rely to try to cobble together a claim, but which, in fact, shows only roughly parallel pricing decisions by manufacturers in a consolidated filters market.

As Defendants have detailed in prior filings, Burch's fraudulent touching up of evidence extended beyond his creation of the fake fax and his lies about that document. He also, among other things, altered the audio recordings he made of conversations with former co-workers and indisputably perjured himself in his deposition. Burch doctored those audio tapes and lied under oath for precisely the same reason he now admits he altered the Honeywell fax: to try to "make [the case] better." Plaintiffs still want to rely on that evidence, but allowing them to do so would only compound the "perversion of our system" that Judge Savage correctly noted Burch set into motion.

As a matter of equity and fairness, this Court should exercise its inherent power to prevent Plaintiffs from benefitting from Burch's fraud by using his manipulated tapes and perjured testimony to support their case. Indeed, this Court has the inherent power to do much more; courts have appropriately dismissed cases based on misconduct this egregious. *Oliver v. Gramley*, 200 F.3d 465, 466 (7th Cir. 1999) (affirming dismissal when plaintiff offered fake evidence and perjurious affidavit); *Rosenthal Collins Grp., LLC v. Trading Techs. Int'l, Inc.*, No. 05-4088, 2011 US Dist. LEXIS 17623 (N.D. Ill Feb. 23, 2011), at *11-15, 22-23, 39-40 (dismissing case when plaintiff's consultant, whom plaintiff intended to call as a witness to "gain an advantage in the litigation," altered evidence).

Defendants respectfully request that, at the least, Burch and his evidence should be stripped from this case. Plaintiffs should replead with no reference to Burch and should be prohibited from using in discovery or at trial Burch's audio tapes and testimony.

Dated: November 1, 2011

Respectfully submitted,

/s/ Peter J. Kadzik
Peter J. Kadzik
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006
Tel: 202-420-2200
Fax: 202-420-2201

*Counsel for ArvinMeritor Inc., Purolator Products NA, LLC and Purolator Products Company, LLC*

/s/ Patrick Collins
Patrick M. Collins
PERKINS COIE LLP
131 S. Dearborn Street, Suite 1700
Chicago, IL 60603
Telephone: 312-324-8400

/s/ Richard G. Parker
Richard G. Parker
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006-4001
Telephone: 202-383-5300

/s/ Mark Racanelli
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036
Telephone: 212-326-4403

*Counsel for Honeywell International Inc.*

| | |
|---|---|
| /s/ John DeQ. Briggs<br>John DeQ. Briggs<br>AXINN VELTROP HARKRIDER<br>1330 Connecticut Avenue, N.W.<br>Washington, DC 20036<br>Telephone: 202-721-5400<br>Fax: 202-912-4701<br><br>*Counsel for Wix Filtration Corp LLC and Affinia Group, Inc.* | /s/ Margaret M. Zwisler<br>Margaret M. Zwisler<br>LATHAM & WATKINS LLP<br>555 Eleventh Street, NW<br>Suite 1000<br>Washington DC 20004-1304<br>Telephone: 202-637-1092<br>Fax: 202-637-2201<br><br>*Counsel for Champion Laboratories, Inc.* |

## **CERTIFICATE OF SERVICE**

  I, Patrick Collins, certify that on November 1, 2011, I caused the foregoing Defendants' Supplemental Memorandum in Further Support of Defendants' Response to Plaintiffs' Supposed Burch-Free Case and of Their Motions to Exclude William Burch's Testimony and Tapes From Evidence and Discovery to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties indicated on the electronic filing receipt.

                /s/ Patrick M. Collins

Patrick M. Collins
PERKINS COIE LLP
131 S. Dearborn Street, Suite 1700
Chicago, IL 60603
Telephone: 312-324-8400
Facsimile: 312-324-9400