**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**


| | |
|---|---|
| **IN RE: AFTERMARKET FILTERS ANTITRUST LITIGATION** | **Master Docket No. 08-cv-4883** **MDL Docket No. 1957** |
| **This Document Relates To:** **All Gas Retailers' Indirect Purchaser Actions** | **Honorable Robert W. Gettleman** |


<u>**GAS RETAILERS' INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM IN
SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENTS**</u>

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................................. 1

II.  HISTORY, BACKGROUND AND SETTLEMENT OF THE ACTION ............................. 1

   A.  Procedural History of the Litigation .................................................................. 1

      1.  The Gas Retailers' Case ........................................................................ 2

      2.  Summary of Gas Retailers' Allegations ............................................... 3

      3.  Evidence in Support of Plaintiffs' Allegations ..................................... 5

   B.  The Consideration for the Settlement Agreements .............................................. 6

   C.  Attorneys' Fees and Expenses ............................................................................ 8

   D.  Cooperation ........................................................................................................ 8

III.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND
     SHOULD BE APPROVED ................................................................................................. 8

   A.  Strength of the Plaintiff's Case Compared to the Settlement Amount Supports Approval . 9

   B.  The Stage of the Proceedings in Which Settlement Was Achieved Supports Approval of
      the Settlement ..................................................................................................... 11

   C.  The Likely Complexity, Length and Expense of Continued Litigation Supports
      Approval ............................................................................................................ 12

   D.  The Amount of Opposition to Settlement Among Effective Parties Supports Approval .. 12

   E.  The Opinion of Competent Counsel Supports Approval of the Settlements Supports
      Approval ............................................................................................................ 13

IV.  THE NOTICE COMPORTS WITH DUE PROCESS AND RULE 23(e) AND SHOULD
     BE APPROVED ............................................................................................................... 13

V.  THE PLAN OF DISTRIBUTION AND ALLOCATION IS FAIR AND REASONABLE
     AND SHOULD BE APPROVED ................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Clayworth v. Pfizer, Inc.*, 233 P. 3d 1066 (Cal. 2010)................................................................. 10

*Goldsmith v. Tech. Solutions Co.*, No. 92-C-4374, 1995 U.S. Dist. Lexis 15093 at *10 n.2
    N.D. Ill. October 10, 1995) ....................................................................................... 8

*Hanrahan v. Britt*, 174 F.R.D. 356, 366 (E.D. Pa. 1997) ............................................................ 9

*Hispanics United v. Vill. Of Addison*, 988 F. Supp. 1130, 1150 n.6 (N.D. Ill. 1997).................. 13

*In re A T & T Mobility Wireless Data Services Litig.*, 270 F.R.D. 330, 35 (N.D. Ill. 2010).... 9, 10

*In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 733 F. Supp. 2d 997,
    1005 (E.D. Wis. 2010) ............................................................................................ 9

*In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003)................................ 8

*In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000) ..................... 12

*In Re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379 (D. Md. 1983) ............................ 8

*Isby v. Bayh*, 75 F.3d at 1191 (7th Cir. 1996))................................................................ 9, 11, 13

*Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005).................................. 9

*Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) ............................................ 11

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d. 646, 653 (7th Cir. 2006).................. 9

*Wal-Mart Stores, Inc. v. Visa*, 396 F.3d 113-114 (2d Cir. 2005) ................................................. 13

**Other Authorities**

2 NEWBERG ON CLASS ACTIONS, §11.40 at 451 (2d ed. 1985) ....................................................... 8

**Rules**

Fed. R. Civ. P 23(e)(3)................................................................................................................. 9

Fed. R. Civ. P.23(e) ................................................................................................................... 13

## I.      INTRODUCTION

The Court has granted preliminary approval to the proposed settlements[1] under which the Settling Defendants agreed to:

(1)      pay a total of $1,143,750:

       (a)      Baldwin Filters, Inc.      $31,250;

       (b)      Cummins Filtration, Inc.      $31,250;

       (c)      Donaldson Company, Inc.      $31,250;

       (d)      Affinia/Wix      $100,000

       (e)      Champion      $387,500

       (f)      Honeywell      $162,500

       (g)      Purolator      $400,000

(2)      provide cooperation to the Plaintiffs' before the total resolution of the case either by trial or settlement.

## II.      HISTORY, BACKGROUND AND SETTLEMENT OF THE ACTION

### A.      Procedural History of the Litigation

This litigation was commenced on March 31, 2008, with the filing of a number of class action lawsuits by purchasers of Filters[2] from Defendants.  On August 18, 2008, the Panel for Multidistrict Litigation transferred the cases to this Court and the Court consolidated all actions under the above caption.

---

[1] The terms "proposed settlements" and "Settling Defendants", as used herein, have the same meaning as defined in the Gas Retailers' Motion for Preliminary Approval (Dkt. Nos. 836,900,936)

[2] The term "Filters" includes oil, air and fuel filters sold in the aftermarket for light duty vehicles, *i.e.*, cars and light trucks.  It does not include products for sale to original equipment manufacturers, such as vehicle manufacturers.  In the Gas Retailers' action, the term "Filters" includes transmission filters.

1.  **The Gas Retailers' Case**

Loodvik Peerali and Oyster Incorporated filed a complaint in the Superior Court of the State of California for the County of Los Angeles, Central District, on January 12, 2009. On March 5, 2009, the case was removed to the United States District Court for the Central District of California. On April 13, 2009, the case was transferred by the United States Judicial Panel on Multidistrict Litigation and consolidated into the above-captioned action (Related Docket No. 1:09-cv-2330).

Plaintiffs Loodvik Peerali and Oyster Incorporated, as class representatives, filed the Gas Retailers' Consolidated First Amended Class Action Complaint on behalf of the Gas Retailers' Indirect Purchasers Class (hereafter "Gas Retailers") on February 9, 2010, (Dkt. No. 387) with the class being defined as follows:

> "Gas Retailers' Indirect Purchaser Settlement Class" means all California gas retailers who operated service stations (excluding Defendants, their predecessors, successors, parents, subsidiaries, affiliates and government entities) and who indirectly purchased Filters from one or more Defendants or any of their predecessors, successors, parents, subsidiaries or affiliates at any time during the period from and including January 1, 1999 to March 8, 2012, the Execution Date of the Settlement Agreement."

*Id.*

By Order dated February 18, 2010, the Court appointed the Alioto Law Firm, Bleau Fox, A.P.L.C., Gray, Plant, Mooty, Mooty & Bennett, P.A. and Gary D. McCallister & Associates, LLC, as Interim Co-Lead Counsel for the Gas Retailers' Indirect Purchaser Class. (Dkt. No. 406)

The Gas Retailers filed their Consolidated Second Amended Class Action Complaint on February 25, 2010. (Dkt. No. 410) Defendants filed their answers to the Gas Retailers' Consolidated Second Amended Complaint on March 9, 2010. (Dkt. Nos. 412, 413, 414, 415, 416, 417, 418, 419)

Defendant Baldwin Filter's Inc. (hereafter "Baldwin") filed its Motion for Summary Judgment related to all actions on July 14, 2010. (Dkt. No. 473)  Defendant Cummins Filtration, Inc. (hereafter "Cummins") filed its Motion for Judgment on the Pleadings related to all actions on July 19, 2010. (Dkt. No. 479)  The Gas Retailers filed their Joinder and Adoption of Direct Purchaser Plaintiffs' Rule 56(f) Motion for discovery on July 30, 2010. (Dkt. No. 499)  On August, 13, 2010, Gas Retailers filed their Joinder and Adoption of Direct Purchaser Plaintiffs' Memorandum of Law in Opposition to Defendant Cummins' Motion for Judgment on the Pleadings. (Dkt. No. 521)  By Order entered August 23, 2010, the Court denied Defendant Baldwin's Motion for Summary Judgment without prejudice to renew. (Dkt. No. 551)  By Order entered on August 31, 2010, the Court denied Defendant Cummins' Motion for Judgment on the Pleadings. (Dkt. No. 556)

As a result of the above rulings on dispositive motions, extensive and vigorous arm's-length negotiations and the fact that Baldwin, Cummins and Donaldson were primarily heavy-duty Filters manufacturers, on October 7, 2011, Gas Retailers' Plaintiffs executed settlement agreements with Baldwin, Cummins, and Donaldson Company, Inc. (hereafter "Donaldson") (Dkt. No. 827)  On February 16, 2012, the Court entered orders preliminarily approving the settlements with Baldwin, Cummins, and Donaldson (the "Original Settling Defendants"). (Dkt. No. 883)

## 2.    Summary of Gas Retailers' Allegations

Plaintiffs brought their respective antitrust class actions against the largest manufacturers of Filters in the United States.  Plaintiffs allege that from 1999 through the present, Defendants conspired to fix the prices of Filters.  The Defendants include Champion Laboratories, Inc. (hereafter "Champion"), Purolator Products NA, LLC, Purolator Products Company, LLC,

3

ArvinMeritor, Inc. (hereafter "Purolator"), Honeywell International, Inc. (hereafter "Honeywell"), Wix Filtration Corp. LLC, Affinia Group Inc. (hereafter "Affinia/Wix"), Cummins, Donaldson, and Baldwin. The Defendants have denied these allegations.

Plaintiffs based their allegations, among other things, on an industry that was susceptible to price-fixing, information provided by a "whistleblower" William G. Burch who was employed by Defendants Purolator and Champion during most of the Class Period, and statements made under oath by other individuals with personal knowledge of the alleged conspiracy.

Plaintiffs alleged that the conditions that made the industry susceptible to price-fixing included the following:

- During the Class Period the industry for Filters was ripe for collusion. Although the market is large in terms of dollars—encompassing approximately $1 billion in annual revenue from all purchasers of Filters—the industry is dominated by only four manufacturers: Champion, Purolator, Honeywell and Affinia/Wix. These four manufacturers account for more than 80% of Filter sales in the United States.

- The Filters sold by these manufacturers are a commodity product, meaning that purchasers view Defendants' products as interchangeable.

- In addition to the Filters industry being ripe for collusion, many of the Defendants' employees have spent their entire careers in the Filters industry and key employees have transferred among Defendants. This fostered familiarity and comfort among ostensible competitors and facilitated high-level pricing coordination. That familiarity and comfort encouraged frequent and open communication among competitors at industry trade events.

- Additionally, Defendants bought and sold Filters from each other and engaged in a variety of joint ventures. Defendants used these opportunities to communicate with each other about pricing.

### 3. Evidence in Support of Plaintiffs' Allegations

After the denial of Defendants' multiple motions to dismiss, the parties engaged in protracted written and deposition discovery, which engendered many disputes resulting in extensive motion practice. (*See* Dkt. Nos. 527, 536, 706, 708) The parties briefed these disputes in great detail and after a number of hearings, the Court issued several discovery orders. (*See* Dkt. Nos. 553, 579, 652, 678, 696, 733) Subsequent to the entry of these orders, Defendants produced and Plaintiffs reviewed millions of pages of documents (excluding transactional data). Plaintiffs initially conducted four depositions of Defendants' representatives. Likewise, Defendants reviewed Plaintiffs' documents, propounded written discovery requiring responses, noticed and took depositions of Plaintiffs' class representatives, and subpoenaed third parties, including William G. Burch for deposition for five (5) days in December 2010.

On September 26, 2011, based on information learned through discovery, and on their own investigation, Plaintiffs filed their Omnibus Memorandum of Law in Opposition to Defendants' extensive motions: (1) To Exclude William G. Burch's Tape Recordings; (2) To Exclude William G. Burch's Testimony; and (3) For an Evidentiary Hearing (Dkt. No. 813). That submission includes a summary of key evidence supporting Plaintiffs' allegations in this matter which, to avoid repetition, are incorporated herein by reference. On October 6, 2011, all Defendants other than the Original Settling Defendants, filed a response to Plaintiffs' Omnibus Memorandum.

On January 19, 2012, an all-day settlement/mediation conference was held before U.S. Magistrate Judge Geraldine Soat-Brown. At the conclusion of the conference, the parties were unable to reach a settlement agreement. The following day, January 20, 2012, the Court denied Defendants' motions (Dkt. Nos. 792, 795) to exclude William G. Burch's testimony and tapes and vacated the stay of discovery. (Dkt. No. 866) The litigation resumed and discovery proceeded. Thereafter, by mid-February 2012, extensive arm's-length negotiations with Affinia/Wix, Champion, Honeywell and Purolator ensued with a settlement agreement being reached with Affinia/Wix, Champion and Honeywell on March 8, 2012. The litigation continued against Purolator as it did not settle. Discovery proceeded, including two (2) additional depositions together with interviews and proffers of evidence ensued with Affinia/Wix, Champion and Honeywell due to cooperation agreements as a material part of their settlements. Later in April 2012, as a result of cooperation agreements in the various settlement agreements, additional and extensive information was learned that substantially assisted in leading to the settlement of the case with the one remaining non-settling Defendant group, Purolator.

### B. The Consideration for the Settlement Agreements

The Settlement Agreements provide, among other things, that Baldwin, Cummins and Donaldson (collectively, the "Original Settling Defendants") have paid $31,250 each, or a total of $93,750, in settlement of the captioned litigation to the Gas Retailers' Indirect Purchaser Class, which has been placed in escrow accounts at Huntington Bank, with all interest earned on the monies to become a part of the Gas Retailers' Indirect Purchaser Class Settlement Fund.

The Settlement Agreements provide, among other things, that Affinia/Wix, Champion, Honeywell and Purolator (collectively, the "Later Settling Defendants") have paid a total of $1,050,000 in settlement. Of this amount, a total of $650,000 has been paid to the Gas

6

Retailers' Indirect Purchaser Class by Affinia/Wix ($100,000), Champion ($387,500),

Honeywell ($162,500) and Purolator ($400,000). These funds have been placed in escrow

accounts at Huntington Bank with all interest earned on the monies to become a part of the Gas

Retailers' Indirect Purchaser Class Settlement Fund.

The Settlement Agreement provides for all Plaintiffs (and all "Releasing Parties" as

defined in the Settlement Agreements at ¶ 10) to release and discharge Settling Defendants upon

the "Effective Date"[3] of the Settlement Agreements. The release and discharge language in the

Settlement Agreements is substantively as follows:

> Upon the occurrence of the Effective Date and in consideration of the
> Settlement Amount and Cooperation provided for in this Agreement, Released
> Parties shall be completely released, acquitted, and forever discharged, to the
> extent permitted by law, from any and all claims, demands, actions, suits, and
> causes of action, damages, liabilities of any nature, including without limitation
> costs, expenses, penalties, and attorneys' fees, whether class, individual, or
> otherwise in nature, that Releasing Parties ever had, now have, or hereafter can,
> shall, or may have directly, representatively, derivatively or in any other capacity
> against the Released Parties, whether known or unknown, suspected or
> unsuspected, in law or equity, concerning the pricing, selling, discounting, and
> marketing of Filters in the United States, which arise under and/or relate to any
> United States federal or state antitrust, unfair competition, unfair practices, price
> discrimination, unitary pricing, trade practice, or civil conspiracy law, including,
> without limitation, the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*, based in
> whole or in part on the facts, occurrences, transactions, or other matters alleged
> in, or that could have been alleged in the Actions (the "Released Claims"),
> provided, however, that nothing herein shall release: (1) claims involving any
> negligence, breach of contract, bailment, failure to deliver lost goods, damaged or
> delayed goods or similar claim relating to Filters; and (2) claims under laws other
> than those of the United States.

---

[3] The "Effective Date" is defined in ¶ 8 of the Settlement Agreement: the first date by which all of the
following events have occurred: (a) the Court has entered a final judgment order approving this
Agreement under Rule 23(e) of the Federal Rules of Civil Procedure; (b) the Court has entered a final
judgment dismissing the Actions against Settling Defendant with prejudice and without costs; and (c) the
time for appeal or to seek permission to appeal the Court's approval of this Agreement and entry of a final
judgment as described in clause (a) above has expired or, if appealed, approval of this Agreement and the
final judgment has been affirmed in its entirety by the court of last resort to which such appeal has been
taken and such affirmance has become no longer subject to further appeal or review. Neither the
provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651
shall be taken into account in determining the above-stated times.

(Settlement Agreements at ¶ 30.)

### C.        Attorneys' Fees and Expenses

The Settlement Agreements provide for Plaintiffs to submit a motion seeking the approval of the payment of attorneys' fees, costs and expenses from the Settlement Fund, as described more fully in Paragraphs 37 and 41 of the Settlement Agreements.

### D.        Cooperation

Under the proposed settlements, each of the Settling Defendants, except Purolator, agreed to provide ongoing cooperation to the Gas Retailers' for purposes of prosecuting the action against Purolator.  While the cooperation provisions of the proposed settlements are no longer necessary in terms of going forward, they were valuable consideration at the time negotiated, and were valuable in achieving the subsequent settlement with Purolator.

### III.      THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED

The requirement that a class settlement be fair is designed to protect against collusion among the parties. *In Re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379 (D. Md. 1983). There is usually an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's-length negotiations. *See* 2 NEWBERG ON CLASS ACTIONS, §11.40 at 451 (2d ed. 1985); *Goldsmith v. Tech. Solutions Co.*, No. 92-C-4374, 1995 U.S. Dist. Lexis 15093 at *10 n.2 (N.D. Ill. Oct. 10, 1995).  ("It may be presented that the agreement is fair and adequate where, as here, the proposed settlement is a product of arm's-length negotiations").  Settlements proposed by experienced counsel which result from arm's-length negotiations are entitled to deference from the Court. *See e.g., id.* at *10 n.2*; In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003) ("A presumption of correctness is said to attach to a class settlement

reached at arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (*quoting Hanrahan v. Britt*, 174 F.R.D. 356, 366 (E.D. Pa. 1997). The initial presumption in favor of such settlements reflects the Court's understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness concerns of Rule 23(e).

In assessing the fairness, reasonableness and adequacy of the settlement of a proposed class settlement under Rule 23(e)(3) of the Fed. R. Civ. P., the Court considers five factors: (1) the strength of the Plaintiff's case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d. 646, 653 (7th Cir. 2006) (*quoting Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996)). Attached hereto as Exhibit 1 is the Declaration of Gary D. McCallister in support of this Motion.

## A. Strength of the Plaintiff's Case Compared to the Settlement Amount Supports Approval

"The first and most important consideration is the strength of the Plaintiffs' case compared to the value of the settlement." *In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 733 F. Supp. 2d 997, 1005 (E.D. Wis. 2010). In considering the strength of Plaintiffs' case, the Court should quantify "the net expected value of continued litigation to the class," by estimating "the range of possible outcomes." *In re A T & T Mobility Wireless Data Services Litig.*, 270 F.R.D. 330, 35 (N.D. Ill. 2010). In weighing this factor, the Court "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005). Finally,

"[b]ecause the essence of settlement is compromise, the Court should not reject a settlement solely because it does not provide a complete victory to the Plaintiff." *In re A T & T Mobility*, 270 F.R.D. at 347 (internal quotations omitted).

Here, the settlement fairly reflects it will provide an immediate cash benefit to eligible class members, without the risk of further litigation, expenses or costs. As the Court is painfully aware, a constant and continued "all-out" attack has been made by the Defendants on the merits of Plaintiffs' case with regard to the viability of Plaintiffs' allegations of conspiracy to fix prices in the Filters industry because of the existence of perjured testimony on the part of the discredited whistleblower, William G. Burch, who ultimately was convicted and sentenced to prison for his fabrication of evidence to support his own personal claims against the Defendants in his *Qui Tam* action (Dkt. No. 684) and otherwise, which was ultimately dismissed (*See* Dkt. Nos. 688, 856). While the Defendants' initial assault was overruled by the Court on January 20, 2012, (Dkt. Nos. 792, 795), based upon proffered evidence untainted by William Burch's involvement in the case, the ultimate outcome of these challenges at summary judgment or trial are by no means certain. The Defendants' daunting and vigorous defense against the essential elements of the alleged antitrust price-fixing conspiracy demonstrated the Defendants' commitment to litigate this matter to its conclusion. (See Exh. 1)

In addition, the Gas Retailers' Indirect Purchaser Class has asserted claims under California law rather than Sherman Act claims. As a result, substantive and potentially dispositive issues concerning the analysis of actual harm, proper allocation of damages, and "pass-on," were directly implicated with regard to the nature and extent of Gas Retailers' damages. *See Clayworth v. Pfizer, Inc.*, 233 P. 3d 1066 (Cal. 2010). Because multiple layers of purchasers exist in the Indirect Purchaser distribution chain, the potential for a Gas Retailers'

"Waterloo" (a <u>complete</u> extinguishment of damages in the event the overcharge was determined to be passed on further down the distribution chain) loomed on the horizon. This was a significant and contested issue in the discovery phase of the case, and no doubt would have remained one at the dispositive motion stage of the case. An enormous cost savings has been affected for the benefit of the Class by settlement so as to avoid the expenditure of several hundreds of thousands of dollars in additional expert expenses, and a hundred thousand dollars or more in depositions to be taken over the ensuing six months to prosecute the claims and defend the pass-on issues through trial and inevitable appeals.

On the other hand, the Gas Retailers' Indirect Purchaser Class proposed cash recovery represents approximately five percent (5%) of the total settlements achieved by the Direct Purchaser Plaintiffs, the Indirect Purchaser Plaintiffs and the Attorney General of Florida, who also has settled based on an allocation of five percent (5%) of the total settlements. A fair and adequate settlement has been achieved under the circumstances, which is likely to lead to distributions to only 1,016 potential Class members in the hundreds of dollars. This element of the Court's analysis is adequately satisfied for final approval of the settlement to occur.

**B. The Stage of the Proceedings in Which Settlement Was Achieved Supports Approval of the Settlement**

Approval of the settlement is proper where "discovery and investigation conducted by class counsel prior to entering into settlement negotiations was ´extensive and thorough´". *Isby,* 75 F.3d at 1200; *Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001). Here, voluminous documentary discovery existed and merits depositions were conducted in advance of and during any negotiations or settlement conferences. In addition, the fruits of cooperation provisions in both the Original and Later Settling Defendants' settlement agreements, before final

11

resolution with Purolator, were beneficial to better analyze, assess and ultimately resolve the case with Purolator.

This litigation has been contentious and hard-fought. Specifically, Gas Retailers' counsel researched and analyzed all risk factors involved in Plaintiffs' claims as well as the numerous defenses asserted by the Defendants. Abundant information was available to Plaintiffs' counsel to be fully informed in negotiating the terms of the settlements. This element of the Court's analysis for final approval of the proposed settlements is satisfied.

### C.     The Likely Complexity, Length and Expense of Continued Litigation Supports Approval

Final approval of the settlement is favored where "continued litigation would require resolution of complex issues at considerable expense and would absorb many days of trial." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000); *Isby*, 75 F.3d at 1199. Continued litigation against Defendants here would be of substantial duration and costs would more than likely exhaust or at least minimize any potential recovery that might be realized by the Gas Retailers' Indirect Purchaser Class. Approval of the proposed settlement secures for the class a substantial cash benefit undiminished by further litigation expenses, which would have included substantial consultant and economic expert witness expenses without the delay, risk and uncertainty of continued litigation. This element in the Court's consideration for final approval is satisfied.

### D.     The Amount of Opposition to Settlement Among Affected Parties Supports Approval

While it is premature to ascertain with certainty this element of the Court's analysis as of the time of the filing of these papers, there have been no objections lodged and no requests for

exclusion from the Class with regard to the proposed settlements.  This element will be further addressed in supplemental papers to be filed by the Gas Retailers' Plaintiffs if there is opposition from affected parties.

### E.       The Opinion of Competent Counsel Supports Approval of the Settlements Supports Approval

Courts are entitled to rely upon the opinion of competent class counsel that a settlement is fair, reasonable and adequate, where class counsel are qualified and where discovery and settlement negotiations are extensive and thorough. *See Isby*, 75 F.3d at 1200; *see also Hispanics United v. Vill. Of Addison*, 988 F. Supp. 1130, 1150 n.6 (N.D. Ill. 1997). ("There is a strong presumption of fairness when the settlement is the result of arm's-length negotiations" and where Plaintiffs' counsel are "experienced and have engaged in adequate discovery…").  Here, Plaintiffs' counsel have significant experience prosecuting antitrust and class actions of similar in size, scope and complexity, and have been appointed and acted as lead counsel in numerous cases in the past. (Dkt. No. 394, Exh. A-D)  Plaintiffs' counsel have opined and are confident that the relief afforded to the Class under the proposed settlements is in the best interest of the Class and should be approved. (See Exh. 1)  This element of the analysis is satisfied for approval of the settlements.

### IV.      THE NOTICE COMPORTS WITH DUE PROCESS AND RULE 23(e) AND SHOULD BE APPROVED

Rule 23(e) of the Fed R. Civ. P. and constitutional due process requires that Class members be given "reasonable" notice of the proposed settlement and their right to be heard at the fairness hearing to determine whether final approval of the settlement should be granted. *See* Fed. R. Civ. P. 23(e); *Wal-Mart Stores, Inc. v. Visa*, 396 F.3d 113-114 (2d Cir. 2005).  In the

Court's April 20, 2012, Order granting preliminary approval of the proposed settlements (Dkt.

No. 941), it determined that the proposed notice program, which included direct mail of the long

notice, publication of the summary notice in the California Service Station and Automotive

Repair Association's newsletter "*Auto$ense*," the implementation of a website,

*www.aftermarketfilterssettlement.com* and the establishment of a toll free number for purposes of

answering questions (1-800-657-0376), constitutes "the best notice practicable under the

circumstances as well as valid, due and sufficient notice to all persons entitled thereto." (Dkt. No.

941 §5.1)  As noted above, the notice program was implemented  (Swift, Dec., Exh. 2) as

required by the Court's Order, no objections have been raised with regard to the adequacy of the

notice program, and therefore, the Court should find and order the notice program related to the

proposed settlement satisfies the requirements of due process and Rule 23(e).

## V.    THE PLAN OF DISTRIBUTION AND ALLOCATION IS FAIR AND REASONABLE AND SHOULD BE APPROVED

The proposed plan of distribution and allocation is simple, fair and should be approved.

The *Settlement Fund* after deduction of amounts approved by the Court for attorneys' fees,

reimbursement of litigation expenses, Plaintiffs' incentive awards, settlement administration

costs and taxes and expenses of the *Settlement Fund* will be distributed to eligible Gas Retailers'

Indirect Purchaser Settlement Class members based on a pro-rata share of the net *Settlement*

*Fund*.  The pro-rata share will be determined by the total amount of aggregate purchases of

Aftermarket Filters made by the Class member during the class period relative to the total

amount of aggregate purchases made by all Class members during the class period who filed

claims that are approved by the claims administrator.  This allocation method provides for fair

and prompt adjudication of claims, ease of calculation for distribution amounts and prompt

payment of bona fide claims by the Claims Administrator.

## <u>CONCLUSION</u>

For the foregoing reasons the Gas Retailers' Indirect Purchaser Class respectfully requests

that the Court enter its order finally approving the proposed settlements.

Dated:  July 13, 2012

Respectfully submitted,

*/s/* Gary D. McCallister
Gary D. McCallister
Gary D. McCallister & Associates, LLC
120 N. LaSalle St., Suite 2800
Chicago, IL 60602
(312) 345-0611

*/s/* Joseph M. Alioto
Joseph M. Alioto
Alioto Law Firm
225 Bush Street
San Francisco, CA 94104
(415) 810-3940

*/s/* Martin R. Fox
Martin R. Fox
Bleau Fox, A.P.L.C.
3575 Cahuenga Blvd. West, Suite 580
Los Angeles, CA 90068\
(323) 874-8613

*/s/* Daniel R. Shulman
Daniel R. Shulman
Gray, Plant, Mooty, Mooty & Bennett,
P.A.
500 IDS Center
80 South 8th Street
Minneapolis, MN 55402
(612) 632-3335
*Counsel for Gas Retailers Indirect*
*Purchaser Plaintiffs*

15