**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: AFTERMARKET FILTERS ANTITRUST LITIGATION** | Master Docket No. 08-cv-4883<br>MDL Docket No. 1957 |
| **This Document Relates To:**<br>**All Gas Retailers' Indirect Purchaser Actions** | Honorable Robert W. Gettleman |

**GAS RETAILERS' MEMORANDUM IN SUPPORT OF MOTION
FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT
OF LITIGATION EXPENSES AND PLAINTIFFS' INCENTIVE AWARDS**

**TABLE OF CONTENTS**

**Contents**

**INTRODUCTION**.................................................................................................................... 1

**RELEVANT FACTS** ............................................................................................................... 2

**ARGUMENT**……………………………………..…………………………………….4

I.    The Requested Attorneys' Fees are Reasonable Whether Calculated Under Either thePercentage of the Benefit Analysis or the Lodestar Method. ........................................... 2

II.    The Requested Fees Represent Under One Third (1/3) of the Common Benefit Provided to the Class—a Percentage Well Below Market and the Range that has Been Found Reasonable by the courts. ..................................................................................................... 5

III.    The Requested Fees are Equally Appropriate Under the Lodestar Method. ......................... 7

IV.    Reimbursement of Litigation Expenses ............................................................................ 10

**V.**The Incentive Award to the Class Representatives is Reasonable and Should Be Aprpoved...11

# TABLE OF AUTHORITIES

**Cases**

*Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980) .................. 3
*Cook v. Niedert,* 142 F.3d 1004, 1015 (7th Cir.1998) ...................................................................... 6,9
*Denius v. Dunlap,* 330 F.3d 919, 930 (7th Cir.2003) ...................................................................... 6,8
*Florin v. Nationsbank of Ga., N.A.,* 34 F.3d 560, 566 (7th Cir.1994) ............................................. 3
*Gaskill v. Gordon,* 160 F.3d 361, 362–363 (7th Cir.1998) ............................................................... 5
*Harman v. Lyphomed, Inc.,* 945 F.2d 969, 975–76 (7th Cir.1991) .................................................. 6
*In re Linerboard Antitrust Litig.,* No. 98–5055, 2004 WL 1221350, at *14 (E.D.Pa. Jun. 2, 2004) ...................................................................................................................................................... 6
*In re Mexico Money Transfer Litig.,* 164 F.Supp.2d at 1033 ........................................................... 5
*In re Synthroid Mktg. Litig.,* 264 F.3d 712, 718 (7th Cir.2001) ("*Synthroid I*" )) .................... 2,3,8
*In re Trans Union Corp. Privacy Litig.,* MDL 1350, No. 00 C 4279, 2009 WL 4799954, at *9 (N.D.Ill. Dec. 9, 2009) *order modified and remanded,* 629 F.3d 741 (7th Cir.2011) ............... 2
*Jeffboat, LLC v. Director, Office of Workers' Comp. Programs,* 553 F.3d 487, 489 (7th Cir.2009) ...................................................................................................................................................... 6
*Kirchoff v. Flynn,* 786 F.2d 320, 324 (7th Cir.1986) ........................................................................ 6
*McKinnie,* 678 F.Supp.2d at 812 ....................................................................................................... 6
*Meyenburg v. Exxon Mobil Corp.,* No. 05–cv–15 DGW, 2006 WL 2191422, at *2 (S.D.Ill. July 31, 2006) .......................................................................................................................................... 4
*Missouri v. Jenkins,* 491 U.S. 274, 285, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989 ......................... 3
*Montgomery v. Aetna Plywood, Inc.,* 231 F.3d 399, 408 (7th Cir.2000) ........................................ 2
*n re Trans Union Corp.,* 2009 WL 4799954, at *9 ......................................................................... 2,3
*Retsky Family Ltd. P'ship v. Price Waterhouse LLP,* 97 C 7694, 2001 WL 1568856, at *4 (N.D.Ill. Dec. 10, 2001) .................................................................................................................. 4
*Skelton v. Gen. Motors Corp.,* 860 F.2d 250, 252 (7th Cir.1988) ................................................ 3,6
*Spicer v. Chicago Bd. Options Exch., Inc.,* 844 F.Supp. 1226, 1251–52 (N.D.Ill.1993) ............... 5
*Sutton v. Bernard,* 504 F.3d 688, 692 (7th Cir.2007) .................................................................... 2,3
*Taubenfeld v. AON Corp.,* 415 F.3d 597, 599 (7th Cir.2005) .......................................................... 2
*Teamsters Local Union No. 604 v. Inter–Rail Transport, Inc.,* 02–cv–1109 DRH, 2004 WL 768658, at *1 (S.D.Ill. Mar. 19, 2004) ........................................................................................... 4
*Williams v. Gen. Elec. Capital Auto Lease,* 94 C 7410, 1995 WL 765266, *9 (N.D.Ill.1995) ...... 3

**Other Authorities**

Economic Analysis of Law § 21.9, at 534–35 (3d ed.1986) ............................................................. 4
*Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules,* at 69 (Federal Judicial Center 1996) ................................. 5
*Gastineau v. Wright,* 592 F.3d 747, 748 (7th Cir.2010) .................................................................. 6
*Hensley v. Eckerhart,* 461 U.S. 424, 433–37, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) .................... 6
*Incentive Awards to Class Action Plaintiffs: An Empirical Study,* 53 UCLA L.Rev. 1303, 1333 (2006) ............................................................................................................................................... 9
*Will v. Gen. Dynamics Corp.,* CIV. 06–698–GPM, 2010 WL 4818174 (S.D.Ill. Nov. 22, 2010) . 5

**INTRODUCTION**

Counsel for the Gas Retailers' Indirect Purchaser Class file this Memorandum in Support of Gas Retailers' Class Plaintiffs' Counsel Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and for Plaintiffs' Incentive Awards. In this case, Plaintiffs' counsel are applying for attorneys' fees in the total amount of $381,250.00 representing one-third (1/3) of the common fund of $1,143,750.00, litigation expenses in the amount of $128,778.85 and Plaintiffs' Incentive Awards for Loodvik Peerali and Oyster Incorporated in the amount of $5,000 each. This Application for Attorneys' Fees, Reimbursement of Litigation Expenses and Plaintiffs' Incentive Awards is supported by the Declaration of Gary D. McCallister attached as Exhibit 1 and contemporaneous time and accounting expense records of the class counsel firms involved. The prosecution of this case by the Gas Retailers' Class Plaintiff, together with the efforts of the Director Purchaser Plaintiffs, Indirect Purchasers Plaintiffs and the Attorney General for the State of Florida are responsible for the current proposed settlements of which the Gas Retailers' Indirect Purchaser Class has received $1,143,750.00 in cash deposited in a settlement fund in escrow accounts at the Huntington Bank.

Gas Retailers' counsel have litigated this matter on a fully contingent basis and have funded the litigation expenses and costs. In this regard, an award of attorneys' fees in the amount of $381,250, reimbursement of litigation costs in the total amount of $128,778.85 and the award of Plaintiff Incentive Awards to each of the two Class Representatives in the amount of $5,000 each are requested and are therein reasonable under the circumstances.

1

## **RELEVANT FACTS**

The history of the case and status of the litigation have been adequately described in the Gas Retailers' Memorandum in Support of Motion for Final Approval of Settlements and the supporting affidavits attached thereto which have been filed contemporaneously with these papers. Reference to that Memorandum and the supporting affidavits is invited as further support for this motion.

**ARGUMENT**

I.  **The Requested Attorneys' Fees are Reasonable Whether Calculated Under Either the Percentage of the Benefit Analysis or the Lodestar Method.**

In deciding an appropriate fee in common fund cases, the Seventh Circuit has "consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *Sutton v. Bernard,* 504 F.3d 688, 692 (7th Cir.2007) (*quoting In re Synthroid Mktg. Litig.,* 264 F.3d 712, 718 (7th Cir.2001) ("*Synthroid I*" )); *see also Montgomery v. Aetna Plywood, Inc.,* 231 F.3d 399, 408 (7th Cir.2000) (finding that in common fund cases, "the measure of what is reasonable [as an attorney fee] is what an attorney would receive from a paying client in a similar case"); *In re Trans Union Corp. Privacy Litig.,* MDL 1350, No. 00 C 4279, 2009 WL 4799954, at *9 (N.D.Ill. Dec. 9, 2009) *order modified and remanded,* 629 F.3d 741 (7th Cir.2011) ("The analysis should be determined from what an arms-length negotiation between the class and the lawyers at the beginning of the case would have likely produced."); *Taubenfeld v. AON Corp.,* 415 F.3d 597, 599 (7th Cir.2005) ("Although is it impossible to know *ex post* exactly what terms would have resulted from arm's-length bargaining *ex ante,* courts

2

must do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation....") (*citing Synthroid I,* 264 F.3d at 719). This rule "is based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton,* 504 F.3d at 691–92, (*citing Skelton v. Gen. Motors Corp.,* 860 F.2d 250, 252 (7th Cir.1988); *see also Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980) (class lawyers who secure fund are entitled to payment from the fund to avoid unjustly enriching those who benefit from class counsel and the class representatives' efforts)).

Accordingly, although awarding attorneys' fees based on a percentage of the recovery or Class Counsel's lodestar remains within the discretion of the district court, *In re Trans Union Corp.,* 2009 WL 4799954, at *9 (*citing Florin v. Nationsbank of Ga., N.A.,* 34 F.3d 560, 566 (7th Cir.1994), "[t]he approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred upon the class" especially where the percentage accurately reflects the market). *Williams v. Gen. Elec. Capital Auto Lease,* 94 C 7410, 1995 WL 765266, *9 (N.D.Ill.1995); *see also Sutton,* 504 F.3d at 693 (directing district court on remand to consult the market for legal services so as to arrive at a reasonable percentage) (*citing Missouri v. Jenkins,* 491 U.S. 274, 285, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) (stating that in determining attorneys' fees, "we have consistently looked to the marketplace as our guide to what is 'reasonable' ")).

The contingent nature of the fees here supports an award based on the common benefit approach. The fee agreements between Class Counsel and the Class Representatives are contingent in nature, and the Plaintiffs agreed *ex ante* that forty (40%) percent of any settlement fund plus reimbursement of all costs and expenses would represent a fair award of attorneys' fees

3

from a fund recovered for a class. (Exhibit 1 ¶ 7.) It has been stated that in commercial, non-class litigation, attorneys regularly negotiate contingent fee arrangements, which result in a fee of between 33.3% and 40% of the recovery. *Retsky Family Ltd. P'ship v. Price Waterhouse LLP,* 97 C 7694, 2001 WL 1568856, at *4 (N.D.Ill. Dec. 10, 2001) (*citing Kirchoff v. Flynn,* 786 F.2d 320, 324 (7th Cir.1986); *see also* Richard Posner, Economic Analysis of Law § 21.9, at 534–35 (3d ed.1986) (explaining established practice to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases)). That is the case here.

Additionally, Class Counsel assumed a substantial risk of non-payment given the complexity of the action and the Defendants' position that they stood ready at all times to vigorously defend the lawsuit. (Exhibit 1 ¶ 7) In light of the significant likelihood that Class Counsel (and Settlement Class members) could have ultimately recovered nothing, Class Counsel had every incentive to litigate this matter in the most efficient manner possible.

II. **The Requested Fees Represent Under One Third (1/3) of the Common Benefit Provided to the Class—a Percentage Well Below Market and the Range that has Been Found Reasonable by the courts.**

The fee request in this case equals one-third (1/3) of the cash common fund created under the settlement. Such a figure is widely recognized as a reasonable percentage, arguably below the norm. *See Meyenburg v. Exxon Mobil Corp.,* No. 05–cv–15 DGW, 2006 WL 2191422, at *2 (S.D. Ill. July 31, 2006) ("33 1/3% to 40% (plus the cost of litigation) is the standard contingent fee percentages in this legal marketplace for comparable commercial litigation"). Indeed, using the market percentage method in the courts of the Seventh Circuit, as one court has observed, results in awards of attorney's fees "equal to approximately one-third or more of the recovery." *Teamsters Local Union No. 604 v. Inter–Rail Transport, Inc.,* 02–cv–1109 DRH, 2004 WL

768658, at *1 (S.D. Ill. Mar. 19, 2004) ("In this Circuit, a fee award of thirty-three and one-third (33 1/3%) in a class action in [sic] not uncommon"); *see also In re Mexico Money Transfer Litig.,* 164 F.Supp.2d at 1033 (recognizing "the established 30% benchmark for an award of fees in class actions."); *Spicer v. Chicago Bd. Options Exch., Inc.,* 844 F. Supp. 1226, 1251–52 (N.D.Ill.1993) (awarding 29% of a common fund); *Gaskill v. Gordon,* 160 F.3d 361, 362–363 (7th Cir.1998) (noting that typical contingency fees are between 33% and 40% and that "[s]ome courts have suggested 25% as a benchmark figure for a contingent-fee award in a class action"); *McKinnie,* 678 F.Supp.2d at 812 (approving a fee request of 30% of the settlement amount as "common among contingency fee arrangements and is not facially unreasonable"). These figures are also in accord with a Federal Judicial Center Study that found that in federal class actions, median attorney fee awards were in the range of 27% to 30%. Thomas E. Willging, Laural L. Hooper & Robert J. Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules,* at 69 (Federal Judicial Center 1996). Where the market for legal services in a class action is only for contingency fee agreements, and there is a substantial risk of nonpayment for the attorneys, "the normal rate of compensation in the market" is "33.33% of the common fund recovered." *Will v. Gen. Dynamics Corp.,* CIV. 06–698–GPM, 2010 WL 4818174 (S.D.Ill. Nov. 22, 2010).

   The going rate in the market for class action legal fees clearly suggests a fee at or in excess of the fee requested here. Nevertheless, Class Counsel have limited their requested fee request to $381,250.00 Defendants have agreed not to oppose object to the motion and payment of attorneys' fees, costs and expenses. (As described more fully in ¶¶ 37, 41 of the Settlement Agreements). A fee award of one-third (1/3) of the common fund or $381,250.00 is well within the market rate and facially reasonable.

**III.     The Requested Fees are Equally Appropriate Under the Lodestar Method.**

The attorneys' fees are equally reasonable should the Court apply the lodestar method. To determine the reasonableness of attorneys' fees under the lodestar method, the first step is to "multiply a reasonable hourly rate by the number of hours reasonably expended." *Gastineau v. Wright,* 592 F.3d 747, 748 (7th Cir.2010) (*citing Hensley v. Eckerhart,* 461 U.S. 424, 433–37, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). A reasonable hourly rate should be in line with the prevailing rate in the "community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Jeffboat, LLC v. Director, Office of Workers' Comp. Programs,* 553 F.3d 487, 489 (7th Cir.2009); *see also Denius v. Dunlap,* 330 F.3d 919, 930 (7th Cir.2003) (finding the attorney's actual billing rate for comparable work is presumptively appropriate). Oftentimes, the base lodestar is adjusted using a multiplier to take into account various factors in the litigation that affect the reasonableness of the requested fees. *See, e.g., Cook v. Niedert,* 142 F.3d 1004, 1015 (7th Cir.1998); *Skelton,* 860 F.2d at 255. These factors include "the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Gastineau,* 592 F.3d at 748. When applying a multiplier to the base lodestar amount, courts should also consider the risk plaintiff's counsel assumes in recovering nothing. *Harman v. Lyphomed, Inc.,* 945 F.2d 969, 975–76 (7th Cir.1991) (remanding case for recalculation of attorneys' fees because the trial court failed to award a risk multiplier) Typical multipliers awarded in comparable class action litigation average around 4, but are often much higher. *In re Linerboard Antitrust Litig.,* No. 98–5055, 2004 WL 1221350, at *14 (E.D.Pa. Jun. 2, 2004) (recognizing that from 2001 to 2003, the average multiplier approved in common fund cases was 4.35). Here, there is no need for a multiplier, since Class Counsels' base lodestar is significantly higher than the fee request. The fees are reasonable and the outcome obtained for

6

the Settlement Class given the risk taken in prosecuting this case would justify a moderate multiplier, although no multiplier is needed here.

As detailed in the Exhibit 1, the base lodestar of Class Counsel is **$1,129,979** and is summarized as follows:

| Name | Hours | Total |
|---|---|---|
| **Gary D. McCallister & Associates, LLC** | | |
| Gary D. McCallister- Principal | 795.15 | $650,785.00 |
| Jamie G. Goldstein - Associate | 353.28 | $117,784.00 |
| Karen E. Shoffner- Paralegal | 166.90 | $ 32,295.00 |
| George E. Rodriguez- Paralegal | 1.00 | $    162.50 |
| Shirley J. Watson- Paralegal | 57.80 | $ 7,225.00 |
| Arwen Williams- Contract Lawyer | 160.00 | $ 32,000.00 |
| **Total** | **1,370.13** | **$840,251.50** |
| **Alioto Law Firm** | | |
| Joseph M. Alioto- Principal | 76.5 | $114,750.00 |
| **Total** | **76.5** | **$114,750.00** |
| **Gray, Plant, Mooty, Mooty & Bennett** | | |
| Daniel R. Shulman – Principal-S/H | 19.00 | $11,407.50 |
| Jeremy L. Johnson – Principal – S/H | 10.10 | $3,031.50 |
| Sitso W. Bediako – Principal – S/H | 60.50 | $13,269.75 |
| Jennifer R. Coates – Principal – S/H | 299.80 | $69,687.00 |
| Ronda S. Hagglund-Associate | 15.50 | $3,177.50 |
| Gayle M. Schaub – Associate | 4.75 | $1,071.25 |
| Leanne D. Olsen – Paralegal | 2.20 | $572.00 |
| Jennifer L. Pulkbarek – Paralegal | 53.20 | $8,554.00 |
| **Total** | **237.20** | **$110,558.00** |
| **Bleau Fox a P.L.C.** | | |
| Martin R. Fox – Partner | 83.35 | $37,507.50 |
| **Total** | **83.35** | **$37,507.50** |
| **Girardi Keese** | | |
| Stephen Larson – Partner | 11.80 | $10,062.00 |
| Celene Chan | 2.25 | $1,350.00 |
| **Total** | **14.05** | **$11,412.00** |
| **Hill, Hill, Carter, Franco, Cole & Black, P.C.** | | |
| Pamela B. Slate | 31.00 | $15,500.00 |

7

|  |  |  |
|---|---|---|
| Total | 31.00 | $15,500.00 |
|  |  |  |
| Total for All Firms | 1,812.23 | $1,129,979.00 |

(Exhibit 1 ¶ 11.)

The hourly rates utilized by Class Counsel and their legal staffs are comparable to rates charged by attorneys with similar experience, skill and reputation, for similar services in the Chicago legal market and comparable markets nationwide. (Exhibit 1 ¶ 10) The rates utilized in the chart above are the actual billing rates for the respective attorneys that they charge clients in similar contingent antitrust litigation, and, therefore, yield a presumption of appropriateness. *See e.g., Denius,* 330 F.3d at 930. (Exhibit 1, ¶ 10)

## IV. Reimbursement of Litigation Expenses

Gas Retailers' Plaintiffs Counsel have expended $128,778.85 in reimbursable expenses, such as filing fees, appearance fees, expert consulting charges, electronic stored information ("ESI") database management, computer research (legal and industry), travel, copying, case administration, and deposition transcripts, videotapes, interest on expense lines of credit, etc. (Exhibit 1 ¶ 12, Group Exh. 2) These expenses were significantly minimized by resolving the case at this stage of the proceedings before more hefty expenses relating to expert reports, disclosures and depositions commenced.

This Court is requested to order the reimbursement of the reasonable litigation expenses in the amount of $ $128,775.85.

## V. The Incentive Award to the Class Representatives is Reasonable and Should be Approved.

Because a named plaintiff is essential to any class action, "[i]ncentive awards are justified when necessary to induce individuals to become named representatives." *Synthroid I,* 264 F.3d at

8

722–23. In deciding whether an incentive award is warranted, courts look to: (1) "the actions the plaintiff has taken to protect the interests of the class"; (2) "the degree to which the class has benefitted from those actions"; and (3) "the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook,* 142 F.3d at 1016. These factors are readily satisfied, in the instant action, because the Settlement Class benefitted significantly from the Plaintiffs' involvement as the Class Representatives. Were it not for their efforts and contributions to the litigation by assisting Class Counsel with their investigation and filing of the underlying suits in this MDL, their participation in responding to Defendants' discovery, the giving of their depositions and their participation in consultation about the settlement negotiations, the substantial benefit to the class afforded under this Settlement Agreement would not have resulted. (Exhibit 1 ¶ 12.) Further, Courts have approved incentive awards in similar class action litigation consistent with and greater than the $10,000.00 award in the aggregate here; an empirical study of incentive awards to class action plaintiffs has determined that the average aggregate incentive award within a consumer class action case is $29,055.20, and that the average individual award is $6,358.80. Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study,* 53 UCLA L.Rev. 1303, 1333 (2006). The incentive award of $10,000.00 in the aggregate for the two Class Representatives is slightly below that average. Accordingly, the incentive award of $5,000.00 for each of the Class Representatives here is reasonable and should be approved.

## **CONCLUSION**

As stated above, Gas Retailers' Plaintiffs' counsel seek $381,250 representing one-third (1/3) of the common fund established for the benefit of the Gas Retailers' Class as attorneys'

9

fees, reimbursement of litigation expenses in the amount of $128,778.85 as set forth in Group Exhibit 2 and Plaintiffs' Incentive Awards for Loodvik Peerali and Oyster, Incorporated in the amount of $5,000 each.

Dated: July 13, 2012

                        Respectfully submitted,

                        */s/* Gary D. McCallister
                        Gary D. McCallister
                        Gary D. McCallister & Associates, LLC
                        120 N. LaSalle St., Suite 2800
                        Chicago, IL 60602
                        (312) 345-0611

                        */s/* Joseph M. Alioto
                        Joseph M. Alioto
                        Alioto Law Firm
                        225 Bush Street
                        San Francisco, CA 94104
                        (415) 810-3940

                        */s/* Martin R. Fox
                        Martin R. Fox
                        Bleau Fox, A.P.L.C.
                        3575 Cahuenga Blvd. West, Suite 580
                        Los Angeles, CA 90068\
                        (323) 874-8613

                        */s/* Daniel R. Shulman
                        Daniel R. Shulman
                        Gray, Plant, Mooty, Mooty & Bennett, P.A.
                        500 IDS Center
                        80 South 8th Street
                        Minneapolis, MN 55402
                        (612) 632-3335
                        *Counsel for Gas Retailers Indirect Purchaser Plaintiffs*