**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: AFTERMARKET FILTERS ANTITRUST LITIGATION** | **Master Docket No. 08-cv-4883** <br> **MDL Docket No. 1957** <br><br> **Honorable Robert W. Gettleman** <br> **Magistrate Geraldine Soat Brown** |
| **This Document Relates To:** <br> **All Indirect Purchaser Actions** | **Affidavit of Richard W. Simmons on Implementation and Adequacy of Notice Plan** |

RICHARD W. SIMMONS, being duly sworn, deposes and says as follows:

1.  I have personal knowledge of the matters set forth herein, and I believe them to be true and correct. I am the Managing Director of BMC Group Class Action Services ("BMC Group") and I have twenty-one years of experience in designing and implementing class action settlements and notice campaigns that include the appropriate components, such as paid published notice, targeted online media, and internet search terms. I have been responsible for the notice plans for settlements ranging in size from fewer than 100 class members to more than 40 million, including some of the largest and most complex notice and claims administration programs.

## OVERVIEW

2.  In the *In Re: Aftermarket Filters Antitrust Litigation,* my colleagues (Christian Clapp and Rachel L.B. Stoering) and I were retained to design and implement party neutral, plain language notices (the "Notice" or "Notices") and a notice program (the "Notice Program" or "Notice Plan") to inform Class members about their rights and options in the class action settlements. These documents, included with the "Affidavit of Richard W. Simmons on Settlement Notice Plan and Notices and Notice Plan" and "Indirect Purchaser Plaintiffs'

Supplemental Memorandum In Support Of Plaintiffs' Omnibus Motion For Preliminary Approval Of Proposed Settlements" (Dkt. No. 898) were provided along with our C.V. to the Court on March 12, 2012 (Dkt. Nos. 899-1 and 899-2) and April 19, 2012 (Dkt. Nos. 931 and 931-7).

    3.  Each element of the Notice Program, including paid notice placements in nationwide consumer publications, targeted Internet campaign, national informational press releases, keyword searches, and a case website, has been implemented as planned. Combined, the consumer publications and targeted Internet media campaign reached approximately 74% of the "Vehicle Maintainers"[1] (and therefore Class members) on average 2.3 times each[2]. Although not calculable, the reach and average frequency of exposure were further enhanced by the informational press release, keyword searches, and the case website.

    4.  After the Court's April 20, 2012 Order granting preliminary approval of the settlements (the "Order")(Dkt. No. 943), we began implementing the Notice Program. This affidavit will detail all of the notice activities undertaken, provide "proofs of performance," and explain how and why the Notice Plan was comprehensive, well suited to the Class, and conformed to the high standards that federal courts and jurisprudence require.

    5.  It is my professional opinion that:

        a.  All Notices were, with the Court's input, designed to be noticeable, clear, simple, substantive and informative.

        b.  Each person reached had adequate time prior to the fairness hearing to make appropriate decisions, such as whether to object or opt-out.

        c.  The Notice Program fairly and adequately covered the Class without excluding any demographic group or geographic area.

        d.  The Notice Program was consistent with other court-approved notice programs that we have designed and/or implemented for purposes of class certification and/or settlement.

---

[1] There are approximately 202.8 million individuals in the United States that own or lease vehicles and 181.8 million individuals in the United States fit into the category of "Vehicle Maintainers."

[2] The reach or net reach of a notice program is defined as the percentage of a class that was exposed to a notice net of any duplication among people who may have been exposed more than once. The average "frequency" of notice exposure is the average number of times that those reached by a notice would be exposed to a notice.

## NOTICE PLAN SUMMARY

6. The Summary Notice appeared seven times in leading publications among the Class target. The selected publications provided a variety of editorial formats to reduce duplication among readers and extend reach among a variety of demographic segments. The Notice ran on the dates and pages indicated below:

| Publication | Ad Size | Issue Date[3] | On-Sale Date[4] | Page Position |
|---|---|---|---|---|
| Parade | 3/10 Page | June 17, 2012 | June 17, 2012 | Square |
| USA Weekend | 1/4 Page | June 17, 2012 | June 17, 2012 | Square |
| TIME Magazine | 1/3 Page | June 25, 2012 | June 15, 2012 | Vertical |
| Motor Trend | 1/3 Page | August | June 26, 2012 | Vertical |
| People | 1/3 Page | July 2, 2012 | June 22, 2012 | Vertical |
| Reader's Digest | Full Page | July/August | June 12, 2012 | Full |
| Reader's Digest Large Print | Full Page | July/August | June 19, 2012 | Full |

7. Providing proof of performance, attached as **Exhibit 1** is a copy of each publication containing the notice, as well as the individual affidavits of publication.

8. Internet efforts ran for one month and included banner advertisements on a wide range of websites, enabling maximum exposure opportunities to reach the Class members. Targeting filters were placed on the Internet advertising to maximize accuracy of Notice delivery and to minimize waste. Internet banner advertisement ran with the distribution channels and dates listed below:

| Partner | Delivered Impressions | Start Date | End Date |
|---|---|---|---|
| MediaMath | 99,204,228 | 6/15/2012 | 7/13/2012 |
| Google Display Network | 12,878,673 | 6/15/2012 | 7/13/2012 |
| Facebook | 24,977,573 | 6/15/2012 | 7/13/2012 |
| **Total:** | **137,060,474** | | |

---

[3] The date that appears on the publication cover.
[4] The date the publication first becomes available to readers.

9. All impressions, click-throughs, and conversions associated with this campaign were verified by Doubleclick (Google), an independent 3rd party, accredited by the Media Rating Council. Attached as **Exhibit 2** are hard copies of the banner advertisements.

10. Targeted Internet banner advertisements were supplemented with paid advertisements displayed for keyword searches for terms such as "oil change", "fuel filter", "auto oil filters", "engine filter", and "car oil filters." As of September 26, 2012, summary advertisements were displayed 261,173 times as a result of keyword searches.

11. The party-neutral informational release was distributed on June 29, 2012 over PR Newswire to more than approximately 5,000 press outlets throughout the U.S including newspapers, magazines, national wire services, television and radio broadcast media. PR Newswire is a world- recognized newswire with a wire, Internet, satellite and fax network that is capable of the immediate distribution of news releases to the media, financial community and consumers.

12. Providing proof of performance, attached as **Exhibit 3** is a copy of the informational press release distributed on June 29, 2012.

13. On June 1, 2012, the case website, www.IndirectPurchasersFilterSettlement.com became operational. As additional information became available, BMC Group updated the website accordingly. By visiting the website, Class members are able to:

    a. Read and review key information about the settlements including, but not limited to, the Class members Rights and Options, Important Dates and Deadlines, Cy Pres Recipient Information, and answers to over twenty Frequently Asked Questions;

    b. Read, review, and download important case documents, including the detailed Notice in English and Spanish, Plaintiffs' Fourth Amended Consolidated Indirect Purchaser Complaint, Settlement Agreements, Motions and Memorandums in Support of Preliminary Approval of Settlements, Preliminary Approval Order, Memorandums in Support of Motions for Final Approval and Award of Attorneys' Fees and Expenses, and the supporting Declaration of James Anderson;

c. Visit a "Contact Us" page and submit online a comment, question, or request for Notice or more information; and

d. View contact information for the toll-free settlement phone number, BMC Group's case specific mailing address, and the law firms, addresses and telephone number for Class Counsel.

The website is available in both English and Spanish. The website address was prominently displayed in all notice documents. As of September 17, 2012, there were 383,211 total website page views, representing 84,421 total visitors.

### *Toll-free Number and Post Office Box*

14. On June 1, 2012, the toll-free number that was established and hosted by BMC Group became operational. By calling this number, Class members were able to listen to answers to frequently asked questions or request to have a copy of the detailed Notice mailed to them. Callers were also able to request Spanish speaking agents. The toll-free number was prominently displayed in all Notice documents.

15. As of September 26, 2012, the toll-free number has received 417 calls and has received and processed 68 requests for a detailed Notice.

16. On or before June 1, 2012, BMC Group established a PO Box address, which it continues to maintain, that allows Class members to request to additional information, ask questions by mail, or submit an exclusion request. BMC Group also established a "Contact Us" functionality on the settlement website, allowing for potential Class members to submit a comment, question, or request for a mailed Notice via the website.

17. As of September 26, 2012, the PO Box and Contact Us received a total of 57 correspondence letters and 4 requests for exclusion.

### *Performance And Design Of Notice Program*

18. *Objectives were met.* The primary objective of the settlement notice effort in the *In Re: Aftermarket Filters Antitrust Litigation* was to effectively reach Class members with a conspicuous Notice of the settlements, and provide them with a reasonable opportunity to understand their legal rights and options. These efforts were successful.

19. *Notice reached Class members effectively.* Combined, net of duplication, the notice efforts reached an estimated 74% of the Class. In my experience, this reach percentage is consistent with other effective court-approved notice programs.

20. *Plenty of time and opportunity to react to Notices.* The last publication Notice appeared on June 26, 2012, and the last digital advertisement ran on July 13, 2012, which allowed plenty of time for Class members to see the Notice and respond accordingly before the September 3, 2012 exclusion and objection deadline. With over two months from the last publication Notice, and almost two months from the last digital advertisement, until the exclusion and objection deadline, Class members were allotted more than adequate time to act on their rights.

21. *Notices were designed to increase noticeability and comprehension.* The Notices were clearly worded with simple, plain language text to encourage readership and comprehension. The Notices informed Class members of the material terms of the Settlements, and outlined important dates and available procedures.

## CONCLUSION

22. Using standard advertising media industry methodologies to factor out the audience overlap between the measured publications and digital media, the paid nationwide consumer publications and targeted Internet banner advertisements reached approximately 74% of the 181.8 million "Vehicle Maintainers" in the United States on average 2.3 times each, and therefore a similar reach and frequency of exposure among Class members. Although not calculable, reach and frequency of exposure was further enhanced by the case website, key word searches, and informational press release. This reach percentage indicates that the Notice campaign was highly successful in providing Notice to potential Class members.

23. In preparing the Notices in this case, we have employed communications methods that are well established in our field, as well as the field of marketing and advertising. We utilized an inviting headline, logical design, and simple plain language to benefit Class members.

24. We have provided evidence that demonstrates that the Notice effort reached a large percentage of Class members and we have prepared Notice documents that adequately informed Class members about the settlements, properly described their rights, utilized communications

methods that are well established in our field, and clearly conformed to the high standards for modern Notice programs.

25. In my opinion, the Notices and Notice Program provided the best notice practicable under the circumstances of this case, conformed to all aspects of Federal Rules of Civil Procedure, and comported with the guidance for effective notice articulated in the latest edition of the Manual for Complex Litigation 4th.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_____
Richard W. Simmons
Managing Director, BMC Group

SUBSCRIBED AND SWORN TO BEFORE ME this 27<u>TH</u> day of September, 2012.


NOTARY PUBLIC

MY COMMISSION EXPIRES:

JANUARY 31, 2017

Steven D Mueller
Notary Public, State of Minnesota
My Commission Expires
January 31, 2017

AFFIDAVIT OF RICHARD W. SIMMONS
ON SETTLEMENT NOTICES AND NOTICE PLAN